UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
KATHERINE FERNANDEZ, on behalf of herself and
others similarly situated,                                                          **Case No.: 1:25-cv-4490 (AS) (GS)**

                                          Plaintiff,

                    -against-

BULLDOZER HOSPITALITY GROUP, INC., d/b/a
OSTERIA LA BAIA, ROBERT PETROSYANTS and
MARIANNA SHAHMURADYAN,

                                          Defendants.
-----------------------------------------------------------------X


**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR
JUDGMENT ON THE PLEADINGS & TO STRIKE IMMATERIAL, IMPERTINENT,
<u>AND SCANDALOUS ALLEGATIONS FROM THE COMPLAINT</u>**


**SAGE LEGAL LLC**
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)
emanuel@sagelegal.nyc

*Attorneys for Defendants*
*Bulldozer Hospitality Group, Inc.,*
*Robert Petrosyants, and*
*Marianna Shahmuradyan*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................. 1

STANDARD OF REVIEW ..................................................................................... 2

FACTS ................................................................................................................ 4

ARGUMENT ...................................................................................................... 6

   I.    THE COURT SHOULD DISMISS PLAINTIFF'S FLSA CLAIM ..................... 6

      A.  **Plaintiffs' Claims Regarding the 3% Service Charge Fail to State a Claim** ......... 8

      B.  **Plaintiffs' Claims Regarding a Manager in the Tip Pool Fail to State a Claim** .. 12

      C.  **Plaintiffs' Claims Regarding Lack of Notice of the Tip Credit Fail to State a Claim** ........................................................................................... 17

  II.   THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS ..................... 17

  III.  THE COURT SHOULD ORDER PLAINTIFF TO STRIKE THE IMMATERIAL, IMPERTINENT, OR SCANDALOUS MATTER IN THE COMPLAINT ................................................................................. 21

CONCLUSION .................................................................................................. 23

## **TABLE OF AUTHORITIES**

### **Cases**

Achtman v. Kirby, McInerney & Squire, LLP,
    464 F.3d 328 (2d Cir. 2006)............................................................................... 18

Anderson v. Kimberly-Clark Corp.,
    570 Fed. Appx. 927 (Fed. Cir. 2014) ................................................................. 2

Anschutz Corp. v. Merrill Lynch & Co.,
    690 F.3d 98 (2d Cir. 2012)................................................................................. 3

Apolinar v. R.J. 49 Rest., LLC,
    2016 WL 2903278 (S.D.N.Y. May 18, 2016) ........................................... 15, 16

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)........................................................................................... 3

Barenboim v. Starbucks Corp.,
    698 F.3d 104 (2d Cir. 2012)............................................................................. 10

Barenboim v. Starbucks Corp.,
    20 N.Y.3d 914 (2012)...................................................................................... 10

Barenboim v. Starbucks Corp.,
    21 N.Y.3d 460 (2013)...................................................................................... 10

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007)..................................................................................... 3, 16

Benavidez v. Greenwich Hotel Ltd. P'ship,
    No. 3:16-CV-191 (VAB), 2019 WL 1230357 (D. Conn. Mar. 15, 2019) ..................... 8, 9

Bu v. Benenson,
    181 F. Supp. 2d 247 (S.D.N.Y.2001)............................................................... 19

Carter v. Dutchess Community College,
    735 F.2d 8 (2d Cir. 1984)................................................................................. 15

Cain v. Mercy College,
    2022 WL 779311 (2d Cir. 2022)...................................................................... 18

City of Chicago v. Int'l Coll. of Surgeons,
    522 U.S. 156 (1997)......................................................................................... 17

Cleveland v. Caplaw Enterprises,
    448 F.3d 518 (2d Cir. 2006)............................................................................. 3

Copantila v. Fiskardo Estiatorio, Inc.,
    788 F.Supp.2d 253 (S.D.N.Y. 2011)................................................................ 7

Davis v. Ching Yi Cheng,
    2017 WL 6622545 (E.D.N.Y. Dec. 28, 2017) ................................................ 16

Employers Ins. of Wausau v. Musick, Peeler, & Garrett,
    871 F. Supp. 381 (S.D. Cal. 1994)................................................................... 21

Figurowski v. Marbil Invs., LLC,
    No. 14-CV-7034 (JS) (GRB), 2015 WL 4000500 (E.D.N.Y. July 1, 2015) ................... 19

Fuchs Sugars & Syrups, Inc. v. Amstar Corp.,
    402 F. Supp. 636 (S.D.N.Y. 1975) .................................................................. 21

Gebhardt v. Allspect, Inc.,
    96 F. Supp. 2d 331 (S.D.N.Y. 2000)................................................................. 3

Gibilly v. City of New York,
    No. 19-CIV.-11884, 2021 WL 3667981 (S.D.N.Y. Aug. 17, 2021) ................................ 2

Gillian v. Starjem Rest. Corp.,
    2011 WL 4639842 (S.D.N.Y. Oct. 4, 2011) .................................................... 15

Goldberg v. Pace Univ.,
    88 F.4th 204 (2d Cir. 2023) ............................................................................. 2

Herman v. RSR Sec. Servs. Ltd.,
    172 F.3d 132 (2d Cir. 1999)............................................................................. 15

Hill v. Cray Rsch., Inc.,
    864 F. Supp. 1070 (D.N.M. 1991) .................................................................. 21

Hoffman v. Bear Chase Brewing Co., LLC,
    No. 21-CIV.-1443, 2023 WL 384293 (E.D. Va. Jan. 18, 2023)...................................... 13

Hoffman v. Bear Chase Brewing Co., LLC,
    2023 WL 2352926 (E.D Va. Mar. 3, 2023) .................................................... 13

In re Domino's Pizza, Inc.,
    No. 16-CIV.-6274, 2018 WL 1587593 (S.D.N.Y. Mar. 27, 2018)..................................... 9

Irizarry v. Catsimatidis,
    722 F.3d 99 (2d Cir. 2013)..........................................................................15

Kolari v. New York-Presbyterian Hosp.,
    455 F.3d 118 (2d Cir. 2006)........................................................................18

Labriola v. Clinton Ent. Mgmt., LLC,
    No. 15 C 4123, 2017 WL 1150989 (N.D. Ill. Mar. 28, 2017) ....................9, 10

Lively v. WAFRA Inv. Advisory Grp., Inc.,
    6 F.4th 293 (2d Cir. 2021) ..........................................................2, 5 n. 3, 6 n. 4

Lynch v. City of New York,
    952 F.3d 67 (2d Cir. 2020)...........................................................................2

Lyndonville Sav. Bank & Tr. v. Lussier,
    211 F.3d 697 (2d Cir. 2000).........................................................................18

Maldonado v. BTB Events & Celebrations, Inc.,
    990 F. Supp. 2d 382 (S.D.N.Y. 2013)..................................................7, 10, 11

