UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KATHERINE FERNANDEZ, on behalf of herself
and others similarly situated,

                Plaintiff,

    v.

BULLDOZER HOSPITALITY GROUP, INC., d/b/a
OSTERIA LA BAIA, ROBERT PETROSYANTS
and MARIANNA SHAHMURADYAN,

                Defendants.

No.: 25-cv-04490 (AS)

---

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR COLLECTIVE CERTIFICATION PURSUANT TO 29 U.S.C.**
**§ 216(b) AND CLASS CERTIFICATION PURSUANT TO FED. R. CIV. P. RULE 23**

D. Maimon Kirschenbaum
Josef Nussbaum
Lucas C. Buzzard
JOSEPH & KIRSCHENBAUM LLP
45 Broadway, Suite 320
New York, NY 10006
(212) 688-5640
(212) 981-9587 (fax)

*Attorneys for Plaintiff, Opt-In Plaintiffs, and proposed Class*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ i

I.    PRELIMINARY STATEMENT ................................................................................. 1

II.   BACKGROUND ........................................................................................................ 3
   A.  Procedural History ................................................................................................ 3
   B.  Overview of Plaintiffs' Claims ............................................................................. 4
   i.   Defendants Were Not Entitled To Pay Putative Class Members Pursuant To The Tip Credit ..................................................................................................................... 4
   ii.  Defendants Unlawfully Forced Employees to Share Tips with the Restaurant's Manager ................................................................................................................... 6
   iii. Defendants Retained Service Charges They Charged Customers ........................ 9
   iv.  Defendants Failed To Pay Tipped Employees The Correct Overtime Rates ....... 10
   v.   Defendants Failed To Give Tipped Employees The Wage Notices And Statements Required Under The WTPA ................................................................................. 11

III.  ARGUMENT ........................................................................................................... 13
   A.  The Court Should Certify This Case As A Fed. R. Civ. P. 23 Class Action ............... 13
   i.   Plaintiffs Satisfy The Requirements For Class Certification Under Fed. R. Civ. P. 23 13
   ii.  Plaintiffs Satisfy The Requirements of Rule 23(a) ....................................... 144
     a.  Numerosity – Rule 23(a)(1) ........................................................................ 14
     b.  Commonality – Rule 23(a)(2) ..................................................................... 14
     c.  Typicality – Rule 23(a)(3) ........................................................................... 16
     d.  Adequacy – Rule 23(a)(4) ........................................................................... 17
     e.  Rule 23(a)'s implied ascertainability requirement ..................................... 18
   iii. Class Certification Under Rule 23(b)(3) Is Appropriate ................................. 18
     a.  Common questions of law and fact predominate ........................................ 19
     b.  A class action is superior to other methods of adjudication ...................... 19
   iv.  Plaintiffs' Counsel Should be Appointed as Class Counsel ........................... 21
   B.  The Court Should Certify This Case As A Collective Action .................................... 21
   i.   Legal Standard For Conditional Certification And Court-Authorized Notice ............ 21
   ii.  Plaintiffs Have Established That They Are Similarly situated to Other Collective Members ............................................................................................................... 23
   C.  The Proposed Class Notice Satisfies The Requirements Of Rule 23(C)(2)(B) and the FLSA ..................................................................................................................... 25

IV.   CONCLUSION ....................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Alonso v. Uncle Jack's Steakhouse, Inc.*, 648 F. Supp. 2d 484 (S.D.N.Y. 2009)………22

*Andrade-Barteldes v. Valencia,* No. 23 CV 495, 2023 U.S. Dist. LEXIS 215247
(S.D.N.Y. Dec. 4, 2023)……………………………………………………………14, 21

*Ansoumana v. Gristede's Operating Corp.*,
201 F.R.D. 81 (S.D.N.Y. May 24, 2001)................................................................ 15

*Argudo v. Parea Grp. LLC,* No. 18-CV-0678 (JMF), 2019 U.S. Dist. LEXIS 163249
(S.D.N.Y. Sep. 24, 2019)……………………………………………………………2, 21

*Ayala v. Your Favorite Auto Repair & Diagnostic Ctr., Inc.*, No. 14 Civ. 5269,
2016 U.S. Dist. LEXIS 127425 (E.D.N.Y. Sept. 16, 2016)............................... 12

*Ayers v. SGS Control Servs.,*
2007 U.S. Dist. LEXIS 19634 (S.D.N.Y. Feb. 26, 2007)………………………………22, 23

*Ayres v. 127 Restaurant Corp.,* 12 F. Supp. 2d 305 (S.D.N.Y. 1998)…………………..9

*Barenboim v. Starbucks Corp.,* 21 N.Y.3d 460 (2013)…………………………………6, 7

*Barrows v. Becerra,* 24 F.4th 116 (2d Cir. 2022)……………...……………….……16

*Brown v. Kelly*, 609 F.3d 467 (2d Cir. 2010)................................................... .18

*Chang v. Louis Amsterdam, Inc.*, No. 19 CV 3056,
2022 U.S. Dist. LEXIS 177606 (E.D.N.Y. Sept. 29, 2022)..................................... …6

*Chichinadze v. BG Bar, Inc.,* 517 F. Supp. 3d 240 (S.D.N.Y. 2021)……………………..5, 6

*Chung v. New Silver Palace Rest.,* 246 F. Supp. 2d 220 (S.D.N.Y. 2002)………...6, 7

*Dunnigan v. Metro. Life Ins. Co.*, 214 F.R.D. 125 (S.D.N.Y. 2003)............................ 18

*Encalada v. SDNY 19 Mad Park, LLC,* No. 13 Civ. 1926 (PAC),
(S.D.N.Y. Nov. 16, 2014)…………………………………………….……………….8

*Flores v. Anjost Corp.*, 284 F.R.D. 112 (S.D.N.Y. 2012)............................................. 13

*Fonseca v. Dircksen & Talleyrand Inc.,* 2015 U.S. Dist. LEXIS 136427
(S.D.N.Y. 2015)………………………………………….………………………..2

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) .................................. 15

*Freeland v. AT&T Corp.*, 238 F.R.D. 130 (S.D.N.Y. 2006) .......................................... 14

*Garcia v. Pancho Villa's of Huntington Vill., Inc.*,
    281 F.R.D. 100 (E.D.N.Y. 2011) ........................................................................... 17

*Garcia v. Saigon Mkt. LLC*, No. 15 CV 9433,
    2019 U.S. Dist. LEXIS 163259 (S.D.N.Y. Sept. 4, 2019) ...................................... 12

*Gaspar v. Personal Touch Moving, Inc.*, No. 13 CV 8187,
    2014 U.S. Dist. LEXIS 129856 (S.D.N.Y. Sept. 15, 2014) ............................. 22

*Gayle v. Harry's Nurses Registry, Inc.*, No. 07-CV-4672 (NGG) (MDG),
    2012 U.S. Dist. LEXIS 28157 (E.D.N.Y. Mar. 1, 2012) ............................. 23

*Gonzalez v. Hanover Ventures Marketplace LLC*, No. 21-cv-1347 (ER),
    2024 U.S. Dist. LEXIS 48475 (S.D.N.Y. Mar. 18, 2024) ............................. 17

*Hamelin v. Faxton-St. Luke's Healthcare*, 274 F.R.D. 385 (N.D.N.Y. 2011) .............. 18

*Hernandez v. JRPAC Inc.*, No. 14 Civ. 4176,
    2016 U.S. Dist. LEXIS 75430 (S.D.N.Y. June 9, 2016) ........................................ 5

*Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989) .............................. 22

*Hoti v. Patsy's Italian Rest.*, No. 24-CV-6991 (JGLC) (HJR),
    2025 U.S. Dist. LEXIS 211546 (S.D.N.Y. Oct. 27, 2025) ............................. 24

