**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

KATHERINE FERNANDEZ, on behalf of herself and
others similarly situated,

                Plaintiff,

    v.                                      No. 25-cv-4490 (AS)

BULLDOZER HOSPITALITY GROUP, INC., d/b/a
OSTERIA LA BAIA, ROBERT PETROSYANTS and
MARIANNA SHAHMURADYAN**,**

                Defendants.

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT**

---

**JOSEPH & KIRSCHENBAUM LLP**

D. Maimon Kirschenbaum
Lucas C. Buzzard
32 Broadway, Suite 601
New York, NY 10004
Tel: (212) 688-5640

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ i

I.     PRELIMINARY STATEMENT ......................................................................... 1

II.    STATEMENT OF FACTS AND RELEVANT PROCEDURAL HISTORY ................... 2

III.   SUMMARY JUDGMENT STANDARD.......................................................... 4

IV.    ARGUMEMT .............................................................................................. 6

   A.   Defendants Violated New York's Minimum Wage Law by Paying Class Members
        Pursuant to a Tip Credit Without Providing the Required Notice ................................. 6

   B.   Defendants Are Liable for Liquidated Damages Under the FLSA And NYLL ............. 9

   C.   Defendants Violated N.Y. Lab. Law § 195(1) By Failing to Provide Class Members
        with Wage Notices…………………………………………………………………..10

   D.   The Class Members Are Entitled to Summary Judgment as to Damages on Their Tip
        Credit Claims…………………………………………………………………….....14

   E.   Defendants Are Liable for Prejudgment Interest Under The NYLL…………………..16

   F.   Defendants Shahmuradyan and Petrosyants Are Individually Liable As Employers For
        FLSA And NYLL Claims…………………………………………………………...16

      1.   Defendant Shahmuradyan and Petrosyants Admittedly Have and Exercise
           Operational Control over the Restaurant………………………………………………18

         a.   Defendant Shahmuradyan's Operational Control………………………………...18

         b.   Defendant Petrosyants' Operational Control……………………………………..20

      2.   The Carter Factors Confirm that Defendants Shahmuradyan and Petrosyants are
           "Employers"……………………………………………………………………………21

         a.   Carter Factor 1 – Shahmuradyan and Petrosyants have the Power to Hire and Fire
              Employees………………………………………………………………………...21

         b.   Carter Factor 2 – Supervision of Work Schedules and Control over Conditions of
              Employment………………………………………………………………………22

         c.   Carter Factor 3 – Control over Rate and Method of Payment……………………24

d.    Carter Factor 4 – Maintenance of Employment Records…………………………24

3.    The Totality of the Circumstances Demonstrate that Defendants Shahmuradyan and Petrosyants are "Employers" under the FLSA and NYLL…………………………..25

V.    CONCLUSION………………………………………………………………………..27

# TABLE OF AUTHORITIES

**Cases**

*Adams's Case*, 3 Ct. Cl. 312 (Ct. Cl. 1867) ......................................................11

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .....................................4,5

*Balderramo v. Go N.Y. Tours Inc.*, 668 F. Supp. 3d 207 (S.D.N.Y. 2023) .....................5,6,14

*Barney v. Saunders*, 57 U.S. 535 (1854)..........................................................12

*Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372 (E.D.N.Y. 2012) ......23

*Bohnak v. Marsh & McLennan Cos.*, 79 F.4th 276 (2d Cir. 2023)...................................12

*Bonito v. Avalon Partners, Inc.*, 106 A.D.3d 625 (N.Y. App. Div. 1st Dep't 2013)........16

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...................................................4

*Chang v. Louis Amsterdamn, Inc.*, No. 19 CV 3056,
    2022 U.S. Dist. LEXIS 177606 (E.D.N.Y. Sept. 29, 2022)................................8

*Charles v. Pinnacle Too, LLC*, No. 22 CV 4232,
    2024 U.S. Dist. LEXIS 188084 (S.D.N.Y. Oct. 15, 2024) .................................11,12

*Chichinadze v. BG Bar Inc.*, 517 F. Supp. 3d 240 (S.D.N.Y. 2021) ...............................10

*Choudhury v. Hamza Express Food Corp.*, 666 Fed. App'x 59 (2d Cir. 2016) ..............15

*Cortez v. Brand Name 99 Cents & Up Corp.*, No. 24-cv-5262,
    2025 U.S. Dist. LEXIS 82056 (S.D.N.Y. Apr. 30, 2025)...................................18

*Cousin v. White Castle System, Inc.*, No. 06-CV-6335,
    2009 U.S. Dist. LEXIS 57079, 2009 WL 1955555 (E.D.N.Y. July 6, 2009).......5

*Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113 (S.D.N.Y. 2011).....................................5

*Flanigan v. Vulcan Power Group, LLC*, 642 Fed. App'x 46 (2d Cir. 2016)...................18

*Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423 (2d Cir. 2001) ...................................5

*Galvez v. 800 Ginza Sushi, Inc.*, No. 19-cv-8549,
    2022 U.S. Dist. LEXIS 43523 (S.D.N.Y. March 11, 2022) ...............................8

*Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481 (S.D.N.Y. 2017) ...........................16

*Grande v. 48 Rockefeller Corp.*, No. 21-cv-1593,
    2023 U.S. Dist. LEXIS 140490 (S.D.N.Y. Aug. 11, 2023)..................................25,26

*Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300 (2d Cir. 2024).....................................13

*Hernandez v. JRPAC Inc.*, No. 14 Civ. 4176,
    2016 U.S. Dist. LEXIS 75430 (S.D.N.Y. June 9, 2016) ....................................7

*Hart v. Rick's Cabaret Int'l, Inc.*, 60 F. Supp. 3d 447 (S.D.N.Y. 2014) ........................5

*Herman v. RSR Sec. Servs. Ltd.* ("*RSR*"), 172 F.3d 132 (2d Cir. 1999) ..........................17

*Holcomb v. Iona Coll.*, 521 F.3d 130 (2d Cir. 2008)........................................................4

*Inclan v. N.Y. Hospitality Group, Inc.*, 95 F. Supp. 3d 490 (S.D.N.Y. 2015) .................*passim*

*Imbarrato v. Banta Mgmt. Servs.*, No. 18 CV 5422,
    2020 U.S. Dist. LEXIS 49740 (S.D.N.Y. Mar. 20, 2020) ...................................12

*Irizarry v. Catsimatidis*, 722 F.3d 99 (2d Cir. 2013) ..........................................................*passim*

*Kaur v. Royal Arcadia Palace, Inc.*, 643 F. Supp. 2d 276 (E.D.N.Y. 2007)...................23

*Kelly v. Kelly*, 3 Barb. 419 (N.Y. Sup. Ct. 1848)..............................................................12

*Lauriano v. Lucky Chicken Corp.*, No. 23-cv-9028, 2025 WL 1808701,
    2025 U.S. Dist. LEXIS 124807 (S.D.N.Y. July 1, 2025) ....................................18

*Lodescar v. Denihan Hosp. Grp.*, No. 14-cv-8218,
    2016 U.S. Dist. LEXIS 202630 (S.D.N.Y. Sept. 30, 2016)................................26

*Lopez v. MNAF Pizzeria, Inc.*, No. 18 CV 6033,
    2021 U.S. Dist. LEXIS 57260 (S.D.N.Y. Mar. 25, 2021) ...................................7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).......................4

*Mangahas v. Eight Oranges Inc.*, 754 F. Supp. 3d 468 (S.D.N.Y. 2024) .......................5,9

