UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
KATHERINE FERNANDEZ, on behalf of herself and
others similarly situated,

                                        Plaintiff,                **Case No.: 1:25-cv-4490 (AS) (GS)**

              -against-

BULLDOZER HOSPITALITY GROUP, INC., d/b/a
OSTERIA LA BAIA, ROBERT PETROSYANTS and
MARIANNA SHAHMURADYAN,

                                 Defendants.
----------------------------------------------------------------X

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

**SAGE LEGAL LLC**
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)
emanuel@sagelegal.nyc

*Attorneys for Defendants*
*Bulldozer Hospitality Group, Inc.,*
*Robert Petrosyants, and*
*Marianna Shahmuradyan*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................ 1

FACTS ........................................................................................................ 3

LEGAL STANDARD..................................................................................... 6

ARGUMENT ................................................................................................ 8

    A.   Plaintiffs' Claim under the FLSA Must be Dismissed.......................... 8

        i.Plaintiffs received verbal and written notice of the tip credit............... 8

        ii.Perez was not a manager under the law and was at all times entitled to tips ...... 9

        iii.The Service Charge was Mandatory, Requiring Dismissal............................ 12

    B.   Plaintiffs' Claims Against Petrosyants and Shahmuradyan Must be Dismissed.. 15

    C.   This Court Should Decline to Exercise Jurisdiction over the State Law Claims . 16

    D.   Plaintiffs' State Law Claims Fail on the Merits in any Event.............................. 19

        i.The Second and Third Causes of Action Related to the Tip Credit Fail ........... 19

        ii.The Fourth Cause of Action for Recordkeeping Violations Fail...................... 21

CONCLUSION............................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

Achtman v. Kirby, McInerney & Squire, LLP,
    464 F.3d 328 (2d Cir. 2006) ............................................................... 17

Am. Home Assurance Co. v. Jamaica,
    418 F. Supp. 2d 537 (S.D.N.Y. 2006) ................................................ 7

Amador v. 109-19 Food Corp.,
    2025 WL 1032031 (E.D.N.Y. Mar. 14, 2025) .................................... 24

Amador v. 109-19 Food Corp.,
    2025 WL 1031133 (E.D.N.Y. Apr. 7, 2025) ...................................... 24

Barenboim v. Starbucks Corp.,
    698 F.3d 104 (2d Cir. 2012) ............................................................... 14

Barenboim v. Starbucks Corp.,
    20 N.Y.3d 914 (2012) ........................................................................ 14

Barenboim v. Starbucks Corp.,
    21 N.Y.3d 460 (2013) ................................................................. 12, 14

Barfield v. N.Y.C. Health & Hosps. Corp.,
    537 F.3d 132 (2d Cir. 2008) ............................................................... 15

Bayne v. NAPW, Inc.,
    2024 WL 1254197 (E.D.N.Y. Mar. 25, 2024) .................................... 24

Benavidez v. Greenwich Hotel Ltd. P'ship,
    2019 WL 1230357 (D. Conn. Mar. 15, 2019) ............................. 12, 13

Brathwaite v. Martini Collections Inc.,
    2025 WL 99108 (S.D.N.Y. Jan. 14, 2025) ........................................ 23

Brathwaite v. Martini Collections Inc.,
    2025 WL 448040 (S.D.N.Y. Feb. 10, 2025) ...................................... 23

Bu v. Benenson,
    181 F. Supp. 2d 247 (S.D.N.Y.2001) ................................................ 17

California v. Texas,
    593 U.S. 659 (2021)...................................................................................... 23

Cain v. Mercy College,
    2022 WL 779311 (2d Cir. 2022)...................................................................... 17

Cao v. Wedding in Paris LLC,
    727 F. Supp. 3d 239 (E.D.N.Y. 2024) ............................................................. 24

Carvente-Avila v. Chaya Mushkah Restaurant Corp.,
    2016 WL 3221141 (S.D.N.Y. Mar. 1, 2016) ............................................. 19, 20

Cayemittes v. City of N.Y. Dep't of Hous. Pres. & Dev.,
    974 F. Supp. 2d 240 (S.D.N.Y. 2013)................................................................ 7

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986) ........................................................................................ 6

Chen v. Lilis, 200 W. 57th Corp.,
    2023 WL 2388728 (S.D.N.Y. Mar. 7, 2023) ................................................... 21

Chisolm-Lucas v. Am. Airlines, Inc.,
    2025 WL 2229840 (E.D.N.Y. Aug. 5, 2025)............................................. 24, 25

City of Chicago v. Int'l Coll. of Surgeons,
    522 U.S. 156 (1997)........................................................................................ 16

Colton v. N.Y. Div. of State Pol.,
    2017 WL 5508911 (N.D.N.Y. Feb. 8, 2017) .................................................... 7

Condado v. P&C Bagels, Inc.,
    2023 WL 7686701 (E.D.N.Y. Sept. 27, 2023) ................................................ 11

Delaney v. Bank of Am. Corp.,
    766 F.3d 163 (2d Cir. 2014)............................................................................ 16

Figurowski v. Marbil Invs., LLC,
    2015 WL 4000500 (E.D.N.Y. July 1, 2015).................................................... 17

Franco v. Jubilee First Ave. Corp.,
    2016 WL 4487788 (S.D.N.Y. Aug. 25, 2016)................................................. 20

Francisco v. NY Tex Care, Inc.,
    2022 WL 900603 (E.D.N.Y. Mar. 28, 2022) ................................................ 24

Galvez v. 800 Ginza Sushi Inc.,
    2022 WL 748286 (S.D.N.Y. Mar. 11, 2022) ................................................ 9

Goldberg v. Whitaker House Coop., Inc.,
    366 U.S. 28 (1961) ..................................................................................... 15

Gottlieb v. Cnty. of Orange,
    84 F.3d 511 (2d Cir. 1996) .......................................................................... 7

Hernandez v. Jrpac Inc.,
    2016 WL 3248493 (S.D.N.Y. 2015) ...................................................... 9, 19

Hicks v. Baines,
    593 F.3d 159 (2d Cir. 2010) ........................................................................ 6

Hicks v. T.L. Cannon Corp.,
    35 F. Supp. 3d 329 (W.D.N.Y. 2014) ................................................. 19, 20

Hoffman v. Bear Chase Brewing Co., LLC,
    2023 WL 384293(E.D. Va. Jan. 18, 2023) ................................................ 10

Hoffman v. Bear Chase Brewing Co., LLC,
    2023 WL 2352926 (E.D Va. Mar. 3, 2023) .............................................. 10

Holcomb v. Iona Coll.,
    521 F.3d 130 (2d Cir. 2008).......................................................................... 6

Holtz v. Rockefeller & Co.,
    258 F.3d 62 (2d Cir. 2001).......................................................................... 7

In re Domino's Pizza, Inc.,
    2018 WL 1587593 (S.D.N.Y. Mar. 27, 2018) .......................................... 13

Inclan v. N.Y. Hosp. Grp., Inc.,
    95 F. Supp. 3d 490 (S.D.N.Y. 2015)....................................................... 8, 9

Irizarry v. Catsimatidis,
    722 F.3d 99 (2d Cir. 2013)......................................................................... 15

Jaramillo v. Weyerhaeuser Co.,
    536 F.3d 140 (2d Cir. 2008)............................................................................. 6

Konikoff v. Prudential Ins. Co. of Am.,
    234 F.3d 92 (2d Cir. 2000)............................................................................... 6

Knight v. N.Y.C.H.A.,
    2007 WL 313435 (S.D.N.Y. Feb. 2, 2007)...................................................... 7

