UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
KATHERINE FERNANDEZ, on behalf of herself and
others similarly situated,

                               Plaintiff,

         -against-

BULLDOZER HOSPITALITY GROUP, INC., d/b/a
OSTERIA LA BAIA, ROBERT PETROSYANTS and
MARIANNA SHAHMURADYAN,

                            Defendants.
-----------------------------------------------------------------X

**Case No.: 1:25-cv-4490 (AS) (GS)**

**DECLARATION OF JANOS PALIKO IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

       Janos Paliko declares, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the following is true and correct:

       1.      I am the General Manager at Bulldozer Hospitality Group, Inc. d/b/a Osteria la Baia (hereinafter "Bulldozer" or the "Corporate Defendant").

       2.      As such, I am familiar with all the facts and circumstances outlined herein based upon my personal knowledge and a review of documents I maintain at Bulldozer in addition to information I have learned from employees, customers, vendors, and other third parties concerning the contents of this declaration.

       3.      I respectfully submit this declaration in support of Defendants' motion for summary judgment.

       4.      I first started working for Bulldozer in February 2022 as a floor manager.

       5.      My duties then consisted of overseeing the front-of-house operations, which I carried out together with the General Manager at the time.

       6.      As a floor manager, I was also involved in, among other things, implementing and updating the bar program to determine our alcoholic beverage offerings, training front-of-house employees, and handling opening and closing of the restaurant.

7.      I had no authority to hire, fire, or discipline employees as a floor manager.

8.      I was then promoted to Assistant General Manager sometime in 2023; I do not remember the specific month.

9.      My duties largely remained the same, except I then received the authority to hire, fire, and/or discipline employees.

10.     I also received the following additional duties, among others, with my promotion: (i) scheduling employees based on restaurant needs; (ii) interviewing and hiring employees; and (iii) participating in management meetings.

11.     At the time I worked as an Assistant General Manager, I worked under a General Manager Ariano; I do not recall his last name, as he only worked with us for approximately five (5) months before he resigned following a vacation he took.

12.     When Ariano left, I stepped into the role of General Manager.

13.     I have served as General Manager since the end of 2023, sometime in September.

14.     In my role as General Manager, I oversee the entire front-of-house[1] staff and make all decisions regarding hiring, firing, and discipline in my sole discretion.

15.     While I may ask our Captain and head server Julio Perez about his observations of the front-of-house staff, I do not ask him for any recommendations and make decisions about staffing by making my own observations or corroborating the information he provides me.

16.     Defendant Robert Petrosyants ("Petrosyants") is not present at the restaurant on a daily basis, as he frequently travels.

17.     In a week, he is present perhaps two to four (2-4) days a week depending on the week.

---

[1] The chef makes all the hiring and firing decisions in his complete discretion for the back-of-house staff.

18.     To my knowledge, Petrosyants has not hired or fired anyone at the restaurant other than managers such as myself, and has never participated in any such decisions for rank-and-file employees such as front-of-house staff or back-of-house staff.

19.     In dealing with and reporting to Petrosyants, from time to time, I may report to him changes in staffing generally among other things I discuss with him.

20.     When onboarding employees, as a general practice and custom, I inform them verbally about the tip credit.

21.     We also have a poster on a billboard in the restaurant that discusses the tip credit. A copy of the billboard with the posters is annexed hereto as **Exhibit "A"** (providing, *inter alia*, that "[e]mployers of 'tipped employees' who meet certain conditions may claim a partial wage credit based on tips received by their employees.  Employers must pay tipped employees a cash wage of at least $2.13 per hour if they claim a tip credit against their minimum wage obligation. *If an employee's tips combined with the employer's cash wage of at least $2.13 per hour do not equal the minimum hourly wage, the employer must make up the difference*") (emphasis added).

22.     Employees pass by this billboard frequently throughout the day and have an opportunity to review it because it is located in the hallway next to the management office.

23.     Each employee also receives a weekly pay stub electronically containing information about the tip credit, identifying their minimum wage per hour, the tipped minimum wage they are paid, the difference between the two identified as the "tip credit" amount, the amount of tips that they made, and – if they did not receive sufficient tips to make up the difference between the tipped wage and the minimum wage – the tip "makeup" amount to pay them the full minimum wage they are entitled to.

24.     All new employees are required to be entered into the Toast system; there is no employee at the restaurant who does not use Toast to clock in & out and receive their pay stubs.

25.    Each employee who is onboarded inputs their name, email, and related identifying information in order to establish their own "account" with Toast.

26.    When the employees first sign in, they are prompted to electronically review and sign all employment documents, such as their I-9 form, tax forms such as the W4 and the related New York state form, handbook (together with acknowledgment), and notice of pay rate and pay-day.

27.    Upon completing the application and registration process, each employee receives an employee number, which they use to log in to the Toast system in order to clock in, clock out, and review their pay stubs and any other information available for their review in the Toast system.

28.    The restaurant has a mandatory service charge of three percent (3%) together with an automatic gratuity of eighteen percent (18%) for any special event, banquet, function, or package deal.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on December 12, 2025.

*Janos Paliko*
Janos Paliko (Dec 12, 2025 12:22:15 EST)

Janos Paliko