# In the Matter of

Case No.: 1:25cv-4490(AS)(GS)

FERNANDEZ, et al.

v.

BULLDOZER HOSPITALITY GROUP, INC., et al.

---

## Examination of Katherine Fernandez

*Monday, December 8, 2025*

---



The Little Reporting Company

469 Seventh Avenue
12th Floor
New York, NY 10018
tel: 646-650-5055
www.littlereporting.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X

KATHERINE FERNANDEZ, on behalf
of herself and others
similarly situated,

                     Plaintiff,

                             Case No.:
                             :25cv-4490(AS)(GS)

        -against-

BULLDOZER HOSPITALITY GROUP,
INC., D/B/A/ OSTERIA LA BAIA,
ROBERT PETROSYANTS and
MARIANNA SHAHMURADYAN,

                     Defendants.
---------------------------------------X

                December 8, 2025
                10:05 a.m.


    Examination of PLAINTIFF, KATHERINE FERNANDEZ,

held pursuant to Notice and Court Order, held

via Zoom conference, before Ruthayn Shalom, a

shorthand Reporter and Notary Public within and

for the State of New York.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

2

2        A P P E A R A N C E S :

3                    JOSEPH & KIRSCHENBAUM LLP
                     Attorneys for Plaintiffs
4                    KATHERINE FERNANDEZ, JAVIER MOLINA,
                     and ADRIAN MONTOR-PERAN
5                    45 Broadway, Suite 320
                     New York, New York 10006
6                    BY: JOSEF NUSSBAUM, ESQ.
                     jnussbaum@jk-llp.com

7

8                    SAGE LEGAL LLC
                     Attorneys for Defendants
9                    18211 Jamaica Avenue
                     Jamaica, New York 11423
10                   BY: EMANUEL KATAEV, ESQ.
                     emanuel@sagelegal.nyc

11

12

        ALSO PRESENT:
13      Maria Cristina Bloise, Spanish interpreter

14      Alivia Cooney, Paralegal - Sage Legal

15      Andrew Deternoz, Paralegal, Joseph & Kirschenbaum

16

17

18

19

20

21

22

23

24

25

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

3

2          IT IS HEREBY STIPULATED AND AGREED, by

3     and between the attorneys for the respective

4     parties hereto, that this examination may be

5     sworn to before any Notary Public.

6

7          IT IS FURTHER STIPULATED AND AGREED that

8     the sealing and filing of the said examination

9     shall be waived.

10

11          IT IS FURTHER STIPULATED AND AGREED that

12     all objections to questions except as to form

13     shall be reserved for trial.

14

15

16

17

18

19

20

21

22

23

24

25

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

4

1                    K. Fernandaz

2              MARIA CRISTINA BLOISE, a Spanish

3       Interpreter, was duly sworn by Ruthayn Shalom,

4       a Notary Public of the State of New York.

5                    KATHERINE FERNANDEZ, a Plaintiff

6       herein, having been first duly sworn through the

7       Interpreter by Ruthayn Shalom, a Notary Public of

8       the State of New York, and stating her address as

9       58-35 Grainger Street, Apartment 6E, Corona,

10      New York 11368, was examined and testified

11      through the interpreter as follows:

12      EXAMINATION BY

13      MR. KATAEV:

14              MR. KATAEV:  Good morning.  Before we

15          begin just the usual Federal stipulations, the

16          same stipulations we took the last time; is

17          that okay with you, Josef?

18              MR. NUSSBAUM:  Sure.

19          Q    Good morning, Ms. Fernandaz.  May I call

20      you Katherine?

21          A    Yes, good morning.

22          Q    My name is Emanuel Kataev.  I'm the

23      attorney for the Defendants, Bulldozer Hospitality

24      Group, Inc., Robert Petrosyants and Marianna

25      Shahmuradyan.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

5

1                     K. Fernandaz

2          A    Yes.

3          Q    From here on in I will be referring to

4     Bulldozer as the restaurant or Osteria La Baia; do

5     you understand that?

6          A    Yes.

7          Q    I'll be referring to the Petrosayants as

8     Rob?

9          A    Refer as what?

10         Q    I will refer to Mr. Petrosayants as just

11    Rob?

12         A    Okay.

13         Q    And I'll be referring to Ms. Shahmuradyan

14    as Marianna?

15         A    Okay.

16         Q    Do you know who Rob and Marianna are?

17         A    Yes.

18         Q    I will be asking you and you will be

19    answering questions today about yourself, Rob,

20    Marianna, the restaurant, your claims against the

21    Defendants and other related subjects; do you

22    understand that?

23         A    Yes.

24         Q    Your testimony today even though we are in

25    this informal virtual proceeding is subject to the

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

8

K. Fernandaz

1

2      Q    Is there any reason you cannot participate

3   in today's deposition and provide truthful answers

4   to questions?

5      A    No.

6      Q    Have you consumed any drugs, alcohol or

7   medication in the past 24 hours that will affect

8   your ability to testify truthfully?

9      A    No.

10     Q    Is there any reason you can think of as to

11  why you cannot give truthful answers?

12     A    No.

13     Q    We have an interpreter here today,

14  correct?

15     A    Yes.

16     Q    You're pretty fluent in the English

17  language, aren't you?

18          MR. NUSSBAUM:  Objection.  You can answer.

19     A    Yes.  I'm not fluent but I do understand.

20     Q    Earlier this morning when I wanted you to

21  move the camera closer you understood the

22  instruction, didn't you?

23     A    Yes.

24     Q    What is the reason you have an interpreter

25  here today if you understand the English language?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

9

K. Fernandaz

1

2          MR. NUSSBAUM:  Objection.

3      A    Because I don't understand 100 percent.  I

4  only understand a certain percentage of English.

5      Q    What percentage do you believe you

6  understand?

7      A    I think about 60 percent.

8      Q    You go by the name of Katherine Fernandez,

9  correct?

10      A    Yes.

11      Q    Is there any other name you go by or have

12  gone by in the past?

13      A    Sometimes, they call me Kathy.  That's it.

14      Q    Other than the nickname, Kathy, you don't

15  have any other name or middle name, correct?

16      A    No.

17      Q    Did you prepare for today's deposition?

18      A    Yes.

19      Q    How did you prepare for today's

20  deposition?

21      A    Waiting for the time and staying here

22  waiting for the time.

23      Q    Did you meet with your attorneys to

24  prepare for the deposition?

25      A    I didn't get together with him.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

                                                                    10
1                          K. Fernandaz

2          Q     Did you review any documents in

3    preparation?

4          A     No.

5          Q     Did you review any deposition transcripts?

6          A     No.

7          Q     Are you aware that your co-Plaintiff,

8    Plaintiff Adrian Montor-Teran was deposed on

9    December 2nd, 2025?

10         A     Yes.

11         Q     Did you review his deposition transcript?

12         A     No.

13         Q     Are you in possession of his deposition?

14         A     No.

15         Q     Where were you on December 2nd?

16               MR. NUSSBAUM:  Objection.

17         A     In my house.

18         Q     Did you visit the law offices of Joseph &

19   Kirschenbaum, your attorneys on that day?

20         A     No.

21         Q     When was the last time you visited their

22   office?

23         A     I don't remember.  It's been a couple of

24   months.

25         Q     How many times have you been to their

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

                                                              11

1                            K. Fernandaz

2      offices?

3           A    Twice.

4                MR. NUSSBAUM:  What is the relevance of

5           any of this?

6                MR. KATAEV:  I'm entitled to ask these

7           questions.

8                MR. NUSSBAUM:  I'm going to keep you on a

9           leash as to relevance.  If you are going to

10          continue to ask question that have no

11          relevance, I'm going to instruct her not to

12          answer.

13               MR. KATAEV:  Please don't interrupt my

14          deposition.  If you instruct her not to answer,

15          we will get the court on the line.

16               MR. NUSSBAUM:  When was the last time you

17          went to the lawyer's office?

18               MR. KATAEV:  Don't interrupt, you don't

19          decide what's relevant.  You objected or

20          instructed her not to answer.  Do your job and

21          stop interrupting.

22     BY MR. KATAEV:

23          Q    When was the last time you met with your

24     attorneys in a virtual meeting?

25          A    Two weeks ago.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

12

K. Fernandaz

1

2        Q      How many times have you met with your

3    attorneys in virtual meetings?

4        A      Never.

5        Q      Other than the one time two weeks ago?

6        A      Yes.

7        Q      Have you ever signed any affidavit,

8    statement, declaration or any other document under

9    oath or affirmation concerning this case?

10       A      When I presented the demand.

11       Q      You're referring to the complaint to join

12   the lawsuit?

13       A      Yes.

14       Q      Other than that, you didn't sign any other

15   documents related to this case?

16       A      No.

17       Q      Are you aware of any other employees who

18   did so?

19       A      No.

20       Q      Did you speak to anyone other than your

21   attorneys about today's deposition?

22       A      No.

23       Q      What documents have you looked at in this

24   case, if any?

25              MR. NUSSBAUM:  Objection.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

13

                              K. Fernandaz

1

2         A     Nothing.  Just my demand.

3         Q     When you say the demand, you're referring

4    to the complaint, correct?

5         A     Yes.

6         Q     To your knowledge, how many complaints

7    have been filed in this case?

8         A     No.

9         Q     Are you aware as to other than the

10   original complaint if there has been any amended

11   complaint?

12                 Other than the original complaint

13   that was filed in this care, are you aware of any

14   other complaint being filed in this case thereafter?

15        A     No.

16        Q     Now we have an individual that is in the

17   deposition with us today.  He's the man in the blue

18   hoodie; do you know his name?

19        A     Yes.

20        Q     What is his name?

21        A     Andrew.

22        Q     Did you meet with Andrew in preparation

23   for your deposition today?

24        A     No, sir.

25        Q     Were you with Andrew on December 2nd at

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

14

                         K. Fernandaz

1

2    the time we were taking the deposition of Adrian?

3         A    No.

4         Q    Have you had any conversations with anyone

5    other than your attorneys and the law firm in

6    preparation for your deposition today?

7              MR. NUSSBAUM:  Objection.

8         A    No.

9         Q    Have you had any conversations with anyone

10   other than your attorneys or the law office about

11   your case in general against the defendants?

12        A    No.

13        Q    The current address that you provided, is

14   that an address that you rent or own?

15        A    I rent.

16        Q    Who do you live with?

17        A    With my husband.

18        Q    What is his name?

19        A    Endi Williams.

20        Q    Can you spell it the first name?

21        A    E-N-D-I.

22        Q    What is your date of birth, Katherine?

23        A    October 26, 1993.

24        Q    Where were you born?

25        A    Dominican Republic.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

15

1                    K. Fernandaz

2        Q    When did you first arrive in the United

3   States?

4        A    June of 2018.

5        Q    Have you ever went back to the Dominican

6   Republic to visit?

7        A    Yes.

8        Q    Tell me the month and years in which you

9   went back to visit each visit?

10            MR. NUSSBAUM:  Objection.

11       A    The last time was May of this year.

12       Q    Prior to May of 2025, when was the last

13   time you visited?

14       A    May of last year.

15       Q    May of 2024 and before that?

16       A    That's it.

17       Q    How long was the visit in May of '24?

18       A    One week.

19       Q    During that week you were not working at

20   the restaurant, correct?

21       A    I was on vacation.  How would I go to

22   work?

23       Q    I'm asking for a yes or no.  You were not

24   working at the restaurant, you were in the Dominican

25   Republic in May of '24, correct?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

16

1                          K. Fernandaz

2          A    Yes.

3          Q    Same question for May of '25, you were

4    not -- withdrawn.

5                    How long was your visit to the

6    Dominican Republic in May of '25?

7          A    Two weeks.

8          Q    You were not working at Osteria La Baia at

9    the time you were in the Dominican Republic in May

10   of '25, correct?

11         A    Correct.

12         Q    Now what specific day were you in the

13   Dominican Republic in May of 25?  Do you remember

14   the day you left there and the day you came back?

15              MR. NUSSBAUM:  Objection.

16         A    I don't remember.  I think it was the

17   sixth of May.

18         Q    That you left, correct?

19         A    Yes.

20         Q    Okay.  What was the last day of employment

21   at the restaurant?

22         A    I don't remember.

23              MR. KATAEV:  We are going to call for the

24         production of the witness's travel documents

25         and/or passport indicating the date she left

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

17

1                    K. Fernandaz

2          and the date she returned and we will follow up

3          writing.

4                    (Counsel Request.)

5              MR. NUSSBAUM:  I don't believe that's

6          responsive to any discovery requests.  You can

7          do whatever you want.

8              MR. KATAEV:  Thank you.  You don't need to

9          respond to my calls for production in the

10         deposition.  I will follow up and you can

11         object.

12             MR. NUSSBAUM:  I'm responding to the

13         extent you're trying to intimidate the witness.

14             MR. KATAEV:  I'm not trying to intimate

15         anybody.

16             MR. NUSSBAUM:  We have been here for a

17         half hour.  Most of your questions are not

18         relevant to the case.

19             MR. KATAEV:  This is not going to fly.

20         I'm writing to the judge right now.  I want him

21         in here.  We are going to read back everything

22         that you've said interrupting the deposition

23         and it's going to stop, okay?  I'm not doing

24         this.

25             MR. NUSSBAUM:  It's your deposition.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

18

1              K. Fernandaz

2         You're free to do what you want.

3              MR. KATAEV:  Thank you, I will.

4              Prepare to read back all of the

5         interruptions by opposing counsel.

6    (Whereupon, an off-the-record discussion was held.)

7    BY MR. KATAEV:

8         Q    Everyone ready to proceed?

9              MR. NUSSBAUM:  Before we proceed, I want

10        to put on the record that the court's rules

11        require the parties to jointly email the court.

12        Counsel submitted a one-sided email to the

13        court right now and did not allow Plaintiffs

14        the opportunity to include any portion that

15        they wanted in the email to the court.  You may

16        proceed.

17             MR. KATAEV:  I don't know what email

18        you're looking at.  Maybe you have a problem

19        with your email server, you don't have enough

20        money to keep your email working.  I'm going to

21        proceed with my deposition and ask you not to

22        interrupt because I will ask for another day of

23        deposition if this keeps up.

24             MR. NUSSBAUM:  Okay.

25

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

19

1                         K. Fernandaz

2      BY MR. KATAEV:

3           Q    Ms. Fernandaz, you said you were married.

4      When did you get married?

5                MR. NUSSBAUM:  Objection.

6           A    I got married in 2018.

7           Q    Is that your first marriage?

8           A    Yes.

9           Q    What month did you get married in?

10          A    In April.  I'm not sure.  I don't remember

11     exactly.

12          Q    What country did you get married in?

13          A    Here in the United States.

14          Q    You have never been married before,

15     correct?

16          A    No.

17          Q    What does your husband do for a living?

18          A    He's an independent worker, he's a

19     photographer and he works for Uber Eats.

20          Q    Do you have any children?

21          A    Yes.

22          Q    How many?

23          A    One.

24          Q    How old?

25          A    Four.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

20

1                         K. Fernandaz

2          Q    Boy or girl?

3          A    Girl.

4          Q    Does your child currently live with you?

5          A    Yes.

6          Q    You're supporting your child?

7          A    Yes.

8          Q    Are you currently working?

9          A    Yes.

10         Q    Where?

11         A    In the restaurant.

12         Q    Which one?

13         A    Italian restaurant.

14         Q    What is the name of the Italian

15    restaurant?

16         A    Marsella.

17         Q    Marsella or Marusella?

18         A    Marusella.

19         Q    Have you ever been arrested before?

20         A    No.

21         Q    You have never pled guilty to any crime,

22    correct?

23         A    No.

24         Q    Irrespective of whether you have ever been

25    arrested or pled guilty to any crime, have you ever

21

                          K. Fernandaz

1

2      committed any crime?

3          A    Never.

4          Q    Other than this current lawsuit, have you

5      ever been involved in any other lawsuit?

6          A    No.

7          Q    Have you ever filed a complaint against

8      any employer at the New York State or United States

9      Department of Labor?

10         A    Never.

11         Q    Have you ever filed a claim for

12     unemployment insurance benefits?

13         A    Yes.

14         Q    Was that for the restaurant subject to

15     this lawsuit or elsewhere?

16         A    For the restaurant that is part of this

17     demand.

18         Q    When you filled out the claim for

19     unemployment benefits, you were required to list

20     among other things your income and your hourly rate

21     and other things, correct?

22         A    Yes.

23              MR. KATAEV:  We are going to call for the

24         production of all documents submitted to the

25         New York State Department of Labor in

22

K. Fernandaz

1

2     connection with your unemployment insurance

3     benefits claim.  We will follow up in writing.

4                 (Counsel Request.)

5     A     Okay.

6     Q     Did you receive unemployment insurance

7     benefits following your claim with the New York

8     State Department of Labor?

9     A     Yes.

10    Q     When did you find a job again after

11    leaving or separating from employment with the

12    restaurant?

13    A     After I came back from my country three

14    weeks later.

15    Q     Have you ever filed a claim for workers'

16    compensation benefits?

17    A     What is that?

18    Q     I'll represent to you that my

19    understanding is that workers' compensation benefits

20    are when a person is injured at work and they

21    receive benefits arising out of an injury at work

22    when they can no longer work due to the injury.

23    A     No.

24    Q     Have you ever applied for food stamps?

25    A     No.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

23

1                      K. Fernandaz

2          Q     Do you currently receive Medicare or

3     Medicaid?

4          A     Health First.

5          Q     When did you first obtain the benefits

6     under Health First?

7          A     When I got my Social Security.

8          Q     When was that; month and year?

9          A     2019.  I don't remember the month.

10         Q     From 2019 until the present, you have

11    maintained health insurance with Health First,

12    correct?

13         A     Yes.

14         Q     Every year or thereabouts you have to

15    renew your application to continue your health

16    insurance, correct?

17         A     Correct.

18         Q     Ever time that you reapply, you have to

19    provide information about your employment and how

20    much you earn, correct?

21         A     Correct.

22         MR. KATAEV:  I'm going to call for the

23         production of all your renewal applications for

24         Health First.  We will follow up in writing.

25                  (Counsel Request.)

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

24

                            K. Fernandaz

1

2          A    Okay.

3          Q    Do you receive any child care assistance

4     benefits?

5          A    Yes.  She goes to daycare.

6          Q    You get that as a government benefit,

7     correct?

8          A    Yes.

9          Q    You have to make an application in order

10     to obtain that benefit, correct?

11          A    Yes.

12          Q    When you fill out the application, you

13     have to provide information about your income and

14     how much you earn in your employment, correct?

15          A    Yes.

16          Q    When did you first apply for childcare

17     assistance benefits; month and year?

18          A    Last year.

19          Q    Do you remember what month -- withdrawn.

20     Nevermind.

21               MR. KATAEV:  We are going to call for the

22          production of all childcare assistance benefits

23          applications.  We will follow up in writing.

24                    (Counsel Request.)

25          Q    Do you receive any housing assistance?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

25

                          K. Fernandaz

1

2         A    No.

3         Q    What about any assistance with food?

4         A    No.

5         Q    Other than the childcare assistance, is

6    there any form of education assistance you've

7    received?

8         A    No.

9         Q    Did you attend high school?

10        A    Yes.

11        Q    In what country?

12        A    Dominican Republic.

13        Q    What was the name of the high school?

14        A    Don Juan Hernandez.  D-O-N J-U-A-N

15   Hernandez.  H-E-R-N-A-D-E-Z.

16        Q    Did you graduate?

17        A    Yes.

18        Q    When month and year?

19        A    I don't remember.

20        Q    What did you do after you graduated high

21   school in connection with your education and

22   employment?

23        A    I went to university.

24        Q    What country?

25        A    Dominican Republic.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

26

                            K. Fernandaz

1

2       Q    What was the name of the university or

3    college?

4       A    I don't remember.  I can't remember.

5       Q    Did you graduate?

6       A    No.

7       Q    How many years did you complete?

8       A    A year-and-a-half.

9       Q    Why did you not complete your college

10   studies?

11      A    Because my father didn't have enough money

12   to support my brothers and myself so I stopped.

13      Q    When did you move to the United States in

14   connection with when you stopped going to college?

15   How much time passed between the two?

16           MR. NUSSBAUM:  Objection.

17      A    Years.

18      Q    When you came to the United States, did

19   you attend any type of schooling here?

20      A    Yes.  I went to learn English.

21      Q    Where did you go?

22      A    To a school called Zony.

23      Q    Can you spell it?

24      A    Z-O-N-Y.

25      Q    You paid for that?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

27

1                      K. Fernandaz

2          A    Yes.

3          Q    Other than attending Zony to learn

4     English, did you ever attend any other type of

5     schooling in the United States?

6          A    No.

7          Q    How long did you attend English classes at

8     Zony?

9          A    Two months.

10         Q    Did you ever attend any type of vocational

11    school or apprenticeship program?

12         A    No.

13         Q    What was your first job ever in the United

14    States -- go head.

15         A    I only took some cosmetology classes,

16    makeup.

17         Q    When was that?  Can you tell me the month

18    and years you started that?

19         A    2020.  The month I don't remember.

20         Q    What about Zony, what year was that?

21         A    2019.

22         Q    What was the first job you ever had here

23    in the United States?

24         A    A steakhouse in Wall Street.

25         Q    What was the name?

28

                            K. Fernandaz

1

2       A     Harry's Steakhouse.

3       Q     What was the month and year you first

4    started working there?

5       A     Year 2019.

6       Q     You don't remember the month?

7       A     No.

8       Q     What about when you ended your employment

9    there, do you remember the month and year for that?

10      A     Yes.

11      Q     When was that?

12      A     October of 2022.

13      Q     You were there for approximately three

14   years?

15      A     Yes.

16      Q     What was your title or role there when you

17   first started?

18      A     I started as a barista, a bus person, and

19   then I was a waitress.

20      Q     In each of those roles you received tips,

21   correct?

22      A     Yes.

23      Q     When you first started working at Harry's

24   Steakhouse, you were informed that your tips would

25   make up part of the minimum wage owed to you,

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

29

1                      K. Fernandaz

2      correct?

3                MR. NUSSBAUM:  Objection.

4          A    Yes.

5          Q    They told you verbally?

6          A    On writing.

7          Q    Do you remember what that notice looked

8      like?

9          A    A document like any other.

10         Q    Do you still have a copy of that document?

11         A    No.

12         Q    Do you have any documents when you were

13     employed at Harry's Steakhouse?

14         A    No.

15         Q    Is it fair to say that your job

16     responsibilities at Harry's Steakhouse generally was

17     to serve customers?

18         A    Yes.

19         Q    Was there a tip pool at Harry's

20     Steakhouse?

21         A    Yes.

22         Q    Between all the job titles you held at

23     Harry's Steakhouse did your compensation change?

24         A    Yes.

25         Q    Can you explain how?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

30

1                        K. Fernandaz

2        A    For every position the points changed.

3        Q    If I understand your answer correctly,

4    when you refer to the points, you're referring to

5    the points that are part of the tip pool system,

6    correct?

7        A    Yes.

8        Q    Do you remember the three different point

9    numbers assigned for each of the positions?

10       A    No.

11       Q    Whenever the points changed, were you

12   given something in writing to that effect?

13       A    They used to tell me verbally.

14       Q    Was there ever a time that you didn't make

15   enough in tips to make the minimum wage while

16   working at Harry's?

17            MR. NUSSBAUM:  Objection.

18       A    Yes.

19       Q    Did Harry's pay you the difference between

20   what you earned and the minimum wage to make up for

21   the difference?

22            MR. NUSSBAUM:  Objection.

23       A    No.

24       Q    You haven't filed any claims against

25   Harry's, correct?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

31

                          K. Fernandaz

1

2        A     No.  I just told them.

3        Q     You told them, hey, I didn't receive

4   enough to make up for the minimum wage, correct?

5        A     Yes.

6        Q     What, if anything, did they do about it?

7        A     Yes, they did something.

8        Q     They paid you?

9        A     The following weeks I started working as a

10  waitress and then after that I didn't have that

11  problem anymore.

12       Q     Understood.  They didn't make up the

13  difference, correct?

14       A     No.

15       Q     Under what circumstances did you separate

16  from employment with Harry's?

17       A     Because I thought it was a lot of work and

18  I used to get home at very, very late hours.

19       Q     Is it fair to say that you quit?

20       A     Yes, I quit.

21       Q     Now while you were working at Harry's were

22  you working anywhere else at the same time?

23       A     No.

24       Q     Were you working there full time?

25       A     Yes.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

32

1                        K. Fernandaz

2              MR. KATAEV:  Can you read back the last

3         question and answer, Madame Court Reporter?

4      (Whereupon, the referred to question and answer was

5                 read back by the reporter.)

6         Q    After your job at Harry's where did you go

7     to work?

8         A    To the restaurant that we are demanding.

9         Q    How did you get the job there?

10        A    Through a colleague that used to work with

11    me at Harry's.

12        Q    What is the name of that colleague?

13        A    Magalis.  M-A-G-A-L-I-S.

14        Q    Understood, thank you.

15                 To your knowledge is Magalis still

16    working at the restaurant?

17        A    Where?

18        Q    At Osteria La Baia.

19        A    No, she doesn't work there.

20        Q    Do you maintain contact with Magalis?

21        A    No, she doesn't work there.

22        Q    My question is do you maintain contact

23    with her; have you spoken with her?

24        A    Yes.  We still talk to each other.

25        Q    Does she also live in Corona?

33

1                          K. Fernandaz

2          A     No.

3          Q     Where is she working now?

4          A     I don't know.

5          Q     When has the last time you spoke with her?

6          A     About three months ago.

7          Q     Did you have any discussion with her about

8     this lawsuit?

9          A     No.

10         Q     You were fired from Osteria La Baia,

11    correct?

12         A     They send me a message giving thanks for

13    the time I worked there.

14         Q     To your knowledge you were not fired from

15    there?

16         A     Yes, they fire me.  They took me off of

17    the schedule and I didn't work there, but they never

18    gave me a proper document about firing me.

19         Q     Understood.  You were upset when you found

20    out you were fired, correct?

21         A     Yes.

22         Q     Why were you upset?

23         A     Because I had vacations approved by the

24    same company and I didn't think it was a

25    professional thing, and they fired me in the middle

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

34

1                          K. Fernandaz

2      of my vacations.

3           Q    Are you saying that there was a

4      misunderstanding as to whether your vacation was

5      approved such that they had a problem with you not

6      being at work?

7           A    What I said was that my vacations were

8      approved by form number two, application two.  What

9      I'm saying is during my approved vacations they

10     fired me.

11          Q    But to your knowledge did they fire you

12     because they took issue with you taking two weeks

13     and needed you at the restaurant?

14          A    The vacations was approved.  Other people

15     took vacations for two months, two weeks.  They

16     approved my vacation for two weeks by the general

17     manager.

18          Q    You're saying there was some

19     miscommunication about that, correct?

20          A    No.  It was not miscommunication.

21     Everything was approved formally by application

22     number two.  From week one to week two everything

23     was approved and two months before the fact.

24          Q    When you were terminated, did they express

25     any disappointment or displeasure with the fact you

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

35

1                        K. Fernandaz
2      were gone two weeks?
3           A    Yes.
4           Q    Based on what they were telling you, your
5      two-week vacation played a role in their decision to
6      terminate you, correct?
7           A    Probably, maybe.
8           Q    How much of a gap in time was there
9      between when you left Harry's and when you started
10     at Osteria La Baia?
11          A    Two days.
12          Q    How much of a gap in time was there
13     between the time you separated from employment with
14     Osteria La Baia and your current job at the Italian
15     restaurant?
16          A    I'm sorry.
17          Q    I'll repeat the question.
18               How much time in between leaving your
19     job at Osteria La Baia and starting a new job at the
20     Italian restaurant how much time passed?
21          A    Since May until now.
22          Q    I think you misunderstood my question.
23     Between leaving your job at Osteria La Baia and
24     starting the job at the Italian restaurant, how much
25     time passed between those two jobs?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

36

                              K. Fernandaz

1

2        A     Three months.

3        Q     Now in October of '22, you were hired by

4    Osteria La Baia as an employee, correct?

5        A     Yes.

6        Q     And Janos interviewed you, correct?

7        A     At that time it was so Fotis, the GM, he

8    did the interview.

9        Q     How do you spell that manager's name?

10       A     F-O-T-I-S.

11       Q     Fotis is a male?

12       A     Male.

13       Q     He was the one that hired you after the

14   interview, correct?

15       A     Yes.

16       Q     Did you first come in contact with him

17   face to face or did you send him a text message or

18   an email with a resume?

19             MR. NUSSBAUM:  Objection.

20       A     Face to face.

21       Q     Did Magalis tell you to speak with him

22   about the job?

23       A     Yes.

24       Q     After meeting with Fotis face-to-face what

25   happened?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

37

                      K. Fernandaz

1

2          A     He hired me.

3          Q     Did you have to fill out an employment

4     application?

5          A     No.  He was at the computer and he gave me

6     the number that I have to use to punch in everyday.

7          Q     When he was at the computer, he was using

8     the Toast system; is that right?

9          A     I believe he did.

10         Q     He was asking you for information and

11    inputting it himself or did he ask you to input the

12    information?

13         A     He only asked me for my Social and my

14    green card and that was it.

15         Q     Did you provide your email address for the

16    Toast system?

17         A     Yes.

18         Q     When you gave him your email, at some

19    point in time you received an email from Toast with

20    an ability to log in with a user name and password

21    to the Toast system, correct?

