UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
KATHERINE FERNANDEZ, on behalf of herself and
others similarly situated,                                            **Case No.: 1:25-cv-4490 (AS) (GS)**

                                        Plaintiff,

                -against-

BULLDOZER HOSPITALITY GROUP, INC., d/b/a
OSTERIA LA BAIA, ROBERT PETROSYANTS and
MARIANNA SHAHMURADYAN,

                                        Defendants.
----------------------------------------------------------------X

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

**SAGE LEGAL LLC**
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)
emanuel@sagelegal.nyc

*Attorneys for Defendants*
*Bulldozer Hospitality Group, Inc.,*
*Robert Petrosyants, and*
*Marianna Shahmuradyan*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

STANDARD OF REVIEW ...................................................................................................... 2

ARGUMENT ....................................................................................................................... 3

I.    DEFENDANTS ARE ENTITLED TO UTILIZE THE TIP CREDIT BECAUSE
      PLAINTIFFS RECEIVED BOTH VERBAL & WRITTEN NOTICE ................. 3

II.   PLAINTIFFS ARE NOT ENTITLED TO LIQUIDATED DAMAGES
      BECAUSE THEY FAILED TO ESTABLISH LIABILITY UNDER THE FLSA
      & NYLL ..................................................................................................... 8

III.  PLAINTIFFS RECEIVED WAGE NOTICES, PRECLUDING RELIEF
      UNDER NYLL § 195 .................................................................................. 11

IV.   ISSUES AS TO LIABILITY AND DISPUTES AS TO FACT PRECLUDE
      DAMAGES FOR TIP CREDIT CLAIMS ................................................... 13

V.    PLAINTIFFS ARE NOT ENTITLED TO PREJUDGMENT INTEREST AS
      THEY FAILED TO ESTABLISH LIABILITY ............................................. 14

VI.   THE INDIVIDUAL DEFENDANTS ARE NOT EMPLOYERS ........................ 14

CONCLUSION ................................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

Aguilar v. Ham N Eggery Deli Inc.,
    No. 15-CIV.-2781, 2019 WL 4247228 (E.D.N.Y. Sept. 5, 2019) .................................... 11

Alves v. Affiliated Care of Putnam, Inc.,
    No. 16-CV-1593 (KMK), 2022 WL 1002817 (S.D.N.Y. Mar. 30, 2022) ....................... 12

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986).................................................................................................... 13

Borley v. United States,
    22 F.4th 75 (2d Cir. 2021) ............................................................................................ 2

Cabrera v. Dream Team Tavern Corp.,
    No. 12-CIV.-6323, 2016 WL 6208245 (E.D.N.Y. Apr. 29, 2016) ............................ 10-11

Carter v. Dutchess Cmty. Coll.,
    735 F.2d 8 (2d Cir. 1984)............................................................................................. 15

Carvente-Avila v. Chaya Mushkah Restaurant Corp.,
    2016 WL 3221141 (S.D.N.Y. Mar. 1, 2016) .................................................................. 4

Chang v. Louis Amsterdamn, Inc.,
    No. 19 CV 3056, 2022 U.S. Dist. LEXIS 177606 (E.D.N.Y. Sept. 29, 2022) ................ 7

Dolan v. Cassella,
    543 Fed. Appx. 90 (2d Cir. 2013) ................................................................................. 2

Fabrikant v. French,
    691 F.3d 193 (2d Cir. 2012)......................................................................................... 2

Feuer v. Cornerstone Hotels Corp.,
    No. 14-CV-5388 (JFB) (SIL), 2020 WL 401787 (E.D.N.Y. Jan. 24, 2020) ................... 14

Gavin/Solmonese LLC v. D'Arnaud-Taylor,
    68 F. Supp. 3d 530 (S.D.N.Y. 2014).............................................................................. 12

Gamero v. Koodo Sushi Corp.,
    272 F. Supp. 3d 481 (S.D.N.Y. 2017).............................................................................. 8

Gonzalez v. Masters Health Food Serv. Inc.,
    No. 14-CV-07603 (VEC), 2017 WL 3835960 (S.D.N.Y. July 27, 2017) .......................... 8

Gray v. Powers,
        673 F.3d 352 (5th Cir. 2012) ............................................................... 18

Hardgers-Powell v. Angels in Your Home LLC,
        330 F.R.D. 89 (W.D.N.Y. 2019) ..................................................... 12-13

Herman v. RSR Sec. Servs. Ltd.,
        172 F.3d 132 (2d Cir. 1999) ............................................................. 8, 18

Hernandez v. Jrpac Inc.,
        2016 WL 3248493 (S.D.N.Y. 2015) .................................................... 4, 6

Hicks v. T.L. Cannon Corp.,
        35 F. Supp. 3d 329 (W.D.N.Y. 2014) ...................................................... 5

Inclan v. N.Y. Hosp. Grp., Inc.,
        95 F. Supp. 3d 490 (S.D.N.Y. 2015) ......................................................... 4

Irizarry v. Catsimatidis,
        722 F.3d 99 (2d Cir. 2013) ...................................................................... 15

Jeong Woo Kim v. 511 E. 5th St., LLC,
        133 F. Supp. 3d 654 (S.D.N.Y. 2015) ................................................... 13

Jewish People for the Betterment of Westhampton Beach v. Vil. of Westhampton Beach,
        2:12-CV-3760 (LDW), 2013 WL 11322083 (E.D.N.Y. May 21, 2013) ........................... 8

Jewish People for the Betterment of Westhampton Beach v. Vil. of Westhampton Beach,
        778 F.3d 390 (2d Cir. 2015) ...................................................................... 8

Johnson v. Killian,
        680 F.3d 234 (2d Cir. 2012) ...................................................................... 3

