**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

KATHERINE FERNANDEZ, on behalf of herself and
others similarly  situated,

                        Plaintiff,

      v.

                                 No. 25-cv-4490 (AS)

BULLDOZER HOSPITALITY GROUP, INC., d/b/a
OSTERIA LA BAIA, ROBERT PETROSYANTS and
MARIANNA SHAHMURADYAN,

                Defendants.

---

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

---

**JOSEPH & KIRSCHENBAUM LLP**

D. Maimon Kirschenbaum
Josef Nussbaum
Lucas C. Buzzard
32 Broadway, Suite 601
New York, NY 10004
Tel: (212) 688-5640

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. i

COUNTERSTATEMENT OF FACTS ............................................................................... 1

ARGUMENT ......................................................................................................................... 3

   I.   DEFENDANTS' MOTION SHOULD BE DENIED AS TO PLAINTIFFS' FLSA TIP
        MISAPPROPRIATION CLAIM ................................................................................. 3

        A.   Disputed Issues of Fact Exist as to Whether Perez's Primary Duty was Management ... 5

        B.   Perez Directed the Work of Two or More Employees ...................................... 7

        C.   Perez's Authority to Hire or Fire is Disputed .................................................. 7

   II.  THIS COURT HAS SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S NYLL CLAIMS ... 8

   III. DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' NYLL
        TIP CREDIT MINIMUM WAGE CLAIM ............................................................... 12

   IV.  DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' N.Y.
        LAB. LAW § 195 CLAIMS ..................................................................................... 17

   V.   DEFENDANTS MARIANNA SHAHMURADYAN AND ROBERT PETROSYANTS ARE
        INDIVIDUALLY LIABLE UNDER THE FLSA AND NYLL ................................. 20

        A.   Shahmuradyan and Petrosyants Have and Exercise Operational Control ............. 21

        B.   The *Carter* Factors Confirm Shahmuradyan and Petrosyants are "Employers" ......... 23

        C.   The Totality of the Circumstances Demonstrate that Shahmuradyan and Petrosyants are
             "Employers" under the FLSA and NYLL ...................................................... 25

CONCLUSION ..................................................................................................................... 27

# TABLE OF AUTHORITIES

**Cases**

*Adams's Case*, 3 Ct. Cl. 312 (Ct. Cl. 1867)......................................................................17

*Aguilar v. Ham N Eggery Deli Inc.*, No. 15-CV-02781,
    2017 U.S. Dist. LEXIS 228042 (E.D.N.Y. Mar. 30, 2017)..................................15

*Barenboim v. Starbucks Corp.*, 21 N.Y.3d 460 (N.Y. 2013)...............................................5

*Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372 (E.D.N.Y. 2012)......24

*Bonito v. Avalon Partners, Inc.*, 106 A.D.3d 625 (1st Dep't 2013)................................21

*Bu v. Benenson*, 181 F. Supp. 2d 247 (S.D.N.Y. 2001) ....................................................10

*Carvente-Avila v. Chaya Mushkah Restaurant Corp.*, No. 12-CV-5359,
    2016 U.S. Dist. LEXIS 75396 (S.D.N.Y. Mar. 1, 2016)......................................14

*Cardenas v. Edita's Bar & Rest., Inc.*, No. 17-CV-5150,
    2020 U.S. Dist. LEXIS 258547 (E.D.N.Y. Sep. 30, 2020)..................................14

*Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77 (2d Cir. 2018)...........................11

*Chang v. Louis Amsterdamn, Inc.*, No. 19 CV 3056,
    2022 U.S. Dist. LEXIS 177606 (E.D.N.Y. Sept. 29, 2022)................................13

*Charles v. Pinnacle Too, LLC*, No. 22 CV 4232,
    2024 U.S. Dist. LEXIS 188084 (S.D.N.Y. Oct. 15, 2024)................................17,18,19

*Chichinadze v. BG Bar Inc.*, 517 F. Supp. 3d 240 (S.D.N.Y. 2021)...............................13

*Condado v. P&C Bagels, Inc.*, No. 22-cv-1589,
    2023 U.S. Dist. LEXIS 178598 (E.D.N.Y. Sept. 27, 2023) ...................................5

*Dean v. Univ. of Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178 (2d Cir. 2015)...3

*Doninger v. Niehoff*, 642 F.3d 334 (2d Cir. 2011) ............................................................3

*Elghourab v. Vista JFK, LLC*, No. 17-cv-911,
    2018 U.S. Dist. LEXIS 200556 (E.D.N.Y. Nov. 27, 2018)................................4,8

*Feingold v. New York*, 366 F.3d 138 (2d Cir. 2004).........................................................3

*Figurowski v. Marbil Invs., LLC*, No. 14-cv-7034,
    2015 U.S. Dist. LEXIS 85900 (E.D.N.Y. July 1, 2015) .....................................10

i

*Franco v. Jubilee First Ave. Corp.*, No. 14-CV-07729,
    2016 U.S. Dist. LEXIS 114191 (S.D.N.Y. Aug. 25, 2016)......................................14

*Garcia v. Saigon Mkt. LLC*, No. 15-cv-9433,
    2019 U.S. Dist. LEXIS 163259 (S.D.N.Y. Sept. 24, 2019) ..................................14

*Grace Plaza of Great Neck v. Axelrod*, 504 N.Y.S.2d 554 (3d Dep't 1986) ....................14

*Grande v. 48 Rockefeller Corp.*, No. 21-cv-1593,
    2023 U.S. Dist. LEXIS 140490 (S.D.N.Y. Aug. 11, 2023) ................................25,26

*Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300 (2d Cir. 2024)....................................17,18,19

*Herman v. RSR Sec. Servs. Ltd.* ("*RSR*"), 172 F.3d 132 (2d Cir. 1999)..........................23

*Herrera v. Comme Des Garçons, Ltd.*, No. 21-cv-04929,
    2024 U.S. Dist. LEXIS 186715 (S.D.N.Y. Oct. 10, 2024) ..................................20

*Hicks v. T.L. Cannon Mgmt. Corp.*, No. 13-cv-06455,
    2018 U.S. Dist. LEXIS 246171 (W.D.N.Y. Mar. 12, 2018)................................15

*Hung Nguyen v. Pho Vietnam 87 Corp.*, No. 23-CV-4298,
    2025 U.S. Dist. LEXIS 24734 (S.D.N.Y. Jan. 31, 2025).........................................13

*Inclan v. N.Y. Hospitality Group, Inc.*, 95 F. Supp. 3d 490 (S.D.N.Y. 2015).................23,24

*Irizarry v. Catsimatidis*, 722 F.3d 99 (2d Cir. 2013).........................................................*passim*

*Kaur v. Royal Arcadia Palace, Inc.*, 643 F. Supp. 2d 276 (E.D.N.Y. 2007) ...................24

*Kaytor v. Elec. Boat Corp.*, 609 F.3d 537 (2d Cir. 2010)....................................................3

*Lauriano v. Lucky Chicken Corp.*, No. 23-cv-9028,
    2025 U.S. Dist. LEXIS 124807 (S.D.N.Y. July 1, 2025)....................................21

*Lodescar v. Denihan Hosp. Grp.*, No. 14-cv-8218,
    2016 U.S. Dist. LEXIS 202630 (S.D.N.Y. Sept. 30, 2016)................................26

*Lopez v. MNAF Pizzeria, Inc.*, No. 18 CV 6033,
    2021 U.S. Dist. LEXIS 57260 (S.D.N.Y. Mar. 25, 2021)...................................13

*Martinez v. Hilton Hotels Corp.*, 930 F. Supp. 2d 508 (S.D.N.Y. 2013).........................4,6,7

*Mangahas v. Eight Oranges Inc.*, 754 F. Supp. 3d 468 (S.D.N.Y. 2024).......................5,16

*Marin v. Apple-Metro, Inc.*, No. 12 CV 5274,
    2017 U.S. Dist. LEXIS 165568 (E.D.N.Y. Oct. 4, 2017)....................................12

*Mendez v. MCSS Rest. Corp.*, 564 F. Supp. 3d 195 (E.D.N.Y. 2021)............................14

*Mogollan v. La Abundancia Bakery & Rest., Inc.*, No. 18-cv-03202,
    2020 U.S. Dist. LEXIS 183436 (S.D.N.Y. Sep. 30, 2020) ...................................15

*Montefiore Med. Ctr. v. Teamsters Loc. 272*, 642 F.3d 321 (2d Cir. 2011)....................9