Mangahas v. Eight Oranges Inc.,
    754 F. Supp. 3d 468 (S.D.N.Y. 2024)..........................................................15

Nault's Auto. Sales v. Am. Honda Motor Co.,
    148 F.R.D. 25 (D.N.H. 1993) ......................................................................22

Nwajei v. E&E of Five Towns, Inc.,
    No. 23-CIV.-5541, 2024 WL 3522108 (E.D.N.Y. July 9, 2024) ....................13

Nwajei v. E&E of Five Towns, Inc.,
    2024 WL 3520633 (E.D.N.Y. July 24, 2024).................................................13

Press v. Primavera,
    685 F. Supp. 3d 216 (S.D.N.Y. 2023)..........................................................4 n. 1

Rivera v. Ndola Pharmacy Corp.,
    497 F. Supp. 2d 381 (E.D.N.Y. 2007) .......................................................18, 20

Secured Mail Sols. LLC v. Universal Wilde, Inc.,
    873 F.3d 905 (Fed. Cir. 2017)......................................................................2

Shahriar v. Smith & Wollensky Rest. Grp., Inc.,
    659 F.3d 234 (2d Cir. 2011)...............................................................18, 19, 20

Smith v. Local 819 I.B.T. Pension Plan,
    291 F.3d 236 (2d Cir. 2002).................................................................................. 3

Staehr v. Hartford Fin. Servs. Grp., Inc.,
    547 F.3d 406 (2d Cir. 2008)............................................................................ 4 n. 1

Teamsters Nat'l Freight Indus. Negotiating Comm. et al. v. Howard's Express, Inc. (In re
Howard's Express, Inc.),
    151 Fed. Appx. 46 (2d Cir. 2005) ................................................................. 4 n. 1

Tecocoatzi-Ortiz v. Just Salad LLC,
    No. 18-CV-7342 (JGK), 2022 WL 596831 (S.D.N.Y. Feb. 25, 2022)................ 6, 7, 9, 10

The Wilderness Soc'y v. Kane County, Utah,
    581 F.3d 1198 (10th Cir. 2009) ...................................................................... 22

Thomas v. EONY LLC,
    No. 13-CIV.-8512, 2015 WL 1809085 (S.D.N.Y. Apr. 21, 2015) ................... 19

Tracy v. NVR, Inc.,
    667 F. Supp. 2d 244 (W.D.N.Y. 2009) ........................................................... 15

United Mine Workers of Am. v. Gibbs,
    383 U.S. 715 218 (1966)................................................................................. 17

United States of America v. Goletiani,
    No.: 1:11-cr-591 (FB) (RLM).......................................................................... 4

Villanueva v. 179 Third Ave. Rest Inc.,
    500 F. Supp. 3d 219 (S.D.N.Y. 2020).............................................................. 7

Villanueva v. 179 Third Ave. Rest Inc.,
    No. 16-CIV.-8782 (AJN) (RWL), 2021 WL 2139441 (S.D.N.Y. May 26, 2021) ............ 7

Wolman v. Catholic Health Sys. of Long Island, Inc.,
    853 F. Supp. 2d 290 (E.D.N.Y. 2012) ............................................................ 15

Yeh v. Han Dynasty, Inc.,
    No. 18-CIV.-6018, 2020 WL 883501 (S.D.N.Y. Feb. 24, 2020) ...................... 14

Young v. New York City Transit Authority,
    903 F.2d 146 (2d Cir.1990)............................................................................. 19

Ysais v. N.M. Judicial Standard Comm'n,
    616 F. Supp. 2d 1176 (D.N.M. 2009) ............................................................. 21

## **Statutes**

12 NYCRR § 1.3.............................................................................................20

12 NYCRR § 2.2.............................................................................................20

26 U.S.C. § 206.............................................................................................. 6

28 U.S.C. § 1367. ............................................................................. 1, 17, 18, 19

29 U.S.C. § 201.............................................................................................20

29 U.S.C. § 203. .................................................................................... 8, 12, 13

29 U.S.C. § 216. ........................................................................................ 8, 12

115 P.L. 141 § 1201.3.....................................................................................12

N.Y. Lab. L. § 195.........................................................................................20

N.Y. Lab. L. § 196-d......................................................................................20

N.Y. Lab. L. § 198.........................................................................................20

N.Y. Lab. L. § 650.........................................................................................20

## **Rules**

Fed. R. Civ. P. 7. .......................................................................................... 2

Fed. R. Civ. P. 12. ............................................................................... 1, 2, 21

## **Regulations**

29 C.F.R. § 531.50. ........................................................................................ 9

29 C.F.R. § 531.52. ............................................................................... 8, 9, 13

29 C.F.R. § 531.55. .................................................................................... 8, 9

29 C.F.R. § 541.100. ...................................................................................... 13

29 C.F.R. § 541.102.......................................................................................14

Wage and Hour Division, Department of Labor Opinion Letter,
    2025 WL 243158, at *1 (Jan. 14, 2025)..............................................................13

## PRELIMINARY STATEMENT

Plaintiff Katherine Fernandez's (hereinafter "Fernandez" or "Plaintiff") original Complaint (hereinafter the "Complaint," ECF Docket Entry 1) and First Amended Complaint (hereinafter "FAC," ECF Docket Entry 15) each assert a single claim under the Fair Labor Standards Act ("FLSA") for unlawful deductions from gratuities, and three (3) state-law causes of action under the New York Labor Law ("NYLL") for: (a) unlawful deductions from gratuities; (b) minimum wage violations; and (c) recordkeeping violations.

As demonstrated below, Plaintiff's federal claim fails as a matter of law, and the Court should dismiss those claims pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (hereinafter referred to as "Rules" or "Rule"). Once the federal claim is dismissed, the Court should decline to exercise supplemental jurisdiction over the remaining state-law claims pursuant to 28 U.S.C. § 1367(c).

Even if the federal claim survives this motion, this Court should nonetheless decline to exercise supplemental jurisdiction over the third and fourth causes of action, which have nothing whatsoever to do with the federal claim. Indeed, the claims set forth in the third and fourth cause of action have no common nucleus of operative facts to the core federal claim concerning unlawfully withheld tips.

In addition, the Complaint contains immaterial, impertinent, and scandalous allegations—most notably false assertions that *Defendants* and non-party Mayor Eric Adams ("Mayor Adams") are "convicted felons," all of which have no bearing on the wage-and-hour issues presented. These allegations are prejudicial, wholly irrelevant, and must be stricken under Rule 12(f). Indeed, Plaintiff's allegations constitute abuse of the litigation privilege to defamation and she must be appropriately sanctioned for same, together with the opt-in Plaintiffs and their counsel.