*Iglesias-Mendoza v. La Bella Farm, Inc.*, 239 F.R.D. 363 (S.D.N.Y. 2007) ............... 15

*In re US Foodservice Inc. Pricing Litig.*, 729 F.3d 108 (2d Cir. 2013) ........................ 19

*In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001) ............. 19

*Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490 (S.D.N.Y. 2015) ............................. 11

*Jacobs v. NY Foundling Hosp.*, 483 F. Supp. 2d 251 (E.D.N.Y. 2007) ............................. 23

*Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152 (S.D.N.Y. 2014) ..................................... 14

*Jocko v. TJM Syracuse, LLC*, 2023 NY Slip Op 50562(U),
    79 Misc. 3d 1209(A), 189 N.Y.S.3d 920 (Sup. Ct. June 8, 2023) ............................. 10

*Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128 (2d Cir. 2015) .................................. 13

*Lee v. ABC Carpet & Home*, 236 F.R.D. 193 (S.D.N.Y. 2006) ................................... 17

*Lopez v. MNAF Pizzeria, Inc.*, No. 18 CV 6033,
    2021 U.S. Dist. LEXIS 57260 (S.D.N.Y. Mar. 25, 2021) ...................................... 5

*Lynch v. United Servs. Auto. Ass'n,* 491 F. Supp. 2d 357 (S.D.N.Y. 2007)……………22

*Maldonado v. BTB Events & Celebrations, Inc.,*
    990 F. Supp. 2d 382 (S.D.N.Y. 2013)…………………………………………………10

*Marzovilla v. N.Y. State Indus. Bd. of Appeals,* 127 A.D.3d 1452
    (N.Y. App. Div. 3d Dep't 2015)……………………………………………………….8

*Megason v. Starjem Rest. Corp.*, No. 12 Civ. 1299,
    2014 U.S. Dist. LEXIS 3910 (S.D.N.Y. Jan. 10, 2014)…………………………...7, 16, 19, 21

*Murphy v. Lajaunie*, No. 13 CV 6503,
    2015 U.S. Dist. LEXIS 97531 (S.D.N.Y. July 24, 2015) ...................................... 16, 21

*Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010)........................................................ 13, 20

*Paguay v. Buona Fortuna, Inc.,* No. 11 Civ. 6266, 2013 U.S. Dist. LEXIS 107561
    (S.D.N.Y. July 31, 2013)………………………………………………………………..7

*Prizmic v. Armour, Inc.,* No. 05-CV-2503 (DLI) (MDG),
    2006 U.S. Dist. LEXIS 42627 (E.D.N.Y. June 12, 2006)……………………………….22, 23

*Reilly v. City of N.Y.*, No. 23-CV-521 (AS),
    2024 U.S. Dist. LEXIS 140763 (S.D.N.Y. Aug. 7, 2024)……………………………….25

*Reyes v. A.B. Bakery Rest. Corp.*, No. 23-cv-1612 (AS),
    2023 U.S. Dist. LEXIS 160439 (S.D.N.Y. Sep. 11, 2023)…………………………...24

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993)......................................................... 14, 16

*Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442 (S.D.N.Y. 2015) ........................ 5, 9

*Salustio v. 106 Columbia Deli Corp.*, 264 F. Supp. 3d 540 (S.D.N.Y. 2017)…………..5

*Samiento v. World Yacht Inc.*, 10 N.Y.3d 70 (2008)…………………………………….9

*Sanchez v. N.Y. Kimchi Catering, Corp.*, 320 F.R.D. 366 (S.D.N.Y. 2017) ................ 16

*Schear v. Food Scope Amer., Inc.*, 297 F.R.D. 114 (S.D.N.Y. 2014)........................... *passim*

*Settecasi, v. Ark Rests. Corp. et al*, No. 154038/2018, 2019 N.Y. Misc. LEXIS 13137

(Sup. Ct. June 27, 2019).....................................................................................9

*Shahriar v. Smith & Wollensky Rest. Group*, 659 F.3d 234 (2d Cir. 2011)................. *passim*

*Shepard v. Rhea*, No. 12 CV 7220,
    2014 U.S. Dist. LEXIS 158189 (S.D.N.Y. Nov. 7, 2014) ....................................... 15

*Spicer v. Pier Sixty LLC*, 269 F.R.D. 321 (S.D.N.Y. 2010) ........................................ 16, 18, 19

*Teamsters Local 445 Freight Div. Pension Fund v. Bombadier Inc.*,
    546 F.3d 196 (2d Cir. 2008).................................................................................. 13

*Tecocoatzi-Ortiz v. Just Salad LLC*, No. 18 CV 7342,
    2022 U.S. Dist. LEXIS 34090 (S.D.N.Y. Feb. 25, 2022)........................................ 5, 6

*Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316,
    2006 U.S. Dist. LEXIS 74039 (S.D.N.Y. Sept. 29, 2006)...................................... 20, 21

*Trinidad v. Breakaway Courier Sys.*, No. 05 Civ. 4116,
    2007 U.S. Dist. LEXIS 2914 (S.D.N.Y. Jan. 12, 2007) ......................................... 20

*Uddin v. O'Brien Rest. Holding Co. LLC*, No. 16-CV-2098 (RJS),
    2016 U.S. Dist. LEXIS 205561 (S.D.N.Y. Nov. 22, 2016)..............................24

*Vargas v. Howard*, 324 F.R.D. 319 (S.D.N.Y. 2018)................................................... 13, 16

*Velez v. 111 Atlas Rest. Corp.*, No. 14 CV 6956,
    2016 U.S. Dist. LEXIS 107230 (E.D.N.Y. Aug. 11, 2016)..................................... 17,19

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ............................................... 14

*Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193 (S.D.N.Y. 2011)............. 16

*Xiao Ling Chen v. XpresSpa at Term. 4 JFK, LLC*, No. 15 CV 1347 (CBA) (CLP),
    2016 U.S. Dist. LEXIS 20003 (E.D.N.Y. Feb. 16, 2016)..............................24

*Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61 (S.D.N.Y. 2018) ................................. *passim*

**Statutes, Rules, and Regulations**

29 U.S.C. § 203(m)..............................................................................................23, 24

29 U.S.C. § 216(b) ......................................................................................... *passim*

Fed. R. Civ. P. 23 .......................................................................................... *passim*

Fed. R. Civ. P. 30 ................................................................................................. 3

N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.3 ....................................... 4

N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4 ................................. 10, 11

N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.2 ................................. 4, 10

N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.18 ................................... 9

N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.19 ............................... 9, 10

N.Y. Lab. L. § 195 ................................................................... *passim*

N.Y. Lab. L. § 196-d ................................................................ *passim*

N.Y. Lab. L. § 198 ............................................................................... 12

N.Y. Lab. L. § 652 .......................................................................... 4, 10

Named Plaintiff Katherine Fernandez and opt-in Plaintiff Adrian Montor-Teran (collectively, "Plaintiffs") submit this memorandum of law in support of their motion for: (1) class certification of their New York state wage and hour claims pursuant to Fed. R. Civ. P. 23; and (2) certification of their Fair Labor Standards Act ("FLSA") claims as a collective action under that statute.[1]

## I. PRELIMINARY STATEMENT

This action asserts FSLA and New York Labor Law ("NYLL") claims on behalf of all food-service employees (including servers, runners, bussers and bartenders) who worked at Osteria La Baia restaurant in Manhattan at any time on or after November 15, 2021. By this motion, Plaintiffs seek to certify the aforementioned class with respect to their claims that Defendants violated New York law by (1) paying servers pursuant to a tip credit without providing the requisite notice; (2) forcing food-service employees to share their tips with management level employees; (3) misappropriating/retaining "service charges" the restaurant charged customers which are presumed to be gratuities that should have been disbursed to the food-service employees, (4) failing to pay Class Members the appropriate overtime premiums; and (5) failing to provide the wage notices and wage statements required under N.Y. Lab. L. § 195. Plaintiffs also seek to certify their FLSA tip misappropriation claim as a collective action.