*Martinenko v. 212 Steakhouse Inc.*, No. 22-cv-518,
    2024 U.S. Dist. LEXIS 144128 (S.D.N.Y. Aug. 13, 2024) *adopted by*
    2024 U.S. Dist. LEXIS 173358 (S.D.N.Y. Sept. 24, 2024)................................5,6,9

*Marin v. Apple-Metro, Inc.*, No. 12 CV 5274,
    2017 U.S. Dist. LEXIS 165568 (E.D.N.Y. Oct. 4, 2017)....................................7

*Saba Cap. CEF Opportunities 1, Ltd. v. Nuveen Floating Rate Income Fund*,
    88 F.4th 103 (2d Cir. 2023) ...................................................................13

*Salazar v. NBA*, 118 F.4th 433 (2d Cir. 2024) ...................................................13

*Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442 (S.D.N.Y. 2015) ...........8

*Salustio v. 106 Columbia Deli Corp.*, 264 F. Supp. 3d 540 (S.D.N.Y. 2017) ...............7

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234 (2d Cir. 2011) ...............5

*Tapia v. BLCH 3rd Ave. LLC*, 906 F.3d 58 (2d Cir. 2018)...............................17,18,20

*Tecocoatzi-Ortiz v. Just Salad LLC*, No. 18 CV 7342,
    2022 U.S. Dist. LEXIS 34090 (S.D.N.Y. Feb. 25, 2022) ...................................7

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ........................................11

*Valle v. Gordon Chen's Kitchen LLC*, 254 F. Supp. 3d 665 (S.D.N.Y. 2017) ...............7

*Van Duser v. Tozzer Ltd.*, No. 23-cv-9329 (AS),
    2024 U.S. Dist. LEXIS 198344 (S.D.N.Y. Oct. 31, 2024) ...................................13

*Velasquez v. U.S. 1 Farm Mkt., Inc.*, No. 13-cv-634,
    2016 U.S. Dist. LEXIS 59536 (D. Conn. May 3, 2016).......................................22

*Villanueva v. 179 Third Ave. Rest. Inc.*, 500 F. Supp. 3d 219 (S.D.N.Y. 2020)...............7,9

*Youngblood v. Fam. Dollar Stores, Inc.*, 2011 U.S. Dist. LEXIS 115389,
    2011 WL 4597555 (S.D.N.Y. Oct. 4, 2011) ........................................................5

*Zambrano v. Jermyn Contr. Corp.*, Case No. 22 Civ. 3131,
    2023 U.S. Dist. LEXIS 139224 (S.D.N.Y. Aug. 9, 2023) ...................................14

**Statutes, Rules, and Regulations**

29 U.S.C. § 216(b) ...............................................................................................9

29 U.S.C. § 260 ....................................................................................................9

Fed. R. Civ. P. 56(a) ...........................................................................................4

N.Y. Lab. Law § 195(1).................................................................................*passim*

N.Y. Lab. Law § 198(1-a).................................................................................16

N.Y. Lab. Law § 652 .................................................................................6

N.Y. Lab. Law § 663 ...............................................................................16

N.Y. Comp. Codes R. & Regs, tit. 12, § 146-1.3 ...............................6,15

N.Y. Comp. Codes R. & Regs, tit. 12, § 146-2.2 .................................6,7

## I.  PRELIMINARY STATEMENT

Plaintiff Katherine Fernandez and Opt-in Plaintiff Adrian Montor-Teran (collectively, "Plaintiffs") submit this memorandum of law in support of their motion for partial summary judgment against Defendants Bulldozer Hospitality Group Inc. d/b/a Osteria La Baia ("OLB" or the "Restaurant"), Robert Petrosyants and Marianna Shahmuradyan (collectively "Defendants") as to liability and damages on all claims that Class Members were illegally paid pursuant to a tip credit.[1] Plaintiffs also move for summary judgment for liability only on Class Members' claims that Defendants failed to provide wage notices as required under NYLL § 195.[2] Contemporaneously with this motion, Plaintiffs also move for certification of a Rule 23 class consisting of all OLB tipped employees, including servers, bussers, runners, and barbacks who worked at the restaurant since November 2021. *See* ECF Dkt No. 60. Plaintiffs respectfully request that the Court decide that class certification motion first and then grant partial summary judgment to the certified class pursuant to this motion.

The record in this case is clear and entitles the Class Members to summary judgment for liability and damages on their tip credit claims. Importantly, as set forth below, there is no dispute that Defendants paid all Class Members pursuant to New York's tip credit but never provided any of the Class Members with a written notice prior to taking that tip credit. As such, Defendants were not entitled to pay the Class Members pursuant to the New York tip credit and are liable for New York minimum wage violations. Furthermore, there is no dispute that Defendants did not provide any of the Class Members with written notice as required under New York law when Class

---

[1] As used herein, "Class Members" refers to all individuals Plaintiffs seek to certify as class members in the motion for class and collective certification they are filing contemporaneously with this motion, namely all tipped employees, including servers, bussers, runners and bartenders, who worked at OLB since it opened in November 2021.

[2] In support of their motion, Plaintiffs submit their Local Rule 56.1 Statement of Undisputed Facts ("SMF") and the December 12, 2025 Declaration of Lucas C. Buzzard ("Buzzard Decl.") and exhibits annexed thereto ("Buzzard Ex. __"). Citations to depositions are referenced by the deponent's last name (e.g., "Shahmuradyan Dep.")

Members were first hired to work at OLB. As such, Defendants are responsible to pay penalties to Class Members as required under N.Y. Lab. Law § 198.

Class Members are also entitled to liquidated damages on their wage and hour claims in this case because Defendants cannot satisfy their burden that they took active steps to comply with the law. Lastly, it is undisputed that Defendants Petrosyants and Shahmuradyan were all Class Members' employer and thus are liable under the FLSA and NYLL.

## II.  STATEMENT OF FACTS AND RELEVANT PROCEDURAL HISTORY

On May 29, 2025, Named Plaintiff Katherine Fernandez, a former busser/runner at Defendants' OLB restaurant, commenced this class and collective action against Defendants OLB, and its owners/operators, husband and wife, Robert Petrosyants and Marianna Shahmuradyan. ECF. No. 1. Plaintiff filed an amended complaint on July 23, 2025. ECF No. 15. In that complaint, Plaintiff alleged that Defendants violated the FLSA and/or the NYLL by (1) illegally requiring tipped food-service employees to share tips with a management level employee, (2) paying tipped employees pursuant to a tip credit without providing the notice required under New York law; (3) illegally retaining "service charges" they charged private events customers which are presumed to be gratuities under New York law unless certain preconditions are met; and (4) failing to provide tipped employees with the wage notices and wage statements required under New York law. *See generally* ECF. No. 15. Opt-in Plaintiff filed a consent to join form on July 2, 2025. ECF No. 12.

Relevant to this motion, although Defendants admit that they applied a tip credit to food-service employees' wages, *see* SMF ¶¶ 60-61, they have not produced a single wage notice in this litigation in response to any of Plaintiffs' discovery requests specifically asking for such documents, and have repeatedly admitted that they have not located any notices despite searching for months, *see* SMF ¶¶ 62-71. Clearly, such wage notices do not exist and were never provided

to any Class Member. SMF ¶¶ 72-73.

There is no dispute that Defendants did not take any affirmative steps to ensure their compliance with wage and hour laws. SMF ¶¶ 96-100. Thus, there is no dispute that Defendants did not make a good faith attempt to comply with the law.