Labriola v. Clinton Ent. Mgmt., LLC,
    2017 WL 1150989 (N.D. Ill. Mar. 28, 2017).................................................. 14

Lopez v. Tri-State Drywall, Inc.,
    861 F. Supp. 2d 533 (E.D. Pa. 2012)............................................................. 22

Maldonado Juarez v. Butterfield Catering Inc.,
    2020 WL 6945944 (S.D.N.Y. Nov. 25, 2020)................................................ 15

Maldonado v. Loxton, Inc.,
    2024 WL 4449293 (E.D.N.Y. Oct. 9, 2024).................................................. 23

Mangahas v. Eight Oranges Inc.,
    754 F. Supp. 3d 468 (S.D.N.Y. 2024)........................................................... 12

Marvel Characters, Inc. v. Simon,
    310 F.3d 280 (2d Cir. 2002)............................................................................. 6

Mateer v. Peloton Interactive, Inc.,
    2022 WL 2751871 (S.D.N.Y. July 14, 2022)................................................ 22

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,
    475 U.S. 574 (1986) ......................................................................................... 7

McCall v. Chesapeake Energy Corp.,
    817 F. Supp. 2d 307 (S.D.N.Y. 2011)........................................................... 22

Metcalf v. TransPerfect Translations Int'l Inc.,
    2023 WL 2674743 (S.D.N.Y. Mar. 29, 2023)............................................... 22

Nwajei v. E&E of Five Towns, Inc.,
    2024 WL 3522108 (E.D.N.Y. July 9, 2024)................................................. 10

Nwajei v. E&E of Five Towns, Inc.,
    2024 WL 3520633 (E.D.N.Y. July 24, 2024) .................................................... 10

Owens v. 12710 Kitchen Corp.,
    2025 WL 1371892 (E.D.N.Y. May 12, 2025) ................................................... 24

Perez v. Westchester Foreign Autos, Inc.,
    2013 WL 749497 (S.D.N.Y. Feb. 28, 2013) ..................................................... 15

Quieju v. La Jugueria Inc.,
    2023 WL 3073518 (E.D.N.Y. Apr. 25, 2023) ............................................. 22, 23

Rivera v. Ndola Pharmacy Corp.,
    497 F. Supp. 2d 381 (E.D.N.Y. 2007) ....................................................... 17, 18

Saavedra v. Dom Music Box Inc.,
    2024 WL 208303 (E.D.N.Y. Jan. 19, 2024) ..................................................... 24

Salinas v. Starjem Restaurant Corp.,
    123 F. Supp. 3d 442 (S.D.N.Y. 2015) ............................................................. 16

Salustio v. 106 Columbia Deli Corp.,
    264 F. Supp. 3d 540 (S.D.N.Y. 2017) ............................................................. 19

Shahriar v. Smith & Wollensky Rest. Grp., Inc.,
    659 F.3d 234 (2d. Cir. 2011) ............................................................... 8, 17, 18

Tapia v. Blch 3rd Ave. LLC,
    2016 WL 4581341 (S.D.N.Y. Sept. 1, 2016) ................................................... 16

Tapia v. Blch 3rd Ave. LLC,
    906 F.3d 58 (2d Cir. 2018) ............................................................................. 16

Tecocoatzi-Ortiz v. Just Salad LLC,
    2022 WL 596831 (S.D.N.Y. Feb. 25, 2022) ............................................. 8, 13, 14

Thomas v. EONY LLC,
    2015 WL 1809085 (S.D.N.Y. Apr. 21, 2015) .................................................. 17

Vazquez v. Cousins Grocery & Grill Inc.,
    2025 WL 1384069 (E.D.N.Y. May 13, 2025) ................................................. 24

Wang v. XBB, Inc.,
  2022 WL 912592 (E.D.N.Y. Mar. 29, 2022) ................................................. 24

Wright v. Goord,
  554 F.3d 255 (2d Cir. 2009) ........................................................................ 7

Wyckoff v. Off. of the Comm'r of Baseball,
  211 F. Supp. 3d 615 (S.D.N.Y. 2016) ........................................................ 22

Wyckoff v. Off. of the Comm'r of Baseball,
  705 Fed. Appx. 26 (2d Cir. 2017) .............................................................. 22

Yeh v. Han Dynasty, Inc.,
  2020 WL 883501 (S.D.N.Y. Feb. 24, 2020) ................................................ 11

Young v. New York City Transit Authority,
  903 F.2d 146 (2d Cir.1990) ........................................................................ 17

Yunganaula v. D.P. Grp. Gen. Contractors/Devs. Inc.,
  2024 WL 1342739 (E.D.N.Y. Mar. 29, 2024) ............................................. 24

Yuwono v. Jade Eatery & Lounge LLC,
  2025 WL 2793725 (S.D.N.Y. Sept. 30, 2025) ............................................. 25

Zheng v. Liberty Apparel Co. Inc.,
  355 F.3d 61 (2d Cir. 2003) .......................................................................... 15

**Statutes**

115 P.L. 141 § 1201.3 ...................................................................................10

12 NYCRR § 146-1.3 ....................................................................................19

12 NYCRR § 146-2.2 ....................................................................................19

28 U.S.C. § 1367 ................................................................................16, 17, 18

29 U.S.C. § 203................................................................................9, 10, 12, 15

29 U.S.C. § 206...............................................................................................8

29 U.S.C. § 216..............................................................................................10

**Rules**

Fed. R. Civ. P. 56 ..................................................................................................6, 7, 25

Local Civil Rule 56.1 .................................................................................................7

**Regulations**

29 C.F.R. § 531.50 .................................................................................................14

29 C.F.R. § 531.52 .............................................................................................10, 13

29 C.F.R. § 531.55 .............................................................................................13, 14

29 C.F.R. § 541.100 ...........................................................................................10, 11

29 C.F.R. § 541.102 ...............................................................................................11

United States Department of Labor Opinion Letter,
    2025 WL 243158 (Jan. 14, 2025) ....................................................................... 10

## PRELIMINARY STATEMENT

Defendants Bulldozer Hospitality Group, Inc. ("Bulldozer" or "Corporate Defendant"), Robert Petrosyants ("Petrosyants"), and Marianna Shahmuradyan ("Shahmuradyan") (Petrosyants and Shahmuradyan collectively "Individual Defendants") (the Corporate Defendant and the Individual Defendants collectively "Defendants") respectfully submit this motion for summary judgment on all claims asserted by Plaintiffs Katherine Fernandez ("Fernandez"), Javier Molina ("Molina"), and Adrian Montor-Teran ("Teran")[1] (Fernandez, Molina, and Teran collectively the "Plaintiffs").

Plaintiffs have embarked on a three-front war against Bulldozer's use of the tip credit. However, Plaintiffs arrive at the front lines weaponless.

They first claim that they never received notice such that Defendants were not permitted to take a tip credit, but Fernandez and Teran – the two (2) Plaintiffs who bothered to appear and testify at depositions – both admitted, under oath, that they received notice of the tip credit, verbally from their manager and in writing in their detailed paystubs.

Second, they claim that one Julio Perez ("Perez"), a head waiter or captain at Bulldozer who serves guests, is secretly a manager in disguise who unlawfully received tips from the tip pool, despite the fact they could not name one (1) employee Perez ever fired or disciplined.

Third, they argue that a mandatory three percent (3%) service charge ("Service Charge") deprives Bulldozer of the use of the tip credit because it is unclear whether the service charge is a gratuity when all printed materials referring to the service charge also has an eighteen percent (18%) gratuity right next to it such that it is common sense (as Plaintiff admitted at her deposition) the service charge is not a tip.