22         A     Yes.

23         Q     From time to time during your employment

24    you used that system to access your paystubs and any

25    other employment-related documentation, correct?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

                                                              38
                          K. Fernandaz

1

2        A     Yes.

3        Q     How did you learn you had been hired?  Was

4    it verbal or was there something in writing?

5        A     I asked Magalis and I said are they going

6    to hire me and she said yes.

7        Q     During the time that you were using the

8    Toast system with Fotis, were you also required to

9    complete certain documents electronically on the

10   touch pad?

11       A     You have to do your own W2.

12       Q     You did it electronically or on paper or

13   some other way?

14       A     Electronically.

15       Q     It was the same thing for your W4, right?

16       A     Yes, yes.

17       Q     It was the same thing for your notice of

18   pay rate, correct?

19            MR. NUSSBAUM:  Objection.

20       A     No.  In other words I didn't understand

21   the question.

22       Q     Well other than the W4 tax form, the I9,

23   you also electronically completed and signed your

24   notice of pay rate using the Toast system, correct?

25            MR. NUSSBAUM:  Objection.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

39

K. Fernandaz

1

2        A    I never received anything like that.

3        Q    You're confident you never received

4    anything like that or you don't remember receiving

5    anything like that?

6            MR. NUSSBAUM:  Objection.

7        A    One hundred percent.  I know 100 percent I

8    didn't receive anything.

9        Q    What was your job title when you were

10   hired at the restaurant?

11       A    I started as a bus person and then after a

12   few weeks I was a runner and a busser.

13       Q    You never got promoted quote unquote to be

14   a server?

15       A    No.  I stayed as a runner.

16       Q    You reported to Fotis until he left,

17   correct?

18       A    Yes.

19       Q    When Fotis left who took over?

20       A    There was no one, we didn't have anyone to

21   replace him.  We only had Janos as a floor manager

22   and Magalis.

23       Q    Is it fair to say Janos stepped into

24   Fotis's role?

25       A    Yes, eventually.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

40

K. Fernandaz

1

2     Q     Your job as a busser and runner was

3     primarily to serve customers?

4     A     Yes.

5     Q     You received tips in that position?

6     A     Yes.

7     Q     You were tipped out every night, right?

8     A     Yes.

9     Q     If by any chance you had only the dayshift

10    and didn't stay for the night were you tipped out

11    during the day?

12    A     They used to put them in the application,

13    the tips, and they gave it to me every week with my

14    paycheck.

15    Q     Did you ever have just the dayshift and

16    left for the day and not worked the evening?

17    A     Sometimes, I had to work during the day

18    and sometimes during the night.

19    Q     Did you ever have only the dayshift and

20    not working the night shift as well?

21    A     Yes.  There was some time when I started.

22    Q     How much did you receive in tips every

23    shift on average?

24    A     $200.

25    Q     What was the lowest amount of money you

41

                              K. Fernandaz

1

2       ever received in tips in a single shift, if you

3       remember?

4             A     Fifty.

5             Q     What was the highest you ever received in

6       a single shift, if you remember?

7             A     $300.

8             Q     How many days a week did you work on

9       average?

10            A     Five and sometimes if they asked me six

11      days.

12            Q     How often would you work six days?

13            A     Every time they asked me or maybe every

14      two weeks.

15            Q     Was it ever the case you consistently

16      received only $50 in tips everyday for a whole week?

17            A     No.

18            Q     Going back to your interview with Harry's.

19      I'm sorry -- withdrawn.

20                        Going back to your interview with

21      Fotis just like you were told at Harry's about tip

22      credit, Fotis also told you about the tip credit,

23      correct?

24                  THE INTERPRETER:  Did you say Harry's?

25            Q     During your interview with Fotis at

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

42

1                        K. Fernandaz

2     Osteria La Baia, just like they told you at Harry's,

3     Fotis also told you about the tip credit, correct?

4               MR. NUSSBAUM:  Objection.

5          A    I don't understand the question.

6          Q    Okay, I'll rephrase.

7                    When you first started working at

8     Osteria La Baia, you are also told that you were

9     being paid a tip minimum wage and your tips will be

10    used to make up the difference to pay you at least

11    the minimum wage, correct?

12              MR. NUSSBAUM:  Objection.

13         A    No.

14         Q    Your testimony is that Fotis never told

15    you that, correct?

16         A    No.

17         Q    When Janos took over in the manager role

18    that Fotis left, Janos told you about the tip

19    credit, correct?

20              MR. NUSSBAUM:  Objection.

21         A    No.

22         Q    How did you clock in and clock out at the

23    restaurant at Osteria La Baia?

24         A    In the computer.

25         Q    Where is the computer or if they are

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

43
K. Fernandaz

1
2       multiple where are the computers?
3            A    The computers are on the floor on each
4       station and in the back.
5            Q    How many stations are there?
6            A    There is three stations on the floor plus
7       another computer in the back in the area where the
8       bread is, plus another inside the bar.
9            Q    Is it fair to say that you used all of
10      those stations interchangeably or you're referring
11      to just one?
12           A    You could use either one of them and I did
13      so.  Everybody would use either computer.
14           Q    Was there an employee break room at the
15      restaurant?
16           A    You mean a loft, a place for the
17      employees?
18           Q    Yes.  Any place for the employees.
19           A    We didn't have a place to change our
20      clothes.  It was a small area where you could leave
21      whatever you brought, our coats or your backpack and
22      we had to change in the restaurant bathroom.  We
23      didn't have an area for the employees.
24           Q    In relation to the bathroom, where was the
25      place where you could leave your items?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

44

                        K. Fernandaz

1

2         A    On the side of the bathroom in front of

3    the office.

4         Q    If you're facing the entrance to the

5    bathroom from the restaurant, it's further down that

6    way straight ahead, right?

7              MR. NUSSBAUM:  Objection.

8         A    Yes.

9         Q    Somewhere in that area there is also a

10   billboard with labor law posters, right?

11        A    No, I don't remember that.

12        Q    I'm going to place up on the screen what

13   we will mark as Defendant's Exhibit 1 and I'll

14   represent to you before I show it to you it's a

15   picture of the billboard with the labor laws

16   posters.

17   (Defendant's Exhibit 1, Marked for Identification.)

18              Katherine, does this look familiar to

19   you?

20        A    No.

21        Q    You have never seen this before, correct?

22        A    No.  That wasn't there when I worked

23   there.

24        Q    During your time at Osteria La Baia, your

25   responsibilities and duties never changed, correct?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

45

K. Fernandaz

1

2      A    Yes, they changed sometimes.

3      Q    Tell me how?

4      A    Sometimes, I was a runner but they

5  changed -- sometimes they put me as an expeditor and

6  Janos used to tell me to take care of party, the

7  food.  Depending on the level of how busy it was,

8  the restaurant, he would tell me just take care of

9  your coworkers and make sure they are doing the

10  things they have to do.

11     Q    Okay.  When you helped as an expeditor,

12  you were serving customers, right?

13     A    Yes.

14     Q    When you were doing special events, you

15  were also serving customers, correct?

16     A    Yes.

17     Q    Regardless of the changes in your roles

18  during the time that you described these changes,

19  you were still at all times serving customers,

20  correct?

21     A    Yes.

22     Q    Did your job responsibilities and duties

23  change in any other way other than what you already

24  described?

25     A    What do you mean in another way?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

46

K. Fernandaz

1

2      Q     Any other way where your job duties and
3      responsibilities changed in any other way other than
4      what you've already described?
5      A     No.
6      Q     Were you ever provided with any written
7      job description of what your duties were?
8      A     No.
9      Q     You were provided an employee handbook,
10     weren't you?
11     A     No.
12     Q     You don't remember signing any
13     acknowledgment stating you received an employee
14     handbook?
15     A     No.
16     Q     Was there ever any training when you first
17     started at Osteria La Baia?
18     A     Yes.
19     Q     Can you tell me what that training
20     consisted of?
21     A     They trained me as a busser, like what do
22     I have to do, the tables, the settings and even my
23     coworkers gave me some training, too.
24     Q     How long did the training last?
25     A     Three days.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

47

                          K. Fernandaz

1

2        Q    You were paid for the training, correct?

3             THE INTERPRETER:  I'm sorry, what was -- I

4        think I understood the wrong thing.  Can you

5        repeat the question, please?  Sorry.

6        Q    You were paid on those days in which you

7    were trained, correct?

8        A    Yes.

9        Q    Do you remember what hourly rate you were

10   paid at?

11       A    No.  $15.  I believe it was $15, but I'm

12   not sure.

13       Q    Do you remember what your tip minimum wage

14   was when you first started in October of 2022?

15            MR. NUSSBAUM:  Objection.

16       A    Ten dollars an hour.

17       Q    Your understanding was that a tip credit

18   was taken in the maximum amount of five dollars per

19   hour, right?

20            MR. NUSSBAUM:  Objection.

21       A    I'm sorry, what do you mean?

22       Q    If the minimum was $15 an hour and you

23   understood you were being paid $10 dollar an hour,

24   is it fair to say that you understood having taken a

25   five dollar tip credit against your minimum wage?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

48

K. Fernandaz

1

2          MR. NUSSBAUM:  Objection.

3     A     They paid me $15 an hour for my training

4     and $10 an hour when I was already working.

5     Q     You understood when you were being paid

6     $10 an hour, that was because of the tip credit

7     because you were serving customers and getting tips,

8     correct?

9          MR. NUSSBAUM:  Objection.

10    A     Yes, I understood that I worked for tips.

11    Q     You understood that your tip credit was

12    being taken based on your prior experience at

13    Harry's, correct?

14         MR. NUSSBAUM:  Objection.

15    A     Nobody told me anything about tip credit.

16    Q     But my question is you understood the tip

17    credit was being taken based on your prior

18    experience at Harry's; is that right?

19    A     Are you talking to me about my training?

20    Q     No.  No, in general after your training.

21    A     Yes.

22    Q     You also understood that you were being

23    paid less because of the tips based on the fact that

24    someone in management informed you about that at

25    some point, correct?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

49

K. Fernandaz

1

2      A    Someone explained to me, not the manager.

3    It was my coworkers that explained to me about the

4    points.

5      Q    I wasn't referring to the points.  I was

6    referring to the difference in the minimum wage of

7    ten and $15; same answer for that?

8      A    Yes, I understand that.

9      Q    That's because someone in management told

10    you about it, correct?

11      A    Magalis told me.

12      Q    What was Magalis's role at the restaurant?

13      A    She was a floor manager and after she was

14    an events manager.

15      Q    Magalis was the one that explained to you

16    that you were going to be paid less than the minimum

17    wage at a tip minimum wage because the tips will

18    make up for the difference for the minimum wage,

19    correct?

20      A    Yes.

21      Q    Now did there come a time when instead of

22    being paid $10 at the tips minimum wage there was a

23    change in that number?

24      A    Yes.

25      Q    What was the change in the number?

50

K. Fernandaz

1

2      A      $12.50.

3      Q      To your knowledge when did that change

4  occur?

5      A      That occurred one day when someone in the

6  kitchen or the chef told Janos that I work really

7  hard and I should be making more money.

8      Q      So the increase in your minimum wage in

9  the tip credit occurred to reward you for good work,

10  correct?

11      A      Yes.

12      Q      You frequently worked with the chef in the

13  kitchen in relation to you performing your job

14  duties, correct?

15      A      It wasn't in the kitchen.  It's a room

16  where the runners work, but it's connected to the

17  kitchen.

18      Q      You had a good relationship with the chef,

19  a good working relationship, right?

20      A      With everyone.

21      Q      Did you maintain friendships with the

22  colleagues that you worked with such that you

23  socialized outside of the restaurant?

24      A      Yes, with some of the waiters and some of

25  my coworkers in the kitchen, yes.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

51

K. Fernandaz

1

2      Q    And the chef as well, correct?

3      A    No.

4      Q    Did you ever have any form of a romantic

5    relationship with the chef?

6          MR. NUSSBAUM:  I'm instructing the witness

7          not to answer the question.

8          MR. KATAEV:  Let's go ahead and get the

9          judge on.

10          SKWRAO:  For the record, there is a

11          separate EEOC charge that this Plaintiff has

12          filed against Bulldozer Hospitality and the

13          question that counsel is now putting forth

14          touches on that charge and they are not the

15          subject of today's deposition.

16          MR. KATAEV:  Sure it is.  I'm allowed to

17          ask her any questions I want including that

18          charge.

19          MR. NUSSBAUM:  I'm telling you that if you

20          want to ask her questions that relate to that

21          charge, I will seek a protective order and

22          therefore I'm instructing her not to answer.

23          MR. KATAEV:  Let's call the judge.  You

24          want to call me so I can patch in the judge?

25          MR. NUSSBAUM:  The call is on the Zoom,

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

52

1                    K. Fernandaz

2         it's on the record.  Let's take a restroom

3         break to call the judge.

4              MR. KATAEV:  Okay, that's fine.  We can do

5         that.

6              MR. NUSSBAUM:  I don't know why you would

7         not want it on the record, that's unusual.

8              MR. KATAEV:  I agree with you.

9           (Whereupon, a short recess was taken.)

10             MR. KATAEV:  During an off-the-record

11        discussion directly with the court, the court

12        decided on discovery dispute as follows and

13        quote, "Defendant's counsel may ask the next

14        three questions about issued related to

15        Plaintiff's EEOC complaint and no more.

16             Josef, I placed on the record verbatim the

17        court's order.  I'm ready to proceed with the

18        deposition.  Is your client here?

19             MR. NUSSBAUM:  I'm pretty sure she's here.

20        Katherine, if you're there turn on your video

21        and audio.

22             MR. KATAEV:  Please prepare to read back

23        the last question.

24        (Whereupon, the referred to question was read back

25                    by the reporter.)

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

                                                              53

1                        K. Fernandaz

2       BY MR. KATAEV:

3            Q    Thank you, everyone for your patience in

4       this process.  We will read back the last question

5       and we will ask for an answer and then ask two more

6       questions related to the subject according to the

7       court's order and we will then proceed with the

8       deposition.  Let Madame Interpreter translate that

9       and we will have the court reporter repeat the

10      question.

11           A    Okay.

12      (Whereupon, the referred to question was read back

13                     by the reporter.)

14           MR. NUSSBAUM:  Objection.

15           A    No.

16           Q    Did you have any form of a romantic

17      relationship with the Janos, the manager?

18           A    No.

19           Q    Why was it the chef was depressed for two

20      weeks after you left the restaurant, to your

21      knowledge?

22           MR. NUSSBAUM:  Objection.

23           A    I don't have any information about that.

24           Q    During the time you worked at Osteria La

25      Baia, Katherine, what was your usual daily working

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

54

                              K. Fernandaz

1

2       hours?  What time did you start, what time did you

3       finish?

4           A    My hours were first at 4:00 p.m., then at

5       4:30, then I started at 4:45, then at 5:00, then

6       they changed it back to 4:00 and 4:30 and the

7       restaurant closed at 11:00 p.m.

8           Q    Is that when you left for the evening?

9           A    When I finish with my responsibilities.

10          Q    What time was that usually?

11          A    11:30, 12:00.

12          Q    That was when you typically worked the

13      evening shift which was your usual shift, correct?

14          A    Yes.

15          Q    What were your usual hours when you worked

16      only the dayshift?

17          A    I used to come in at 11:30, sometimes at

18      11:00, sometimes at 10:00 up until 4:00 p.m.

19          Q    Did you ever work a double shift?

20          A    Yes, when I began.

21          Q    How often would you work a double shift?

22          A    When I started working their it was on my

23      regular schedule and then whenever they came to me.

24          Q    Did you ever work a double shift other

25      than once in a week?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

55

                            K. Fernandaz

1

2      A     Yes, when I started.

3      Q     Three times a week?

4      A     Twice.

5      Q     So if I understood your testimony

6  correctly, you never worked a double shift more than

7  twice in a week, correct?

8      A     Yes.

9      Q     Did your schedule change from day to day

10  or week to week or month to month?

11      A     From week to week and from month to month.

12      Q     We just took our first break in the

13  deposition, correct?

14      A     Yes.

15      Q     During this break without divulging any

16  conversation you had with your attorney, did you

17  discuss your testimony with your attorney?

18          MR. NUSSBAUM:  Objection.  Don't answer

19      that.

20          MR. KATAEV:  We will mark that for a

21      ruling.

22                (Marked for ruling.)

23          MR. NUSSBAUM:  Okay.

24  BY MR. KATAEV:

25      Q     When you were employed at Osteria La Baia

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

56

K. Fernandaz

1          did you work for any other employer?

2          A    Yes.

3          Q    Where?

4          A    In Manhattan.

5          Q    I won't ask you where or to name the

6    place, but can you tell me the schedule to that

7    other place?

8          A    I worked on my off day at night.

9          Q    Can you tell me your typical schedule at

10   that other place?

11         A    From 4:00 p.m. to 11:00 p.m.

12         Q    What days were you off?

13         A    None.

14         Q    What days were you not working at Osteria

15   La Baia such that you could work at this other job?

16         A    Eventually it was Sunday and Monday.

17         Q    Did you ever take time off from your work

18   at Osteria La Baia to do this other job if work was

19   available to you there?

20         A    Never.

21         Q    What type of work was it?

22         A    Bussing and runner.

23         Q    If I understand correctly, you were

24   working as a busser and runner at another restaurant

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

57

1                      K. Fernandaz

2      while working at Osteria La Baia, correct?

3          A    Yes.

4          Q    You were paid weekly while working at

5      Osteria La Baia, correct?

6          A    Yes.

7          Q    You received your money through direct

8      deposit?

9          A    Checks.  I was paid with checks.

10         Q    You physically received a check in your

11     hands?

12         A    Yes.

13         Q    When you received the check the paystub

14     was there with it, correct?

15         A    No.

16         Q    When you would receive the check you would

17     receive an email notifying you that your paystub is

18     available, correct?

19         A    No.  No email but they used to tell us

20     about it.

21         Q    In order to receive your paystub, would

22     you log into the Toast system and pull it from

23     there, correct?

24         A    Yes.

25         Q    You would go and access the Toast system

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

58

K. Fernandaz

1

2      to look at your paystub, correct?

3          A    Yes.

4          Q    You were provided with a W2 after

5      completing your employment for the year in 2024,

6      correct?

7          A    Yes.

8          Q    You used that W2 to complete your taxes,

9      correct?

10         A    Yes.

11         Q    You accurately reported all your tips on

12     your tax forms, correct?

13         A    Yes.

14         Q    Generally speaking, how many hours a week

15     did you work on average at Osteria La Baia?

16         A    38, 40, 41.

17         Q    You did not work more hours because you

18     had the other job, correct?

19         A    Yes, but I didn't stay in the other job

20     for too long.  I was only there for two months.

21         Q    Do you remember what months you worked

22     there?

23         A    I only remember it was during the summer.

24         Q    Do you remember the name of the

25     restaurant?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

59

1                    K. Fernandaz

2        A    San Andrews.  S-A-N A-N-D-R-E-W-S.

3        Q    How far is that restaurant from Osteria La

4   Baia?

5        A    I don't remember.

6        Q    Do you have any documents related to your

7   employment with Osteria La Baia other than what

8   you've already produced?

9        A    No.

10       Q    Other than that restaurant, I think you

11  said it's San Andrews, did you work anywhere else

12  while working at Osteria La Baia?

13       A    Yes.

14       Q    Where else?

15       A    In Manhattan.

16       Q    I want to clarify the question to make

17  sure we are on the same page.

18            I'm asking about your employment that

19  you had at the same time you were working at Osteria

20  La Baia, not after?

21       A    Okay.

22       Q    Your answer is the same, correct?  Other

23  than working at Osteria La Baia and San Andrews, you

24  worked somewhere else at the same time?

25       A    Yes.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

60

                         K. Fernandaz

1

2       Q     Where was that?

3       A     In Manhattan.  I think it was Lexington.

4    I'm not sure.

5       Q     Was it also a restaurant?

6       A     Yes.

7       Q     How long did you work there; how many

8    months?

9       A     Two months.

10      Q     What was your schedule there?

11      A     The same schedule.  The days that I was

12   off from Osteria La Baia.

13      Q     Other than those two restaurants that you

14   worked in for two months at the time separately at

15   the same time you worked at Osteria La Baia, did you

16   work anywhere else while working at the restaurant?

17      A     No.

18      Q     Are you still working at either of those

19   restaurants?

20      A     No.

21      Q     Why did you stop working at San Andrews?

22      A     Because I didn't like it.

23      Q     What is the name of the other restaurant?

24      A     Davids Kitchen.

25      Q     David, D-A-V-I-D?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

61

K. Fernandaz

1

2      A    Yes.  D-A-V-I-D-S Kitchen.

3      Q    Why did you leave from that employment?

4      A    Because I didn't like that one either.

5      Q    The tips that you received at Osteria La

6   Baia, did you receive them directly from the

7   customers?

8      A    Yes.

9      Q    What would you do with the tips that you

10  received directly from the customers?

11     A    They were direct, but they were on the

12  checks.  I never received cash as tips.

13     Q    No customer ever directly gave you a cash

14  tip?

15     A    No.

16     Q    Remember earlier you testified that your

17  tip wages went from $10 to $12.50?

18     A    Yes.

19     Q    Did your tip wage ever increase or

20  decrease from $12.50 after that?

21     A    My tips were stayed normal.  The tips is

22  according to how many customers we have.

23     Q    I understand that but that wasn't my

24  question.  You testified earlier that you started

25  off at $10 per hour tip minimum wage and that in

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

62

                              K. Fernandaz

1

2      recognition of your good work at the recommendation

3      of the chef, they increased that minimum wage to

4      $12.50; do you remember that?

5          A    Yes.

6          Q    And my question now is after the $12.50,

7      did it ever increase or decrease again?

8          A    It stayed at $12.50.

9          Q    Did it ever increase to $15 an hour?

10         A    Never.

11         Q    Did it ever decrease to $11 an hour?

12         A    No.

13         Q    The only time your tip minimum wage

14     changed was from $10 to $12.50, correct?

15         A    Yes.

16         Q    A reward of an increase in $2.50 per hour.

17     You were the only person to receive such an award,

18     correct?

19         A    Yes, because of the recommendation from

20     the chef, Chef Jose.

21         Q    To your knowledge there was no other

22     employee that received a merit increase like you

23     did, correct?

24         A    Yes, there was.

25         Q    Who?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

63

                        K. Fernandaz

1

2       A    His name is Artemio, A-R-T-E-M-I-O, and

3    he's a busser.

4       Q    Other than him to your knowledge is there

5    anyone else that received such an increase?

6       A    I have no knowledge.

7       Q    During the time you worked at Osteria La

8    Baia, you kept in contact with all of your

9    colleagues that you worked with, right?

10       A    Yes.

11       Q    Did you maintain a group text message, a

12    WhatsApp group or something similar?

13       A    No.

14       Q    During the time that worked there did you

15    manage to save the phone numbers of some of the

16    employees that you worked with?

17       A    Yes.

18       Q    How many do you recall -- how many

19    employees do you recall saving their numbers?

20       A    I don't know.

21       Q    At least ten?

22       A    About 20.

23       Q    Now you've told me that all of your tips

24    were basically done through the credit card

25    payments, right?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

64

K. Fernandaz

1

2      A     And the cash tips that people left.

3      Q     How did it work for the cash tips?  Who --

4      when the customer left the cash what happened to it?

5      A     The clients will give the cash to the

6      server, that server will go and give it to another

7      server, and that server will go and give it to the

8      ones that close and put down the points.

9      Q     Do you remember the points assigned to you

10     in your role in the tip pool?

11     A     A seven.  If I'm not mistaken I remember

12     it's seven.

13     Q     How many points was it for waiters and

14     waitresses and servers?

15     A     I don't remember.

16     Q     What about for employees that were just

17     bussers and not runners?

18     A     I don't remember.

19     Q     What about for employees that were just

20     runners and not bussers?

21     A     I was a runner.  I don't remember if I --

22     if I'm not mistaken it was a seven.

23     Q     I notice in your complaint that you list

24     yourself as a busser slash runner.  Is there any

25     difference?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

65

K. Fernandaz

 1          A    Busser and runner are two different
 2    things.
 3          Q    You did both, correct?
 4          A    When I started.
 5          Q    Eventually that changed and you became
 6    just a busser or just a runner?
 7          A    A runner.
 8          Q    To your knowledge were individuals like
 9    you who were bussers and runners at the same time
10    like you were, were they a different point system or
11    point amount like just a busser or just a runner?
12          A    The runners have the same points and the
13    bussers had less points.
14          Q    Do you remember how much the difference
15    was?
16          A    I don't remember.
17          Q    Do you have any records about that?
18          A    I don't remember.
19          Q    Other than bussers, runners and servers in
20    the tip pool, were there any other job
21    classifications that were in the same tip pool?
22          A    There were bartenders that made the same
23    as the servers.
24          Q    Any other job classification that you can

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez --- December 8, 2025

66

K. Fernandaz

1

2      think of or are you confident that that is all?

3          A    There were the hostesses that at one point

4      they received a part of the tips also.

5          Q    That stopped, you're saying?  That's no

6      longer the case?  I'll rephrase.

7                   You're saying that the hostesses at

8      one point received tips from the same tip pool and

9      later that was no longer the case, right?

10         A    No.  They did get it, yes.

11         Q    Always?

12         A    I don't know.  I know at one point they

13     included them in the tips and when I left that was

14     the case.  What happened after I don't know.

15         Q    To your knowledge after you left was there

16     any change done with respect to that?

17         A    I don't know.

18         Q    If I understand correctly if you received

19     a physical cash tip in your hand, you would follow

20     the same procedure and go and give it to the server

21     who would give it to the person that would do the

22     tip out at the end of the night?

23         A    I never received any tips in cash from the

24     client.  I was a runner.

25         Q    Is it fair to say you would go above and

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

67

K. Fernandaz

1
2      beyond for your clients and that's why you received
3      an increase in your wages?
4           A    I was a good worker and I was there for a
5      long time.
6           Q    Obviously if you were a good worker,
7      you're telling me that a customer would never say
8      thank you for your hard work, here's a tip directly
9      for you for your hard work?
10               MR. NUSSBAUM:  Objection.
11          A    No, sir.
12          Q    So we talked about tips left at tables by
13     credit cards or cash.  There were also tips that
14     were automatically taken at special events, right?
15          A    Yes.
16          Q    How did that work?  Was that part of the
17     tip out at the end of the night or did you receive
18     those tips separately?
19          A    You mean from the events?
20          Q    Yes.
21          A    Well it was they had a contract.  The only
22     thing we were informed is how much they paid per
23     person.  Nothing about tips and at the end whatever
24     the tip was that they left it went into the pool.
25          Q    Okay.  You're telling me you had no

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

68

K. Fernandaz

1
2     knowledge that there was an automatic charge of
3     18 percent gratuity for these events?
4          A    They never told us it was 18 percent.
5     They always told us it was 20 percent.
6          Q    Who is they that told you it was
7     20 percent?
8          A    Janos.
9          Q    Generally speaking outside of special
10    events, did you ever go to the Toast system to print
11    a check for a customer?
12         A    Never.
13         Q    Same question for special events, have you
14    ever gone to the Toast system to print a check at
15    the end of a special event?
16         A    Never.
17         Q    Setting aside the fact that you don't
18    physically print the check for any customer, you had
19    access to the Toast system to see all the checks,
20    correct?
21         A    No, because I would need the password from
22    the waiter and each waiter has a different password.
23         Q    You didn't have your own password?
24         A    Yes.
25         Q    Could you access the checks with your

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

69

1                        K. Fernandaz

2       password?

3              A     No.

4              Q     Have you ever tried?

5              A     No.

6              Q     Other than cash tips, credit card tips,

7       and special event tips, are there any other types of

8       tips?

9              A     No.

10             Q     Did you keep any records of the tips you

11      received?

12             A     It's in the system.

13             Q     Did you ever print anything from Toast and

14      keep it?

15             A     It's there for everyone to see for all

16      employees.

17             Q     My question is were you able to print it

18      or keep it?  Did you ever do that?

19             A     I saved it on my phone on my cellular,

20      yes.

21             Q     Did you produce in this case all of those

22      pictures that you took?

23             A     I didn't understand.

24             Q     How did you save it in your phone?  I'm

25      assuming you took a picture, correct?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

70

K. Fernandaz

1

2          A     Yes.

3          Q     Did you give those pictures to your

4     attorneys to then produce them to us?

5          A     Yes.

6                MR. KATAEV:  To the extent that Plaintiffs

7          only selectively produced screen shots or

8          pictures from the witness's phone, I'm going to

9          call for the production of all pictures or

10         screen shots taken on the witness's phone and

11         I'll follow up in writing.

12                     (Counsel Request.)

13         Q     Other than taking pictures of things that

14    occurred in the restaurant, did you keep records in

15    any other way about your tips or hours worked or

16    wages paid?

17         A     Yes.

18         Q     How did you do so?

19         A     Pictures.

20         Q     We already talked about photos.  Are you

21    saying there is a different type of photo?

22         A     Yes, screen shots.

23         Q     I count that as one thing.

24                     Other than photos and/or screen

25    shots, was there any other manner in which you kept

71

1                        K. Fernandaz

2       track of tips, hours work and/or wages paid?

3            A    Yes.

4            Q    How else did you do so?

5            THE INTERPRETER:  She's complaining about

6            she's not hearing well because it gets cut off

7            which she listens to us.  I'm just telling you.

8            I didn't have a conversation with her.  This is

9            what she's telling me.