Joseph v. Leavitt,
        465 F.3d 87 (2d Cir. 2006) ...................................................................... 12

Kasseris v. ZA & D Service Station, Inc.,
        No. 23-CV-06281 (NCM) (SDE), 2026 WL 84037 (E.D.N.Y. Jan. 12, 2026) ............... 12

Kerker v. BMDC Constr. Ltd.,
        No. 21-CV-9277 (PGG) (BCM), 2025 WL 2466630 (S.D.N.Y. Apr. 16, 2025) .............. 8

Khereed v. West 12th Street Rest. Grp. LLC,
        No. 15-CIV.-1363, 2016 WL 590233 (S.D.N.Y. Feb. 11, 2016) ...................................... 11

Looney v. Macy's Inc.,
    588 F. Supp. 3d 328 (E.D.N.Y. 2021) ................................................................. 3

Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,
    13 F.4th 247 (2d Cir. 2021) ................................................................................. 2

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986) ............................................................................................. 2

Mhany Mgmt., Inc. v. Cnty. of Nassau,
    819 F.3d 581 (2d Cir. 2016) ................................................................................. 2

Miller v. Terrillion,
    436 F. Supp. 3d 598 (E.D.N.Y. 2020) ................................................................. 2

Morales v. Quintel Entm't, Inc.,
    249 F.3d 115 (2d Cir. 2001) ................................................................................. 3

Ortega v. 2&5 Line Deli Grocery, Inc.,
    No. 22-CIV.-9170, 2025 WL 3469951 (S.D.N.Y. Dec. 3, 2025) ...................... 11

Reich v. S. New England Telecommunications Corp.,
    121 F.3d 58 (2d Cir. 1997) ................................................................................... 9

Reyes v. Sofia Fabulous Pizza Corp.,
    No. 13-CIV.-7549 (LAK) (JCF), 2014 WL 12768922 (S.D.N.Y. Apr. 7, 2014) ........... 6, 7

Reyes v. Sofia Fabulous Pizza Corp.,
    2014 WL 1744254 (S.D.N.Y. Apr. 24, 2014) ................................................. 6, 7

Sai Qin Chen v. E. Mkt. Rest., Inc.,
    No. 13-CIV.-3902 (HBP), 2018 WL 340016 (S.D.N.Y. Jan. 9, 2018) .............. 7

Salustio v. 106 Columbia Deli Corp.,
    264 F. Supp. 3d 540 (S.D.N.Y. 2017) ................................................................. 4

Santillan v. Henao,
    822 F. Supp. 2d 284 (E.D.N.Y. 2011) ............................................................... 14

Shahriar v. Smith & Wollensky Rest. Grp., Inc.,
    659 F.3d 234 (2d Cir. 2011) ................................................................................. 4

Tapia v. BLCH 3rd Ave. LLC,
    906 F.3d 58 (2d Cir. 2018) ................................................................. 15, 16, 17, 18

Teoh v. Manhasset Rest., LLC,
        No. 22-CIV.-4110, 2025 WL 3225038 (E.D.N.Y. Nov. 18, 2025) ................................. 10

TransUnion LLC v. Ramirez,
        594 U.S. 413 (2021) ....................................................................................... 12

Villada v. Grand Canyon Diner,
        No. 22-CIV.-2782, 2024 WL 3875778 (E.D.N.Y. Aug. 19, 2024) ................................. 12

Wang v. Keeper Holdings, Inc.,
        No. 24-CIV.-672 (CLP), 2025 WL 3623050 (E.D.N.Y. Dec. 15, 2025)......................... 10

Wirtz v. Pure Ice Co.,
        322 F.2d 259 (8th Cir. 1963) ............................................................................... 18

Zheng v. Liberty Apparel Co. Inc.,
        355 F.3d 61 (2d Cir. 2003)................................................................................... 18

**Statutes**

12 NYCRR § 146-1.3 .......................................................................................... 4, 6

12 NYCRR § 146-2.2 .......................................................................................... 4, 6

CPLR § 5001............................................................................................................ 14

CPLR § 5004............................................................................................................ 14

**Rules**

Fed. R. Civ. P. 56................................................................................................... 2

## PRELIMINARY STATEMENT

Plaintiffs' cookie-cutter summary judgment motion, which was copied and pasted from the dozens of other cases they have filed in this district, fails to establish that there is no genuine dispute over the material facts concerning the issues central to this motion.  It is as if Plaintiffs and their counsel did not even bother to read their own deposition transcripts or the documentary evidence produced in this case.  Instead, Plaintiffs bury their head in the sand and recycle arguments from cases which are inapplicable to the facts here.  As demonstrated in Defendants' cross-motion for summary judgment and this memorandum of law in opposition, Plaintiffs' bid for summary judgment must be denied because the evidence adduced in discovery undeniably contradicts their skewed view of the facts.

Plaintiffs first argue that Defendants are not entitled to the tip credit, but fail to address the fact that each of Plaintiff's pay stubs contains written notice of the tip credit and that courts permit use of the tip credit under both the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") when verbal notice of the tip credit is given.

Plaintiffs next argue that wage notices were never given to them because they have not been produced in this case, while ignoring their own testimony that they *did* receive wage notices.

Plaintiffs also argue that Defendants Robert Petrosyants ("Petrosyants") and Marianna Shahmuradyan ("Shahmuradyan") must be held liable under the FLSA and NYLL when there is no evidence whatsoever that they hired or fired front-of-house staff nor set their schedules, wages, and/or terms and conditions of employment at the restaurant.  Instead, the evidence undeniably establishes that Janos Paliko ("Paliko"), the general manager at the restaurant, exercised virtually unfettered discretion as to all personnel decisions for front-of-house staff such that summary judgment as to Petrosyants' and Shahmuradyan's liability as individual employers is inappropriate.