*Ortega v. Frozen Deli & Grocery Inc.*, No. 24-cv-01231,
    2024 U.S. Dist. LEXIS 192098 (S.D.N.Y. Oct. 22, 2024) ..................................19

*Richardson v. Comm'r of N.Y. City Dep't of Social Servs.*, 88 N.Y.2d 35 (N.Y. 1996).....14

*Rivera v. Ndola Pharm. Corp.*, 497 F. Supp. 2d 381 (E.D.N.Y. 2007) ..........................10

*Roma v. Carmili*, 761 F. Supp. 3d 481 (E.D.N.Y. 2024) ..................................................9

*Reyes v. Sofia Fabulous Pizza Corp.*,
    2014 U.S. Dist. LEXIS 188734 (S.D.N.Y. Apr. 7, 2014) .......................................13

*Romero v. Garner Env't Servs.*, No. 25-cv-06912,
    2025 U.S. Dist. LEXIS 260133 (S.D.N.Y. Dec. 15, 2025)...................................18

*Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442 (S.D.N.Y. 2015)............................13,16,26

*Salustio v. 106 Columbia Deli Corp.*, 264 F. Supp. 3d 540 (S.D.N.Y. 2017).................12,13

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234 (2d Cir. 2011)...............9

*Sprague v. T.C. Inn*, No. 19-CV-1263,
    2021 U.S. Dist. LEXIS 153528 (N.D.N.Y. Aug. 16, 2021) ...................................13

*Sweet v. Batavia Downs Casino*, No. 24-cv-6118,
    2025 U.S. Dist. LEXIS 159734 (W.D.N.Y. Aug. 18, 2025) ...................................4

*Tagaeva v. BNV Home Care Agency, Inc.*, No. 16-cv-6869,
    2018 U.S. Dist. LEXIS 42081 (E.D.N.Y. Mar. 13, 2018) ...................................9

*Tapia v. BLCH 3rd Ave. LLC*, 906 F.3d 58 (2d Cir. 2018).............................................21,23

*Tapia v. BLCH 3rd Ave. LLC*,
    2016 U.S. Dist. LEXIS 118313 (S.D.N.Y. Sept. 1, 2016)...................................26

*Tecocoatzi-Ortiz v. Just Salad LLC*, No. 18 CV 7342,
    2022 U.S. Dist. LEXIS 34090 (S.D.N.Y. Feb. 25, 2022)....................................12,13

*Thomas v. EONY LLC*, No. 13-cv-8512,
 2015 U.S. Dist. LEXIS 52290 (S.D.N.Y. Apr. 21, 2015) ....................................10

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ........................................................17

*Valle v. Gordon Chen's Kitchen LLC*, 254 F. Supp. 3d 665 (S.D.N.Y. 2017)................12

*Van Duser v. Tozzer Ltd.*, No. 23-cv-9329 (AS),
 2024 U.S. Dist. LEXIS 198344 (S.D.N.Y. Oct. 31, 2024) .................................11, 17,19

*Velez v. Medrite, LLC*, No. 24-cv-2707,
 2025 U.S. Dist. LEXIS 181728 (S.D.N.Y. Sept. 15, 2025)................................9,11

*Velasquez v. U.S. 1 Farm Mkt., Inc.*, No. 13-cv-634,
 2016 U.S. Dist. LEXIS 59536 (D. Conn. May 3, 2016) ......................................23

*Velasquez v. Universal Prot. Serv., LLC*, No. 1:24-cv-04795,
 2025 U.S. Dist. LEXIS 143636 (S.D.N.Y. July 28, 2025)...................................19

*Villanueva v. 179 Third Ave. Rest. Inc.*, 500 F. Supp. 3d 219 (S.D.N.Y. 2020)..............13

*Young v. N.Y. City Trans. Auth.*, 903 F.2d 146 (2d Cir. 1990).........................................10

*Zivkovic v. Laura Christy, LLC*, No. 17-cv-553,
 2022 U.S. Dist. LEXIS 94839 (S.D.N.Y. May 26, 2022) ....................................14

**Statutes, Rules, and Regulations**

28 U.S.C. § 1367(a) ...................................................................................................9

28 U.S.C. § 1367(c)(2)..............................................................................................11

28 U.S.C. § 1367(c)(3)................................................................................................8

29 U.S.C. § 203(m)(2)(B) ..........................................................................................4

29 C.F.R. § 531.52(b)(2)............................................................................................4

29 C.F.R. § 541.100(a)(2)-(4) ....................................................................................4

29 C.F.R. § 541.102 ...................................................................................................5

29 C.F.R. § 541.700(a)...............................................................................................6

N.Y. Lab. Law § 195 ................................................................................*passim*

N.Y. Comp. Codes R. & Regs, tit. 12, § 146-1.3 ............................................13,14

N.Y. Comp. Codes R. & Regs, tit. 12, § 146-2.2 ............................................12,14,16

Plaintiffs submit this memorandum in opposition to Defendants' motion for summary judgment. For the reasons set forth below, the motion should be denied in its entirety.

## COUNTERSTATEMENT OF FACTS

Plaintiff Katherine Fernandez and two opt-in Plaintiffs bring this action against OLB and its owners/operators, Robert Petrosyants and Marianna Shahmuradyan. ECF No. 15 (Am. Compl.). Plaintiffs allege Defendants: (1) violated the Fair Labor Standards Act ("FLSA") by requiring them to share their tips with Julio Perez, a tip-ineligible manager; and (2) the New York Labor Law ("NYLL") by (a) paying tipped employees pursuant to a tip credit without providing the notice required under New York law, (b) illegally retaining "service charges" they charged private events customers which are presumed to be gratuities under New York law unless certain preconditions are met; and (c) failing to provide tipped employees with the wage notices and wage statements required under New York law. *See generally* ECF. No. 15.

Defendants are not entitled to summary judgment on Plaintiffs' FLSA claim because there is evidence that Perez's "primary" duty was management of the front-of-house staff, thus rendering him tip-ineligible. Perez regularly directed the work of service employees, including by giving them instructions throughout meal services and during pre-shift meetings. *See* Pls.' Statement of Additional Material Facts ("SAMF") ¶¶ 180-82, 186-87. He also interviewed and trained service staff, participated in making their work schedules, had authority to grant leave requests, disciplined employees, handled employee complaints and grievances, and participated in employee evaluations. *See* SAMF ¶¶ 156-58, 165-67, 168-75, 183-84, 190-92. He often was solely responsible for the restaurant and its service staff, had authority to fire employees, and participated in interviewing and hiring decisions. SAMF ¶¶ 156-64, 177-180. In short, Perez had and exercised managerial authority.

Summary judgment is unwarranted on Plaintiffs' NYLL tip-credit claim for the simple reason that Defendants admit they applied a tip credit to food-service employees' wages but have not produced a single written wage notice in this litigation. *See* SAMF ¶¶ 257-269. As such written notice is a pre-requisite to use of the tip-credit, Defendants clearly are not entitled to summary judgment on this claim, notwithstanding their reliance on a purported letter from a New York Department of Labor ("NYDOL") employee that has been flatly rejected by nearly every Court to have considered it.

Next, Defendants cannot obtain summary judgment on Plaintiffs' NYLL wage statement and wage notice claims because they indisputably failed to provide notices and statements that complied with the requirements of N.Y. Lab. Law § 195(1) and (3). SAMF ¶¶ 257-272. Furthermore, Plaintiffs have standing to bring these claims because Plaintiffs have demonstrated both a common law analogue to these statutory claims and that they suffered a concrete harm because of Defendants' non-compliance.

Last, individual Defendants Shahmuradyan and Petrosyants are responsible for overseeing and running all aspects of OLB in ways that directly affect the nature and conditions of Plaintiffs' employment, thus making them "employers" under the FLSA and NYLL. Shahmuradyan, OLB's sole owner, "oversee[s] everything" at OLB, has financial control over the business, possesses "ultimate authority" over all restaurant operations, and hired all managerial staff. SAMF ¶¶ 204-207, 210, 220-22, 233. She is frequently present in the restaurant, meets with the general manager weekly to discuss OLB's day-to-day operations and payroll issues, has access to and reviews payroll, and has authority to hire and fire any restaurant employee. *Id.* ¶¶ 213-217, 223-228.