## STANDARD OF REVIEW

Under the Rules, a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." See Lively v. WAFRA Inv. Advisory Grp., Inc., 6 F.4th 293, 305 (2d Cir. 2021) ("[B]oth plaintiffs and defendants can move for judgment on the pleadings under Rule 12(c)") (citing Fed. R. Civ. P. 12(c)). "'Pleadings' include both the 'complaint' and the answer to [the] complaint.'" See Lively, 6 F.4th at 301 (quoting Fed. R. Civ. P. 7(a)).

When a defendant seeks dismissal of a complaint under Rule 12(c), courts "apply the same standard as they would to a Rule 12(b)(6) motion ...." See Gibilly v. City of New York, No. 19-CIV.-11884, 2021 WL 3667981, at *2 (S.D.N.Y. Aug. 17, 2021); see also Lively, 6 F.4th at 301. Accordingly, "[t]o survive a motion for judgment on the pleadings, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face ...." See Goldberg v. Pace Univ., 88 F.4th 204, 210 (2d Cir. 2023) (quotation omitted).

In assessing a Rule 12(c) motion, the court "may consider all documents that qualify as part of the non-movant's 'pleading,' including (1) the complaint or answer, (2) documents attached to the pleading, (3) documents incorporated by reference in or integral to the pleading, and (4) matters of which the court may take judicial notice." See Lively, 6 F.4th at 306.

On a Rule 12(c) motion, "the court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." See Lynch v. City of New York, 952 F.3d 67, 75 (2d Cir. 2020). At the same time, the "court need not 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.'" See Secured Mail Sols. LLC v. Universal Wilde, Inc., 873 F.3d 905, 913 (Fed. Cir. 2017) (quoting Anderson v. Kimberly-Clark Corp., 570 Fed. Appx. 927, 931 (Fed. Cir. 2014)).

A claim has "facial plausibility" only if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.; see also Anschutz Corp. v. Merrill Lynch & Co., 690 F.3d 98 (2d Cir. 2012). "Factual allegations must be enough to raise a right to relief above the speculative level," and the stated grounds for relief must consist of more than "labels and conclusion." See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545, 555 (2007).

"[C]onclusory allegations or legal conclusions masquerading as factual conclusions will [therefore] not suffice to prevent a motion to dismiss." See Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002) (quoting Gebhardt v. Allspect, Inc., 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000)) (internal citation and quotation marks omitted in original).

Although the complaint need not contain detailed factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Nor will a pleader's "formulaic recitation of the elements of a cause of action" be considered adequate to overcome a Rule 12(b)(6) motion. See Twombly, 550 U.S. at 555.

A court may also convert a motion for judgment on the pleadings into a motion for summary judgment if "'matters outside the pleadings are presented to and not excluded by the court.'" See Cleveland v. Caplaw Enterprises, 448 F.3d 518, 521 (2d Cir. 2006).

As set forth below, the FAC in this case falls woefully short of properly pleading any of Plaintiff's claims.

As a result, Defendants are entitled to judgment on the pleadings and the FAC must be dismissed; alternatively, this Court should decline to exercise supplemental jurisdiction over the third and fourth causes of action.

## FACTS

On May 9, 2025, Plaintiff filed the Complaint. See ECF Docket Entry 1. There, Plaintiff alleges that individual Defendants Robert Petrosyants ("Petrosyants") and Mariana Shahmuradyan ("Shahmuradyan") are "convicted felons," meaning both Petrosyants and Shahmuradyan have been found guilty of felonies. See Id. ¶ 1.

It is true that Petrosyants is a convicted felon. See United States of America v. Goletiani, No.: 1:11-cr-591 (FB) (RLM) (hereinafter the "Criminal Case"), ECF Docket Entry 123[1] (finding Petrosyants guilty of one (1) count of conspiracy to cause the filing of false currency transaction reports on November 14, 2014). In the Criminal Case, a superseding indictment was filed on November 6, 2023, naming Lasha Goletiani, Zhan Petrosyants,[2] and Eldar Akhmedov as co-defendants to Petrosyants. Id., ECF Docket Entry 57. In the superseding indictment, Petrosyants is accused of owning and managing two medical billing companies, and writing checks for which false currency transaction reports were filed. Id. ¶¶ 14, 21-22.

Notably, however, Mariana is not listed as a defendant in the Criminal Case, nor does a public docket search on PACER reveal any criminal cases against her. As set forth further below, the Complaint's allegation that she is a convicted felon is demonstrably false.

---

[1] This court may take judicial notice of the Criminal Case. See Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425 (2d Cir. 2008) ("[C]ourts routinely take judicial notice of documents filed in other courts ... to establish the fact of such litigation and related filings." (citation omitted)); see also Teamsters Nat'l Freight Indus. Negotiating Comm. et al. v. Howard's Express, Inc. (In re Howard's Express, Inc.), 151 Fed. Appx. 46, 48 (2d Cir. 2005) (stating that courts are empowered to take judicial notice of public filings, including a court's docket); Press v. Primavera, 685 F. Supp. 3d 216, 224–25 (S.D.N.Y. 2023) (collecting cases and noting that "[c]ourts in this District routinely take judicial notice, on a motion to dismiss, of public filings like this, including filings made on court dockets" and government orders publicly online).

[2] Zhan is Petrosyants' twin brother according to the superseding indictment. See Criminal Case, ECF Docket Entry 57 ¶ 15.

The Complaint alleges that Defendants steal employee tips by requiring them to share tips with a manager, and that the Defendants failed to provide employees with "appropriate notices" such that they could take the tip credit.  See Complaint ¶¶ 2-3.

The Complaint also alleges that Fernandez was a busser/runner at Defendants' restaurant who was paid less than the minimum wage, but that Defendants were not entitled to pay her the tipped minimum wage because they did not give her notice of the tip credit.  Id. ¶¶ 25-26.  Fernandez also specifically refers to the paystubs[3] she received at the restaurant as inaccurate.  Id. ¶¶ 29-30.

Plaintiff's first claim for relief in the complaint is for illegal deductions from gratuities under the FLSA.  Id. ¶¶ 33-37.   The core facts of that cause of action are that tips were being "knowingly retained/misappropriated" by the Defendants.  Id. ¶ 36.  Plaintiff's second claim for relief is identical to the first, except that it is a cause of action for illegal deductions from gratuities under the NYLL.  Id. ¶¶ 38-40.  As argued further below, these two claims have a common nucleus of operative fact because they both relate to tips.

Plaintiff's third claim for relief, however, has no relationship to the claim she brought under the FLSA.  It seeks to recover the minimum wage under the NYLL, and there is no corresponding claim under the FLSA.  See Id. ¶ 42 (alleging that Plaintiff was paid less than the minimum wage).  Similarly, Plaintiff's fourth claim for relief for recordkeeping violations has nothing to do with her claim under the FLSA for illegal deductions from tips.  Id. ¶ 45 (alleging that Defendants not give Plaintiff and others notice regarding their pay rates).