The Fed. R. Civ. P. 23(a) ("Rule 23") prerequisites are handily met because (1) the number of Class Members satisfies numerosity, (2) the claims involve policies to which all Class Members were subject, (3) Plaintiffs' claims and circumstances are the same as the absent Class Members

---

[1] With this memorandum of law, Plaintiffs submit the December 12, 2025 declaration of Lucas C. Buzzard ("Buzzard Decl.") and exhibits thereto ("Buzzard Ex. __"); the December 11, 2025 declaration of Katherine Fernandez ("Fernandez Decl."); and the December 11, 2025 declaration of Adrian Montor-Teran ("Montor-Teran Decl."). Deposition transcripts cited herein are identified by the deponent's last name (*e.g.*, "Petrosyants Dep.").

they seek to represent in that all have been injured by the same violations, and all will benefit from the relief sought; and (4) Plaintiffs and their counsel will vigorously prosecute this action and adequately represent the Class. Rule 23(b)(3) is also appropriately applied because the common factual and legal issues predominate. Further, a class action is superior to requiring that putative Class Members pursue individual actions.

In short, under the clear and established law in this Circuit and District, cases, such as this one, where restaurant employees allege restaurant-wide wage and payroll practice violations have been found to be perfectly suited for class treatment. *See, e.g., Shahriar v. Smith & Wollensky Rest. Group*, 659 F.3d 234, 240 (2d Cir. 2011). More specifically, in cases where plaintiffs allege almost identical facts regarding their employers' company-wide N.Y. Wage Theft Prevention Act payroll practice violations as Plaintiffs allege here, Courts have found class certification appropriate. *See, e.g., Argudo v. Parea Grp. LLC*, No. 18-CV-0678 (JMF), 2019 U.S. Dist. LEXIS 163249 (S.D.N.Y. Sep. 24, 2019); *Fonseca v. Dircksen & Talleyrand Inc*., 2015 U.S. Dist. LEXIS 136427 (S.D.N.Y. 2015); *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 66, 69-70 (S.D.N.Y. 2018). As set forth below, and for many of the same reasons set forth in *Argudo*, *Fonseca*, *Zivkovic* and the many other cases in this Circuit certifying Rule 23 Classes for the wage and hour violations being litigated here, this case is also perfectly suited for class certification.

For the reasons set forth below, Plaintiffs respectfully request that the Court:

(1)    Conditionally certify this action as a representative collective action pursuant to 29 U.S.C. § 216(b) on behalf of all OLB tipped employees who worked as servers, runners, bussers, and bartenders ("FLSA Covered Employees") from December 12, 2022 until the present (the "FLSA Period");

(2)    Certify a Fed. R. Civ. P. Rule 23 class of all OLB tipped employees, including servers, bussers, runners, and bartenders (the "Class Members"), who worked for the Restaurant at any time on or after November 15, 2021;[2]

---

[2] Osteria La Baia commenced operating on November 15, 2025. *See* Ex. 13.

2

(3)     Appoint Plaintiffs Fernandez and Montor-Teran as Class Representatives;

(4)     Appoint Plaintiffs' counsel as Class Counsel;

(5)     Order Defendants to produce to Plaintiffs a Microsoft Excel list, in electronic
        format, of all Class Members' names, last known address(es), all known
        telephone numbers, all known email addresses, dates of employment, number
        of days worked, and job titles; and

(6)     Authorize the mailing of the proposed Notice to all FLSA Covered Employees
        and Class Members.

## II.     BACKGROUND

### A. Procedural History

In May 2025, Plaintiff Fernandez, a former busser and runner at Osteria La Baia, commenced this putative class and collective action against Defendants Bulldozer Hospitality Group Inc. d/b/a Osteria La Baia ("OLB" or the "Restaurant"), Robert Petrosyants and Marianna Shahmuradyan (collectively "Defendants"). Plaintiff filed an amended complaint on July 23, 2025. ECF No. 15. In her complaint, she alleges that Defendants violated the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") by requiring tipped employees to share tips with the restaurant' manager. (Buzzard Decl. ¶ 22.) Plaintiff also alleges that Defendants violated New York law by (1) paying tipped employees pursuant to a tip credit without providing the notices required under New York law; (2) retaining a "service charge" the Restaurant charge customers at private events, (3) failing to pay tipped employees the appropriate overtime rate; and (4) failing to provide employees with wage notices and wage statements required under N.Y. Lab. L. § 195. (*Id.* ¶ 23.) Opt-in Plaintiff Montor-Teran filed a consent to join form on July 2, 2025. ECF No. 12.

Fact discovery in this case closed on November 21, 2025. ECF No. 33. In discovery, Plaintiffs deposed the two individual Defendants. (Buzzard Decl. ¶ 25.)  Plaintiffs also took two Fed. R. Civ. P. 30(b)(6) depositions. (*Id.* ¶ 26.)  Defendant Petrosyants acted as one of the 30(b)(6)

witnesses and the Restaurant's general manager, Janos Palyko, was the other 30(b)(6) witness. (*Id*. ¶ 27.) Defendants deposed Plaintiffs Fernandez and Montor-Teran. (*Id*. ¶ 28.)

### B.  Overview of Plaintiffs' Claims

#### i.  Defendants Were Not Entitled To Pay Putative Class Members Pursuant To The Tip Credit

The NYLL requires employers to pay non-exempt employees at least the minimum wage. N.Y. Lab. Law § 652.  If certain conditions are satisfied, New York law permits employers to use a portion of tipped food service workers' tips as a credit (the "tip credit") against the minimum wage.  N.Y. Comp. Codes R. & Regs. tit. 12, §§ 146-1.3, 146-2.2.  OLB admits that it paid all putative Class Members pursuant to a tip credit. (Ex. 1 ("Petrosyants Dep.") at 42:19-22, 69:25-70:4; Ex. 2 ("Paliko Dep.") at 38:5-16.)  However, the Restaurant's use of the tip credit was unlawful, as it did not provide putative Class Members with the tip credit notice required under New York law.

Under the New York State Department of Labor's regulatory scheme, "[a]n employer may take a credit towards the basic minimum hourly rate if a service employee or food service worker receives enough tips and if the employee has been notified of the tip credit as required in section 146-2.2" of the Hospitality Industry Wage Order.  N.Y. Comp. Codes R. & Regs, tit. 12, § 146-1.3.  Section 146-2.2 of the Hospitality Industry Wage Order is titled "Written notice of pay rate, tip credit and pay day."  N.Y. Comp. Codes R. & Regs, tit. 12, § 146-2.2.  It states that

> an employer shall give each employee written notice of the employee's regular hourly pay rate, overtime hourly pay rate, the amount of tip credit, if any, to be taken from the basic minimum hourly rate, and the regular payday.  The notice shall also state that extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate.

*Id.* § 146-2.2(a).  Such written notice is required "prior to the start of employment" and "prior to any change in the employee's hourly rates of pay."  *Id.* § 146-2.2(a), (b).  The employer bears the

burden of proving compliance with this notice requirement. *Id*. § 146-2.2(d). "An employer who fails to provide the required notice is liable for the difference between the full minimum wage rate and what the employee was actually paid." *Salustio v. 106 Columbia Deli Corp.*, 264 F. Supp. 3d 540, 554 (S.D.N.Y. 2017) (citations omitted). The law requires the employer to "obtain from the employee a signed and dated written acknowledgment… of receipt of this notice, which the employer *shall preserve and maintain for six years*." N.Y. Comp. Code R. & Regs. tit. 12, § 146-2.2(c) (emphasis added); *see Tecocoatzi-Ortiz v. Just Salad LLC*, No. 18 CV 7342, 2022 U.S. Dist. LEXIS 34090, at *24 (S.D.N.Y. Feb. 25, 2022); *Chichinadze v. BG Bar, Inc.,* 517 F. Supp. 3d 240, 256 (S.D.N.Y. 2021) ("Under the NYLL, Defendants were required to: (i) provide Plaintiff written notice of the tip credit prior to the start of her employment, (ii) obtain Plaintiff's acknowledgement of receipt of that notice, and (iii) keep Plaintiff's acknowledgement on file for six years.")