Finally, there is no dispute that Defendants Shahmuradyan and Petrosyants – who are married – each testified that they are responsible for overseeing and running all aspects of OLB in ways that directly affect the nature and conditions of Plaintiffs' employment, thus making them "employers" responsible for the FLSA and NYLL violations here. Shahmuradyan, OLB's sole owner, testified that she "oversee[s] everything" at the restaurant, has financial control over the business, and possesses "ultimate authority" over all restaurant operations. Buzzard Decl., Ex. 1 (Shahmuradyan Dep.) at 35:23-36:2, 48:11, 69:24-70:4; *see also* SMF ¶¶ 3, 6-11. She hired all managerial staff at the restaurant, is frequently present in the restaurant, meets with the general manager each week to discuss OLB's day-to-day operations with a particular focus on any payroll issues, has access to and reviews the restaurant's payroll, and has authority to hire and fire any restaurant employee. SMF ¶¶ 12-35.

Petrosyants, who Shahmuradyan hired as director of operations and gave "carte blanche" to operate the restaurant as he sees fit, is responsible for "running the business," which includes overseeing all operations, ensuring employees are paid, maintaining the quality of service, reviewing the restaurant's financials, and generally ensuring that the restaurant is profitable. SMF ¶¶ 36-42, 47. He is frequently in the restaurant where he pays close attention to how service is performed and meets with the general manager several times per week to discuss service and staffing issues. SMF ¶¶ 45-48, 54. He also attends pre-shift meetings of the front-of-house staff, where he discusses service performance and makes sure that the staff give their "consistently best

3

performance." SMF ¶¶ 50-53. Like his wife, Petrosyants has authority to hire and fire restaurant employees, and if he sees any service employee not performing their duties satisfactorily, he reports that issue to the manager who would then "take action." SMF ¶¶ 43-44, 48-49.

## III.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" (quoting former Fed. R. Civ. P. 56(c))). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to present "evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 323).

To defeat a motion for summary judgment, the non-movant "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting former Fed. R. Civ. P. 56(e)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586 (citations omitted), and she "may not rely on conclusory allegations or unsubstantiated

speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks and citation omitted). *see also Anderson*, 477 U.S. at 249-50 (summary judgment "may be granted" if the opposing evidence is "merely colorable" or "not significantly probative"). The "opposing party must set forth 'concrete particulars' showing that a trial is needed." *Cousin v. White Castle System, Inc*., No. 06-CV-6335, 2009 U.S. Dist. LEXIS 57079, 2009 WL 1955555, at *4 (E.D.N.Y. July 6, 2009) (quoting *Anderson*, 477 U.S. at 252).

Where "class claims all derive from the same compensation policies and tipping practices," *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011), it follows that evidence of those policies and practices will apply to the whole class. *See also Youngblood v. Fam. Dollar Stores, Inc.*, 2011 U.S. Dist. LEXIS 115389, 2011 WL 4597555, at *4 (S.D.N.Y. Oct. 4, 2011) ("[T]he crux of this case is whether the company-wide policies, as implemented, violated Plaintiffs' statutory rights"); *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 130 (S.D.N.Y. 2011) (similar). Accordingly, courts can and do grant or deny summary judgment on a classwide basis for wage and claims such as the ones at issue here. *See, e.g., Mangahas v. Eight Oranges Inc*., 754 F. Supp. 3d 468 (S.D.N.Y. 2024) (granting classwide summary judgment on, among other things, tip credit claims and individual employer status); *Martineko v. 212 Steakhouse, Inc.*, 2024 U.S. Dist. LEXIS 144128 (S.D.N.Y. Aug. 13, 2024) (recommending classwide partial summary judgment in FLSA and labor law case) *adopted by* 2024 U.S. Dist. LEXIS 173358 (S.D.N.Y. Sept. 24, 2024); *Balderramo v. Go N.Y. Tours Inc.*, 668 F. Supp. 3d 207 (S.D.N.Y. 2023) (granting classwide summary judgment on NYLL wage notice and overtime claims); *Hart v. Rick's Cabaret Int'l, Inc*., 60 F. Supp. 3d 447 (S.D.N.Y. 2014) (granting summary judgment on claims for FLSA and NYLL minimum wage violations and NYLL fines and fees).

To obtain classwide summary judgment, a plaintiff must establish that there is no genuine dispute as to an unlawful labor law practice that applies classwide. *See, e.g., Martineko*, 2024 U.S. Dist. LEXIS 144128, at *49 ("Summary judgment should be granted on Plaintiffs' minimum wage claim based on Defendants' unlawful use of a tip credit because there is no genuine dispute that Defendants paid class members pursuant to a tip credit without providing the required written notice."). In so doing, a plaintiff may offer direct evidence of a classwide policy or practice that establishes classwide liability. *E.g.*, *Balderramo*, 668 F. Supp. 3d at 239 (granting summary judgment where defendant "admitt[ed] to not paying its drivers one and one half times their regular rates for overtime hours worked").

## IV. ARGUMENT

### A. Defendants Violated New York's Minimum Wage Law by Paying Class Members Pursuant to a Tip Credit Without Providing the Required Notice

Defendants violated New York's minimum wage requirements by paying Class Members pursuant to a tip credit without providing the required written notice. The NYLL sets a minimum hourly required rate of pay for all employees. *See* N.Y. Lab. Law § 652. New York permits employers to deviate from the statutory minimum wage for "tipped employees" and pay less than the minimum wage by taking a "tip credit" only if certain prerequisites are satisfied. N.Y. Comp. Codes R. & Regs ("N.Y.C.R.R."), tit. 12, § 146-1.3. Under New York law, "[a]n employer may take a credit towards the basic minimum hourly rate if a service employee or food service worker receives enough tips and if the employee has been notified of the tip credit as required in section 146-2.2" of the Hospitality Industry Wage Order (the "Hospitality Wage Order"). *Id.*

Section 146-2.2 of the Hospitality Industry Wage Order is titled "Written notice of pay rate, tip credit and pay day." N.Y.C.R.R., tit. 12, § 146-2.2. It states that

> an employer shall give each employee written notice of the employee's regular
> hourly pay rate, overtime hourly pay rate, the amount of tip credit, if any, to be
> taken from the basic minimum hourly rate, and the regular payday.  The notice shall
> also state that extra pay is required if tips are insufficient to bring the employee up
> to the basic minimum hourly rate.

*Id.* § 146-2.2(a).  Such written notice is required "prior to the start of employment" and "prior to

any change in the employee's hourly rates of pay." *Id.* § 146-2.2(a), (b). The employer bears the

burden of proving compliance with this notice requirement. *Id*. § 146-2.2(d). *Marin v. Apple-*

*Metro, Inc*., No. 12 CV 5274 (ENV) (CLP), 2017 U.S. Dist. LEXIS 165568, at *98 (E.D.N.Y. Oct.

4, 2017) ("It is defendants' burden to demonstrate that the prerequisites for a tip credit have been

met."); *Valle v. Gordon Chen's Kitchen LLC*, 254 F. Supp. 3d 665, 673 (S.D.N.Y. 2017); *Salustio*

*v. 106 Columbia Deli Corp*., 264 F. Supp. 3d 540, 554 (S.D.N.Y. 2017). "An employer who fails

to provide the required notice is liable for the difference between the full minimum wage rate and

what the employee was actually paid." *Salustio v. 106 Columbia Deli Corp*., 264 F. Supp. 3d 540,

554 (S.D.N.Y. 2017) (citations omitted). The law requires the employer to "obtain from the

employee a signed and dated written acknowledgment… of receipt of this notice, which the

employer *shall preserve and maintain for six years*." N.Y.C.R.R.. tit. 12, § 146-2.2(c) (emphasis

added); *see Tecocoatzi-Ortiz v. Just Salad LLC*, No. 18 CV 7342, 2022 U.S. Dist. LEXIS 34090,

at *24 (S.D.N.Y. Feb. 25, 2022).