---

[1] Teran incorrectly sues herein as "Adrian Montor-*P*eran."

Based on the undisputed evidence in the record, Defendants are entitled to summary judgment on their Fair Labor Standards Act ("FLSA") claim because: (i) both Fernandez and Teran concede they were given verbal notice that their tips would make up any minimum wage owed; (ii) the paystubs they both indisputably received contained more-than-sufficient information that their tips make up the difference between the tipped wage they received and the minimum wage; (iii) there is no actual evidence that Perez was a manager and both concede that Perez served customers such that he was entitled to participate in the tip pool; (iv) the service charge was mandatory such that no claim lies under the FLSA; and (v) to the extent this Court decides to exercise supplemental jurisdiction over the New York Labor Law ("NYLL") claims (which it should not), there was adequate notification to a customer that the Service Charge was not a gratuity.

The Individual Defendants are entitled to summary judgment dismissing all claims against them on the grounds that they are not an employer. Plaintiffs have failed to adduce any evidence that either of them exercised the power to hire, fire, set schedules, set wages, set the terms and conditions of employment, or otherwise maintain employment records sufficient to find that they are individually liable under the FLSA and/or NYLL. The evidence clearly and convincingly establishes that Janos Paliko ("Paliko") exercised complete control over all personnel decisions such that all claims against Individual Defendants must be dismissed.

Once this Court disposes of Plaintiffs' sole claim under the FLSA, it should decline to exercise supplemental jurisdiction over the remaining state law claims. However, to the extent this Court decides to exercise supplemental jurisdiction (which it should not), those claims equally fail on the merits.

Specifically, Plaintiffs received written notice of the tip credit on: (i) their very first day of employment posted in the employee bulletin board at the restaurant; and (ii) every week thereafter each time they received their paystubs.  However, to the extent that this Court finds that these facts are disputed, the New York State Department of Labor ("NYSDOL") issued a March 2015 opinion letter ("Opinion Letter") addressing the consequences for lack of written notice by an employer finding that the same does not deprive an employer of the use of a tip credit so long as the employees are properly paid, which they indisputably were.  Finally, Plaintiffs lack standing to bring their recordkeeping violation claim.  Accordingly, summary judgment is warranted.

## FACTS

Bulldozer was first opened in or about 2022.  See Defendants' Rule 56.1 Statement of Material Facts ("SMF") ¶ 2.  It employs approximately fifty (50) employees.  SMF ¶ 7. Shahmuradyan is the sole owner and her duties solely revolve around finances, not day-to-day operations.  SMF ¶ 3, 93, 95-96.  Her husband, Petrosyants, is the Director of Operations since 2023. SMF ¶ 5.  In that role, Petrosyants handles food, vendors, events, customers, and related operations tasks.  SMF ¶ 100.  Petrosyants hires managers, not employees.  SMF ¶ 102, 114. Paliko is the General Manager who has full discretion as to hiring, firing, and disciplining all front-of-house staff.  SMF ¶ 9, 108, 123.  Although he sometimes informs Petrosyants about staffing decisions, Petrosyants plays no role in those decisions.  Petrosyants Dep. ¶ 109.

Fernandez first commenced employment at Bulldozer in October 2022 and worked as a busser or runner throughout her employment.  SMF ¶ 12, 127, 14.  She was hired by a general manager named Fotis.  SMF ¶ 13.  At the time Fernandez was hired, Magalis Rodriguez (a supervisor) informed her she would receive a tipped minimum wage and that her tips would make up the difference between what she earned and the minimum wage.  SMF ¶ 35.

Fernandez received a paystub every week that she was paid, and had access to all her paystubs using the Toast application.  SMF ¶ 25, 37-39.  The Toast application contains a full suite of functions for Bulldozer as a restaurant.  SMF ¶ 26.   It has, for example, functions to process table reservations, patrons' orders, timekeeping for employees, tip management, payroll management, and even human resources functions such as onboarding employees and processing their separation from employment.  Id.   The Toast system is used to onboard employees by having the employees themselves type in their full names, email addresses, and related information in order to set up an account with a user name and password which they can use to access information related to their employment, namely, their paystubs.  SMF ¶ 27.  Fernandez gave her attorneys access to the Toast system so they may pull her paystubs, which she herself produced in this case.  Fernandez Dep. 106:13-17.

Fernandez could not name a single employee that Perez allegedly terminated.  SMF ¶ 74.  When Fernandez had questions, she asked Paliko, not Perez.  SMF ¶ 77.  Fernandez was terminated by Paliko, not Perez.  SMF ¶ 141.  Paliko assigns employees to their stations, not Perez, even in Paliko's absence.  SMF ¶ 57.  Paliko does not consult with Perez before promoting employees. SMF ¶ 74.  Paliko printed the tip report at the end of the evening, not Perez.  SMF ¶ 79.  Perez did not terminate Teran.  SMF ¶ 142.

Fernandez received substantial amounts of money in tips.  SMF ¶ 130.  On average, she earned $200.00 in tips every night, meaning at least $1,000.00 per week.  Id.  On a bad night, Fernandez earned as little as $50.00 in tips.  Id.  On a great night, she earned $300.00 in tips.  Id.  Fernandez acknowledged that she received tips from special events.  SMF ¶ 31.  She alleges that she was entitled to a twenty percent (20%) tip from special events, but acknowledges that all such tips went into the tip pool from which she was paid. SMF ¶ 34-35.

With her tips, when taking the lowest amount of money she received in a given week for an average of forty (40) hours per week, she earned over $16.50 per hour. <u>SMF</u> ¶ 131. Similarly, Teran acknowledges that, with his tips, his average weekly wages divided by the hours he worked amounts to approximately $20.00 per hour, above the minimum wage. <u>SMF</u> ¶ 138.

Fernandez was treated differently than all the other employees; she received an increase in her tipped minimum wage from $10.00 to $12.50 per hour. <u>SMF</u> ¶ 127-129. Although she denies it, she later received an increase from $12.50 to $15.00 per hour according to her paystubs, which she does not say are inaccurate. <u>SMF</u> ¶ 128. Fernandez was never paid $11.00 per hour as she alleged in her complaint, and she specifically acknowledged that this allegation is false. <u>Id.</u> Fernandez was terminated while she was on a two (2) week vacation. <u>SMF</u> ¶ 141. She was upset about her termination and seeks "justice" in this lawsuit. <u>SMF</u> ¶ 141. Fernandez claims that "all the men" at Bulldozer sexually harassed her. <u>SMF</u> ¶ 144.

Teran's testimony corroborates much of what Fernandez testified about; like Fernandez, Teran acknowledged verbal notice of the fact that the tip credit was taken against his wages because the tips he earned would be used to satisfy the minimum wage obligation. <u>SMF</u> ¶ 42. Although Teran denies accessing the Toast application to review his paystubs, the Toast security logs indisputably demonstrate that Teran did, in fact, access his paystubs using the Toast application in September 2024 in the midst of his employment. <u>SMF</u> ¶ 45-46.

Critically, Teran admits inputting information into the Toast application when he first applied for a position at Bulldozer. <u>SMF</u> ¶ 47. He even confirmed that he provided his email address to gain access to the Toast system. <u>Id.</u> Although Teran denies accessing the Toast system to view his paystubs, there can be no dispute that Teran had access to view his paystubs if he so wanted. <u>SMF</u> ¶ 46-48.