10           A    No.  The answer is no.

11           Q    Did you keep any of this information in a

12      diary or journal or calendar or notebook or planner?

13           A    No.

14           MR. NUSSBAUM:  It's 1:07.  Do you plan on

15           breaking for lunch?  We have been going for

16           more than three hours.

17           MR. KATAEV:  Sure, I'm happy to do what

18           you'd like.  Off the record.

19      (Whereupon, an off-the-record discussion was held.)

20

21               (Luncheon recess:  1:07 p.m.)

22                         ***

23               (Afternoon session: 1:46 p.m.)

24

25

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

72

1                        K. Fernandaz

2            K A T H E R I N E   F E R N A N D E Z,

3      resumed, having been previously duly sworn, was

4      examined and testified further as follows:

5      EXAMINATION BY

6      MR. KATAEV (Continued)

7            Q    Katherine, did you participate in a tip

8      pool as part of your job with the restaurant?

9            A    Yes.

10           Q    Was it required to be part of the tip

11     pool?

12           A    Yes, it's a pool.

13           Q    When did you learn you were required to

14     participate in the tip pool?

15           A    Since they hired me.

16           Q    You learned about this because they told

17     you, correct?

18           A    They didn't tell me, but it was logical

19     because I worked with tips.

20           Q    I'm talking about specifically learning

21     that the tips you receive come from the tip pool

22     according to the tip pool system.  You learned about

23     that because somebody told you, correct?

24           A    Yes, and I also ask Magalis about it.

25           Q    She was the one that notified you about

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

73

                            K. Fernandaz

1

2      the tip pool, correct?

3          A    Yes.

4          Q    Did you see any written notice of the tip

5      pool requirement?

6          A    No.

7          Q    What information about the tip pool did

8      you receive?

9          A    None.

10         Q    What did Magalis tell you about it?

11         A    I asked her about the tips and she told me

12     it's a pool and that's it.

13         Q    Did you have any other questions for her

14     after she answered you?

15         A    No.

16         Q    If you did, you would have been able to

17     ask Magalis, right?

18         A    Yes.

19         Q    There were also other people you could

20     have asked about questions at the restaurant, right?

21         A    Yes.

22         Q    Do you know how much or what percentage of

23     your tips you were required to contribute to the

24     pool?

25         A    I don't understand the question.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

74

K. Fernandaz

1

2      Q    Isn't it true that all of your tips have

3    to go into the tip pool?

4      A    Yes.

5      Q    Everybody that received tips were required

6    to put all of their tips into the tip pool, right?

7      A    Yes.

8      Q    Julio Perez was the captain or head server

9    at the restaurant, right?

10         MR. NUSSBAUM:  Can you translate?  She

11         gave you an answer to the question.

12         THE INTERPRETER:  I'm sorry.  Yes, she

13         did.

14     A    The position of captain does not exist in

15    that restaurant.

16     Q    How do you know that?

17     A    Because I worked there for three years and

18    that's why I'm sure, and I have proof and I have

19    pictures of when they started the pool and that

20    position does not exist.

21     Q    If I understand correctly based on the

22    pictures you took, you're understanding is there is

23    no such thing as a captain or head waiter, correct?

24     A    It doesn't exist.

25     Q    That understanding that it does not exist

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

75

                              K. Fernandaz

1

2      is based on the pictures that you took; yes or no?

3                 MR. NUSSBAUM:  Objection.

4            A    Yes, and because I worked three years

5      there and that position does not exist.

6            Q    I understand that's your testimony.  I'm

7      confirming how you know that.

8                      Other than your years of experience

9      working there and the pictures that you took, is

10     there any other basis for you to assert that this

11     position does not exist?

12           A    Exactly.

13           Q    Julio Perez served customers, correct?

14           A    Julio Perez is a manager.

15           Q    My question to you is not his job title.

16     Listen to my question and answer my question.

17                      My question again is Julio Perez

18     served customers at the restaurant, correct?

19           A    Yes.

20           Q    Julio Perez received tips from the tip

21     pool, correct?

22           A    Yes.

23           Q    You say that Julio Perez is a manager.

24     Why do you say that?

25           A    He doesn't wear a uniform.  He used

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

76

1                     K. Fernandaz

2     regular clothes.  He organized meetings, he opened

3     the meetings, he had fired some people, and also if

4     I work late or I didn't go to work one day, he will

5     give me the okay, he will give me the permission to

6     do it.  When Janos was not present, he was in charge

7     of absolutely everything.  He used to tell me the

8     specials from the kitchen and he enters the system.

9     When they application had a problem, he will call

10    and take care of it.  He will close the register at

11    the end of the day and take the report from all of

12    the waiters and waitresses.  He will complain -- he

13    will admonish us.  He will tell us when we did

14    something wrong.  The restaurant had a performance

15    and he signed it and Janos also signed it.  He could

16    also sit at a table and ask for food from the

17    kitchen, he could drink alcohol.  When a guest had a

18    problem, he would go to the table and he would

19    resolve the problem.  He would tell us how to dress,

20    he will print all the menus for the events for

21    parties and that's it.

22          Q     Thank you for the detailed answer.

23          A     Thank you.

24          Q     Isn't it true that Julio wears a vest?

25          A     He uses a blazer, he wears regular

77

                          K. Fernandaz

1

2    clothes.

3         Q    No one else wears the blazer, right?

4         A    No one else.  Only Janos.

5         Q    You also testified that Julio opens the

6    meetings and conducts them, right?

7         A    Him and Janos and when Janos is not there

8    he does it meaning Julio.  Even when Janos is there,

9    he participates in the meetings and he gives orders.

10   I also have a picture from my attorney that it says

11   that he's a manager on the application on the

12   computer system.

13             MR. NUSSBAUM:  The answer was the

14        application Toast.

15             THE INTERPRETER:  She says two.

16        A    The application is called Toast.

17        Q    My question focused on what happened at

18   the meetings.  What is it that Julio Perez says at

19   these meetings?

20        A    He makes a comment on the shoes to the

21   boys if they don't have dress shoes on.  He tells

22   them what he expects of their service and tells them

23   how many guests they are going to have that night.

24   If they have any problems with a client to let him

25   know because he will go and talk to the client.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

78

K. Fernandaz

1

2     They should do a good job, the VIPs table that they

3     are going to have that night.  All of the questions

4     that a manager will take care of.

5          Q    When you say all of the questions that a

6     manager will take care of that's in your opinion,

7     correct?

8          A    Yes.

9          Q    You said that Julio Perez fired people.

10    Did I hear that correctly?

11         A    Yes.  He had fired some people.

12         Q    Who did he fire?

13         A    Many of my coworkers.

14         Q    Do you have any names?

15         A    I don't remember, but I do have people

16    that could testify and give the names.

17         Q    Who?

18         A    If I question there is a lot of people

19    that work there and they saw that.

20         Q    Who saw it?

21         A    Coworkers that work with me.

22         Q    What are their names?

23         A    Walter, Laura, many.  They don't come to

24    my mind right now.

25         Q    Do you remember Walter's last name?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

79

1                   K. Fernandaz

2        A    No.

3        Q    To your knowledge is he still working at

4    the restaurant?

5        A    No.

6        Q    You know for a fact that he's no longer

7    working at the restaurant?

8        A    Yes.  100 percent.

9        Q    When was the last time you spoke to

10   Walter?

11       A    About three months ago.

12       Q    Did you discuss this case with him?

13       A    No.

14       Q    What about Laura, what is her last name?

15       A    I don't know.

16       Q    Is she still working at the restaurant?

17       A    No.

18       Q    When was the last time you spoke to her?

19       A    About a week ago.

20       Q    Did you discuss this case with her?

21       A    No.

22       Q    Janos was the one that fired you, correct?

23       A    Yes.

24       Q    During the meetings that Julio led, no one

25   was openly disciplined in front of everybody during

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

80

K. Fernandaz

1

2      the meetings, correct?  Withdrawn.  I'll move on.

3                      Do you have any records of the tip

4      pool?

5          A    From the tips -- you mean the tips every

6      night for every night?

7          Q    Yes.  Did you keep those?

8          A    Yes, yes.

9          Q    Did you produce all of those records to

10     your attorneys to give to us?

11         A    Yes.

12         Q    To your knowledge are there any records

13     that you gave to your attorneys that were not

14     produced to us?

15         A    I don't know.

16         Q    Other than the mandatory tip pool and the

17     tips that you ultimately received, did you otherwise

18     share it with anybody or you kept the full amount

19     you were given?

20             MR. NUSSBAUM:  Objection.

21         A    Sir, my position was a runner.  I don't

22     have any control on the system.  I only take the

23     plate and bring it to the table.  I don't know

24     anything about tips, I don't know anything about

25     checks, that's all.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

81

                              K. Fernandaz

1

2

3       Q    You did receive tips at the end of each

4   night, correct?

5       A    Yes, I received the tips from the pool.

6   (Whereupon, an off-the-record discussion was held.)

7       Q    Back on the record.  My question is after

8   you received your tips for the night, did you have

9   to give those tips to anybody else?

10      A    When I received tips at the end of the

11  week in my check from the pool.

12      Q    After you received those tips, you didn't

13  have to give it to anybody else, did you?

14      A    No.

15      Q    That's what I wanted to know.  Thank you.

16  Can you describe the tipping process at the end of

17  the night?

18      A    At the end of the night, Julio will enter

19  Toast and he will go to the list of employees and

20  that's when he would assign everyone's tips

21  according to the points.

22      Q    Including himself, correct?

23      A    Yes, including him.

24      Q    Can you describe the records or reports

25  that were used to figure out who gets how much?

82

K. Fernandaz

1

2      A     The pictures are there.  My attorney has

3     them.  You can look at it there.

4      Q     Is it fair to say that all the reports and

5     records came from Toast or was there some other

6     place?

7      A     They came from Toast.

8      Q     Only Toast, correct?

9      A     I don't know.  They did it from the

10    computer.  I don't know.

11     Q     There was no handwritten notes or anything

12    like that, right?

13     A     No.

14     Q     How long did the tipping process take

15    every night?

16     A     Sometimes they did it the next day.

17     Q     When did that happen?

18     A     When it was late.

19     Q     Okay.  Did you ever have a question about

20    the way the tip credit worked?

21     A     Yes.

22          MR. NUSSBAUM:  Objection.  Note my

23         objection to the last question, please.

24          MR. KATAEV:  Sure.

25     Q     When you had a question did you ask for

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

83

                        K. Fernandaz

1

2     clarification?

3          A    Yes.

4          Q    Who did you ask?

5          A    Janos.

6          Q    Did you ask him verbally or in writing?

7          A    On a writing.

8          Q    Would that be email or some other means?

9          A    I wrote to his phone.

10         Q    By text message, correct?

11         A    WhatsApp, yes.

12         Q    Was that the only time you ever had a

13    question?

14         A    No.  We also had meetings with Janos about

15    Julio because why was he receiving tips.

16         Q    That was verbal, correct?

17         A    Verbally.

18         Q    You said we.  Who is we?

19         A    With whoever was there at that moment.

20    The waiter, the people that worked there.

21         Q    Names?

22         A    The sames I mentioned before; Walter,

23    Laura, Raul, Ambrus.

24         Q    Can you spell Ambrus for the record,

25    please?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

84

K. Fernandaz

1

2         A    A-M-B-R-U-S.

3         Q    If I understand accurately, there was five

4    of you in the meeting with Janos, correct?

5         A    There were more.

6         Q    How many?

7         A    The whole floor. I don't remember the

8    amount.

9         Q    The whole floor on that particular day?

10        A    Yes.

11        Q    How many people worked on a particular

12   day?

13        A    A lot of people.  Maybe 30 people.

14        Q    What day or dates did this meeting occur?

15        A    I don't remember.

16        Q    Was it at the beginning of your

17   employment, the middle of your employment or at the

18   end of your employment?

19        A    Almost at the end and since Julio started

20   to be a manager.

21        Q    When is it that you claim Julio started to

22   be a manager?

23        A    When he started to work as a manager.  I

24   believe it was 2023.

25        Q    You don't remember what month in 2023?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

85

                          K. Fernandaz

1

2         A     No.

3         Q     Did you raise this issue when he became a

4    manager in 2023 or towards the end of your

5    employment in 2025?

6         A     Since he started.

7         Q     Was there only one conversation with

8    everybody or more than one conversation?

9         A     More than one conversation.

10        Q     Let's focus on the first conversation.

11   Can you tell me who said what to who and what the

12   result was?

13        A     We focused on that a manager should not

14   get tips and why is he working as a manager if he's

15   going to receive tips.

16        Q     What was his response?

17        A     Well, I'm going to talk to the owner

18   because that's the way it was set up and I need help

19   so that's why I'm accepting it.

20        Q     I see.  After you had that conversation --

21   the first conversation, it ended?

22        A     Yes.

23        Q     Let me clarify my question.  After Janos

24   gave you that answer, that conversation, that first

25   conversation ended, correct?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

86

                          K. Fernandaz

1

2      A    Yes.

3      Q    Because he told you you have to speak to

4  the owner.  Presumably you had another conversation

5  with him to find out what happened, right?

6      A    Yes.

7      Q    How long after the first conversation did

8  the second conversation occur?

9      A    A month.

10     Q    Who said what to who and what was the

11  result of the second conversation?

12     A    The same.  We talked about the same and it

13  ended the same way.

14     Q    He told you a second time I have to speak

15  to the owner?

16     A    Yes.

17     Q    Did there come a time when you brought it

18  up again and he had spoken to the owner and he had a

19  different answer for you?

20     A    No.

21     Q    Did you ever approach Rob or Marianna

22  directly about it?

23     A    No.

24     Q    Other than this question about Julio being

25  part of the tip pool, did you ever have any other

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

87

K. Fernandaz

1
2      question about the tip credit?

3          A     Yes.

4          Q     Tell me about that?

5          A     First there was a pool by points and then

6      they changed it to hours without consulting with us

7      and without giving us anything in writing that there

8      was that change.

9          Q     Can you explain in more detail about

10     points and hours how that affected things?

11         A     It used to be by points so that was it,

12     but then changed it four hours so if I worked four

13     hours and a coworker worked five hours, he got more

14     tips because he worked an extra hour.

15         Q     You had an objection to this?

16         A     I asked because we never received anything

17     in writing and they did it on their own without

18     asking the employees.  They just changed it and they

19     never told us.

20         Q     After you asked the question about the

21     change were you given an answer?

22         A     Yes.

23         Q     Who gave you that, was it Magalis?

24         A     Janos.

25         Q     What did he tell you?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

88

K. Fernandaz

1

2      A    My attorney has the answer.  I don't

3  remember right now so he can give it to you.

4          MR. KATAEV:  Can I have the question read

5      back again?

6  (Whereupon, the referred to question was read back

7                  by the reporter.)

8      Q    Katherine, I'm entitled to an answer to

9  the question as you sit here today about what your

10  knowledge is regardless of what you told your

11  attorney which by the way, I can't ask you because

12  it's privileged.

13          I need to know what Janos told you.

14  Can you please answer the question in light of that?

15      A    It's not what I sent to him.  He has a

16  picture of what I sent to him.

17      Q    My understanding of what you sent to Janos

18  was a text message and WhatsApp and you took a

19  screen shot and forwarded that to your attorney,

20  correct?

21      A    Yes.

22      Q    But that question was a particular

23  question about why you're paid for one week as

24  reported to you in one system was different than the

25  pay you actually received, right?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

89

K. Fernandaz

1

2      A    No.  I ask him why Julio was receiving

3      tips from the pool.

4      Q    In the text messages?

5      A    Yes, and also why they are paying hourly.

6      Two questions in one message.

7      Q    I'll represent to you based on my review

8      of the documents received in discovery that I don't

9      have those messages so I'm going to call for the

10     production of all your text messages exchanged with

11     Janos or any other person in management.  I will

12     follow up in writing.

13                    (Counsel Request.)

14                    Please tell me in response to your

15     question about the change to the tip pool with the

16     hours what was Janos's response?

17     A    His answer was that the policies of the

18     company have changed.

19     Q    Now you testified that on average you

20     received about $200 in tips a week.  My question to

21     you now is putting everything together that you

22     received for the week wages and tip, on average how

23     much did you receive every week?

24     A    $1,200 to $1,300.

25     Q    To your knowledge what was the lowest you

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

90

1                         K. Fernandaz

2      ever received in a week?

3            A     $700.

4            Q     You testified before that you generally

5      never worked more than 41 hours a week, correct?

6            A     Yes.

7            Q     If we took $700 a week and we divided it

8      by 41 hours, that would result in a regularly hourly

9      rate of $17.07, correct?

10               MR. KATAEV:  Let the record reflect that

11            I'm sharing on my screen the actual calculation

12            of 700 divided by 41 and it shows $17.07.

13           A     Yes.

14           Q     Is it fair to say that that's the way you

15     calculate your pay that you take the total you

16     receive and divide it by the total number of hours

17     you work?  You receive at least $17 an hour, right?

18               MR. NUSSBAUM:  Objection.

19           A     I didn't always work 41 or 40 a week.

20           Q     What was the most hours you worked in a

21     week?

22           A     It varied because I worked five days,

23     sometimes six days.  Sometimes I came in earlier,

24     sometimes I came in later.  I don't know.  I can't

25     calculate.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

91

                        K. Fernandaz

1

2          Q    Right now I'm not asking you to calculate.

3    I'm asking you what was the most number of hours you

4    worked in any given work to the best of your memory?

5          A    Forty-one.

6          Q    My math before was 700 divided by 41 is at

7    least $17.07, right?

8          A    Yes.

9          Q    Other than your complaints about Julio

10   being in the tip pool, did you have any other

11   complaints about your wages at the restaurant?

12         A    No.

13         Q    You received a check stub for every week

14   that you performed work at the restaurant, right?

15         A    Yes.

16              MR. KATAEV:  You want to take a quick

17         break?

18              MR. NUSSBAUM:  No.

19   BY MR. KATAEV:

20         Q    How often did you work more than 40 hours

21   in any given week?

22              MR. NUSSBAUM:  Objection.

23         A    I don't know.

24         Q    Did the hours --

25         A    Every two weeks, every three weeks.

92

                        K. Fernandaz

1

2      Q    Hours that are shown -- withdrawn.

3            The hours worked that were shown on

4      your paystub were accurate every week, correct?

5      A    I don't know because I got the check

6      without the stub.

7      Q    Did you ever look at the stub on the Toast

8      system online?

9      A    Yes, but I didn't understand because it

10     was very complicated.

11     Q    Separate from the paystubs themselves, did

12     you keep any records of the hours you worked at the

13     restaurant?

14     A    No, I didn't.

15     Q    Were you responsible for closing the

16     restaurant?

17     A    No.

18     Q    You were not responsible for opening

19     either, right?

20     A    No.

21     Q    The other bussers and runners, did they

22     have the same exact job as you?

23     A    The other runners, yes.  The bussers, no.

24     Q    At special events only certain runners

25     were selected to perform work for those events,

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

93

K. Fernandaz

1

2      correct?

3           A    No.

4           Q    Isn't it true that because you were one of

5      the top employees there, you did so well you got a

6      raise and you were always chosen to do special

7      events?

8           A    Yes, because I have more experience.

9           Q    Is it fair to say then because some people

10     have consistently less experience than you and

11     others that -- some were chosen for special events

12     consistently and others were not?

13          A    Yes, it's fair to say that.

14          Q    Some runners were never chosen to do

15     special events, right?

16          A    It's not -- that's not true.

17          Q    You're telling me that sometimes there

18     were special events and they had an inexperienced

19     runner perform that special event?

20          A    The runner that is on that schedule.

21          Q    What is your goal in this lawsuit?

22               MR. NUSSBAUM:  Objection.

23          A    I expect justice.

24          Q    What does justice mean to you?

25          A    That they would pay for the things they

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

94

1                          K. Fernandaz

2      did wrong and legal things that they did.

3           Q    Is justice revenge for your termination?

4           MR. NUSSBAUM:  Objection.

5           A    It's only for the discrimination and the

6      their -- the manager stole my tips and because of

7      all of that.

8           Q    When you say the money should be paid for

9      those what you refer to as violations of the law, is

10     that just for yourself?

11          MR. NUSSBAUM:  Objection.

12          A    I was only talking about me and my demand.

13          Q    If you were paid what you believe was the

14     money you're entitled to for your claim, would you

15     be happy with that and you would be done with this

16     case, correct?

17          MR. NUSSBAUM:  Objection.

18          A    No.

19          Q    Why not?

20          A    Because I want justice.  It's not only

21     money.

22          Q    Besides money how else would you get

23     justice?

24          MR. NUSSBAUM:  Objection.

25          A    Obeying the law.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

95

K. Fernandaz

1

2      Q    Okay.  So if you receive some sort of

3      commitment from the restaurant to obey the laws and

4      you got all your money, you would be done with this

5      lawsuit and it would be resolved, correct?

6           MR. NUSSBAUM:  Objection.

7      A    I don't care if they obey the law right

8      now because I don't work there anymore.  The only

9      thing I'm interested in is the problems I had when I

10     worked there and what they did to me.

11     Q    My question remains:  Assuming you reached

12     some sort of a resolution somehow and the restaurant

13     agrees to pay you what you're owed, you

14     individually, would that satisfy you and resolve the

15     lawsuit and move on with your life?

16          MR. NUSSBAUM:  Objection.

17     A    No.

18     Q    Why would that not satisfy you?

19     A    Because I want them to obey the law.

20     Q    I'll ask it again because I want to

21     clarify.

22          If they do obey the law, if you

23     achieve them obeying the law, the restaurant, and

24     got paid what you believe you're entitled to and

25     some agreement was reached, would that be sufficient

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

96

1                        K. Fernandaz

2      for you to resolve this case?

3              MR. NUSSBAUM:  Objection.

4      A    No.

5      Q    What would satisfy you such that you could

6      resolve this claim?

7              MR. NUSSBAUM:  Objection.

8      Q    Apart from money and obeying the laws what

9      else?

10              MR. NUSSBAUM:  Objection.

11      A    I'm looking for justice for what they did

12      to me.

13      Q    What does that mean?  What would justice

14      be for you?

15      A    Well, they discriminate me and --

16      Q    And what?

17      A    They harassed me and they harassed me and

18      they harassed me and they discriminate me.

19      Q    I understand you have claims, various

20      claims, but my question is what is the relief you're

21      looking for?  There is money, there is obeying the

22      law.

23              Is there anything else that you would

24      want in order to resolve?

25              MR. NUSSBAUM:  Objection.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

97

                              K. Fernandaz

1

2         A    I don't have a goal, I only want

3    everything to be in order.  Whatever I'm demanding I

4    want that to be done and when all of that is done

5    then I'll be happy.

6         Q    So fair to say you don't know what you're

7    demanding?

8              MR. NUSSBAUM:  Objection.

9         A    Yes, I know what I'm demanding that's why

10   we are having this testimony today.

11        Q    We are here because you filed a lawsuit

12   and this is your case and that's why we are having

13   this deposition today, correct?

14        A    I said it five times already.

15        Q    My question is:  Besides money and obeying

16   the law, is there anything else that you would need

17   to resolve this case?

18              MR. NUSSBAUM:  Objection.  Counsel, she

19              answered this question at least five times and

20              it's on the record.  You're badgering her.  I'm

21              going to instruct her not to answer.  You can

22              run to the court.  The record is very clear how

23              many times you've asked her the same question.

24              You may not like her answer.

25              MR. KATAEV:  Your witness is evasive and

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

98

1                          K. Fernandaz

2           is refusing to answer the question.

3                MR. NUSSBAUM:  You don't get to keep

4           asking the question over and other.

5                MR. KATAEV:  I can if she's evasive.  I'm

6           happy to get the judge on and have him order

7           her to answer the question.

8                MR. NUSSBAUM:  She's trying her best to

9           answer your question.  It's a completely

10          improper question.  You keep asking improper

11          questions.

12               MR. KATAEV:  She has not answered my

13          question.  When she answers my question, I'll

14          move on.

15               Will you please answer my question?

16               MR. NUSSBAUM:  Objection.

17          A    I want them to pay for the harassment, for

18     the discrimination, for what they did with my tips

19     that they stole them, I want them to pay for all of

20     my suffering.  That's what I want.

21          Q    Understood.  If you receive all of those

22     and obeying the law, that would be sufficient for

23     you to resolve this case, correct?

24               MR. NUSSBAUM:  Objection.

25          A    If they obey the law, if all my demands

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

99

1                        K. Fernandaz

2      are filled, then I'll talk to my attorney and I will

3      decide if I'm done with the case.

4           Q    Okay, that's fair enough.

5           MR. KATAEV:  Give me a second.  I'm trying

6           to short circuit the deposition a little bit.

7           MR. NUSSBAUM:  Are we on the record or

8           off?

9           MR. KATAEV:  We can stay on.  I'll be

10          brief.

11          MR. NUSSBAUM:  Okay.

12     BY MR. KATAEV:

13          Q    After any of your complaints were made to

14     management, was there ever a change made as a result

15     of those complaints?

16          A    No.

17          Q    After your employment with the restaurant

18     ended, did you file any complaints with any

19     government agency against them?

20          A    No.

21          Q    You reached out to attorneys to get advice

22     about your employment while you were still an

23     employee of the restaurant, correct?

24          MR. NUSSBAUM:  Don't answer that.

25          Q    In answering this question I'm not asking

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

100

K. Fernandaz

 1    you to divulge communications.  I'm only asking when

 2    you reached out to an attorney, the date.  Was it

 3    during your employment or after?

 4            MR. NUSSBAUM:  Don't answer.  I'm

 5        instructing the witness not to answer it.  I'm

 6        happy to read the question back.

 7        Q    Did you contact your attorney in this case

 8    while you were still employed; yes or no?

 9        A    No.

10        Q    Did you contact your attorney after your

11    employment ended with the restaurant?

12        A    After.

13        Q    How did you find your attorneys?

14        A    Internet search.

15        Q    After you separated from employment with

16    the restaurant, did you speak to any of your former

17    employees and colleagues about this case?

18            MR. NUSSBAUM:  Objection.

19        A    No.

20        Q    Did you ever make any social media posts

21    about the restaurant during or after your employment

22    from the restaurant?

23        A    No.

24        Q    Do you have any sense of the monetary

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

101

1              K. Fernandaz

2    damages that you're seeking for this wage and hour

3    case?

4              MR. NUSSBAUM:  Objection.

5         A    No.

6              MR. KATAEV:  Okay.  I think now is a good

7         time to take a five minute break.  We can get

8         back on at 3:10 and I'll begin doing exhibits.

9         (Whereupon, a short recess was taken.)

10   BY MR. KATAEV:

11        Q    I'm going to place up on the screen,

12   Katherine, what's marked Defendant's Exhibit 2.  It

13   is a compilation of records produced by my client.

14              Katherine, are you there?

15   (Defendant's Exhibit 2, Marked for Identification.)

16        A    Yes.

17        Q    Do you see the exhibit?

18        A    Yes.

19        Q    Is this something you recognize?

20        A    No.  I only see it says dishwasher.

21        Q    You have never seen this document before,

22   correct?

23        A    Correct.

24              MR. KATAEV:  For the record, that document

25         was a pdf of a spreadsheet with the company,

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

102

1                        K. Fernandaz

2          location, department, job, last name, first

3          name, employee number, and compensation

4          details.

5               I'm showing you what will be marked as

6          Defendant's Exhibit 3.  It's a sampling of your

7          paystubs and it's ECF docket entry 50-2 for the

8          record.

9          Q    Do you recognize these documents,

10     Katherine?

11     (Defendant's Exhibit 3, Marked for Identification.)

12          A    Yes.

13          Q    This document consists of two pages,

14     correct?

15          A    Yes.

16               MR. KATAEV:  Off the record.

17     (Whereupon, an off-the-record discussion was held.)

18          Q    On the top left that's your name and

19     address, correct?

20          A    Yes.

21          Q    You lived at this address ever since you

22     first started working at Osteria La Baia, correct?

23          A    You work at this address, you said?

24          Q    Worked at the restaurant?

25          A    Yes.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

103

1                           K. Fernandaz

2           Q    It says on the right here that your pay

3      rate is $10 per hour, correct?

4           A    Yes.

5           Q    Consistent with your testimony before,

6      this check shows approximately $1,100 which is the

7      same amount that you testified you typically

8      received, right?

9           A    Yes.

10          Q    That was under the paycheck summary.

11     Under earnings over here there are four categories

12     of amounts that you received totaling that $1,100,

13     correct?

14          A    Okay, yes.

15          Q    Yes, you see that?

16          A    Yes, yes.

17          Q    Do you know the difference between the

18     three forms of tips listed here; cash gratuities

19     owed, gratuity, and tips owed?

20          A    Yes.

21          Q    Can you explain what each one means,

22     please?

23          A    It says cash gratuities owed it's on the

24     check but they used to give it to me in cash.

25          Q    What about the second one?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

104

K. Fernandaz

1

2      A    I don't know.

3      Q    I'm assuming based on that high amount

4  that tips owed refers to the credit card tips,

5  correct?

6      A    Yes.

7      Q    If I told you that tips was gratuities for

8  special events, would that refresh your recollection

9  or do you believe that to be the case?

10     A    I don't know.  I don't know.  I don't know

11 because it was a pool and I got paid extra to work

12 on special events.

13     Q    On the second page of the paystub for each

14 paystub there is this additional information box,

15 correct?  There is a separate section labeled

16 additional information and there is a box with

17 information, correct?