## STANDARD OF REVIEW

"Summary judgment is appropriate '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" See Mhany Mgmt., Inc. v. Cnty. of Nassau, 819 F.3d 581, 620 (2d Cir. 2016) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  It may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law." See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 13 F.4th 247, 259 (2d Cir. 2021). Facts are in genuine dispute when "the jury could reasonably find for" the non-moving party based on the evidence in the record. See Borley v. United States, 22 F.4th 75, 78 (2d Cir. 2021).

If the non-moving party has the burden of proof at trial, "the moving party need only demonstrate that there is a lack of evidence to support the non-movant's claim." See Dolan v. Cassella, 543 Fed. Appx. 90, 90 (2d Cir. 2013) (summary order); see also Miller v. Terrillion, 436 F. Supp. 3d 598, 600 (E.D.N.Y. 2020) ("Summary judgment is appropriate if the nonmoving party who bears the burden of proof at trial fails to offer proof concerning an essential element of the nonmoving party's case."). Where the movant satisfies this burden, the non-movant "must set forth specific facts showing that there is a genuine issue for trial and may not rest upon the mere allegations or denials of his pleading." See Dolan, 543 Fed. Appx. at 91.

The non-moving party must provide sufficient evidence establishing a genuine issue of material fact beyond "[t]he mere existence of a scintilla of evidence." See Fabrikant v. French, 691 F.3d 193, 205 (2d Cir. 2012). That is, "there must be sufficient evidence from which a reasonable finder of fact could find in the non-movant's favor." See Dolan, 543 Fed. Appx. at 91.

The court need only consider admissible evidence, and is not obligated to conduct an independent review of the record to identify a factual dispute. See Looney v. Macy's Inc., 588 F. Supp. 3d 328, 340 (E.D.N.Y. 2021).  However, in determining whether there is a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." See Johnson v. Killian, 680 F.3d 234, 236 (2d Cir. 2012) (*per curiam*) (citation omitted).  Critically, when considering cross-motions for summary judgment, "all reasonable inferences must be drawn against the party whose motion is under consideration." See Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001).

## ARGUMENT

## I.    DEFENDANTS ARE ENTITLED TO UTILIZE THE TIP CREDIT BECAUSE PLAINTIFFS RECEIVED BOTH VERBAL & WRITTEN NOTICE

Plaintiffs argue that they never received notice of the tip credit such that Defendants are not entitled to utilize the tip credit.  However, Plaintiffs' arguments are meritless, as they each acknowledged receiving verbal notice of the tip credit such that Defendants were permitted to utilize the tip credit under the Fair Labor Standards Act ("FLSA"). See Paliko Dep. at 38:24-39:25 ("All the time when I do the hiring, I – I give them the – the notice of the pay rate and everything. I go over all the requirements to be sure we are in accordance with the federal law and state." Q: "Do you give them something in writing?" A: "Yes." Q: "And do they sign it?" A: "Yes"). Moreover, two of the three Plaintiffs concede that they received their paystubs, in which they each received written notice of the tip credit.  See Defendants' Counterstatement of Material Facts ("CSMF") ¶¶ 70-73; see also Supplemental Statement of Material Facts[1] ("SSAF") ¶ 1, 6.

---

[1] Opt-in Plaintiff Javier Molina's ("Molina") deposition was on December 23, 2025.  His transcript is annexed here because Defendants moved for summary judgment on December 12, 2025.

While one Plaintiff denies receiving any paystubs, his self-serving testimony is belied by the forensic evidence submitted by Defendants in their cross-motion for summary judgment showing that Plaintiff logged in to his account with Toast and reviewed paystubs.  Id.

As such, this Plaintiff received written notice of the tip credit, as well.  In light of the foregoing undeniable and incontrovertible evidence, a jury could find in favor of the Defendants on these claims such that summary judgment must be denied.

"Both the FLSA and the NYLL permit an employer to pay a tipped worker a cash wage that is lower than the statutory minimum wage, provided that the cash wage and the employee's tips, taken together, are at least equivalent to the minimum wage." Inclan v. N.Y. Hosp. Grp., Inc., 95 F. Supp. 3d 490, 497 (S.D.N.Y. 2015); Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 239–40 (2d. Cir. 2011).

"The NYLL allows an employer to take a tip credit for tipped employees, subject to certain conditions similar to those under the FLSA." Hernandez v. Jrpac Inc., 2016 WL 3248493, at *23 (S.D.N.Y. 2015). An employer may take a tip credit "if a service employee or food service worker received enough tips and if the employee has been notified of the tip credit as required in section 146-2.2." Id. (quoting 12 NYCRR § 146-1.3).  The employer bears the burden of showing that they have complied with tip notice requirements; if the employer does not demonstrate compliance, it "is liable for the difference between the full minimum wage rate and what the employee was actually paid." Salustio v. 106 Columbia Deli Corp., 264 F. Supp. 3d 540, 554 (S.D.N.Y. 2017).

The NYLL also equally follows the relaxed notice standard of the FLSA.  Carvente-Avila v. Chaya Mushkah Restaurant Corp., 2016 WL 3221141, at *1 (S.D.N.Y. Mar. 1, 2016).

On March 4, 2015, the New York State Department of Labor ("NYSDOL"), issued an opinion letter to the Hon. Joseph D. Morelle, the Majority Leader of the New York State Assembly in response to the Assemblyman's inquiry to the NYSDOL concerning its interpretation of the intersection of the tip credit and notice of pay rules as a result of a federal court decision grappling with pre- and post-2011 claims for wage violations.  Hicks v. T.L. Cannon Corp., 35 F. Supp. 3d 329 (W.D.N.Y. 2014); ECF Docket Entry 76-4.