Petrosyants, Shahmuradyan's husband and OLB's director of operations, "run[s] the business," oversees all operations, ensures employees are paid, maintains the quality of service,

reviews the restaurant's financials, and ensures the restaurant is profitable. SAMF ¶¶ 233-39. He frequents OLB where he monitors how service is performed and meets with the general manager several times per week to discuss service and staffing issues. *Id.* ¶¶ 243-45, 251. He attends pre-shift meetings of the front-of-house staff, where he discusses service performance and makes sure the staff give their "consistently best performance." *Id.* ¶¶ 247-50. Like his wife, Petrosyants has authority to hire and fire, and expects OLB's managers to "take action" if he reports any service employee not performing their duties satisfactorily. SAMF ¶ 241, 251.

## ARGUMENT

"Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Doninger v. Niehoff,* 642 F.3d 334, 344 (2d Cir. 2011). "The burden is on the moving party to establish the absence of any material factual issues." *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004). The non-movant defeats summary judgment by identifying record evidence from which "a reasonable jury could find in the non-movant's favor." *Dean v. Univ. of Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 186 (2d Cir. 2015) (quotation marks omitted). The court "must draw all reasonable inferences in the favor of the nonmoving party, even though contrary inferences might reasonably be drawn." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010).

## I.    DEFENDANTS' MOTION SHOULD BE DENIED AS TO PLAINTIFFS' FLSA TIP-MISAPPROPRIATION CLAIM

Defendants mistakenly argue they are entitled to summary judgment on Plaintiffs' FLSA claim. *See* Defs.' Mem. at 8-14. As an initial matter, Defendants are confused about what Plaintiffs' FLSA claim asserts. Although Defendants spend much time arguing that Plaintiffs do not have viable FLSA tip-credit and service charge claims, Defs.' Mem. at 8-9, 12-14, Plaintiffs' FLSA claim is not based on either of those theories. Instead, Plaintiffs' FLSA claim is premised

only on Defendants' illegal deductions from gratuities caused by forcing Plaintiffs to share tips with a managerial employee, Julio Perez. *See* Am. Compl. ¶¶ 27-28, 38-42.

As to that claim, summary judgment should be denied. There is ample evidence from which a reasonable juror could conclude that Perez's "primary duties" were management and supervision of front-of-house service staff. Section 203(m) of the FLSA, which was amended in 2018, provides that "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips." 29 U.S.C. § 203(m)(2)(B). Department of Labor ("DOL") regulations issued since the 2018 amendment provide that the term "manager" or "supervisor" in § 203(m)(2)(B) should be determined by reference to the "duties" prongs of the DOL regulation defining the overtime exemption for executive employees found in 29 C.F.R. § 541.100(a)(2)-(4). *See* 29 C.F.R. § 531.52(b)(2). Under § 541.100(a), an employee is an exempt executive if: (1) their "primary duty is management of the enterprise" or a "customarily recognized department of subdivision thereof"; (2) they "customarily and regularly direct[] the work of two or more other employees"; and (3) they have "the authority to hire or fire other employees" or their "suggestions and recommendations" as to hiring, firing, or promotion are "given particular weight." 29 C.F.R. § 541.100(a)(2)-(4).[1]

Consideration of these factors "is a highly fact-intensive inquiry, to be made on a case-by-case basis in light of the totality of the circumstances." *Martinez v. Hilton Hotels Corp.*, 930 F. Supp. 2d 508, 523 (S.D.N.Y. 2013) (citation omitted). As such, "even where there has been full discovery, courts are often reluctant to grant summary judgment" on this issue. *Elghourab v. Vista JFK, LLC*, No. 17-cv-911, 2018 U.S. Dist. LEXIS 200556, at *14 (E.D.N.Y. Nov. 27, 2018)

---

[1] For a comprehensive discussion of the 2018 amendments to § 203(m) and the use of the executive employee test to determine managerial status under that provision, *see Sweet v. Batavia Downs Casino*, No. 24-cv-6118, 2025 U.S. Dist. LEXIS 159734, at *9-14 (W.D.N.Y. Aug. 18, 2025).

(citation omitted). Here, Defendants fail to make any effort to explain why or how Perez's duties should be analyzed within the rubric they suggest. *See* Defs' Mem. at 11-12. Instead, they simply assert, in the most conclusory fashion, that "Plaintiffs have failed to adduce any evidence supporting the notion that Perez was or is a manger" and, at most, "Perez had a limited degree of supervisory responsibility." Defs.' Mem. at 11.[2] This is demonstrably false, as Plaintiffs have introduced substantial evidence that Perez's duties satisfy each prong of the executive employee test.

### A. Disputed Issues of Fact Exist as to Whether Perez's Primary Duty was Management

The DOL regulations define "management" as including a wide range of activities, including:

> interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees . . . appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; [and] apportioning the work among the employees . . . .

29 C.F.R. § 541.102.

Here, Plaintiffs have introduced evidence that Perez's duties included the managerial tasks of (1) interviewing and training service staff, *see* SAMF ¶¶ 156-58, 174-75; (2) setting and adjusting their hours by participating in making work schedules, granting time off requests, sending employees home early, or instructing them not to come to work, *id.* ¶¶ 168-72; (3) disciplining employees, *id.* ¶¶ 165-67, 173, 183-84; (4) handling employee complaints and

---

[2] Defendants are confused about the proper test the Court should apply to determine Perez's managerial status. While they first reference the DOL's executive exemption FLSA test, the only cases they cite when "applying" that test are cases addressing the *NYLL's* test for determining a managerial employee under N.Y. Lab. Law § 196-d. *See* Defs.' Mem. at 11-12 (citing *Barenboim v. Starbucks Corp.*, 21 N.Y.3d 460 (N.Y. 2013); *Mangahas v. Eight Oranges, Inc.*, 754 F. Supp. 3d 468, 503 (S.D.N.Y. 2024); *Condado v. P&C Bagels, Inc.*, No. 22-cv-1589, 2023 U.S. Dist. LEXIS 178598, at *21 (E.D.N.Y. Sept. 27, 2023)).

grievances, *id.* ¶¶ 191-92, 185-86; and (5) recommending promotions, *id.* ¶ 190. In addition, Perez directs, plans, and apportions the work among employees on a daily basis by: (1) instructing them which stations to cover, *id.* ¶ 186; (2) ordering employes to clean certain tables, prepare tables, or assist other servers, *id.* ¶ 187; (3) providing instructions about service during pre-shift meetings, *id.* ¶ 181-82. In short, Perez had and exercised the authority of a manager. *See id.* ¶ 154.

Defendants, as the moving party, have not met their burden of demonstrating that these managerial tasks were not Perez's "primary" duties. *See* 29 C.F.R. § 541.700(a) (defining "primary duty" as the "principal, main, major, or most important duty the employee performs"). Whether Perez's primary duty is management depends on: (1) the amount of time spent on exempt versus nonexempt work; (2) his "relative freedom from direct supervision"; (3) "the relative importance of [his] exempt duties as compared with other types of duties"; and (4) "the relationship between [his] salary and the wages paid to other employees." *Id.*

Here, Plaintiffs have introduced evidence supporting each of these considerations. For example, Plaintiff Molina testified that during a meal service, Perez directs the service staff on "everything," including the cleaning and preparing of tables and assisting other servers. SAMF ¶ 187. Even if Perez were also serving customers during this time, separating out how much time he spent on service versus directing the staff, as well as weighing the relative importance of each of these tasks, is a "task for the jury, not the Court." *Martinez*, 930 F. Supp. 2d at 525. The same is true for weighing the relative importance of Perez's customer service against his instructions to staff during pre-shift meetings. SAMF ¶¶ 181-84. That Perez had "relative freedom from direct supervision" is supported by Plaintiffs' evidence that when Paliko and the individual defendants were not present in the restaurant, Perez was highest-ranking employee solely responsible for supervising food-service employees, running pre-shift meetings, and instructing employees where

to work. SAMF ¶¶ 177-80, 185. Finally, Perez's wages, as well as his attire, set him apart from other service employees. In 2024, for example, while all other front-of-house tipped employees were paid at New York's tip-credit minimum wage of $10.65, Perez was paid $20. SAMF ¶¶ 202-03; *see also id.* ¶ 201. And while all other service employees had specific uniforms, Perez wore a suit and tie. SAMF ¶ 155. This evidence and the disputes of fact it creates, precludes the Court from concluding, as a matter of law, that management was not Perez's primary duty. *Cf Martinez*, 930 F. Supp. 2d at 524 ("[T]here are too many factual disputes—regarding how Plaintiffs allocated their time and under whose direction; the proper characterization of Plaintiffs' various responsibilities; and the relative importance of such responsibilities . . .—for the Court to conclude, as a matter of law, that management was Plaintiffs' 'primary duty.'").