---

[3] This Court may therefore review the paystubs as they are referred to in the complaint.  See Lively, 6 F.4th at 306 (permitting a court to review all documents that qualify as part of the non-movant's 'pleading,' including documents attached to the pleading, documents incorporated by reference in or integral to the pleading) (emphasis added).  By pursuing a recordkeeping claim and specifically referring to pay stubs that are inaccurate, Fernandez's pay stubs are integral to the complaint.

On June 25, 2025, opt-in Plaintiff Javier Molina ("Molina") filed a consent to sue under the FLSA.  See ECF Docket Entry 11.  On July 2, 2025, opt-in Plaintiff Adrian Montor-Peran ("Peran") filed a consent to sue under the FLSA.  See ECF Docket Entry 12.

On July 23, 2025, after opt-in Plaintiffs Molina and Peran joined this case, Plaintiffs filed the FAC.  See ECF Docket Entry 15.

The FAC is virtually identical to the Complaint.  Compare ECF Docket Entry 15 with ECF Docket Entry 1.

It contains the same false allegations that Mariana is a convicted felon.  See ECF Docket Entry 15 ¶ 1.  The FAC asserts the same four (4) causes of action as the Complaint did.  Id. ¶¶ 38-51.  Similarly, all the allegations are the same, except that Plaintiffs add another basis for their assertion that tips were misappropriated, namely, through the use of a three percent (3%) service charge that Plaintiffs claim Defendants did not provide adequate notice to customers is not a gratuity.  Id. ¶¶ 29-33.[4]

In all other respects, the FAC is functionally the same as the Complaint.

## ARGUMENT

### I.    THE COURT SHOULD DISMISS PLAINTIFF'S FLSA CLAIM

"The FLSA requires covered employers to pay employees a minimum wage of at least $7.25 per hour."  See Tecocoatzi-Ortiz v. Just Salad LLC, No. 18-CV-7342 (JGK), 2022 WL 596831, at *6 (S.D.N.Y. Feb. 25, 2022) (citing 29 U.S.C. § 206(a)(1)).

---

[4] Plaintiff refers to "all printed materials" in the FAC to argue that Defendants failed to represent the three percent (3%) charge was not a gratuity.  Accordingly, like Fernandez's pay stubs, any such printed materials are documents incorporated by reference in or integral to the pleading such that this Court may consider them on this motion.  See Lively, 6 F.4th at 306.

"The FLSA's definition of 'wage' provides that, under certain circumstances, employers of 'tipped employees' may apply part of that employees' tips towards the minimum wage." Id. (internal citations omitted) ("The practice of crediting some of an employee's tips towards the minimum wage is commonly referred to as taking a 'tip credit' ... [a]n employee has a cause of action arising out of an employer's failure to comply with FLSA tip credit requirements only if, without the tip credit, the employee's compensation would fall short of the minimum wage").

Specifically, with respect to "tipped workers," both the FLSA and NYLL provide:

> [A]n employer may pay a tipped worker a cash wage that is lower than the statutory minimum wage, provided that the cash wage and the employee's tips, taken together, are at least equivalent to the minimum wage, and this allowance against the minimum cash wage is known as a 'tip credit.' An employer may not take a tip credit unless (1) such employee has been informed by the employer of the tip credit provision; and (2) all tips received by such employee have been retained by the employee. This provision is strictly construed. Under both the FLSA and the NYLL, the burden is on the employer to show that they have complied with the tip credit requirements.

See Villanueva v. 179 Third Ave. Rest Inc., 500 F. Supp. 3d 219, 234 (S.D.N.Y. 2020), report & recommendation adopted, No. 16-CIV.-8782 (AJN) (RWL), 2021 WL 2139441 (S.D.N.Y. May 26, 2021) (internal citations omitted) (cleaned up); Maldonado v. BTB Events & Celebrations, Inc., 990 F. Supp. 2d 382, 386-87 (S.D.N.Y. 2013) ("Maldonado") ("[T]he FLSA and NYLL allow an employer to take a 'tip credit' and thereby pay less than the minimum wage as base pay only where the employee keeps the entirety of any gratuity left by the customer"); Copantitla v. Fiskardo Estiatorio, Inc., 788 F.Supp.2d 253, 287, 290 (S.D.N.Y. 2011) (explaining the FLSA and NYLL require an employer allow employees to retain all tips as a precondition for taking a 'tip credit').

Here, Plaintiffs allege that Defendants misappropriated tips in three (3) distinct manners: (i) the use of a service charge; (ii) allowing a manager to participate in a tip pool; and (iii) failure to give notice of the tip credit. Each allegation is addressed *seriatim*.

A.  Plaintiffs' Claims Regarding the 3% Service Charge Fail to State a Claim

In 2018, Section 3(m) of the FLSA was amended to provide that "[a]ny employer who violates [§] 3(m)(2)(B) shall be liable to the [employee(s)] affected in the amount of ... all such tips unlawfully kept by the employer…." See 29 U.S.C. §§ 203(m)(2)(B), 216(b).  As the FLSA "does not explicitly define 'tips' or 'service charges[,]' the United States Department of Labor ("USDOL") regulations have, accordingly, filled in [the] statutory gap." See Benavidez v. Greenwich Hotel Ltd. P'ship, No. 3:16-CV-191 (VAB), 2019 WL 1230357, at *8 (D. Conn. Mar. 15, 2019). The regulations define a "tip" as follows:

> A tip is a sum presented by a customer as a gift or gratuity in recognition of some service performed for the customer. It is to be distinguished from payment of a charge, if any, made for the service. Whether a tip is to be given, and its amount, are matters determined solely by the customer. An employer that takes a tip credit against its minimum wage obligations is prohibited from using an employee's tips for any reason other than that which is statutorily permitted in [§] 3(m)(2)(A): As a credit against its minimum wage obligations to the employee, or in furtherance of a tip pool limited to employees who customarily and regularly receive tips.  Only tips actually received by an employee as money belonging to the employee may be counted in determining whether the person is a "tipped employee" within the meaning of the [FLSA] and in applying … [§] 3(m)(2)(A) which govern wage credits for tips.

See 29 C.F.R. § 531.52(a). By contrast, the USDOL regulations define a service charge as:

> A compulsory charge for service, such as 15 percent of the amount of the bill, imposed on a customer by an employer's establishment, is not a tip and, even if distributed by the employer to its employees, cannot be counted as a tip received in applying the provisions of [§§] 3(m)(2)(A) and 3(t). Similarly, where negotiations between a hotel and a customer for banquet facilities include amounts for distribution to employees of the hotel, the amounts so distributed are not counted as tips received. As stated above, service charges and other similar sums which become part of the employer's gross receipts are not tips for the purposes of the [FLSA]. Where such sums are distributed by the employer to its employees, however, they may be used in their entirety to satisfy the monetary requirements of the [FLSA].