If an employer fails to provide the written notice as described in § 146-2.2, it may not pay tipped employees pursuant to a tip credit. *E.g.*, *Tecocoatzi-Ortiz*, 2022 U.S. Dist. LEXIS 34090, at *23-27; *Lopez v. MNAF Pizzeria, Inc.*, No. 18 CV 6033, 2021 U.S. Dist. LEXIS 57260, at *21-24 (S.D.N.Y. Mar. 25, 2021); *Hernandez v. JRPAC Inc.*, No. 14 Civ. 4176 (PAE), 2016 U.S. Dist. LEXIS 75430, at *81 (S.D.N.Y. June 9, 2016) ("Notice of the tip credit under the NYLL . . . must be written."); *Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 466 (S.D.N.Y. 2015) ("Under the current regulations, an employer may not take a tip credit unless the employer has given the employee written notice […]").

Defendants never provided putative Class Members with written notice as to how the employees were being paid and that the Restaurant was taking a tip credit. Specifically, in this litigation, Plaintiffs served document requests on all Defendants in which they sought the production of any and all written notices of pay rates that Defendants provided to any Class

Members.  (Buzzard Decl. ¶¶ 29-30, Exs. 5-6.)  In response to these requests, Defendants did not produce any written wage notices that Defendants contend they provided to any Class Member. (*Id.* ¶¶ 31-32.) Accordingly, the Restaurant's use of the tip credit was unlawful. *See, e.g., Chichinadze,* 517 F. Supp. 3d 240, 255-256 (S.D.N.Y. 2021). To the extent Defendants seek to muddy the record by claiming (without any support) that the provided notices but are still searching for them, those arguments should be summarily rejected.  *E.g., Chang v. Louis Amsterdam, Inc.*, No. 19 CV 3056, 2022 U.S. Dist. LEXIS 177606, at *21-28 (E.D.N.Y. Sept. 29, 2022) (granting summary judgment on minimum wage claim to employee paid pursuant to a tip credit where defendants produced no written notices and finding that defendants' mere assertion that notice was provided is insufficient to establish entitlement tip credit).

### ii. Defendants Unlawfully Forced Employees to Share Tips with the Restaurant's Manager

The NYLL "bars employers from requiring tipped employees to share tips with employees who do not perform direct customer service — *i.e.*, employees who are not 'busboys or similar employees' [-] and employees who are managers or 'agents' of the employer." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 240 (2d Cir. 2011) (quoting NYLL § 196-d); *see also Barenboim v. Starbucks Corp.*, 21 N.Y.3d 460, 473 (2013); *cf. Chung v. New Silver Palace Rest.*, 246 F. Supp. 2d 220, 229 (S.D.N.Y. 2002) (under FLSA, "the practice of forced sharing of tips with management is . . . an illegal practice, regardless whether or not the members of management were engaged in restaurant services that could be the subject of tipping").

The New York Court of Appeals has set the following standard for determining whether supervisory employees are ineligible to receive tips:

> We conclude that the line should be drawn at meaningful or significant authority or control over subordinates. Meaningful authority might include the ability to discipline subordinates, assist in performance evaluations or participate in the

process of hiring or terminating employees, as well as having input in the creation of employee work schedules, thereby directly influencing the number and timing of hours worked by staff as well as their compensation … *Meaningful authority, not final authority, should be the standard*.

In sum, an employee whose personal service to patrons is a principal or regular part of his or her duties may participate in an employer-mandated tip allocation arrangement under Labor Law § 196-d, even if that employee possesses limited supervisory responsibilities. But an employee granted meaningful authority or control over subordinates can no longer be considered similar to waiters and busboys within the meaning of section 196-d and, consequently, is not eligible to participate in a tip pool.

*Barenboim*, 21 N.Y.3d at 473 (emphasis added).  If an individual has meaningful authority over employees, he may not receive tips even if he provides direct service to customers.  *See Megason v. Starjem Rest. Corp.*, No. 12 Civ. 1299, 2014 U.S. Dist. LEXIS 3910, at *23 (S.D.N.Y. Jan. 10, 2014) ("Defendants' argument that [individuals with meaningful authority] were permitted to share tips for shifts in which they provided customer service is contrary to case law establishing that, under NYLL, the 'practice of forced sharing of tips with management is . . . an illegal practice, regardless whether or not the members of management were engaged in restaurant services that could be the subject of tipping.'") (quoting *Chung*, 246 F. Supp. 2d at 229); *see also Paguay v. Buona Fortuna, Inc.*, No. 11 Civ. 6266, 2013 U.S. Dist. LEXIS 107561, at *9-10 (S.D.N.Y. July 31, 2013).

Here, the parties do not dispute that Mr. Perez participated in OLB's tip pool. (Petrosyants Dep. at 114:5-7; Ex. 3 ("Fernandez Dep.") 75:20-22.)  Plaintiffs allege that this was unlawful as Mr. Perez had full managerial authority at OLB.  For example, Plaintiff Fernandez testified that Mr. Perez fired employees at OLB and handled employees' scheduling. (Fernandez Dep. 75:23-76:21, 78:9-79:19, Ex. 4 ("Montor-Teran Dep.") at 41:21-42:24, 93:13-23.)  To be sure, while Defendants deny that Mr. Perez was called a "manager," they admit that his duties at OLB were managerial and included:

- interviewing prospective hires and participating in setting employees' schedules (Petrosyants Dep. at 102:12-105:22, 107:5-11.)

- writing-up employees if they were not performing their duties properly and sending employees' home early, if necessary. (*Id*. at 97:22-25, 113:10-114:4; Ex. 15.)

- training new hires (*Id*. at 71:23-72:18.)

- comping voiding items on customers' checks (*Id*., 97:19-21.)

- on the occasions that OLB's other manager Mr. Paliko is not present in the restaurant, supervising the food-service employees, overseeing the food-service at OLB, and reporting to Defendant Petrosyants and the general manager about any issues that arose at the restaurant (*Id*. at 98:9-17, 98:23-99:14.)

- running the food-service employees' pre-shift meeting and assigning the food-service employees to work in specific sections of the restaurant. (*Id*. at 99:15-100:4, 100:5-8.)

Defendants also admit that Mr. Perez wore a suit and tie unlike the other food-service employees who were required to wear a uniform. (Palyko Dep. at 82:5-23.)  Defendants payroll records indicate that, unlike the tipped employees who were paid pursuant to a tip credit wage rate of $11 per hour in 2025 and $10.65 per hour in 2024, Mr. Perez was paid $20 per hour. (Buzzard Decl. ¶¶ 34-35.) Defendants' payroll system also lists Mr. Perez as a "restaurant manager" together with the Restaurant's general manager Janos Palyko. (Ex. 14.) In discovery, Defendants also produced a "corrective action record" (*i.e.*, a write-up) that was issued to Plaintiff Fernandez and signed by Mr. Perez. (Ex. 15.)