     If an employer fails to provide the written notice as described in § 146-2.2, it may not pay

tipped employees pursuant to a tip credit. *E.g.*, *Tecocoatzi-Ortiz*, 2022 U.S. Dist. LEXIS 34090,

at *23-27; *Lopez v. MNAF Pizzeria, Inc.*, No. 18 CV 6033, 2021 U.S. Dist. LEXIS 57260, at *21-

24 (S.D.N.Y. Mar. 25, 2021); *Villanueva v. 179 Third Ave. Rest. Inc.*, 500 F. Supp. 3d 219, 234-

35 (S.D.N.Y. 2020); *Hernandez v. JRPAC Inc.*, No. 14 Civ. 4176, 2016 U.S. Dist. LEXIS 75430,

at *81 (S.D.N.Y. June 9, 2016) ("Notice of the tip credit under the NYLL . . . must be written.");

*Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 466 (S.D.N.Y. 2015) ("Under the current regulations, an employer may not take a tip credit unless the employer has given the employee written notice […]"). The undisputed facts show that Defendants paid Class Members pursuant to a tip credit even though they did not provide written notice of the tip credit, in violation of New York law.

It is an established fact that Defendants paid all the Class Members pursuant to a tip credit wage. SMF ¶¶ 60-61. It is also undisputed, as described *supra* at 2-3, that Defendants did not provide the Class Members with the required written notice of the tip credit. SMF ¶¶ 62-73. In fact, they never provided Class Members with *any* written wage notices. *Id.*

Defendant Petrosyants—who testified on his own behalf and on behalf of the corporate Defendant—admitted in his November 18, 2025 deposition that Defendants have not been able to locate any wage notices at all. *See* Petrosyants Dep. at 171:7-17; *see also* SMF ¶ 68 (noting in late September 2025 that wage notices had "not yet been located"). While Petrosyants made vague and self-serving assertions that some employees were provided notice of how they were going to be paid, this is insufficient to create a dispute of fact that legally adequate notice was provided. *See* Petrosyants Dep. at 43:16-44:10; *see Chang v. Louis Amsterdamn, Inc.*, No. 19 CV 3056, 2022 U.S. Dist. LEXIS 177606, at *21-28 (E.D.N.Y. Sept. 29, 2022) (granting summary judgment on minimum wage claim to employee paid pursuant to a tip credit where defendants produced no written notices and finding that defendants' mere assertion that notice was provided is insufficient to establish entitlement tip credit). Moreover, considering that Defendants are required to retain copies of these wage records for at least six years, *see* N.Y. Lab. L. § 195(1)(a), and Defendants' repeated admissions that they do not have these documents, SMF ¶¶ 68-69, Defendant Petrosyants's self-serving testimony is simply inadequate to sustain Defendants' evidentiary

burden. *See Galvez v. 800 Ginza Sushi, Inc.*, No. 19-cv-8549, 2022 U.S. Dist. LEXIS 43523, at *27-28 (S.D.N.Y. March 11, 2022) (granting summary judgment to plaintiffs' tip credit minimum wage claims when defendant failed to produce any wage notices for employees and generally testified that written notice was provided).

Therefore, it is undisputed that Defendants' use of the tip credit was unlawful, and Defendants were required to pay the Class Members the full New York minimum wage. Defendants' undisputed failure to do so subjects them to liability under the NYLL. *See Mangahas*, 754 F. Supp. 3d 468, 495-98 (granting summary judgment to a class of restaurant employees who were paid pursuant to a tip credit but did not receive the requisite written notice); *Martineko*, 2024 U.S. Dist. LEXIS 144128, at *49-53 (same).

### B.  Defendants Are Liable for Liquidated Damages Under the FLSA And NYLL

Plaintiffs and Class Members are entitled to summary judgment on their claims for liquidated damages on their minimum wage (tip credit) claims. Under the FLSA and NYLL, an employer will be liable for liquidated damages equal to the amount of unpaid wages unless it had a good faith belief that it was complying with the law. 29 U.S.C. §§ 216(b), 260; N.Y. Lab. L. §§ 198(1-a), 663(a); *Villanueva*, 500 F. Supp. 3d at 235 ("Both the FLSA and the NYLL provide for liquidated damages."). Under the FLSA, "[l]iquidated damages are mandatory unless the employer demonstrates that they acted in good faith, in which case the decision to impose liquidated damages is discretionary." *Id.* at 239 (citing 29 U.S.C. § 260). The standard for liquidated damages under the NYLL is similar. *Id.* "The employer bears the burden of proving good faith and reasonableness, [and] the burden is a difficult one, with double damages being the norm and single damages the exception." *Inclan v. N.Y. Hospitality Group, Inc.*, 95 F. Supp. 3d 490, 504 (S.D.N.Y. 2015). To avoid mandatory liquidated damages under the FLSA and NYLL

an employer must prove that it "took active steps to ascertain the dictates of the [law] and then act[ed] to comply with them," and "that its good-faith actions were objectively reasonable." *Chichinadze v. BG Bar Inc.*, 517 F. Supp. 3d 240, 258 (S.D.N.Y. 2021) (internal citations omitted).

Here, Defendants cannot satisfy their burden to produce evidence sufficient to create a dispute of fact as to whether Defendants attempted to comply with the wage and hour laws in good faith. Both Shahmuradyan and Petroyants admitted that they never consulted with anyone or sought advice as to whether the restaurant's pay practices complied with the law. SMF ¶¶ 96-100. *See e.g., Chichinadze*, 517 F. Supp. 3d at 258 (granting summary judgment on liquidated damages when employer testified that he "had not consulted with a lawyer or any other professional before deciding on [a restaurant's] payroll practices"). Here, there is simply no evidence in the record to support a finding that Defendants made a good faith attempt to comply with the FLSA and NYLL, and, thus, the Class Members are entitled to liquidated damages in an amount equal to the compensatory damages awarded via this motion and at trial. *See infra* at 14-15.

## C. Defendants Violated N.Y. Lab. Law § 195(1) By Failing to Provide Class Members with Wage Notices

Under N.Y. Lab. Law § 195(1), employers are required to furnish their employees with wage notices containing information specified by statute. Defendants did not do so, and the Class Members are entitled to summary judgment on these claims.

Defendants were required to give the Class Members "at the time of hiring" a notice written in English and each Class Member's primary language stating:

> the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; [and] the telephone number of the

10

employer[.]

N.Y. Lab. L. § 195(1)(a).

To be sure, Class members have standing to pursue their NYLL § 195(1) claims in federal court. In *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), the Supreme Court held that to have standing to pursue a statutory claim, a plaintiff must have "suffered a concrete harm." *Id*. at 417. Physical and monetary harms are always concrete. In addition, intangible harms "with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts" are also concrete. *Id*. at 425. "That inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Id*. at 424.

There is a common law analogue in the action of account or accompt for the harm class members suffered because of the § 195 violations. *See Charles v. Pinnacle Too, LLC*, No. 22 CV 4232, 2024 U.S. Dist. LEXIS 188084, at *35-39 (S.D.N.Y. Oct. 15, 2024). The action of accompt "arose from the feudal relation of lord and bailiff, and was the proper and peculiar remedy of the feudal lord for enforcing that accounting which it was the duty of his bailiff or steward to render." *Adams's Case*, 3 Ct. Cl. 312, 335 (Ct. Cl. 1867). The purpose of the action of accompt "was to bring the defendant to account before the court, and thereby to ascertain and declare judicially the balance of account between [the plaintiff and defendant], its amount, and from which of them it was due." *Id*. at 334. A pleading for an accompt claim "alleged [the defendant's] liability to account, and the default charged was a default in not accounting" rather than any debt owed. *Id*. at 335. In other words, the harm that the action of accompt/account remedied was the failure of a party with a legal obligation to account to do so. *See Charles*, 2024 U.S. Dist. LEXIS 188084, at *39 ("[A] private right of action compelling a defendant to detail the exact amounts owed to a plaintiff is exactly what the action of accompt was for."). To be sure, in 1788 New York enacted

11

a statute creating a cause of action "'when any person is or shall be bound or liable to account, as guardian, bailiff, receiver, or *otherwise*, to any other, and will not give an account willingly[.]'" *Kelly v. Kelly*, 3 Barb. 419 (N.Y. Sup. Ct. 1848) (emphasis in original) (quoting 1 R.L. of 1813, p.90). That cause of action arose when one party with an obligation to do so failed to provide an accounting.