The Service Charge was mandatory.  <u>SMF</u> ¶ 31.  Fernandez does not know whether the Service Charge is mandatory, but recognizes the difference between the Service Charge and a gratuity.  <u>SMF</u> ¶ 34.  Fernandez acknowledged it was common sense that the Service Charge is not a gratuity given the reference to an eighteen percent (18%) gratuity next to it.  <u>Id.</u>

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." <u>See</u> Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law,'" while "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>Konikoff v. Prudential Ins. Co. of Am.</u>, 234 F.3d 92, 97 (2d Cir. 2000) (citation omitted).

In determining whether there are any genuine issues of material fact, the Court must view all facts "in the light most favorable to the non-moving party," <u>Holcomb v. Iona Coll.</u>, 521 F.3d 130, 132 (2d Cir. 2008), and the movant bears the burden of demonstrating that "no genuine issue of material fact exists." <u>Marvel Characters, Inc. v. Simon</u>, 310 F.3d 280, 286 (2d Cir. 2002) (citations omitted).

If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." <u>Jaramillo v. Weyerhaeuser Co.</u>, 536 F.3d 140, 145 (2d Cir. 2008).   "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." <u>Hicks v. Baines</u>, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted).

Rather, to survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." See Fed. R. Civ. P. 56(c)(1)(A); Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). To defeat a motion for summary judgment, the non-moving party must demonstrate more than "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." Gottlieb v. Cnty. of Orange, 84 F.3d 511, 518 (2d Cir. 1996) (internal citation omitted). "Mere conjecture or surmise by the nonmovant in support of his or her case is inadequate." Am. Home Assurance Co. v. Jamaica, 418 F. Supp. 2d 537, 546 (S.D.N.Y. 2006).

A Local Rule 56.1 statement "is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." Holtz v. Rockefeller & Co., 258 F.3d 62, 74 (2d Cir. 2001). If portions of a counterstatement cite to no admissible evidence in support of its denials, the Court is instructed to disregard those portions and deem the factual statements in the original 56.1 statements admitted. Cayemittes v. City of N.Y. Dep't of Hous. Pres. & Dev., 974 F. Supp. 2d 240, 243 (S.D.N.Y. 2013) (denials that are not supported by admissible evidence must be disregarded). When the non-moving party fails to cite to any record evidence for its denials, the Court accepts the moving party's characterization of those facts as undisputed. Colton v. N.Y. Div. of State Pol., 2017 WL 5508911, at *2 (N.D.N.Y. Feb. 8, 2017); Knight v. N.Y.C.H.A., 2007 WL 313435, at *1 (S.D.N.Y. Feb. 2, 2007) ("Pursuant to Local … Rule 56.1 Defendant's statements are deemed to be admitted where Plaintiff has failed to specifically controvert them with citations to the record").

## ARGUMENT

### A. Plaintiffs' Claim under the FLSA Must be Dismissed

      i.    Plaintiffs received verbal and written notice of the tip credit.

In their first cause of action, Plaintiffs assert that "Defendants knowingly retained/misappropriated gratuities belonging to Plaintiff and the FLSA Collective Plaintiffs." See ECF Docket Entry 15 ¶ 41. The crux of this claim centers on the alleged lack of notice of the tip credit. Id. at ¶ 26. However, as set forth below, Plaintiffs received verbal notice of the fact that their tips would be used to make up the difference between the tipped wage they received and the minimum wage such that summary judgment is warranted on this claim.

"The FLSA requires covered employers to pay employees a minimum wage of at least $7.25 per hour." Tecocoatzi-Ortiz v. Just Salad LLC, 2022 WL 596831, at *6 (S.D.N.Y. Feb. 25, 2022) (citing 29 U.S.C. § 206(a)(1)). "The FLSA's definition of 'wage' provides that, under certain circumstances, employers of 'tipped employees' may apply part of that employees' tips towards the minimum wage." Id. (internal citations omitted) ("The practice of crediting some of an employee's tips towards the minimum wage is commonly referred to as taking a 'tip credit' ... [a]n employee has a cause of action arising out of an employer's failure to comply with FLSA tip credit requirements only if, without the tip credit, the employee's compensation would fall short of the minimum wage").

"Both the FLSA and the NYLL permit an employer to pay a tipped worker a cash wage that is lower than the statutory minimum wage, provided that the cash wage and the employee's tips, taken together, are at least equivalent to the minimum wage." Inclan v. N.Y. Hosp. Grp., Inc., 95 F. Supp. 3d 490, 497 (S.D.N.Y. 2015); Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 239–40 (2d. Cir. 2011).

"Under the FLSA, an employer may not claim a tip credit as to an employee's wages unless the employer has informed that employee of the provisions of the section of the FLSA permitting the tip credit." Inclan, 95 F. Supp. 3d at 497 (collecting cases); 29 U.S.C. § 203(m)(2)(A) (tip credit wage does not apply "unless such employee has been informed by the employer of the provisions of this subsection").

"The notice provision is 'strictly construed' and 'requires that an employer take affirmative steps to inform affected employees of the employer's intent to claim the tip credit.'" Galvez v. 800 Ginza Sushi Inc., 2022 WL 748286, at *9 (S.D.N.Y. Mar. 11, 2022) (quoting Inclan, 95 F. Supp. 3d at 497). Though the FLSA "does not require that the notice be given in writing," Hernandez v. Jrpac Inc., 2016 WL 3248493, at *23 (S.D.N.Y. 2015), the employer bears the burden of showing it "informed employees that tips are being credited against their wages." Id. (quoting Inclan, 95 F. Supp. 3d at 497).

Here, both Plaintiffs acknowledge receiving verbal notice of the tip credit upon being hired. Fernandez received verbal notice of the tip credit from a supervisor named Magalis Rodriguez. SMF ¶ 35. Meanwhile, Teran received verbal notice from Paliko. SMF ¶ 42.

Accordingly, Defendants are entitled to summary judgment on Plaintiffs' claim that they are entitled to the difference between the tipped minimum wage and regular minimum wage due to a lack of notice.

ii.    Perez was not a manager under the law and was at all times entitled to tips

Plaintiffs also claim that Defendants were not entitled to take a tip credit because an employee named Julio Perez was a "manager" and participated in the tip pool in violation of the FLSA.

In 2018, Section 3(m) of the FLSA was also amended to provide that "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." See 29 U.S.C. §§ 203(m)(2)(B), 216(b); 115 P.L. 141 § 1201.3.

In this case, Plaintiffs also contend that Defendants violated the FLSA by permitting a manager to participate in an employee tip pool.  See ECF Docket Entry 15 ¶¶ 26-28.

Although Congress did not define "managers" or "supervisors" under the statute, "[USDOL] regulations have ... filled in [the] statutory gap." Nwajei v. E&E of Five Towns, Inc., 2024 WL 3522108, at *6 (E.D.N.Y. July 9, 2024), report and recommendation adopted, 2024 WL 3520633 (E.D.N.Y. July 24, 2024) (applying USDOL regulations interpret FLSA).

The applicable regulations promulgated by the USDOL provide that, under 29 U.S.C. § 203(m)(2)(B), "the term 'manager' or 'supervisor' shall mean any employee whose duties match those of an executive employee as described in § 541.100(a)(2) through (4) or § 541.100 of this chapter." See 29 C.F.R. § 531.52(b)(2); United States Department of Labor Opinion Letter ("USDOL Opinion Letter"), 2025 WL 243158, at *1 (Jan. 14, 2025) ("The Department's regulations implementing section 3(m)(2)(B) define a manager or supervisor who may not keep tips as an employee who meets the executive employee duties test at 29 C.F.R. §§ 541.100(a)(2)-(4)").  The USDOL's definition of "managers or supervisors" focuses on "duties that are commonly understood to be assigned to managers' and 'supervisors[.]'" Hoffman v. Bear Chase Brewing Co., LLC, 2023 WL 384293, at *8, (E.D. Va. Jan. 18, 2023), report and recommendation adopted, 2023 WL 2352926 (E.D Va. Mar. 3, 2023).