18     A    Yes.

19     Q    This box tells you that you're being paid

20 $15.50 an hour, correct?

21     A    Yes.  Okay, yes.  I can see it says

22 $16.50.

23     Q    For this particular week you were paid an

24 hourly rate of $15 with a tip credit of a $1.50?

25     A    Okay.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

105

                          K. Fernandaz

1

2        Q    I'm asking; is that correct?

3        A    I never received any document that I was

4   paid $15 an hour.

5        Q    You're saying you never received this

6   document that I'm holding on the screen here?

7        A    That's one of my checks, but I didn't

8   receive any documents stating that I was making $15

9   an hour.

10       Q    Isn't it true that you're such a great

11  employee that your chef recommended for a second

12  time you get a raise and you got a raise from $12.50

13  to $15?

14            MR. NUSSBAUM:  Objection.

15       A    They never paid me $15.  They told me

16  about it because they left me in charge of the whole

17  kitchen and the special events, but they never paid

18  me $15.

19       Q    Your testimony the paystub is false and

20  inaccurate?

21            MR. NUSSBAUM:  Objection.

22       A    They never paid me at $15.

23       Q    You printed the paystub on June 5, 2025 in

24  the afternoon, correct?

25       A    No.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

106

                        K. Fernandaz

1

2       Q    What does this indication with the date

3   and timestamp mean to you on the bottom of the first

4   pay of the stub?

5           MR. NUSSBAUM:  Objection.

6       A    The only thing I can tell you is I never

7   got paid at $15.

8       Q    My question is not that.  My question is

9   did you or did you not print this paystub on June 5,

10  2025 at 2:54 p.m.?

11      A    I told my attorneys.  I don't know if they

12  printed.  I never printed anything.

13      Q    Without telling me any conversations you

14  had with your attorneys, did you provide your

15  attorneys with the user name and password to log

16  into Toast?

17      A    I gave him access.

18      Q    Understood.

19          MR. KATAEV:  Let the record reflect that

20          we were discussing pages one and two of

21          documentary of 6-2.  I'm going to scroll all

22          the way to the bottom of page 34 and 33.  I'm

23          not going to have anymore questions about this

24          exhibit.

25              Let the record reflect I'm placing up on

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

107

K. Fernandaz

1

2          the screen what will be marked as Defendant's

3          Exhibit 4.

4     (Defendant's Exhibit 4, Marked for Identification.)

5               It's a compilation of event records

6     filed as ECF documentary 50-1.

7          Q    I'm going to ask you questions about some

8     of the documents in this compilation.

9                Katherine, do you recognize this

10    document?

11         A    Yes.

12         Q    What is this document?

13         A    It's from a party.  It's about a party.

14         Q    In the course of performing your duties at

15    the restaurant, you have come across documents such

16    as this, correct?

17         A    Yes.

18         Q    In the course of your doing that work, you

19    notice that the special event has an 18 percent

20    gratuity charge and a 3 percent service charge,

21    correct?

22         A    No.

23         Q    To your knowledge this contract was given

24    to the customer, correct?

25         A    Yes.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

108

K. Fernandaz

1

2      Q    If you were a customer reading this, what
3  would you understand 18 percent gratuity and
4  3 percent service charge to mean?
5      A    That I had to pay 18 percent for tips and
6  3 percent for the service that they do at this
7  event.
8      Q    Would you understand that 18 percent goes
9  to the employees and 3 percent goes to the
10 restaurant?
11     A    Yes.
12     Q    That's commonsense, right?
13         MR. NUSSBAUM:  Objection.
14     A    Yes.
15         MR. KATAEV:  Let the record reflect we
16     were looking at page one of this exhibit.  We
17     are now looking at page seven.
18     Q    Do you recognize this document, Katherine?
19     A    No.
20     Q    What about this document referring to page
21 14?
22     A    No.
23     Q    If I represented to you that this is a
24 copy of a receipt printed from the Toast system at
25 the restaurant would that refresh your recollection?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

109

K. Fernandaz

1

2      A    No.  It doesn't refresh my memory.

3      Q    You go to restaurants yourself, don't you?

4      A    Yes.

5      Q    When you go to restaurants you ask for the

6    check so it could be paid, correct?

7      A    Yes.

8      Q    If you received this particular check and

9    you saw an admin fee 3 percent with the amount and

10   the 18 percent gratuity with the amount, would you

11   have the same understanding as you did with the

12   event contract?

13     A    Yes, but when I go to a restaurant to eat,

14   I'm not paying for an event, just a restaurant to

15   eat.

16     Q    I understand, but if you did do an event

17   and you saw these charges, you would understand them

18   the same way as you did the event contract, right?

19         MR. NUSSBAUM:  Objection.

20     A    I understood that 20 percent was our tip.

21   That's what they always told us.  We never saw the

22   contract like you showed me.  They only gave us a

23   sheet with the food that was going to be served and

24   they never showed us how much tip they have to pay

25   for that party.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

110

1                        K. Fernandaz

2          Q    I understand that you're telling me about

3     your experience as an employee at the restaurant,

4     but my question was based on your experience being a

5     customer at a different restaurant where you didn't

6     work?

7          A    Yes.

8          Q    You would understand it the same way,

9     correct?

10         A    Yes.

11              MR. NUSSBAUM:  Objection.

12         Q    I'm going to place up on the screen what

13    will be marked as Defendant's Exhibit 5.

14    (Defendant's Exhibit 5, Marked for Identification.)

15                   I'll represent to you it's 30 pages

16    of a pay history summary report at the restaurant.

17                   Do you recognize this document?

18         A    No.

19              MR. NUSSBAUM:  Are there Bates numbers?

20              MR. KATAEV:  No, there are no Bates

21         numbers for this, but this was produced by the

22         Defendants to you as part of the class

23         production precertification discovery as you

24         called it.  I'm going to proceed with my

25         deposition.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

111

                          K. Fernandaz

1

2    BY MR. KATAEV:

3         Q    You have never seen this before?

4         A    I never saw that.

5         Q    You didn't see it before you left your

6    employment while you were working there, correct?

7         A    No.

8         Q    You've never seen this after your

9    employment ended?  For example, your attorneys

10   sharing it with you, correct?

11        A    No.

12        Q    I'm going to show you what we will mark as

13   Defendant's Exhibit 6.  I'll represent to you that

14   this is what is referred to as the initial

15   disclosures and I'll represent that your attorneys

16   filed it.

17   (Defendant's Exhibit 6, Marked for Identification.)

18             MR. NUSSBAUM:  What was the

19        representation?

20             MR. KATAEV:  That Plaintiff's attorneys

21        filed this.

22             MR. NUSSBAUM:  You said filed this.  We

23        didn't file it.

24             MR. KATAEV:  I'll represent to you that

25        the Plaintiffs served this document on the

112

1                         K. Fernandaz

2            Defendants.

3       BY MR. KATAEV:

4            Q    Do you recognize this document?

5            A    Yes.

6            Q    What is this document, to your knowledge?

7                 MR. NUSSBAUM:  Objection.

8            A    I recognize it.

9                 MR. NUSSBAUM:  Translate her answer.

10           A    Yes, I recognize it.

11           Q    Can you describe what this is?

12           A    If it's translated, yes, because it's in

13      English.

14           Q    Do you know anything about what initial

15      disclosures are?

16                MR. NUSSBAUM:  Objection.

17           A    Yes, I do.

18           Q    Can you describe what this document is?

19                MR. NUSSBAUM:  Objection.

20           A    It's the presentation of my demand.

21           Q    Do you know that this refers to the

22      caption of the case?  I highlighted it.

23                MR. NUSSBAUM:  Objection.

24           A    Yes.

25           Q    Do you recognize this to be the caption

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

113

                              K. Fernandaz

1

2      because it has your name on it?

3              MR. NUSSBAUM:  Objection.

4      A     Yes, because an attorney showed me

5      already.

6      Q     Were you shown the document in order to

7      approve it?

8              MR. NUSSBAUM:  Objection.

9      A     They sent it to me.  That's it.

10     Q     Did you notice that the case number is

11     incorrect on this document?

12     A     I had no idea.

13     Q     In this initial disclosure document, your

14     attorneys listed numerous witnesses that they

15     believe has information related to this case.

16             Do you recognize this witness?

17     A     Yes.

18     Q     Are you aware that your attorneys did not

19     notice a deposition of this witness?

20     A     I have no idea.

21             MR. KATAEV:  Let the record that the

22             question I'm asking is about number three which

23             says Julio Perez, manager.  I'm done with this

24             exhibit.

25             Let the record reflect that I'll be

114

1                          K. Fernandaz

2           placing up on the screen what will be marked as

3           Defendant's Exhibit 7.  I'll represent to you,

4           Katherine, that these are responses to

5           interrogatories.

6      (Defendant's Exhibit 7, Marked for Identification.)

7           Q    Do you recognize this document?

8           A    What is this.

9           Q    I'll represent to you that these are

10     responses to our first set of interrogatories.

11     Based on this representation do you recognize this

12     document?

13          A    Yes.

14          Q    What is this document?

15               MR. NUSSBAUM:  Objection.

16          A    The same, the questions.

17          Q    Can you give me some more details?

18          A    They were interrogatories.

19          Q    In this document who asked the questions

20     and who answered them?

21          A    I have no idea.  I can't read.

22          Q    Okay.  Without telling me about

23     conversations you may have had with your attorneys

24     about any particular document, was there a time when

25     you were asked questions and you had to provide

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

115

1                        K. Fernandaz

2    answers to be placed in these responses?

3          A    Yes.

4               MR. KATAEV:  Let the record reflect that

5          I'm placing up on the screen what will be

6          marked as Defendant's Exhibit 8.

7    (Defendant's Exhibit 8, Marked for Identification.)

8          Q    I'll represent to you that these are

9    redacted tip records that they were produced by the

10   Defendants to your attorneys showing the amount of

11   tips that you received.

12               Do you recognize this document?

13               MR. NUSSBAUM:  Objection.

14         A    Everything is black.  What am I going to

15   see?

16         Q    There is a space in between the two black

17   boxes where it shows 1970.  Was that your employee

18   number?

19         A    That's a payroll number.

20              MR. KATAEV:  Let the record reflect we are

21         looking at page one.  I'm going to scroll down

22         to a page that's more clear.  Let the record

23         reflect we are looking at page two where it

24         shows the category of information and then the

25         information.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

116

1                         K. Fernandaz

2          Q    Do you see here it says employee number

3     and then 1970 was your number?

4          A    Yes.

5               MR. NUSSBAUM:  Counsel, I don't see where

6          it says number.  You said it says employee

7          number.

8               MR. KATAEV:  I made an assumption that

9          it's employee number.

10              MR. NUSSBAUM:  You said it says employee

11         number, that's what you said.

12              MR. KATAEV:  I correct it.

13    BY MR. KATAEV:

14         Q    The second column says employee and it

15    shows your name, your first name?

16         A    Yes.

17         Q    I need a verbal answer, Katherine.

18         A    Yes, yes.

19         Q    Under job it says food runn with two n's

20    which means food runner, correct?

21         A    Yes.

22         Q    Then it says hours worked with the k cut

23    off which means probably means hours worked and

24    145.51, correct?

25         A    Yes.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

117

K. Fernandaz

1

2      Q    You can't work 145 and a half hours in one
3      week, right?

4            MR. NUSSBAUM:  Objection.

5      A    I don't see what.  The document is all
6      black and I don't know what it's all about.

7      Q    You don't recognize this document at all
8      and you have never seen it up until now, right?

9      A    I do recognize my employee number and my
10     name, but the 145.51 that you're talking about I
11     have no idea.  That was the manager that was in
12     charge of the payroll and the hours.  I don't know
13     anything about that.

14     Q    You don't think that this is possibly a
15     monthly report of your tips; could that be the case?

16     A    I have no idea.

17     Q    Okay.  I'm going to present to you what
18     will be marked as Defendant's Exhibit 9.

19     (Defendant's Exhibit 9, Marked for Identification.)

20           I'll represent to you that it's the
21     employee handbook.  Do you recognize this document?

22     A    No.

23     Q    One question on this.  The last page that
24     I'm showing now, page 53, it has handbook
25     acknowledgment with at space for your signature.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

118

                          K. Fernandaz

1                         K. Fernandaz

2                    Do you see that?

3        A     Yes.

4        Q     Are you saying you never signed this?

5        A     Never.

6        Q     Okay.  I'm placing up on the screen what

7    will be marked as Defendant's Exhibit 10.

8    (Defendant's Exhibit 10, Marked for Identification.)

9              I'll represent to you that this is a

10   corrective action record; do you see that?

11       A     That document is not an action.  It's a

12   performance record that is signed by the managers

13   Julio and Janos.  This was a meeting that we had to

14   attend and I said I couldn't attend.  As you can see

15   my signature is not there.

16       Q     Other than being issued this record which

17   you refused to sign, was there any disciplinary

18   action taken against you for your failure to attend

19   the meeting?

20       A     No.  I spoke to them and I told them that

21   unfortunately I wasn't going to be able to attend

22   because I had to be with my daughter and they said

23   it was okay.  I told Julio, the manager, and as you

24   can see his signature is at the bottom of the

25   document and I didn't sign it because I was okay,

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

119

1                         K. Fernandaz

2      they had given me permission when I told them I

3      couldn't attend.

4           Q    I'm going to share with you what will be

5      marked as Defendant's Exhibit 11.

6      (Defendant's Exhibit 11, Marked for Identification.)

7                     I'll represent to you that this is

8      your May 19, 2025 termination letter.

9                     Do you see that?

10          A    I never received that.

11          Q    This document on the bottom left is signed

12     by Janos, correct?

13          A    I can't see it.  I can't see.  Okay.  It

14     says, Janos, general manager.  There is no

15     signature.

16          Q    Are you saying someone other than Janos

17     terminated you?

18                MR. NUSSBAUM:  Objection.

19          A    It was Janos and I asked him for the

20     letter for my termination letter and I never

21     received it.  I have proof and I have pictures.

22          Q    Were you told it was in the mail?

23          A    I asked him to send it on my email and he

24     didn't want to so I never received it.

25          Q    He never told you that it would be mailed

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

120

1                      K. Fernandaz

2    to you, did he?

3         A    I never received it.  Never had an answer

4    for that.

5         Q    Give me a second.  I don't have anymore

6    questions on this exhibit.

7                   Let go to Defendant's Exhibit 12.

8    I'll represent to you this is the original complaint

9    filed in this case.

10   (Defendant's Exhibit 12, Marked for Identification.)

11        A    Yes.

12        Q    Do you recognize this document?

13        A    Yes.

14        Q    Did you read this document before it was

15   filed?

16        A    Yes.

17        Q    I'm going to read to you the first

18   paragraph and I would like to ask you some questions

19   about it, okay?

20        A    Okay.

21        Q    "Osteria La Baia is a New York City

22   hotspot that is famously known for being frequented

23   by New York City Mayor Eric Adams.  In fact its

24   owners, convicted felons Robert Petrosyants and

25   Marianna Shahmuradyan are good friends with Mayor

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

121

                          K. Fernandaz

1

2      Adams."

3                  Do you recognize these sentences that

4      I just read to you?

5          A    Yes.

6          Q    You knew that Mr. Petrosyants was a

7      convicted felon?

8          A    Yes.

9          Q    How did you know that?

10         A    Because everything is on the internet.

11         Q    You researched that yourself and found

12     out?

13         A    Yes.

14         Q    Did you also research that Marianna is a

15     convicted felon?

16         A    No.

17         Q    Who did you tell that Marianna was a

18     convicted felon?

19         A    I wasn't talking about Marianna.  I was

20     talking about Robert to be a convicted felon.

21         Q    Did you ever tell anyone that Marianna is

22     a convicted felon?

23         A    No.

24         Q    At the top of the first page of the

25     complaint in the caption there is a phrase that

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

122

1                         K. Fernandaz

2     says, FLSA Collective Action and Rule 23 Class

3     Action.

4                    Do you see that?

5          A    Yes.

6          Q    Do you know what a class action means?

7               MR. NUSSBAUM:  Objection.

8          A    It's a demand, a collective demand.

9          Q    What does it mean to have a collective

10    demand?

11         A    That is for everyone that was included for

12    the fee for that.

13         Q    Is that a goal that you have in this

14    lawsuit to have everyone involved?

15         A    No.  I want everybody to receive what they

16    were robbed from.

17         Q    Why do you want everybody to receive that?

18         A    Because everyone was robbed of it the same

19    as they did with me.

20         Q    If I told you it would take a very long

21    time for everybody to receive it but you could

22    receive yours sooner would you want that instead?

23         A    I don't understand the question.

24         Q    I'm saying doing a class action is going

25    to take a very long time.  If you could get your

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

123

K. Fernandaz

1

2      money for yourself sooner wouldn't you prefer that?

3              MR. NUSSBAUM:  Objection.

4      A      I don't mind.  I have all the time in the

5      world.

6      Q      Okay.  Look at paragraph 29 of your

7      complaint.  It says that your paystubs contain

8      incorrect information about your correct rate of pay

9      and that in 2024, your wage statements stated both

10     that you were paid $15 per hour and $11 per hour; do

11     you see that?

12     A      Yes.

13     Q      But if I recall your testimony correctly,

14     earlier today you said you were only paid either ten

15     per hour or $12.50 per hour, correct?

16     A      First ten and then $12.50.

17     Q      You specifically testified repeatedly that

18     you were never paid $15 an hour and when I asked you

19     if you were ever paid $11 an hour you said you were

20     not, right?

21             MR. NUSSBAUM:  Objection.

22     A      They pay me $12.50 and ten when I started

23     and then they raised it.  Simple.

24     Q      They raised it to what?

25     A      $12.50.  I said that more than ten times.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

124

K. Fernandaz

1

2      Q     Okay, I appreciate it.

3              This allegation here in paragraph 29

4      is false, correct?

5              MR. NUSSBAUM:  Objection.

6      A     Yes.

7      Q     Focusing on what will be marked as

8      Defendant's Exhibit 13, Docket Entry 2 in the case.

9      Civil cover sheet.  Do you recognize this document.

10     (Defendant's Exhibit 13, Marked for Identification.)

11     A     Can you make it bigger?

12     Q     Let the record reflect I zoomed in to the

13     maximum.  I want to know if you recognize the

14     document?

15     A     Yes.

16     Q     Can you explain what it is?

17             MR. NUSSBAUM:  Objection.

18     A     It's a plan of my attorney, the defense.

19     Q     Okay.  Were you aware there was an initial

20     pretrial conference scheduled in this case by the

21     judge?

22     A     No.

23     Q     I'm showing you what will be marked as

24     Defendant's Exhibit 14.  It's a one-page Notice of

25     Appearance Bates-stamped Docket 8 -- not

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

125

1                        K. Fernandaz

2    Bates-stamped.

3                    Do you know who Irene Sinayskaya

4    S-I-N-A-Y-S-K-A-Y-A is?

5         A    No.

6         Q    You never heard of her name, correct?

7         A    No.

8         Q    Okay.  I'll place up on the screen what

9    will be marked as Defendant's Exhibit 14.  It's ECF

10   Docket 311.  Do you recognize this document.

11   (Defendant's Exhibit 14, Marked for Identification.)

12        A    No.

13        Q    Do you know who Javier Molina is?

14        A    It sounds familiar, but I don't know.  I

15   can't remember that name.

16        Q    What if I represented to you that he's a

17   colleague of yours that joined the lawsuit.  Does

18   that refresh your memory?

19        A    I don't remember.  I don't remember his

20   name.

21        Q    Okay.  Did you work together with

22   Mr. Molina?

23        A    The name sounds familiar but I can't

24   really remember.

25        Q    At Adrian Montor-Teran's deposition,

126

K. Fernandaz

1

2      Adrian testified that Javier Molina's name is

3      Patricio.  Does that refresh your memory?

4            A    I believe he was a busser.

5            Q    Do you recall working with him?

6            A    Yes.

7            Q    Did you maintain contact with him while

8      you worked at the restaurant?

9            A    No.

10           Q    Did you exchange phone numbers with him

11     while you worked at the restaurant?  Was he one of

12     the 20 that you exchanged phone numbers with?

13           A    No.

14           Q    To your knowledge how did Javier or

15     Patricio Molina find out about this lawsuit?

16           A    I don't have an idea.

17           Q    To your knowledge did any of your

18     attorneys contact any of the employees at the

19     restaurant?

20           A    I'm not informed about that.

21           Q    Did you ever provide any contact

22     information of any employees you had the contact

23     info of to your attorneys?

24           A    No.

25           Q    Your testimony is that after you filed

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

127

K. Fernandaz

1

2      your lawsuit in May of 2025, approximately a month

3      later, somehow someway Mr. Molina learned about this

4      lawsuit all on his own and filed this consent form,

5      the same exact consent form that you filed?

6           A    Yes, miracles exist.

7           Q    Okay.  You were not in any way responsible

8      for organizing any of the employees to join this

9      lawsuit, correct?

10          A    Never.

11          Q    If you were called upon to engage in such

12     organization to help all the employees join this

13     lawsuit would you take upon that task?

14               MR. NUSSBAUM:  Objection.

15          A    With a lot of pleasure.

16          Q    You haven't done anything like that yet?

17          A    No.

18          Q    Defendant's Exhibit 15 will be marked with

19     the single page ECF Documentary 12.

20               Do you recognize this document?

21     (Defendant's Exhibit 15, Marked for Identification.)

22          A    I know who the person is, but I never saw

23     the document.

24          Q    Who is this person?

25          A    Adrian Montor-Teran was a worker at

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

128

K. Fernandaz

1
2       Osteria La Baia, he was a busser.

3            Q    He worked at the restaurant with you?

4            A    Yes.

5            Q    Did you socialize with him outside of the

6       workplace?

7            A    No.

8            Q    Was he one of the 20 or so employees you

9       exchanged phone numbers with?

10           A    No.

11           Q    To your knowledge how is it that Adrian

12      became part of this lawsuit?

13           A    Another miracle of God.

14           Q    You realize that Adrian's last name is not

15      Montor-Peran, correct?

16           A    I wasn't informed about that.

17           Q    You realize his real name is Adrian

18      Montor-Teran with a t, correct?

19           A    To tell you the truth I'm not interested.

20           Q    You're not interested in knowing about the

21      other collective action members in this case?

22                MR. NUSSBAUM:  Objection.

23           A    I'm interested in that, but what I'm not

24      interested is that if his name is written with a p

25      or a t.

129

                          K. Fernandaz

1

2       Q    Were you the one that provided this

3    incorrect spelling of his name to your attorneys?

4            MR. NUSSBAUM:  Objection.  Don't answer

5         it.  Don't answer.

6            MR. KATAEV:  Did you finish interpreting

7         the question and the instruction not to answer?

8            MR. NUSSBAUM:  It doesn't matter.

9            THE INTERPRETER:  I did it after I asked

10        the question.

11           MR. NUSSBAUM:  Four times today you tried

12        to get information that is -- that you're not

13        entitled to under attorney/client privilege.

14           MR. KATAEV:  We are marking this for a

15        ruling and I'm going to move for sanctions

16        because something fishy is going on here.  We

17        will deal with that later.

18                     (Marked for ruling.)

19    BY MR. KATAEV:

20        Q    Let the record reflect I have placed up on

21    the screen Defendant's Exhibit 16.  ECF Docket Entry

22    13 in this case.  Do you recognize this document?

23    (Defendant's Exhibit 16, Marked for Identification.)

24                 Take your time to review it.

25           MR. NUSSBAUM:  What is the question?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

130

K. Fernandaz

1

2      Q     Do you recognize this document?

3            MR. NUSSBAUM:  Thank you.

4      A     I don't know what this is.  I don't

5     remember.  I don't recognize it.

6      Q     To your knowledge was the complaint in

7     this case ever amended?

8      A     I'm not informed about that.

9      Q     I'm sharing on the screen what will be

10    marked as Defendant's 18, ECF Docket Entry 15.

11    (Defendant's Exhibit 18, Marked for Identification.)

12            I'll represent to you that this is a

13    proposed scheduling order.

14            Does this document look at all

15    familiar to you?

16            MR. NUSSBAUM:  Objection.

17            THE INTERPRETER:  If I could translate it,

18         but I don't know what to translate to her.

19            MR. KATAEV:  Lets translate Civil Case

20         Management Plan Scheduling Order.  Base on that

21         translation and the title of this document are

22         you familiar with this document?

23      A    You presented me with 1,000 documents and

24    I can't recognize it.  It's a lot of information for

25    me all together at one time.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

                                                                131

                            K. Fernandaz

1

2          Q    So are you saying you definitely haven't

3     seen this document or you don't remember, which one?

4          A    I can't remember if I saw it.

5          Q    Fair enough, I understand.

6               Do you have any recollection about a

7     joint letter that was submitted to the court on

8     September 4, 2025?

9               MR. NUSSBAUM:  Objection.

10         A    I'm not informed about that.

11         Q    Do you have any knowledge there existed a

12    discovery dispute about class actions and collective

13    actions documents in this case that was later

14    resolved?

15         A    I didn't know.

16         Q    Are you aware that on October 28th, a

17    dispute arose about depositions in this case and

18    when they would be scheduled?

19         A    You mean about this testimonies?

20         Q    Not particularly about your deposition.

21    More about the Defendants depositions.

22         A    No, I have no idea.

23         Q    Are you aware that I am not and my firm is

24    not the same attorneys that previously represented

25    the Defendants?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

132

                            K. Fernandaz

1

2        A    I don't care.

3        Q    Did you know one way or the other?

4        A    I don't care.  I don't care.  The only

5    thing I want to do it resolve this.  I don't care.

6        Q    Okay.  You're saying you don't care about

7    this case?

8             MR. NUSSBAUM:  Objection.

9        A    I don't care about that question you asked

10   me.

11       Q    About what attorney is representing the

12   Defendants, right?

13       A    Yes, about the lawyer.

14       Q    Are you aware that in the middle of

15   November, the Defendants asked for an extension of

16   time to complete discovery?

17            MR. NUSSBAUM:  Objection.

18       A    Yes.

19       Q    Do you know what the judge decided with

20   that request?

21            MR. NUSSBAUM:  Objection.

22       A    No.

23       Q    Were you aware that the Defendants sought

24   for you to appear for your deposition in person

25   instead of virtually?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

133

                        K. Fernandaz

1

2       A    Yes.

3       Q    Did you have an objection to appearing in

4   person for your deposition?

5       A    No.

6       Q    If you were called upon to appear for the

7   deposition in person you would have done so?

8            MR. NUSSBAUM:  Objection.

9       A    I don't think because I work a lot.

10      Q    Okay.

11           THE INTERPRETER:  She needs to use the

12           bathroom.

13           MR. KATAEV:  Is five minutes enough?

14        (Whereupon, a short recess was taken.)

15  BY MR. KATAEV:

16      Q    Katherine, are you aware that yesterday a

17  motion to dismiss was filed in this case?

18      A    No.

19           MR. KATAEV:  For the record it's 4:40.

20           I'm done with all my questions.  I have another

21           line of questions to go through.  We should be

22           done around 5:00, hopefully before.

23      Q    You said you were never deposed before.

24  Did you ever provide any testimony before in any

25  hearing or court as a witness or as a party?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

134

                            K. Fernandaz

1

2      A    No.

3      Q    Have you ever used a different name, email

4  address or identity when communicating with Osteria

5  La Baia about any issue that you're suing over?

6      A    No.

7      Q    Prior to filing the lawsuit against the

8  restaurant, to your knowledge was any demand letter

9  or other letter sent in an effort to try and resolve

10  the case before moving forward with the lawsuit?

11           MR. NUSSBAUM:  Objection.

12      A    No.

13      Q    Can you identify any statements you have

14  made in this case that you now know were wrong when

15  you made them?

16           MR. NUSSBAUM:  Objection.

17      A    No.

18      Q    Other than this lawsuit, has anyone ever

19  accused you of dishonesty in a professional context?

20           MR. NUSSBAUM:  Objection.

21      A    I don't care.  I don't know what you're

22  saying.  This doesn't have any sense.

23      Q    I need an answer to the question.  My

24  question is has anyone ever accused you of

25  dishonesty in any context?

135

K. Fernandaz

1

2          A    No.

3          Q    Whether you care or not, you have to

4     answer the question.

5               MR. NUSSBAUM:  There is no question.

6          There is no question.

7          Q    That's correct, we have no question.

8               MR. NUSSBAUM:  Save your commentary,

9          please.

10              MR. KATAEV:  I'm providing the witness

11         instructions.

12    BY MR. KATAEV:

13         Q    Do you know what relief you're asking the

14    court to award to the class or the collective?

15              MR. NUSSBAUM:  Objection.

16         A    Yes.

17         Q    What is that relief?

18              MR. NUSSBAUM:  Objection.

19         A    Everything that they were robbed of.

20    Everything they were robbed of.

21         Q    You mentioned for yourself that you were

22    looking for justice.  That's just for you, right?

23              MR. NUSSBAUM:  Objection.

24         A    For everyone.

25         Q    You mentioned before that you are looking

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

136

                              K. Fernandaz

1

2       for damages for discrimination and harassment.

3       That's only for you and not for anyone else,

4       correct?

5              MR. NUSSBAUM:  Objection.

6       A    I'm presenting a demand for what happened

7       to me.  I don't know about the rest.

8       Q    What do you understand your

9       responsibilities would be as a class representative?

10             MR. NUSSBAUM:  Objection.

11      A    It's on paper what I'm demanding and

12      that's why we are speaking.