The NYSDOL was asked whether the regulations require, as a precondition to claiming a tip credit, that an employer provide written notice of the tip credit rules and, alternatively, whether an employer that fails to provide written notice of the tip credit rules may nonetheless claim a tip credit if the employer can demonstrate compliance with all of the minimum wage requirements and that their employees understood how  the employer took the tip credit.  ECF Docket Entry 76-4 at 1.

The NYSDOL answered: "Contrary to the Court's holding in Hicks, a food service employer *is eligible* to claim the tip credit *even when they fail to provide written notice* of the tip credit rules provided that the employer can demonstrate compliance with all of the other minimum wage requirements and that their employees understood the manner in which the employer took the tip credit."  Id. at 2 (emphasis added).

The Hon. Katherine B. Forrest, U.S.D.J.'s decision in Chaya Mushkah is both instructive and on point.  The Court there properly held that where an administrative body provides a rational basis for its conclusions, the judicial function is exhausted and the opinion letter is therefore entitled to deference.  Id. at *2.  In light of this, any contention by Plaintiffs that Defendants cannot claim they were paid at a tip credit minimum wage because they were allegedly not provided a written notice of their tip credit is simply inaccurate and misstates the law.

In finding that no written notice was required for an employer to claim a tip credit, the NYSDOL discussed, *inter alia*, the "need to prevent unintended consequences, such as loss of eligibility for the tip credit for otherwise compliant employers and an unjustified windfall for employees that have actual notice of their employer's tip credit practices," as there is "no policy rationale" for reading in a written requirement to Section 146-1.3, as "written notice is not necessary to protect employees that have *actual knowledge* of the tip credit rules."  ECF Docket Entry 76-4 at 2 (emphasis added).

Here, a wealth of evidence exists to find each Plaintiff received written notice of the tip credit.  See CSMF ¶¶ 70-73.  Each pay stub received by each Plaintiff contains a section called "Additional Information," which outlines their regular rate of pay per hour, the tip credit amount taken per hour, the number of hours they worked, the total amount of the tip credit taken, and the tip makeup if the tips they earn do not total or exceed the tip credit amount taken.  See ECF Docket Entry 73 ¶¶ 20-24 (explaining how the Toast system manages the tip credit and ensures all employees are paid at least the minimum wage if their tips do not make up the difference between the tipped wage and the minimum wage).

The paystubs are sufficient to serve as notice of the tip credit.  12 NYCRR § 146-2.2; Hernandez, 2016 WL 3248493, at *25 (notice under the NYLL must include "the amount of tip credit, if any, to be taken from the basic minimum hourly rate"); Reyes v. Sofia Fabulous Pizza Corp., No. 13-CIV.-7549 (LAK) (JCF), 2014 WL 12768922, at *8 (S.D.N.Y. Apr. 7, 2014), report and recommendation adopted, 2014 WL 1744254 (S.D.N.Y. Apr. 24, 2014) ("The defendants argue that the wage notice forms given to the plaintiffs at the time they were hired "set forth all of the [ ] information required by 12 N.Y.C.R.R. 146-2.2" …, and the plaintiffs do not appear to challenge this contention …. Comparing the template provided in Section 146-2.2 of the

regulations with the wage notices submitted by the defendants, it appears that the defendants did, in fact, provide the named plaintiffs with all the information required for tip credit notice under New York law"); <u>Sai Qin Chen v. E. Mkt. Rest., Inc.</u>, No. 13-CIV.-3902 (HBP), 2018 WL 340016, at *7 (S.D.N.Y. Jan. 9, 2018) ("The New York Department of Labor's website states: 'The employer may provide its own notice, as long as it includes all of the required information, or [the employer may] use the Department's sample notices. …'").  Because the paystubs contain all the required information, they are sufficient to provide written notice of the tip credit to Plaintiffs.

Plaintiffs argue that the failure to maintain a wage notice for a period of six (6) years as required under NYLL § 195 precludes the use of the tip credit.  Plaintiffs are incorrect, as recordkeeping obligations are not a precondition to take the tip credit.  <u>See</u> <u>Reyes</u>, 2014 WL 12768922, at *9 (violations of wage statement notice provision no longer invalidate the tip credit).

In light of the foregoing, Plaintiffs' argument that "[t]he undisputed facts show that Defendants paid Class Members pursuant to a tip credit even though they did not provide written notice of the tip credit, in violation of New York law" collapses under the pressure of the paystubs produced in discovery, which provide written notice of the tip credit to Plaintiffs.

Plaintiffs cite <u>Chang v. Louis Amsterdamn, Inc.</u>, No. 19 CV 3056, 2022 U.S. Dist. LEXIS 177606, at *21-28 (E.D.N.Y. Sept. 29, 2022), for the proposition that the mere assertion that notice was provided is insufficient to establish entitlement to the tip credit.  However, Plaintiffs' reliance on <u>Chang</u> is misplaced, because unlike in <u>Chang</u>, the Defendants here *have* provided evidence of written notice of the tip credit every week through the Plaintiffs' very own paystubs.

For the foregoing reasons, summary judgment on the tip credit claim must be denied. Defendants otherwise incorporate by reference herein all arguments made in their cross-motion for summary judgment. ECF Docket Entry <u>71</u>.

Such incorporation by reference has been recognized and accepted in this District. <u>Jewish People for the Betterment of Westhampton Beach v. Vil. of Westhampton Beach</u>, 2:12-CV-3760 (LDW), 2013 WL 11322083, at *1 (E.D.N.Y. May 21, 2013), <u>aff'd</u>, 778 F.3d 390 (2d Cir. 2015) (granting defendant "LIPA's" motion for "judgment on the pleadings [where] said Motion incorporated by reference certain arguments made by Defendant Verizon New York Inc. in its Motion to Dismiss").

Accordingly, for the sake of judicial economy, the arguments made in Defendants' motion should be incorporated by reference.