### B. Perez Directed the Work of Two or More Employees

The second prong of the executive employee duties test asks whether Perez "customarily and regularly" directs the work of two or more employees. Plaintiffs have introduced evidence that Perez regularly directed service employees' work, including during meal services and at pre-shift meetings. SAMF ¶¶ 181-88. As there are approximately 50 front-of-house employees, Petrosyants Dep. at 181:13-16, should the jury credit Plaintiffs evidence as to Perez's responsibilities, it would resolve the second prong in Plaintiffs' favor. Thus, summary judgment is not warranted on this ground.

### C. Perez's Authority to Hire or Fire is Disputed

Finally, the parties dispute whether Perez has authority to hire or fire other employees, and whether his recommendations were given particular weight. While Defendants deny that Perez had such authority, Plaintiffs have introduced evidence that Perez: (1) participated in Plaintiff Teran's hiring, SAMF ¶ 157, 161; (2) interviewed employees who then started working that same day

when there were no other managerial employees in the restaurant, *id.* ¶ 158; (3) yelled at employees and ordered them to leave the restaurant, after which they never returned, *id.* ¶ 163; and (4) admitted to Plaintiff Fernandez that he had terminated an employee, *id.* ¶ 164. Even Defendants admit that Perez participated in interviewing new hires and in employee evaluations. Defs. Statement of Facts ("DSOF") ¶¶ 73, 75. The fact that he was "involved" in such decisions, "even if he was not the ultimate decisionmaker, does imply that his suggestions were given particular weight." *Elghourab*, 2018 U.S. Dist. LEXIS 200556, at *25-26. As such, disputed issues of fact exist as to this prong of the executive exemption as well.

Given that numerous disputed issues of fact exist as to Perez's duties, summary judgment is simply not warranted on his tip-eligibility. Accordingly, Defendants' motion should be denied as to Plaintiffs' FLSA claim.

## II.     THIS COURT HAS SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S NYLL CLAIMS.

Defendants next argue this Court should decline to exercise supplemental jurisdiction over Plaintiffs' NYLL claims. They contend that: (1) the Court should dismiss all NYLL claims after granting summary judgment on Plaintiffs' FLSA tip-misappropriation claim; and (2) even if the FLSA claim survives, the Court should dismiss Plaintiffs' NYLL minimum wage and recordkeeping claims because they "have nothing to do with Plaintiffs' FLSA claim concerning unlawfully withheld tips." Defs.' Mem. at 17. The first of these contentions is easily swept aside: because Defendants are not entitled to summary judgment on Plaintiffs' FLSA claims for the reasons discussed above, there is no basis to dismiss Plaintiffs' state-law causes of action due to the dismissal of that claim. *See* 28 U.S.C. § 1367(c)(3).

Nor is there any basis to decline jurisdiction over Plaintiffs' NYLL minimum wage and recordkeeping claims. A federal court has supplemental jurisdiction over state-law claims that

"form part of the same case or controversy" as the federal claims. 28 U.S.C. § 1367(a). This occurs when "the federal claim and state claim . . . stem from the same common nucleus of operative fact; in other words, they must be such that the plaintiff would ordinarily be expected to try them all in one judicial proceeding." *Montefiore Med. Ctr. v. Teamsters Loc. 272*, 642 F.3d 321, 332 (2d Cir. 2011) (citations and quotation marks omitted). Since the Second Circuit's decision in *Shahriar v. Smith & Wollensky Restaurant Group, Inc.*, which held that a district court properly exercise supplemental jurisdiction over NYLL claims where they arose "out of the same compensation policies and practices of the [employer]," 659 F.3d 234, 245 (2d Cir. 2011), courts in this Circuit have held with apparent uniformity that NYLL claims arise from the same nucleus of operative fact as FLSA claims, even when the NYLL claims have no FLSA analogue.[3] *See, e.g.*, *Velez v. Medrite, LLC*, No. 24-cv-2707, 2025 U.S. Dist. LEXIS 181728, at *17-19 (S.D.N.Y. Sept. 15, 2025) (FLSA overtime and NYLL pay-frequency claims shared common nucleus of operative fact because "both relate to the way, amount, and frequency with which Defendants paid Plaintiffs for the same work pursuant to . . . common workplace conditions"); *Roma v. Carmili*, 761 F. Supp. 3d 481, 491-92 (E.D.N.Y. 2024) (FLSA overtime claim and NYLL claims of illegal deductions and "wage statement regulations"), *Tagaeva v. BNV Home Care Agency, Inc.*, No. 16-cv-6869, 2018 U.S. Dist. LEXIS 42081, at *13-14 (E.D.N.Y. Mar. 13, 2018) (FLSA overtime and NYLL wage statement recordkeeping claim).

Here, as in the cases cited above, Plaintiffs' FLSA tip-misappropriation claim and NYLL minimum wage and § 195 claims all arise from a common nucleus of operative fact: Defendants' compensation policies and practices. The fact that, for example, Plaintiffs' FLSA claim addresses

---

[3] Plaintiffs have not been able to locate a single case since *Shahriar* in which a Court in this Circuit found in a wage-and-hour case that an NYLL claim did not share a common nucleus of fact with an FLSA claim. As discussed in the text, Defendants haven't cited any either.

the underpayment of tips and the NYLL minimum wage claim addresses the underpayment of hourly wages does not mean that they "have nothing to do" with one another as Defendants argue. In the restaurant context, tips and hourly wages are inextricably intertwined components of tipped employees' overall compensation. Even Defendants' brief demonstrates this linkage when they argue (albeit incorrectly) that Plaintiff's NYLL minimum wage claims premised on lack of notice of the tip credit fail because their "tips are sufficient to make up the difference between the minimum wage and the reduced wage permitted after the tip credit." Defs. Mem. at 21.

Moreover, none of the cases Defendants cite involved FLSA and NYLL wage-and-hour claims. *See* Defs.' Mem. at 17. Instead, they either (a) arose in the non-wage-and-hour context or (b) address whether an FLSA wage claim provides supplemental jurisdiction over *non*-wage-and-hour state-law claims, like discrimination claims. *See Young v. N.Y. City Trans. Auth.*, 903 F.2d 146, 163-64 (2d Cir. 1990) (no common nucleus of fact between federal constitutional claim and state constitutional claim); *Figurowski v. Marbil Invs., LLC*, No. 14-cv-7034, 2015 U.S. Dist. LEXIS 85900, at *7-8 (E.D.N.Y. July 1, 2015) (no supplemental jurisdiction over state-law age discrimination and retaliation claims based on FLSA overtime claim); *Thomas v. EONY LLC*, No. 13-cv-8512, 2015 U.S. Dist. LEXIS 52290, at *12-13 (S.D.N.Y. Apr. 21, 2015) (FLSA overtime claim provided supplemental jurisdiction for NYLL wage claims, but not state-law discrimination and tort claims); *Rivera v. Ndola Pharm. Corp.*, 497 F. Supp. 2d 381, 394-95 (E.D.N.Y. 2007) (no common nucleus of fact between FLSA overtime claim and state law claims of, *inter alia*, sexual harassment, retaliation, and battery); *Bu v. Benenson*, 181 F. Supp. 2d 247, 253-53 (S.D.N.Y. 2001) (federal civil rights claims did not provide supplemental jurisdiction over state-law claims relating to the formation of a trust).

Next, although Defendants suggest the Court should decline jurisdiction over Plaintiffs' NYLL minimum wage and recordkeeping claims because they predominate over Plaintiffs' FLSA claim, they make no effort to explain how this is so. *See* Defs.' Mem. at 18 (citing 28 U.S.C. § 1367(c)(2)). A state law claims "substantially predominates" under § 1367(c)(2) if it is "more complex or require[s] more judicial resources to adjudicate or are more salient in the case as a whole than the federal law claims." *Velez*, 2025 U.S. Dist. LEXIS 181122, at *21 (citation omitted). Here, the very opposite is true. As discussed above, resolution of Plaintiffs' FLSA tip misappropriation claim involves application of the multi-factor, highly fact-intensive executive exemption test. *See supra* at 3-8. Plaintiffs' NYLL tip-credit minimum wage and recordkeeping claims, by contrast, simply involve the straightforward determination of whether (a) Defendants provided written notice of the tip credit and (b) their wage statements/notices complied with the requirements set forth in N.Y. Lab. Law § 195. There is no predomination issue here.