8

See 29 C.F.R. § 531.55(a)-(b).  To this end, under the FLSA, a service charge is a compulsory charge imposed by the employer, while a tip is a voluntary amount give in gratuity by a customer for service staff, and, although employers cannot retain any portion of their employees' tips, service charges are not considered to be tips, and employers can therefore keep all proceeds that come from said charge. See Id.; see also 29 C.F.R. § 531.52(a); Tecocoatzi-Ortiz, No. 18-CV-7342 (JGK), 2022 WL 596831, at *7 ("[U]nder the FLSA, a compulsory charge such as the delivery fee is not a tip"); In re Domino's Pizza, Inc., No. 16-CIV.-6274, 2018 WL 1587593, at *3-4 (S.D.N.Y. Mar. 27, 2018) (holding a mandatory flat delivery fee is a "compulsory charge for service, which does not constitute a tip"); Benavidez, No. 3:16-CV-191 (VAB), 2019 WL 1230357, at *9 (collecting cases) ("[W]here a service charge is mandatory, and is included in the employer's gross receipts, it is properly deemed a service charge, and not a tip, for purposes of the FLSA. Where, however, a customer retains discretion over its payment, it is a tip. [W]here a service charge has been used and the proceeds of the service charge are distributed to employees, the proceeds distributed to employees are counted as wages towards satisfying the employer's minimum wage obligations."); Labriola v. Clinton Ent. Mgmt., LLC, No. 15 C 4123, 2017 WL 1150989, at *11 (N.D. Ill. Mar. 28, 2017) (citing 29 C.F.R. §§ 531.50, 531.55) ("Service charges that are distributed from employers to employees are counted against an employer's minimum wage obligations under the FLSA, while tips are not; employers must still pay tipped employees a wage").

Here, applying the foregoing law in mind, the Plaintiffs' pleadings are woefully deficient to provide a basis for relief.  The allegations provide that "Defendants charged special-event patrons a 3% 'service charge' in addition to food and beverage charges," but do not allege whether the service charge was mandatory for special-event patrons.  See ECF Docket Entry 15 ¶ 29.

The allegation can be read as a mandatory charge, and as such, fails to state a claim.

9

Courts in this Circuit have consistently held that the USDOL regulations are explicit in distinguishing a service charge from a tip under the FLSA, and that service charges "are counted against an employer's minimum wage obligations under the FLSA, while tips are not; employers must still pay tipped employees a wage." See Labriola, No. 15-CIV.-4123, 2017 WL 1150989, at *11 (holding that where dance fees were "(1) collected by the Club as part of its gross receipts, (2) distributed to the dancers, and (3) mandatory, rather than discretionary, amounts, these fees are service charges, not tips[,] [and] therefore count against Defendant's minimum wage obligations"); Tecocoatzi-Ortiz, No. 18-CV-7342 (JGK), 2022 WL 596831, at *7 (rejecting plaintiffs' contentions that defendants illegally reduced or retained their tips in violation of the FLSA by instituting a delivery fee and not emitting any part of that fee to the plaintiffs and by deducting credit card processing fees from the plaintiffs' tips that were paid by credit card because "irrespective of who retained the fee, the plaintiffs' claims [were] foreclosed under the FLSA, [which provides] a compulsory charge such as the delivery fee is not a tip"); Barenboim v. Starbucks Corp., 698 F.3d 104 (2d Cir. 2012), certified question accepted, 20 N.Y.3d 914 (2012), and certified question answered, 21 N.Y.3d 460 (2013) (under federal law, an employer may retain part of a compulsory charge that it purports to collect to compensate its employees and still claim a tip credit).

To the extent that the allegation is unclear as to whether it is mandatory or left in the discretion of the customer, the FAC still fails to state a claim. This is because, even if the Defendants may have misrepresented the service charge as a tip to their customers, it is irrelevant to the analysis of whether Defendants illegally withheld tips in violation of the FLSA. See Barenboim, *supra*; see also Maldonado, 990 F. Supp. 2d at 383.

With respect to this point, <u>Maldonado</u> is illustrative. <u>Maldonado</u> "center[ed] on a mandatory charge that [defendants] imposed in connection with delivery orders placed over the phone. For those orders, [defendants] added a mandatory surcharge to customer invoices amounting to 11% of the total food and drink bill (the "11% surcharge"). However, [defendants] did not treat the 11% surcharge as a tip or gratuity owed to delivery personnel. [Rather, defendants] instead retained a portion of the 11% surcharge, and used it to pay various administrative costs and business expenses[,] distributed the remainder to delivery personnel, and credited that amount against the statutory minimum-wage obligations." <u>Id.</u>

Critically, Defendants did not give customers a written explanation (on the invoices or otherwise) of the 11% surcharge, and specifically instructed delivery personnel not to discuss fees with customers. <u>Id.</u> at 386. Thus, as in the instant case, where the pleadings are unclear about whether the 3% charge is mandatory, the plaintiffs in <u>Maldonado</u> argued that the 11% surcharge was a "gratuity" (the relevant term under the FLSA), and that Defendants thus violated federal law in retaining part of that charge. <u>Id.</u> at 387. The Court in <u>Maldonado</u> ultimately held the surcharge imposed in connection with employer's catering deliveries was not a "tip" within the meaning of FLSA because the charge was non-negotiable, at no time was decision whether to pay surcharge voluntary for customers, and defendants, at all times, included surcharge in its gross receipts. <u>Id.</u> at 389. The Court rejected plaintiffs' argument that because the compulsory charge could have reasonably been understood to be a gratuity by customers, the FLSA therefore "prohibits an employer from misappropriating those charges from the employee." <u>Id.</u>

Such is the case here, where the complaint fails to distinguish whether the charge is mandatory or permissive such that it fails to state a claim.

Moreover, Plaintiff's pleading relies on "all printed materials" in arguing that a customer is not informed that the 3% service charge is not a gratuity; Plaintiff is wrong.  In every contract and receipt Defendants provide their customers, there is an indication of an eighteen percent (18%) gratuity *and* a three percent (3%) service charge, such that the two items being listed together next to each other makes it evident that the eighteen percent (18%) gratuity goes to the employees as tips and the three percent (3%) service charge is not a gratuity.  See Declaration of Emanuel Kataev, Esq. ("Kataev Decl.") ¶ 3, **Exhibit "A."**  Indeed, it is common sense, in light of these printed materials referenced by Plaintiff in her own pleadings, that the service charge is not a gratuity because that would render the eighteen percent (18%) gratuity meaningless.

Accordingly, Plaintiffs' claims concerning the three percent (3%) service charge fail to state a claim for relief under the FLSA, and must be dismissed as a matter of law, because the charge as pled is mandatory, or – in the alternative – is not properly alleged to be discretionary.