Under these circumstances, the record is clear that Defendants violated NYLL § 196-d by including Mr. Perez in OLB's tip pool. *See, e.g.*, *Encalada v. SDNY 19 Mad Park, LLC*, No. 13 Civ. 1926 (PAC), at 9:8-10:1 (S.D.N.Y. Nov. 16, 2014) (submitted as Ex. 16) (finding after bench trial that that person who interviewed, disciplined, and fired employees and created the workers' schedule was ineligible to receive tips under § 196-d); *Marzovilla v. N.Y. State Indus. Bd. of Appeals*, 127 A.D.3d 1452, 1454-55 (N.Y. App. Div. 3d Dep't 2015) (finding that individual who

participated in hiring process and had input into schedules was ineligible to participate in tip pool); *Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 468 (S.D.N.Y. 2015) (finding defendants violated NYLL § 196-d where they required employees to share tips with individuals who "discipline[d] subordinates both formally and informally, […] participate[d] in the process of hiring or terminating employees, […] oversaw new employees training; and gave suggestions […] about employee scheduling.") (citations and quotations omitted); *Ayres v. 127 Restaurant Corp.*, 12 F. Supp. 2d 305, 308-09 (S.D.N.Y. 1998) (granting summary judgment to plaintiffs where a managerial employee of the defendant restaurant received a share of the pooled tips) (Chin J.).

### iii.  Defendants Retained Service Charges They Charged Customers

NYLL § 196-d further prohibits an employer or any other person from retaining "any charge *purported to be a gratuity* for an employee." "The standard under which a mandatory charge or fee is purported to be a gratuity [under § 196-d] should be weighed against the expectation of the reasonable customer[.]" *Samiento v. World Yacht Inc.*, 10 N.Y.3d 70, 79 (2008). There is "a rebuttable presumption that any charge in addition to charges for food, beverage, and other specified materials or services, including…any charge for 'service' or 'food service,' is a charge purported to be a gratuity." NYCRR § 146-2.18(b). "The employer has the burden of demonstrating, by clear and convincing evidence, that the notification [that a charge is not a gratuity] was sufficient to ensure that a reasonable customer would understand that such charge was not purported to be a gratuity." *Id.* § 146-2.19(b).

Significantly, the New York regulations are clear about what notification is sufficient:

Adequate notification shall include a statement in the contract or agreement with the customer, ***and on any menu and bill listing prices,*** that the administrative charge […] is not purported to be a gratuity, and will not be distributed as gratuities to the employees who provided service to the guests.

NYCRR § 146-2.19(c) (emphasis added); *see also Settecasi, v. Ark Rests. Corp. et al*, No. 154038/2018, 2019 N.Y. Misc. LEXIS 13137, at *2 (Sup. Ct. June 27, 2019) (emphasizing that § 146-2.19(c) "explicitly refers in the conjunctive"); *Jocko v. TJM Syracuse, LLC*, 2023 NY Slip Op 50562(U), ¶ 4, 79 Misc. 3d 1209(A), 189 N.Y.S.3d 920 (Sup. Ct. June 8, 2023) (same).

Here, Defendants admit that they charged private event patrons at OLB a 3% service charge. (Petrosyants Dep. at 152:19-153:19.) Defendants further admit that they did not remit that 3% charge to food-service staff that worked events and that it was instead given to management employees. (*Id*. at 154:12-22 ("Q So the 3-percent service charge, the restaurant kept that; right? A […] if I'm not mistaken, every contract had 21 percent in total for the charges. Eighteen percent was the gratuity tips that went to the server. Three percent went to the management, administrational fee.") Thus, Defendants further admit that they violated NYLL § 196-d by misappropriating these 3% charges. *See, e.g., Jocko*, 2023 NY Slip Op 50562(U), at *2-5 (granting plaintiff summary judgment where defendant charged an automatic fee and the required disclosures were not made on every document submitted to clients); *Maldonado v. BTB Events & Celebrations, Inc*., 990 F. Supp. 2d 382, 394 (S.D.N.Y. 2013) (granting summary judgment to Plaintiffs where Defendants could not meet this "elevated standard.")

### iv. Defendants Failed To Pay Tipped Employees The Correct Overtime Rates

Under the NYLL, employers must pay employees "for overtime at a wage rate of one and one-half times the employee's regular rate" for hours worked above forty hours a week. 12 N.Y.C.R.R. § 142-2.2. As relevant here, between 2021 and 2023, the overtime rate for non-tipped employees working in New York City for a large employer was $22.50 per hour ($15 * 1.5). *See* N.Y. Lab. Law § 652(1)(a); 12 N.Y.C.R.R. § 146-1.4. In 2024, the correct rate overtime rate was $24 ($16 * 1.5) and, in 2025, the correct overtime rate is $24.75 ($16.50 * 1.5). *Id*. Because

Defendants were not entitled to pay tipped employees pursuant to a tip credit, it should have paid them $22.50, $24.00 or $24.75 for each overtime hour worked during the limitations period. Instead, OLB paid the tipped employees $15 per hour for overtime hours between 2021 and 2023, $15.98 for overtime hours in 2024, and $16.50 for overtime hours in 2025. (Buzzard Decl. ¶¶ 33-34, 36-38, Exs. 8-12.)

Even if Defendants had satisfied the requirements to use a tip credit, the overtime rates of $15 between 2021 and 2023, $15.98 in 2024, and $16.50 in 2025 were underpayments. For tipped workers properly paid pursuant to a tip credit, the overtime rate equals "the employee's regular rate of pay before subtracting any tip credit, multiplied by 1 1/2, minus the tip credit." 12 N.Y.C.R.R. § 146-1.4.  This formula results in an overtime rate of $17.50 between 2021 and 2023 ($15 minimum wage * 1.5 - $5.00 tip credit), $2.50 per hour more than what Defendants actually paid tipped employees. In 2024, this formula results in an overtime rate of $18.65 ($16 minimum wage * 1.5 - $5.35 tip credit), $2.67 per hour more than what Defendants actually paid tipped employees. And, in 2025, this formula results in an overtime rate of $19.25 ($16.50 minimum wage * 1.5 - $5.50), $2.75 per hour more than what Defendants actually paid tipped employees. *See, e.g., Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 499 (S.D.N.Y. 2015) (finding restaurant liable for failing to pay overtime where it "multiply[ed] the tip credit minimum wage by one and one-half rather than multiplying the minimum wage by one and one-half and then subtracting the tip credit […].").

### v.  Defendants Failed To Give Tipped Employees The Wage Notices And Statements Required Under The WTPA

Under N.Y. Lab. Law § 195(1) and (3), employers are required to furnish their employees with wage notices and wage statements containing information specified by statute.  Defendants were required to give putative Class Members "at the time of hiring" a notice stating:

the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; [and] the telephone number of the employer[.]

N.Y. Lab. L. § 195(1)(a).

As detailed above, *supra at* pgs. 9-10, Defendants admit that they did not provide putative Class Members with *any* written wage notices. As a result, Class Members are entitled to recover the statutory damages authorized under N.Y. Lab. Law § 198(1-b). *See Garcia v. Saigon Mkt. LLC*, No. 15 CV 9433, 2019 U.S. Dist. LEXIS 163259, at *12-16 (S.D.N.Y. Sept. 4, 2019).

Defendants were also required to provide Class Members with written statements accompanying every payment of wages listing:

the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages. For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked.

N.Y. Lab. L. § 195(3). The paystubs Defendants provided to putative Class Members provided two different pay rates. (*See* highlighted portions in Ex. 17.) Moreover, in the wages statements, Defendants failed to list the employer's phone number, in violation of N.Y. Lab. L. § 195(3). (*Id.*)

Because Defendants did not comply with N.Y. Lab. L. § 195(3), putative Class Members are entitled to recover the statutory damages authorized under N.Y. Lab. Law § 198(1-d). *See, e.g., Ayala v. Your Favorite Auto Repair & Diagnostic Ctr., Inc*., No. 14 Civ. 5269 (ARR)(JO),

2016 U.S. Dist. LEXIS 127425, at *88 (E.D.N.Y. Sept. 16, 2016) (bench trial decision awarding plaintiffs penalties under § 198(1-d) for defendants' failure to provide compliant wage statements).