The WTPA creates a legal duty on the part of employers to provide what is essentially an accounting to employees. It requires employers to provide an itemization – or accounting – both at the beginning of employment (NYLL § 195(1)) and upon payment (NYLL § 195(3)), of what is due to employees. *See Imbarrato v. Banta Mgmt. Servs.*, No. 18 CV 5422, 2020 U.S. Dist. LEXIS 49740, at *22-23 (S.D.N.Y. Mar. 20, 2020). The specific items that Defendants failed to include on a wage notice and wage statements – failing to provide a wage notice stating employees regular rate, overtime rate, and allowances claimed and failing to provide wage statements listing actual hours worked, the overtime rate, and the tip credit taken – are directly relevant to calculating the wages Defendants owed tipped employees, much like a common law accounting sets forth various debits and credits to determine the balance between two parties. *Cf. Barney v. Saunders*, 57 U.S. 535 (1854) (appeal of accounting of an estate).

One court (to Plaintiffs' knowledge, the only court to have considered the issue) found that the WTPA "protects identical interests to the action of account" and thus providing an independent basis for standing. *Charles*, 2024 U.S. Dist. LEXIS 188084, at *39. Of course, identity of interests is not necessary to have standing. "[W]hat matters is that the intangible harm arising from [a statutory claim] bears a relationship to an injury with a close historical or common-law analogue. And that analog need not be an exact duplicate." *Bohnak v. Marsh & McLennan Cos.*, 79 F.4th 276, 286 (2d Cir. 2023) (cleaned up). An employer's failure to comply with the N.Y. Lab. L. § 195

requirements necessary to calculate an employee's wages owed by the employer is plainly analogous to a bailiff's failure to itemize the details necessary to determine the balance between a bailiff and a lord that gave rise to an action for accompt, and therefore it constitutes an injury in fact under Article III. *Cf. Salazar v. NBA*, 118 F.4th 433, 540-42 (2d Cir. 2024) (recognizing as injury in fact a harm with a common-law analogue); *Saba Cap. CEF Opportunities 1, Ltd. v. Nuveen Floating Rate Income Fund*, 88 F.4th 103, 115-117 (2d Cir. 2023) (same). Accordingly, Plaintiffs have standing for their N.Y. Lab. L. § 195 claims.

Even if there were no common law analogue, Plaintiffs would have standing for their § 195 claims because the § 195 violations caused them monetary injury. *See Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 308 (2d Cir. 2024) (there is standing for § 195 violations where there is a "causal connection between the lack of accurate notices and [a] downstream harm"). Defendants' failure to provide wage notices is the very thing that made their use of the tip credit an unlawful underpayment, as discussed above. Accordingly, there is a clear causal link between OLB's NYLL § 195(1) violations and all service employees' economic loss. *See id.* at 310 ("[A] plaintiff-employee who has plausibly shown that defective notices led him or her to lose wages has . . . a concrete interest [in the litigation] . . . ."); *Van Duser v. Tozzer Ltd.*, No. 23-cv-9329 (AS), 2024 U.S. Dist. LEXIS 198344, at *14-15 (S.D.N.Y. Oct. 31, 2024) (holding in similar circumstances as those here where a group of restaurant employees who were paid pursuant to a tip credit alleged that their employer's failure to provide new hire notices had downstream consequences that the "harm plaintiffs allege is far from speculative" and that they "aren't positing possible injuries they could have suffered or opining on the risks of harm that might have materialized [but] that they were in fact harmed because they weren't paid the wages they were owed and lacked information that could have helped them catch the violation.") (Subramanian J.) (citations omitted).

13

As outlined above, here, Defendants never provided *any* written notices to *any* of the Class Members. *See* SMF ¶¶ 60-73.  Accordingly, Defendants are liable under N.Y. Lab. Law § 195(1), and the Class Members are entitled to recover the statutory damages authorized under N.Y. Lab. Law § 198(1-b). *See e.g., Balderramo*, 668 F. Supp. 3d at 228-31 (granting classwide summary judgment to plaintiffs on § 195(1) claim where employers did not provide notices that complied that provision of the Labor Law); *Zambrano v. Jermyn Contr. Corp.*, Case No. 22 Civ. 3131, 2023 U.S. Dist. LEXIS 139224, at *9 (S.D.N.Y. Aug. 9, 2023) (holding that failure to provide written notice of wage notice violates NYLL § 195(1)).

### D. The Class Members Are Entitled to Summary Judgment as to Damages on Their Tip Credit Claims

In addition to liability, Plaintiffs seek summary judgment as to damages on their tip credit claims based on the undisputed payroll record summaries produced by Defendants. It is undisputed that these records reflect the amount of time that Class Members were paid for at OLB, which is the amount of time for which Defendants' paid Class Members. SMF ¶¶ 74-83. That is, the payroll summaries reflect the undisputed time that Class Members were paid for on their paychecks. SMF ¶¶ 82-83.

The Class Members' compensatory and liquidated damages for their tip credit claim is set forth in the spreadsheets submitted as Exhibits 14-18 of the Buzzard Declaration, which cover each year of the liability period. These damages are calculated based on the above-described payroll summaries produced by Defendants and submitted with this motion as Exhibits 8-13 of the Buzzard Declaration. *See generally* SMF ¶¶ 84-95; Buzzard Decl. ¶¶ 17-23 (describing Plaintiffs' calculation methodologies). The following wage rates were used in the damage calculation:

| Year | NY minimum wage | NY tip credit rate allowed | Maximum hourly tip credit taken |
|------|-----------------|----------------------------|----------------------------------|
| 2021 | $15 | $10 | $5 |
| 2022 | $15 | $10 | $5 |
| 2023 | $15 | $10 | $5 |
| 2024 | $16 | $10.65 | $5.35 |
| 2025 | $16.50 | $11 | $5.50 |

*See* N.Y.C.R.R., tit. 12, §§ 146-1.2, 146-1.3.

Unpaid tip credit/minimum wages were calculated by subtracting the total amount of wages that Class Members were actually paid by OLB from the total amount wages they would have been paid had Defendants paid them the full minimum wage and overtime wage for all hours worked.[3] In sum, the Class Members' unpaid tip credit/minimum wage damages total $670,013.45. *See* SMF ¶ 95; Buzzard Decl. ¶ 23 & Exs. 14-18. As discussed above, Class Members are also entitled to an equal amount as liquidated damages, which should be awarded pursuant to the NYLL so that they may also recover prejudgment interest. *See Choudhury v. Hamza Express Food Corp.*, 666 Fed. App'x 59, 60-61 (2d Cir. 2016).

In summary, the Class Members' total undisputed damages for the tip credit violations are:

- Compensatory Damages: $670,013.45;

- Liquidated Damages: $670,013.45;

- Total Damages: $1,340,026.90.