Pursuant to the USDOL's interpretation, as codified in the Code of Federal Regulations,

(a) The term "employee employed in a bona fide executive capacity" in section 13(a)(1) of the Act shall mean any employee: ...

(2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

(3) Who customarily and regularly directs the work of two or more other employees; and

(4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

See 29 C.F.R. § 541.100 (a)(2)–(4).

Further, the USDOL "has set forth a non-exhaustive list of activities that constitute management.'" Yeh v. Han Dynasty, Inc., 2020 WL 883501, at *8 (S.D.N.Y. Feb. 24, 2020). Such activities include:

> interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

See 29 C.F.R. § 541.102. Here, Plaintiffs have failed to adduce any evidence supporting the notion that Perez was or is a manager, and at most, Perez had a limited degree of supervisory responsibility. SMF ¶¶ 49-92. When evaluating whether an employee has meaningful or significant authority or control sufficient to prevent tip pool participation, courts consider "(1) the ability to discipline subordinates; (2) the ability to assist in performance evaluations; (3) the ability to participate in the process of hiring or terminating employees; and (4) having input in the creation of employee work schedules." Condado v. P&C Bagels, Inc., 2023 WL 7686701, at *8 (E.D.N.Y. Sept. 27, 2023), report and recommendation adopted, Feb. 5, 2024.

Critically, the Court of Appeals in <u>Barenboim v. Starbucks Corp.</u> found reasonable and adopted as a matter of New York law the NYSDOL's position that "employees who regularly provide direct service to patrons remain tip-pool eligible even if they exercise a limited degree of supervisory responsibility." <u>Mangahas v. Eight Oranges Inc.</u>, 754 F. Supp. 3d 468, 503 (S.D.N.Y. 2024) (<u>citing</u> <u>Barenboim</u>, 21 N.Y.3d 460 (holding that employees who possess "limited supervisory responsibilities" but not those "granted meaningful authority or control over subordinates" can participate in employer-mandated tip pool if they provide personal service to patron as "a principal or regular part" of their duties)).

This is the case here, where Perez spent ninety percent (90%) of his time serving customers and ten percent (10%) of his time performing duties incidental to serving as a Captain or head waiter.  <u>SMF</u> ¶¶ 49-92; <u>see</u> <u>also</u> Declaration of Julio Perez ¶¶ 10-46.

### iii.    The Service Charge was Mandatory, Requiring Dismissal

In 2018, Section 3(m) of the FLSA was amended to provide that "[a]ny employer who violates [§] 3(m)(2)(B) shall be liable to the [employee(s)] affected in the amount of ... all such tips unlawfully kept by the employer…." <u>See</u> 29 U.S.C. §§ 203(m)(2)(B), 216(b).

As the FLSA "does not explicitly define 'tips' or 'service charges[,]' the United States Department of Labor ("USDOL") regulations have, accordingly, filled in [the] statutory gap." <u>Benavidez v. Greenwich Hotel Ltd. P'ship</u>, 2019 WL 1230357, at *8 (D. Conn. Mar. 15, 2019).

The regulations define a "tip" as follows:

> A tip is a sum presented by a customer as a gift or gratuity in recognition of some service performed for the customer. It is to be distinguished from payment of a charge, if any, made for the service. Whether a tip is to be given, and its amount, are matters determined solely by the customer. An employer that takes a tip credit against its minimum wage obligations is prohibited from using an employee's tips for any reason other than that which is statutorily permitted in [§] 3(m)(2)(A): As a credit against its minimum wage

> obligations to the employee, or in furtherance of a tip pool limited to employees who customarily and regularly receive tips. Only tips actually received by an employee as money belonging to the employee may be counted in determining whether the person is a "tipped employee" within the meaning of the [FLSA] and in applying … [§] 3(m)(2)(A) which govern wage credits for tips.

See 29 C.F.R. § 531.52(a). By contrast, the USDOL regulations define a service charge as:

> A compulsory charge for service, such as 15 percent of the amount of the bill, imposed on a customer by an employer's establishment, is not a tip and, even if distributed by the employer to its employees, cannot be counted as a tip received in applying the provisions of [§§] 3(m)(2)(A) and 3(t). … As stated above, service charges and other similar sums which become part of the employer's gross receipts are not tips for the purposes of the [FLSA]. Where such sums are distributed by the employer to its employees, however, they may be used in their entirety to satisfy the monetary requirements of the [FLSA].

See 29 C.F.R. § 531.55(a)-(b).  To this end, under the FLSA, a service charge is a compulsory charge imposed by the employer, while a tip is a voluntary amount give in gratuity by a customer for service staff, and, although employers cannot retain any portion of their employees' tips, service charges are not considered to be tips, and employers can therefore keep all proceeds that come from said charge. See Id.; 29 C.F.R. § 531.52(a); Tecocoatzi-Ortiz, 2022 WL 596831, at *7 ("[U]nder the FLSA, a compulsory charge such as the delivery fee is not a tip"); In re Domino's Pizza, Inc., 2018 WL 1587593, at *3-4 (S.D.N.Y. Mar. 27, 2018) (holding a mandatory flat delivery fee is a "compulsory charge for service, which does not constitute a tip"); Benavidez, 2019 WL 1230357, at *9 (collecting cases) ("[W]here a service charge is mandatory, and is included in the employer's gross receipts, it is properly deemed a service charge, and not a tip, for purposes of the FLSA. Where, however, a customer retains discretion over its payment, it is a tip. [W]here a service charge has been used and the proceeds of the service charge are distributed to employees, the proceeds distributed to employees are counted as wages towards satisfying the

employer's minimum wage obligations."); Labriola v. Clinton Ent. Mgmt., LLC, 2017 WL 1150989, at *11 (N.D. Ill. Mar. 28, 2017) (citing 29 C.F.R. §§ 531.50, 531.55) ("Service charges that are distributed from employers to employees are counted against an employer's minimum wage obligations under the FLSA, while tips are not; employers must still pay tipped employees a wage"). Here, there can be no dispute the service charge is mandatory, and Plaintiffs can offer no evidence to the contrary. SMF ¶¶ 31-34. Therefore, this claim must be dismissed.

Courts in this Circuit have consistently held that the USDOL regulations are explicit in distinguishing a service charge from a tip under the FLSA, and that service charges "are counted against an employer's minimum wage obligations under the FLSA, while tips are not; employers must still pay tipped employees a wage." Labriola, 2017 WL 1150989, at *11 (holding that where dance fees were "(1) collected by the Club as part of its gross receipts, (2) distributed to the dancers, and (3) mandatory, rather than discretionary, amounts, these fees are service charges, not tips[,] [and] therefore count against Defendant's minimum wage obligations"); Tecocoatzi-Ortiz, 2022 WL 596831, at *7 (rejecting plaintiffs' contentions that defendants illegally reduced or retained their tips in violation of the FLSA by instituting a delivery fee and not emitting any part of that fee to the plaintiffs and by deducting credit card processing fees from the plaintiffs' tips that were paid by credit card because "irrespective of who retained the fee, the plaintiffs' claims [were] foreclosed under the FLSA, [which provides] a compulsory charge such as the delivery fee is not a tip"); Barenboim v. Starbucks Corp., 698 F.3d 104 (2d Cir. 2012), certified question accepted, 20 N.Y.3d 914 (2012), and certified question answered, 21 N.Y.3d 460 (2013) (under federal law, an employer may retain part of a compulsory charge that it purports to collect to compensate its employees and still claim a tip credit).