13      Q    That's not my question.  My question is:

14      If you were appointed a class representative, what

15      is your understanding of what your duties and

16      responsibilities would be as the class

17      representative?

18             MR. NUSSBAUM:  Objection.

19      A    I don't have any responsibilities.  I'm

20      only demanding what is coming to me.  I'll only

21      demand what was done wrong to me.  I'm demanding

22      because it's my right as a resident of the United

23      States.

24      Q    Okay.  And so if I understand you

25      correctly, if the judge appointed you as class

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

137

1                        K. Fernandaz

2       representative and told you you had some duties to

3       fulfill as that representative, you would not be

4       willing to do those duties, correct?

5                 MR. NUSSBAUM:  Objection.

6            A    If the judge will appoint me, I will do it

7       because I have my representatives.

8            Q    Besides speaking with and working with

9       your attorneys, have you done anything on your own

10      to gather information or evidence for the case?

11           A    Yes.

12           Q    Tell me what?

13           A    I was putting together all the information

14      to give to the attorneys.

15           Q    Other than that anything else?

16           A    No.

17           Q    If you believe a settlement or a

18      resolution by the court was good for you personally

19      but not for some other employees what would you do?

20                MR. NUSSBAUM:  Objection.  It's a

21           hypothetical.

22                MR. KATAEV:  She can answer.

23           A    I will ask my attorney about that.

24           Q    Has anyone promised you anything of value

25      beyond what your agreement says with your attorneys

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

138

1                          K. Fernandaz

2        for any recovery in this case?

3            A    No.

4            Q    Did you ever sign an arbitration agreement

5        with the restaurant?

6            A    No.

7            Q    What about a separation agreement, did you

8        ever sign that?

9            A    No.

10           Q    Are there any ways in which you believe

11       you were treated differently whether better or worse

12       than any other employees that you seek to represent?

13               MR. NUSSBAUM:  Objection.

14           A    Yes.

15           Q    Can you describe that for me?

16           A    The rest of the Defendants are men and

17       they used to harass me sexually, harass me at work

18       and I'm not interested in any of them because they

19       are all men.

20           Q    So if I understand you correctly, if it

21       was your preference, you would seek to represent a

22       class action of all the women and not the men,

23       correct?

24               MR. NUSSBAUM:  Objection.

25           A    If I would be assigned to represent the

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

                                                           139

                              K. Fernandaz

1

2       rest of the collective action I would represent

3       every one of them.  It doesn't matter who.

4              Q    Okay.  If you had your preference, you

5       would prefer to do it for the females and not the

6       males?

7                   MR. NUSSBAUM:  Objection.  Asked and

8              answered.

9              Q    Please answer the question.

10             A    I'm not a racist, I'm not a feminist, I

11      don't care.

12             Q    You were treated better because you

13      received a raise from ten to $12.50 that no one else

14      did, right?

15                  MR. NUSSBAUM:  Objection.

16             A    No, I'm not the only one.  A busser that

17      still works there, he received a raise, too.  I

18      wasn't the only one.

19             Q    Okay.  Have you ever filed for bankruptcy?

20             A    No.

21             Q    Other than this lawsuit, did you file any

22      other claims against the restaurant anywhere else?

23                  MR. NUSSBAUM:  Objection.

24             A    No.

25             Q    What about your EEOC charge?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

140

                         K. Fernandaz

1

2       A    What is that?

3       Q    Nevermind.  I will move on.

4                   Have you ever lied --

5       A    No, I want to know now.

6       Q    Have you -- are you aware that you filed a

7    charge of discrimination with the EEOC?

8            MR. NUSSBAUM:  Objection.

9       A    Yes.

10      Q    Other than the lawsuit and that charge,

11   did you file any other claims anywhere else against

12   the restaurant?

13      A    No.

14      Q    Have you ever lied to anyone at the

15   restaurant about your qualifications?

16      A    Oh my God, I don't understand that

17   question.  That question is out of space.  First of

18   all, no, I didn't lie because my work spoke for

19   itself.  That's why there was a reason why Janos

20   gave me a raise.

21           MR. NUSSBAUM:  I want the witness to only

22           answer the question, please.

23      A    Okay.

24      Q    We are almost done.  Have you ever

25   falsified, altered or backdated any time sheets?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

141

                          K. Fernandaz

1

2       A     Never.

3       Q     In your communications about the issues in

4    this case, did you ever exaggerate, omit or misstate

5    facts to gain a benefit?

6       A     No.

7       Q     Have you ever used someone else's log-in

8    credentials or identity in Toast or any other

9    application or system at the restaurant?

10      A     Never.

11      Q     Have you ever threated or abused anyone at

12   the restaurant?

13      A     Never.

14      Q     Was there any employee that you worked

15   with that was subjected to a different policy

16   relating to compensation or tips?

17           MR. KATAEV:  Objection.

18      A     I don't understand the question.

19           MR. KATAEV:  Can we have it read back?

20   (Whereupon, the referred to question was read back

21                 by the reporter.)

22           MR. NUSSBAUM:  Objection.

23      A     I'm not informed about that.

24      Q     Is it your position that your termination

25   is part of this lawsuit?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

142

                        K. Fernandaz

1

2              MR. NUSSBAUM:  Objection.

3       A    Because they fire me, because they harass

4    me and because they stole my money.

5       Q    That's what this lawsuit is about, right?

6              MR. NUSSBAUM:  Objection.

7       A    Yes.

8       Q    Are you aware that if a class action does

9    not move forward here that your colleagues could

10   still file a separate lawsuit?

11             MR. NUSSBAUM:  Objection.

12      A    Yes.

13      Q    For your discrimination or harassment

14   claims, you were really harmed by what you're

15   claiming, right?

16             MR. NUSSBAUM:  Don't answer.

17             MR. KATAEV:  What do you mean don't

18        answer?

19             MR. NUSSBAUM:  You have been out of bounds

20        plenty today.

21             MR. KATAEV:  I'm withdrawing the question.

22        I agree with you.

23   BY MR. KATAEV:

24      Q    Is it fair to say that with respect to

25   your wage and tip claims, you were not actually

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

143

                              K. Fernandaz
1
2      harmed but you're suing on principle?
3               MR. NUSSBAUM:  Objection.
4        A    I wasn't injured physically, no.
5        Q    Is it fair to say that you were not
6      actually harmed in any other way, but you're suing
7      on principle?
8               MR. NUSSBAUM:  Objection.
9        A    I'm doing -- I presented these demands
10     because I want to exercise my rights.
11       Q    Okay.  Would you still pursue this wage
12     and hour case, not the discrimination or
13     retaliation -- I'm sorry, discrimination and
14     harassment, would you still pursue this wage and
15     hour case if you could only obtain a declaration
16     that the restaurant violated the law but no money
17     for yourself?
18              MR. NUSSBAUM:  Objection.
19       A    I would have to get my attorney's advice
20     on that.
21       Q    Without including today's deposition, how
22     many hours have you personally spent on this case so
23     far?
24              MR. NUSSBAUM:  Objection.
25       A    I don't have that.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

144

1                         K. Fernandaz

2         Q    Was it more than five hours?

3         A    Yes.  I think, yes.

4         Q    More than ten hours?

5         A    With the seven hours that we still here

6    today I believe it is.

7         Q    With the seven hours today is it more than

8    15 hours total?

9         A    Yes, I think so.

10        Q    Are there any documents in your possession

11   from the restaurant that you declined to produce?

12        A    No.

13        Q    Do you understand that your decisions in

14   this case will bind other employees who are not here

15   today?

16             MR. NUSSBAUM:  Objection.

17        A    No.

18        Q    If another employee informed you that them

19   joined the lawsuit might hurt their career or

20   immigration status, how would you factor that into

21   your decisions?

22             MR. NUSSBAUM:  Objection.

23        A    I don't know.  They know what they're

24   dealing with on their own.  I don't know.

25        Q    Has this lawsuit caused any strain or

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

145

                            K. Fernandaz

1

2      conflicts in your relationships with your former

3      colleagues who you might represent?

4           A    No.

5           Q    Do you remember when you first examined

6      your paystubs or paystub?

7           A    No.

8           Q    Is it fair to say that you looked at your

9      paystubs the first week after you received your pay?

10               MR. NUSSBAUM:  Objection.

11          A    I don't remember.

12          Q    Is it fair to say that the restaurant was

13     entitled to take the tip credits?

14               MR. NUSSBAUM:  Objection.

15          A    I don't know.

16          Q    Do you personally know that all the tipped

17     employees were paid the same way?

18               MR. NUSSBAUM:  Objection.

19          A    I didn't know anything about that.

20          Q    Have you reviewed the payroll records of

21     anyone besides yourself?

22          A    No.

23          Q    Do you know the difference between a

24     Federal Collective Action and a Rule 23 Class

25     Action?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

146

                          K. Fernandaz

1

2                MR. NUSSBAUM:  Objection.

3        A    No.

4        Q    Is it fair to say that you participated in

5    the tip pool everyday that you worked at the

6    restaurant?

7        A    Yes.

8        Q    You told me before that you did so well

9    that you were in charge of the kitchen; am I

10   recalling that correctly?

11       A    Yes.

12       Q    As a result of being placed in that

13   leadership role, did your compensation change in any

14   way?

15       A    No.

16       Q    Before filing the lawsuit did you make any

17   statements to anyone accusing the owners of theft or

18   criminal conduct?

19       A    No.

20       Q    Do you believe all the employees lost the

21   same percentage of tips that you lost?

22                MR. NUSSBAUM:  Objection.

23       A    Everything is divided by points.

24       Q    Was the answer yes or no?

25                MR. NUSSBAUM:  Objection.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

147

1                    K. Fernandaz

2       A    No.

3       Q    Have you spoken with any of the other

4   employees about this experiences working at the

5   restaurant?

6       A    No.

7       Q    If you learned that some employees don't

8   want to be included in the lawsuit, how would that

9   affect your decisions in this case?

10           MR. NUSSBAUM:  Objection.

11      A    I don't care.

12      Q    Are you prepared to attend hearings,

13  settlement conferences, and possibly a trial in this

14  case?

15           MR. NUSSBAUM:  Objection?

16      A    Yes.

17      Q    Are you aware that the complaint

18  references Mayor Adams?

19      A    Yes.

20      Q    Did you include a reference to Mayor Adams

21  in the complaint because of Rob's status as a

22  convicted felon?

23      A    Yes.

24      Q    Did you include Mayor Adams in the

25  complaint because you want to connote that

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

148

K. Fernandaz

1  

2     Mayor Adams is also a criminal?

3              MR. NUSSBAUM:  Objection.

4        A    No, because I'm not informed about that.

5        Q    Are you aware that Mayor Adams had all

6     criminal charges against him dropped?

7        A    I don't care.

8        Q    Do you know the difference between a

9     service charge and a gratuity?

10             MR. NUSSBAUM:  Objection.

11       A    Yes.

12       Q    What is the difference?

13       A    The service charge is what you have to pay

14    for the service that you're getting and the tip is

15    the tip.

16       Q    And you recognize that the service charge

17    is mandatory, correct?

18             MR. NUSSBAUM:  Objection.

19       A    I don't know that.  I was just a runner.

20       Q    Was Julio Perez working at the restaurant

21    when you went to work there?

22       A    We were -- we started working at the same

23    time.

24       Q    You took pictures of all of the private

25    event contracts that you provided to your lawyer who

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

149

                        K. Fernandaz

1

2      then gave it to us, correct?

3          A    Yes.

4          Q    You took those pictures because you were

5      planning to file this lawsuit while you were still

6      working there, correct?

7          A    No.

8          Q    Why did you take the pictures at the time

9      that you took them?

10         A    Because it's not -- because it's the first

11     time that they will fire an employee while the

12     employee is on approved vacations.

13         Q    Okay.  You have testified pretty

14     consistently in this deposition that you believed

15     that you were entitled to a 20 percent tip for

16     special events, correct?

17              MR. NUSSBAUM:  Objection.

18         A    They had to give everybody 20 percent.

19         Q    Your complaint only talks about a

20     3 percent service charge.  You realize that, right?

21         A    That 3 percent they give it to Natalia who

22     is the manager for the events.

23         Q    What did you get for the special events;

24     how much did you get?

25         A    It was a pool.  I used to get tips at the

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

150

                          K. Fernandaz
1
2    end of the night.
3         Q    Do you know what the total percentage was
4    for special events, not from the pool?
5         A    They didn't give us any information.  They
6    only told us that they were giving us 20 percent of
7    the tip.
8         Q    Your complaint doesn't say 20 percent.  It
9    only says 3 percent.  Which one is it?
10        A    Natalia will keep the 3 percent.
11        Q    So if I understand correctly, you're not
12   suing for 20 percent, you're suing for 3 percent
13   that Natalia took, right?
14        A    Three percent.
15        Q    How do you know what Natalia took?
16        A    Because she said it.
17        Q    She said it to you directly?
18        A    Yes.
19        Q    You asked her?
20        A    Yes, and another waitress that was working
21   there asked her.
22        Q    Okay.  Were you present when the other
23   waitress asked her?
24        A    Yes.
25        Q    What is the other waitress's name?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

151

K. Fernandaz

1

2        A    Nicole.

3        Q    What did Nicole say to Natalia and what

4    did Natalia say to Nicole during this conversation?

5        A    Nicole said why do we get 18 percent when

6    they said that we get 20 percent and Natalia said

7    because the other 3 percent I keep.

8        Q    Based on that conversation you knew that

9    you got 18 percent, right?

10       A    Found out.

11       Q    When did you find out?

12       A    But they always -- they had always said it

13   would be 20 percent.

14       Q    When did you find out it was 18?

15       A    Two or three months before I was fired.

16       Q    And then your conversation by yourself

17   with Natalia, was that before or after the

18   conversation with you, Nicole and Natalia?

19       A    After.

20       Q    What did she say to you and what did you

21   say to her?

22       A    The same thing that Nicole said to her.

23       Q    You're saying you had the same

24   conversation or something else?

25       A    Yes.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

152

K. Fernandaz

1

2      Q    Did you organize all the employees and

3   bring it to Janos's attention that you had a problem

4   with that?

5      A    No.

6      Q    Why not?

7      A    Because there were a lot of problems.

8   There were already so many problems and nobody was

9   making a solution for anything.

10     Q    You decided to take matters into your own

11  hands and file this lawsuit, correct?

12          MR. NUSSBAUM:  Objection.

13     A    Yes.

14     Q    Give me two minutes.  I think I'm done.

15          Without telling me any conversations

16  that had with your attorneys, have you had any

17  disagreements with your attorneys about how to

18  handle this case; yes or no?

19          MR. NUSSBAUM:  You don't have to answer

20      that.  Don't answer that.

21          MR. KATAEV:  Mark it for a ruling.

22          THE INTERPRETER:  She said no.

23          MR. NUSSBAUM:  If I say don't answer,

24      don't answer.

25          THE INTERPRETER:  I didn't hear you say

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

153

1                    K. Fernandaz

2          that.  I told her not to respond the times that

3          you told me.  I didn't hear you, I'm sorry.

4          Everybody talks at the same time so maybe

5          that's the reason.

6               MR. KATAEV:  We will strike the answer and

7          we will mark it for a ruling.  Thank you.

8               THE INTERPRETER:  Okay.

9                    (Marked for ruling.)

10   BY MR. KATAEV:

11        Q    Do you believe that every tipped employee

12   is owed the same amount or will some be owed more or

13   less?

14               MR. NUSSBAUM:  Objection.

15        A    I have no idea.

16        Q    Would you still pursue the case if you

17   could recover money for others but not for yourself?

18               MR. NUSSBAUM:  Objection.

19        A    I will consult with my attorney.

20        Q    Is it fair to say you're largely relying

21   on your lawyers to understand the legal issues in

22   this case?

23        A    Yes.

24               MR. KATAEV:  Let's take a quick three

25          minute break.  I'm going to make a final

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

154

1                    K. Fernandaz

2         confirmation and if I don't have any other

3         questions we will be done.

4              (Whereupon, a short recess was taken.)

5         Q    Katherine, thank you so much for your time

6    today and for giving me your whole day.  I have no

7    further questions for you.

8              THE REPORTER:  Mr. Nussbaum, will you be

9         purchasing a copy of this transcript?

10         MR. NUSSBAUM:  Yes.

11

12

13              (Time noted: 5:33 p.m.)

14

15              _____

16              KATHERINE FERNANDEZ

17

18    Subscribed and sworn to before me this _____ day

19    of _____ 2025.

20    _____, Notary Public.

21

22

23

24

25

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

155

```
 1                          K. Fernandaz

 2      WITNESS

 3      KATHERINE FERNANDEZ

 4

 5      EXAMINATION BY                        PAGE

 6      MR. KATAEV                             4

 7

 8      COUNSEL REQUESTS                      PAGE

 9      Travel documents                       17
        Unemployment insurance documents       22
10      Health First renewal applications      23
        Childcare assistance applications      24
11      Pictures and screen shots              70
        Text messages                          89
12

13      MARKED FOR A RULING                   PAGE

14      Line 22                                55
        Line 18                               129
15      Line  9                               153

16                     E X H I B I T S

17

        DEFENDANT'S         DESCRIPTION      PAGE
18

19      Exhibit 1           Picture of labor   44
                            law posters
20      Exhibit 2           Compilation of    101
                            records
21      Exhibit 3           ECF docket Entry  102
                            50-2
22      Exhibit 4           ECF documentary   107
                            50-1
23      Exhibit 5           30 pages of pay   110
                            history summary
24                          report
        Exhibit 6           Initial disclosures 111
25      Exhibit 7           Responses to      114
                            interrogatories
25                          interrogatories
```

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

156

1                        K. Fernandaz

2

3               E X H I B I T S (Continued)

4

       DEFENDANT'S            DESCRIPTION          PAGE
5

6      Exhibit 8             Redacted tip         115
                             records
7      Exhibit 9             Employee handbook    117
       Exhibit 10            Corrective action    118
8                            record
       Exhibit 11            Termination letter   119
9      Exhibit 12            Original complaint   120
       Exhibit 13            Docket Entry 2       124
10     Exhibit 14            ECF Docket 311       125
       Exhibit 15            ECF Documentary 12   127
11     Exhibit 16            ECF Documentary 13   129
       Exhibit 18            Scheduling Order     130

12

13     Attorney Kataev has retained all exhibits.

14

15

16

17

18

19

20

21

22

23

24

25

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

157

2                C E R T I F I C A T I O N

3

4     STATE OF NEW YORK    )

5                  ) ss.:

6     COUNTY OF QUEENS     )

7

8          I, RUTHAYN SHALOM, a Court Reporter

9     and Notary Public within and for the State

10    of New York, do hereby certify:

11          That the witness whose deposition

12    is hereinbefore set forth, was duly sworn

13    by me, and that the within transcript is a

14    true record of the testimony given by such

15    witness.

16          I further certify that I am not

17    related to any of the parties to this action

18    by blood or marriage, and that I am in no way

19    interested in the outcome of this matter.

20          IN WITNESS WHEREOF, I have hereunto

21    set my hand this 9th day of December, 2025.

22

23

24    _____
                    *Ruthayn Shalom*

25                RUTHAYN SHALOM

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

158

ERRATA SHEET

NAME OF CASE: FERNANDEZ et al. v BULLDOZER et al.
DATE OF DEPOSITION: December 8, 2025
NAME OF DEPONENT: Katherine Fernandez
PAGE  LINE(S)        CHANGE              REASON
_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

                        _____
                        KATHERINE FERNANDEZ

Subscribed and sworn to before me
this _____ day of _____, 2025
_____, Notary Public.


                 _____

                 MY COMMISSION EXPIRES:

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

159

**A**

**A-M-B-R-U-S** 84:2
**A-N-D-R-E-W-S** 59:2
**A-R-T-E-M-I-O** 63:2
**a.m** 1:12
**ability** 8:8 37:20
**able** 6:17 69:17 73:16 118:21
**absolutely** 76:7
**abused** 141:11
**accepting** 85:19
**access** 37:24 57:25 68:19,25 106:17
**accurate** 92:4
**accurately** 58:11 84:3
**accused** 134:19,24
**accusing** 146:17
**achieve** 95:23
**acknowledgment** 46:13 117:25
**action** 118:10,11,18 122:2,3,6,24 128:21 138:22 139:2 142:8 145:24,25 156:7 157:17
**actions** 131:12,13
**actual** 90:11
**Adams** 120:23 121:2 147:18,20,24 148:2 148:5
**additional** 104:14,16
**address** 4:8 14:13,14 37:15 102:19,21,23 134:4
**admin** 109:9
**admonish** 76:13
**Adrian** 2:4 10:8 14:2 125:25 126:2 127:25 128:11,17
**Adrian's** 128:14
**advice** 99:21 143:19
**affect** 8:7 147:9
**affidavit** 12:7

**affirmation** 12:9
**afternoon** 71:23 105:24
**against-** 1:7
**agency** 99:19
**ago** 11:25 12:5 33:6 79:11,19
**agree** 52:8 142:22
**AGREED** 3:2,7,11
**agreement** 95:25 137:25 138:4,7
**agrees** 95:13
**ah** 6:18
**ahead** 44:6 51:8
**al** 158:4,4
**alcohol** 8:6 76:17
**Alivia** 2:14
**allegation** 124:3
**allow** 6:20 18:13
**allowed** 51:16
**altered** 140:25
**Ambrus** 83:23,24
**amended** 13:10 130:7
**amount** 40:25 47:18 65:12 80:18 84:8 103:7 104:3 109:9 109:10 115:10 153:12
**amounts** 103:12
**and/or** 16:25 70:24 71:2
**Andrew** 2:15 13:21 13:22,25
**Andrews** 59:2,11,23 60:21
**answer** 6:21 7:2,16 7:17,22 8:18 11:12 11:14,20 30:3 32:3 32:4 49:7 51:7,22 53:5 55:18 59:22 71:10 74:11 75:16 76:22 77:13 85:24 86:19 87:21 88:2,8 88:14 89:17 97:21 97:24 98:2,7,9,15

99:24 100:5,6 112:9 116:17 120:3 129:4 129:5,7 134:23 135:4 137:22 139:9 140:22 142:16,18 146:24 152:19,20 152:23,24 153:6
**answered** 73:14 97:19 98:12 114:20 139:8
**answering** 5:19 99:25
**answers** 6:16 7:8 8:3 8:11 98:13 115:2
**anybody** 17:15 80:18 81:9,13
**anymore** 31:11 95:8 106:23 120:5
**Apart** 96:8
**Apartment** 4:9
**appear** 132:24 133:6
**Appearance** 124:25
**appearing** 133:3
**application** 23:15 24:9,12 34:8,21 37:4 40:12 76:9 77:11,14,16 141:9
**applications** 23:23 24:23 155:10,10
**applied** 22:24
**apply** 24:16
**appoint** 137:6
**appointed** 136:14,25
**appreciate** 124:2
**apprenticeship** 27:11
**approach** 86:21
**approve** 113:7
**approved** 33:23 34:5 34:8,9,14,16,21,23 149:12
**approximately** 28:13 103:6 127:2
**April** 19:10
**arbitration** 138:4
**area** 43:7,20,23 44:9
**arising** 22:21

**arose** 131:17
**arrested** 20:19,25
**arrive** 15:2
**Artemio** 63:2
**aside** 68:17
**asked** 37:13 38:5 41:10,13 73:11,20 87:16,20 97:23 114:19,25 119:19 119:23 123:18 129:9 132:9,15 139:7 150:19,21,23
**asking** 5:18 15:23 37:10 59:18 87:18 91:2,3 98:4,10 99:25 100:2 105:2 113:22 135:13
**assert** 75:10
**assign** 81:20
**assigned** 30:9 64:9 138:25
**assistance** 24:3,17,22 24:25 25:3,5,6 155:10
**assume** 7:3
**assuming** 69:25 95:11 104:3
**assumption** 116:8
**attend** 25:9 26:19 27:4,7,10 118:14,14 118:18,21 119:3 147:12
**attending** 27:3
**attention** 152:3
**attorney** 4:23 7:14 55:16,17 77:10 82:2 88:2,11,19 99:2 100:3,8,11 113:4 124:18 132:11 137:23 153:19 156:13
**attorney's** 143:19
**attorney/client** 129:13
**attorneys** 2:3,8 3:3

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

160

9:23 10:19 11:24
12:3,21 14:5,10
70:4 80:10,13 99:21
100:14 106:11,14
106:15 111:9,15,20
113:14,18 114:23
115:10 126:18,23
129:3 131:24 137:9
137:14,25 152:16
152:17
**audio** 52:21
**automatic** 68:2
**automatically** 67:14
**available** 56:20 57:18
**Avenue** 2:9
**average** 40:23 41:9
58:15 89:19,22
**award** 62:17 135:14
**aware** 10:7 12:17
13:9,13 113:18
124:19 131:16,23
132:14,23 133:16
140:6 142:8 147:17
148:5

**B**

**B** 155:16 156:3
**back** 15:5,9 16:14
17:21 18:4 22:13
32:2,5 41:18,20
43:4,7 52:22,24
53:4,12 54:6 81:7
88:5,6 100:7 101:8
141:19,20
**backdated** 140:25
**backpack** 43:21
**badgering** 97:20
**Baia** 1:8 5:4 16:8
32:18 33:10 35:10
35:14,19,23 36:4
42:2,8,23 44:24
46:17 53:25 55:25
56:16,19 57:2,5
58:15 59:4,7,12,20
59:23 60:12,15 61:6

63:8 102:22 120:21
128:2 134:5
**bankruptcy** 139:19
**bar** 43:8
**barista** 28:18
**bartenders** 65:23
**Base** 130:20
**based** 35:4 48:12,17
48:23 74:21 75:2
89:7 104:3 110:4
114:11 151:8
**basically** 63:24
**basis** 75:10
**Bates** 110:19,20
**Bates-stamped**
124:25
**Bates-stampeded**
125:2
**bathroom** 43:22,24
44:2,5 133:12
**began** 54:20
**beginning** 84:16
**behalf** 1:3
**believe** 9:5 17:5 37:9
47:11 84:24 94:13
95:24 104:9 113:15
126:4 137:17
138:10 144:6
146:20 153:11
**believed** 149:14
**benefit** 24:6,10 141:5
**benefits** 21:12,19
22:3,7,16,19,21
23:5 24:4,17,22
**best** 7:6,11 91:4 98:8
**better** 138:11 139:12
**beyond** 67:2 137:25
**bigger** 124:11
**billboard** 44:10,15
**bind** 144:14
**birth** 14:22
**bit** 99:6
**black** 115:14,16
117:6
**blazer** 76:25 77:3

**Bloise** 2:13 4:2
**blood** 157:18
**blue** 13:17
**body** 6:17
**born** 14:24
**bottom** 106:3,22
118:24 119:11
**bounds** 142:19
**box** 104:14,16,19
**boxes** 115:17
**Boy** 20:2
**boys** 77:21
**bread** 43:8
**break** 7:20 43:14
52:3 55:12,15 91:17
101:7 153:25
**breaking** 71:15
**brief** 99:10
**bring** 80:23 152:3
**Broadway** 2:5
**brothers** 26:12
**brought** 43:21 86:17
**Bulldozer** 1:8 4:23
5:4 51:12 158:4
**bus** 28:18 39:11
**busser** 39:12 40:2
46:21 56:25 63:3
64:24 65:2,7,12
126:4 128:2 139:16
**bussers** 64:17,20
65:10,14,20 92:21
92:23
**Bussing** 56:23
**busy** 45:7

**C**

**C** 2:2 157:2,2
**calculate** 90:15,25
91:2
**calculation** 90:11
**calendar** 71:12
**call** 4:19 9:13 16:23
21:23 23:22 24:21
51:23,24,25 52:3
70:9 76:9 89:9

**called** 26:22 77:16
110:24 127:11
133:6
**calls** 17:9
**camera** 8:21
**captain** 74:8,14,23
**caption** 112:22,25
121:25
**card** 37:14 63:24
69:6 104:4
**cards** 67:13
**care** 13:13 24:3 45:6
45:8 76:10 78:4,6
95:7 132:2,4,4,5,6,9
134:21 135:3
139:11 147:11
148:7
**career** 144:19
**case** 1:6 12:9,15,24
13:7,14 14:11 17:18
41:15 66:6,9,14
69:21 79:12,20
94:16 96:2 97:12,17
98:23 99:3 100:8,18
101:3 104:9 112:22
113:10,15 117:15
120:9 124:8,20
128:21 129:22
130:7,19 131:13,17
132:7 133:17
134:10,14 137:10
138:2 141:4 143:12
143:15,22 144:14
147:9,14 152:18
153:16,22 158:4
**cash** 61:12,13 64:2,3
64:4,5 66:19,23
67:13 69:6 103:18
103:23,24
**categories** 103:11
**category** 115:24
**caused** 144:25
**cellular** 69:19
**certain** 9:4 38:9
92:24