## II.    PLAINTIFFS ARE NOT ENTITLED TO LIQUIDATED DAMAGES BECAUSE THEY FAILED TO ESTABLISH LIABILITY UNDER THE FLSA & NYLL

Plaintiffs argue that they are entitled to liquidated damages because they claim Defendants took no steps to comply with the law. This argument is belied by the record, which shows Defendants took numerous steps to comply with the law. <u>See</u> <u>CSMF</u> ¶¶ 97-100.

As an initial matter, the question of liquidated damages only enters the fray upon establishing liability under the FLSA and NYLL. <u>Kerker v. BMDC Constr. Ltd.</u>, No. 21-CV-9277 (PGG) (BCM), 2025 WL 2466630, at *14 (S.D.N.Y. Apr. 16, 2025) ("because plaintiff has not succeeded on any claim brought under the NYLL, he is not entitled to liquidated damages under NYLL § 198(1-a)").

However, upon establishing liability, "[t]he employer [then] bears the burden of proving good faith and reasonableness." <u>Herman v. RSR Sec. Servs. Ltd.</u>, 172 F.3d 132, 142 (2d Cir. 1999).

The NYLL's "liquidated-damages provision is very similar to the FLSA's." <u>Gamero v. Koodo Sushi Corp.</u>, 272 F. Supp. 3d 481, 503 (S.D.N.Y. 2017); <u>Gonzalez v. Masters Health Food Serv. Inc.</u>, No. 14-CV-07603 (VEC), 2017 WL 3835960, at *18 (S.D.N.Y. July 27, 2017) (noting that "liquidated damages are also available under NYLL unless the employer proves a good faith

basis to believe that its underpayment of wages was in compliance with the law" and that "the burden of proof to establish good faith under NYLL is substantially the same as under the FLSA" (citation modified)); Reich v. S. New England Telecommunications Corp., 121 F.3d 58, 71 (2d Cir. 1997) ("'Good faith' in this context requires more than ignorance of the prevailing law or uncertainty about its development. It requires that an employer first take active steps to ascertain the dictates of the FLSA and then move to comply with them").

Here, for the reasons discussed in opposition to Plaintiffs' motion and in support of Defendants' cross-motion, Plaintiffs have not established Defendants' liability for wage-and-hour violations. As a result, Plaintiffs are not entitled to liquidated damages.

To the extent that this Court finds that Defendants are liable under the FLSA or NYLL (which they should not), summary judgment on Plaintiffs' claim for liquidated damages must be denied. This is because there is more-than-sufficient record evidence of Defendants' efforts to comply with the law.

From the restaurant's inception, Defendants have employed accountants and lawyers to assist them with compliance. See CSMF ¶ 96-100 (OLB has ensured they remain compliant with the law by hiring lawyers, and through its managers (Paliko), who are tasked with ensuring employees are paid appropriately. Shahmuradyan Dep. 38:22-39:4; 37:21-38:16 (OLB used to work with a management company, who helped them open and implement their systems); 39:13-19 (OLB works with an accountant or accounting company); 53:6-14 (OLB relies on the company Toast for its payroll)").

Moreover, it has always been the task of managers, like Paliko, to ensure that tipped employees were properly compensated, and that applicable laws are followed. Id. ("Paliko Dep. 31:3-7 (Paliko merely took over the tip pool system, which had been created before him); 31:23-

32:6 (The tip system is created in Toast, and point values were determined before Paliko took over management); 38:24-39:25 ("All the time when I do the hiring, I – I give them the – the notice of the pay rate and everything. I go over all the requirements to be sure we are in accordance with the federal law and state." **Q:** "Do you give them something in writing?" **A:** "Yes." **Q:** "And do they sign it?" **A:** "Yes")"). The Defendants implemented the Toast system to ensure that the tip credit was properly applied. Id. (Willsey Decl. (73) ¶¶ 1, 4-6, 8-9, 11, 13, 19-24 ("In the event any employee s tipped minimum wage together with that employees tips earned in a week amounts to less than the regular minimum wage for that week, the Toast system automatically adds the differential owed to make up the difference"); Willsey Decl. (85) ¶¶ 4-7).

Further, many of the policies which the restaurant relies upon to comply with the law were initially implemented by an outside human resources management company which is no longer involved with the restaurant. Id. (Shahmuradyan Dep. 37:21-38:16 (OLB used to work with a management company, who helped them open and implement their systems); 39:13-19 (OLB works with an accountant or accounting company); 53:6-14 (OLB relies on the company Toast for its payroll)").

Each of these efforts preclude a finding that Defendants failed to take steps to comply with the law, and this is therefore an issue that must reach a jury.

Courts in this circuit routinely submit the question of good faith to the jury. Wang v. Keeper Holdings, Inc., No. 24-CIV.-672 (CLP), 2025 WL 3623050, at *1–2 (E.D.N.Y. Dec. 15, 2025); Teoh v. Manhasset Rest., LLC, No. 22-CIV-4110, 2025 WL 3225038, at *1, *8 (E.D.N.Y. Nov. 18, 2025) (recounting that "[t]he jury also determined that Defendants' NYLL wage violations were 'good faith' mistakes, and, as a result, the parties submitted post-verdict damages calculations that excluded liquidated damages"); Cabrera v. Dream Team Tavern Corp., No. 12-CIV.-6323,

10

2016 WL 6208245, at *3 (E.D.N.Y. Apr. 29, 2016) (providing a jury charge in wage claims case for good faith and willfulness); Ortega v. 2&5 Line Deli Grocery, Inc., No. 22-CIV.-9170, 2025 WL 3469951, at *2, *6 (S.D.N.Y. Dec. 3, 2025) (discussing jury charge given regarding liquidated damages and stating that "the jury necessarily made each factual finding to award Plaintiff liquidated damages as a matter of law" and found that "Defendants did not act in good faith"); Aguilar v. Ham N Eggery Deli Inc., No. 15-CIV.-2781, 2019 WL 4247228, at *8-9 (E.D.N.Y. Sept. 5, 2019) (refusing to overturn a jury's finding as to good faith and liquidated damages for wage claims).