Finally, even if § 1367(c)(2) were applicable (it is not), this Court "still should consider whether declining jurisdiction would promote the values of economy, convenience, fairness, and comity." *Van Duser v. Tozser Ltd.*, No. 23-cv-9329, 2024 U.S. Dist. LEXIS 198344, at *13 (S.D.N.Y. Oct. 31, 2024) (Subramanian, *J.*) (citation omitted). None of these considerations justify requiring Plaintiffs to re-start litigation of their NYLL claims to state court when discovery in this case has closed and the parties have expended considerable time and effort briefing summary judgment on the merits of nearly all of Plaintiff's NYLL claims. As the Circuit has explained, and this Court has echoed: "'wage-and-hour cases like this one are quotidian, and federal courts are well experienced in presiding over them, even when they involve claims under the NYLL for which there is no FLSA equivalent, such as for failure to provide wage notices.'" *Van Duser*, 2024 U.S. Dist. LEXIS 198344, at *13 (quoting *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77,

86 (2d Cir. 2018)). Put simply, "[m]aking the parties start over again in state court would be neither fair nor convenient." *Id.*

### III.    DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' NYLL TIP CREDIT MINIMUM WAGE CLAIM.

The NYLL only allows employers to utilize a tip credit under certain circumstances. Specifically, section 146-2.2 of the Hospitality Industry Wage Order ("HIWO") is titled "Written notice of pay rate, tip credit and pay day." N.Y. Comp. Codes R. & Regs ("N.Y.C.R.R."), tit. 12, § 146-2.2. It states that:

> an employer shall give each employee written notice of the employee's regular hourly pay rate, overtime hourly pay rate, the amount of tip credit, if any, to be taken from the basic minimum hourly rate, and the regular payday. The notice shall also state that extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate.

*Id.* § 146-2.2(a). Such written notice is required "prior to the start of employment" and "prior to any change in the employee's hourly rates of pay." *Id.* § 146-2.2(a), (b). The employer bears the burden of proving compliance with this notice requirement. *Id.* § 146-2.2(d). *Marin v. Apple-Metro, Inc*., No. 12 CV 5274, 2017 U.S. Dist. LEXIS 165568, at *98 (E.D.N.Y. Oct. 4, 2017) ("It is defendants' burden to demonstrate that the prerequisites for a tip credit have been met."); *Valle v. Gordon Chen's Kitchen LLC*, 254 F. Supp. 3d 665, 673 (S.D.N.Y. 2017). The law requires the employer to "obtain from the employee a signed and dated written acknowledgment… of receipt of this notice, which the employer *shall preserve and maintain for six years*." N.Y.C.R.R., tit. 12, § 146-2.2(c) (emphasis added); *see Tecocoatzi-Ortiz v. Just Salad LLC*, No. 18 CV 7342, 2022 U.S. Dist. LEXIS 34090, at *24 (S.D.N.Y. Feb. 25, 2022). "An employer who fails to provide the required notice is liable for the difference between the full minimum wage rate and what the employee was actually paid." *Salustio v. 106 Columbia Deli Corp*., 264 F. Supp. 3d 540, 554 (S.D.N.Y. 2017) (citations omitted).

Defendants seek to muddy the waters of these unambiguous regulations by relying on a purported New York Department of Labor ("NYDOL") letter (the "Ben Amotz Letter") suggesting that oral notice, and not necessarily written notice, is sufficient under the HIWO. But Defendants neglect to mention that the overwhelming majority of New York courts have held that these regulations mean precisely what they say, *i.e.*, that *written* notice of tip is a prerequisite of taking the allowance.[4]  In any event, and for the reasons outlined below, the Court should not defer to the Ben Amotz Letter and the one decision upon which Defendants rely, as both contradict the plain language of the regulations and thus (unsurprisingly) their reasoning has been resoundingly rejected. Moreover, Defendants' argument falls flat because even if the purported NYDOL letter was on all fours, relevant, and authoritative (it is not), it does not shield Defendants from liability, where, as here, the record is clear that they failed to notify Plaintiffs (even orally) of all the tip-credit prerequisites.

The reasoning of the Ben Amotz Letter is obviously defective. The letter reads §§ 146-1.3 and 146-2.2 to allow employers "to claim the tip credit even when they fail to provide written notice of the tip credit rules." Kataev Decl., Ex. D (Ben-Amotz Letter) at 2. Incredibly, this interpretation is based on the fact that § 146-1.3, which mandates notice of the tip credit "as required in section 146-2.2" (the very title of which is "written notice") does not itself state that the notice must be in writing. *Id.* This interpretation runs entirely contrary to the plain language and natural reading of the regulations, and requires the reader to entirely ignore the written notice

---

[4] *See, e.g., Salustio.*, 264 F. Supp. 3d at 554; *Tecocoatzi-Ortiz*, 2022 U.S. Dist. LEXIS 34090, at *24; *Chichinadze v. BG Bar, Inc.,* 517 F. Supp. 3d 240, 256 (S.D.N.Y. 2021); *Lopez v. MNAF Pizzeria, Inc.*, 2021 U.S. Dist. LEXIS 57260, at *21-24 (S.D.N.Y. Mar. 25, 2021); *Salinas v. Starjem Rest. Corp*., 123 F. Supp. 3d 442, 466 (S.D.N.Y. 2015); *Chang v. Loui Amsterdam, Inc.*, 2022 U.S. Dist. LEXIS 177606, at *21-28 (E.D.N.Y. 2022); *Sprague v. T.C. Inn*, No. 19-CV-1263, 2021 U.S. Dist. LEXIS 153528, at *6-7 (N.D.N.Y. Aug. 16, 2021); *Villanueva*, 500 F. Supp. 3d 219, 234 (S.D.N.Y 2020); *Hung Nguyen v. Pho Vietnam 87 Corp*., No. 23-CV-4298, 2025 U.S. Dist. LEXIS 24734, at *29 (S.D.N.Y. Jan. 31, 2025); *Reyes v. Sofia Fabulous Pizza Corp*., 2014 U.S. Dist. LEXIS 188734, at *22 (S.D.N.Y. Apr. 7, 2014).

requirement explicitly laid out in § 146-2.2. As such, it should be disregarded. *See, e.g., Zivkovic v. Laura Christy, LLC*, No. 17-cv-553, 2022 U.S. Dist. LEXIS 94839, at *2 (S.D.N.Y. May 26, 2022) ("The New York Court of Appeals has held repeatedly that where the language of a statute is clear and unambiguous, courts must give effect to its plain meaning."); *Richardson v. Comm'r of N.Y. City Dep't of Social Servs.*, 88 N.Y.2d 35, 40 (1996) ("[A]n administrative agency's interpretation of its own regulation is not to be followed if an alternative reading is compelled by the regulation's plain language . . .." (internal quotation marks omitted)); *Grace Plaza of Great Neck v. Axelrod*, 504 N.Y.S.2d 554, 556 (3d Dep't 1986) ("[I]t is . . . axiomatic that an agency is bound by the language of its own regulation and cannot construe it in such a manner that the plain language on the fact of the regulation is rendered meaningless.").