B.  Plaintiffs' Claims Regarding a Manager in the Tip Pool Fail to State a Claim

In 2018, Section 3(m) of the FLSA was also amended to provide that "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." See 29 U.S.C. §§ 203(m)(2)(B), 216(b); see also 115 P.L. 141 § 1201.3.

In this case, Plaintiffs also contend that Defendants violated the FLSA by permitting a manager to participate in an employee tip pool.  See ECF Docket Entry 15 ¶¶ 26-28.  The FLSA provides that "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." See 29 U.S.C. § 203(m)(2)(B).

Although Congress did not define "managers" or "supervisors" under the statute, "[USDOL] regulations have ... filled in [the] statutory gap." See Nwajei v. E&E of Five Towns, Inc., No. 23-CIV.-5541, 2024 WL 3522108, at *6 (E.D.N.Y. July 9, 2024), report and recommendation adopted, 2024 WL 3520633 (E.D.N.Y. July 24, 2024) (applying USDOL regulations to interpret FLSA) (citation omitted).

The applicable regulations promulgated by the USDOL provide that, under 29 U.S.C. § 203(m)(2)(B), "the term 'manager' or 'supervisor' shall mean any employee whose duties match those of an executive employee as described in § 541.100(a)(2) through (4) or § 541.100 of this chapter." See 29 C.F.R. § 531.52(b)(2); see also Wage and Hour Division, Department of Labor Opinion Letter ("DOL Opinion Letter"), 2025 WL 243158, at *1 (Jan. 14, 2025) ("The Department's regulations implementing section 3(m)(2)(B) define a manager or supervisor who may not keep tips as an employee who meets the executive employee duties test at 29 C.F.R. §§ 541.100(a)(2)-(4)").  The USDOL's definition of "managers or supervisors" focuses on "duties that are commonly understood to be assigned to managers' and 'supervisors[.]'" See Hoffman v. Bear Chase Brewing Co., LLC, No. 21-CIV.-1443, 2023 WL 384293, at *8, (E.D. Va. Jan. 18, 2023), report and recommendation adopted, 2023 WL 2352926 (E.D Va. Mar. 3, 2023).

Pursuant to the USDOL's interpretation, as codified in the Code of Federal Regulations,

(a) The term "employee employed in a bona fide executive capacity" in section 13(a)(1) of the Act shall mean any employee: ...

> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
> (3) Who customarily and regularly directs the work of two or more other employees; and
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

See 29 C.F.R. § 541.100 (a)(2)–(4).

Further, the USDOL "has set forth a non-exhaustive list of activities that constitute management.'" <u>See</u> <u>Yeh v. Han Dynasty, Inc.</u>, No. 18-CIV.-6018, 2020 WL 883501, at *8 (S.D.N.Y. Feb. 24, 2020). Such activities include:

> interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

<u>See</u> 29 C.F.R. § 541.102. Here, the complaint is barren as to any allegations supported by actual facts to properly state a claim for relief concerning Defendants' tip pool.

Plaintiffs allege that Fernandez was required to participate in a tip pool each night that included a "manager" named Julio Perez ("Perez"), who – although listed in the waiters' section of the restaurant's tip sheets – was in fact a manager who had "authority to hire, fire and discipline employees" and "also led pre-shift managers as a manager and instructed employees with respect to their daily tasks." <u>See</u> ECF Docket Entry <u>15</u> ¶¶ 27-28. These allegations are completely insufficient to properly plead Perez's alleged status as a manager.

Setting aside the fact that Perez served customers such that he was entitled to tips (which will be addressed in Defendants' forthcoming motion for summary judgment), Plaintiffs entirely fail to plead what Perez's primary duty was, that he customarily and regularly directed the work of others, and does not provide any details about who, if anyone, Perez ever hired, fired, advanced, or promoted.

Critically, the test for whether an individual is an "employer" forbidden from keeping employee's tips under the FLSA and NYLL is the same as the one used to assess individual liability and the Court considers factors including whether the individual: "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." See Mangahas v. Eight Oranges Inc., 754 F. Supp. 3d 468, 501 (S.D.N.Y. 2024) (citing, e.g., Carter v. Dutchess Community College, 735 F.2d 8, 12 (2d Cir. 1984); Gillian v. Starjem Rest. Corp., 2011 WL 4639842, at *4 (S.D.N.Y. Oct. 4, 2011)).

These factors are not exclusive and no one factor is dispositive. See Irizarry v. Catsimatidis, 722 F.3d 99, 105 (2d Cir. 2013); see also Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999) (to determine whether a party qualifies as an "employer" under both the FLSA and NYLL's "generous definitions," the relevant inquiry is "whether the alleged employer possessed the power to control the workers in question … with an eye to the economic reality presented by the facts of each case"); Tracy v. NVR, Inc., 667 F. Supp. 2d 244, 247 (W.D.N.Y. 2009) (dismissing FLSA claim against Human Resources officer because allegations presuming control based on that officer's job title did not sufficiently allege his control over plaintiff); Wolman v. Catholic Health Sys. of Long Island, Inc., 853 F. Supp. 2d 290, 299 (E.D.N.Y. 2012) ("[C]ourts will not find individual liability when the relationship between plaintiff-employees and the putative employer is too attenuated, especially when the entity has a significant number of employees").

In Apolinar v. R.J. 49 Rest., LLC, 2016 WL 2903278 (S.D.N.Y. May 18, 2016), the plaintiffs sued their boss's mother "using identical language that plaintiffs use with respect to the other individual defendants." Id. at *14.

The Court in <u>Apolinar</u> dismissed the claims against the boss's mother since there were solely conclusory allegations regarding her duties "which merely plead the presence of the factors relevant to whether an individual is a joint employer" <u>Id.</u> at *14-15.  The Court in <u>Apolinar</u> held that is insufficient to plausibly show that he or she was their employer for purposes of the FLSA.

In the instant case, Fernandez similarly makes conclusory allegations in the FAC with respect to the "manager" status of Perez, which are insufficient to state a claim and thus warrant dismissal. The boilerplate allegations simply state that Perez was manager who had "authority to hire, fire and discipline employees" and "also led pre-shift managers as a manager and instructed employees with respect to their daily tasks."  <u>See</u> ECF Docket Entry <u>15</u> ¶¶ 27-28.

But Plaintiffs' "formulaic recitation of the elements of a cause of action" is insufficient to survive dismissal. <u>See</u> <u>Twombly</u>, 550 U.S. at 555.  Plaintiffs do not allege *how* Perez actually asserted any of the foregoing alleged conduct over employees so as to state a claim for relief.

In other words, Plaintiffs do not allege that Perez actually hired or fired any employee, set any employee's schedule, or determined the compensation of any employee.  This is not enough to establish that Perez is a manager, and is therefore insufficient to state a claim.  <u>See</u> <u>Davis v. Ching Yi Cheng</u>, 2017 WL 6622545 (E.D.N.Y. Dec. 28, 2017) (dismissing claims against all but one (1) individual defendant since there was "absolutely no evidence that any of the other co-defendants …, had anything to do with the Plaintiff's employment" including interviewing, hiring, or having anything to do with employment or wages).