### III.    ARGUMENT

#### A.  The Court Should Certify This Case As A Fed. R. Civ. P. 23 Class Action

##### i.    Plaintiffs Satisfy The Requirements For Class Certification Under Fed. R. Civ. P. 23

Rule 23 provides that certification is appropriate where, as here, plaintiffs satisfy the four requirements of Rule 23(a) and one of the three prerequisites of Rule 23(b). *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201-02 (2d Cir. 2008). While the Court must resolve factual disputes relevant to satisfying each Rule 23 requirement, "[t]he certifying court should not make any factual findings or merits determinations that are not necessary to the Rule 23 analysis, and any factual determinations made at the certification stage are not binding on a subsequent fact-finder, even the certifying court." *Vargas v. Howard*, 324 F.R.D. 319, 324 (S.D.N.Y. 2018) (quoting *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015)). "In sum, the Court's task at the Rule 23 stage is not to resolve the liability question, but to decide 'whether the constituent issues that bear on [Defendants'] ultimate liability are *provable in common.*'" *Flores v. Anjost Corp.*, 284 F.R.D. 112, 122 (S.D.N.Y. 2012) (*quoting Myers v. Hertz Corp.*, 624 F.3d 537, 549 (2d Cir. 2010)) (emphasis in original).

The party seeking class certification bears the burden of satisfying the requirements of Rule 23 by a preponderance of the evidence. *Teamsters Local 445*, 546 F.3d at 202. Nevertheless, "[t]he Second Circuit has emphasized that Rule 23 should be given liberal rather than restrictive construction." *Vargas*, 324 F.R.D. at 324 (citations omitted). Consequently, "it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification." *Id.* (citations omitted).

### ii.    Plaintiffs Satisfy The Requirements of Rule 23(a)

In order to meet their burden under Rule 23(a), Plaintiffs must show that:

(1) The class is so numerous that joinder of all members is impracticable;
(2) There are questions of law or fact common to the class;
(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) The representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)-(4).

### a.    Numerosity – Rule 23(a)(1)

Under Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. Pr. 23(a)(1).  Numerosity is presumed satisfied if the class has at least 40 members. *See Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993). Here, Defendants' payroll records reflect that there are at least 200 potential Class Members. (Buzzard Decl. ¶ 39, Ex. 8-12.) Moreover, Defendants' Fed. R. Civ. P 30(b)(6) witness confirmed that there have been more than 50 individuals employed as food-service employees at OLB since 2021. (Petrosyants Dep. at 182:5-17.)  Thus, numerosity is easily satisfied.

### b.    Commonality – Rule 23(a)(2)

Rule 23(a)(2) requires that a common question of fact or law is capable of "generat[ing] common *answers* apt to drive the resolution of the litigation." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 162 (S.D.N.Y. 2014) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)).  Put another way, commonality requires a "common contention" that will "resolve an issue central to the validity of each one of the claims in one stroke." *Jackson*, 298 F.R.D. at 162. (internal citations omitted).  "Even a single common legal or factual question will suffice." *Id*. (quoting *Freeland v. AT&T Corp.*, 238 F.R.D. 130, 140 (S.D.N.Y. 2006)).

14

"'In wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices.'" *Andrade-Barteldes v. Valencia*, No. 23 CV 495, 2023 U.S. Dist. LEXIS 215247, at *9 (S.D.N.Y. Dec. 4, 2023). "[F]actual differences among the claims of the class members do not preclude a finding of commonality." *Shepard v. Rhea*, No. 12 CV 7220, 2014 U.S. Dist. LEXIS 158189, at *13 (S.D.N.Y. Nov. 7, 2014); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 371 (S.D.N.Y. 2007) ("Once a common question is identified, differences among the questions raised by individual members [of the class] will not defeat commonality."); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 86 (S.D.N.Y. May 24, 2001) (ruling that differences in the amount of hours worked by collective members and the amount of pay the employees received do not defeat certification because "[i]t is well-established that individual questions with respect to damages will not defeat certification") (internal quotation omitted); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 181 (W.D.N.Y. 2005) ("The claim by each individual need not be identical, however, but there must exist common questions of fact or law.").

As described above, Defendants implemented a common policy of requiring tipped employees to share tips with a management employee, retaining service charges which should have been remitted to food-service staff, paying the tipped employees pursuant to the tip credit without providing the necessary notice, failing to pay tipped employees the correct overtime rate, and failing to provide the required wage notices and wage statements.

Thus, the following questions of fact or law are common to the potential Class Members:

(1) Whether OLB's use of the tip credit to pay potential Class Members was unlawful;

(2) Whether OLB illegally included a manager in the Restaurant's tip pool;

(3) Whether OLB illegally retained "service charges" it charged customers;

15

(4) Whether the overtime rates paid by OLB were unlawful;

(5) Whether OLB provided potential Class Members with wage notices that complied with N.Y. Lab. L. § 195(1); and

(6) Whether OLB provided potential Class Members with wage statements that complied with N.Y. Lab. L. § 195(3).

These questions generate common answers that would drive the resolution of the litigation because, in a single stroke, they can establish that Defendants caused the same injury to Class Members by unlawfully (1) paying Class Members pursuant to a tip credit without providing the required notice; (2) misappropriating Class Members' tips; (3) paying Class Members less than the full overtime rate; (4) failing to provide the wage notices required under N.Y. Lab. L. § 195(1); and (5) failing to provide the wage statements required under N.Y. Lab. L. § 195(3).

Courts have routinely found commonality satisfied where restaurant committed these same violations against a group of employees. *See, e.g.*, *Shahriar*, 659 F.3d at 252; *Zivkovic*, 329 F.R.D. at 66, 69-70 (S.D.N.Y. 2018); *Vargas*, 324 F.R.D. at 325; *Sanchez v. N.Y. Kimchi Catering, Corp.*, 320 F.R.D. 366, 376 (S.D.N.Y. 2017); *Murphy v. Lajaunie*, No. 13 CV 6503, 2015 U.S. Dist. LEXIS 97531, at *12-13 (S.D.N.Y. July 24, 2015) (Sullivan, J.); *Megason,* 2014 U.S. Dist. LEXIS 3910, at *21-23 (S.D.N.Y. Jan. 10, 2014); *Schear*, 297 F.R.D. at 124.

### c.  Typicality – Rule 23(a)(3)

Typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Barrows v. Becerra*, 24 F.4th 116, 131 (2d Cir. 2022).  "A plaintiff's claims are typical of the class members' claims where the plaintiff's and the class members' 'injuries derive from a unitary course of conduct by a single system." *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 337 (S.D.N.Y. 2010) (*quoting Marisol A.*, 126 F.3d at 377).  However, "minor variations in the fact patterns

16

underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class. *Robidoux*, 987 F.2d at 936-37; *see also Whitehorn v. Wolfgang's Steakhouse, Inc.*, 275 F.R.D. 193, 199 (S.D.N.Y. 2011). Typicality "'does not require factual identity between the named plaintiffs and the class members, only that the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class.'" *Gonzalez v. Hanover Ventures Marketplace LLC*, No. 21-cv-1347 (ER), 2024 U.S. Dist. LEXIS 48475, at *13 (S.D.N.Y. Mar. 18, 2024); *see also*, *e.g.*, *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 281 F.R.D. 100, 106 (E.D.N.Y. 2011) (stating that "[e]ven if some class members' facts are somewhat different than [the named plaintiffs] the claims are similar enough to meet the typicality element," because all class members "were subject to the same general employment scheme" and "their claims are all based on the same course of events and legal theory") (citations omitted).