Because these damages are based solely on Defendants' own undisputed summaries of their payroll records, the Class Members are entitled to summary judgment for damages in the amounts detailed above.

---

[3] To be sure, Defendants almost always applied the maximum tip credit to Class Members' hourly rates. However, there were a few exceptions where Defendants paid employees an hourly rate that was between the tip credit rate and the full minimum wage rate. By calculating the tip damages as outlined above, *i.e.*, by subtracting the total amount of wages paid from the total amount of wages that would have been paid had no credit been applied, we arrive at the precise amount of tip credits Defendants applied to class members' wages.

### E.  Defendants Are Liable for Prejudgment Interest Under The NYLL

The NYLL provides for prejudgment interest on a plaintiff's compensatory damages. *See* N.Y. Lab. L. §§ 198(1-a), 663(1); *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 515 (S.D.N.Y. 2017). The prejudgment interest rate is nine percent, and the date at which interest starts to accrue is "the earliest ascertainable date the cause of action existed." *Conway v. Ichan & Co.*, 16 F.2d 504, 512 (2d Cir. 1994); N.Y. C.P.L.R. § 5004. When a plaintiff suffered damages at various times, courts "often choose the midpoint of the plaintiff's employment within the limitations period" for the date that interest starts to accrue. *Gamero*, 272 F. Supp. 3d at 515. Accordingly, the Court should find Defendants liable for pre-judgment interest in a rate of nine percent on the Class Members' compensatory damages stemming from their NYLL tip credit claims, *i.e.*, $670,013.45). *See supra* at 14-15.  Thus, the daily interest rate is $165.21 ($670,013.45 * 9% / 365 days). The midpoint of the Class Members' damages is November 29, 2023. Buzzard Decl. ¶ 26. Accordingly, the Court should calculate prejudgment interest on Plaintiffs' tip credit claims as $165.21 per day between November 29, 2023 and the date that judgment on those claims is entered.

### F.  Defendants Shahmuradyan and Petrosyants Are Individually Liable as Employers for FLSA And NYLL Claims

Finally, Defendants Marianna Shahmuradyan (OLB's sole owner) and Robert Petrosyants (Shahmuradyan's husband and OLB's director of operations) are individually liable for the wage violations in this case.

Individual defendants are liable for FLSA and NYLL wage violations if they are "employers" within the meaning of those statutes. *See Irizarry v. Catsimatidis*, 722 F.3d 99 (2d Cir. 2013) (FLSA); *Bonito v. Avalon Partners, Inc.*, 106 A.D.3d 625 (N.Y. App. Div. 1st Dep't

2013) (NYLL). "Employment" under the FLSA is "a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Irrizarry*, 72 F.3d at 104. The ultimate question is whether "the individual possessed operational control over employees: control over a company's actual 'operations' in a manner that relates to a plaintiff's employment." *Tapia v. BLCH 3rd Ave. LLC*, 906 F.3d 58, 61 (2d Cir. 2018) (additional quotation marks omitted); *see also Herman v. RSR Sec. Servs. Ltd.* ("*RSR*"), 172 F.3d 132, 139 (2d Cir. 1999) ("[T]he overarching concern is whether the alleged employer possessed the power to control the workers in question, with an eye to the 'economic reality' presented by the facts of each case."). "'A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment.'" *Tapia*, 906 F.3d at 61. (quoting *Irizarry*, 722 F.3d at 110). Notably, an individual's operational control "need not be exercised constantly for [that] individual to be liable under the FLSA" because employer "status does not require continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control of one's employees." *Irizarry*, 722 F.3d at 110 (quotation marks omitted); *see also id.* ("Control may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA, since such limitations on control do not diminish the significance of its existence." (quotation marks omitted).

In addition to an individual's overall operational control, courts consider several non-exclusive factors (the "*Carter* factors") when determining an individual's employer status under the FLSA. These factors include "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Irizarry*, 722 F.3d at 104 (internal quotation marks omitted). "No one of the four factors

standing alone is dispositive," *Tapia*, 906 F.3d at 61, and "satisfying all of these factors is not necessary to establish employer status." *Lauriano v. Lucky Chicken Corp.*, No. 23-cv-9028, 2025 WL 1808701, 2025 U.S. Dist. LEXIS 124807, at *4 (S.D.N.Y. July 1, 2025) (citations omitted).

The NYLL has a similar standard for determining whether an individual is an employer. "Whether an individual qualifies as an employer [under the NYLL] depends on whether the particular defendant had the power to hire and fire employees, whether he supervised and controlled the conditions of employment, and whether he determined rates and methods of payment, and the like." *Flanigan v. Vulcan Power Group, LLC*, 642 Fed. App'x 46, 51 (2d Cir. 2016). District Courts in this Circuit have interpreted the definition of employer under the NYLL coextensively with the definition used in the FLSA. *See, e.g.*, *Cortez v. Brand Name 99 Cents & Up Corp.*, No. 24-cv-5262, 2025 U.S. Dist. LEXIS 82056, at *8 (S.D.N.Y. Apr. 30, 2025) (citing cases).

       1. <u>Defendant Shahmuradyan and Petrosyants Admittedly Have and Exercise Operational Control over the Restaurant.</u>

The undisputed facts demonstrate that Defendant Shahmuradyan and Defendant Petrosyants exercised operational control over the restaurant and its operations, including the nature and conditions of Plaintiffs' employment.

*a. Defendant Shahmuradyan's Operational Control*

Defendant Shahmuradyan – the sole owner of OLB since the restaurant opened, *see* SMF ¶¶ 3, 6 – admitted at deposition that she "oversee[s] everything" at the restaurant, SMF ¶ 7, has financial control over the restaurant, SMF ¶ 9, and possesses the "ultimate authority over all operations of the restaurant," SMF ¶ 8; *see also* SMF ¶ 6 (noting that Defendants admit in their Answer that Shahmuradyan "owns and operates" OLB). She signs off on OLB's tax returns and is listed as the principal on the restaurant's liquor license. SMF ¶¶ 31-32. She hired the restaurant's

general manager, who she testified reports solely to her, as well as the director of operations (Petsrosyants) and head chef. *see* SMF ¶¶ 12, 14, 22, 36; Shahmuradyan Dep. at 41:8-10. Shahmuradyan then tasked these managers with direct managerial responsibilities over Plaintiffs and other service employees. Specifically, after she hired and decided how much to pay Paliko, the restaurant's general manager, Shahmuradyan delegated him the authority to oversee the restaurant's day-to-day operations, including the responsibility to interview, schedule, terminate, and set the pay rate for service employees. SMF ¶¶ 12-13, 20-21. Similarly, after hiring the head chef and deciding how much to pay that chef, she delegated him the authority to hire kitchen employees at OLB. SMF ¶¶ 22-24. Petrosyants, the restaurant's director of operations and Shahmuradyan's husband who (as discussed below) is responsible for ensuring restaurant employees are paid properly, considers her to be the "boss . . . of the restaurant." SMF ¶¶ 4, 33.