Based on the foregoing, Defendants' use of the Service Charge does not violate the FLSA.

### B. **Plaintiffs' Claims Against Petrosyants and Shahmuradyan Must be Dismissed**

"Under the FLSA, an employer is defined as 'any person acting directly or indirectly in the interest of an employer in relation to an employee ....'" Maldonado Juarez v. Butterfield Catering Inc., 2020 WL 6945944, at *3 (S.D.N.Y. Nov. 25, 2020) (quoting 29 U.S.C. § 203(d)). "Evidence that an individual is an owner or officer of a company, or otherwise makes corporate decisions that have nothing to do with an employee's function, is insufficient to demonstrate 'employer' status." Irizarry v. Catsimatidis, 722 F.3d 99, 109 (2d Cir. 2013). Instead, the individual must have "some degree of individual involvement in [the] company in a manner that affects employment-related factors such as workplace conditions and operations, personnel, or compensation." Id. The United States Supreme Court has "instructed that the determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in 'economic reality rather than technical concepts.'" Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 141 (2d Cir. 2008) (quoting Goldberg v. Whitaker House Coop., Inc., 366 U.S. 28, 33 (1961)).

"Among the factors to be considered are "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Irizarry, 722 F.3d at 104-05. "Establishing that these factors are met is 'sufficient but not necessary' to allege that an individual is an employer." Maldonado Juarez, 2020 WL 6945944, at *3 (quoting Zheng v. Liberty Apparel Co. Inc., 355 F.3d 61, 71 (2d Cir. 2003)). Instead, district courts are "free to consider any other factors it deems relevant to its assessment of the economic realities." Perez v. Westchester Foreign Autos, Inc., 2013 WL 749497, at *7 (S.D.N.Y. Feb. 28, 2013).

Here, the record evidence establishes that Petrosyants and Shahmuradyan did not engage in actions which would render them employers as individuals.  SMF ¶¶ 93-126.  At most, Petrosyants played a limited supervisory role which is insufficient to make him an employer.  SMF ¶¶ 100, 114, 119-120, 122. Tapia v. Blch 3rd Ave. LLC, 2016 WL 4581341, at *3, 8 (S.D.N.Y. Sept. 1, 2016) (concluding that owner who was "involved in the general management" of the restaurant, came to the restaurant daily, gave instructions to managers and supervised staff, and reviewed payroll records each week was not an employer), aff'd 906 F.3d 58 (2d Cir. 2018); Salinas v. Starjem Restaurant Corp., 123 F. Supp.3d 442, 463-65 (S.D.N.Y. 2015) (concluding that majority shareholder who sometimes gave bussers directions, who typically visited the restaurant every day it was open, who was considered a "boss" by plaintiffs, and who signed employee paychecks was not an employer).  Accordingly, the claims against the Individual Defendants must be dismissed.

### C.  This Court Should Decline to Exercise Jurisdiction over the State Law Claims

28 U.S.C. § 1367(a) provides a district court with "supplemental jurisdiction over all other claims that are so related to claims" within the district court's original jurisdiction "that they form part of the same case or controversy." But the "district court[ ] may decline to exercise supplemental jurisdiction ... if ... the district court has dismissed all claims over which it has original jurisdiction. Id. § 1367(c)(3).

Indeed, the Second Circuit has stated that "where the federal claims are dismissed before trial, the state claims should be dismissed as well." Delaney v. Bank of Am. Corp., 766 F.3d 163, 170 (2d Cir. 2014).

Claims "form part of the same case or controversy" when they "derive from a common nucleus of operative fact." City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 165 (1997).

To determine whether two disputes arise from a common nucleus of operative facts, courts ask "whether the facts underlying the federal and state claims substantially overlapped or the federal claim necessarily brought the facts underlying the state claim before the court." Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 335 (2d Cir. 2006).  Here, the alleged jurisdictional basis over Plaintiff's state law claims against Defendants is supplemental jurisdiction, under 28 U.S.C. § 1367.  See Docket Entry 15 ¶ 4.  However, since the sole FLSA claim should be dismissed for the reasons articulated above, this Court should decline to exercise supplemental jurisdiction over any remaining state law claims.  See Cain v. Mercy College, 2022 WL 779311, at *2 (2d Cir. 2022).  Moreover, even if the FLSA claim is to survive, this Court must nonetheless dismiss Plaintiffs' third and fourth causes of action related to the minimum wage and recordkeeping violations, which have nothing to do with Plaintiffs' FLSA claim concerning allegedly unlawfully withheld tips. In Shahriar, 659 F.3d at 245, the Second Circuit held that although "the NYLL and FLSA actions clearly derive from such a common nucleus of operative facts since they arise out of the same compensation policies and practices," the factual link between the federal and state claims must constitute more than the mere fact that "the underlying events occurred during the course of plaintiff's employment by [employer];" Rivera v. Ndola Pharmacy Corp., 497 F. Supp. 2d 381, 394 (E.D.N.Y. 2007) (declining to exercise supplemental jurisdiction over state law claims when the only federal claim at issue was for FLSA overtime).  In Young v. New York City Transit Authority, 903 F.2d 146 (2d Cir.1990), the Second Circuit found there was no "common nucleus of operative fact" where the federal claim raised "legal issues completely unrelated to those presented by the state" claim. Id. at 164; Bu v. Benenson, 181 F. Supp. 2d 247, 254 (S.D.N.Y.2001); Figurowski v. Marbil Invs., LLC, 2015 WL 4000500, at *3 (E.D.N.Y. July 1, 2015); Thomas v. EONY LLC, 2015 WL 1809085, at *8 (S.D.N.Y. Apr. 21, 2015).

17

In addition, even if the Court finds that there is a common nucleus of operative facts here (which there is not), the court may nonetheless decline to exercise supplemental jurisdiction if "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction." See 28 U.S.C. § 1367(c)(2). "'[P]redomination under section 1367(c)(2) relates to the type of claim" – i.e., if "the state law claims essentially replicate the FLSA claims—they plainly do not predominate.'" See Shahriar, 659 F.3d at 247.

Defendants concede that there is a common nucleus of fact between Plaintiff's first and second cause of action. However, there is no common nucleus of operative fact between the FLSA claim and Plaintiff's third and fourth causes of action. Since there is no common nucleus of operative fact between Plaintiff's federal claim and Plaintiff's third and fourth claims under state law, this Court should decline to exercise supplemental jurisdiction over those state law claims.

First, Plaintiff's third and fourth claims do not arise out of "arise out of the same compensation policies and practices" as the federal claim, because alleged deductions from gratuities is an entirely separate alleged compensation practice than alleged minimum wage violations or lack of notice. Shahriar, 659 F.3d at 245. Like in Rivera, the mere fact that these violations are alleged with respect to the same employer is insufficient to justify the exercise of supplemental jurisdiction. Rivera, 497 F. Supp. 2d at 394. Even if the Court were to find that there is a common nucleus of operative fact between that federal claim and Plaintiff's third and fourth claims, the Court should decline those state law claims under its discretion to exercise predominating state law claims. Here, those two state law claims are not mere replications of the federal claims – only the second cause of action is. Therefore, this Court should decline to exercise supplemental jurisdiction and should instead dismiss the state claims in the Second Amended Complaint, along with all the federal claims.