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

161

certify 157:10,16
chance 40:9
change 29:23 43:19
    43:22 45:23 49:23
    49:25 50:3 55:9
    66:16 87:8,21 89:15
    99:14 146:13 158:5
changed 30:2,11
    44:25 45:2,5 46:3
    54:6 62:14 65:6
    87:6,12,18 89:18
changes 45:17,18
charge 51:11,14,18
    51:21 68:2 76:6
    105:16 107:20,20
    108:4 117:12
    139:25 140:7,10
    146:9 148:9,13,16
    149:20
charges 109:17 148:6
check 57:10,13,16
    68:11,14,18 81:11
    91:13 92:5 103:6,24
    109:6,8
checks 57:9,9 61:12
    68:19,25 80:25
    105:7
chef 50:6,12,18 51:2
    51:5 53:19 62:3,20
    62:20 105:11
child 20:4,6 24:3
childcare 24:16,22
    25:5 155:10
children 19:20
chosen 93:6,11,14
circuit 99:6
circumstances 31:15
City 120:21,23
Civil 124:9 130:19
claim 21:11,18 22:3,7
    22:15 84:21 94:14
    96:6
claiming 142:15
claims 5:20 30:24
    96:19,20 139:22

140:11 142:14,25
clarification 83:2
clarify 59:16 85:23
    95:21
class 110:22 122:2,6
    122:24 131:12
    135:14 136:9,14,16
    136:25 138:22
    142:8 145:24
classes 27:7,15
classification 65:25
classifications 65:22
clear 6:12 7:10 97:22
    115:22
client 52:18 66:24
    77:24,25 101:13
clients 64:5 67:2
clock 42:22,22
close 64:8 76:10
closed 54:7
closer 8:21
closing 92:15
clothes 43:20 76:2
    77:2
co-Plaintiff 10:7
coats 43:21
colleague 32:10,12
    125:17
colleagues 50:22 63:9
    100:18 142:9 145:3
collective 122:2,8,9
    128:21 131:12
    135:14 139:2
    145:24
college 26:3,9,14
column 116:14
come 36:16 49:21
    54:17 72:21 78:23
    86:17 107:15
coming 136:20
comment 77:20
commentary 135:8
COMMISSION
    158:23
commitment 95:3

committed 21:2
commonsense 108:12
communicating
    134:4
communications
    100:2 141:3
company 7:9 33:24
    89:18 101:25
compensation 22:16
    22:19 29:23 102:3
    141:16 146:13
compilation 101:13
    107:5,8 155:20
complain 76:12
complaining 71:5
complaint 12:11 13:4
    13:10,11,12,14 21:7
    52:15 64:23 120:8
    121:25 123:7 130:6
    147:17,21,25
    149:19 150:8 156:9
complaints 13:6 91:9
    91:11 99:13,15,18
complete 6:20 26:7,9
    38:9 58:8 132:16
completed 38:23
completely 98:9
completing 58:5
complicated 92:10
computer 37:5,7
    42:24,25 43:7,13
    77:12 82:10
computers 43:2,3
concerning 12:9
conduct 146:18
conducts 77:6
conference 1:18
    124:20
conferences 147:13
confident 39:3 66:2
confirmation 154:2
confirming 75:7
conflicts 145:2
connected 50:16
connection 22:2

25:21 26:14
connote 147:25
consent 127:4,5
consisted 46:20
Consistent 103:5
consistently 41:15
    93:10,12 149:14
consists 102:13
consult 153:19
consulting 87:6
consumed 8:6
contact 32:20,22
    36:16 63:8 100:8,11
    126:7,18,21,22
contain 123:7
context 134:19,25
continue 11:10 23:15
Continued 72:6
    156:3
contract 67:21
    107:23 109:12,18
    109:22
contracts 148:25
contribute 73:23
control 80:22
conversation 55:16
    71:8 85:7,8,9,10,20
    85:21,24,25 86:4,7
    86:8,11 151:4,8,16
    151:18,24
conversations 14:4,9
    106:13 114:23
    152:15
convicted 120:24
    121:7,15,18,20,22
    147:22
Cooney 2:14
copy 29:10 108:24
    154:9
Corona 4:9 32:25
correct 8:14 9:9,15
    13:4 15:20,25 16:10
    16:11,18 19:15
    20:22 21:21 23:12
    23:16,17,20,21 24:7

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

162

24:10,14 28:21 29:2
30:6,25 31:4,13
33:11,20 34:19 35:6
36:4,6,14 37:21,25
38:18,24 39:17
41:23 42:3,11,15,19
44:21,25 45:15,20
47:2,7 48:8,13,25
49:10,19 50:10,14
51:2 54:13 55:7,13
57:2,5,14,18,23
58:2,6,9,12,18
59:22 62:14,18,23
65:4 68:20 69:25
72:17,23 73:2 74:23
75:13,18,21 78:7
79:22 80:2 81:4,22
82:8 83:10,16 84:4
85:25 88:20 90:5,9
92:4 93:2 94:16
95:5 97:13 98:23
99:23 101:22,23
102:14,19,22 103:3
103:13 104:5,15,17
104:20 105:2,24
107:16,21,24 109:6
110:9 111:6,10
116:12,20,24
119:12 123:8,15
124:4 125:6 127:9
128:15,18 135:7
136:4 137:4 138:23
148:17 149:2,6,16
152:11
**corrective** 118:10
156:7
**correctly** 30:3 55:6
56:24 66:18 74:21
78:10 123:13
136:25 138:20
146:10 150:11
**cosmetology** 27:15
**counsel** 17:4 18:5,12
22:4 23:25 24:24
51:13 52:13 70:12

89:13 97:18 116:5
155:8
**count** 70:23
**country** 19:12 22:13
25:11,24
**COUNTY** 157:6
**couple** 10:23
**course** 107:14,18
**court** 1:1,17 6:3,13
6:16 11:15 18:11,13
18:15 32:3 52:11,11
53:9 97:22 131:7
133:25 135:14
137:18 157:8
**court's** 18:10 52:17
53:7
**courtesy** 6:22
**cover** 124:9
**coworker** 87:13
**coworkers** 45:9
46:23 49:3 50:25
78:13,21
**credentials** 141:8
**credit** 41:22,22 42:3
42:19 47:17,25 48:6
48:11,15,17 50:9
63:24 67:13 69:6
82:20 87:2 104:4,24
**credits** 145:13
**crime** 20:21,25 21:2
**criminal** 146:18
148:2,6
**Cristina** 2:13 4:2
**crystal** 7:10
**current** 14:13 21:4
35:14
**currently** 20:4,8 23:2
**customer** 61:13 64:4
67:7 68:11,18
107:24 108:2 110:5
**customers** 29:17 40:3
45:12,15,19 48:7
61:7,10,22 75:13,18
**cut** 71:6 116:22

**D**

**D** 72:2
**D-A-V-I-D** 60:25
**D-A-V-I-D-S** 61:2
**D-O-N** 25:14
**D/B/A/** 1:8
**daily** 53:25
**damages** 101:2 136:2
**date** 14:22 16:25 17:2
100:3 106:2 158:4
**dates** 84:14
**daughter** 118:22
**David** 60:25
**Davids** 60:24
**day** 10:19 16:12,14
16:14,20 18:22
40:11,16,17 50:5
55:9,9 56:9 76:4,11
82:16 84:9,12,14
154:6,18 157:21
158:20
**daycare** 24:5
**days** 35:11 41:8,11
41:12 46:25 47:6
56:13,15 60:11
90:22,23
**dayshift** 40:9,15,19
54:16
**deal** 129:17
**dealing** 144:24
**December** 1:12 10:9
10:15 13:25 157:21
158:4
**decide** 11:19 99:3
**decided** 52:12 132:19
152:10
**decision** 35:5
**decisions** 144:13,21
147:9
**declaration** 12:8
143:15
**declined** 144:11
**decrease** 61:20 62:7
62:11
**Defendant's** 44:13,17

52:13 101:12,15
102:6,11 107:2,4
110:13,14 111:13
111:17 114:3,6
115:6,7 117:18,19
118:7,8 119:5,6
120:7,10 124:8,10
124:24 125:9,11
127:18,21 129:21
129:23 130:10,11
155:17 156:4
**defendants** 1:10 2:8
4:23 5:21 14:11
110:22 112:2
115:10 131:21,25
132:12,15,23
138:16
**defense** 124:18
**definitely** 131:2
**demand** 12:10 13:2,3
21:17 94:12 112:20
122:8,8,10 134:8
136:6,21
**demanding** 32:8 97:3
97:7,9 136:11,20,21
**demands** 98:25 143:9
**department** 21:9,25
22:8 102:2
**Depending** 45:7
**DEPONENT** 158:5
**deposed** 6:5 10:8
133:23
**deposit** 57:8
**deposition** 6:10 8:3
9:17,20,24 10:5,11
10:13 11:14 12:21
13:17,23 14:2,6
17:10,22,25 18:21
18:23 51:15 52:18
53:8 55:13 97:13
99:6 110:25 113:19
125:25 131:20
132:24 133:4,7
143:21 149:14
157:11 158:4

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

163

**depositions** 131:17 131:21
**depressed** 53:19
**describe** 81:16,24 112:11,18 138:15
**described** 45:18,24 46:4
**description** 46:7 155:17 156:4
**detail** 87:9
**detailed** 76:22
**details** 102:4 114:17
**Deternoz** 2:15
**diary** 71:12
**difference** 30:19,21 31:13 42:10 49:6,18 64:25 65:15 103:17 145:23 148:8,12
**different** 30:8 65:2 65:11 68:22 70:21 86:19 88:24 110:5 134:3 141:15
**differently** 138:11
**direct** 57:7 61:11
**directly** 52:11 61:6 61:10,13 67:8 86:22 150:17
**disagreements** 152:17
**disappointment** 34:25
**disciplinary** 118:17
**disciplined** 79:25
**disclosure** 113:13
**disclosures** 111:15 112:15 155:24
**discovery** 17:6 52:12 89:8 110:23 131:12 132:16
**discriminate** 96:15 96:18
**discrimination** 94:5 98:18 136:2 140:7 142:13 143:12,13
**discuss** 55:17 79:12

79:20
**discussing** 106:20
**discussion** 18:6 33:7 52:11 71:19 81:6 102:17
**dishonesty** 134:19,25
**dishwasher** 101:20
**dismiss** 133:17
**displeasure** 34:25
**dispute** 52:12 131:12 131:17
**DISTRICT** 1:1,1
**divide** 90:16
**divided** 90:7,12 91:6 146:23
**divulge** 100:2
**divulging** 55:15
**docket** 102:7 124:8 124:25 125:10 129:21 130:10 155:21 156:9,10
**document** 12:8 29:9 29:10 33:18 101:21 101:24 102:13 105:3,6 107:10,12 108:18,20 110:17 111:25 112:4,6,18 113:6,11,13 114:7 114:12,14,19,24 115:12 117:5,7,21 118:11,25 119:11 120:12,14 124:9,14 125:10 127:20,23 129:22 130:2,14,21 130:22 131:3
**documentary** 106:21 107:6 127:19 155:22 156:10,11
**documentation** 37:25
**documents** 10:2 12:15,23 16:24 21:24 29:12 38:9 59:6 89:8 102:9 105:8 107:8,15 130:23 131:13

144:10 155:9,9
**doing** 6:13,22 17:23 45:9,14 101:8 107:18 122:24 143:9
**dollar** 47:23,25
**dollars** 47:16,18
**Dominican** 14:25 15:5,24 16:6,9,13 25:12,25
**Don** 25:14
**double** 54:19,21,24 55:6
**dress** 76:19 77:21
**drink** 76:17
**dropped** 148:6
**drugs** 8:6
**due** 22:22
**duly** 4:3,6 72:3 157:12
**duties** 44:25 45:22 46:2,7 50:14 107:14 136:15 137:2,4

**E**

**E** 2:2,2 72:2,2,2,2 155:16 156:3 157:2
**E-N-D-I** 14:21
**earlier** 8:20 61:16,24 90:23 123:14
**earn** 23:20 24:14
**earned** 30:20
**earnings** 103:11
**eat** 109:13,15
**Eats** 19:19
**ECF** 102:7 107:6 125:9 127:19 129:21 130:10 155:21,22 156:10 156:10,11
**education** 25:6,21
**EEOC** 51:11 52:15 139:25 140:7
**effect** 30:12
**effective** 6:9

**efficient** 6:9
**effort** 134:9
**either** 43:12,13 60:18 61:4 92:19 123:14
**electronically** 38:9 38:12,14,23
**else's** 141:7
**email** 18:11,12,15,17 18:19,20 36:18 37:15,18,19 57:17 57:19 83:8 119:23 134:3
**Emanuel** 2:10 4:22
**emanuel@sagelega...** 2:10
**employed** 29:13 55:25 100:9
**employee** 36:4 43:14 46:9,13 62:22 99:23 102:3 105:11 110:3 115:17 116:2,6,9,10 116:14 117:9,21 141:14 144:18 149:11,12 153:11 156:7
**employees** 12:17 43:17,18,23 63:16 63:19 64:16,19 69:16 81:19 87:18 93:5 100:18 108:9 126:18,22 127:8,12 128:8 137:19 138:12 144:14 145:17 146:20 147:4,7 152:2
**employer** 21:8 56:2
**employment** 7:8 16:20 22:11 23:19 24:14 25:22 28:8 31:16 35:13 37:3,23 58:5 59:7,18 61:3 84:17,17,18 85:5 99:17,22 100:4,12 100:16,22 111:6,9
**employment-related**

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

164

37:25
ended 28:8 85:21,25
  86:13 99:18 100:12
  111:9
Endi 14:19
engage 127:11
English 8:16,25 9:4
  26:20 27:4,7 112:13
enter 81:18
enters 76:8
entitled 7:11 11:6
  88:8 94:14 95:24
  129:13 145:13
  149:15
entrance 44:4
entry 102:7 124:8
  129:21 130:10
  155:21 156:9
Eric 120:23
ERRATA 158:2
ESQ 2:6,10
et 158:4,4
evasive 97:25 98:5
evening 40:16 54:8
  54:13
event 68:15 69:7
  93:19 107:5,19
  108:7 109:12,14,16
  109:18 148:25
events 7:7 45:14
  49:14 67:14,19 68:3
  68:10,13 76:20
  92:24,25 93:7,11,15
  93:18 104:8,12
  105:17 149:16,22
  149:23 150:4
eventually 39:25
  56:17 65:6
everybody 43:13
  74:5 79:25 85:8
  122:15,17,21
  149:18 153:4
everyday 37:6 41:16
  146:5
everyone's 81:20

evidence 137:10
exact 92:22 127:5
exactly 19:11 75:12
exaggerate 141:4
examination 1:16 3:4
  3:8 4:12 72:5 155:5
examined 4:10 72:4
  145:5
example 111:9
exchange 126:10
exchanged 89:10
  126:12 128:9
exercise 143:10
exhibit 44:13,17
  101:12,15,17 102:6
  102:11 106:24
  107:3,4 108:16
  110:13,14 111:13
  111:17 113:24
  114:3,6 115:6,7
  117:18,19 118:7,8
  119:5,6 120:6,7,10
  124:8,10,24 125:9
  125:11 127:18,21
  129:21,23 130:11
  155:19,20,21,22,23
  155:24,25 156:6,7,7
  156:8,9,9,10,10,11
  156:11
exhibits 101:8 156:13
exist 74:14,20,24,25
  75:5,11 127:6
existed 131:11
expect 93:23
expects 77:22
expeditor 45:5,11
experience 48:12,18
  75:8 93:8,10 110:3
  110:4
experiences 147:4
EXPIRES 158:23
explain 29:25 87:9
  103:21 124:16
explained 49:2,3,15
express 34:24

extension 132:15
extent 17:13 70:6
extra 87:14 104:11

        F
F 72:2 157:2
F-O-T-I-S 36:10
face 36:17,17,20,20
face-to-face 36:24
facing 44:4
fact 34:23,25 48:23
  68:17 79:6 120:23
factor 144:20
facts 141:5
failure 118:18
fair 29:15 31:19
  39:23 43:9 47:24
  66:25 82:4 90:14
  93:9,13 97:6 99:4
  131:5 142:24 143:5
  145:8,12 146:4
  153:20
false 105:19 124:4
falsified 140:25
familiar 44:18
  125:14,23 130:15
  130:22
famously 120:22
far 6:14 59:3 143:23
father 26:11
Federal 4:15 145:24
fee 109:9 122:12
felon 121:7,15,18,20
  121:22 147:22
felons 120:24
females 139:5
feminist 139:10
Fernandaz 4:1,19 5:1
  6:1 7:1 8:1 9:1 10:1
  11:1 12:1 13:1 14:1
  15:1 16:1 17:1 18:1
  19:1,3 20:1 21:1
  22:1 23:1 24:1 25:1
  26:1 27:1 28:1 29:1
  30:1 31:1 32:1 33:1

34:1 35:1 36:1 37:1
38:1 39:1 40:1 41:1
42:1 43:1 44:1 45:1
46:1 47:1 48:1 49:1
50:1 51:1 52:1 53:1
54:1 55:1 56:1 57:1
58:1 59:1 60:1 61:1
62:1 63:1 64:1 65:1
66:1 67:1 68:1 69:1
70:1 71:1 72:1 73:1
74:1 75:1 76:1 77:1
78:1 79:1 80:1 81:1
82:1 83:1 84:1 85:1
86:1 87:1 88:1 89:1
90:1 91:1 92:1 93:1
94:1 95:1 96:1 97:1
98:1 99:1 100:1
101:1 102:1 103:1
104:1 105:1 106:1
107:1 108:1 109:1
110:1 111:1 112:1
113:1 114:1 115:1
116:1 117:1 118:1
119:1 120:1 121:1
122:1 123:1 124:1
125:1 126:1 127:1
128:1 129:1 130:1
131:1 132:1 133:1
134:1 135:1 136:1
137:1 138:1 139:1
140:1 141:1 142:1
143:1 144:1 145:1
146:1 147:1 148:1
149:1 150:1 151:1
152:1 153:1 154:1
155:1 156:1
Fernandez 1:3,16 2:4
  4:5 9:8 154:16
  155:3 158:4,5,18
Fifty 41:4
figure 81:25
file 99:18 111:23
  139:21 140:11
  142:10 149:5
  152:11

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

165

21:11 22:15 30:24
51:12 97:11 107:6
111:16,21,22 120:9
120:15 126:25
127:4,5 133:17
139:19 140:6
**filing** 3:8 134:7
146:16
**fill** 24:12 37:3
**filled** 21:18 99:2
**final** 153:25
**find** 22:10 86:5
100:14 126:15
151:11,14
**fine** 52:4
**finish** 6:23 54:3,9
129:6
**fire** 33:16 34:11
78:12 142:3 149:11
**fired** 33:10,14,20,25
34:10 76:3 78:9,11
79:22 151:15
**firing** 33:18
**firm** 14:5 131:23
**first** 4:6 6:12 14:20
15:2 19:7 23:4,5,6
23:11,24 24:16
27:13,22 28:3,17,23
36:16 42:7 46:16
47:14 54:4 55:12
85:10,21,24 86:7
87:5 102:2,22 106:3
114:10 116:15
120:17 121:24
123:16 140:17
145:5,9 149:10
155:10
**fishy** 129:16
**five** 41:10 47:18,25
84:3 87:13 90:22
97:14,19 101:7
133:13 144:2
**floor** 39:21 43:3,6
49:13 84:7,9
**FLSA** 122:2

**fluent** 8:16,19
**fly** 17:19
**focus** 85:10
**focused** 77:17 85:13
**Focusing** 124:7
**follow** 17:2,10 22:3
23:24 24:23 66:19
70:11 89:12
**following** 22:7 31:9
**follows** 4:11 52:12
72:4
**food** 22:24 25:3 45:7
76:16 109:23
116:19,20
**form** 3:12 25:6 34:8
38:22 51:4 53:16
127:4,5
**formally** 34:21
**former** 100:17 145:2
**forms** 58:12 103:18
**forth** 51:13 157:12
**Forty-one** 91:5
**forward** 134:10
142:9
**forwarded** 88:19
**Fotis** 36:7,11,24 38:8
39:16,19 41:21,22
41:25 42:3,14,18
**Fotis's** 39:24
**found** 33:19 121:11
151:10
**four** 19:25 87:12,12
103:11 129:11
**free** 18:2
**frequented** 120:22
**frequently** 50:12
**friends** 120:25
**friendships** 50:21
**front** 44:2 79:25
**fulfill** 137:3
**full** 31:24 80:18
**further** 3:7,11 44:5
72:4 154:7 157:16

_____
**G**
_____

**gain** 141:5
**gap** 35:8,12
**gather** 137:10
**general** 14:11 34:16
48:20 119:14
**generally** 29:16
58:14 68:9 90:4
**gestures** 6:17
**getting** 48:7 148:14
**girl** 20:2,3
**give** 6:16,21 8:11
64:5,6,7 66:20,21
70:3 76:5,5 78:16
80:10 81:9,13 88:3
99:5 103:24 114:17
120:5 137:14
149:18,21 150:5
152:14
**given** 7:8 30:12 80:19
87:21 91:4,21
107:23 119:2
157:14
**gives** 77:9
**giving** 33:12 87:7
150:6 154:6
**GM** 36:7
**go** 6:7 9:8,11 15:21
26:21 27:14 32:6
51:8 57:25 64:6,7
66:20,25 68:10 74:3
76:4,18 77:25 81:19
109:3,5,13 120:7
133:21
**goal** 93:21 97:2
122:13
**God** 128:13 140:16
**goes** 24:5 108:8,9
**going** 6:7 11:8,9,11
16:23 17:19,21,23
18:20 21:23 23:22
24:21 26:14 38:5
41:18,20 44:12
49:16 70:8 71:15
77:23 78:3 85:15,17
89:9 97:21 101:11

106:21,23 107:7
109:23 110:12,24
111:12 115:14,21
117:17 118:21
119:4 120:17
122:24 129:15,16
153:25
**good** 4:14,19,21 50:9
50:18,19 62:2 67:4
67:6 78:2 101:6
120:25 137:18
**government** 24:6
99:19
**graduate** 25:16 26:5
**graduated** 25:20
**Grainger** 4:9
**gratuities** 103:18,23
104:7
**gratuity** 68:3 103:19
107:20 108:3
109:10 148:9
**great** 6:13,22 105:10
**green** 37:14
**ground** 6:8 7:24
**group** 1:8 4:24 63:11
63:12
**guess** 7:7
**guest** 76:17
**guests** 77:23
**guilty** 20:21,25

_____
**H**
_____

**H** 72:2 155:16 156:3
**H-E-R-N-A-D-E-Z**
25:15
**hah** 6:18
**half** 17:17 117:2
**hand** 66:19 157:21
**handbook** 46:9,14
117:21,24 156:7
**handle** 152:18
**hands** 57:11 152:11
**handwritten** 82:11
**happen** 82:17
**happened** 36:25 64:4

Case 1:25-cv-04490-AS    Document 76-9    Filed 12/12/25    Page 165 of 178

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

166

66:14 77:17 86:5
  136:6
**happy** 71:17 94:15
  97:5 98:6 100:7
**harass** 138:17,17
  142:3
**harassed** 96:17,17,18
**harassment** 98:17
  136:2 142:13
  143:14
**hard** 50:7 67:8,9
**harmed** 142:14 143:2
  143:6
**Harry's** 28:2,23
  29:13,16,19,23
  30:16,19,25 31:16
  31:21 32:6,11 35:9
  41:18,21,24 42:2
  48:13,18
**head** 27:14 74:8,23
**health** 23:4,6,11,11
  23:15,24 155:10
**hear** 78:10 152:25
  153:3
**heard** 125:6
**hearing** 71:6 133:25
**hearings** 147:12
**held** 1:17,17 18:6
  29:22 71:19 81:6
  102:17
**help** 85:18 127:12
**helped** 45:11
**hereinbefore** 157:12
**hereto** 3:4
**hereunto** 157:20
**Hernandez** 25:14,15
**hey** 31:3
**high** 25:9,13,20 104:3
**highest** 41:5
**highlighted** 112:22
**hire** 38:6
**hired** 36:3,13 37:2
  38:3 39:10 72:15
**history** 110:16
  155:23

**holding** 105:6
**home** 31:18
**hoodie** 13:18
**hopefully** 6:9 133:22
**Hospitality** 1:8 4:23
  51:12
**hostesses** 66:3,7
**hotspot** 120:22
**hour** 17:17 47:16,19
  47:22,23 48:3,4,6
  61:25 62:9,11,16
  87:14 90:17 101:2
  103:3 104:20 105:4
  105:9 123:10,10,15
  123:15,18,19
  143:12,15
**hourly** 21:20 47:9
  89:5 90:8 104:24
**hours** 8:7 31:18 54:2
  54:4,15 58:14,17
  70:15 71:2,16 87:6
  87:10,12,13,13
  89:16 90:5,8,16,20
  91:3,20,24 92:2,3
  92:12 116:22,23
  117:2,12 143:22
  144:2,4,5,7,8
**house** 10:17
**housing** 24:25
**huh** 6:18
**hundred** 39:7
**hurt** 144:19
**husband** 14:17 19:17
**hypothetical** 137:21

------

**I**

**I9** 38:22
**idea** 113:12,20
  114:21 117:11,16
  126:16 131:22
  153:15
**Identification** 44:17
  101:15 102:11
  107:4 110:14
  111:17 114:6 115:7

117:19 118:8 119:6
  120:10 124:10
  125:11 127:21
  129:23 130:11
**identify** 134:13
**identity** 134:4 141:8
**immigration** 144:20
**important** 6:7
**improper** 98:10,10
**inaccurate** 105:20
**include** 18:14 147:20
  147:24
**included** 66:13
  122:11 147:8
**including** 51:17
  81:22,23 143:21
**income** 21:20 24:13
**incorrect** 113:11
  123:8 129:3
**increase** 50:8 61:19
  62:7,9,16,22 63:5
  67:3
**increased** 62:3
**independent** 19:18
**indicating** 16:25
**indication** 106:2
**individual** 13:16
**individually** 95:14
**individuals** 65:9
**inexperienced** 93:18
**info** 126:23
**informal** 5:25
**information** 23:19
  24:13 37:10,12
  53:23 71:11 73:7
  104:14,16,17
  113:15 115:24,25
  123:8 126:22
  129:12 130:24
  137:10,13 150:5
**informed** 28:24
  48:24 67:22 126:20
  128:16 130:8
  131:10 141:23
  144:18 148:4

**initial** 111:14 112:14
  113:13 124:19
  155:24
**injured** 22:20 143:4
**injury** 22:21,22
**input** 37:11
**inputting** 37:11
**inside** 43:8
**instruct** 11:11,14
  97:21
**instructed** 11:20
**instructing** 51:6,22
  100:6
**instruction** 8:22
  129:7
**instructions** 135:11
**instructs** 7:16
**insurance** 21:12 22:2
  22:6 23:11,16 155:9
**interchangeably**
  43:10
**interested** 95:9
  128:19,20,23,24
  138:18 157:19
**internet** 100:15
  121:10
**interpreter** 2:13 4:3
  4:7,11 8:13,24
  41:24 47:3 53:8
  71:5 74:12 77:15
  129:9 130:17
  133:11 152:22,25
  153:8
**interpreting** 129:6
**interrogatories** 114:5
  114:10,18 155:25
  155:25
**interrupt** 11:13,18
  18:22
**interrupting** 11:21
  17:22
**interruptions** 18:5
**interview** 36:8,14
  41:18,20,25
**interviewed** 36:6

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

167

**intimate** 17:14
**intimidate** 17:13
**involved** 21:5 122:14
**Irene** 125:3
**Irrespective** 20:24
**issue** 34:12 85:3
  134:5
**issued** 52:14 118:16
**issues** 141:3 153:21
**Italian** 20:13,14
  35:14,20,24
**items** 43:25

_____

**J**

**J-U-A-N** 25:14
**Jamaica** 2:9,9
**Janos** 36:6 39:21,23
  42:17,18 45:6 50:6
  53:17 68:8 76:6,15
  77:4,7,7,8 79:22
  83:5,14 84:4 85:23
  87:24 88:13,17
  89:11 118:13
  119:12,14,16,19
  140:19
**Janos's** 89:16 152:3
**Javier** 2:4 125:13
  126:2,14
**jnussbaum@jk-llp...**
  2:6
**job** 6:13,22 11:20
  22:10 27:13,22
  29:15,22 32:6,9
  35:14,19,19,23,24
  36:22 39:9 40:2
  45:22 46:2,7 50:13
  56:16,19 58:18,19
  65:21,25 72:8 75:15
  78:2 92:22 102:2
  116:19
**jobs** 35:25
**join** 12:11 127:8,12
**joined** 125:17 144:19
**joint** 131:7
**jointly** 18:11

**Jose** 62:20
**Josef** 2:6 4:17 52:16
**Joseph** 2:3,15 10:18
**journal** 71:12
**Juan** 25:14
**judge** 17:20 51:9,23
  51:24 52:3 98:6
  124:21 132:19
  136:25 137:6
**Julio** 74:8 75:13,14
  75:17,20,23 76:24
  77:5,8,18 78:9
  79:24 81:18 83:15
  84:19,21 86:24 89:2
  91:9 113:23 118:13
  118:23 148:20
**June** 15:4 105:23
  106:9
**justice** 93:23,24 94:3
  94:20,23 96:11,13
  135:22

_____

**K**

**k** 4:1 5:1 6:1 7:1 8:1
  9:1 10:1 11:1 12:1
  13:1 14:1 15:1 16:1
  17:1 18:1 19:1 20:1
  21:1 22:1 23:1 24:1
  25:1 26:1 27:1 28:1
  29:1 30:1 31:1 32:1
  33:1 34:1 35:1 36:1
  37:1 38:1 39:1 40:1
  41:1 42:1 43:1 44:1
  45:1 46:1 47:1 48:1
  49:1 50:1 51:1 52:1
  53:1 54:1 55:1 56:1
  57:1 58:1 59:1 60:1
  61:1 62:1 63:1 64:1
  65:1 66:1 67:1 68:1
  69:1 70:1 71:1 72:1
  72:2 73:1 74:1 75:1
  76:1 77:1 78:1 79:1
  80:1 81:1 82:1 83:1
  84:1 85:1 86:1 87:1
  88:1 89:1 90:1 91:1