Courts considering the question of good faith in the context of a motion for summary judgment apply a "reasonable juror" standard in analyzing whether a defendant acted in good faith. Khereed v. West 12th Street Rest. Grp. LLC, No. 15-CIV.-1363, 2016 WL 590233, at *6 (S.D.N.Y. Feb. 11, 2016) (denying summary judgment because a "reasonable jury could conclude that [employer] attempted in good faith to comply with the NYLL's wage statement requirements").

Accordingly, because there exists a question of fact as to whether Defendants violated the FLSA or NYLL and then, if so, whether Defendants efforts at compliance were sufficient to demonstrate good faith, such that it raises a quintessential question of fact for a jury to decide, summary judgment must be denied.

### III. PLAINTIFFS RECEIVED WAGE NOTICES, PRECLUDING RELIEF UNDER NYLL § 195

Plaintiffs argue that they were not given written notice of their pay rate and payday as required under the NYLL. This argument is directly contradicted by Plaintiffs' own sworn testimony that they *did* receive the required notice. ECF Docket Entry 76-7 at 95:5-12 (admitting to filling out the notice of pay rate and payday form when applying for employment).

11

As an initial matter, for the reasons discussed in Defendants' motion for summary judgment, Plaintiffs do not have standing to raise these claims.  Kasseris v. ZA & D Service Station, Inc., No. 23-CV-06281 (NCM) (SDE), 2026 WL 84037, at *16 (E.D.N.Y. Jan. 12, 2026) ("the Court must assure itself that it has jurisdiction over these recordkeeping claims") (citing Gavin/Solmonese LLC v. D'Arnaud-Taylor, 68 F. Supp. 3d 530, 543 (S.D.N.Y. 2014) ("Federal courts are obligated to consider whether subject matter jurisdiction has been established, even *sua sponte*"); Joseph v. Leavitt, 465 F.3d 87, 89 (2d Cir. 2006)).

Specifically, plaintiffs must establish that they have Article III standing to pursue each and every claim they raise. Villada v. Grand Canyon Diner, No. 22-CIV.-2782, 2024 WL 3875778, at *9 (E.D.N.Y. Aug. 19, 2024) ("Standing is not dispensed in gross. Rather, the plaintiff must show standing separately for each claim he or she presses") (quoting TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021)).

In support of their motion, Plaintiffs rely on the fact that Defendants have not produced the actual wage notices.  This is because they were kept in hard copy format and are unable to found in storage where they were kept. See Petrosyants Dep. 49:8-50:16; 50:23-51:23 (Petrosyants does not know which records are kept in storage, and which are kept online).

However, the inability to produce wage notices today does not preclude a finding that the wage notices were issued upon hire, such that a genuine issue of material fact exists, precluding summary judgment.  Alves v. Affiliated Care of Putnam, Inc., No. 16-CV-1593 (KMK), 2022 WL 1002817, at *14 (S.D.N.Y. Mar. 30, 2022) ("Essentially, Plaintiffs claim that Defendants did not provide wage notices, *and Defendants claim that they did*. … On this record, the Court finds that there is a genuine dispute of material fact as to whether every named Plaintiff hired after April 9, 2011 received a wage notice statement at the time of hire") (emphasis added) (citing Hardgers-

Powell v. Angels in Your Home LLC, 330 F.R.D. 89, 113 (W.D.N.Y. 2019) ("[A]s to whether [the plaintiff] received a compliant wage notice at the time of hire, there is a factual dispute that precludes summary judgment"); Jeong Woo Kim v. 511 E. 5th St., LLC, 133 F. Supp. 3d 654, 663 (S.D.N.Y. 2015) (denying summary judgment as to wage notice claim where the defendant made "inconsistent statements regarding whether notices were furnished" and plaintiffs did not state "under oath that they did not receive a timely wage notice").

Plaintiffs rely on centuries-old case law for an accounting while myopically failing to account for the detailed paystubs they received incontrovertibly establishing that they received the accounting they claim they are entitled to.  What's worse, Plaintiffs argue that they did not receive wage notices when one opt-in Plaintiff himself openly admitted during his deposition to receiving a wage notice during the time he was being onboarded as an employee of the restaurant.

Moreover, in making their self-serving statements to argue they were deprived of notice of the tip credit because they claim they never received a wage notice (all while one Plaintiff admitted he did), Plaintiffs once again ignore that the tip credit was sufficiently detailed in their paystubs such that they were not harmed because they received the wages they were owed and had access to information that they could use to ascertain they were properly paid.

## IV.    ISSUES AS TO LIABILITY AND DISPUTES AS TO FACT PRECLUDE DAMAGES FOR TIP CREDIT CLAIMS

Plaintiffs also seek summary judgment as to damages for their tip credit claims on a class-wide basis.  However, because Plaintiffs fail to establish liability over these claims, summary judgment as to damages must be denied.  Indeed, "[d]isputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

"Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

Here, there remain far too many factual disputes and issues of liability to render summary judgment appropriate, even as to liability, let alone damages.

Accordingly, summary judgment must be denied on this point.