Defendants cite only one case, *Carvente-Avila v. Chaya Mushkah Restaurant Corp.*, that deferred to the Opinion Letter and found oral notice adequate for a tip credit. No. 12-CV-5359, 2016 U.S. Dist. LEXIS 75396 (S.D.N.Y. Mar. 1, 2016).[5] Shockingly, Defendants fail mention any of the numerous cases which analyzed and rejected the letter's reasoning and *Chaya Mushkah*'s acceptance of it. *E.g., Garcia v. Saigon Mkt. LLC*, No. 15-cv-9433, 2019 U.S. Dist. LEXIS 163259, at *28 (S.D.N.Y. Sept. 24, 2019) (*Chaya Mushkah*'s deference to the Opinion Letter "contradicts the plain language of the regulations."); *Cardenas v. Edita's Bar & Rest., Inc*., No. 17-CV-5150, 2020 U.S. Dist. LEXIS 258547, at *27-29 (E.D.N.Y. Sep. 30, 2020) (refusing to defer to the letter because its "interpretation of Section 146-1.3 conflicts with the regulation's text"); *Mendez v. MCSS Rest. Corp.*, 564 F. Supp. 3d 195, 212-13 (E.D.N.Y. 2021) (finding "[n]o amount of administrative deference can erase the writing requirement from Section 146-2.2 or

---

[5] Defendants also refer to another case, *Franco v. Jubilee First Ave. Corp*., No. 14-CV-07729, 2016 U.S. Dist. LEXIS 114191 (S.D.N.Y. Aug. 25, 2016), which also discussed the Letter. Defs.' Mem. at 20. However, contrary to Defendants' contention, that Court did not "approve" of the *Chaya Mushkah* decision and instead found that any argument based on the letter had been waived. *See id.* at *40-41.

insert the phrase, 'except the writing requirement' into Section 146-1.3[,]" and the DOL's "interpretation conflicts with the text, it is unreasonable and irrational, and does not receive deference" (citations and quotation omitted)); *Aguilar v. Ham N Eggery Deli Inc*., No. 15-CV-02781, 2017 U.S. Dist. LEXIS 228042, at *7 n.1 (E.D.N.Y. Mar. 30, 2017) (declining "to rely on the [NYDOL] letter"); *Mogollan v. La Abundancia Bakery & Rest., Inc*., No. 18-cv-03202, 2020 U.S. Dist. LEXIS 183436, at *19 n.9 (S.D.N.Y. Sep. 30, 2020) (same).

It is also worth highlighting that one court held that the "provenance of the [Ben Amotz is] peculiar," such that it would not be entitled to deference even if it did not contradict the plain language of the regulations. *Hicks v. T.L. Cannon Mgmt. Corp.*, No. 13-cv-06455, 2018 U.S. Dist. LEXIS 246171, at *33-34 (W.D.N.Y. Mar. 12, 2018). As *Hicks* observed, "the Opinion Letter was obtained through political channels as a direct attempt to contradict" that court's prior decision that written notice is required. *Id*. ("the Court is not persuaded that the traditional analysis is applicable where a party has admittedly sought the proffered interpretation solely because it was unhappy with an earlier judicial decision."). In short, the letter is a nonsensical sham and should be disregarded.

Finally, even if Defendants could somehow convince the Court to defer to the letter's muddled reasoning, that would not absolve them of liability for tip credit damages because Defendants did not provide actual notice of the tip credit. The Ben-Amotz Letter itself recognized that an employer's failure to comply with the written notice requirements was not "without consequence." In particular, the Letter explicitly contemplates that "if an employer that fails to provide written notice of the tip credit rules cannot establish their compliance with all of the other minimum wage requirements *and that their employees understood the manner in which the tip credit was taken*, the employer would unquestionably lose its eligibility to claim the tip credit."

Ben-Amotz Letter at 2 (emphasis added). Put another way, under the Ben-Amotz Letter, "written notice is not necessary to protect employees that have actual notice of the tip credit rules." *Id.*

As outlined above, under the HIWO regulations, Defendants were required to notify employees at the start of their employment and prior to any change in the employee's hourly rates of pay of the employee's "regular hourly pay rate, overtime hourly pay rate, the amount of tip credit, if any, to be taken from the basic minimum hourly rate, and the regular payday." Defendants were also required to notify employees that "extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate." N.Y.C.R.R., tit. 12, § 146-2.2.

Here, the record is devoid of evidence from which Defendants may meet their burden of establishing that all tipped employees were provided with all this information. Nowhere in in their submissions do Defendants claim that they informed employees—even orally—that extra pay was required if tips were insufficient to bring the employee rate up to the basic minimum hourly rate. *Id*. Moreover, Defendants' claim (though disputed by Plaintiffs) that they displayed generic posters listing *federal* wages, DSOF at ¶¶ 21-22, also cannot satisfy their burden of providing notice of the *New York* tip credit. *See Salinas*, 123 F. Supp. 3d at 467 ("Although a generic government poster could inform employees that minimum wage obligations exist, it could not possibly inform employees that their employers intend to take the tip credit with respect to their salary." (internal quotation marks and brackets omitted)). Thus, even if the Court were to credit the opinion letter, Defendants still bear the burden of establishing that their employees understood the tip credit rules, and because they have not proffered evidence that they met this burden, summary judgment should be denied. *See Mangahas,* 754 F. Supp. 3d at 498 ("Because it is Defendants' burden to provide admissible evidence showing that employees were properly

informed of the tip credit . . . and Defendants have not produced any evidence to that effect, Plaintiffs are entitled to summary judgment on their NYLL tip credit claims." (citation omitted)).

## IV.    DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' N.Y. LAB. LAW § 195 CLAIMS

As set forth at length in Plaintiffs' motion for partial summary judgment, Plaintiffs have standing to pursue their N.Y. Lab. Law § 195 claims in federal court. Bizarrely, Defendants do not bother to cite relevant Second Circuit precedent as well as this Court's decisions on the issue. *See Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 308 (2d Cir. 2024); *Van Duser*, 2024 U.S. Dist. LEXIS 198344, at *14-15.

In any event, in *TransUnion LLC v. Ramirez*, the Supreme Court held that to have standing to pursue a statutory claim, a plaintiff must have "suffered a concrete harm." 594 U.S. 413, 417 (2021). Physical and monetary harms are always concrete. In addition, intangible harms "with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts" are also concrete. *Id*. at 425. "That inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Id*. at 424.

Contrary to Defendants' arguments, Plaintiffs have standing because there is a common law analogue in the action of account or accompt for the harm class members suffered because of the § 195 violations. *See Charles v. Pinnacle Too, LLC*, No. 22 CV 4232, 2024 U.S. Dist. LEXIS 188084, at *35-39 (S.D.N.Y. Oct. 15, 2024). The action of accompt "arose from the feudal relation of lord and bailiff, and was the proper and peculiar remedy of the feudal lord for enforcing that accounting which it was the duty of his bailiff or steward to render." *Adams's Case*, 3 Ct. Cl. 312, 335 (Ct. Cl. 1867). The purpose of the action of accompt "was to bring the defendant to account before the court, and thereby to ascertain and declare judicially the balance of account between [the plaintiff and defendant], its amount, and from which of them it was due." *Id*. at 334. A pleading

for an accompt claim "alleged [the defendant's] liability to account, and the default charged was a default in not accounting" rather than any debt owed. *Id.* at 335. In other words, the harm that the action of accompt/account remedied was the failure of a party with a legal obligation to account to do so. *See Charles*, 2024 U.S. Dist. LEXIS 188084, at *39 ("[A] private right of action compelling a defendant to detail the exact amounts owed to a plaintiff is exactly what the action of accompt was for.").

As extensively detailed in Plaintiffs' brief in support of their own motion for partial summary judgment, The WTPA creates a legal duty on the part of employers to provide what is essentially an accounting to employees and it thus analogous to the common-law accompt action. *See* Pls.' Mem. at 10-14. The only court (to Plaintiffs' knowledge) to have considered this issue agrees. *See Charles*, 2024 U.S. Dist. LEXIS 188084, at *39. Accordingly, Plaintiffs have standing for their N.Y. Lab. Law § 195 claims.

Even if there were no common law analogue, Plaintiffs would have standing for their § 195 claims because the violations caused them monetary injury. *See Guthrie*, 113 F.4th at 308 (standing for § 195 violations exists where there is a "causal connection between the lack of accurate notices and [a] downstream harm"). In *Guthrie*, the Circuit cited with approval decisions where a plaintiff claimed that the failure to provide an accurate wage statement or notice prevented her from determining the wages she was owed and seeking payment for the unpaid or owed wages. *See Romero v. Garner Env't Servs.*, No. 25-cv-06912, 2025 U.S. Dist. LEXIS 260133, at *17 (S.D.N.Y. Dec. 15, 2025) (collecting cases). The harm claimed in those cases is precisely the harm that Plaintiffs seek to redress here. Specifically, with respect to NYLL § 195(1), Defendants' failure to provide written wage notices is the very thing that made their use of the tip credit an unlawful underpayment. Accordingly, there is a clear causal link between OLB's NYLL § 195(1)

18

violations and all service employees' economic loss. *See Guthrie*, 113 F.4th at 310 ("[A] plaintiff-employee who has plausibly shown that defective notices led him or her to lose wages has . . . a concrete interest [in the litigation] . . . ."); *Van Duser*, 2024 U.S. Dist. LEXIS 198344, at *14-15 (where employees paid pursuant to a tip credit alleged their employer's failure to provide wage notices had downstream consequences, the harm "is far from speculative" and the employees "aren't positing possible injuries they could have suffered or opining on the risks of harm that might have materialized [but] that they were in fact harmed because they weren't paid the wages they were owed and lacked information that could have helped them catch the violation").