Accordingly, Plaintiffs fail to state a claim under the FLSA as to the tip pool claim.

C.  Plaintiffs' Claims Regarding Lack of Notice of the Tip Credit Fail to State a Claim

Plaintiffs also allege in the FAC that Defendants failed to give them notice as required under the FLSA to be entitled to take the tip credit.  See ECF Docket Entry 15 ¶¶ 26.  However, Fernandez's pay stubs, which are integral to the Complaint and the FAC, prove otherwise.

Every pay stub issued to Fernandez contained a section titled "Additional Information," which provided that: (i) her regular rate of pay or the minimum wage was $16.50; (ii) she was paid at an hourly rate below the minimum wage, i.e., $15.00; (iii) a corresponding tip credit of $1.50 was taken; (iv) the number of hours she worked; (v) the dollar amount of the tip credit allowed; (vi) a tip makeup section to inform her of the amount she was paid if her wages with tips dipped below the minimum wage; and (vii) the total amount of the tip credit deduction taken.  See Declaration of Emanuel Kataev, Esq. ("Kataev Decl.") ¶ 4, **Exhibit "B."**

In light of the fact the pay stubs Fernandez herself produced in this case, see Kataev Decl. ¶ 5, show that Fernandez was notified of the tip credit as required under the FLSA, her claims of illegal deductions of tips due to lack of notice utterly fail. Accordingly, Plaintiffs' claim under the FLSA fails in each respect and must be dismissed as a matter of law.

## II.  THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS

Supplemental jurisdiction extends to state law claims that so relate to the claims within the court's original jurisdiction that they form part of the same case or controversy. See 28 U.S.C. § 1367(a).

Claims "form part of the same case or controversy" when they "derive from a common nucleus of operative fact." See City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 165 (1997) (citing United Mine Workers of America v. Gibbs, 383 U.S. 715, 725 (1966)).

To determine whether two disputes arise from a common nucleus of operative facts, courts ask "whether the facts underlying the federal and state claims substantially overlapped or the federal claim necessarily brought the facts underlying the state claim before the court." See Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 335 (2d Cir. 2006) (alteration omitted) (quoting Lyndonville Sav. Bank & Tr. v. Lussier, 211 F.3d 697, 704 (2d Cir. 2000)).

Here, the alleged jurisdictional basis over Plaintiff's state law claims against Defendants is supplemental jurisdiction, under 28 U.S.C. § 1367. See Docket Entry 15 ¶ 4. However, since the sole FLSA claim should be dismissed for the reasons articulated above, this Court should decline to exercise supplemental jurisdiction over any remaining state law claims. See Cain v. Mercy College, 2022 WL 779311, at *2 (2d Cir. 2022) (declining to exercise supplemental jurisdiction over state law claims after dismissing federal claims); see also Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 119 (2d Cir. 2006) ("'the balance of factors to be considered ... judicial economy, convenience, fairness, and comity ... will point toward declining to exercise jurisdiction over the remaining state-law claims.' [internal citation omitted]"). Moreover, even if the FLSA claim is to survive, this Court must nonetheless dismiss Plaintiffs' third and fourth causes of action related to the minimum wage and recordkeeping violations, which have nothing to do with Plaintiffs' FLSA claim concerning allegedly unlawfully withheld tips.

In Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 245 (2d Cir. 2011), the Second Circuit held that although "the NYLL and FLSA actions clearly derive from such a common nucleus of operative facts since they arise out of the same compensation policies and practices," the factual link between the federal and state claims must constitute more than the mere fact that "the underlying events occurred during the course of plaintiff's employment by [employer];" see also Rivera v. Ndola Pharmacy Corp., 497 F. Supp. 2d 381, 394 (E.D.N.Y. 2007)

(declining to exercise supplemental jurisdiction over state law claims for "unlawful retaliation, negligent retention and supervision of a supervisor, intentional infliction of emotional distress, and battery," when the only federal claim at issue was for FLSA overtime").

In Young v. New York City Transit Authority, 903 F.2d 146 (2d Cir.1990), the Second Circuit found there was no "common nucleus of operative fact" where the federal claim raised "legal issues completely unrelated to those presented by the state" claim. Id. at 164; see also Bu v. Benenson, 181 F. Supp. 2d 247, 254 (S.D.N.Y.2001) (claims were not "part of the same case or controversy" where state law claims "involve[d] different rights, different interests, and different underlying facts" than the federal law claims); see also Figurowski v. Marbil Invs., LLC, No. 14-CV-7034 (JS) (GRB), 2015 WL 4000500, at *3 (E.D.N.Y. July 1, 2015) ("Several courts addressing similar situations have held that the employment relationship itself is insufficient to create a 'common nucleus of operative fact' between an FLSA claim and a state law, non-wage claim"); Thomas v. EONY LLC, No. 13-CIV.-8512, 2015 WL 1809085, at *8 (S.D.N.Y. Apr. 21, 2015) (declining to exercise supplemental jurisdiction where party's "attempt to litigate largely unrelated nonfederal claims in the same action ... would result in the engrafting of a distinct, more complicated litigation onto a straightforward wage and hour case").

In addition, even if the Court finds that there *is* a common nucleus of operative facts here (which there is not), the court may nonetheless decline to exercise supplemental jurisdiction if "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction." See 28 U.S.C.A. 1367(c)(2).  "'[P]redomination under section 1367(c)(2) relates to the *type of claim*" – i.e., if "the state law claims essentially replicate the FLSA claims—they plainly do not predominate.'" See Shahriar, 659 F.3d at 247 (emphasis added).

19

Defendants concede that there is a common nucleus of fact between Plaintiff's first federal claim, for FLSA Illegal Deductions from Gratuities (29 U.S.C. § 201, *et seq.*), and Plaintiff's second claim, for Illegal Deductions from Gratuities under state law (N.Y. Lab. L. § 196-d). However, there is *no* common nucleus of operative fact between that federal claim and Plaintiff's third and fourth claims, for Minimum Wage Violations (N.Y. Lab. L. §§ 650 *et seq.*, 12 NYCRR §§ 1.3, 2.2) and Notice (N.Y. Lab. L. §§ 195, 198).

Since there is no common nucleus of operative fact between Plaintiff's federal claim and Plaintiff's third and fourth claims under state law, this Court should decline to exercise supplemental jurisdiction over those state law claims.

First, Plaintiff's third and fourth claims do *not* arise out of "arise out of the same compensation policies and practices" as the federal claim, because alleged deductions from gratuities is an entirely separate alleged compensation practice than alleged minimum wage violations or lack of notice. See Shahriar, 659 F.3d at 245. Like in Rivera, the mere fact that these violations are alleged with respect to the same employer is insufficient to justify the exercise of supplemental jurisdiction. See Rivera, 497 F. Supp. 2d at 394.