The commonality and typicality "'requirements tend to merge into one another.'" *Gonzalez*, 2024 U.S. Dist. LEXIS 48475, at *12. Because, as discussed with respect to commonality, all Class Members were subject to the same employment policies, typicality is easily satisfied. *E.g.*, *id.* at *16-17; *Zivkovic*, 329 F.R.D. at 71; *Velez v. 111 Atlas Rest. Corp.*, No. 14 CV 6956, 2016 U.S. Dist. LEXIS 107230, at *69 (E.D.N.Y. Aug. 11, 2016); *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 204 (S.D.N.Y. 2006).

### d.  Adequacy – Rule 23(a)(4)

The final requirement of Rule 23(a) is that the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). Where the "class representatives are prepared to prosecute fully the action and have no known conflicts with any class member," the adequacy requirements are met. *Shahriar*, 659 F.3d at 253. Here, Plaintiffs

Fernandez and Montor-Teran are prepared to act as class representatives, have no conflict with any Class Members, and will fairly and adequately protect the interests of the Class. (Fernandez Decl. ¶¶ 6-8; Montor-Teran Decl. ¶¶ 6-8.) Additionally, since the Plaintiffs were subject to the same common policies and practices as all other members of the Class, the same legal arguments and strategies are applicable to vindicate their claims. *See Spicer*, 269 F.R.D. at 337 ("The fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiffs' claims will vindicate those of the class.") (citation omitted).

### e. Rule 23(a)'s implied ascertainability requirement

Although it is "not explicitly spelled out in Rule 23, courts have added an 'implied requirement of ascertainability' with respect to the class definition." *Hamelin v. Faxton-St. Luke's Healthcare*, 274 F.R.D. 385, 393 (N.D.N.Y. 2011). Specifically, courts have required that "a class be identifiable before it may be properly certified." *Id*. at 396 (*citing Dunnigan v. Metro. Life Ins. Co*., 214 F.R.D. 125, 135 (S.D.N.Y. 2003)). "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Schear*, 297 F.R.D. at 125 (quotation omitted). Here, the proposed Class Members are easily identifiable from Defendants' records: it is comprised of all tipped employees – servers, runners, bussers, and bartenders– who worked at OLB during the Class Period.

### iii. Class Certification Under Rule 23(b)(3) Is Appropriate

"In addition to satisfying the Rule 23(a) prerequisites, a class proponent must qualify the proposed class under one of the three subsection 23(b) categories." *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010). "Rule 23(b)(3), the provision that Plaintiffs move under here, is appropriate in cases in which common legal or factual issues predominate over individual issues and where a

class action is superior to other methods of adjudication." *Schear*, 297 F.R.D. at 125 (quoting Fed. R. Civ. P. 23(b)(3)).

### a.   Common questions of law and fact predominate

Predominance is satisfied under Rule 23(b)(3) "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *In re US Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) (internal quotation marks omitted).

Courts routinely find that common questions predominate in wage and hour actions brought on behalf of a class of employees of the same employer challenging allegedly illegal policies and practices. *See*, *e.g.*, *Zivkovic*, 329 F.R.D. at 75 ("Where plaintiffs' claims arise from a common policy and rely on a common legal theory, the predominance requirement is satisfied because the need for individualized determinations of the putative class members' damages does not, without more, preclude class certifications.") (internal quotation marks omitted); *Velez*, 2016 U.S. Dist. LEXIS 107230, at *71-72; *Megason*, 2014 U.S. Dist. LEXIS 3910, at *21, 25; *Schear*, 297 F.R.D. at 125-26; *Spicer*, 269 F.R.D. at 338.  Here, the common questions identified *supra* will determine Defendants' liability with respect to the entire class.  Accordingly, common questions predominate.

### b.   A class action is superior to other methods of adjudication

Class certification will permit the resolution of dozens of individual claims in a single forum, at one time, thereby avoiding a multiplicity of repetitive lawsuits.  When plaintiffs are "aggrieved by a single policy of the defendant," a class action is ideal as many nearly identical

19

legal and factual issues can be adjudicated in unison. *In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124, 146 (2d Cir. 2001).

Courts routinely find superiority satisfied where, as here, it is unlikely that class members would bring individual actions on their own behalf because the costs of individual litigation would likely outweigh their recovery. *See*, *e.g.*, *Zivkovic*, 329 F.R.D. at 76 (superiority satisfied where "[i]t is unlikely that the class members would engage in individual action because the amount of potential recovery is low and likely to be outweighed by the individual cost of litigation"); *Schear*, 297 F.R.D. at 125 ("Courts routinely hold that a class action is superior where, as here, potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation, and many potential class members are currently employed by the defendants."); *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2006 U.S. Dist. LEXIS 74039, at *53 (S.D.N.Y. Sept. 29, 2006) (class action is superior to other methods where the amount of recovery was small in relation to litigation costs). Without certification, a host of individuals will lose any practical means for obtaining damages stemming from Defendants' illegal conduct.

In addition, opt-out classes are commonly granted where, as here, some Class Members currently work for the defendant and "the concern for possible employer reprisal action exists and renders the alternative of individual joinder less than practicable." *Trinidad v. Breakaway Courier Sys.*, No. 05 Civ. 4116, 2007 U.S. Dist. LEXIS 2914, at *26 (S.D.N.Y. Jan. 12, 2007) (internal quotation omitted); *see also*, *e.g.*, *Schear*, 297 F.R.D at 126; *Torres*, 2006 U.S. Dist. LEXIS 74039, at *53-54. Since the proposed class action will "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural

fairness or bringing about other undesirable results," a class action is the superior method of resolving the claims of the Class. *Myers*, 624 F.3d at 547.

### iv.  Plaintiffs' Counsel Should be Appointed as Class Counsel

Prior to appointing class counsel, Rule 23(g) directs the Court to consider:

(i)    the work counsel has done in identifying or investigating potential claims in the action;
(ii)   counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
(iii)  counsel's knowledge of the applicable law; and
(iv)   the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g).  *See also Andrade-Barteldes*, 2023 U.S. Dist. LEXIS 215247, at *11-12.

Plaintiffs have retained an experienced employment law firm – Joseph and Kirschenbaum LLP ("JK").  Counsel has extensive experience, and JK has repeatedly managed large class-action litigations to successful resolution.  *See, e.g., Shahriar*, 659 F.3d 234 (affirming district court's certification of Rule 23 class of restaurant servers with JK as class counsel); *Argudo,* 2019 U.S. Dist. LEXIS 163249, at *16 (appointing JK class counsel); *Zivkovic*, 329 F.R.D. at 74 ("[T]he attorneys of Joseph & Kirschenbaum have substantial experience as lead or co-lead class counsel in wage and hour actions in this District."); *Murphy*, 2015 U.S. Dist. LEXIS 97531, at *22-23 (appointing JK class counsel); *Megason*, 2014 U.S. Dist. LEXIS 3910 (same). (*See also* Buzzard Decl. ¶¶ 40-48.) Further, Plaintiffs' counsel have zealously prosecuted this action and identified the potential claims and have sufficient financial resources to represent the class.  (*Id*. ¶ 49.)  The Rule 23(g) requirements are therefore satisfied by the appointment of Plaintiffs' counsel as class counsel.

### B.  The Court Should Certify This Case As A Collective Action

#### i.  Legal Standard For Conditional Certification And Court-Authorized Notice

The FLSA contemplates the maintenance of collective actions by similarly situated employees. 29 U.S.C. § 216(b). Such collective actions are favored under the law because they benefit the judicial system by enabling the "efficient resolution in one proceeding of common issues of law and fact" and provide employees with the opportunity to "lower individual costs to vindicate rights by the pooling of resources." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *Alonso v. Uncle Jack's Steakhouse, Inc.*, 648 F. Supp. 2d 484, 489 (S.D.N.Y. 2009). The alternative, a multitude of virtually identical individual suits, would burden courts unnecessarily and risk inconsistent judgments on claims arising from the same events and brought under the same laws. *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 371 (S.D.N.Y. 2007) ("Collective adjudication will avoid the proliferation of individual lawsuits that could result in disparate rulings and wasting of judicial and party resources.").