Defendant Shahmuradyan also takes an active role in the operation of the restaurant in ways that directly affect the nature and conditions of service employees' employment at OLB. As Petrosyants testified, Shahmuradyan "has access to anything she wants" at the restaurant and, to his knowledge, the restaurant's front-of-house staff understand that she is the restaurant's owner. SMF ¶¶ 34-35. Shahmuradyan is generally present in the restaurant each week, SMF ¶ 30, and meets with Paliko on a weekly basis (either in-person or by telephone) to discuss restaurant operations, SMF ¶¶ 15-19. During these conversations, Paliko and Shahmuradyan discuss the restaurant's day-to-day operations, with a particular focus on the restaurant's payroll. SMF ¶¶ 17, 19. Shahmuradyan has access to the restaurant's payroll system and regularly reviews the restaurant's payroll records, including those maintained on Quickbooks and by the restaurant's payroll provider, Toast. *See* SMF ¶¶ 25-28; *see also* Shahmuradyan Dep. at 16:20-24 (as the owner, she looks at the restaurant's "finances" and "go[es] through all the QuickBooks"); *id.* at 23:20-

24:4 (she has access to "the application where [she] see[s] the payroll" through Toast and that she "mostly go[es] on QuickBooks"). As she testified, because she is responsible for "making sure all the [restaurant's] finances are on point," Defendant Shahmuradyan wants to be informed if there are "any problems with payroll." Shahmuradyan Dep. at 29:24-30; *see also id.* at 23:8-16 (testifying that during her meetings with Paliko she "ask[s] him to make sure to send [her] all the reports [and] that payroll is done . . ..").

This evidence demonstrates Shahmuradyan's possessed operational control over OLB. While she did not continuously monitor OLB employees, the decisions she made – particularly about what managerial employees to hire and what authority to delegate to them – demonstrate that her decisions "directly affect the nature or conditions of [Plaintiffs'] employment.'" *Tapia*, 906 F.3d at 61. (quoting *Irizarry*, 722 F.3d at 110); *Irizarry*, 722 F.3d at 111 ("An employer does not need to look over h[er] worker's shoulders every day in order to exercise control." (quotation marks omitted); *Inclan*, 95 F. Supp. 3d at 509 (operational control established where individual was the "sole owner," hired the restaurant's management team and chef, held weekly meetings with management at which restaurant operations and wage issues were addressed, was involved in a prior lawsuit against the restaurant, and was regularly present in the restaurant).

### b.  *Defendant Petrosyants' Operational Control*

Defendant Petrosyants similarly admitted to exercising operational control over OLB. As he testified, he is responsible for "running the business," which involves "oversee[ing] the operations, [the] quality of food, [and the] quality of service," Petrosyants Dep. at 20:11-18, as well as "mak[ing] sure that the financials are in line with . . . being a profitable restaurant," *id.* at 52:10-12; SMF ¶¶ 39-41. When Shahmuradyan is not in the restaurant, Petrosyants is the highest-ranking employee there, SMF ¶ 45, and his duties of "overseeing the operations" of OLB include the

responsibility for ensuring that restaurant employees are paid and paid properly. SMF ¶ 42. He also oversees the restaurant's vendors and payments. SMF ¶ 40. Petrosyants meets with the general manger a "[f]ew times per week" to discuss restaurant operations, which includes ensuring that the restaurant's front-of-house employees are providing proper and consistent service to customers. *See* SMF ¶¶ 46-47. Petrosyants pays close attention to how service is being performed and if he saw a service employee not performing their duties properly, he would report that employee to a manager who would "take action." SMF ¶¶ 48-49. Petrosyants attends pre-shift meetings for the front-of-house staff, at which he discusses service "consistency [and] performance" and "mak[es] sure that everyone" gives their "consistently best performance." SMF ¶¶ 50-53. Finally, he frequently discusses staffing issues with the general manager to ensure that the restaurant schedules a sufficient number of employees for each shift. SMF ¶ 54.

Such "hands on" management of a restaurant's operations and participation in its pay practices constitutes operational control. *See Inclan*, 95 F. Supp. 3d at 509 (explaining that weekly meetings with management team, visits to the restaurant to review operations, and "shared responsibility for the Restaurant's pay policies" are indicative of operational control).

> 2. The *Carter* Factors Confirm that Defendants Shahmuradyan and Petrosyants are "Employers"

In addition to exercising operational control over the restaurant, the *Carter* factors demonstrate Shahmuradyan's and Petrosyants' more direct control over Plaintiffs and other service employees at OLB.

> a. *Carter Factor 1 – Shahmuradyan and Petrosyants have the Power to Hire and Fire Employees*

The first *Carter* factor is easily satisfied here. Defendant Shahmuradyan admitted at deposition that she has the power to hire or fire any employee at the restaurant, SMF ¶ 10, and she

has exercised that authority to hire the restaurant's general manager, director of operations, and head chef, SMF ¶¶ 12, 22, 36. The general manager, who reports directly to Shahmuradyan, is responsible for pay and personnel decisions for the restaurant's front-of-house staff like Plaintiffs. SMF ¶¶ 14, 20-21. The Second Circuit has "particularly emphasized" the hiring of managerial employees in the *Carter* analysis as indicative of an individual's control. *Irizzary*, 722 F.3d at 116; *see RSR*, 172 F.3d at 140 ("[T]he fact that [an individual defendant] hired individuals who were in charge of the [employees] is a strong indication of control."); *Velasquez v. U.S. 1 Farm Mkt., Inc.*, No. 13-cv-634, 2016 U.S. Dist. LEXIS 59536, at *26-27 (D. Conn. May 3, 2016) (concluding that an individual defendant "clearly had the authority to hire . . . workers," as "evidenced by the fact that [he] personally selected and hired [the company's] management team"); *Inclan*, 95 F. Supp. 3d at 510 (first *Carter* factor satisfied where it was "undisputed that [the individual defendant] selected his management team").

Like his wife, Defendant Petrosyants admitted that he has the power to hire and fire restaurant employees, including front-of-house service staff (like Plaintiffs), *see* SMF ¶ 43, and he participated in the hiring of Paliko as manager, SMF ¶ 58. Although he could not remember a specific instance of terminating an employee, he admitted that it "[c]ould have happened." Petrosyants Dep. at 24:3-8. Thus, Petrosyants indisputably had the "power" to hire and fire Plaintiffs, satisfying the second *Carter* factor. *See Velasquez*, 2016 U.S. Dist. LEXIS 59536, at *26 (second *Carter* factor "is concerned with whether the alleged employer *could* hire and fire, not whether he actually exercised that power" (emphasis in original)).

   b.  *Carter Factor 2 – Supervision of Work Schedules and Control over Conditions of Employment*

The second *Carter* factor is also satisfied as to Shahmuradyan because she is directly involved in the management and operations of the restaurant in ways that directly affect the

conditions of employment. Shahmuradyan oversees everything at the restaurant and has "ultimate authority" over all restaurant operations. SMF ¶¶ 7-8. She visits the restaurant frequently, discusses its operations with the general manager at least every week, and has specifically instructed that manager to keep her apprised of the restaurant's payroll and any payroll issues. SMF ¶¶ 15-19, 30. This evidence that Shahmuadyan took an active role in the management of the restaurant and monitored the restaurant's payroll demonstrates her control over the conditions of employment. *See*, *e.g.*, *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 393 (E.D.N.Y. 2012) (calling employees and personally visiting the business one day per week suggests supervision and control over employee's schedule and conditions of employment); *Kaur v. Royal Arcadia Palace, Inc.*, 643 F. Supp. 2d 276, 293 (E.D.N.Y. 2007) (visiting a restaurant four to six times per month and occasionally giving directions to restaurant employees demonstrated control over conditions of employment).

Petrosyants is directly involved in the supervision of service employees' work schedules and in controlling their conditions of employment. As to scheduling, he discusses front-of-house staffing issues with the restaurant's general manager to ensure that the restaurant has the correct amount of staff for the number of customers in the restaurant. SMF ¶ 54. As to the nature and conditions of Plaintiffs' employment, Petrosyants: (1) frequently meets with the restaurant's general manager to discuss service and ensure that the service staff are performing their jobs consistently; and (2) attends pre-shift meetings at which he discusses proper and consistent service with the front-of-house staff themselves. SMF ¶¶ 46-47, 50-53. When he is in the restaurant, he pays close attention to how the service staff perform their jobs and reports any deficiencies to the manager, who he expects to take action. SMF ¶ 48-49. Such supervision satisfies the third *Carter* factor. *See, e.g.*, *Berrios*, 849 F. Supp. 2d at 393; *Kaur*, 643 F. Supp. 2d at 293.