18

**D.  Plaintiffs' State Law Claims Fail on the Merits in any Event**

i. The Second and Third Causes of Action Related to the Tip Credit Fail

"The NYLL allows an employer to take a tip credit for tipped employees, subject to certain conditions similar to those under the FLSA." Hernandez, 2016 WL 3248493, at *23. An employer may take a tip credit "if a service employee or food service worker received enough tips and if the employee has been notified of the tip credit as required in section 146-2.2." Id. (quoting 12 NYCRR § 146-1.3).  The employer bears the burden of showing that they have complied with tip notice requirements; if the employer does not demonstrate compliance, it "is liable for the difference between the full minimum wage rate and what the employee was actually paid." Salustio v. 106 Columbia Deli Corp., 264 F. Supp. 3d 540, 554 (S.D.N.Y. 2017).  The NYLL also equally follows the relaxed notice standard of the FLSA.  Carvente-Avila v. Chaya Mushkah Restaurant Corp., 2016 WL 3221141, at *1 (S.D.N.Y. Mar. 1, 2016) (citing the Opinion Letter).

On March 4, 2015, the NYSDOL, issued an opinion letter to the Hon. Joseph D. Morelle, the Majority Leader of the New York State Assembly in response to the Assemblyman's inquiry to the NYSDOL concerning its interpretation of the intersection of the tip credit and notice of pay rules as a result of a federal court decision grappling with pre- and post-2011 claims for wage violations.  Hicks v. T.L. Cannon Corp., 35 F. Supp. 3d 329 (W.D.N.Y. 2014); Declaration of Emanuel Kataev, Esq. ("Kataev Decl."), ¶ 6, **Exhibit "D."**  The NYSDOL was asked whether the regulations require, as a precondition to claiming a tip credit, that an employer provide written notice of the tip credit rules and, alternatively, whether an employer that fails to provide written notice of the tip credit rules may nonetheless claim a tip credit if the employer can demonstrate compliance with all of the minimum wage requirements and that their employees understood the manner in which the employer took the tip credit.  Kataev Decl. Ex. D at 1.

19

The NYSDOL answered: "Contrary to the Court's holding in <u>Hicks</u>, a food service employer *is eligible* to claim the tip credit *even when they fail to provide written notice* of the tip credit rules provided that the employer can demonstrate compliance with all of the other minimum wage requirements and that their employees understood the manner in which the employer took the tip credit." <u>Id.</u> at 2 (emphasis added).

The Hon. Katherine B. Forrest, U.S.D.J.'s decision in <u>Chaya Mushkah</u> is both instructive and on point.  The Court there properly held that where an administrative body provides a rational basis for its conclusions, the judicial function is exhausted and the opinion letter is therefore entitled to deference.  <u>Id.</u> at *2.  In light of this, any contention by Plaintiffs that Defendants cannot claim they were paid at a tip credit minimum wage because they were allegedly not provided a written notice of their tip credit is simply inaccurate and misstates the law. In finding that no written notice was required for an employer to claim a tip credit, the NYSDOL discussed, *inter alia*, the "need to prevent unintended consequences, such as loss of eligibility for the tip credit for otherwise compliant employers and an unjustified windfall for employees that have actual notice of their employer's tip credit practices," as there is "no policy rationale" for reading in a written requirement to Section 146-1.3, as "written notice is not necessary to protect employees that have *actual knowledge* of the tip credit rules." <u>Kataev</u> <u>Decl.</u> Ex. D at 2 (emphasis added).  This is especially important to emphasize here, as Defendants submit that Plaintiff is taking advantage of a hyper-technical rule when she was not damaged in any way.

Plaintiff's anticipated arguments to the contrary have no merit.

First, it is worthy to note that the Hon. Sarah Netburn, Chief U.S.M.J. cited <u>Chaya Mushkah</u> with approval in an August 25, 2016 decision.  <u>Franco v. Jubilee First Ave. Corp.</u>, 2016 WL 4487788 (S.D.N.Y. Aug. 25, 2016).

Second, there is no distinguishable difference between the pre- and post-2011 regulations concerning the tip credit. Therefore, the same analysis applies for Plaintiff's entire employment period

Based on the evidence adduced in the record, Defendants submit that Plaintiffs were given notice of the tip credit and that Defendants have properly claimed the tip credit. This is especially the case here, where Defendants' recordkeeping has been near impeccable and it has proven that Plaintiffs' tips are sufficient to make up the difference between the minimum wage and the reduced wage permitted after the tip credit. SMF ¶ 133, 138. Defendants have, indeed, established that Plaintiffs earned substantial tips on a weekly basis. Therefore, accepting any of the Plaintiffs' anticipated arguments would directly contradict the NYSDOL's sound interpretation of the tip credit notice requirements.

Moreover, in every contract and receipt Defendants provide their customers, there is an indication of an eighteen percent (18%) gratuity *and* a three percent (3%) service charge, such that the two items being listed together next to each other makes it evident that the eighteen percent (18%) gratuity goes to the employees as tips and the three percent (3%) service charge is not a gratuity. SMF ¶ 31-34. Indeed, it is common sense, in light of these printed materials referenced by Plaintiff in her own pleadings, that the service charge is not a gratuity because that would render the eighteen percent (18%) gratuity meaningless. Fernandez admitted as much in her deposition.

## ii. The Fourth Cause of Action for Recordkeeping Violations Fail

In connection with claims brought under the NYLL's Wage Theft Prevention Act, courts in this Circuit have held that "plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." Chen v. Lilis, 200 W. 57th Corp., 2023 WL 2388728, at *8 (S.D.N.Y. Mar. 7, 2023).

"Vague allegations that Defendants' violations facilitated their other unlawful conduct do not give rise to a cognizable downstream consequence." Id. On the other hand, allegations that go "beyond asserting a bare statutory violation and sufficiently allege a concrete harm" resulting from "the underpayment of wages" pass muster, because "monetary injury is a concrete harm sufficient for purposes of Article III standing." Mateer v. Peloton Interactive, Inc., 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022); Metcalf v. TransPerfect Translations Int'l Inc., 2023 WL 2674743, at *5, *7 (S.D.N.Y. Mar. 29, 2023) (standing adequately pled where "plaintiffs ... allege that the inaccurate wage statements provided by [their employer] resulted in them being underpaid for nearly nine months").

"In a proposed class action, 'the named class plaintiffs must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" Wyckoff v. Off. of the Comm'r of Baseball, 211 F. Supp. 3d 615, 627-28 (S.D.N.Y. 2016) (quoting McCall v. Chesapeake Energy Corp., 817 F. Supp. 2d 307, 313 (S.D.N.Y. 2011)), aff'd 705 Fed. Appx. 26 (2d Cir. 2017); Lopez v. Tri-State Drywall, Inc., 861 F. Supp. 2d 533, 536 (E.D. Pa. 2012) (finding that FLSA collective action representative "fails to state a cognizable claim under the FLSA ... [and] [a]ccordingly, he cannot bring a collective action on behalf of his co-workers ... even assuming those co-workers state cognizable claims …").

A 2023 decision in this district styled Quieju v. La Jugueria Inc., 2023 WL 3073518 (E.D.N.Y. Apr. 25, 2023) is illustrative here. In Quieju, the plaintiff, a former restaurant worker, alleged that his former employer violated the FLSA and the NYLL by, inter alia, not providing him "with a time-of-hire wage notice nor with the wage statements" under the NYLL. Id. at *1.