  92:1 93:1 94:1 95:1
  96:1 97:1 98:1 99:1
  100:1 101:1 102:1
  103:1 104:1 105:1
  106:1 107:1 108:1
  109:1 110:1 111:1
  112:1 113:1 114:1
  115:1 116:1,22
  117:1 118:1 119:1
  120:1 121:1 122:1
  123:1 124:1 125:1
  126:1 127:1 128:1
  129:1 130:1 131:1
  132:1 133:1 134:1
  135:1 136:1 137:1
  138:1 139:1 140:1
  141:1 142:1 143:1
  144:1 145:1 146:1
  147:1 148:1 149:1
  150:1 151:1 152:1
  153:1 154:1 155:1
  156:1
**Kataev** 2:10 4:13,14
  4:22 11:6,13,18,22
  16:23 17:8,14,19
  18:3,7,17 19:2
  21:23 23:22 24:21
  32:2 51:8,16,23
  52:4,8,10,22 53:2
  55:20,24 70:6 71:17
  72:6 82:24 88:4
  90:10 91:16,19
  97:25 98:5,12 99:5
  99:9,12 101:6,10,24
  102:16 106:19
  108:15 110:20
  111:2,20,24 112:3
  113:21 115:4,20
  116:8,12,13 129:6
  129:14,19 130:19
  133:13,15,19
  135:10,12 137:22
  141:17,19 142:17
  142:21,23 152:21
  153:6,10,24 155:6

  156:13
**Katherine** 1:3,16 2:4
  4:5,20 9:8 14:22
  44:18 52:20 53:25
  72:7 88:8 101:12,14
  102:10 107:9
  108:18 114:4
  116:17 133:16
  154:5,16 155:3
  158:5,18
**Kathy** 9:13,14
**keep** 6:12,23 11:8
  18:20 69:10,14,18
  70:14 71:11 80:7
  92:12 98:3,10
  150:10 151:7
**keeps** 18:23
**kept** 63:8 70:25
  80:18
**Kirschenbaum** 2:3
  2:15 10:19
**kitchen** 50:6,13,15,17
  50:25 60:24 61:2
  76:8,17 105:17
  146:9
**knew** 121:6 151:8
**know** 5:16 13:18
  18:17 33:4 39:7
  52:6 63:20 66:12,12
  66:14,17 73:22
  74:16 75:7 77:25
  79:6,15 80:15,23,24
  81:15 82:9,10 88:13
  90:24 91:23 92:5
  97:6,9 103:17 104:2
  104:10,10,10
  106:11 112:14,21
  117:6,12 121:9
  122:6 124:13 125:3
  125:13,14 127:22
  130:4,18 131:15
  132:3,19 134:14,21
  135:13 136:7 140:5
  144:23,23,24
  145:15,16,19,23

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

168

148:8,19 150:3,15
**knowing** 128:20
**knowledge** 13:6
  32:15 33:14 34:11
  50:3 53:21 62:21
  63:4,6 65:9 66:15
  68:2 79:3 80:12
  88:10 89:25 107:23
  112:6 126:14,17
  128:11 130:6
  131:11 134:8
**known** 120:22

────────────

**L**

**La** 1:8 5:4 16:8 32:18
  33:10 35:10,14,19
  35:23 36:4 42:2,8
  42:23 44:24 46:17
  53:24 55:25 56:16
  56:19 57:2,5 58:15
  59:3,7,12,20,23
  60:12,15 61:5 63:7
  102:22 120:21
  128:2 134:5
**labeled** 104:15
**labor** 21:9,25 22:8
  44:10,15 155:19
**language** 8:17,25
**largely** 153:20
**late** 31:18 76:4 82:18
**Laura** 78:23 79:14
  83:23
**law** 10:18 14:5,10
  44:10 94:9,25 95:7
  95:19,22,23 96:22
  97:16 98:22,25
  143:16 155:19
**laws** 44:15 95:3 96:8
**lawsuit** 12:12 21:4,5
  21:15 33:8 93:21
  95:5,15 97:11
  122:14 125:17
  126:15 127:2,4,9,13
  128:12 134:7,10,18
  139:21 140:10

141:25 142:5,10
  144:19,25 146:16
  147:8 149:5 152:11
**lawyer** 132:13 148:25
**lawyer's** 11:17
**lawyers** 153:21
**leadership** 146:13
**learn** 26:20 27:3 38:3
  72:13
**learned** 72:16,22
  127:3 147:7
**learning** 72:20
**leash** 11:9
**leave** 43:20,25 61:3
**leaving** 22:11 35:18
  35:23
**led** 79:24
**left** 16:14,18,25 35:9
  39:16,19 40:16
  42:18 53:20 54:8
  64:2,4 66:13,15
  67:12,24 102:18
  105:16 111:5
  119:11
**legal** 2:8,14 94:2
  153:21
**Let's** 51:8,23 52:2
  85:10 153:24
**letter** 119:8,20,20
  131:7 134:8,9 156:8
**level** 45:7
**Lexington** 60:3
**lie** 140:18
**lied** 140:4,14
**life** 95:15
**light** 88:14
**line** 11:15 133:21
  155:14,14,15
**LINE(S)** 158:5
**list** 21:19 64:23 81:19
**listed** 103:18 113:14
**Listen** 75:16
**listens** 71:7
**little** 99:6
**live** 14:16 20:4 32:25

**lived** 102:21
**living** 19:17
**LLC** 2:8
**LLP** 2:3
**location** 102:2
**loft** 43:16
**log** 37:20 57:22
  106:15
**log-in** 141:7
**logical** 72:18
**long** 15:17 16:5 27:7
  46:24 58:20 60:7
  67:5 82:14 86:7
  122:20,25
**longer** 22:22 66:6,9
  79:6
**look** 44:18 58:2 82:3
  92:7 123:6 130:14
**looked** 12:23 29:7
  145:8
**looking** 7:6 18:18
  96:11,21 108:16,17
  115:21,23 135:22
  135:25
**lost** 146:20,21
**lot** 31:17 78:18 84:13
  127:15 130:24
  133:9 152:7
**loud** 6:12
**lowest** 40:25 89:25
**lunch** 71:15
**Luncheon** 71:21

────────────

**M**

**M-A-G-A-L-I-S**
  32:13
**Madame** 32:3 53:8
**Magalis** 32:13,15,20
  36:21 38:5 39:22
  49:11,15 72:24
  73:10,17 87:23
**Magalis's** 49:12
**mail** 119:22
**mailed** 119:25
**maintain** 32:20,22

50:21 63:11 126:7
**maintained** 23:11
**makeup** 27:16
**making** 50:7 105:8
  152:9
**male** 36:11,12
**males** 139:6
**man** 13:17
**manage** 63:15
**management** 48:24
  49:9 89:11 99:14
  130:20
**manager** 34:17 39:21
  42:17 49:2,13,14
  53:17 75:14,23
  77:11 78:4,6 84:20
  84:22,23 85:4,13,14
  94:6 113:23 117:11
  118:23 119:14
  149:22
**manager's** 36:9
**managers** 118:12
**mandatory** 80:16
  148:17
**Manhattan** 56:5
  59:15 60:3
**manner** 70:25
**Maria** 2:13 4:2
**Marianna** 1:9 4:24
  5:14,16,20 86:21
  120:25 121:14,17
  121:19,21
**mark** 44:13 55:20
  111:12 152:21
  153:7
**marked** 44:17 55:22
  101:12,15 102:5,11
  107:2,4 110:13,14
  111:17 114:2,6
  115:6,7 117:18,19
  118:7,8 119:5,6
  120:10 124:7,10,23
  125:9,11 127:18,21
  129:18,23 130:10
  130:11 153:9

Case 1:25-cv-04490-AS     Document 76-9     Filed 12/12/25     Page 168 of 178

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025
169

155:13
**marking** 129:14
**marriage** 19:7
    157:18
**married** 19:3,4,6,9
    19:12,14
**Marsella** 20:16,17
**Marusella** 20:17,18
**math** 91:6
**matter** 129:8 139:3
    157:19
**matters** 152:10
**maximum** 47:18
    124:13
**Mayor** 120:23,25
    147:18,20,24 148:2
    148:5
**mean** 43:16 45:25
    47:21 67:19 80:5
    93:24 96:13 106:3
    108:4 122:9 131:19
    142:17
**meaning** 77:8
**means** 83:8 103:21
    116:20,23,23 122:6
**media** 100:21
**Medicaid** 23:3
**Medicare** 23:2
**medication** 8:7
**meet** 9:23 13:22
**meeting** 11:24 36:24
    84:4,14 118:13,19
**meetings** 12:3 76:2,3
    77:6,9,18,19 79:24
    80:2 83:14
**members** 128:21
**memory** 7:10 91:4
    109:2 125:18 126:3
**men** 138:16,19,22
**mentioned** 83:22
    135:21,25
**menus** 76:20
**merit** 62:22
**message** 33:12 36:17
    63:11 83:10 88:18

89:6
**messages** 89:4,9,10
    155:11
**met** 11:23 12:2
**middle** 9:15 33:25
    84:17 132:14
**mind** 78:24 123:4
**minimum** 28:25
    30:15,20 31:4 42:9
    42:11 47:13,22,25
    49:6,16,17,18,22
    50:8 61:25 62:3,13
**minute** 101:7 153:25
**minutes** 133:13
    152:14
**miracle** 128:13
**miracles** 127:6
**miscommunication**
    34:19,20
**misstate** 141:4
**mistaken** 64:11,22
**misunderstanding**
    34:4
**misunderstood** 35:22
**Molina** 2:4 125:13,22
    126:15 127:3
**Molina's** 126:2
**moment** 83:19
**Monday** 56:17
**monetary** 100:25
**money** 18:20 26:11
    40:25 50:7 57:7
    94:8,14,21,22 95:4
    96:8,21 97:15 123:2
    142:4 143:16
    153:17
**month** 15:8 19:9 23:8
    23:9 24:17,19 25:18
    27:17,19 28:3,6,9
    55:10,10,11,11
    84:25 86:9 127:2
**monthly** 117:15
**months** 10:24 27:9
    33:6 34:15,23 36:2
    58:20,21 60:8,9,14

79:11 151:15
**Montor-Peran** 2:4
    128:15
**Montor-Teran** 10:8
    127:25 128:18
**Montor-Teran's**
    125:25
**morning** 4:14,19,21
    8:20
**motion** 133:17
**move** 8:21 26:13 80:2
    95:15 98:14 129:15
    140:3 142:9
**moving** 134:10
**multiple** 43:2
**mumbling** 6:18

─────────────

# N

**N** 2:2 72:2,2,2 157:2
**n's** 116:19
**name** 4:22 9:8,11,15
    9:15 13:18,20 14:18
    14:20 20:14 25:13
    26:2 27:25 32:12
    36:9 37:20 56:6
    58:24 60:23 63:2
    78:25 79:14 102:2,3
    102:18 106:15
    113:2 116:15,15
    117:10 125:6,15,20
    125:23 126:2
    128:14,17,24 129:3
    134:3 150:25 158:4
    158:5
**names** 78:14,16,22
    83:21
**Natalia** 149:21
    150:10,13,15 151:3
    151:4,6,17,18
**need** 7:22 17:8 68:21
    85:18 88:13 97:16
    116:17 134:23
**needed** 34:13
**needs** 133:11
**never** 12:4 19:14

20:21 21:3,10 33:17
    39:2,3,13 42:14
    44:21,25 55:6 56:21
    61:12 62:10 66:23
    67:7 68:4,12,16
    87:16,19 90:5 93:14
    101:21 105:3,5,15
    105:17,22 106:6,12
    109:21,24 111:3,4,8
    117:8 118:4,5
    119:10,20,24,25
    120:3,3 123:18
    125:6 127:10,22
    133:23 141:2,10,13
**Nevermind** 24:20
    140:3
**new** 1:1,20 2:5,5,9
    4:4,8,10 21:8,25
    22:7 35:19 120:21
    120:23 157:4,10
**nickname** 9:14
**Nicole** 151:2,3,4,5,18
    151:22
**night** 40:7,10,18,20
    56:9 66:22 67:17
    77:23 78:3 80:6,6
    81:4,8,17,18 82:15
    150:2
**normal** 61:21
**Notary** 1:19 3:5 4:4,7
    154:20 157:9
    158:20
**Note** 82:22
**notebook** 71:12
**noted** 154:13
**notes** 82:11
**notice** 1:17 29:7
    38:17,24 64:23 73:4
    107:19 113:10,19
    124:24
**notified** 72:25
**notifying** 57:17
**November** 132:15
**number** 7:9 34:8,22
    37:6 49:23,25 90:16

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

91:3 102:3 113:10
113:22 115:18,19
116:2,3,6,7,9,11
117:9
**numbers** 30:9 63:15
63:19 110:19,21
126:10,12 128:9
**numerous** 113:14
**Nussbaum** 2:6 4:18
8:18 9:2 10:16 11:4
11:8,16 12:25 14:7
15:10 16:15 17:5,12
17:16,25 18:9,24
19:5 26:16 29:3
30:17,22 36:19
38:19,25 39:6 42:4
42:12,20 44:7 47:15
47:20 48:2,9,14
51:6,19,25 52:6,19
53:14,22 55:18,23
67:10 71:14 74:10
75:3 77:13 80:20
82:22 90:18 91:18
91:22 93:22 94:4,11
94:17,24 95:6,16
96:3,7,10,25 97:8
97:18 98:3,8,16,24
99:7,11,24 100:5,19
101:4 105:14,21
106:5 108:13
109:19 110:11,19
111:18,22 112:7,9
112:16,19,23 113:3
113:8 114:15
115:13 116:5,10
117:4 119:18 122:7
123:3,21 124:5,17
127:14 128:22
129:4,8,11,25 130:3
130:16 131:9 132:8
132:17,21 133:8
134:11,16,20 135:5
135:8,15,18,23
136:5,10,18 137:5
137:20 138:13,24

139:7,15,23 140:8
140:21 141:22
142:2,6,11,16,19
143:3,8,18,24
144:16,22 145:10
145:14,18 146:2,22
146:25 147:10,15
148:3,10,18 149:17
152:12,19,23
153:14,18 154:8,10

---

## O

**O** 157:2
**oath** 6:2 12:9
**obey** 95:3,7,19,22
98:25
**obeying** 94:25 95:23
96:8,21 97:15 98:22
**object** 17:11
**objected** 11:19
**objection** 7:15,17
8:18 9:2 10:16
12:25 14:7 15:10
16:15 19:5 26:16
29:3 30:17,22 36:19
38:19,25 39:6 42:4
42:12,20 44:7 47:15
47:20 48:2,9,14
53:14,22 55:18
67:10 75:3 80:20
82:22,23 87:15
90:18 91:22 93:22
94:4,11,17,24 95:6
95:16 96:3,7,10,25
97:8,18 98:16,24
100:19 101:4
105:14,21 106:5
108:13 109:19
110:11 112:7,16,19
112:23 113:3,8
114:15 115:13
117:4 119:18 122:7
123:3,21 124:5,17
127:14 128:22
129:4 130:16 131:9

132:8,17,21 133:3,8
134:11,16,20
135:15,18,23 136:5
136:10,18 137:5,20
138:13,24 139:7,15
139:23 140:8
141:17,22 142:2,6
142:11 143:3,8,18
143:24 144:16,22
145:10,14,18 146:2
146:22,25 147:10
147:15 148:3,10,18
149:17 152:12
153:14,18
**objections** 3:12
**obtain** 23:5 24:10
143:15
**Obviously** 67:6
**occur** 50:4 84:14
86:8
**occurred** 50:5,9
70:14
**October** 14:23 28:12
36:3 47:14 131:16
**off-the-record** 18:6
52:10 71:19 81:6
102:17
**office** 10:22 11:17
14:10 44:3
**offices** 10:18 11:2
**Oh** 140:16
**okay** 4:17 5:12,15
6:10,15,18,19,24
7:13,19,23 16:20
17:23 18:24 22:5
24:2 42:6 45:11
52:4 53:11 55:23
59:21 67:25 76:5
82:19 95:2 99:4,11
101:6 103:14
104:21,25 114:22
117:17 118:6,23,25
119:13 120:19,20
123:6 124:2,19
125:8,21 127:7

132:6 133:10
136:24 139:4,19
140:23 143:11
149:13 150:22
153:8
**old** 19:24
**omit** 141:4
**once** 54:25
**one-page** 124:24
**one-sided** 18:12
**ones** 64:8
**online** 92:8
**opened** 76:2
**opening** 92:18
**openly** 79:25
**opens** 77:5
**opinion** 78:6
**opportunity** 18:14
**opposing** 18:5
**order** 1:17 24:9
51:21 52:17 53:7
57:21 96:24 97:3
98:6 113:6 130:13
130:20 156:11
**orders** 77:9
**organization** 127:12
**organize** 152:2
**organized** 76:2
**organizing** 127:8
**original** 13:10,12
120:8 156:9
**Osteria** 1:8 5:4 16:8
32:18 33:10 35:10
35:14,19,23 36:4
42:2,8,23 44:24
46:17 53:24 55:25
56:15,19 57:2,5
58:15 59:3,7,12,19
59:23 60:12,15 61:5
63:7 102:22 120:21
128:2 134:4
**outcome** 157:19
**outside** 50:23 68:9
128:5
**owed** 28:25 95:13

Case 1:25-cv-04490-AS    Document 76-9    Filed 12/12/25    Page 170 of 178

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

171

103:19,19,23 104:4
153:12,12
owner 85:17 86:4,15
86:18
owners 120:24
146:17

**P**

p 2:2,2 128:24
p.m 54:4,7,18 56:12
56:12 71:21,23
106:10 154:13
pad 38:10
page 59:17 104:13
106:22 108:16,17
108:20 115:21,22
115:23 117:23,24
121:24 127:19
155:5,8,13,17 156:4
158:5
pages 102:13 106:20
110:15 155:23
paid 26:25 31:8 42:9
47:2,6,10,23 48:3,5
48:23 49:16,22 57:4
57:9 67:22 70:16
71:2 88:23 94:8,13
95:24 104:11,19,23
105:4,15,17,22
106:7 109:6 123:10
123:14,18,19
145:17
paper 38:12 136:11
paragraph 120:18
123:6 124:3
Paralegal 2:14,15
part 21:16 28:25 30:5
66:4 67:16 72:8,10
86:25 110:22
128:12 141:25
participate 8:2 72:7
72:14
participated 146:4
participates 77:9
particular 84:9,11

88:22 104:23 109:8
114:24
particularly 131:20
parties 3:4 18:11
76:21 157:17
party 45:6 107:13,13
109:25 133:25
passed 26:15 35:20
35:25
passport 16:25
password 37:20
68:21,22,23 69:2
106:15
patch 51:24
patience 53:3
Patricio 126:3,15
pay 30:19 38:18,24
42:10 88:25 90:15
93:25 95:13 98:17
98:19 103:2 106:4
108:5 109:24
110:16 123:8,22
145:9 148:13
155:23
paycheck 40:14
103:10
paying 89:5 109:14
payments 63:25
payroll 115:19
117:12 145:20
paystub 57:13,17,21
58:2 92:4 104:13,14
105:19,23 106:9
145:6
paystubs 37:24 92:11
102:7 123:7 145:6,9
pdf 101:25
penalty 6:2
pending 7:21
people 34:14 64:2
73:19 76:3 78:9,11
78:15,18 83:20
84:11,13,13 93:9
percent 9:3,7 39:7,7
68:3,4,5,7 79:8

107:19,20 108:3,4,5
108:6,8,9 109:9,10
109:20 149:15,18
149:20,21 150:6,8,9
150:10,12,12,14
151:5,6,7,9,13
percentage 9:4,5
73:22 146:21 150:3
Perez 74:8 75:13,14
75:17,20,23 77:18
78:9 113:23 148:20
perform 92:25 93:19
performance 76:14
118:12
performed 91:14
performing 50:13
107:14
perjury 6:2
permission 76:5
119:2
person 22:20 28:18
39:11 62:17 66:21
67:23 89:11 127:22
127:24 132:24
133:4,7
personally 137:18
143:22 145:16
Petrosayants 5:7,10
Petrosyants 1:9 4:24
120:24 121:6
phone 63:15 69:19,24
70:8,10 83:9 126:10
126:12 128:9
photo 70:21
photographer 19:19
photos 70:20,24
phrase 121:25
physical 66:19
physically 57:10
68:18 143:4
picture 44:15 69:25
77:10 88:16 155:19
pictures 69:22 70:3,8
70:9,13,19 74:19,22
75:2,9 82:2 119:21

148:24 149:4,8
155:11
place 43:16,18,19,25
44:12 56:7,8,11
82:6 101:11 110:12
125:8
placed 52:16 115:2
129:20 146:12
placing 106:25 114:2
115:5 118:6
Plaintiff 1:5,16 4:5
10:8 51:11
Plaintiff's 52:15
111:20
Plaintiffs 2:3 18:13
70:6 111:25
plan 71:14 124:18
130:20
planner 71:12
planning 149:5
plate 80:23
played 35:5
please 6:16,20 11:13
47:5 52:22 82:23
83:25 88:14 89:14
98:15 103:22 135:9
139:9 140:22
pleasure 127:15
pled 20:21,25
plenty 142:20
plus 43:6,8
point 30:8 37:19
48:25 65:11,12 66:3
66:8,12
points 30:2,4,5,11
49:4,5 64:8,9,13
65:13,14 81:21 87:5
87:10,11 146:23
policies 89:17
policy 141:15
pool 29:19 30:5 64:10
65:21,22 66:8 67:24
72:8,11,12,14,21,22
73:2,5,7,12,24 74:3
74:6,19 75:21 80:4

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

172

80:16 81:5,11 86:25
87:5 89:3,15 91:10
104:11 146:5
149:25 150:4
portion 18:14
position 30:2 40:5
74:14,20 75:5,11
80:21 141:24
positions 30:9
possession 10:13
144:10
possibly 117:14
147:13
posters 44:10,16
155:19
posts 100:21
precertification
110:23
prefer 123:2 139:5
preference 138:21
139:4
preparation 10:3
13:22 14:6
prepare 9:17,19,24
18:4 52:22
prepared 147:12
present 2:12 23:10
76:6 117:17 150:22
presentation 112:20
presented 12:10
130:23 143:9
presenting 136:6
Presumably 86:4
pretrial 124:20
pretty 8:16 52:19
149:13
previously 72:3
131:24
primarily 40:3
principle 143:2,7
print 68:10,14,18
69:13,17 76:20
106:9
printed 105:23
106:12,12 108:24

prior 15:12 48:12,17
134:7
private 148:24
privilege 129:13
privileged 88:12
probably 35:7 116:23
problem 18:18 31:11
34:5 76:9,18,19
152:3
problems 77:24 95:9
152:7,8
procedure 66:20
proceed 18:8,9,16,21
52:17 53:7 110:24
proceeding 5:25
process 53:4 81:16
82:14
produce 69:21 70:4
80:9 144:11
produced 59:8 70:7
80:14 101:13
110:21 115:9
production 16:24
17:9 21:24 23:23
24:22 70:9 89:10
110:23
professional 33:25
134:19
program 27:11
promised 137:24
promoted 39:13
proof 74:18 119:21
proper 33:18
proposed 130:13
protective 51:21
provide 8:3 23:19
24:13 37:15 106:14
114:25 126:21
133:24
provided 14:13 46:6
46:9 58:4 129:2
148:25
providing 135:10
Public 1:19 3:5 4:4,7
154:20 157:9

158:20
pull 57:22
punch 37:6
purchasing 154:9
pursuant 1:17
pursue 143:11,14
153:16
put 7:14 18:10 40:12
45:5 64:8 74:6
puts 7:16
putting 51:13 89:21
137:13

_____

Q

qualifications 140:15
QUEENS 157:6
question 6:21,25 7:3
7:16,18,21,22 11:10
16:3 32:3,4,22
35:17,22 38:21 42:5
47:5 48:16 51:7,13
52:23,24 53:4,10,12
59:16 61:24 62:6
68:13 69:17 73:25
74:11 75:15,16,16
75:17 77:17 78:18
81:7 82:19,23,25
83:13 85:23 86:24
87:2,20 88:4,6,9,14
88:22,23 89:15,20
95:11 96:20 97:15
97:19,23 98:2,4,7,9
98:10,13,13,15
99:25 100:7 106:8,8
110:4 113:22
117:23 122:23
129:7,10,25 132:9
134:23,24 135:4,5,6
135:7 136:13,13
139:9 140:17,17,22
141:18,20 142:21
questions 3:12 5:19
8:4 11:7 17:17
51:17,20 52:14 53:6
73:13,20 78:3,5

89:6 98:11 106:23
107:7 114:16,19,25
120:6,18 133:20,21
154:3,7
quick 91:16 153:24
quicker 6:9
quit 31:19,20
quote 39:13 52:13

_____

R

R 2:2 72:2,2 157:2
racist 139:10
raise 85:3 93:6
105:12,12 139:13
139:17 140:20
raised 123:23,24
rate 21:20 38:18,24
47:9 90:9 103:3
104:24 123:8
Raul 83:23
reached 95:11,25
99:21 100:3
read 17:21 18:4 32:2
32:5 52:22,24 53:4
53:12 88:4,6 100:7
114:21 120:14,17
121:4 141:19,20
reading 108:2
ready 18:8 52:17
real 128:17
realize 128:14,17
149:20
really 50:6 125:24
142:14
reapply 23:18
reason 7:21 8:2,10,24
140:19 153:5 158:5
recall 63:18,19
123:13 126:5
recalling 146:10
receipt 108:24
receive 22:6,21 23:2
24:3,25 31:3 39:8
40:22 57:16,17,21
61:6 62:17 67:17

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

173

72:21 73:8 81:3
85:15 89:23 90:16
90:17 95:2 98:21
105:8 122:15,17,21
122:22
**received** 25:7 28:20
37:19 39:2,3 40:5
41:2,5,16 46:13
57:7,10,13 61:5,10
61:12 62:22 63:5
66:4,8,18,23 67:2
69:11 74:5 75:20
80:17 81:5,8,10,12
87:16 88:25 89:8,20
89:22 90:2 91:13
103:8,12 105:3,5
109:8 115:11
119:10,21,24 120:3
139:13,17 145:9
**receiving** 39:4 83:15
89:2
**recess** 52:9 71:21
101:9 133:14 154:4
**recognition** 62:2
**recognize** 101:19
102:9 107:9 108:18
110:17 112:4,8,10
112:25 113:16
114:7,11 115:12
117:7,9,21 120:12
121:3 124:9,13
125:10 127:20
129:22 130:2,5,24
148:16
**recollection** 7:6,11
104:8 108:25 131:6
**recommendation**
62:2,19
**recommended**
105:11
**record** 7:15,17 18:10
51:10 52:2,7,16
71:14 81:7 83:24
90:10 97:20,22 99:7
101:24 102:8,16

106:19,25 108:15
113:21,25 115:4,20
115:22 118:10,12
118:16 124:12
129:20 133:19
156:8 157:14
**records** 65:18 69:10
70:14 80:3,9,12
81:24 82:5 92:12
101:13 107:5 115:9
145:20 155:20
156:6
**recover** 153:17
**recovery** 138:2
**redacted** 115:9 156:6
**refer** 5:9,10 30:4 94:9
**reference** 147:20
**references** 147:18
**referred** 32:4 52:24
53:12 88:6 111:14
141:20
**referring** 5:3,7,13
12:11 13:3 30:4
43:10 49:5,6 108:20
**refers** 104:4 112:21
**reflect** 90:10 106:19
106:25 108:15
113:25 115:4,20,23
124:12 129:20
**refresh** 104:8 108:25
109:2 125:18 126:3
**refused** 118:17
**refusing** 98:2
**regardless** 45:17
88:10
**register** 76:10
**regular** 54:23 76:2
76:25
**regularly** 90:8
**relate** 51:20
**related** 5:21 12:15
52:14 53:6 59:6
113:15 157:17
**relating** 141:16
**relation** 43:24 50:13

**relationship** 50:18,19
51:5 53:17
**relationships** 145:2
**relevance** 11:4,9,11
**relevant** 11:19 17:18
**relief** 96:20 135:13
135:17
**relying** 153:20
**remains** 95:11
**remember** 10:23
16:13,16,22 19:10
23:9 24:19 25:19
26:4,4 27:19 28:6,9
29:7 30:8 39:4 41:3
41:6 44:11 46:12
47:9,13 58:21,23,24
59:5 61:16 62:4
64:9,11,15,18,21
65:15,17,19 78:15
78:25 84:7,15,25
88:3 125:15,19,19
125:24 130:5 131:3
131:4 145:5,11
**renew** 23:15
**renewal** 23:23 155:10
**rent** 14:14,15
**repeat** 35:17 47:5
53:9
**repeatedly** 123:17
**rephrase** 7:2 42:6
66:6
**replace** 39:21
**report** 76:11 110:16
117:15 155:24
**reported** 39:16 58:11
88:24
**reporter** 1:19 6:13,17
32:3,5 52:25 53:9
53:13 88:7 141:21
154:8 157:8
**reports** 81:24 82:4
**represent** 22:18
44:14 89:7 110:15
111:13,15,24 114:3
114:9 115:8 117:20