## V.    PLAINTIFFS ARE NOT ENTITLED TO PREJUDGMENT INTEREST AS THEY FAILED TO ESTABLISH LIABILITY

"NYLL provides for the award of pre-judgment interest to prevailing plaintiffs under [NYLL] § 198(1-a)." Feuer v. Cornerstone Hotels Corp., No. 14-CV-5388 (JFB) (SIL), 2020 WL 401787, at *12 (E.D.N.Y. Jan. 24, 2020). "The applicable interest rate is 9% per annum, calculated from the date each item was incurred or upon all of the damages from a single reasonable intermediate date." Id. (citation modified) (quoting CPLR §§ 5001(b), 5004); Santillan v. Henao, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011) (noting that "Section 5001 of New York's Civil Practice Law and Rules governs the calculation of prejudgment interest for violations of the state's Labor Law").

Here, because Plaintiffs should not prevail for the reasons set forth herein and in Defendants' cross-motion for summary judgment, this Court should deny their request for summary judgment as to prejudgment interest.

## VI.    THE INDIVIDUAL DEFENDANTS ARE NOT EMPLOYERS

Plaintiffs also argue that Petrosyants and Shahmuradyan are individually liable as employers.  Plaintiffs rely on their overarching roles for "overseeing and running *all* aspects" of the restaurant but ignore the onslaught of evidence showing they do not meet any of the factors required to establish individual liability under the FLSA or NYLL, and that Paliko exercises complete authority over all personnel decisions for the front-of-house staff at the restaurant.

None of the Plaintiffs claim that Petrosyants or Shahmuradyan hired or fired them, or any other similarly situated employee for that matter. See Defendants' Statement of Material Facts ("SMF") ¶¶ 126 (Importantly, neither Shahmuradyan nor Petrosyants were responsible for interviewing or hiring either Plaintiff, Teran or Fernandez. Shahmuradyan Dep. 42:10-20; Petrosyants Dep. 61:11-15; Fernandez Dep. 36:3-15); 141-142 (Fernandez was terminated by Paliko; Teran quit). See SSAF ¶ 24 (Molina quit); CSMF ¶¶ 6, 8, 43 (Paliko Dep. 29:5-30:11 (Paliko is responsible for interviewing, hiring, and firing food service employees, and does not consult with anyone before doing so); "Notably, Petrosyants does not remember if he *ever* hired or fired anyone. Petrosyants Dep. 24:3-18); Paliko Decl. ¶ 14 ("In my role as General Manager, I […] make all decisions regarding hiring, firing, and discipline in my sole discretion").

Yet, Plaintiffs prod on that Petrosyants and Shahmuradyan should be held individually liable because they maintain operational control over the restaurant.  However, Plaintiffs ignore that the law requires that an individual possess "operational control *over employees*: control over a company's actual 'operations' *in a manner that relates to a plaintiff's employment*." See Tapia v. BLCH 3rd Ave. LLC, 906 F.3d 58, 61 (2d Cir. 2018) ("Tapia") (emphasis added).

Plaintiffs assess the Carter factors in their argument that Shahmuradyan and Petrosyants should be liable as individual employers.  Irizarry v. Catsimatidis, 722 F.3d 99, 104–05 (2d Cir. 2013) ("four factors to determine the 'economic reality' of an employment relationship: 'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records'") (citing Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984)).

However, the facts Plaintiffs rely upon in their argument have been consistently contradicted. See CSMF ¶¶ 70-73.

In one of the very cases Plaintiffs cite, Tapia, the Second Circuit held that one of the individual defendants was not an employer.  This case is both instructive and on point with the facts in this case.

In Tapia, the individual defendant, Sharma, failed to satisfy the first Carter factor because there was "no direct evidence that Sharma had the power to hire or fire employees," and because "Appellants did not testify that Sharma hired or disciplined them, and Sharma testified that the general manager, […], was the one responsible for hiring the floor manager."  Sharma failed to satisfy the second Carter factor because "[a]lthough [Plaintiffs] testified that Sharma regularly visited the restaurant, tasted the food, and directed employees to clean, they did not testify that Sharma controlled work schedules or other personnel decisions, or that Sharma was personally aware of [Plaintiffs'] hours or other conditions of employment […] Instead, Sharma testified that the general manager, Deora, was the one who managed overall operations and "actually r[a]n the show completely," and "that the floor manager, not Sharma, was the one that set their work schedules."  Sharma failed to satisfy the third Carter factor, because "[t]here was no evidence that Sharma determined employees' rates and methods of payment or signed employees' paychecks, as the [Plaintiffs] attested that the floor manager, not Sharma, paid them in cash every week" (or otherwise exercised or possessed financial control over employees.  Finally, Sharma failed to satisfy the fourth Carter factor (or at least, completely), because Sharma's review of payroll records does not mean "that he actively maintained the records."

Here, the individual Defendants similarly fail to satisfy any of these factors.

16

First, like Sharma in <u>Tapia</u>, they do not have the authority to hire and fire employees, as Paliko engages in this task. <u>See</u> <u>CSMF</u> ¶¶ 6-8, 10, 12, 21, 38-50, 53-54. None of the Plaintiffs claim that Petrosyants or Shahmuradyan hired or fired them, or any other similarly situated employee for that matter. <u>See</u> Defendants' Statement of Material Facts (SMF) ¶¶ 126 ("Importantly, neither Shahmuradyan nor Petrosyants were responsible for interviewing or hiring either Plaintiff, Teran or Fernandez. <u>Shahmuradyan Dep.</u> 42:10-20; <u>Petrosyants Dep.</u> 61:11-15; Fernandez 36:3-15"); 141-142 (Fernandez was terminated by Paliko; Teran quit). <u>See</u> Defendants' Supplemental Statement of Undisputed Facts in Support, ¶ 24 (Molina quit). <u>See</u> <u>CSMF</u> ¶¶ 6, 8, 43 (<u>Paliko Dep.</u> 29:5-30:11 (Paliko is responsible for interviewing, hiring, and firing food service employees, and does not consult with anyone before doing so). Notably, Petrosyants does not remember if he *ever* hired or fired anyone. <u>Petrosyants Dep. 24:3-18</u>"); <u>Paliko Decl.</u> ¶ 14 ("In my role as General Manager, I […] make all decisions regarding hiring, firing, and discipline in my sole discretion").