Similarly, Defendants' failure to provide wage statements compliant with § 195(3) allowed Defendants to hide their violations of wage and hour laws and thus prevented Plaintiffs from determining and seeking payment of what was unpaid. Specifically, Defendants provided wage statements that included multiple incongruous and inexplicable wage rates. SAMF ¶¶ 270-72. In the wake of *Guthrie*, courts in this Circuit agree that a plaintiffs have standing if they claim (as Plaintiffs do here) that, by failing to provide the required wage statements, "the employer was able to hide its violations of wage and hour laws" and thus prevent employees from "determining and seeking payment for the precise amount of [their] unpaid wages." *Velasquez v. Universal Prot. Serv., LLC*, No. 1:24-cv-04795, 2025 U.S. Dist. LEXIS 143636, at *13-14 (S.D.N.Y. July 28, 2025) (citations and quotations omitted); *see also Charles*, 2024 U.S. Dist. LEXIS 188084, at *39 (standing found where failure to provide wage statements caused "the inability to decipher the extent of amounts owed and, thus, the inability to proceed to recover those amounts owed" and concluding that this was "exactly the type of concrete harm *Guthrie* recognized was sufficient to establish standing"); *Ortega v. Frozen Deli & Grocery Inc.*, No. 24-cv-01231, 2024 U.S. Dist. LEXIS 192098 (S.D.N.Y. Oct. 22, 2024) (standing found where plaintiffs alleged wage notice

violations "served to keep them uninformed so that they did not have proper information to contest the lack of proper wages" (cleaned up)); *Herrera v. Comme Des Garçons, Ltd*., No. 21-cv-04929, 2024 U.S. Dist. LEXIS 186715, at *3 (S.D.N.Y. Oct. 10, 2024) ("The loss of the abilities to investigate and advocate for their correct pay constitute a concrete downstream injury-in-fact to Plaintiffs under *Guthrie*." (quotation omitted)). Accordingly, Plaintiffs' claims here closely parallel those deemed sufficient in these cases and Defendants' motion for summary judgment on this issue should be denied.

## V.    DEFENDANTS MARIANNA SHAHMURADYAN AND ROBERT PETROSYANTS ARE INDIVIDUALLY LIABLE UNDER THE FLSA AND NYLL

Defendants argue that Petrosayants and Shahmuradyan are not individually liable. *See* Defs.' Mem. at 15-16. The sum total of Defendants' argument on this point consists of: (1) reciting the FLSA's individually liability standard, *see id.* at 15, then (2) stating, in the most conclusory fashion, that "Petrosyants and Shahmuradyan did not engage in actions which would render them employers as individuals" and at most "Petrosyants played a limited supervisory role which is insufficient to make him an employer," *id.* at 16.

It is clear why Defendants devote only two sentences to their individual liability argument. First, the most crucial "facts" upon which Defendants rely to make their argument are disputed. *Compare* Defs.' Mem. at 15 (citing DSOF ¶¶ 93-126), *with* Pls.' Counterstatement of Material Facts ("CSMF") ¶¶ 93-96, 99, 101, 103-104, 109, 112-114, 118-119. Second, as detailed below and in Plaintiffs' brief in support of their motion for summary judgment, Shahmuradyan's and Petrosyants's own testimony demonstrates that they both exercised "operational control" over the restaurant, thus making them "employers" under both the FLSA and NYLL. *See* Pls.' Mem. at 16-27.

Individuals are liable under the FLSA and NYLL if they are "employers." *See Irizarry v. Catsimatidis*, 722 F.3d 99 (2d Cir. 2013) (FLSA); *Bonito v. Avalon Partners, Inc.*, 106 A.D.3d 625 (1st Dep't 2013) (NYLL). "Employment" is "a flexible concept to be determined . . . by review of the totality of the circumstances." *Irizarry*, 72 F.3d at 104. The ultimate question is whether "the individual possessed operational control over employees: control over a company's actual 'operations' in a manner that relates to a plaintiff's employment." *Tapia v. BLCH 3rd Ave. LLC*, 906 F.3d 58, 61 (2d Cir. 2018) (additional quotation marks omitted). A person exercises operational control "'if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment.'" *Tapia*, 906 F.3d at 61. (quoting *Irizarry*, 722 F.3d at 110).

In addition to operational control, courts consider the "*Carter* factors." These include "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Irizarry*, 722 F.3d at 104 (internal quotation marks omitted). No one factor is dispositive, *Tapia*, 906 F.3d at 61, and satisfying all factors "is not necessary to establish employer status," *Lauriano v. Lucky Chicken Corp.*, No. 23-cv-9028, 2025 U.S. Dist. LEXIS 124807, at *4 (S.D.N.Y. July 1, 2025) (citations omitted).[6]

### A. Shahmuradyan and Petrosyants Have and Exercise Operational Control

The undisputed facts demonstrate that Defendants Shahmuradyan and Petrosyants exercised operational control over OLB and its operations, including the nature and conditions of Plaintiffs' employment.

---

[6] Courts have interpreted the NYLL definition of employer coextensively with the FLSA's. *See, e.g.*, *Cortez v. Brand Name 99 Cents & Up Corp.*, No. 24-cv-5262, 2025 U.S. Dist. LEXIS 82056, at *8 (S.D.N.Y. Apr. 30, 2025) (citing cases).

First, Shahmuradyan, OLB's sole owner, *see* SAMF ¶ 204, "oversee[s] everything," *id.* ¶ 205, has financial control over OLB, *id.* ¶ 207, and possesses "ultimate authority over all operations of the restaurant," *id.* ¶ 207. She hired the restaurant's general manager, director of operations, and head chef, *id.* ¶¶ 210, 222, 233, who all report solely to her, Shahmuradyan Dep. at 41:8-10. After hiring these managerial employees, she delegated them the authority to hire and directly supervise Plaintiffs and other service employees. *Id.* ¶¶ 218-19, 222. Shahmuradyan is not an absent owner but instead takes an active role in restaurant operations, including by visiting OLB each week and meeting with Paliko on a weekly basis. *Id* ¶¶ 213-217, 228. During these weekly meetings, Paliko and Shahmuradyan discuss OLB's day-to-day operations, with a particular focus on payroll. *Id.* ¶¶ 214-15, 217. Shahmuradyan has access to OLB's payroll system and regularly reviews payroll records. *See id.* ¶¶ 223-227.

Petrosyants similarly exercises control over OLB and its operations in a manner that directly affects service employees. He is responsible for "running the business," including "oversee[ing] the operations, [the] quality of food, [and the] quality of service," as well as "mak[ing] sure that the financials are in line with . . . being a profitable restaurant." SAMF ¶¶ 235-238. He is the highest-ranking employee aside from Shahmuradyan, and his duties include ensuring restaurant employees are paid properly. *Id.* ¶ 239, 242. He has power to hire and fire employees, and participated in the hiring of Paliko as general manager. *Id.* ¶¶ 240, 255. He meets with Paliko a "[f]ew times per week" to discuss restaurant operations, *id.* ¶¶ 243-44, and frequently discusses staffing issues with Paliko to ensure that enough employees are scheduled for each shift, *id.* ¶ 251. Petrosyants pays close attention to how service is being performed, directs service employees how to provide consistent service during pre-shift meetings, and expects managers to "take action" if he reports an issue with a service employee's performance. *Id.* ¶¶ 245-50.

This evidence demonstrates Shahmuradyan's and Petrosyant's operational control over OLB. While they may not have continuously monitored OLB employees, the decisions they made – particularly about what managerial employees to hire and what authority to delegate to them – demonstrate their decisions "directly affect the nature or conditions of [Plaintiffs'] employment.'" *Tapia*, 906 F.3d at 61 (quoting *Irizarry*, 722 F.3d at 110); *Irizarry*, 722 F.3d at 111 ("An employer does not need to look over h[er] worker's shoulders every day in order to exercise control." (quotation marks omitted); *Inclan v. New York Hospitality Grp., Inc.*, 95 F. Supp. 3d 490, 509 (S.D.N.Y. 2015) (operational control established where individual was the "sole owner," hired the restaurant's management team and chef, held weekly meetings with management at which restaurant operations and wage issues were addressed, was involved in a prior lawsuit against the restaurant, and was regularly present in the restaurant).