Even if the Court were to find that there is a common nucleus of operative fact between that federal claim and Plaintiff's third and fourth claims, the Court should decline those state law claims under its discretion to exercise predominating state law claims. Here, those two state law claims are not mere replications of the federal claims – only the second cause of action is.

As such, to conserve judicial resources, Plaintiff's FLSA claims and his requests to certify a collective and class action should be stayed, and Plaintiff should be required to litigate in New York State Supreme Court all of his state law claims (where he can achieve greater recovery than on his FLSA claims).

Therefore, this Court should decline to exercise supplemental jurisdiction and should instead dismiss the state claims in the Second Amended Complaint, along with all the federal claims.

### III.   THE COURT SHOULD ORDER PLAINTIFF TO STRIKE THE IMMATERIAL, IMPERTINENT, OR SCANDALOUS MATTER IN THE COMPLAINT, PURSUANT TO RULE 12(f)

The Court must also strike allegations which are superfluous and unnecessary given the requirement of a short and plain statement as to why a plaintiff is entitled to relief.  Plaintiff inappropriately alleges in her Amended Complaint that Defendants Petrosyants and Shahmuradyan are "convicted felons." See Compl. at ¶ 1. As set forth in the facts, it is untrue that Shahmuradyan is a convicted felon, and although it is true that Petrosyants was convicted of a felony, this fact is immaterial and impertinent in this wage-and-hour case such that both the Complaint and the FAC must be stricken.

Rule 12(f) provides that a court may strike from a pleading any redundant, immaterial, impertinent, or scandalous matter. See Fed. R. Civ. P. 12(f). "[T]he court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." See Hill v. Cray Rsch., Inc., 864 F. Supp. 1070, 1073 (D.N.M. 1991); see also Ysais v. N.M. Judicial Standard Comm'n, 616 F. Supp. 2d 1176, 1184 (D.N.M. 2009).

"To be impertinent or immaterial, the allegations must have no possible bearing on the controversy." See Employers Ins. of Wausau v. Musick, Peeler, & Garrett, 871 F. Supp. 381, 391 (S.D. Cal. 1994). Evidentiary allegations are not usually proper pleading, but "'(a)llegations in a complaint which supply background or historical material or which are of an evidentiary quality will […] be stricken [if] unduly prejudicial to defendant.'" (internal citation omitted). See Fuchs Sugars & Syrups, Inc. v. Amstar Corp., 402 F. Supp. 636, 637-38 (S.D.N.Y. 1975).

Allegations will be stricken as scandalous if they degrade defendants' moral character, contain repulsive language, or detract from the dignity of the court. See Nault's Auto. Sales v. Am. Honda Motor Co., 148 F.R.D. 25, 30 (D.N.H. 1993) (citation omitted). Motions to strike are granted or denied in the court's discretion. See The Wilderness Soc'y v. Kane County, Utah, 581 F.3d 1198, 1226, n. 25 (10th Cir. 2009).

Here, allegations pertaining to a felony that only one of the Defendants pled guilty to in 2014 do not pertain in any way to whether Defendants properly paid Plaintiffs. Therefore, since Shahmuradyan is not a convicted felon at all, and because Defendant Robert's former conviction is totally irrelevant to any legal claim or defense currently at issue, the allegations are impertinent, immaterial, and scandalous such that they must be stricken.

Curiously, Plaintiff also begins her Complaint with statements linking the Defendants to Mayor Adams. See ECF Docket Entries 1 ¶ 1 and 15 ¶ 1. Given that Mayor Adams is not a named Defendant, Plaintiff's repeated reference to him in the same section wherein they label Defendants as "convicted felons" is scandalous due to the newsworthy fact that Mayor Adams was previously indicted, yet never convicted, of federal charges.[5]

The implication, in conclusory fashion that Osteria La Baia is run by convicted felons and connected to organized crime is inherently scandalous and has no bearing on whether Plaintiff's claims have any merit.

Accordingly, this Court should strike these allegations in both complaints.

---

[5] These charges were dismissed with prejudice in April 2025, meaning that Mayor Adams is not a convicted felon. See Lucas, R., & Johnson, C. (2025, April 2). *Federal judge drops corruption case against New York City mayor Eric Adams*. NPR. https://www.npr.org/2025/04/02/g-s1-57386/judge-new-york-eric-adams (last accessed December 7, 2025). This makes the inclusion of his name, with the obvious implications Plaintiff intends, even more scandalous, warranting striking the pleadings.

## CONCLUSION

Accordingly, Defendants respectfully request that the third and fourth claims in Plaintiff's

Amended Complaint be dismissed, and that sanctions be imposed against Plaintiff.

Dated: Jamaica, New York
        December 7, 2025

Respectfully submitted,

**SAGE LEGAL LLC**

_/s/ Emanuel Kataev, Esq._____
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)
emanuel@sagelegal.nyc

_Attorneys for Defendants_
_Bulldozer Hospitality Group, Inc.,_
_Robert Petrosyants, and_
_Marianna Shahmuradyan_

**VIA ECF**
Joseph & Kirschenbaum LLP
<u>Attn</u>: Josef Nussbaum, Esq.
45 Broadway, Suite 320
New York, NY 10006-3007
(212) 688-5640 (office)
jnussbaum@jk-llp.com

_Attorneys for Plaintiff_
_Katherine Fernandez_

23

## WORD COUNT CERTIFICATION

I, Emanuel Kataev, Esq., hereby certify – under penalty of perjury – that the foregoing memorandum of law in support of Defendants' motion for judgment on the pleadings and to strike scandalous, impertinent, and immaterial allegations in the complaint, which was prepared using the Times New Roman 12-point typeface, complies with Local Civil Rule 7.1(c) and ¶ 8(C) of this Court's Individual Practices in Civil Cases in that it contains 7,646 words, excluding the parts of the document that are exempted by such rules. In preparing this certification, I have relied on the word count of the word processing system (i.e., Microsoft Word) used to prepare this certification.

Dated: Jamaica, New York
       December 7, 2025

Respectfully submitted,

**SAGE LEGAL LLC**

 _/s/ Emanuel Kataev, Esq._____
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)
emanuel@sagelegal.nyc

*Attorneys for Defendants*
*Bulldozer Hospitality Group, Inc.,*
*Robert Petrosyants, and*
*Marianna Shahmuradyan*

**VIA ECF**
Joseph & Kirschenbaum LLP
<u>Attn</u>: Josef Nussbaum, Esq.
45 Broadway, Suite 320
New York, NY 10006-3007
(212) 688-5640 (office)
jnussbaum@jk-llp.com

*Attorneys for Plaintiff*
*Katherine Fernandez*