"District courts have discretion to facilitate this collective action mechanism by authorizing that notice be sent to potential plaintiffs informing them of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Gaspar v. Personal Touch Moving, Inc.*, No. 13 CV 8187, 2014 U.S. Dist. LEXIS 129856, at *9-10 (S.D.N.Y. Sept. 15, 2014) (quotation marks omitted); *see also Hoffman-La Roche*, 493 U.S. at 170-173 (ruling that timely notice is necessary to afford employees the opportunity to "make informed decisions about whether to participate" and assists the trial court in managing the joinder of potential collective members). Unlike absent class members in a Fed. R. Civ. P. 23 class action, potential collective members must affirmatively consent (or "opt in") to be covered by the suit. 29 U.S.C. § 216(b).

Courts typically follow a two-stage process to determine whether a matter should proceed as a FLSA collective action under 29 U.S.C. § 216(b). *Ayers v. SGS Control Servs.*, 2007 U.S. Dist. LEXIS 19634, at *15-16 (S.D.N.Y. Feb. 26, 2007). In the first stage, which typically occurs

early in the litigation, the named plaintiffs bear the "minimal" burden of proof to show that there are other employees who are similarly situated to them. *Id*. (quotations and citations omitted); *see also Prizmic v. Armour, Inc*., No. 05-CV-2503 (DLI) (MDG), 2006 U.S. Dist. LEXIS 42627, at *6 (E.D.N.Y. June 12, 2006) ("If the court finds that they are similarly situated, it may conditionally certify the class and authorize notice to be sent to putative class members.").

The second stage of the certification inquiry occurs after discovery closes. *See Ayers*, 2007 U.S. Dist. LEXIS 19634, at *16. At the second stage, the court must determine whether the class should be decertified or continue to trial as a collective action. *See Prizmic*, 2006 U.S. Dist. LEXIS 42627, at *6.  Second-stage certification requires the court to exercise "a more heightened scrutiny" in determining whether the potential plaintiffs are similarly situated. *Jacobs v. NY Foundling Hosp*., 483 F. Supp. 2d 251, 265 (E.D.N.Y. 2007). Still, even at this stage, a plaintiff may support their claims through "generalized proof" and "need show only that their positions are similar, not identical." *Ayers*, 2007 U.S. Dist. LEXIS 19634, at *16, 19.

Here, where discovery has been completed, Plaintiffs seek to have this case certified as a collective action under the "second-stage certification" standard. *See, e.g., Gayle v. Harry's Nurses Registry, Inc*., No. 07-CV-4672 (NGG) (MDG), 2012 U.S. Dist. LEXIS 28157, at *22 (E.D.N.Y. Mar. 1, 2012) (certifying collective under § 216(b) after discovery had been completed where Plaintiffs met the  "second-stage certification" standard).

### ii.  Plaintiffs Have Established That They Are Similarly situated to Other Collective Members

Plaintiff has made more than a "modest factual showing" of being similarly situated to the other food-service employees based on the allegations in the  complaint, her sworn declaration, and payroll records.

Specifically, Plaintiffs have presented evidence that Defendants included an employee in the tip pool that had managerial authority including, among other things, firing, disciplining and scheduling. *See supra* pgs. 11-12. 29 U.S.C. § 203(m)(2)(B) makes it unlawful for an employer to keep tips received by its employees for any purpose, "including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." *See* 29 U.S.C. § 203(m)(2)(B). Stated otherwise, 29 U.S.C. § 203(m)(2)(B) makes it unlawful for an employer to "misappropriate" tips. *See also, e.g., Uddin v. O'Brien Rest. Holding Co. LLC*, No. 16-CV-2098 (RJS), 2016 U.S. Dist. LEXIS 205561, *8 (S.D.N.Y. Nov. 22, 2016) ("Plaintiffs' proposed collective is similarly situated by definition, since all tipped employees were required to participate in the pool. And because any distribution from the pool affects all participants, the members of the collective must have been subject to a common policy or practice.") (Sullivan J.); *Hoti v. Patsy's Italian Rest.*, No. 24-CV-6991 (JGLC) (HJR), 2025 U.S. Dist. LEXIS 211546, at *16 (S.D.N.Y. Oct. 27, 2025) (certifying a collective where Plaintiff alleged a § 203 violation as Defendants did "not dispute the existence of a tip pool and acknowledge that [a] tip pool violation occurs when an employer keeps tips received by its employees.") (quotations omitted). For these reasons, the Court should certify a collective of food service employees who worked at OLB.

Lastly, the Court should equitably toll the statute of limitations on the FLSA claim as of the date of the filing of this motion until the date Plaintiffs are able to send the notice to potential opt-in plaintiffs. *See, e.g., Reyes v. A.B. Bakery Rest. Corp.*, No. 23-cv-1612 (AS), 2023 U.S. Dist. LEXIS 160439, at *13-14 (S.D.N.Y. Sep. 11, 2023) (Subramanian J.); *Xiao Ling Chen v. XpresSpa at Term. 4 JFK, LLC*, No. 15 CV 1347 (CBA) (CLP), 2016 U.S. Dist. LEXIS 20003, at *32 (E.D.N.Y. Feb. 16, 2016) ("As plaintiffs correctly point out, equitable tolling is commonly granted

upon the filing of a motion for conditional certification of a collective action because of the high

potential for prejudice to potential opt-in plaintiffs.") (collecting cases).

### C. The Proposed Class Notice Satisfies The Requirements Of Rule 23(C)(2)(B) and the FLSA

Attached as Exhibit 18 to the Buzzard Declaration is Plaintiffs' proposed class and

collective notice, which satisfies all the requirements of Rule 23(c)(2)(B) and the FLSA.[3]

Plaintiffs respectfully request that the Court (a) approve the content of this notice, (b) Order that

the notice be disseminated via mail, email and text message, and (c) Order that Defendants post

the notice in the Restaurant. *E.g., Reilly v. City of N.Y.*, No. 23-CV-521 (AS), 2024 U.S. Dist.

LEXIS 140763, at *7 (S.D.N.Y. Aug. 7, 2024) (Ordering that notice be disseminated via mail,

email and text message, as well as posted at the defendant's premises) (Subramanian J.).

## IV.    CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that this Court certify the

NYLL claims in this case as a class action under Rule 23 and certify the FLSA claim in this case

as collective action.

Dated: New York, New York
      December 12, 2025                     **JOSEPH & KIRSCHENBAUM LLP**

                                        /s/ *Lucas C. Buzzard*
                                     Maimon Kirschenbaum
                                     Lucas C. Buzzard
                                     Josef Nussbaum

---

[3] Rule 23(c)(2)(B) requires that notice to a Rule 23(b)(3) class state, "in plain, easily understood language:

      (i)         the nature of the action;
      (ii)        the definition of the class certified;
      (iii)      the class claims, issues, or defenses;
      (iv)      that a class member may enter an appearance through an attorney if the member so
                  desires;
      (v)       that the court will exclude from the class any member who requests exclusion;
      (vi)      the time and manner for requesting exclusion; and
      (vii)    the binding effect of a class judgment on members under Rule 23(c)(3)."

45 Broadway, Suite 320
New York, NY 10004
(212) 688-5640
(212) 981-9587 (fax)

*Attorneys for Plaintiffs and the putative
Class*

CERTIFICATE OF COMPLIANCE

This brief complies with the word count limitation of Local Civil Rule 7.1(c) because it contains 8710 words, not including the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates.

Dated: New York, New York
      December 12, 2025              By:      _s/ *Lucas C. Buzzard*_
                                        Lucas C. Buzzard