Case 1:25-cv-04490-AS    Document 67    Filed 12/12/25    Page 31 of 35


*c. Carter Factor 3 – Control over Rate and Method of Payment*

The third *Carter* factor considers whether the individual defendant "determined the rate and method of payment." *Irizarry*, 722 F.3d at 115. In this analysis, the Second Circuit has "focused on the fact that the defendant controlled the company financially," including keeping track of its finances and payroll expenses. *Id.* (quotation marks omitted). Here, Shahmuradyan did just that – she has financial control over the restaurant and repeatedly emphasized during her deposition that she regularly kept track of the restaurant's payroll. Shahmuradyan Dep. at 16:20-24 (testifying that she "go[es] through all [of the restaurant's] Quickbooks" and signs off on its tax returns), 29:24-30 (testifying that she was to be informed of "any problems with payroll" because she was responsible for "making sure all the [restaurant's] finances are on point"), 23:8-16 (testifying that during her meetings with Paliko she "ask[s] him to make sure to send [her] all the reports [and] that payroll is done . . .."), 23:15-16 (testifying that she "make[s] sure [payroll] is done"), 23:20-24:4 (testifying that she had access to the restaurant's payroll applications and reviewed payroll), 35:23-36:2 (admitting she had "financial control of the restaurant"), 39:13-18 (testifying that she hired OLB's accountant).

Petrosyants, for his part, expressly admitted that he is responsible for ensuring that employees at the restaurant are paid and paid properly. SMF ¶ 42. As the Second Circuit also emphasized in *Irrizarry*, an individual's "ultimate responsibility for the plaintiff's wages," is a strong indicia of control and particularly indicative of employer status. *Irizarry*, 722 F.3d at 117.

*d. Carter Factor 4 – Maintenance of Employment Records*

The fourth *Carter* factor inquires whether the individual "maintained employment records." *Irizarry*, 722 F.3d at 105. Here, Shahmuradyan and Petroyants were two of the only three people with access to the storage area where OLB's physical employment records are maintained (the

other being the general manager). *See* SMF ¶ 57. In addition, while the restaurant's payroll records are maintained electronically by the restaurant's payroll provider, Toast, both Shahmuradyan and Petrosyants have access to those electronic records. *See* SMF ¶¶ 25-29, 55. Such access to employee and payroll records, particularly when such records are "maintained" electronically satisfies the fourth *Carter* factor. *See Grande v. 48 Rockefeller Corp.*, No. 21-cv-1593, 2023 U.S. Dist. LEXIS 140490, at *39 (S.D.N.Y. Aug. 11, 2023) (fourth *Carter* factor satisfied and employer status found where individual had "access to the employee records").

      3.   The Totality of the Circumstances Demonstrate that Defendants Shahmuradyan and Petrosyants are "Employers" under the FLSA and NYLL

Viewed in its totality, the evidence clearly demonstrates that Shahmuradyan and Petrosyants are "employers" under the FLSA and NYLL. Although Shahmuradyan she did not directly manage Plaintiffs, she exercised active control over the restaurant, its management, and its operations, including its payroll in ways that directly affect the nature and conditions of Plaintiff's employment. Notably, like the individual defendant in *Irizzary*, she satisfies "two of the *Carter* factors in ways that [the Circuit] has particularly emphasized . . .: the hiring of managerial employees, and overall financial control of the company." *Irizarry*, 722 F.3d at 116. As the Second Circuit explained, this level of "involvement mean[s] that [Shahmuradyan] possessed, and exercised, operational control over the plaintiffs' employment in much more than a 'but-for' sense." *Id.* Put differently, the evidence – most of it Shahmuradyan's own testimony – demonstrates that "it is pellucidly clear that [s]he is the one person who is in charge of the corporate defendant." *Id.* at 117 (quotation marks omitted). Indeed, courts impose individual liability where, as here, the individual is a restaurant's sole owner, exercises ultimate financial control over the business, has authority to hire and fire employees, oversees restaurant operations, is frequently present in the restaurant, hires managerial employees, receives regular reports from managerial

employees as to restaurant operations, and has access to employee records. *Cf. Grande*, 2023 U.S. Dist. LEXIS 140490, at *50-51 (granting summary judgment to plaintiffs on individual liability).

The totality of the evidence also demonstrates that Petrosyants is individually liable. He is actively involved in the "running of the business" in ways that directly affect the nature and conditions of employment of Plaintiffs and other service staff, including their wages. Notably, Petrosyants: (1) is responsible for "running the business," which includes "oversee[ing] the operations," and the "quality of service"; (2) ensures that the restaurant's employees are paid and paid "properly"; (2) takes an active role in managing the service staff (which include Plaintiffs) by frequently discussing service with the general manager, attending pre-shift meetings and providing direction to service staff at those meetings, and monitoring employees' performance when in the restaurant; (4) has responsibility for ensuring that the restaurant's payments are made and that it is profitable; and (5) has authority to hire, fire, and discipline restaurant employees, including front-of-house staff. *See* SMF ¶¶ 36-59. *See Lodescar v. Denihan Hosp. Grp.*, No. 14-cv-8218, 2016 U.S. Dist. LEXIS 202630, at *10-11 (S.D.N.Y. Sept. 30, 2016) (concluding individuals exercised operational control where they regularly met with managers, exercised financial control over the company, participated in hiring managers, and directly interact with lower-level employees).

Finally, assessment of the totality of the circumstances here must include consideration of the fact that Shahmuradyan and Petrosyants are married and indisputably operate the restaurant together. As Petrosyants testified, he did not have to interview for his position and holds it because Shahmuradyan "felt it right for [him] to be the director of operations" and asked him to do it. Petrosyants Dep. at 22:8-17. While Shahmuradyan is the "boss" of the restaurant, Petrosyants is the highest-ranking employee when she is not present, and she has given him "carte blanche" to run the restaurant's operations as he sees fit. SMF ¶¶ 33, 38, 45. Together, they admittedly control

all of the restaurant's finances, ensure the restaurant is profitable, are ultimately responsible for paying employees, oversee all restaurant operations, visit the restaurant frequently, and meet with the general manager on a weekly basis to discuss restaurant operations. SMF ¶¶ 7-9, 11, 15, 18, 30, 38-42, 46-47, 54. Their close familial relationship, together with all the above evidence of how they each exercise operational control over OLB, demonstrate that Defendants Shahmuradyan and Petrosyants are "employers" under the FLSA and NYLL. Accordingly, summary judgment should be entered in Plaintiffs' favor on the issue of individual liability.

## V.  CONCLUSION

For all of the foregoing reasons, Plaintiffs are entitled to partial summary judgment.

Dated:  New York, New York
      December 12, 2025

**JOSEPH & KIRSCHENBAUM LLP**

/s/ *Lucas C. Buzzard*
Maimon Kirschenbaum
Lucas C. Buzzard
Josef Nussbaum
45 Broadway, Suite 320
New York, NY 10004
(212) 688-5640
(212) 981-9587 (fax)

*Attorneys for Plaintiffs and the Class*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing opposition complies with the word-count limitation stated in SDNY Local Rule 7.1(c). Excluding the case caption, tables, this certification, and counsel's signature block, but including all footnotes, this brief contains 8,666 words. I make this certification using the word count feature of Microsoft Word.

_/s/Lucas C. Buzzard_____