The court there held that the plaintiff was unable to show that he had standing to bring these claims, recognizing the plaintiff's implicit argument "that if [the] defendants had given him the required documents, those documents would have informed him that he was not being paid his required wages." Id. at *2. "Enlightened by that knowledge, [the] plaintiff then would have demanded his required wages. Having made such a demand, [the] defendants would have then paid him his required wages, and [the] plaintiff would have avoided the injury he suffered by the failure to properly pay him." Id. Although the plaintiff in Quieju tried to argue that this implicit analysis demonstrated that the plaintiff had suffered an actual and concrete injury, the court found that "[t]his hypothetical chain of events is not what the Supreme Court means by an 'injury fairly traceable to the allegedly unlawful conduct.'" Id. (quoting California v. Texas, 593 U.S. 659, 668-69 (2021)). The court continued, noting that "[t]he injury that plaintiff suffered (i.e., [the] defendants' failure to properly pay him) is not an injury he sustained because of a lack of the required documents; it is an injury sustained because his employer violated its obligation to pay minimum wage, overtime, and spread of hours pay under other, express requirements of federal and state law." Id. at *2. Other courts in this circuit have similarly relied on Quieju to emphasize the need for a "concrete downstream consequence" to establish standing for wage notice and statement violations. Brathwaite v. Martini Collections Inc., 2025 WL 99108, at *7 (S.D.N.Y. Jan. 14, 2025), report and recommendation adopted, 2025 WL 448040 (S.D.N.Y. Feb. 10, 2025); Maldonado v. Loxton, Inc., 2024 WL 4449293, at *6 (E.D.N.Y. Oct. 9, 2024).

As in Quieju, Plaintiffs here have not shown that they suffered a concrete injury resulting from Defendants' purported violations of the NYLL's wage statement and wage notice requirements.

Thus, Plaintiffs lacks Article III standing to pursue their fourth cause of action. Chisolm-Lucas v. Am. Airlines, Inc., 2025 WL 2229840, at *3 (E.D.N.Y. Aug. 5, 2025) (noting that "courts in this circuit routinely reject claims under NYLL § 195 for lack of standing"); Vazquez v. Cousins Grocery & Grill Inc., 2025 WL 1384069, at *9 (E.D.N.Y. May 13, 2025) (dismissing that plaintiff's wage notice and statement claims for lack of standing); Yunganaula v. D.P. Grp. Gen. Contractors/Devs. Inc., 2024 WL 1342739, at *1 (E.D.N.Y. Mar. 29, 2024) ("Plaintiff lacks standing to pursue his claims that [the defendant] violated the NYLL's wage notice and wage statement provisions because [p]laintiff had not adequately pleaded a tangible injury resulting from [the defendant's] failure to provide the required notices"); Bayne v. NAPW, Inc., 2024 WL 1254197, at *6 (E.D.N.Y. Mar. 25, 2024); Cao v. Wedding in Paris LLC, 727 F. Supp. 3d 239, 295 (E.D.N.Y. 2024); Saavedra v. Dom Music Box Inc., 2024 WL 208303, at *5 (E.D.N.Y. Jan. 19, 2024), report and recommendation adopted, Text Order dated Mar. 13, 2024; Wang v. XBB, Inc., 2022 WL 912592, at *13 (E.D.N.Y. Mar. 29, 2022) ("Plaintiff has not linked any injury-in-fact to [d]efendants' failure to provide statutory notices under the NYLL, so she lacks standing to recover on that claim" (citation omitted)); Francisco v. NY Tex Care, Inc., 2022 WL 900603, at *7 (E.D.N.Y. Mar. 28, 2022) ("While those may be technical violations of the NYLL, neither [p]laintiff nor the record demonstrate how those technical violations led to either a tangible injury or something akin to a traditional cause of action."); Amador v. 109-19 Food Corp., 2025 WL 1032031, at *27 (E.D.N.Y. Mar. 14, 2025), report and recommendation adopted, 2025 WL 1031133 (E.D.N.Y. Apr. 7, 2025); Owens v. 12710 Kitchen Corp., 2025 WL 1371892, at *1 (E.D.N.Y. May 12, 2025).

"A mere failure to provide wage statements is a prototypical informational injury that cannot create standing, and plaintiffs often struggle to identify non-speculative downstream harms caused by the allegedly deficient statements." <u>Chisolm-Lucas</u>, 2025 WL 2229840, at *3.

In any event, the tip credit allowance is clearly listed in the pay stubs, satisfying all notice requirements. <u>Cf.</u> <u>Yuwono v. Jade Eatery & Lounge LLC</u>, 2025 WL 2793725, at *6 (S.D.N.Y. Sept. 30, 2025) ("The sample paycheck attached as Exhibit A to the SAC does not list any rate of pay – whether regular or overtime – does not list a tip credit allowance, and does not disclose net versus gross wages, all as required by the WTPA").

Accordingly, the fourth cause of action must be dismissed on the merits.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Defendants respectfully request that this Court grant their motion for summary judgment pursuant to Rule 56, dismiss the Amended Complaint with prejudice, and grant Defendants such other and further relief as this Court deems just, equitable, and proper.

Dated: Jamaica, New York
         December 12, 2025                     Respectfully submitted,

                                               **SAGE LEGAL LLC**

                                                 _/s/ Emanuel Kataev, Esq._
                                               Emanuel Kataev, Esq.
                                               18211 Jamaica Avenue
                                               Jamaica, NY 11423-2327
                                               (718) 412-2421 (office)
                                               (917) 807-7819 (cellular)
                                               (718) 489-4155 (facsimile)
                                               emanuel@sagelegal.nyc

                                               _Attorneys for Defendants_
                                               _Bulldozer Hospitality Group, Inc.,_
                                               _Robert Petrosyants, and_
                                               _Marianna Shahmuradyan_

25

**<u>VIA ECF</u>**
Joseph & Kirschenbaum LLP
Attn: Josef Nussbaum, Esq.
45 Broadway, Suite 320
New York, NY 10006-3007
(212) 688-5640 (office)
jnussbaum@jk-llp.com

*Attorneys for Plaintiffs*
*Katherine Fernandez,*
*Javier Molina, and*
*Adrian Montor-Peran*

## WORD COUNT CERTIFICATION

I, Emanuel Kataev, Esq., hereby certify – under penalty of perjury – that the foregoing memorandum of law in support of Defendants' motion for judgment on the pleadings and to strike scandalous, impertinent, and immaterial allegations in the complaint, which was prepared using the Times New Roman 12-point typeface, complies with Local Civil Rule 7.1(c) and ¶ 8(C) of this Court's Individual Practices in Civil Cases in that it contains 7,991 words, excluding the parts of the document that are exempted by such rules. In preparing this certification, I have relied on the word count of the word processing system (i.e., Microsoft Word) used to prepare this certification.

Dated: Jamaica, New York
      December 12, 2025

Respectfully submitted,

**SAGE LEGAL LLC**

_/s/ Emanuel Kataev, Esq._____
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)
emanuel@sagelegal.nyc

*Attorneys for Defendants*
*Bulldozer Hospitality Group, Inc.,*
*Robert Petrosyants, and*
*Marianna Shahmuradyan*

**VIA ECF**
Joseph & Kirschenbaum LLP
<u>Attn</u>: Josef Nussbaum, Esq.
45 Broadway, Suite 320
New York, NY 10006-3007
(212) 688-5640 (office)
jnussbaum@jk-llp.com

*Attorneys for Plaintiff*
*Katherine Fernandez*