118:9 119:7 120:8
130:12 138:12,21
138:25 139:2 145:3
**representation**
111:19 114:11
**representative** 136:9
136:14,17 137:2,3
**representatives**
137:7
**represented** 108:23
125:16 131:24
**representing** 132:11
**Republic** 14:25 15:6
15:25 16:6,9,13
25:12,25
**request** 17:4 22:4
23:25 24:24 70:12
89:13 132:20
**requests** 17:6 155:8
**require** 18:11
**required** 21:19 38:8
72:10,13 73:23 74:5
**requirement** 73:5
**research** 121:14
**researched** 121:11
**reserved** 3:13
**resident** 136:22
**resolution** 95:12
137:18
**resolve** 76:19 95:14
96:2,6,24 97:17
98:23 132:5 134:9
**resolved** 95:5 131:14
**respect** 66:16 142:24
**respective** 3:3
**respond** 17:9 153:2
**responding** 17:12
**response** 85:16 89:14
89:16
**responses** 114:4,10
115:2 155:25
**responsibilities** 29:16
44:25 45:22 46:3
54:9 136:9,16,19
**responsible** 92:15,18

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

174

127:7
responsive 17:6
rest 136:7 138:16
  139:2
restaurant 5:4,20
  15:20,24 16:21
  20:11,13,15 21:14
  21:16 22:12 32:8,16
  34:13 35:15,20,24
  39:10 42:23 43:15
  43:22 44:5 45:8
  49:12 50:23 53:20
  54:7 56:25 58:25
  59:3,10 60:5,16,23
  70:14 72:8 73:20
  74:9,15 75:18 76:14
  79:4,7,16 91:11,14
  92:13,16 95:3,12,23
  99:17,23 100:12,17
  100:22,23 102:24
  107:15 108:10,25
  109:13,14 110:3,5
  110:16 126:8,11,19
  128:3 134:8 138:5
  139:22 140:12,15
  141:9,12 143:16
  144:11 145:12
  146:6 147:5 148:20
restaurants 60:13,19
  109:3,5
restroom 52:2
result 85:12 86:11
  90:8 99:14 146:12
resume 36:18
resumed 72:3
retained 156:13
retaliation 143:13
returned 17:2
revenge 94:3
review 10:2,5,11 89:7
  129:24
reviewed 145:20
reward 50:9 62:16
right 17:20 18:13
  37:8 38:15 40:7

44:6,10 45:12 47:19
  48:18 50:19 63:9,25
  66:9 67:14 73:17,20
  74:6,9 77:3,6 78:24
  82:12 86:5 88:3,25
  90:17 91:2,7,14
  92:19 93:15 95:7
  103:2,8 108:12
  109:18 117:3,8
  123:20 132:12
  135:22 136:22
  139:14 142:5,15
  149:20 150:13
  151:9
rights 143:10
Rob 5:8,11,16,19
  86:21
Rob's 147:21
robbed 122:16,18
  135:19,20
Robert 1:9 4:24
  120:24 121:20
role 28:16 35:5 39:24
  42:17 49:12 64:10
  146:13
roles 28:20 45:17
romantic 51:4 53:16
room 43:14 50:15
Rule 122:2 145:24
rules 6:8 7:24 18:10
ruling 55:21,22
  129:15,18 152:21
  153:7,9 155:13
run 97:22
runn 116:19
runner 39:12,15 40:2
  45:4 56:23,25 64:21
  64:24 65:2,7,8,12
  66:24 80:21 93:19
  93:20 116:20
  148:19
runners 50:16 64:17
  64:20 65:10,13,20
  92:21,23,24 93:14
Ruthayn 1:18 4:3,7

157:8,25

## S

S 2:2 155:16 156:3
S-A-N 59:2
S-I-N-A-Y-S-K-A-...
  125:4
Sage 2:8,14
sames 83:22
sampling 102:6
San 59:2,11,23 60:21
sanctions 129:15
satisfy 95:14,18 96:5
save 63:15 69:24
  135:8
saved 69:19
saving 63:19
saw 78:19,20 109:9
  109:17,21 111:4
  127:22 131:4
saying 34:3,9,18 66:5
  66:7 70:21 105:5
  118:4 119:16
  122:24 131:2 132:6
  134:22 151:23
says 77:10,15,18
  101:20 103:2,23
  104:21 113:23
  116:2,6,6,10,14,19
  116:22 119:14
  122:2 123:7 137:25
  150:9
schedule 33:17 54:23
  55:9 56:7,10 60:10
  60:11 93:20
scheduled 124:20
  131:18
scheduling 130:13,20
  156:11
school 25:9,13,21
  26:22 27:11
schooling 26:19 27:5
screen 44:12 70:7,10
  70:22,24 88:19
  90:11 101:11 105:6

107:2 110:12 114:2
  115:5 118:6 125:8
  129:21 130:9
  155:11
scroll 106:21 115:21
sealing 3:8
search 100:15
second 86:8,11,14
  99:5 103:25 104:13
  105:11 116:14
  120:5
section 104:15
Security 23:7
see 68:19 69:15 73:4
  85:20 101:17,20
  103:15 104:21
  111:5 115:15 116:2
  116:5 117:5 118:2
  118:10,14,24 119:9
  119:13,13 122:4
  123:11
seek 51:21 138:12,21
seeking 101:2
seen 44:21 101:21
  111:3,8 117:8 131:3
selected 92:25
selectively 70:7
send 33:12 36:17
  119:23
sense 100:25 134:22
sent 88:15,16,17
  113:9 134:9
sentences 121:3
separate 31:15 51:11
  92:11 104:15
  142:10
separated 35:13
  100:16
separately 60:14
  67:18
separating 22:11
separation 138:7
September 131:8
serve 29:17 40:3
served 75:13,18

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

175

109:23 111:25
**server** 18:19 39:14
  64:6,6,7,7 66:20
  74:8
**servers** 64:14 65:20
  65:24
**service** 77:22 107:20
  108:4,6 148:9,13,14
  148:16 149:20
**serving** 45:12,15,19
  48:7
**session** 71:23
**set** 85:18 114:10
  157:12,21
**Setting** 68:17
**settings** 46:22
**settlement** 137:17
  147:13
**seven** 64:11,12,22
  108:17 144:5,7
**sexually** 138:17
**Shahmuradyan** 1:9
  4:25 5:13 120:25
**Shalom** 1:18 4:3,7
  157:8,25
**share** 80:18 119:4
**sharing** 90:11 111:10
  130:9
**sheet** 109:23 124:9
  158:2
**sheets** 140:25
**shift** 40:20,23 41:2,6
  54:13,13,19,21,24
  55:6
**shoes** 77:20,21
**short** 52:9 99:6 101:9
  133:14 154:4
**shorthand** 1:19
**shot** 88:19
**shots** 70:7,10,22,25
  155:11
**show** 44:14 111:12
**showed** 109:22,24
  113:4
**showing** 102:5

115:10 117:24
  124:23
**shown** 92:2,3 113:6
**shows** 90:12 103:6
  115:17,24 116:15
**side** 44:2
**sign** 12:14 118:17,25
  138:4,8
**signature** 117:25
  118:15,24 119:15
**signed** 12:7 38:23
  76:15,15 118:4,12
  119:11
**signing** 46:12
**similar** 63:12
**similarly** 1:4
**Simple** 123:23
**Sinayskaya** 125:3
**single** 41:2,6 127:19
**sir** 7:25 13:24 67:11
  80:21
**sit** 76:16 88:9
**situated** 1:4
**six** 41:10,12 90:23
**sixth** 16:17
**SKWRAO** 51:10
**slash** 64:24
**small** 43:20
**social** 23:7 37:13
  100:21
**socialize** 128:5
**socialized** 50:23
**solution** 152:9
**somebody** 72:23
**someway** 127:3
**sooner** 122:22 123:2
**sorry** 35:16 41:19
  47:3,5,21 74:12
  143:13 153:3
**sort** 95:2,12
**sought** 132:23
**sounds** 125:14,23
**SOUTHERN** 1:1
**space** 115:16 117:25
  140:17

**Spanish** 2:13 4:2
**spanned** 7:9
**speak** 12:20 36:21
  86:3,14 100:17
**speaking** 58:14 68:9
  136:12 137:8
**special** 45:14 67:14
  68:9,13,15 69:7
  92:24 93:6,11,15,18
  93:19 104:8,12
  105:17 107:19
  149:16,23 150:4
**specials** 76:8
**specific** 16:12
**specifically** 7:15
  72:20 123:17
**spell** 14:20 26:23
  36:9 83:24
**spelling** 129:3
**spent** 143:22
**spoke** 33:5 79:9,18
  118:20 140:18
**spoken** 32:23 86:18
  147:3
**spreadsheet** 101:25
**ss** 157:5
**stamps** 22:24
**start** 54:2
**started** 27:18 28:4,17
  28:18,23 31:9 35:9
  39:11 40:21 42:7
  46:17 47:14 54:5,22
  55:2 61:24 65:5
  74:19 84:19,21,23
  85:6 102:22 123:22
  148:22
**starting** 35:19,24
**State** 1:20 4:4,8 21:8
  21:25 22:8 157:4,9
**stated** 123:9
**statement** 12:8
**statements** 123:9
  134:13 146:17
**States** 1:1 15:3 19:13
  21:8 26:13,18 27:5

27:14,23 136:23
**stating** 4:8 46:13
  105:8
**station** 43:4
**stations** 43:5,6,10
**status** 144:20 147:21
**stay** 40:10 58:19 99:9
**stayed** 39:15 61:21
  62:8
**staying** 9:21
**steakhouse** 27:24
  28:2,24 29:13,16,20
  29:23
**stepped** 39:23
**STIPULATED** 3:2,7
  3:11
**stipulations** 4:15,16
**stole** 94:6 98:19
  142:4
**stop** 11:21 17:23
  60:21
**stopped** 26:12,14
  66:5
**straight** 44:6
**strain** 144:25
**Street** 4:9 27:24
**strike** 153:6
**stub** 91:13 92:6,7
  106:4
**studies** 26:10
**subject** 5:25 21:14
  51:15 53:6
**subjected** 141:15
**subjects** 5:21
**submitted** 18:12
  21:24 131:7
**Subscribed** 154:18
  158:19
**suffering** 98:20
**sufficient** 95:25
  98:22
**suing** 134:5 143:2,6
  150:12,12
**Suite** 2:5
**summary** 103:10

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

176

110:16 155:23
**summer** 58:23
**Sunday** 56:17
**support** 26:12
**supporting** 20:6
**sure** 4:18 19:10 45:9
    47:12 51:16 52:19
    59:17 60:4 71:17
    74:18 82:24
**sworn** 3:5 4:3,6 72:3
    154:18 157:12
    158:19
**system** 30:5 37:8,16
    37:21,24 38:8,24
    57:22,25 65:11
    68:10,14,19 69:12
    72:22 76:8 77:12
    80:22 88:24 92:8
    108:24 141:9

**T**

**t** 72:2 128:18,25
    155:16 156:3 157:2
    157:2
**table** 76:16,18 78:2
    80:23
**tables** 46:22 67:12
**take** 6:17 7:20 45:6,8
    52:2 56:18 76:10,11
    78:4,6 80:22 82:14
    90:15 91:16 101:7
    122:20,25 127:13
    129:24 145:13
    149:8 152:10
    153:24
**taken** 47:18,24 48:12
    48:17 52:9 67:14
    70:10 101:9 118:18
    133:14 154:4
**talk** 32:24 77:25
    85:17 99:2
**talked** 67:12 70:20
    86:12
**talking** 48:19 72:20
    94:12 117:10

121:19,20
**talks** 149:19 153:4
**task** 127:13
**tax** 38:22 58:12
**taxes** 58:8
**tell** 6:25 15:8 27:17
    30:13 36:21 45:3,6
    45:8 46:19 56:7,10
    57:19 72:18 73:10
    76:7,13,19 85:11
    87:4,25 89:14 106:6
    121:17,21 128:19
    137:12
**telling** 35:4 51:19
    67:7,25 71:7,9
    93:17 106:13 110:2
    114:22 152:15
**tells** 77:21,22 104:19
**ten** 47:16 49:7 63:21
    123:14,16,22,25
    139:13 144:4
**terminate** 35:6
**terminated** 34:24
    119:17
**termination** 94:3
    119:8,20 141:24
    156:8
**testified** 4:10 61:16
    61:24 72:4 77:5
    89:19 90:4 103:7
    123:17 126:2
    149:13
**testify** 8:8 78:16
**testifying** 6:3
**testimonies** 131:19
**testimony** 5:24 42:14
    55:5,17 75:6 97:10
    103:5 105:19
    123:13 126:25
    133:24 157:14
**text** 36:17 63:11
    83:10 88:18 89:4,10
    155:11
**thank** 17:8 18:3
    32:14 53:3 67:8

76:22,23 81:15
    130:3 153:7 154:5
**thanks** 33:12
**theft** 146:17
**thereabouts** 23:14
**thing** 33:25 38:15,17
    47:4 67:22 70:23
    74:23 95:9 106:6
    132:5 151:22
**things** 21:20,21 45:10
    65:3 70:13 87:10
    93:25 94:2
**think** 8:10 9:7 16:16
    33:24 35:22 47:4
    59:10 60:3 66:2
    101:6 117:14 133:9
    144:3,9 152:14
**Third** 6:20
**thought** 31:17
**threated** 141:11
**three** 22:13 28:13
    30:8 33:6 36:2 43:6
    46:25 52:14 55:3
    71:16 74:17 75:4
    79:11 91:25 103:18
    113:22 150:14
    151:15 153:24
**time** 4:16 7:14,14,20
    9:21,22 10:21 11:16
    11:23 12:5 14:2
    15:11,13 16:9 23:18
    26:15 30:14 31:22
    31:24 33:5,13 35:8
    35:12,13,18,20,25
    36:7 37:19,23,23
    38:7 40:21 41:13
    44:24 45:18 49:21
    53:24 54:2,2,10
    56:18 59:19,24
    60:14,15 62:13 63:7
    63:14 65:10 67:5
    79:9,18 83:12 86:14
    86:17 101:7 105:12
    114:24 122:21,25
    123:4 129:24

130:25 132:16
    140:25 148:23
    149:8,11 153:4
    154:5,13
**times** 10:25 12:2
    45:19 55:3 97:14,19
    97:23 123:25
    129:11 153:2
**timestamp** 106:3
**tip** 29:19 30:5 41:21
    41:22 42:3,9,18
    47:13,17,25 48:6,11
    48:15,16 49:17 50:9
    61:14,17,19,25
    62:13 64:10 65:21
    65:22 66:8,19,22
    67:8,17,24 72:7,10
    72:14,21,22 73:2,4
    73:7 74:3,6 75:20
    80:3,16 82:20 86:25
    87:2 89:15,22 91:10
    104:24 109:20,24
    115:9 142:25
    145:13 146:5
    148:14,15 149:15
    150:7 156:6
**tipped** 40:7,10
    145:16 153:11
**tipping** 81:16 82:14
**tips** 28:20,24 30:15
    40:5,13,22 41:2,16
    42:9 48:7,10,23
    49:17,22 58:11 61:5
    61:9,12,21,21 63:23
    64:2,3 66:4,8,13,23
    67:12,13,18,23 69:6
    69:6,7,8,10 70:15
    71:2 72:19,21 73:11
    73:23 74:2,5,6
    75:20 80:5,5,17,24
    81:3,5,8,9,10,12,20
    83:15 85:14,15
    87:14 89:3,20 94:6
    98:18 103:18,19
    104:4,4,7 108:5

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

177

115:11 117:15
141:16 146:21
149:25
**title** 28:16 39:9 75:15
130:21
**titles** 29:22
**Toast** 37:8,16,19,21
38:8,24 57:22,25
68:10,14,19 69:13
77:14,16 81:19 82:5
82:7,8 92:7 106:16
108:24 141:8
**today** 5:19,24 7:7
8:13,25 13:17,23
14:6 88:9 97:10,13
123:14 129:11
142:20 144:6,7,15
154:6
**today's** 8:3 9:17,19
12:21 51:15 143:21
**told** 29:5 31:2,3
41:21,22 42:2,3,8
42:14,18 48:15 49:9
49:11 50:6 63:23
68:4,5,6 72:16,23
73:11 86:3,14 87:19
88:10,13 104:7
105:15 106:11
109:21 118:20,23
119:2,22,25 122:20
137:2 146:8 150:6
153:2,3
**top** 93:5 102:18
121:24
**total** 90:15,16 144:8
150:3
**totaling** 103:12
**touch** 38:10
**touches** 51:14
**track** 71:2
**trained** 46:21 47:7
**training** 46:16,19,23
46:24 47:2 48:3,19
48:20
**transcript** 10:11

154:9 157:13
**transcripts** 10:5
**translate** 53:8 74:10
112:9 130:17,18,19
**translated** 112:12
**translation** 130:21
**travel** 16:24 155:9
**treated** 138:11
139:12
**trial** 3:13 147:13
**tried** 69:4 129:11
**true** 74:2 76:24 93:4
93:16 105:10
157:14
**truth** 128:19
**truthful** 8:3,11
**truthfully** 8:8
**try** 134:9
**trying** 17:13,14 98:8
99:5
**turn** 52:20
**twice** 11:3 55:4,7
**two** 11:25 12:5 16:7
26:15 27:9 34:8,8
34:12,15,15,16,22
34:22,23 35:2,11,25
41:14 53:5,19 58:20
60:9,13,14 65:2
77:15 89:6 91:25
102:13 106:20
115:16,23 116:19
151:15 152:14
**two-week** 35:5
**type** 26:19 27:4,10
56:22 70:21
**types** 69:7
**typical** 56:10
**typically** 54:12 103:7

---

**U**

**Uber** 19:19
**uh** 6:18
**ultimately** 80:17
**understand** 5:5,22
6:3,4,8,25 7:4,5,12

7:18,24 8:19,25 9:3
9:4,6 30:3 38:20
42:5 49:8 56:24
61:23 66:18 69:23
73:25 74:21 75:6
84:3 92:9 96:19
108:3,8 109:16,17
110:2,8 122:23
131:5 136:8,24
138:20 140:16
141:18 144:13
150:11 153:21
**understanding** 22:19
47:17 74:22,25
88:17 109:11
136:15
**understood** 7:3 8:21
31:12 32:14 33:19
47:4,23,24 48:5,10
48:11,16,22 55:5
98:21 106:18
109:20
**unemployment** 21:12
21:19 22:2,6 155:9
**unfortunately** 118:21
**uniform** 75:25
**United** 1:1 15:2
19:13 21:8 26:13,18
27:5,13,23 136:22
**university** 25:23 26:2
**unquote** 39:13
**unusual** 52:7
**upset** 33:19,22
**use** 37:6 43:12,13
133:11
**user** 37:20 106:15
**uses** 76:25
**usual** 4:15 53:25
54:13,15
**usually** 54:10

---

**V**

**v** 158:4
**vacation** 15:21 34:4
34:16 35:5

**vacations** 33:23 34:2
34:7,9,14,15 149:12
**value** 137:24
**varied** 90:22
**various** 96:19
**verbal** 38:4 83:16
116:17
**verbally** 29:5 30:13
83:6,17
**verbatim** 52:16
**vest** 76:24
**video** 52:20
**violated** 143:16
**violations** 94:9
**VIPs** 78:2
**virtual** 5:25 11:24
12:3
**virtually** 132:25
**visit** 10:18 15:6,9,9
15:17 16:5
**visited** 10:21 15:13
**vocational** 27:10
**voice** 6:12

---

**W**

**W2** 38:11 58:4,8
**W4** 38:15,22
**wage** 28:25 30:15,20
31:4 42:9,11 47:13
47:25 49:6,17,17,18
49:22 50:8 61:19,25
62:3,13 101:2 123:9
142:25 143:11,14
**wages** 61:17 67:3
70:16 71:2 89:22
91:11
**waiter** 68:22,22
74:23 83:20
**waiters** 50:24 64:13
76:12
**waiting** 6:23 9:21,22
**waitress** 28:19 31:10
150:20,23
**waitress's** 150:25
**waitresses** 64:14

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

178

76:12
**waived** 3:9
**Wall** 27:24
**Walter** 78:23 79:10
    83:22
**Walter's** 78:25
**want** 7:7 17:7,20 18:2
    18:9 51:17,20,24
    52:7 59:16 91:16
    94:20 95:19,20
    96:24 97:2,4 98:17
    98:19,20 119:24
    122:15,17,22
    124:13 132:5 140:5
    140:21 143:10
    147:8,25
**wanted** 8:20 18:15
    81:15
**wasn't** 44:22 49:5
    50:15 61:23 118:21
    121:19 128:16
    139:18 143:4
**way** 38:13 44:6 45:23
    45:25 46:2,3 70:15
    82:20 85:18 86:13
    88:11 90:14 106:22
    109:18 110:8 127:7
    132:3 143:6 145:17
    146:14 157:18
**ways** 138:10
**wear** 75:25
**wears** 76:24,25 77:3
**week** 15:18,19 34:22
    34:22 40:13 41:8,16
    54:25 55:3,7,10,10
    55:11,11 58:14
    79:19 81:11 88:23
    89:20,22,23 90:2,5
    90:7,19,21 91:13,21
    92:4 104:23 117:3
    145:9
**weekly** 57:4
**weeks** 11:25 12:5
    16:7 22:14 31:9
    34:12,15,16 35:2

39:12 41:14 53:20
    91:25,25
**went** 11:17 15:5,9
    25:23 26:20 61:17
    67:24 148:21
**weren't** 46:10
**WhatsApp** 63:12
    83:11 88:18
**WHEREOF** 157:20
**Williams** 14:19
**willing** 137:4
**withdrawing** 142:21
**withdrawn** 16:4
    24:19 41:19 80:2
    92:2
**witness** 17:13 51:6
    97:25 100:6 113:16
    113:19 133:25
    135:10 140:21
    155:2 157:11,15,20
**witness's** 16:24 70:8
    70:10
**witnesses** 113:14
**women** 138:22
**words** 6:16 38:20
**work** 15:22 22:20,21
    22:22 31:17 32:7,10
    32:19,21 33:17 34:6
    40:17 41:8,12 50:6
    50:9,16 54:19,21,24
    56:2,16,18,19,22
    58:15,17 59:11 60:7
    60:16 62:2 64:3
    67:8,9,16 71:2 76:4
    76:4 78:19,21 84:23
    90:17,19 91:4,14,20
    92:25 95:8 102:23
    104:11 107:18
    110:6 117:2 125:21
    133:9 138:17
    140:18 148:21
**worked** 33:13 40:16
    44:22 48:10 50:12
    50:22 53:24 54:12
    54:15 55:6 56:9

58:21 59:24 60:14
    60:15 63:7,9,14,16
    70:15 72:19 74:17
    75:4 82:20 83:20
    84:11 87:12,13,14
    90:5,20,22 91:4
    92:3,12 95:10
    102:24 116:22,23
    126:8,11 128:3
    141:14 146:5
**worker** 19:18 67:4,6
    127:25
**workers'** 22:15,19
**working** 15:19,24
    16:8 18:20 20:8
    28:4,23 30:16 31:9
    31:21,22,24 32:16
    33:3 40:20 42:7
    48:4 50:19 53:25
    54:22 56:15,25 57:2
    57:4 59:12,19,23
    60:16,18,21 75:9
    79:3,7,16 85:14
    102:22 111:6 126:5
    137:8 147:4 148:20
    148:22 149:6
    150:20
**workplace** 128:6
**works** 19:19 139:17
**world** 123:5
**worse** 138:11
**wouldn't** 123:2
**writing** 17:3,20 22:3
    23:24 24:23 29:6
    30:12 38:4 70:11
    83:6,7 87:7,17
    89:12
**written** 46:6 73:4
    128:24
**wrong** 47:4 76:14
    94:2 134:14 136:21
**wrote** 83:9

─────────────
                X
─────────────
**X** 1:2,11 155:16

156:3

─────────────
                Y
─────────────
**year** 15:11,14 23:8,14
    24:17,18 25:18
    27:20 28:3,5,9 58:5
**year-and-a-half** 26:8
**years** 7:10 15:8 26:7
    26:17 27:18 28:14
    74:17 75:4,8
**yesterday** 133:16
**York** 1:1,20 2:5,5,9
    4:4,8,10 21:8,25
    22:7 120:21,23
    157:4,10

─────────────
                Z
─────────────
**Z** 72:2
**Z-O-N-Y** 26:24
**Zony** 26:22 27:3,8,20
**Zoom** 1:18 51:25
**zoomed** 124:12

─────────────
                0
─────────────

─────────────
                1
─────────────
**1** 44:13,17 155:19
**1,000** 130:23
**1,100** 103:6,12
**1,200** 89:24
**1,300** 89:24
**1.50** 104:24
**1:07** 71:14,21
**1:46** 71:23
**10** 47:23 48:4,6 49:22
    61:17,25 62:14
    103:3 118:7,8 156:7
**10:00** 54:18
**10:05** 1:12
**100** 9:3 39:7 79:8
**10006** 2:5
**101** 155:20
**102** 155:21
**107** 155:22
**11** 62:11 119:5,6
    123:10,19 156:8

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

179

| | | | |
|---|---|---|---|
| **11:00** 54:7,18 56:12 | 151:14 155:14 | 108:4,6,9 109:9 | **7** 114:3,6 155:25 |
| **11:30** 54:11,17 | 156:11 | 149:20,21 150:9,10 | **70** 155:11 |
| **110** 155:23 | **18211** 2:9 | 150:12 151:7 | **700** 90:3,7,12 91:6 |
| **111** 155:24 | **19** 119:8 | 155:21 | |
| **11368** 4:10 | **1970** 115:17 116:3 | **3:10** 101:8 | **8** |
| **114** 155:25 | **1993** 14:23 | **30** 84:13 110:15 | **8** 1:12 115:6,7 124:25 |
| **11423** 2:9 | | 155:23 | 156:6 158:4 |
| **115** 156:6 | **2** | **300** 41:7 | **89** 155:11 |
| **117** 156:7 | **2** 101:12,15 124:8 | **311** 125:10 156:10 | |
| **118** 156:7 | 155:20 156:9 | **320** 2:5 | **9** |
| **119** 156:8 | **2.50** 62:16 | **33** 106:22 | **9** 117:18,19 155:15 |
| **12** 120:7,10 127:19 | **2:54** 106:10 | **34** 106:22 | 156:7 |
| 156:9,10 | **20** 63:22 68:5,7 | **38** 58:16 | **9th** 157:21 |
| **12.50** 50:2 61:17,20 | 109:20 126:12 | | |
| 62:4,6,8,14 105:12 | 128:8 149:15,18 | **4** | |
| 123:15,16,22,25 | 150:6,8,12 151:6,13 | **4** 107:3,4 131:8 155:6 | |
| 139:13 | **200** 40:24 89:20 | 155:22 | |
| **12:00** 54:11 | **2018** 15:4 19:6 | **4:00** 54:4,6,18 56:12 | |
| **120** 156:9 | **2019** 23:9,10 27:21 | **4:30** 54:5,6 | |
| **124** 156:9 | 28:5 | **4:40** 133:19 | |
| **125** 156:10 | **2020** 27:19 | **4:45** 54:5 | |
| **127** 156:10 | **2022** 7:9 28:12 47:14 | **40** 58:16 90:19 91:20 | |
| **129** 155:14 156:11 | **2023** 84:24,25 85:4 | **41** 58:16 90:5,8,12,19 | |
| **13** 124:8,10 129:22 | **2024** 15:15 58:5 | 91:6 | |
| 156:9,11 | 123:9 | **44** 155:19 | |
| **130** 156:11 | **2025** 1:12 7:9 10:9 | **45** 2:5 | |
| **14** 108:21 124:24 | 15:12 85:5 105:23 | | |
| 125:9,11 156:10 | 106:10 119:8 127:2 | **5** | |
| **145** 117:2 | 131:8 154:19 | **5** 105:23 106:9 | |
| **145.51** 116:24 117:10 | 157:21 158:4,20 | 110:13,14 155:23 | |
| **15** 47:11,11,22 48:3 | **22** 36:3 155:9,14 | **5:00** 54:5 133:22 | |
| 49:7 62:9 104:24 | **23** 122:2 145:24 | **5:33** 154:13 | |
| 105:4,8,13,15,18,22 | 155:10 | **50** 41:16 | |
| 106:7 123:10,18 | **24** 8:7 15:17,25 | **50-1** 107:6 155:22 | |
| 127:18,21 130:10 | 155:10 | **50-2** 102:7 155:21 | |
| 144:8 156:10 | **25** 16:3,6,10,13 | **53** 117:24 | |
| **15.50** 104:20 | **25cv-4490(AS)(GS)** | **55** 155:14 | |
| **153** 155:15 | 1:6 | **58-35** 4:9 | |
| **16** 129:21,23 156:11 | **26** 14:23 | | |
| **16.50** 104:22 | **28th** 131:16 | **6** | |
| **17** 90:17 155:9 | **29** 123:6 124:3 | **6** 111:13,17 155:24 | |
| **17.07** 90:9,12 91:7 | **2nd** 10:9,15 13:25 | **6-2** 106:21 | |
| **18** 68:3,4 107:19 | | **60** 9:7 | |
| 108:3,5,8 109:10 | **3** | **6E** 4:9 | |
| 130:10,11 151:5,9 | **3** 102:6,11 107:20 | | |
| | | **7** | |