The second factor likewise fails; although, like Sharma, the individual Defendants sometimes visit the restaurant for reasons unrelated to supervising or controlling front-of-house employees (for example, Petrosyants may visit for vendor-related issues, and Shahmuradyan sometimes visits the restaurant to eat with her friends), they are never responsible for creating employees' work schedules, setting employees' rates and methods of payment, or determining other conditions of employment. <u>See</u> <u>CSMF</u> ¶¶ 6-8, 10, 12, 15, 21, 38-50, 53-54.

The third factor, setting schedules and rates of pay, likewise fails; none of the Plaintiffs claim that Petrosyants or Shahmuradyan set their schedule, wages, or terms and conditions of employment. See <u>SMF</u> ¶ 64 ("Paliko is the only person responsible for making the schedule. Paliko 34:22-35:14"); 121 ("Petrosyants is in the restaurant a few times per week, not on any specific

schedule, to oversee general operations. <u>Petrosyants Dep.</u> 26:5-6; 25:14-16; 61:19-62:3; <u>Paliko</u>

<u>Decl.</u> ¶ 16- 17"); 124 ("In addition, Paliko's job duties include: deciding how much to pay tipped

employees; setting the employee schedules; deciding how many of each type of employee (for

example, servers, bartenders, busboys) to staff in a single shift. <u>Shahmuradyan Dep.</u> 25:7-26:3;

26:11-16; 30:8-18"); <u>Paliko Decl.</u> ¶ 10 ("I also received the following additional duties, among

others, with my promotion:(i) scheduling employees based on restaurant needs; (ii) interviewing

and hiring employees; and (iii) participating in management meetings").

The individual Defendants here similarly fail to satisfy the fourth factor, because although

they at times may access employment records, that does not mean they have control over those

records, or any greater involvement with the underlying systems which created those records. <u>See</u>

<u>CSMF</u> ¶¶ 27- 28, 34, 38-50, 53-54, 55, 57; 77-89; 96-100.

Moreover, the Second Circuit has adopted authority from other circuits deciding that mere

ownership does not give rise to employer status, so Shahmuradyan's status as the owner is

irrelevant. <u>See</u> <u>CSMF</u> ¶¶ 3, 7-9; <u>Herman v. RSR Sec. Services Ltd.</u>, 172 F.3d at 141, <u>holding</u>

<u>modified by</u> <u>Zheng v. Liberty Apparel Co. Inc.</u>, 355 F.3d 61 (2d Cir. 2003) (observing that in <u>Wirtz</u>

<u>v. Pure Ice Co.</u>, 322 F.2d 259, 262–63 (8th Cir. 1963), 'stock ownership, in and of itself, was held

insufficient to give rise to employer status'); <u>Gray v. Powers</u>, 673 F.3d 352, 355–56 (5th Cir. 2012)

(rejecting proposition that 'merely being an officer or shareholder subjects an individual to FLSA

liability')"). Finally, the fourth factor fails for similar reasons as in <u>Tapia</u>, because the Individual

Defendants' access to payroll records does not mean that they are active participants in maintaining

those records. <u>See</u> <u>CSMF</u> ¶¶ 27- 28, 34, 55, 57.

The individual Defendants therefore do not have or exercise control over the employees of

the restaurant in the way that the law would require in order to hold them liable.

Accordingly, based on the totality of the circumstances, Shahmuradyan and Petrosyants are not "employers" under the FLSA or NYLL.

## CONCLUSION

Accordingly, Defendants respectfully request that Plaintiffs' motion for partial summary judgment must be denied, and that Defendants' cross-motion for summary judgment should be granted.

Dated: Jamaica, New York
      January 22, 2026

Respectfully submitted,

**SAGE LEGAL LLC**

_/s/ Emanuel Kataev, Esq._____
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)
emanuel@sagelegal.nyc

*Attorneys for Defendants*
*Bulldozer Hospitality Group, Inc.,*
*Robert Petrosyants, and*
*Marianna Shahmuradyan*

**VIA ECF**
Joseph & Kirschenbaum LLP
Attn: Josef Nussbaum, Esq.
45 Broadway, Suite 320
New York, NY 10006-3007
(212) 688-5640 (office)
jnussbaum@jk-llp.com

*Attorneys for Plaintiff*
*Katherine Fernandez*

19

## **WORD COUNT CERTIFICATION**

I, Emanuel Kataev, Esq., hereby certify – under penalty of perjury – that the foregoing memorandum of law in opposition to Plaintiffs' motion for partial summary judgment, which was prepared using the Times New Roman 12-point typeface, complies with Local Civil Rule 7.1(c) and ¶ 8(C) of this Court's Individual Practices in Civil Cases in that it contains 5,810 words, excluding the parts of the document that are exempted by such rules. In preparing this certification, I have relied on the word count of the word processing system (i.e., Microsoft Word) used to prepare this certification.

Dated:  Jamaica, New York
       January 22, 2026

Respectfully submitted,

**SAGE LEGAL LLC**

 _/s/ Emanuel Kataev, Esq._____
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)
emanuel@sagelegal.nyc

*Attorneys for Defendants*
*Bulldozer Hospitality Group, Inc.,*
*Robert Petrosyants, and*
*Marianna Shahmuradyan*

**VIA ECF**
Joseph & Kirschenbaum LLP
Attn: Josef Nussbaum, Esq.
45 Broadway, Suite 320
New York, NY 10006-3007
(212) 688-5640 (office)
jnussbaum@jk-llp.com

*Attorneys for Plaintiff*
*Katherine Fernandez*

20