### B. The *Carter* Factors Confirm Shahmuradyan and Petrosyants are "Employers"

The *Carter* factors also demonstrate Shahmuradyan's and Petrosyants' more direct control over Plaintiffs and other OLB service employees.

With respect to the first *Carter* factor, both Shahmuradyan and Petrosyants have the power to hire and fire employees. SAMF ¶¶ 208, 240, 255. Shahmuradyan hired the general manager, director of operations, and head chef, *id.* ¶¶ 210, 222, 233, while Petrosyants participated in the hiring of the general manager, *id.* ¶ 255. The general manager, who reports to both Shahmuradyan and Petrosyants, is responsible for pay and personnel decisions for front-of-house staff. *Id.* ¶¶ 212, 218-19, 242. The Second Circuit has "particularly emphasized" the hiring of managerial employees as indicative of an individual's control. *Irizzary*, 722 F.3d at 116; *see RSR*, 172 F.3d at 140 ("[T]he fact that [an individual defendant] hired individuals who were in charge of the [employees] is a strong indication of control."); *Velasquez v. U.S. 1 Farm Mkt., Inc.*, No. 13-cv-

634, 2016 U.S. Dist. LEXIS 59536, at *26-27 (D. Conn. May 3, 2016) (individual defendant "clearly had the authority to hire . . . workers," as "evidenced by the fact that [he] personally selected and hired [the company's] management team"); *Inclan*, 95 F. Supp. 3d at 510 (first *Carter* factor satisfied where it was "undisputed that [the individual defendant] selected his management team").

The second *Carter* factor – supervision of work schedules and control over conditions of employment -- is also met. Shahmuradyan "oversee[s] everything" at the restaurant and has "ultimate authority" over all restaurant operations. SAMF ¶¶ 205-06. She visits the restaurant frequently, discusses its operations with the general manager at least every week, and keeps apprised of the restaurant's payroll and any payroll issues. *Id.* ¶¶ 213-217, 223-27. Petrosyants, who is in the restaurant multiple times per week, frequently meets with the general manager to discuss staffing issues and service quality. *Id.* ¶¶ 243-44, 251. He also attends pre-shift meetings at which he provides instructions about proper service and monitors how service is being performed. *Id.* ¶¶ 247-50. This evidence satisfies the second *Carter* factor as to both individual defendants. *See*, *e.g.*, *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 393 (E.D.N.Y. 2012) (calling employees and personally visiting the business one day per week suggests supervision and control over employee's schedule and conditions of employment); *Kaur v. Royal Arcadia Palace, Inc.*, 643 F. Supp. 2d 276, 293 (E.D.N.Y. 2007) (visiting a restaurant four to six times per month and occasionally giving directions to restaurant employees demonstrated control over conditions of employment).

The third *Carter* factor considers whether the individual "determined the rate and method of payment." *Irizarry*, 722 F.3d at 115. The Circuit "focuse[s] on the fact that the defendant controlled the company financially," including keeping track of its finances and payroll expenses.

24

*Id.* (quotation marks omitted). Here, Shahmuradyan and Petrosyants do just that. Shahmuradyan has financial control over OLB and keeps track of its payroll. Shahmuradyan Dep. at 16:20-24 (she "go[es] through all [of the restaurant's] Quickbooks" and signs off on its tax returns), 29:24-30 (she was to be informed of "any problems with payroll" because she was responsible for "making sure all the [restaurant's] finances are on point"), 23:8-16 (during her meetings with Paliko she "ask[s] him to make sure to send [her] all the reports [and] that payroll is done . . .."), 23:15-16 (she "make[s] sure [payroll] is done"), 23:20-24:4 (she had access to the restaurant's payroll applications and reviewed payroll), 35:23-36:2 (admitting she had "financial control of the restaurant"), 39:13-18 (she hired OLB's accountant). Petrosyants, is responsible for ensuring that restaurant employees are paid and paid properly. SAMF ¶ 239. As the Second Circuit emphasized, an individual's "ultimate responsibility for the plaintiff's wages," is a strong indicia of control and particularly indicative of employer status. *Irizarry*, 722 F.3d at 117.

Finally, the fourth *Carter* factor inquires whether the individual "maintained employment records." *Irizarry*, 722 F.3d at 105. Here, Shahmuradyan and Petroyants were two of the only three people with access to the storage area where OLB's physical employment records are maintained. SAMF ¶ 254. Moreover, both have access to OLB's electronic payroll records. *Id.* ¶¶ 223-226, 252. This satisfies the fourth *Carter* factor. *See Grande*, 2023 U.S. Dist. LEXIS 140490, at *49 (fourth factor satisfied and employer status found where individual had "access to the employee records").

## C. The Totality of the Circumstances Demonstrate that Shahmuradyan and Petrosyants are "Employers" under the FLSA and NYLL

Viewed in its totality, this evidence demonstrates that Shahmuradyan and Petrosyants are "employers" under the FLSA and NYLL. Both exercised active control over the restaurant, its management, and its operations, including its payroll in ways that directly affect the nature and

conditions of Plaintiff's employment, which sets them apart from cases Defendants cite. *See* Defs.' Mem. at 16 (citing *Tapia v. BLCH 3rd Ave., LLC*, 2016 U.S. Dist. LEXIS 118313 (S.D.N.Y. Sept. 1, 2016)); *Salinas*, 123 F. Supp. 3d 442). Crucially, in both *Tapia* or *Salinas* there was "no evidence" that the alleged individual employers had any authority to hire and fire, much less evidence that they *did* hire managerial employees as both Shahmuradyan and Petrosyants did here. *See Tapia*, 2016 U.S. Dist. LEXIS 118313, at *25 (individual defendant "did not hire and fire employees"); *Salinas*, 123 F. Supp. 3d at 463 ("no evidence that [the individual defendant] . . . has the power to hire and fire employees"). Nor was there evidence that the individuals exercised financial control over the business as, again, both Petrosyants and Shahmuradyan did here.

Thus, both Shahmuradyan and Petrosyants, unlike the individuals in Defendants' cases and like the individual defendant in *Irizzary*, satisfy "two of the *Carter* factors in ways that [the Circuit] has particularly emphasized . . .: the hiring of managerial employees, and overall financial control of the company." *Irizarry*, 722 F.3d at 116. Courts routinely impose individual liability where, as here, Shahmuradyan is the restaurant's sole owner, exercises ultimate financial control over the business, has authority to hire and fire employees, oversees restaurant operations, is frequently present in the restaurant, hires managerial employees, receives regular reports from managerial employees as to restaurant operations, and has access to employee records. *Cf. Grande v. 48 Rockefeller Corp.*, No. 21-cv-1593, 2023 U.S. Dist. LEXIS 140490, at *50-51 (S.D.N.Y. Aug. 11, 2023) (granting summary judgment to plaintiffs on individual liability). Similarly, courts find employer status when, like Petrosyants, individuals regularly met with managers, exercised financial control over the company, participated in hiring managers, and directly interacted with lower-level employees. *See Lodescar v. Denihan Hosp. Grp.*, No. 14-cv-8218, 2016 U.S. Dist. LEXIS 202630, at *10-11 (S.D.N.Y. Sept. 30, 2016) (concluding individuals exercised operational

control where they regularly met with managers, exercised financial control over the company, participated in hiring managers, and directly interact with lower-level employees).

For the reasons set forth above and in Plaintiff's brief in support of their motion for partial summary judgment, the Court should conclude that both Shahmuradyan and Petrosyants are individually liable. At the very least, the Court should deny Defendants' motion for summary judgment on this issue.

## CONCLUSION

For the foregoing reasons, Defendants' motion should be denied in its entirety.

Dated: January 22, 2026
      New York, NY

                      **JOSEPH & KIRSCHENBAUM LLP**

                      By:  */s/Lucas C. Buzzard*
                           D. Maimon Kirschenbaum
                           Josef Nussbaum
                           Lucas C. Buzzard
                           45 Broadway, Suite 320
                           New York, NY 10006
                           212-688-5640

                           *Attorneys for Plaintiffs*
                           *and the putative class*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing opposition complies with the word-count limitation stated in SDNY Local Rule 7.1(c). Excluding the case caption, tables, this certification, and counsel's signature block, but including all footnotes, this brief contains 8,701 words. I make this certification using the word count feature of Microsoft Word.

/s/Lucas C. Buzzard