# Exhibit 4

# In the Matter of

Case No.: 1:25cv-4490(AS)(GS)

FERNANDEZ, et al.

v.

BULLDOZER HOSPITALITY GROUP, INC., et al.

---

## Examination of Katherine Fernandez

*Monday, December 8, 2025*

---



The Little
Reporting
Company

469 Seventh Avenue
12th Floor
New York, NY 10018
tel: 646-650-5055
www.littlereporting.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X

KATHERINE FERNANDEZ, on behalf
of herself and others
similarly situated,

               Plaintiff,

                        Case No.:
                        :25cv-4490(AS)(GS)

        -against-

BULLDOZER HOSPITALITY GROUP,
INC., D/B/A/ OSTERIA LA BAIA,
ROBERT PETROSYANTS and
MARIANNA SHAHMURADYAN,

               Defendants.
----------------------------------------X

             December 8, 2025
             10:05 a.m.


  Examination of PLAINTIFF, KATHERINE FERNANDEZ,

held pursuant to Notice and Court Order, held

via Zoom conference, before Ruthayn Shalom, a

shorthand Reporter and Notary Public within and

for the State of New York.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

2

2       A P P E A R A N C E S :

3               JOSEPH & KIRSCHENBAUM LLP
                Attorneys for Plaintiffs
4               KATHERINE FERNANDEZ, JAVIER MOLINA,
                and ADRIAN MONTOR-PERAN
5               45 Broadway, Suite 320
                New York, New York 10006
6               BY: JOSEF NUSSBAUM, ESQ.
                jnussbaum@jk-llp.com
7

8               SAGE LEGAL LLC
                Attorneys for Defendants
9               18211 Jamaica Avenue
                Jamaica, New York 11423
10              BY: EMANUEL KATAEV, ESQ.
                emanuel@sagelegal.nyc
11

12
        ALSO PRESENT:
13      Maria Cristina Bloise, Spanish interpreter

14      Alivia Cooney, Paralegal - Sage Legal

15      Andrew Deternoz, Paralegal, Joseph & Kirschenbaum

16

17

18

19

20

21

22

23

24

25

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

3

2          IT IS HEREBY STIPULATED AND AGREED, by

3     and between the attorneys for the respective

4     parties hereto, that this examination may be

5     sworn to before any Notary Public.

6

7          IT IS FURTHER STIPULATED AND AGREED that

8     the sealing and filing of the said examination

9     shall be waived.

10

11         IT IS FURTHER STIPULATED AND AGREED that

12    all objections to questions except as to form

13    shall be reserved for trial.

14

15

16

17

18

19

20

21

22

23

24

25

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

4

1                         K. Fernandaz

2              MARIA CRISTINA BLOISE, a Spanish

3       Interpreter, was duly sworn by Ruthayn Shalom,

4       a Notary Public of the State of New York.

5                  KATHERINE FERNANDEZ, a Plaintiff

6       herein, having been first duly sworn through the

7       Interpreter by Ruthayn Shalom, a Notary Public of

8       the State of New York, and stating her address as

9       58-35 Grainger Street, Apartment 6E, Corona,

10      New York 11368, was examined and testified

11      through the interpreter as follows:

12      EXAMINATION BY

13      MR. KATAEV:

14              MR. KATAEV:  Good morning.  Before we

15          begin just the usual Federal stipulations, the

16          same stipulations we took the last time; is

17          that okay with you, Josef?

18              MR. NUSSBAUM:  Sure.

19          Q    Good morning, Ms. Fernandaz.  May I call

20      you Katherine?

21          A    Yes, good morning.

22          Q    My name is Emanuel Kataev.  I'm the

23      attorney for the Defendants, Bulldozer Hospitality

24      Group, Inc., Robert Petrosyants and Marianna

25      Shahmuradyan.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

5

```
 1                      K. Fernandaz
 2         A    Yes.
 3         Q    From here on in I will be referring to
 4    Bulldozer as the restaurant or Osteria La Baia; do
 5    you understand that?
 6         A    Yes.
 7         Q    I'll be referring to the Petrosayants as
 8    Rob?
 9         A    Refer as what?
10         Q    I will refer to Mr. Petrosayants as just
11    Rob?
12         A    Okay.
13         Q    And I'll be referring to Ms. Shahmuradyan
14    as Marianna?
15         A    Okay.
16         Q    Do you know who Rob and Marianna are?
17         A    Yes.
18         Q    I will be asking you and you will be
19    answering questions today about yourself, Rob,
20    Marianna, the restaurant, your claims against the
21    Defendants and other related subjects; do you
22    understand that?
23         A    Yes.
24         Q    Your testimony today even though we are in
25    this informal virtual proceeding is subject to the
```

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

6

K. Fernandaz

1

2       same oath and same penalty of perjury as if you were

3       testifying in court; do you understand that?

4            A     I understand.

5            Q     Have you ever been deposed before?

6            A     No.

7            Q     I'm going to go over some of the important

8       ground rules for you to understand so we can have an

9       effective, efficient and hopefully quicker

10      deposition, okay?

11           A     Yes.

12           Q     First keep your voice loud and clear for

13      the court reporter.  You have been doing a great job

14      of that so far.

15           A     Okay.

16           Q     Please give answers in words.  The court

17      reporter is not able to take down body gestures,

18      mumbling, ah hah or uh huh, okay?

19           A     Okay.

20           Q     Third, please allow me to complete my

21      question before you answer and I will give you the

22      same courtesy.  You have been doing a great job

23      waiting until I finish so keep that up.

24           A     Okay.

25           Q     If you don't understand the question tell

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

7

K. Fernandaz

1
2    me and I will rephrase it.  If you answer the
3    question, I will assume that you understood it; do
4    you understand that?
5         A    I understand.
6         Q    We are looking for your best recollection
7    of events today.  While I don't want you to guess at
8    any answers given that your employment with the
9    company spanned from 2022 through 2025 over a number
10   of years, if your memory is not crystal clear, I'm
11   still entitled to your best recollection; do you
12   understand that?
13        A    Okay.
14        Q    From time to time your attorney may put an
15   objection on the record.  Unless he specifically
16   instructs you not to answer a question after he puts
17   the objection on the record, you have to answer the
18   question; do you understand that?
19        A    Okay.
20        Q    You can take a break any time you would
21   like for any reason, but if a question is pending I
22   need the answer to that question?
23        A    Okay.
24        Q    Do you understand all these ground rules?
25        A    Yes, sir.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

8

1                          K. Fernandaz

2        Q    Is there any reason you cannot participate

3    in today's deposition and provide truthful answers

4    to questions?

5        A    No.

6        Q    Have you consumed any drugs, alcohol or

7    medication in the past 24 hours that will affect

8    your ability to testify truthfully?

9        A    No.

10        Q    Is there any reason you can think of as to

11    why you cannot give truthful answers?

12        A    No.

13        Q    We have an interpreter here today,

14    correct?

15        A    Yes.

16        Q    You're pretty fluent in the English

17    language, aren't you?

18             MR. NUSSBAUM:  Objection.  You can answer.

19        A    Yes.  I'm not fluent but I do understand.

20        Q    Earlier this morning when I wanted you to

21    move the camera closer you understood the

22    instruction, didn't you?

23        A    Yes.

24        Q    What is the reason you have an interpreter

25    here today if you understand the English language?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

9

1                    K. Fernandaz

2              MR. NUSSBAUM:  Objection.

3        A    Because I don't understand 100 percent.  I

4    only understand a certain percentage of English.

5        Q    What percentage do you believe you

6    understand?

7        A    I think about 60 percent.

8        Q    You go by the name of Katherine Fernandez,

9    correct?

10       A    Yes.

11       Q    Is there any other name you go by or have

12   gone by in the past?

13       A    Sometimes, they call me Kathy.  That's it.

14       Q    Other than the nickname, Kathy, you don't

15   have any other name or middle name, correct?

16       A    No.

17       Q    Did you prepare for today's deposition?

18       A    Yes.

19       Q    How did you prepare for today's

20   deposition?

21       A    Waiting for the time and staying here

22   waiting for the time.

23       Q    Did you meet with your attorneys to

24   prepare for the deposition?

25       A    I didn't get together with him.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

10

1                        K. Fernandaz

2          Q    Did you review any documents in

3     preparation?

4          A    No.

5          Q    Did you review any deposition transcripts?

6          A    No.

7          Q    Are you aware that your co-Plaintiff,

8     Plaintiff Adrian Montor-Teran was deposed on

9     December 2nd, 2025?

10         A    Yes.

11         Q    Did you review his deposition transcript?

12         A    No.

13         Q    Are you in possession of his deposition?

14         A    No.

15         Q    Where were you on December 2nd?

16              MR. NUSSBAUM:  Objection.

17         A    In my house.

18         Q    Did you visit the law offices of Joseph &

19    Kirschenbaum, your attorneys on that day?

20         A    No.

21         Q    When was the last time you visited their

22    office?

23         A    I don't remember.  It's been a couple of

24    months.

25         Q    How many times have you been to their

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

11

1                         K. Fernandaz

2      offices?

3            A    Twice.

4            MR. NUSSBAUM:  What is the relevance of

5      any of this?

6            MR. KATAEV:  I'm entitled to ask these

7      questions.

8            MR. NUSSBAUM:  I'm going to keep you on a

9      leash as to relevance.  If you are going to

10     continue to ask question that have no

11     relevance, I'm going to instruct her not to

12     answer.

13           MR. KATAEV:  Please don't interrupt my

14     deposition.  If you instruct her not to answer,

15     we will get the court on the line.

16           MR. NUSSBAUM:  When was the last time you

17     went to the lawyer's office?

18           MR. KATAEV:  Don't interrupt, you don't

19     decide what's relevant.  You objected or

20     instructed her not to answer.  Do your job and

21     stop interrupting.

22     BY MR. KATAEV:

23           Q    When was the last time you met with your

24     attorneys in a virtual meeting?

25           A    Two weeks ago.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

12

1                       K. Fernandaz

2          Q    How many times have you met with your

3     attorneys in virtual meetings?

4          A    Never.

5          Q    Other than the one time two weeks ago?

6          A    Yes.

7          Q    Have you ever signed any affidavit,

8     statement, declaration or any other document under

9     oath or affirmation concerning this case?

10         A    When I presented the demand.

11         Q    You're referring to the complaint to join

12    the lawsuit?

13         A    Yes.

14         Q    Other than that, you didn't sign any other

15    documents related to this case?

16         A    No.

17         Q    Are you aware of any other employees who

18    did so?

19         A    No.

20         Q    Did you speak to anyone other than your

21    attorneys about today's deposition?

22         A    No.

23         Q    What documents have you looked at in this

24    case, if any?

25              MR. NUSSBAUM:  Objection.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

13

1                         K. Fernandaz

2        A    Nothing.  Just my demand.

3        Q    When you say the demand, you're referring

4   to the complaint, correct?

5        A    Yes.

6        Q    To your knowledge, how many complaints

7   have been filed in this case?

8        A    No.

9        Q    Are you aware as to other than the

10  original complaint if there has been any amended

11  complaint?

12                Other than the original complaint

13  that was filed in this care, are you aware of any

14  other complaint being filed in this case thereafter?

15       A    No.

16       Q    Now we have an individual that is in the

17  deposition with us today.  He's the man in the blue

18  hoodie; do you know his name?

19       A    Yes.

20       Q    What is his name?

21       A    Andrew.

22       Q    Did you meet with Andrew in preparation

23  for your deposition today?

24       A    No, sir.

25       Q    Were you with Andrew on December 2nd at

14

```
                           K. Fernandaz
 1
 2     the time we were taking the deposition of Adrian?
 3          A    No.
 4          Q    Have you had any conversations with anyone
 5     other than your attorneys and the law firm in
 6     preparation for your deposition today?
 7               MR. NUSSBAUM:  Objection.
 8          A    No.
 9          Q    Have you had any conversations with anyone
10     other than your attorneys or the law office about
11     your case in general against the defendants?
12          A    No.
13          Q    The current address that you provided, is
14     that an address that you rent or own?
15          A    I rent.
16          Q    Who do you live with?
17          A    With my husband.
18          Q    What is his name?
19          A    Endi Williams.
20          Q    Can you spell it the first name?
21          A    E-N-D-I.
22          Q    What is your date of birth, Katherine?
23          A    October 26, 1993.
24          Q    Where were you born?
25          A    Dominican Republic.
```

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

15

K. Fernandaz

1

2      Q    When did you first arrive in the United
3    States?

4      A    June of 2018.

5      Q    Have you ever went back to the Dominican
6    Republic to visit?

7      A    Yes.

8      Q    Tell me the month and years in which you
9    went back to visit each visit?

10          MR. NUSSBAUM:  Objection.

11     A    The last time was May of this year.

12     Q    Prior to May of 2025, when was the last
13    time you visited?

14     A    May of last year.

15     Q    May of 2024 and before that?

16     A    That's it.

17     Q    How long was the visit in May of '24?

18     A    One week.

19     Q    During that week you were not working at
20    the restaurant, correct?

21     A    I was on vacation.  How would I go to
22    work?

23     Q    I'm asking for a yes or no.  You were not
24    working at the restaurant, you were in the Dominican
25    Republic in May of '24, correct?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

16

                          K. Fernandaz

1
2        A     Yes.
3        Q     Same question for May of '25, you were
4   not -- withdrawn.
5                    How long was your visit to the
6   Dominican Republic in May of '25?
7        A     Two weeks.
8        Q     You were not working at Osteria La Baia at
9   the time you were in the Dominican Republic in May
10  of '25, correct?
11       A     Correct.
12       Q     Now what specific day were you in the
13  Dominican Republic in May of 25?  Do you remember
14  the day you left there and the day you came back?
15             MR. NUSSBAUM:  Objection.
16       A     I don't remember.  I think it was the
17  sixth of May.
18       Q     That you left, correct?
19       A     Yes.
20       Q     Okay.  What was the last day of employment
21  at the restaurant?
22       A     I don't remember.
23             MR. KATAEV:  We are going to call for the
24             production of the witness's travel documents
25             and/or passport indicating the date she left

17

K. Fernandaz

1

2        and the date she returned and we will follow up

3        writing.

4                    (Counsel Request.)

5            MR. NUSSBAUM:  I don't believe that's

6        responsive to any discovery requests.  You can

7        do whatever you want.

8            MR. KATAEV:  Thank you.  You don't need to

9        respond to my calls for production in the

10       deposition.  I will follow up and you can

11       object.

12           MR. NUSSBAUM:  I'm responding to the

13       extent you're trying to intimidate the witness.

14           MR. KATAEV:  I'm not trying to intimate

15       anybody.

16           MR. NUSSBAUM:  We have been here for a

17       half hour.  Most of your questions are not

18       relevant to the case.

19           MR. KATAEV:  This is not going to fly.

20       I'm writing to the judge right now.  I want him

21       in here.  We are going to read back everything

22       that you've said interrupting the deposition

23       and it's going to stop, okay?  I'm not doing

24       this.

25           MR. NUSSBAUM:  It's your deposition.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

18

                              K. Fernandaz

1

2        You're free to do what you want.

3             MR. KATAEV:  Thank you, I will.

4             Prepare to read back all of the

5        interruptions by opposing counsel.

6    (Whereupon, an off-the-record discussion was held.)

7    BY MR. KATAEV:

8        Q    Everyone ready to proceed?

9             MR. NUSSBAUM:  Before we proceed, I want

10       to put on the record that the court's rules

11       require the parties to jointly email the court.

12       Counsel submitted a one-sided email to the

13       court right now and did not allow Plaintiffs

14       the opportunity to include any portion that

15       they wanted in the email to the court.  You may

16       proceed.

17            MR. KATAEV:  I don't know what email

18       you're looking at.  Maybe you have a problem

19       with your email server, you don't have enough

20       money to keep your email working.  I'm going to

21       proceed with my deposition and ask you not to

22       interrupt because I will ask for another day of

23       deposition if this keeps up.

24            MR. NUSSBAUM:  Okay.

25

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

19

1                      K. Fernandaz

2       BY MR. KATAEV:

3            Q    Ms. Fernandaz, you said you were married.

4       When did you get married?

5                 MR. NUSSBAUM:  Objection.

6            A    I got married in 2018.

7            Q    Is that your first marriage?

8            A    Yes.

9            Q    What month did you get married in?

10           A    In April.  I'm not sure.  I don't remember

11      exactly.

12           Q    What country did you get married in?

13           A    Here in the United States.

14           Q    You have never been married before,

15      correct?

16           A    No.

17           Q    What does your husband do for a living?

18           A    He's an independent worker, he's a

19      photographer and he works for Uber Eats.

20           Q    Do you have any children?

21           A    Yes.

22           Q    How many?

23           A    One.

24           Q    How old?

25           A    Four.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

20

1                    K. Fernandaz

2          Q    Boy or girl?

3          A    Girl.

4          Q    Does your child currently live with you?

5          A    Yes.

6          Q    You're supporting your child?

7          A    Yes.

8          Q    Are you currently working?

9          A    Yes.

10         Q    Where?

11         A    In the restaurant.

12         Q    Which one?

13         A    Italian restaurant.

14         Q    What is the name of the Italian

15    restaurant?

16         A    Marsella.

17         Q    Marsella or Marusella?

18         A    Marusella.

19         Q    Have you ever been arrested before?

20         A    No.

21         Q    You have never pled guilty to any crime,

22    correct?

23         A    No.

24         Q    Irrespective of whether you have ever been

25    arrested or pled guilty to any crime, have you ever

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

21

1                        K. Fernandaz

2       committed any crime?

3            A    Never.

4            Q    Other than this current lawsuit, have you

5       ever been involved in any other lawsuit?

6            A    No.

7            Q    Have you ever filed a complaint against

8       any employer at the New York State or United States

9       Department of Labor?

10           A    Never.

11           Q    Have you ever filed a claim for

12      unemployment insurance benefits?

13           A    Yes.

14           Q    Was that for the restaurant subject to

15      this lawsuit or elsewhere?

16           A    For the restaurant that is part of this

17      demand.

18           Q    When you filled out the claim for

19      unemployment benefits, you were required to list

20      among other things your income and your hourly rate

21      and other things, correct?

22           A    Yes.

23               MR. KATAEV:  We are going to call for the

24               production of all documents submitted to the

25               New York State Department of Labor in

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

22

                        K. Fernandaz

1

2          connection with your unemployment insurance

3          benefits claim.  We will follow up in writing.

4                    (Counsel Request.)

5          A    Okay.

6          Q    Did you receive unemployment insurance

7    benefits following your claim with the New York

8    State Department of Labor?

9          A    Yes.

10         Q    When did you find a job again after

11   leaving or separating from employment with the

12   restaurant?

13         A    After I came back from my country three

14   weeks later.

15         Q    Have you ever filed a claim for workers'

16   compensation benefits?

17         A    What is that?

18         Q    I'll represent to you that my

19   understanding is that workers' compensation benefits

20   are when a person is injured at work and they

21   receive benefits arising out of an injury at work

22   when they can no longer work due to the injury.

23         A    No.

24         Q    Have you ever applied for food stamps?

25         A    No.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

23

1                        K. Fernandaz

2          Q    Do you currently receive Medicare or

3     Medicaid?

4          A    Health First.

5          Q    When did you first obtain the benefits

6     under Health First?

7          A    When I got my Social Security.

8          Q    When was that; month and year?

9          A    2019.  I don't remember the month.

10         Q    From 2019 until the present, you have

11    maintained health insurance with Health First,

12    correct?

13         A    Yes.

14         Q    Every year or thereabouts you have to

15    renew your application to continue your health

16    insurance, correct?

17         A    Correct.

18         Q    Ever time that you reapply, you have to

19    provide information about your employment and how

20    much you earn, correct?

21         A    Correct.

22         MR. KATAEV:  I'm going to call for the

23         production of all your renewal applications for

24         Health First.  We will follow up in writing.

25                    (Counsel Request.)

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

24

1                         K. Fernandaz

2          A     Okay.

3          Q     Do you receive any child care assistance

4     benefits?

5          A     Yes.  She goes to daycare.

6          Q     You get that as a government benefit,

7     correct?

8          A     Yes.

9          Q     You have to make an application in order

10    to obtain that benefit, correct?

11         A     Yes.

12         Q     When you fill out the application, you

13    have to provide information about your income and

14    how much you earn in your employment, correct?

15         A     Yes.

16         Q     When did you first apply for childcare

17    assistance benefits; month and year?

18         A     Last year.

19         Q     Do you remember what month -- withdrawn.

20    Nevermind.

21              MR. KATAEV:  We are going to call for the

22         production of all childcare assistance benefits

23         applications.  We will follow up in writing.

24                    (Counsel Request.)

25         Q     Do you receive any housing assistance?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

25

                        K. Fernandaz

1

2          A     No.

3          Q     What about any assistance with food?

4          A     No.

5          Q     Other than the childcare assistance, is

6     there any form of education assistance you've

7     received?

8          A     No.

9          Q     Did you attend high school?

10         A     Yes.

11         Q     In what country?

12         A     Dominican Republic.

13         Q     What was the name of the high school?

14         A     Don Juan Hernandez.  D-O-N J-U-A-N

15    Hernandez.  H-E-R-N-A-D-E-Z.

16         Q     Did you graduate?

17         A     Yes.

18         Q     When month and year?

19         A     I don't remember.

20         Q     What did you do after you graduated high

21    school in connection with your education and

22    employment?

23         A     I went to university.

24         Q     What country?

25         A     Dominican Republic.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

26

1                              K. Fernandaz

2          Q    What was the name of the university or

3     college?

4          A    I don't remember.  I can't remember.

5          Q    Did you graduate?

6          A    No.

7          Q    How many years did you complete?

8          A    A year-and-a-half.

9          Q    Why did you not complete your college

10    studies?

11         A    Because my father didn't have enough money

12    to support my brothers and myself so I stopped.

13         Q    When did you move to the United States in

14    connection with when you stopped going to college?

15    How much time passed between the two?

16              MR. NUSSBAUM:  Objection.

17         A    Years.

18         Q    When you came to the United States, did

19    you attend any type of schooling here?

20         A    Yes.  I went to learn English.

21         Q    Where did you go?

22         A    To a school called Zony.

23         Q    Can you spell it?

24         A    Z-O-N-Y.

25         Q    You paid for that?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

27

1                    K. Fernandaz

2         A    Yes.

3         Q    Other than attending Zony to learn

4    English, did you ever attend any other type of

5    schooling in the United States?

6         A    No.

7         Q    How long did you attend English classes at

8    Zony?

9         A    Two months.

10        Q    Did you ever attend any type of vocational

11   school or apprenticeship program?

12        A    No.

13        Q    What was your first job ever in the United

14   States -- go head.

15        A    I only took some cosmetology classes,

16   makeup.

17        Q    When was that?  Can you tell me the month

18   and years you started that?

19        A    2020.  The month I don't remember.

20        Q    What about Zony, what year was that?

21        A    2019.

22        Q    What was the first job you ever had here

23   in the United States?

24        A    A steakhouse in Wall Street.

25        Q    What was the name?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

28

1              K. Fernandaz

2        A     Harry's Steakhouse.

3        Q     What was the month and year you first

4   started working there?

5        A     Year 2019.

6        Q     You don't remember the month?

7        A     No.

8        Q     What about when you ended your employment

9   there, do you remember the month and year for that?

10       A     Yes.

11       Q     When was that?

12       A     October of 2022.

13       Q     You were there for approximately three

14  years?

15       A     Yes.

16       Q     What was your title or role there when you

17  first started?

18       A     I started as a barista, a bus person, and

19  then I was a waitress.

20       Q     In each of those roles you received tips,

21  correct?

22       A     Yes.

23       Q     When you first started working at Harry's

24  Steakhouse, you were informed that your tips would

25  make up part of the minimum wage owed to you,

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

29

1                       K. Fernandaz

2       correct?

3                MR. NUSSBAUM:  Objection.

4          A    Yes.

5          Q    They told you verbally?

6          A    On writing.

7          Q    Do you remember what that notice looked

8       like?

9          A    A document like any other.

10         Q    Do you still have a copy of that document?

11         A    No.

12         Q    Do you have any documents when you were

13      employed at Harry's Steakhouse?

14         A    No.

15         Q    Is it fair to say that your job

16      responsibilities at Harry's Steakhouse generally was

17      to serve customers?

18         A    Yes.

19         Q    Was there a tip pool at Harry's

20      Steakhouse?

21         A    Yes.

22         Q    Between all the job titles you held at

23      Harry's Steakhouse did your compensation change?

24         A    Yes.

25         Q    Can you explain how?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

                                                          30

1                         K. Fernandaz

2        A     For every position the points changed.

3        Q     If I understand your answer correctly,

4    when you refer to the points, you're referring to

5    the points that are part of the tip pool system,

6    correct?

7        A     Yes.

8        Q     Do you remember the three different point

9    numbers assigned for each of the positions?

10       A     No.

11       Q     Whenever the points changed, were you

12   given something in writing to that effect?

13       A     They used to tell me verbally.

14       Q     Was there ever a time that you didn't make

15   enough in tips to make the minimum wage while

16   working at Harry's?

17             MR. NUSSBAUM:  Objection.

18       A     Yes.

19       Q     Did Harry's pay you the difference between

20   what you earned and the minimum wage to make up for

21   the difference?

22             MR. NUSSBAUM:  Objection.

23       A     No.

24       Q     You haven't filed any claims against

25   Harry's, correct?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

31

K. Fernandaz

1

2      A    No.  I just told them.

3      Q    You told them, hey, I didn't receive

4  enough to make up for the minimum wage, correct?

5      A    Yes.

6      Q    What, if anything, did they do about it?

7      A    Yes, they did something.

8      Q    They paid you?

9      A    The following weeks I started working as a

10  waitress and then after that I didn't have that

11  problem anymore.

12      Q    Understood.  They didn't make up the

13  difference, correct?

14      A    No.

15      Q    Under what circumstances did you separate

16  from employment with Harry's?

17      A    Because I thought it was a lot of work and

18  I used to get home at very, very late hours.

19      Q    Is it fair to say that you quit?

20      A    Yes, I quit.

21      Q    Now while you were working at Harry's were

22  you working anywhere else at the same time?

23      A    No.

24      Q    Were you working there full time?

25      A    Yes.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

32

                            K. Fernandaz

1

2           MR. KATAEV:  Can you read back the last

3       question and answer, Madame Court Reporter?

4    (Whereupon, the referred to question and answer was

5                 read back by the reporter.)

6           Q    After your job at Harry's where did you go

7       to work?

8           A    To the restaurant that we are demanding.

9           Q    How did you get the job there?

10          A    Through a colleague that used to work with

11      me at Harry's.

12          Q    What is the name of that colleague?

13          A    Magalis.  M-A-G-A-L-I-S.

14          Q    Understood, thank you.

15               To your knowledge is Magalis still

16      working at the restaurant?

17          A    Where?

18          Q    At Osteria La Baia.

19          A    No, she doesn't work there.

20          Q    Do you maintain contact with Magalis?

21          A    No, she doesn't work there.

22          Q    My question is do you maintain contact

23      with her; have you spoken with her?

24          A    Yes.  We still talk to each other.

25          Q    Does she also live in Corona?

33

1                         K. Fernandaz

2          A    No.

3          Q    Where is she working now?

4          A    I don't know.

5          Q    When has the last time you spoke with her?

6          A    About three months ago.

7          Q    Did you have any discussion with her about

8     this lawsuit?

9          A    No.

10         Q    You were fired from Osteria La Baia,

11    correct?

12         A    They send me a message giving thanks for

13    the time I worked there.

14         Q    To your knowledge you were not fired from

15    there?

16         A    Yes, they fire me.  They took me off of

17    the schedule and I didn't work there, but they never

18    gave me a proper document about firing me.

19         Q    Understood.  You were upset when you found

20    out you were fired, correct?

21         A    Yes.

22         Q    Why were you upset?

23         A    Because I had vacations approved by the

24    same company and I didn't think it was a

25    professional thing, and they fired me in the middle

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

34

                        K. Fernandaz

1

2      of my vacations.

3          Q    Are you saying that there was a

4      misunderstanding as to whether your vacation was

5      approved such that they had a problem with you not

6      being at work?

7          A    What I said was that my vacations were

8      approved by form number two, application two.  What

9      I'm saying is during my approved vacations they

10     fired me.

11         Q    But to your knowledge did they fire you

12     because they took issue with you taking two weeks

13     and needed you at the restaurant?

14         A    The vacations was approved.  Other people

15     took vacations for two months, two weeks.  They

16     approved my vacation for two weeks by the general

17     manager.

18         Q    You're saying there was some

19     miscommunication about that, correct?

20         A    No.  It was not miscommunication.

21     Everything was approved formally by application

22     number two.  From week one to week two everything

23     was approved and two months before the fact.

24         Q    When you were terminated, did they express

25     any disappointment or displeasure with the fact you

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

35

                         K. Fernandaz

1

2     were gone two weeks?

3          A    Yes.

4          Q    Based on what they were telling you, your

5     two-week vacation played a role in their decision to

6     terminate you, correct?

7          A    Probably, maybe.

8          Q    How much of a gap in time was there

9     between when you left Harry's and when you started

10    at Osteria La Baia?

11         A    Two days.

12         Q    How much of a gap in time was there

13    between the time you separated from employment with

14    Osteria La Baia and your current job at the Italian

15    restaurant?

16         A    I'm sorry.

17         Q    I'll repeat the question.

18              How much time in between leaving your

19    job at Osteria La Baia and starting a new job at the

20    Italian restaurant how much time passed?

21         A    Since May until now.

22         Q    I think you misunderstood my question.

23    Between leaving your job at Osteria La Baia and

24    starting the job at the Italian restaurant, how much

25    time passed between those two jobs?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

36

                              K. Fernandaz

1                             K. Fernandaz

2        A    Three months.

3        Q    Now in October of '22, you were hired by

4    Osteria La Baia as an employee, correct?

5        A    Yes.

6        Q    And Janos interviewed you, correct?

7        A    At that time it was so Fotis, the GM, he

8    did the interview.

9        Q    How do you spell that manager's name?

10       A    F-O-T-I-S.

11       Q    Fotis is a male?

12       A    Male.

13       Q    He was the one that hired you after the

14   interview, correct?

15       A    Yes.

16       Q    Did you first come in contact with him

17   face to face or did you send him a text message or

18   an email with a resume?

19            MR. NUSSBAUM:  Objection.

20       A    Face to face.

21       Q    Did Magalis tell you to speak with him

22   about the job?

23       A    Yes.

24       Q    After meeting with Fotis face-to-face what

25   happened?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

37

K. Fernandaz

2      A    He hired me.

3      Q    Did you have to fill out an employment
4   application?

5      A    No.  He was at the computer and he gave me
6   the number that I have to use to punch in everyday.

7      Q    When he was at the computer, he was using
8   the Toast system; is that right?

9      A    I believe he did.

10     Q    He was asking you for information and
11  inputting it himself or did he ask you to input the
12  information?

13     A    He only asked me for my Social and my
14  green card and that was it.

15     Q    Did you provide your email address for the
16  Toast system?

17     A    Yes.

18     Q    When you gave him your email, at some
19  point in time you received an email from Toast with
20  an ability to log in with a user name and password
21  to the Toast system, correct?

22     A    Yes.

23     Q    From time to time during your employment
24  you used that system to access your paystubs and any
25  other employment-related documentation, correct?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez --- December 8, 2025

38

                            K. Fernandaz

1

2       A    Yes.

3       Q    How did you learn you had been hired?  Was

4   it verbal or was there something in writing?

5       A    I asked Magalis and I said are they going

6   to hire me and she said yes.

7       Q    During the time that you were using the

8   Toast system with Fotis, were you also required to

9   complete certain documents electronically on the

10  touch pad?

11      A    You have to do your own W2.

12      Q    You did it electronically or on paper or

13  some other way?

14      A    Electronically.

15      Q    It was the same thing for your W4, right?

16      A    Yes, yes.

17      Q    It was the same thing for your notice of

18  pay rate, correct?

19           MR. NUSSBAUM:  Objection.

20      A    No.  In other words I didn't understand

21  the question.

22      Q    Well other than the W4 tax form, the I9,

23  you also electronically completed and signed your

24  notice of pay rate using the Toast system, correct?

25           MR. NUSSBAUM:  Objection.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

39

1                        K. Fernandaz

2         A    I never received anything like that.

3         Q    You're confident you never received

4    anything like that or you don't remember receiving

5    anything like that?

6              MR. NUSSBAUM:  Objection.

7         A    One hundred percent.  I know 100 percent I

8    didn't receive anything.

9         Q    What was your job title when you were

10   hired at the restaurant?

11        A    I started as a bus person and then after a

12   few weeks I was a runner and a busser.

13        Q    You never got promoted quote unquote to be

14   a server?

15        A    No.  I stayed as a runner.

16        Q    You reported to Fotis until he left,

17   correct?

18        A    Yes.

19        Q    When Fotis left who took over?

20        A    There was no one, we didn't have anyone to

21   replace him.  We only had Janos as a floor manager

22   and Magalis.

23        Q    Is it fair to say Janos stepped into

24   Fotis's role?

25        A    Yes, eventually.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

40

                            K. Fernandaz

1

2          Q    Your job as a busser and runner was

3     primarily to serve customers?

4          A    Yes.

5          Q    You received tips in that position?

6          A    Yes.

7          Q    You were tipped out every night, right?

8          A    Yes.

9          Q    If by any chance you had only the dayshift

10     and didn't stay for the night were you tipped out

11     during the day?

12          A    They used to put them in the application,

13     the tips, and they gave it to me every week with my

14     paycheck.

15          Q    Did you ever have just the dayshift and

16     left for the day and not worked the evening?

17          A    Sometimes, I had to work during the day

18     and sometimes during the night.

19          Q    Did you ever have only the dayshift and

20     not working the night shift as well?

21          A    Yes.  There was some time when I started.

22          Q    How much did you receive in tips every

23     shift on average?

24          A    $200.

25          Q    What was the lowest amount of money you

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

41

1                      K. Fernandaz

2      ever received in tips in a single shift, if you

3      remember?

4           A     Fifty.

5           Q     What was the highest you ever received in

6      a single shift, if you remember?

7           A     $300.

8           Q     How many days a week did you work on

9      average?

10          A     Five and sometimes if they asked me six

11     days.

12          Q     How often would you work six days?

13          A     Every time they asked me or maybe every

14     two weeks.

15          Q     Was it ever the case you consistently

16     received only $50 in tips everyday for a whole week?

17          A     No.

18          Q     Going back to your interview with Harry's.

19     I'm sorry -- withdrawn.

20                     Going back to your interview with

21     Fotis just like you were told at Harry's about tip

22     credit, Fotis also told you about the tip credit,

23     correct?

24                THE INTERPRETER:  Did you say Harry's?

25          Q     During your interview with Fotis at

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

42

1                          K. Fernandaz

2        Osteria La Baia, just like they told you at Harry's,

3        Fotis also told you about the tip credit, correct?

4                    MR. NUSSBAUM:  Objection.

5        A    I don't understand the question.

6        Q    Okay, I'll rephrase.

7                    When you first started working at

8        Osteria La Baia, you are also told that you were

9        being paid a tip minimum wage and your tips will be

10       used to make up the difference to pay you at least

11       the minimum wage, correct?

12                   MR. NUSSBAUM:  Objection.

13       A    No.

14       Q    Your testimony is that Fotis never told

15       you that, correct?

16       A    No.

17       Q    When Janos took over in the manager role

18       that Fotis left, Janos told you about the tip

19       credit, correct?

20                   MR. NUSSBAUM:  Objection.

21       A    No.

22       Q    How did you clock in and clock out at the

23       restaurant at Osteria La Baia?

24       A    In the computer.

25       Q    Where is the computer or if they are

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

43

                          K. Fernandaz
1
2        multiple where are the computers?
3             A     The computers are on the floor on each
4        station and in the back.
5             Q     How many stations are there?
6             A     There is three stations on the floor plus
7        another computer in the back in the area where the
8        bread is, plus another inside the bar.
9             Q     Is it fair to say that you used all of
10       those stations interchangeably or you're referring
11       to just one?
12            A     You could use either one of them and I did
13       so.  Everybody would use either computer.
14            Q     Was there an employee break room at the
15       restaurant?
16            A     You mean a loft, a place for the
17       employees?
18            Q     Yes.  Any place for the employees.
19            A     We didn't have a place to change our
20       clothes.  It was a small area where you could leave
21       whatever you brought, our coats or your backpack and
22       we had to change in the restaurant bathroom.  We
23       didn't have an area for the employees.
24            Q     In relation to the bathroom, where was the
25       place where you could leave your items?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

44

1                          K. Fernandaz

2          A    On the side of the bathroom in front of

3     the office.

4          Q    If you're facing the entrance to the

5     bathroom from the restaurant, it's further down that

6     way straight ahead, right?

7               MR. NUSSBAUM:  Objection.

8          A    Yes.

9          Q    Somewhere in that area there is also a

10    billboard with labor law posters, right?

11         A    No, I don't remember that.

12         Q    I'm going to place up on the screen what

13    we will mark as Defendant's Exhibit 1 and I'll

14    represent to you before I show it to you it's a

15    picture of the billboard with the labor laws

16    posters.

17    (Defendant's Exhibit 1, Marked for Identification.)

18               Katherine, does this look familiar to

19    you?

20         A    No.

21         Q    You have never seen this before, correct?

22         A    No.  That wasn't there when I worked

23    there.

24         Q    During your time at Osteria La Baia, your

25    responsibilities and duties never changed, correct?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

45

K. Fernandaz

1

2      A     Yes, they changed sometimes.

3      Q     Tell me how?

4      A     Sometimes, I was a runner but they

5   changed -- sometimes they put me as an expeditor and

6   Janos used to tell me to take care of party, the

7   food.  Depending on the level of how busy it was,

8   the restaurant, he would tell me just take care of

9   your coworkers and make sure they are doing the

10  things they have to do.

11     Q     Okay.  When you helped as an expeditor,

12  you were serving customers, right?

13     A     Yes.

14     Q     When you were doing special events, you

15  were also serving customers, correct?

16     A     Yes.

17     Q     Regardless of the changes in your roles

18  during the time that you described these changes,

19  you were still at all times serving customers,

20  correct?

21     A     Yes.

22     Q     Did your job responsibilities and duties

23  change in any other way other than what you already

24  described?

25     A     What do you mean in another way?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

46

1                        K. Fernandaz

2          Q     Any other way where your job duties and

3     responsibilities changed in any other way other than

4     what you've already described?

5          A     No.

6          Q     Were you ever provided with any written

7     job description of what your duties were?

8          A     No.

9          Q     You were provided an employee handbook,

10    weren't you?

11         A     No.

12         Q     You don't remember signing any

13    acknowledgment stating you received an employee

14    handbook?

15         A     No.

16         Q     Was there ever any training when you first

17    started at Osteria La Baia?

18         A     Yes.

19         Q     Can you tell me what that training

20    consisted of?

21         A     They trained me as a busser, like what do

22    I have to do, the tables, the settings and even my

23    coworkers gave me some training, too.

24         Q     How long did the training last?

25         A     Three days.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

47

1                    K. Fernandaz

2        Q    You were paid for the training, correct?

3             THE INTERPRETER:  I'm sorry, what was -- I

4        think I understood the wrong thing.  Can you

5        repeat the question, please?  Sorry.

6        Q    You were paid on those days in which you

7   were trained, correct?

8        A    Yes.

9        Q    Do you remember what hourly rate you were

10  paid at?

11       A    No.  $15.  I believe it was $15, but I'm

12  not sure.

13       Q    Do you remember what your tip minimum wage

14  was when you first started in October of 2022?

15            MR. NUSSBAUM:  Objection.

16       A    Ten dollars an hour.

17       Q    Your understanding was that a tip credit

18  was taken in the maximum amount of five dollars per

19  hour, right?

20            MR. NUSSBAUM:  Objection.

21       A    I'm sorry, what do you mean?

22       Q    If the minimum was $15 an hour and you

23  understood you were being paid $10 dollar an hour,

24  is it fair to say that you understood having taken a

25  five dollar tip credit against your minimum wage?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

48

1                    K. Fernandaz

2            MR. NUSSBAUM:  Objection.

3        A    They paid me $15 an hour for my training

4    and $10 an hour when I was already working.

5        Q    You understood when you were being paid

6    $10 an hour, that was because of the tip credit

7    because you were serving customers and getting tips,

8    correct?

9            MR. NUSSBAUM:  Objection.

10       A    Yes, I understood that I worked for tips.

11       Q    You understood that your tip credit was

12   being taken based on your prior experience at

13   Harry's, correct?

14           MR. NUSSBAUM:  Objection.

15       A    Nobody told me anything about tip credit.

16       Q    But my question is you understood the tip

17   credit was being taken based on your prior

18   experience at Harry's; is that right?

19       A    Are you talking to me about my training?

20       Q    No.  No, in general after your training.

21       A    Yes.

22       Q    You also understood that you were being

23   paid less because of the tips based on the fact that

24   someone in management informed you about that at

25   some point, correct?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

49

K. Fernandaz

1

2      A    Someone explained to me, not the manager.

3  It was my coworkers that explained to me about the

4  points.

5      Q    I wasn't referring to the points.  I was

6  referring to the difference in the minimum wage of

7  ten and $15; same answer for that?

8      A    Yes, I understand that.

9      Q    That's because someone in management told

10  you about it, correct?

11      A    Magalis told me.

12      Q    What was Magalis's role at the restaurant?

13      A    She was a floor manager and after she was

14  an events manager.

15      Q    Magalis was the one that explained to you

16  that you were going to be paid less than the minimum

17  wage at a tip minimum wage because the tips will

18  make up for the difference for the minimum wage,

19  correct?

20      A    Yes.

21      Q    Now did there come a time when instead of

22  being paid $10 at the tips minimum wage there was a

23  change in that number?

24      A    Yes.

25      Q    What was the change in the number?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

50

                            K. Fernandaz

1

2        A    $12.50.

3        Q    To your knowledge when did that change

4   occur?

5        A    That occurred one day when someone in the

6   kitchen or the chef told Janos that I work really

7   hard and I should be making more money.

8        Q    So the increase in your minimum wage in

9   the tip credit occurred to reward you for good work,

10  correct?

11       A    Yes.

12       Q    You frequently worked with the chef in the

13  kitchen in relation to you performing your job

14  duties, correct?

15       A    It wasn't in the kitchen.  It's a room

16  where the runners work, but it's connected to the

17  kitchen.

18       Q    You had a good relationship with the chef,

19  a good working relationship, right?

20       A    With everyone.

21       Q    Did you maintain friendships with the

22  colleagues that you worked with such that you

23  socialized outside of the restaurant?

24       A    Yes, with some of the waiters and some of

25  my coworkers in the kitchen, yes.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

51

1                    K. Fernandaz

2         Q    And the chef as well, correct?

3         A    No.

4         Q    Did you ever have any form of a romantic

5    relationship with the chef?

6              MR. NUSSBAUM:  I'm instructing the witness

7         not to answer the question.

8              MR. KATAEV:  Let's go ahead and get the

9         judge on.

10             SKWRAO:  For the record, there is a

11        separate EEOC charge that this Plaintiff has

12        filed against Bulldozer Hospitality and the

13        question that counsel is now putting forth

14        touches on that charge and they are not the

15        subject of today's deposition.

16             MR. KATAEV:  Sure it is.  I'm allowed to

17        ask her any questions I want including that

18        charge.

19             MR. NUSSBAUM:  I'm telling you that if you

20        want to ask her questions that relate to that

21        charge, I will seek a protective order and

22        therefore I'm instructing her not to answer.

23             MR. KATAEV:  Let's call the judge.  You

24        want to call me so I can patch in the judge?

25             MR. NUSSBAUM:  The call is on the Zoom,

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

52

1                     K. Fernandaz

2        it's on the record.  Let's take a restroom

3        break to call the judge.

4            MR. KATAEV:  Okay, that's fine.  We can do

5        that.

6            MR. NUSSBAUM:  I don't know why you would

7        not want it on the record, that's unusual.

8            MR. KATAEV:  I agree with you.

9         (Whereupon, a short recess was taken.)

10           MR. KATAEV:  During an off-the-record

11       discussion directly with the court, the court

12       decided on discovery dispute as follows and

13       quote, "Defendant's counsel may ask the next

14       three questions about issued related to

15       Plaintiff's EEOC complaint and no more.

16           Josef, I placed on the record verbatim the

17       court's order.  I'm ready to proceed with the

18       deposition.  Is your client here?

19           MR. NUSSBAUM:  I'm pretty sure she's here.

20       Katherine, if you're there turn on your video

21       and audio.

22           MR. KATAEV:  Please prepare to read back

23       the last question.

24      (Whereupon, the referred to question was read back

25                    by the reporter.)

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

53

```
1                      K. Fernandaz
2    BY MR. KATAEV:
3         Q    Thank you, everyone for your patience in
4    this process.  We will read back the last question
5    and we will ask for an answer and then ask two more
6    questions related to the subject according to the
7    court's order and we will then proceed with the
8    deposition.  Let Madame Interpreter translate that
9    and we will have the court reporter repeat the
10   question.
11        A    Okay.
12   (Whereupon, the referred to question was read back
13                 by the reporter.)
14             MR. NUSSBAUM:  Objection.
15        A    No.
16        Q    Did you have any form of a romantic
17   relationship with the Janos, the manager?
18        A    No.
19        Q    Why was it the chef was depressed for two
20   weeks after you left the restaurant, to your
21   knowledge?
22             MR. NUSSBAUM:  Objection.
23        A    I don't have any information about that.
24        Q    During the time you worked at Osteria La
25   Baia, Katherine, what was your usual daily working
```

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

54

1                     K. Fernandaz

2       hours?  What time did you start, what time did you

3       finish?

4            A     My hours were first at 4:00 p.m., then at

5       4:30, then I started at 4:45, then at 5:00, then

6       they changed it back to 4:00 and 4:30 and the

7       restaurant closed at 11:00 p.m.

8            Q     Is that when you left for the evening?

9            A     When I finish with my responsibilities.

10           Q     What time was that usually?

11           A     11:30, 12:00.

12           Q     That was when you typically worked the

13      evening shift which was your usual shift, correct?

14           A     Yes.

15           Q     What were your usual hours when you worked

16      only the dayshift?

17           A     I used to come in at 11:30, sometimes at

18      11:00, sometimes at 10:00 up until 4:00 p.m.

19           Q     Did you ever work a double shift?

20           A     Yes, when I began.

21           Q     How often would you work a double shift?

22           A     When I started working their it was on my

23      regular schedule and then whenever they came to me.

24           Q     Did you ever work a double shift other

25      than once in a week?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

55

K. Fernandaz

1

2      A     Yes, when I started.

3      Q     Three times a week?

4      A     Twice.

5      Q     So if I understood your testimony

6   correctly, you never worked a double shift more than

7   twice in a week, correct?

8      A     Yes.

9      Q     Did your schedule change from day to day

10  or week to week or month to month?

11     A     From week to week and from month to month.

12     Q     We just took our first break in the

13  deposition, correct?

14     A     Yes.

15     Q     During this break without divulging any

16  conversation you had with your attorney, did you

17  discuss your testimony with your attorney?

18          MR. NUSSBAUM:  Objection.  Don't answer

19     that.

20          MR. KATAEV:  We will mark that for a

21     ruling.

22              (Marked for ruling.)

23          MR. NUSSBAUM:  Okay.

24  BY MR. KATAEV:

25     Q     When you were employed at Osteria La Baia

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

56

1                     K. Fernandaz

2      did you work for any other employer?

3           A    Yes.

4           Q    Where?

5           A    In Manhattan.

6           Q    I won't ask you where or to name the

7      place, but can you tell me the schedule to that

8      other place?

9           A    I worked on my off day at night.

10          Q    Can you tell me your typical schedule at

11     that other place?

12          A    From 4:00 p.m. to 11:00 p.m.

13          Q    What days were you off?

14          A    None.

15          Q    What days were you not working at Osteria

16     La Baia such that you could work at this other job?

17          A    Eventually it was Sunday and Monday.

18          Q    Did you ever take time off from your work

19     at Osteria La Baia to do this other job if work was

20     available to you there?

21          A    Never.

22          Q    What type of work was it?

23          A    Bussing and runner.

24          Q    If I understand correctly, you were

25     working as a busser and runner at another restaurant

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

57

1                           K. Fernandaz
2        while working at Osteria La Baia, correct?
3            A    Yes.
4            Q    You were paid weekly while working at
5        Osteria La Baia, correct?
6            A    Yes.
7            Q    You received your money through direct
8        deposit?
9            A    Checks.  I was paid with checks.
10           Q    You physically received a check in your
11       hands?
12           A    Yes.
13           Q    When you received the check the paystub
14       was there with it, correct?
15           A    No.
16           Q    When you would receive the check you would
17       receive an email notifying you that your paystub is
18       available, correct?
19           A    No.  No email but they used to tell us
20       about it.
21           Q    In order to receive your paystub, would
22       you log into the Toast system and pull it from
23       there, correct?
24           A    Yes.
25           Q    You would go and access the Toast system

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

58

1                    K. Fernandaz

2     to look at your paystub, correct?

3          A    Yes.

4          Q    You were provided with a W2 after

5     completing your employment for the year in 2024,

6     correct?

7          A    Yes.

8          Q    You used that W2 to complete your taxes,

9     correct?

10         A    Yes.

11         Q    You accurately reported all your tips on

12    your tax forms, correct?

13         A    Yes.

14         Q    Generally speaking, how many hours a week

15    did you work on average at Osteria La Baia?

16         A    38, 40, 41.

17         Q    You did not work more hours because you

18    had the other job, correct?

19         A    Yes, but I didn't stay in the other job

20    for too long.  I was only there for two months.

21         Q    Do you remember what months you worked

22    there?

23         A    I only remember it was during the summer.

24         Q    Do you remember the name of the

25    restaurant?

59

```
                         K. Fernandaz
 1
 2        A     San Andrews.  S-A-N A-N-D-R-E-W-S.
 3        Q     How far is that restaurant from Osteria La
 4   Baia?
 5        A     I don't remember.
 6        Q     Do you have any documents related to your
 7   employment with Osteria La Baia other than what
 8   you've already produced?
 9        A     No.
10        Q     Other than that restaurant, I think you
11   said it's San Andrews, did you work anywhere else
12   while working at Osteria La Baia?
13        A     Yes.
14        Q     Where else?
15        A     In Manhattan.
16        Q     I want to clarify the question to make
17   sure we are on the same page.
18              I'm asking about your employment that
19   you had at the same time you were working at Osteria
20   La Baia, not after?
21        A     Okay.
22        Q     Your answer is the same, correct?  Other
23   than working at Osteria La Baia and San Andrews, you
24   worked somewhere else at the same time?
25        A     Yes.
```

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

60

                          K. Fernandaz

1

2        Q    Where was that?

3        A    In Manhattan.  I think it was Lexington.

4    I'm not sure.

5        Q    Was it also a restaurant?

6        A    Yes.

7        Q    How long did you work there; how many

8    months?

9        A    Two months.

10       Q    What was your schedule there?

11       A    The same schedule.  The days that I was

12   off from Osteria La Baia.

13       Q    Other than those two restaurants that you

14   worked in for two months at the time separately at

15   the same time you worked at Osteria La Baia, did you

16   work anywhere else while working at the restaurant?

17       A    No.

18       Q    Are you still working at either of those

19   restaurants?

20       A    No.

21       Q    Why did you stop working at San Andrews?

22       A    Because I didn't like it.

23       Q    What is the name of the other restaurant?

24       A    Davids Kitchen.

25       Q    David, D-A-V-I-D?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

61

1                        K. Fernandaz

2          A    Yes.  D-A-V-I-D-S Kitchen.

3          Q    Why did you leave from that employment?

4          A    Because I didn't like that one either.

5          Q    The tips that you received at Osteria La

6      Baia, did you receive them directly from the

7      customers?

8          A    Yes.

9          Q    What would you do with the tips that you

10     received directly from the customers?

11         A    They were direct, but they were on the

12     checks.  I never received cash as tips.

13         Q    No customer ever directly gave you a cash

14     tip?

15         A    No.

16         Q    Remember earlier you testified that your

17     tip wages went from $10 to $12.50?

18         A    Yes.

19         Q    Did your tip wage ever increase or

20     decrease from $12.50 after that?

21         A    My tips were stayed normal.  The tips is

22     according to how many customers we have.

23         Q    I understand that but that wasn't my

24     question.  You testified earlier that you started

25     off at $10 per hour tip minimum wage and that in

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

                                                                    62

1                            K. Fernandaz

2         recognition of your good work at the recommendation

3         of the chef, they increased that minimum wage to

4         $12.50; do you remember that?

5              A    Yes.

6              Q    And my question now is after the $12.50,

7         did it ever increase or decrease again?

8              A    It stayed at $12.50.

9              Q    Did it ever increase to $15 an hour?

10             A    Never.

11             Q    Did it ever decrease to $11 an hour?

12             A    No.

13             Q    The only time your tip minimum wage

14        changed was from $10 to $12.50, correct?

15             A    Yes.

16             Q    A reward of an increase in $2.50 per hour.

17        You were the only person to receive such an award,

18        correct?

19             A    Yes, because of the recommendation from

20        the chef, Chef Jose.

21             Q    To your knowledge there was no other

22        employee that received a merit increase like you

23        did, correct?

24             A    Yes, there was.

25             Q    Who?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

63

1                      K. Fernandaz

2        A    His name is Artemio, A-R-T-E-M-I-O, and

3    he's a busser.

4        Q    Other than him to your knowledge is there

5    anyone else that received such an increase?

6        A    I have no knowledge.

7        Q    During the time you worked at Osteria La

8    Baia, you kept in contact with all of your

9    colleagues that you worked with, right?

10       A    Yes.

11       Q    Did you maintain a group text message, a

12   WhatsApp group or something similar?

13       A    No.

14       Q    During the time that worked there did you

15   manage to save the phone numbers of some of the

16   employees that you worked with?

17       A    Yes.

18       Q    How many do you recall -- how many

19   employees do you recall saving their numbers?

20       A    I don't know.

21       Q    At least ten?

22       A    About 20.

23       Q    Now you've told me that all of your tips

24   were basically done through the credit card

25   payments, right?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

64

K. Fernandaz

2      A      And the cash tips that people left.

3      Q      How did it work for the cash tips?  Who --
4   when the customer left the cash what happened to it?

5      A      The clients will give the cash to the
6   server, that server will go and give it to another
7   server, and that server will go and give it to the
8   ones that close and put down the points.

9      Q      Do you remember the points assigned to you
10   in your role in the tip pool?

11      A      A seven.  If I'm not mistaken I remember
12   it's seven.

13      Q      How many points was it for waiters and
14   waitresses and servers?

15      A      I don't remember.

16      Q      What about for employees that were just
17   bussers and not runners?

18      A      I don't remember.

19      Q      What about for employees that were just
20   runners and not bussers?

21      A      I was a runner.  I don't remember if I --
22   if I'm not mistaken it was a seven.

23      Q      I notice in your complaint that you list
24   yourself as a busser slash runner.  Is there any
25   difference?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

65

1                          K. Fernandaz

2          A     Busser and runner are two different

3     things.

4          Q     You did both, correct?

5          A     When I started.

6          Q     Eventually that changed and you became

7     just a busser or just a runner?

8          A     A runner.

9          Q     To your knowledge were individuals like

10    you who were bussers and runners at the same time

11    like you were, were they a different point system or

12    point amount like just a busser or just a runner?

13         A     The runners have the same points and the

14    bussers had less points.

15         Q     Do you remember how much the difference

16    was?

17         A     I don't remember.

18         Q     Do you have any records about that?

19         A     I don't remember.

20         Q     Other than bussers, runners and servers in

21    the tip pool, were there any other job

22    classifications that were in the same tip pool?

23         A     There were bartenders that made the same

24    as the servers.

25         Q     Any other job classification that you can

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

66

K. Fernandaz

1

2    think of or are you confident that that is all?

3         A    There were the hostesses that at one point

4    they received a part of the tips also.

5         Q    That stopped, you're saying?  That's no

6    longer the case?  I'll rephrase.

7                   You're saying that the hostesses at

8    one point received tips from the same tip pool and

9    later that was no longer the case, right?

10        A    No.  They did get it, yes.

11        Q    Always?

12        A    I don't know.  I know at one point they

13   included them in the tips and when I left that was

14   the case.  What happened after I don't know.

15        Q    To your knowledge after you left was there

16   any change done with respect to that?

17        A    I don't know.

18        Q    If I understand correctly if you received

19   a physical cash tip in your hand, you would follow

20   the same procedure and go and give it to the server

21   who would give it to the person that would do the

22   tip out at the end of the night?

23        A    I never received any tips in cash from the

24   client.  I was a runner.

25        Q    Is it fair to say you would go above and

67

                          K. Fernandaz

1

2    beyond for your clients and that's why you received

3    an increase in your wages?

4         A    I was a good worker and I was there for a

5    long time.

6         Q    Obviously if you were a good worker,

7    you're telling me that a customer would never say

8    thank you for your hard work, here's a tip directly

9    for you for your hard work?

10             MR. NUSSBAUM:  Objection.

11        A    No, sir.

12        Q    So we talked about tips left at tables by

13   credit cards or cash.  There were also tips that

14   were automatically taken at special events, right?

15        A    Yes.

16        Q    How did that work?  Was that part of the

17   tip out at the end of the night or did you receive

18   those tips separately?

19        A    You mean from the events?

20        Q    Yes.

21        A    Well it was they had a contract.  The only

22   thing we were informed is how much they paid per

23   person.  Nothing about tips and at the end whatever

24   the tip was that they left it went into the pool.

25        Q    Okay.  You're telling me you had no

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

68

K. Fernandaz

1

2      knowledge that there was an automatic charge of

3      18 percent gratuity for these events?

4          A    They never told us it was 18 percent.

5      They always told us it was 20 percent.

6          Q    Who is they that told you it was

7      20 percent?

8          A    Janos.

9          Q    Generally speaking outside of special

10     events, did you ever go to the Toast system to print

11     a check for a customer?

12         A    Never.

13         Q    Same question for special events, have you

14     ever gone to the Toast system to print a check at

15     the end of a special event?

16         A    Never.

17         Q    Setting aside the fact that you don't

18     physically print the check for any customer, you had

19     access to the Toast system to see all the checks,

20     correct?

21         A    No, because I would need the password from

22     the waiter and each waiter has a different password.

23         Q    You didn't have your own password?

24         A    Yes.

25         Q    Could you access the checks with your

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

69

K. Fernandaz

1
2    password?

3         A    No.

4         Q    Have you ever tried?

5         A    No.

6         Q    Other than cash tips, credit card tips,

7    and special event tips, are there any other types of

8    tips?

9         A    No.

10         Q    Did you keep any records of the tips you

11    received?

12         A    It's in the system.

13         Q    Did you ever print anything from Toast and

14    keep it?

15         A    It's there for everyone to see for all

16    employees.

17         Q    My question is were you able to print it

18    or keep it?  Did you ever do that?

19         A    I saved it on my phone on my cellular,

20    yes.

21         Q    Did you produce in this case all of those

22    pictures that you took?

23         A    I didn't understand.

24         Q    How did you save it in your phone?  I'm

25    assuming you took a picture, correct?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez --- December 8, 2025

70

1                      K. Fernandaz

2          A    Yes.

3          Q    Did you give those pictures to your

4     attorneys to then produce them to us?

5          A    Yes.

6               MR. KATAEV:  To the extent that Plaintiffs

7          only selectively produced screen shots or

8          pictures from the witness's phone, I'm going to

9          call for the production of all pictures or

10         screen shots taken on the witness's phone and

11         I'll follow up in writing.

12                    (Counsel Request.)

13         Q    Other than taking pictures of things that

14    occurred in the restaurant, did you keep records in

15    any other way about your tips or hours worked or

16    wages paid?

17         A    Yes.

18         Q    How did you do so?

19         A    Pictures.

20         Q    We already talked about photos.  Are you

21    saying there is a different type of photo?

22         A    Yes, screen shots.

23         Q    I count that as one thing.

24              Other than photos and/or screen

25    shots, was there any other manner in which you kept

71

                      K. Fernandaz

1        track of tips, hours work and/or wages paid?

2            A    Yes.

3            Q    How else did you do so?

4            THE INTERPRETER:  She's complaining about

5            she's not hearing well because it gets cut off

6            which she listens to us.  I'm just telling you.

7            I didn't have a conversation with her.  This is

8            what she's telling me.

9            A     No.  The answer is no.

10           Q    Did you keep any of this information in a

11       diary or journal or calendar or notebook or planner?

12           A     No.

13           MR. NUSSBAUM:  It's 1:07.  Do you plan on

14           breaking for lunch?  We have been going for

15           more than three hours.

16           MR. KATAEV:  Sure, I'm happy to do what

17           you'd like.  Off the record.

18       (Whereupon, an off-the-record discussion was held.)

19

20                   (Luncheon recess:  1:07 p.m.)

21                            ***

22                   (Afternoon session: 1:46 p.m.)

23

24

25

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

72

1                         K. Fernandaz

2          K A T H E R I N E   F E R N A N D E Z,

3     resumed, having been previously duly sworn, was

4     examined and testified further as follows:

5     EXAMINATION BY

6     MR. KATAEV (Continued)

7          Q    Katherine, did you participate in a tip

8     pool as part of your job with the restaurant?

9          A    Yes.

10         Q    Was it required to be part of the tip

11    pool?

12         A    Yes, it's a pool.

13         Q    When did you learn you were required to

14    participate in the tip pool?

15         A    Since they hired me.

16         Q    You learned about this because they told

17    you, correct?

18         A    They didn't tell me, but it was logical

19    because I worked with tips.

20         Q    I'm talking about specifically learning

21    that the tips you receive come from the tip pool

22    according to the tip pool system.  You learned about

23    that because somebody told you, correct?

24         A    Yes, and I also ask Magalis about it.

25         Q    She was the one that notified you about

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

73

1                        K. Fernandaz

2      the tip pool, correct?

3           A    Yes.

4           Q    Did you see any written notice of the tip

5      pool requirement?

6           A    No.

7           Q    What information about the tip pool did

8      you receive?

9           A    None.

10          Q    What did Magalis tell you about it?

11          A    I asked her about the tips and she told me

12     it's a pool and that's it.

13          Q    Did you have any other questions for her

14     after she answered you?

15          A    No.

16          Q    If you did, you would have been able to

17     ask Magalis, right?

18          A    Yes.

19          Q    There were also other people you could

20     have asked about questions at the restaurant, right?

21          A    Yes.

22          Q    Do you know how much or what percentage of

23     your tips you were required to contribute to the

24     pool?

25          A    I don't understand the question.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

74

                        K. Fernandaz

1

2        Q    Isn't it true that all of your tips have

3    to go into the tip pool?

4        A    Yes.

5        Q    Everybody that received tips were required

6    to put all of their tips into the tip pool, right?

7        A    Yes.

8        Q    Julio Perez was the captain or head server

9    at the restaurant, right?

10            MR. NUSSBAUM:  Can you translate?  She

11        gave you an answer to the question.

12            THE INTERPRETER:  I'm sorry.  Yes, she

13        did.

14        A    The position of captain does not exist in

15    that restaurant.

16        Q    How do you know that?

17        A    Because I worked there for three years and

18    that's why I'm sure, and I have proof and I have

19    pictures of when they started the pool and that

20    position does not exist.

21        Q    If I understand correctly based on the

22    pictures you took, you're understanding is there is

23    no such thing as a captain or head waiter, correct?

24        A    It doesn't exist.

25        Q    That understanding that it does not exist

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

75

1                         K. Fernandaz

2     is based on the pictures that you took; yes or no?

3               MR. NUSSBAUM:  Objection.

4          A     Yes, and because I worked three years

5     there and that position does not exist.

6          Q     I understand that's your testimony.  I'm

7     confirming how you know that.

8                    Other than your years of experience

9     working there and the pictures that you took, is

10    there any other basis for you to assert that this

11    position does not exist?

12         A     Exactly.

13         Q     Julio Perez served customers, correct?

14         A     Julio Perez is a manager.

15         Q     My question to you is not his job title.

16    Listen to my question and answer my question.

17                    My question again is Julio Perez

18    served customers at the restaurant, correct?

19         A     Yes.

20         Q     Julio Perez received tips from the tip

21    pool, correct?

22         A     Yes.

23         Q     You say that Julio Perez is a manager.

24    Why do you say that?

25         A     He doesn't wear a uniform.  He used

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

76

1                       K. Fernandaz

2       regular clothes.  He organized meetings, he opened

3       the meetings, he had fired some people, and also if

4       I work late or I didn't go to work one day, he will

5       give me the okay, he will give me the permission to

6       do it.  When Janos was not present, he was in charge

7       of absolutely everything.  He used to tell me the

8       specials from the kitchen and he enters the system.

9       When they application had a problem, he will call

10      and take care of it.  He will close the register at

11      the end of the day and take the report from all of

12      the waiters and waitresses.  He will complain -- he

13      will admonish us.  He will tell us when we did

14      something wrong.  The restaurant had a performance

15      and he signed it and Janos also signed it.  He could

16      also sit at a table and ask for food from the

17      kitchen, he could drink alcohol.  When a guest had a

18      problem, he would go to the table and he would

19      resolve the problem.  He would tell us how to dress,

20      he will print all the menus for the events for

21      parties and that's it.

22              Q     Thank you for the detailed answer.

23              A     Thank you.

24              Q     Isn't it true that Julio wears a vest?

25              A     He uses a blazer, he wears regular

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

77

K. Fernandaz

1

2      clothes.

3          Q    No one else wears the blazer, right?

4          A    No one else.  Only Janos.

5          Q    You also testified that Julio opens the

6      meetings and conducts them, right?

7          A    Him and Janos and when Janos is not there

8      he does it meaning Julio.  Even when Janos is there,

9      he participates in the meetings and he gives orders.

10     I also have a picture from my attorney that it says

11     that he's a manager on the application on the

12     computer system.

13             MR. NUSSBAUM:  The answer was the

14         application Toast.

15             THE INTERPRETER:  She says two.

16         A    The application is called Toast.

17         Q    My question focused on what happened at

18     the meetings.  What is it that Julio Perez says at

19     these meetings?

20         A    He makes a comment on the shoes to the

21     boys if they don't have dress shoes on.  He tells

22     them what he expects of their service and tells them

23     how many guests they are going to have that night.

24     If they have any problems with a client to let him

25     know because he will go and talk to the client.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

78

K. Fernandaz

1

2     They should do a good job, the VIPs table that they

3     are going to have that night.  All of the questions

4     that a manager will take care of.

5          Q    When you say all of the questions that a

6     manager will take care of that's in your opinion,

7     correct?

8          A    Yes.

9          Q    You said that Julio Perez fired people.

10    Did I hear that correctly?

11         A    Yes.  He had fired some people.

12         Q    Who did he fire?

13         A    Many of my coworkers.

14         Q    Do you have any names?

15         A    I don't remember, but I do have people

16    that could testify and give the names.

17         Q    Who?

18         A    If I question there is a lot of people

19    that work there and they saw that.

20         Q    Who saw it?

21         A    Coworkers that work with me.

22         Q    What are their names?

23         A    Walter, Laura, many.  They don't come to

24    my mind right now.

25         Q    Do you remember Walter's last name?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

79

1                        K. Fernandaz

2          A    No.

3          Q    To your knowledge is he still working at

4     the restaurant?

5          A    No.

6          Q    You know for a fact that he's no longer

7     working at the restaurant?

8          A    Yes.  100 percent.

9          Q    When was the last time you spoke to

10    Walter?

11         A    About three months ago.

12         Q    Did you discuss this case with him?

13         A    No.

14         Q    What about Laura, what is her last name?

15         A    I don't know.

16         Q    Is she still working at the restaurant?

17         A    No.

18         Q    When was the last time you spoke to her?

19         A    About a week ago.

20         Q    Did you discuss this case with her?

21         A    No.

22         Q    Janos was the one that fired you, correct?

23         A    Yes.

24         Q    During the meetings that Julio led, no one

25    was openly disciplined in front of everybody during

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

80

                          K. Fernandaz

1

2       the meetings, correct?  Withdrawn.  I'll move on.

3                          Do you have any records of the tip

4       pool?

5            A     From the tips -- you mean the tips every

6       night for every night?

7            Q     Yes.  Did you keep those?

8            A     Yes, yes.

9            Q     Did you produce all of those records to

10      your attorneys to give to us?

11           A     Yes.

12           Q     To your knowledge are there any records

13      that you gave to your attorneys that were not

14      produced to us?

15           A     I don't know.

16           Q     Other than the mandatory tip pool and the

17      tips that you ultimately received, did you otherwise

18      share it with anybody or you kept the full amount

19      you were given?

20                 MR. NUSSBAUM:  Objection.

21           A     Sir, my position was a runner.  I don't

22      have any control on the system.  I only take the

23      plate and bring it to the table.  I don't know

24      anything about tips, I don't know anything about

25      checks, that's all.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

81

                                 K. Fernandaz

 1

 2

 3        Q    You did receive tips at the end of each

 4   night, correct?

 5        A    Yes, I received the tips from the pool.

 6   (Whereupon, an off-the-record discussion was held.)

 7        Q    Back on the record.  My question is after

 8   you received your tips for the night, did you have

 9   to give those tips to anybody else?

10        A    When I received tips at the end of the

11   week in my check from the pool.

12        Q    After you received those tips, you didn't

13   have to give it to anybody else, did you?

14        A    No.

15        Q    That's what I wanted to know.  Thank you.

16   Can you describe the tipping process at the end of

17   the night?

18        A    At the end of the night, Julio will enter

19   Toast and he will go to the list of employees and

20   that's when he would assign everyone's tips

21   according to the points.

22        Q    Including himself, correct?

23        A    Yes, including him.

24        Q    Can you describe the records or reports

25   that were used to figure out who gets how much?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

                                                          82
                              K. Fernandaz

1

2         A    The pictures are there.  My attorney has

3    them.  You can look at it there.

4         Q    Is it fair to say that all the reports and

5    records came from Toast or was there some other

6    place?

7         A    They came from Toast.

8         Q    Only Toast, correct?

9         A    I don't know.  They did it from the

10   computer.  I don't know.

11        Q    There was no handwritten notes or anything

12   like that, right?

13        A    No.

14        Q    How long did the tipping process take

15   every night?

16        A    Sometimes they did it the next day.

17        Q    When did that happen?

18        A    When it was late.

19        Q    Okay.  Did you ever have a question about

20   the way the tip credit worked?

21        A    Yes.

22             MR. NUSSBAUM:  Objection.  Note my

23        objection to the last question, please.

24             MR. KATAEV:  Sure.

25        Q    When you had a question did you ask for

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

83

                              K. Fernandaz

1

2       clarification?

3            A    Yes.

4            Q    Who did you ask?

5            A    Janos.

6            Q    Did you ask him verbally or in writing?

7            A    On a writing.

8            Q    Would that be email or some other means?

9            A    I wrote to his phone.

10           Q    By text message, correct?

11           A    WhatsApp, yes.

12           Q    Was that the only time you ever had a

13      question?

14           A    No.  We also had meetings with Janos about

15      Julio because why was he receiving tips.

16           Q    That was verbal, correct?

17           A    Verbally.

18           Q    You said we.  Who is we?

19           A    With whoever was there at that moment.

20      The waiter, the people that worked there.

21           Q    Names?

22           A    The sames I mentioned before; Walter,

23      Laura, Raul, Ambrus.

24           Q    Can you spell Ambrus for the record,

25      please?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

84

K. Fernandaz

1

2      A     A-M-B-R-U-S.

3      Q     If I understand accurately, there was five

4    of you in the meeting with Janos, correct?

5      A     There were more.

6      Q     How many?

7      A     The whole floor. I don't remember the

8    amount.

9      Q     The whole floor on that particular day?

10     A     Yes.

11     Q     How many people worked on a particular

12   day?

13     A     A lot of people.  Maybe 30 people.

14     Q     What day or dates did this meeting occur?

15     A     I don't remember.

16     Q     Was it at the beginning of your

17   employment, the middle of your employment or at the

18   end of your employment?

19     A     Almost at the end and since Julio started

20   to be a manager.

21     Q     When is it that you claim Julio started to

22   be a manager?

23     A     When he started to work as a manager.  I

24   believe it was 2023.

25     Q     You don't remember what month in 2023?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

85

                          K. Fernandaz

1

2        A    No.

3        Q    Did you raise this issue when he became a

4    manager in 2023 or towards the end of your

5    employment in 2025?

6        A    Since he started.

7        Q    Was there only one conversation with

8    everybody or more than one conversation?

9        A    More than one conversation.

10       Q    Let's focus on the first conversation.

11   Can you tell me who said what to who and what the

12   result was?

13       A    We focused on that a manager should not

14   get tips and why is he working as a manager if he's

15   going to receive tips.

16       Q    What was his response?

17       A    Well, I'm going to talk to the owner

18   because that's the way it was set up and I need help

19   so that's why I'm accepting it.

20       Q    I see.  After you had that conversation --

21   the first conversation, it ended?

22       A    Yes.

23       Q    Let me clarify my question.  After Janos

24   gave you that answer, that conversation, that first

25   conversation ended, correct?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

86

                              K. Fernandaz

1

2          A    Yes.

3          Q    Because he told you you have to speak to

4     the owner.  Presumably you had another conversation

5     with him to find out what happened, right?

6          A    Yes.

7          Q    How long after the first conversation did

8     the second conversation occur?

9          A    A month.

10         Q    Who said what to who and what was the

11    result of the second conversation?

12         A    The same.  We talked about the same and it

13    ended the same way.

14         Q    He told you a second time I have to speak

15    to the owner?

16         A    Yes.

17         Q    Did there come a time when you brought it

18    up again and he had spoken to the owner and he had a

19    different answer for you?

20         A    No.

21         Q    Did you ever approach Rob or Marianna

22    directly about it?

23         A    No.

24         Q    Other than this question about Julio being

25    part of the tip pool, did you ever have any other

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

87

                              K. Fernandaz

1

2       question about the tip credit?

3            A    Yes.

4            Q    Tell me about that?

5            A    First there was a pool by points and then

6       they changed it to hours without consulting with us

7       and without giving us anything in writing that there

8       was that change.

9            Q    Can you explain in more detail about

10      points and hours how that affected things?

11           A    It used to be by points so that was it,

12      but then changed it four hours so if I worked four

13      hours and a coworker worked five hours, he got more

14      tips because he worked an extra hour.

15           Q    You had an objection to this?

16           A    I asked because we never received anything

17      in writing and they did it on their own without

18      asking the employees.  They just changed it and they

19      never told us.

20           Q    After you asked the question about the

21      change were you given an answer?

22           A    Yes.

23           Q    Who gave you that, was it Magalis?

24           A    Janos.

25           Q    What did he tell you?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

88

1                        K. Fernandaz

2          A     My attorney has the answer.  I don't

3      remember right now so he can give it to you.

4                MR. KATAEV:  Can I have the question read

5          back again?

6      (Whereupon, the referred to question was read back

7                       by the reporter.)

8          Q     Katherine, I'm entitled to an answer to

9      the question as you sit here today about what your

10     knowledge is regardless of what you told your

11     attorney which by the way, I can't ask you because

12     it's privileged.

13                       I need to know what Janos told you.

14     Can you please answer the question in light of that?

15         A     It's not what I sent to him.  He has a

16     picture of what I sent to him.

17         Q     My understanding of what you sent to Janos

18     was a text message and WhatsApp and you took a

19     screen shot and forwarded that to your attorney,

20     correct?

21         A     Yes.

22         Q     But that question was a particular

23     question about why you're paid for one week as

24     reported to you in one system was different than the

25     pay you actually received, right?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

89

K. Fernandaz

1

2      A    No.  I ask him why Julio was receiving

3    tips from the pool.

4      Q    In the text messages?

5      A    Yes, and also why they are paying hourly.

6    Two questions in one message.

7      Q    I'll represent to you based on my review

8    of the documents received in discovery that I don't

9    have those messages so I'm going to call for the

10   production of all your text messages exchanged with

11   Janos or any other person in management.  I will

12   follow up in writing.

13                  (Counsel Request.)

14                  Please tell me in response to your

15   question about the change to the tip pool with the

16   hours what was Janos's response?

17     A    His answer was that the policies of the

18   company have changed.

19     Q    Now you testified that on average you

20   received about $200 in tips a week.  My question to

21   you now is putting everything together that you

22   received for the week wages and tip, on average how

23   much did you receive every week?

24     A    $1,200 to $1,300.

25     Q    To your knowledge what was the lowest you

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

90

1                    K. Fernandaz

2       ever received in a week?

3            A    $700.

4            Q    You testified before that you generally

5       never worked more than 41 hours a week, correct?

6            A    Yes.

7            Q    If we took $700 a week and we divided it

8       by 41 hours, that would result in a regularly hourly

9       rate of $17.07, correct?

10               MR. KATAEV:  Let the record reflect that

11           I'm sharing on my screen the actual calculation

12           of 700 divided by 41 and it shows $17.07.

13           A    Yes.

14           Q    Is it fair to say that that's the way you

15       calculate your pay that you take the total you

16       receive and divide it by the total number of hours

17       you work?  You receive at least $17 an hour, right?

18               MR. NUSSBAUM:  Objection.

19           A    I didn't always work 41 or 40 a week.

20           Q    What was the most hours you worked in a

21       week?

22           A    It varied because I worked five days,

23       sometimes six days.  Sometimes I came in earlier,

24       sometimes I came in later.  I don't know.  I can't

25       calculate.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

91

1                          K. Fernandaz

2         Q    Right now I'm not asking you to calculate.

3    I'm asking you what was the most number of hours you

4    worked in any given work to the best of your memory?

5         A    Forty-one.

6         Q    My math before was 700 divided by 41 is at

7    least $17.07, right?

8         A    Yes.

9         Q    Other than your complaints about Julio

10   being in the tip pool, did you have any other

11   complaints about your wages at the restaurant?

12        A    No.

13        Q    You received a check stub for every week

14   that you performed work at the restaurant, right?

15        A    Yes.

16             MR. KATAEV:  You want to take a quick

17        break?

18             MR. NUSSBAUM:  No.

19   BY MR. KATAEV:

20        Q    How often did you work more than 40 hours

21   in any given week?

22             MR. NUSSBAUM:  Objection.

23        A    I don't know.

24        Q    Did the hours --

25        A    Every two weeks, every three weeks.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

92

K. Fernandaz

1

2      Q    Hours that are shown -- withdrawn.

3            The hours worked that were shown on

4      your paystub were accurate every week, correct?

5      A    I don't know because I got the check

6      without the stub.

7      Q    Did you ever look at the stub on the Toast

8      system online?

9      A    Yes, but I didn't understand because it

10     was very complicated.

11     Q    Separate from the paystubs themselves, did

12     you keep any records of the hours you worked at the

13     restaurant?

14     A    No, I didn't.

15     Q    Were you responsible for closing the

16     restaurant?

17     A    No.

18     Q    You were not responsible for opening

19     either, right?

20     A    No.

21     Q    The other bussers and runners, did they

22     have the same exact job as you?

23     A    The other runners, yes.  The bussers, no.

24     Q    At special events only certain runners

25     were selected to perform work for those events,

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

93

                          K. Fernandaz

1

2    correct?

3         A    No.

4         Q    Isn't it true that because you were one of

5    the top employees there, you did so well you got a

6    raise and you were always chosen to do special

7    events?

8         A    Yes, because I have more experience.

9         Q    Is it fair to say then because some people

10   have consistently less experience than you and

11   others that -- some were chosen for special events

12   consistently and others were not?

13        A    Yes, it's fair to say that.

14        Q    Some runners were never chosen to do

15   special events, right?

16        A    It's not -- that's not true.

17        Q    You're telling me that sometimes there

18   were special events and they had an inexperienced

19   runner perform that special event?

20        A    The runner that is on that schedule.

21        Q    What is your goal in this lawsuit?

22             MR. NUSSBAUM:  Objection.

23        A    I expect justice.

24        Q    What does justice mean to you?

25        A    That they would pay for the things they

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

94

                            K. Fernandaz
1
2    did wrong and legal things that they did.
3         Q    Is justice revenge for your termination?
4              MR. NUSSBAUM:  Objection.
5         A    It's only for the discrimination and the
6    their -- the manager stole my tips and because of
7    all of that.
8         Q    When you say the money should be paid for
9    those what you refer to as violations of the law, is
10   that just for yourself?
11             MR. NUSSBAUM:  Objection.
12        A    I was only talking about me and my demand.
13        Q    If you were paid what you believe was the
14   money you're entitled to for your claim, would you
15   be happy with that and you would be done with this
16   case, correct?
17             MR. NUSSBAUM:  Objection.
18        A    No.
19        Q    Why not?
20        A    Because I want justice.  It's not only
21   money.
22        Q    Besides money how else would you get
23   justice?
24             MR. NUSSBAUM:  Objection.
25        A    Obeying the law.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

95

                              K. Fernandaz

1

2        Q    Okay.  So if you receive some sort of

3    commitment from the restaurant to obey the laws and

4    you got all your money, you would be done with this

5    lawsuit and it would be resolved, correct?

6              MR. NUSSBAUM:  Objection.

7        A    I don't care if they obey the law right

8    now because I don't work there anymore.  The only

9    thing I'm interested in is the problems I had when I

10   worked there and what they did to me.

11       Q    My question remains:  Assuming you reached

12   some sort of a resolution somehow and the restaurant

13   agrees to pay you what you're owed, you

14   individually, would that satisfy you and resolve the

15   lawsuit and move on with your life?

16             MR. NUSSBAUM:  Objection.

17       A    No.

18       Q    Why would that not satisfy you?

19       A    Because I want them to obey the law.

20       Q    I'll ask it again because I want to

21   clarify.

22             If they do obey the law, if you

23   achieve them obeying the law, the restaurant, and

24   got paid what you believe you're entitled to and

25   some agreement was reached, would that be sufficient

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

96

1                      K. Fernandaz

2       for you to resolve this case?

3              MR. NUSSBAUM:  Objection.

4       A    No.

5       Q    What would satisfy you such that you could

6       resolve this claim?

7              MR. NUSSBAUM:  Objection.

8       Q    Apart from money and obeying the laws what

9       else?

10             MR. NUSSBAUM:  Objection.

11      A    I'm looking for justice for what they did

12      to me.

13      Q    What does that mean?  What would justice

14      be for you?

15      A    Well, they discriminate me and --

16      Q    And what?

17      A    They harassed me and they harassed me and

18      they harassed me and they discriminate me.

19      Q    I understand you have claims, various

20      claims, but my question is what is the relief you're

21      looking for?  There is money, there is obeying the

22      law.

23             Is there anything else that you would

24      want in order to resolve?

25             MR. NUSSBAUM:  Objection.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

97

K. Fernandaz

1

2      A    I don't have a goal, I only want

3   everything to be in order.  Whatever I'm demanding I

4   want that to be done and when all of that is done

5   then I'll be happy.

6      Q    So fair to say you don't know what you're

7   demanding?

8           MR. NUSSBAUM:  Objection.

9      A    Yes, I know what I'm demanding that's why

10   we are having this testimony today.

11      Q    We are here because you filed a lawsuit

12   and this is your case and that's why we are having

13   this deposition today, correct?

14      A    I said it five times already.

15      Q    My question is:  Besides money and obeying

16   the law, is there anything else that you would need

17   to resolve this case?

18           MR. NUSSBAUM:  Objection.  Counsel, she

19       answered this question at least five times and

20       it's on the record.  You're badgering her.  I'm

21       going to instruct her not to answer.  You can

22       run to the court.  The record is very clear how

23       many times you've asked her the same question.

24       You may not like her answer.

25           MR. KATAEV:  Your witness is evasive and

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

98

K. Fernandaz

1
2      is refusing to answer the question.

3           MR. NUSSBAUM:  You don't get to keep

4      asking the question over and other.

5           MR. KATAEV:  I can if she's evasive.  I'm

6      happy to get the judge on and have him order

7      her to answer the question.

8           MR. NUSSBAUM:  She's trying her best to

9      answer your question.  It's a completely

10     improper question.  You keep asking improper

11     questions.

12          MR. KATAEV:  She has not answered my

13     question.  When she answers my question, I'll

14     move on.

15          Will you please answer my question?

16          MR. NUSSBAUM:  Objection.

17     A    I want them to pay for the harassment, for

18     the discrimination, for what they did with my tips

19     that they stole them, I want them to pay for all of

20     my suffering.  That's what I want.

21     Q    Understood.  If you receive all of those

22     and obeying the law, that would be sufficient for

23     you to resolve this case, correct?

24          MR. NUSSBAUM:  Objection.

25     A    If they obey the law, if all my demands

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

99

1                         K. Fernandaz

2      are filled, then I'll talk to my attorney and I will

3      decide if I'm done with the case.

4           Q    Okay, that's fair enough.

5           MR. KATAEV:  Give me a second.  I'm trying

6           to short circuit the deposition a little bit.

7           MR. NUSSBAUM:  Are we on the record or

8           off?

9           MR. KATAEV:  We can stay on.  I'll be

10          brief.

11          MR. NUSSBAUM:  Okay.

12     BY MR. KATAEV:

13          Q    After any of your complaints were made to

14     management, was there ever a change made as a result

15     of those complaints?

16          A    No.

17          Q    After your employment with the restaurant

18     ended, did you file any complaints with any

19     government agency against them?

20          A    No.

21          Q    You reached out to attorneys to get advice

22     about your employment while you were still an

23     employee of the restaurant, correct?

24          MR. NUSSBAUM:  Don't answer that.

25          Q    In answering this question I'm not asking

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

100

K. Fernandaz

1

2   you to divulge communications.  I'm only asking when

3   you reached out to an attorney, the date.  Was it

4   during your employment or after?

5          MR. NUSSBAUM:  Don't answer.  I'm

6       instructing the witness not to answer it.  I'm

7       happy to read the question back.

8       Q    Did you contact your attorney in this case

9   while you were still employed; yes or no?

10      A    No.

11      Q    Did you contact your attorney after your

12  employment ended with the restaurant?

13      A    After.

14      Q    How did you find your attorneys?

15      A    Internet search.

16      Q    After you separated from employment with

17  the restaurant, did you speak to any of your former

18  employees and colleagues about this case?

19          MR. NUSSBAUM:  Objection.

20      A    No.

21      Q    Did you ever make any social media posts

22  about the restaurant during or after your employment

23  from the restaurant?

24      A    No.

25      Q    Do you have any sense of the monetary

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez --- December 8, 2025

101

1              K. Fernandaz

2     damages that you're seeking for this wage and hour

3     case?

4              MR. NUSSBAUM:  Objection.

5          A    No.

6              MR. KATAEV:  Okay.  I think now is a good

7         time to take a five minute break.  We can get

8         back on at 3:10 and I'll begin doing exhibits.

9          (Whereupon, a short recess was taken.)

10    BY MR. KATAEV:

11         Q    I'm going to place up on the screen,

12    Katherine, what's marked Defendant's Exhibit 2.  It

13    is a compilation of records produced by my client.

14              Katherine, are you there?

15    (Defendant's Exhibit 2, Marked for Identification.)

16         A    Yes.

17         Q    Do you see the exhibit?

18         A    Yes.

19         Q    Is this something you recognize?

20         A    No.  I only see it says dishwasher.

21         Q    You have never seen this document before,

22    correct?

23         A    Correct.

24              MR. KATAEV:  For the record, that document

25         was a pdf of a spreadsheet with the company,

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

102

K. Fernandaz

1

2          location, department, job, last name, first

3          name, employee number, and compensation

4          details.

5              I'm showing you what will be marked as

6          Defendant's Exhibit 3.  It's a sampling of your

7          paystubs and it's ECF docket entry 50-2 for the

8          record.

9          Q    Do you recognize these documents,

10     Katherine?

11     (Defendant's Exhibit 3, Marked for Identification.)

12         A    Yes.

13         Q    This document consists of two pages,

14     correct?

15         A    Yes.

16             MR. KATAEV:  Off the record.

17     (Whereupon, an off-the-record discussion was held.)

18         Q    On the top left that's your name and

19     address, correct?

20         A    Yes.

21         Q    You lived at this address ever since you

22     first started working at Osteria La Baia, correct?

23         A    You work at this address, you said?

24         Q    Worked at the restaurant?

25         A    Yes.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

103

                        K. Fernandaz

1

2        Q    It says on the right here that your pay

3    rate is $10 per hour, correct?

4        A    Yes.

5        Q    Consistent with your testimony before,

6    this check shows approximately $1,100 which is the

7    same amount that you testified you typically

8    received, right?

9        A    Yes.

10       Q    That was under the paycheck summary.

11   Under earnings over here there are four categories

12   of amounts that you received totaling that $1,100,

13   correct?

14       A    Okay, yes.

15       Q    Yes, you see that?

16       A    Yes, yes.

17       Q    Do you know the difference between the

18   three forms of tips listed here; cash gratuities

19   owed, gratuity, and tips owed?

20       A    Yes.

21       Q    Can you explain what each one means,

22   please?

23       A    It says cash gratuities owed it's on the

24   check but they used to give it to me in cash.

25       Q    What about the second one?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

104

K. Fernandaz

1

2      A    I don't know.

3      Q    I'm assuming based on that high amount

4   that tips owed refers to the credit card tips,

5   correct?

6      A    Yes.

7      Q    If I told you that tips was gratuities for

8   special events, would that refresh your recollection

9   or do you believe that to be the case?

10     A    I don't know.  I don't know.  I don't know

11  because it was a pool and I got paid extra to work

12  on special events.

13     Q    On the second page of the paystub for each

14  paystub there is this additional information box,

15  correct?  There is a separate section labeled

16  additional information and there is a box with

17  information, correct?

18     A    Yes.

19     Q    This box tells you that you're being paid

20  $15.50 an hour, correct?

21     A    Yes.  Okay, yes.  I can see it says

22  $16.50.

23     Q    For this particular week you were paid an

24  hourly rate of $15 with a tip credit of a $1.50?

25     A    Okay.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

105

1                    K. Fernandaz

2         Q    I'm asking; is that correct?

3         A    I never received any document that I was

4    paid $15 an hour.

5         Q    You're saying you never received this

6    document that I'm holding on the screen here?

7         A    That's one of my checks, but I didn't

8    receive any documents stating that I was making $15

9    an hour.

10        Q    Isn't it true that you're such a great

11   employee that your chef recommended for a second

12   time you get a raise and you got a raise from $12.50

13   to $15?

14             MR. NUSSBAUM:  Objection.

15        A    They never paid me $15.  They told me

16   about it because they left me in charge of the whole

17   kitchen and the special events, but they never paid

18   me $15.

19        Q    Your testimony the paystub is false and

20   inaccurate?

21             MR. NUSSBAUM:  Objection.

22        A    They never paid me at $15.

23        Q    You printed the paystub on June 5, 2025 in

24   the afternoon, correct?

25        A    No.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

106

K. Fernandaz

1

2     Q    What does this indication with the date

3     and timestamp mean to you on the bottom of the first

4     pay of the stub?

5          MR. NUSSBAUM:  Objection.

6     A    The only thing I can tell you is I never

7     got paid at $15.

8     Q    My question is not that.  My question is

9     did you or did you not print this paystub on June 5,

10    2025 at 2:54 p.m.?

11    A    I told my attorneys.  I don't know if they

12    printed.  I never printed anything.

13    Q    Without telling me any conversations you

14    had with your attorneys, did you provide your

15    attorneys with the user name and password to log

16    into Toast?

17    A    I gave him access.

18    Q    Understood.

19         MR. KATAEV:  Let the record reflect that

20         we were discussing pages one and two of

21         documentary of 6-2.  I'm going to scroll all

22         the way to the bottom of page 34 and 33.  I'm

23         not going to have anymore questions about this

24         exhibit.

25         Let the record reflect I'm placing up on

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

107

K. Fernandaz

2      the screen what will be marked as Defendant's

3      Exhibit 4.

(Defendant's Exhibit 4, Marked for Identification.)

5              It's a compilation of event records

6      filed as ECF documentary 50-1.

7      Q    I'm going to ask you questions about some

8      of the documents in this compilation.

9              Katherine, do you recognize this

10     document?

11     A    Yes.

12     Q    What is this document?

13     A    It's from a party.  It's about a party.

14     Q    In the course of performing your duties at

15     the restaurant, you have come across documents such

16     as this, correct?

17     A    Yes.

18     Q    In the course of your doing that work, you

19     notice that the special event has an 18 percent

20     gratuity charge and a 3 percent service charge,

21     correct?

22     A    No.

23     Q    To your knowledge this contract was given

24     to the customer, correct?

25     A    Yes.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

108

K. Fernandaz

1

2      Q    If you were a customer reading this, what

3      would you understand 18 percent gratuity and

4      3 percent service charge to mean?

5      A    That I had to pay 18 percent for tips and

6      3 percent for the service that they do at this

7      event.

8      Q    Would you understand that 18 percent goes

9      to the employees and 3 percent goes to the

10     restaurant?

11     A    Yes.

12     Q    That's commonsense, right?

13          MR. NUSSBAUM:  Objection.

14     A    Yes.

15          MR. KATAEV:  Let the record reflect we

16     were looking at page one of this exhibit.  We

17     are now looking at page seven.

18     Q    Do you recognize this document, Katherine?

19     A    No.

20     Q    What about this document referring to page

21     14?

22     A    No.

23     Q    If I represented to you that this is a

24     copy of a receipt printed from the Toast system at

25     the restaurant would that refresh your recollection?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

109

K. Fernandaz

1

2      A     No.  It doesn't refresh my memory.

3      Q     You go to restaurants yourself, don't you?

4      A     Yes.

5      Q     When you go to restaurants you ask for the

6      check so it could be paid, correct?

7      A     Yes.

8      Q     If you received this particular check and

9      you saw an admin fee 3 percent with the amount and

10     the 18 percent gratuity with the amount, would you

11     have the same understanding as you did with the

12     event contract?

13     A     Yes, but when I go to a restaurant to eat,

14     I'm not paying for an event, just a restaurant to

15     eat.

16     Q     I understand, but if you did do an event

17     and you saw these charges, you would understand them

18     the same way as you did the event contract, right?

19          MR. NUSSBAUM:  Objection.

20     A     I understood that 20 percent was our tip.

21     That's what they always told us.  We never saw the

22     contract like you showed me.  They only gave us a

23     sheet with the food that was going to be served and

24     they never showed us how much tip they have to pay

25     for that party.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

110

1                         K. Fernandaz

2          Q    I understand that you're telling me about

3     your experience as an employee at the restaurant,

4     but my question was based on your experience being a

5     customer at a different restaurant where you didn't

6     work?

7          A    Yes.

8          Q    You would understand it the same way,

9     correct?

10         A    Yes.

11              MR. NUSSBAUM:  Objection.

12         Q    I'm going to place up on the screen what

13    will be marked as Defendant's Exhibit 5.

14    (Defendant's Exhibit 5, Marked for Identification.)

15              I'll represent to you it's 30 pages

16    of a pay history summary report at the restaurant.

17              Do you recognize this document?

18         A    No.

19              MR. NUSSBAUM:  Are there Bates numbers?

20              MR. KATAEV:  No, there are no Bates

21    numbers for this, but this was produced by the

22    Defendants to you as part of the class

23    production precertification discovery as you

24    called it.  I'm going to proceed with my

25    deposition.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

111

1                      K. Fernandaz

2    BY MR. KATAEV:

3        Q    You have never seen this before?

4        A    I never saw that.

5        Q    You didn't see it before you left your

6    employment while you were working there, correct?

7        A    No.

8        Q    You've never seen this after your

9    employment ended?  For example, your attorneys

10   sharing it with you, correct?

11       A    No.

12       Q    I'm going to show you what we will mark as

13   Defendant's Exhibit 6.  I'll represent to you that

14   this is what is referred to as the initial

15   disclosures and I'll represent that your attorneys

16   filed it.

17   (Defendant's Exhibit 6, Marked for Identification.)

18            MR. NUSSBAUM:  What was the

19       representation?

20            MR. KATAEV:  That Plaintiff's attorneys

21       filed this.

22            MR. NUSSBAUM:  You said filed this.  We

23       didn't file it.

24            MR. KATAEV:  I'll represent to you that

25       the Plaintiffs served this document on the

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

112

1                       K. Fernandaz

2           Defendants.

3     BY MR. KATAEV:

4           Q     Do you recognize this document?

5           A     Yes.

6           Q     What is this document, to your knowledge?

7                 MR. NUSSBAUM:  Objection.

8           A     I recognize it.

9                 MR. NUSSBAUM:  Translate her answer.

10          A     Yes, I recognize it.

11          Q     Can you describe what this is?

12          A     If it's translated, yes, because it's in

13    English.

14          Q     Do you know anything about what initial

15    disclosures are?

16                MR. NUSSBAUM:  Objection.

17          A     Yes, I do.

18          Q     Can you describe what this document is?

19                MR. NUSSBAUM:  Objection.

20          A     It's the presentation of my demand.

21          Q     Do you know that this refers to the

22    caption of the case?  I highlighted it.

23                MR. NUSSBAUM:  Objection.

24          A     Yes.

25          Q     Do you recognize this to be the caption

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

113

1                         K. Fernandaz

2       because it has your name on it?

3              MR. NUSSBAUM:  Objection.

4       A      Yes, because an attorney showed me

5       already.

6       Q      Were you shown the document in order to

7       approve it?

8              MR. NUSSBAUM:  Objection.

9       A      They sent it to me.  That's it.

10      Q      Did you notice that the case number is

11      incorrect on this document?

12      A      I had no idea.

13      Q      In this initial disclosure document, your

14      attorneys listed numerous witnesses that they

15      believe has information related to this case.

16              Do you recognize this witness?

17      A      Yes.

18      Q      Are you aware that your attorneys did not

19      notice a deposition of this witness?

20      A      I have no idea.

21              MR. KATAEV:  Let the record that the

22              question I'm asking is about number three which

23              says Julio Perez, manager.  I'm done with this

24              exhibit.

25              Let the record reflect that I'll be

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

114

1                    K. Fernandaz

2          placing up on the screen what will be marked as

3          Defendant's Exhibit 7.  I'll represent to you,

4          Katherine, that these are responses to

5          interrogatories.

6      (Defendant's Exhibit 7, Marked for Identification.)

7          Q    Do you recognize this document?

8          A    What is this.

9          Q    I'll represent to you that these are

10     responses to our first set of interrogatories.

11     Based on this representation do you recognize this

12     document?

13         A    Yes.

14         Q    What is this document?

15              MR. NUSSBAUM:  Objection.

16         A    The same, the questions.

17         Q    Can you give me some more details?

18         A    They were interrogatories.

19         Q    In this document who asked the questions

20     and who answered them?

21         A    I have no idea.  I can't read.

22         Q    Okay.  Without telling me about

23     conversations you may have had with your attorneys

24     about any particular document, was there a time when

25     you were asked questions and you had to provide

115

1                         K. Fernandaz

2      answers to be placed in these responses?

3             A    Yes.

4             MR. KATAEV:  Let the record reflect that

5             I'm placing up on the screen what will be

6             marked as Defendant's Exhibit 8.

7      (Defendant's Exhibit 8, Marked for Identification.)

8             Q    I'll represent to you that these are

9      redacted tip records that they were produced by the

10     Defendants to your attorneys showing the amount of

11     tips that you received.

12                    Do you recognize this document?

13            MR. NUSSBAUM:  Objection.

14            A    Everything is black.  What am I going to

15     see?

16            Q    There is a space in between the two black

17     boxes where it shows 1970.  Was that your employee

18     number?

19            A    That's a payroll number.

20            MR. KATAEV:  Let the record reflect we are

21            looking at page one.  I'm going to scroll down

22            to a page that's more clear.  Let the record

23            reflect we are looking at page two where it

24            shows the category of information and then the

25            information.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

116

K. Fernandaz

1

2     Q    Do you see here it says employee number

3     and then 1970 was your number?

4     A    Yes.

5          MR. NUSSBAUM:  Counsel, I don't see where

6          it says number.  You said it says employee

7          number.

8          MR. KATAEV:  I made an assumption that

9          it's employee number.

10         MR. NUSSBAUM:  You said it says employee

11         number, that's what you said.

12         MR. KATAEV:  I correct it.

13    BY MR. KATAEV:

14    Q    The second column says employee and it

15    shows your name, your first name?

16    A    Yes.

17    Q    I need a verbal answer, Katherine.

18    A    Yes, yes.

19    Q    Under job it says food runn with two n's

20    which means food runner, correct?

21    A    Yes.

22    Q    Then it says hours worked with the k cut

23    off which means probably means hours worked and

24    145.51, correct?

25    A    Yes.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

117

1                         K. Fernandaz

2          Q    You can't work 145 and a half hours in one

3     week, right?

4               MR. NUSSBAUM:  Objection.

5          A    I don't see what.  The document is all

6     black and I don't know what it's all about.

7          Q    You don't recognize this document at all

8     and you have never seen it up until now, right?

9          A    I do recognize my employee number and my

10    name, but the 145.51 that you're talking about I

11    have no idea.  That was the manager that was in

12    charge of the payroll and the hours.  I don't know

13    anything about that.

14         Q    You don't think that this is possibly a

15    monthly report of your tips; could that be the case?

16         A    I have no idea.

17         Q    Okay.  I'm going to present to you what

18    will be marked as Defendant's Exhibit 9.

19    (Defendant's Exhibit 9, Marked for Identification.)

20              I'll represent to you that it's the

21    employee handbook.  Do you recognize this document?

22         A    No.

23         Q    One question on this.  The last page that

24    I'm showing now, page 53, it has handbook

25    acknowledgment with at space for your signature.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

118

K. Fernandaz

1

2          Do you see that?

3      A    Yes.

4      Q    Are you saying you never signed this?

5      A    Never.

6      Q    Okay.  I'm placing up on the screen what

7   will be marked as Defendant's Exhibit 10.

8   (Defendant's Exhibit 10, Marked for Identification.)

9              I'll represent to you that this is a

10  corrective action record; do you see that?

11     A    That document is not an action.  It's a

12  performance record that is signed by the managers

13  Julio and Janos.  This was a meeting that we had to

14  attend and I said I couldn't attend.  As you can see

15  my signature is not there.

16     Q    Other than being issued this record which

17  you refused to sign, was there any disciplinary

18  action taken against you for your failure to attend

19  the meeting?

20     A    No.  I spoke to them and I told them that

21  unfortunately I wasn't going to be able to attend

22  because I had to be with my daughter and they said

23  it was okay.  I told Julio, the manager, and as you

24  can see his signature is at the bottom of the

25  document and I didn't sign it because I was okay,

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

119

1                        K. Fernandaz

2     they had given me permission when I told them I

3     couldn't attend.

4          Q    I'm going to share with you what will be

5     marked as Defendant's Exhibit 11.

6     (Defendant's Exhibit 11, Marked for Identification.)

7                    I'll represent to you that this is

8     your May 19, 2025 termination letter.

9                    Do you see that?

10         A    I never received that.

11         Q    This document on the bottom left is signed

12    by Janos, correct?

13         A    I can't see it.  I can't see.  Okay.  It

14    says, Janos, general manager.  There is no

15    signature.

16         Q    Are you saying someone other than Janos

17    terminated you?

18                MR. NUSSBAUM:  Objection.

19         A    It was Janos and I asked him for the

20    letter for my termination letter and I never

21    received it.  I have proof and I have pictures.

22         Q    Were you told it was in the mail?

23         A    I asked him to send it on my email and he

24    didn't want to so I never received it.

25         Q    He never told you that it would be mailed

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

120

1                    K. Fernandaz

2    to you, did he?

3         A    I never received it.  Never had an answer

4    for that.

5         Q    Give me a second.  I don't have anymore

6    questions on this exhibit.

7                    Let go to Defendant's Exhibit 12.

8    I'll represent to you this is the original complaint

9    filed in this case.

10   (Defendant's Exhibit 12, Marked for Identification.)

11        A    Yes.

12        Q    Do you recognize this document?

13        A    Yes.

14        Q    Did you read this document before it was

15   filed?

16        A    Yes.

17        Q    I'm going to read to you the first

18   paragraph and I would like to ask you some questions

19   about it, okay?

20        A    Okay.

21        Q    "Osteria La Baia is a New York City

22   hotspot that is famously known for being frequented

23   by New York City Mayor Eric Adams.  In fact its

24   owners, convicted felons Robert Petrosyants and

25   Marianna Shahmuradyan are good friends with Mayor

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

                                                              121
1                        K. Fernandaz

2       Adams."

3                    Do you recognize these sentences that

4       I just read to you?

5            A    Yes.

6            Q    You knew that Mr. Petrosyants was a

7       convicted felon?

8            A    Yes.

9            Q    How did you know that?

10           A    Because everything is on the internet.

11           Q    You researched that yourself and found

12      out?

13           A    Yes.

14           Q    Did you also research that Marianna is a

15      convicted felon?

16           A    No.

17           Q    Who did you tell that Marianna was a

18      convicted felon?

19           A    I wasn't talking about Marianna.  I was

20      talking about Robert to be a convicted felon.

21           Q    Did you ever tell anyone that Marianna is

22      a convicted felon?

23           A    No.

24           Q    At the top of the first page of the

25      complaint in the caption there is a phrase that

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

122

1                      K. Fernandaz

2       says, FLSA Collective Action and Rule 23 Class

3       Action.

4                      Do you see that?

5          A    Yes.

6          Q    Do you know what a class action means?

7               MR. NUSSBAUM:  Objection.

8          A    It's a demand, a collective demand.

9          Q    What does it mean to have a collective

10      demand?

11         A    That is for everyone that was included for

12      the fee for that.

13         Q    Is that a goal that you have in this

14      lawsuit to have everyone involved?

15         A    No.  I want everybody to receive what they

16      were robbed from.

17         Q    Why do you want everybody to receive that?

18         A    Because everyone was robbed of it the same

19      as they did with me.

20         Q    If I told you it would take a very long

21      time for everybody to receive it but you could

22      receive yours sooner would you want that instead?

23         A    I don't understand the question.

24         Q    I'm saying doing a class action is going

25      to take a very long time.  If you could get your

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

123

1                          K. Fernandaz

2       money for yourself sooner wouldn't you prefer that?

3                  MR. NUSSBAUM:  Objection.

4           A    I don't mind.  I have all the time in the

5       world.

6           Q    Okay.  Look at paragraph 29 of your

7       complaint.  It says that your paystubs contain

8       incorrect information about your correct rate of pay

9       and that in 2024, your wage statements stated both

10      that you were paid $15 per hour and $11 per hour; do

11      you see that?

12          A    Yes.

13          Q    But if I recall your testimony correctly,

14      earlier today you said you were only paid either ten

15      per hour or $12.50 per hour, correct?

16          A    First ten and then $12.50.

17          Q    You specifically testified repeatedly that

18      you were never paid $15 an hour and when I asked you

19      if you were ever paid $11 an hour you said you were

20      not, right?

21                  MR. NUSSBAUM:  Objection.

22          A    They pay me $12.50 and ten when I started

23      and then they raised it.  Simple.

24          Q    They raised it to what?

25          A    $12.50.  I said that more than ten times.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

124

                              K. Fernandaz

1

2        Q     Okay, I appreciate it.

3              This allegation here in paragraph 29

4    is false, correct?

5              MR. NUSSBAUM:  Objection.

6        A     Yes.

7        Q     Focusing on what will be marked as

8    Defendant's Exhibit 13, Docket Entry 2 in the case.

9    Civil cover sheet.  Do you recognize this document.

10   (Defendant's Exhibit 13, Marked for Identification.)

11       A     Can you make it bigger?

12       Q     Let the record reflect I zoomed in to the

13   maximum.  I want to know if you recognize the

14   document?

15       A     Yes.

16       Q     Can you explain what it is?

17             MR. NUSSBAUM:  Objection.

18       A     It's a plan of my attorney, the defense.

19       Q     Okay.  Were you aware there was an initial

20   pretrial conference scheduled in this case by the

21   judge?

22       A     No.

23       Q     I'm showing you what will be marked as

24   Defendant's Exhibit 14.  It's a one-page Notice of

25   Appearance Bates-stamped Docket 8 -- not

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

125

1                        K. Fernandaz

2       Bates-stamped.

3                    Do you know who Irene Sinayskaya

4       S-I-N-A-Y-S-K-A-Y-A is?

5           A    No.

6           Q    You never heard of her name, correct?

7           A    No.

8           Q    Okay.  I'll place up on the screen what

9       will be marked as Defendant's Exhibit 14.  It's ECF

10      Docket 311.  Do you recognize this document.

11      (Defendant's Exhibit 14, Marked for Identification.)

12          A    No.

13          Q    Do you know who Javier Molina is?

14          A    It sounds familiar, but I don't know.  I

15      can't remember that name.

16          Q    What if I represented to you that he's a

17      colleague of yours that joined the lawsuit.  Does

18      that refresh your memory?

19          A    I don't remember.  I don't remember his

20      name.

21          Q    Okay.  Did you work together with

22      Mr. Molina?

23          A    The name sounds familiar but I can't

24      really remember.

25          Q    At Adrian Montor-Teran's deposition,

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

126

                         K. Fernandaz
1
2        Adrian testified that Javier Molina's name is
3        Patricio.  Does that refresh your memory?
4            A    I believe he was a busser.
5            Q    Do you recall working with him?
6            A    Yes.
7            Q    Did you maintain contact with him while
8        you worked at the restaurant?
9            A    No.
10           Q    Did you exchange phone numbers with him
11       while you worked at the restaurant?  Was he one of
12       the 20 that you exchanged phone numbers with?
13           A    No.
14           Q    To your knowledge how did Javier or
15       Patricio Molina find out about this lawsuit?
16           A    I don't have an idea.
17           Q    To your knowledge did any of your
18       attorneys contact any of the employees at the
19       restaurant?
20           A    I'm not informed about that.
21           Q    Did you ever provide any contact
22       information of any employees you had the contact
23       info of to your attorneys?
24           A    No.
25           Q    Your testimony is that after you filed

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

127

1                    K. Fernandaz

2      your lawsuit in May of 2025, approximately a month

3      later, somehow someway Mr. Molina learned about this

4      lawsuit all on his own and filed this consent form,

5      the same exact consent form that you filed?

6           A    Yes, miracles exist.

7           Q    Okay.  You were not in any way responsible

8      for organizing any of the employees to join this

9      lawsuit, correct?

10          A    Never.

11          Q    If you were called upon to engage in such

12     organization to help all the employees join this

13     lawsuit would you take upon that task?

14               MR. NUSSBAUM:  Objection.

15          A    With a lot of pleasure.

16          Q    You haven't done anything like that yet?

17          A    No.

18          Q    Defendant's Exhibit 15 will be marked with

19     the single page ECF Documentary 12.

20               Do you recognize this document?

21     (Defendant's Exhibit 15, Marked for Identification.)

22          A    I know who the person is, but I never saw

23     the document.

24          Q    Who is this person?

25          A    Adrian Montor-Teran was a worker at

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

128

                         K. Fernandaz

1                        K. Fernandaz

2      Osteria La Baia, he was a busser.

3           Q    He worked at the restaurant with you?

4           A    Yes.

5           Q    Did you socialize with him outside of the

6      workplace?

7           A    No.

8           Q    Was he one of the 20 or so employees you

9      exchanged phone numbers with?

10          A    No.

11          Q    To your knowledge how is it that Adrian

12     became part of this lawsuit?

13          A    Another miracle of God.

14          Q    You realize that Adrian's last name is not

15     Montor-Peran, correct?

16          A    I wasn't informed about that.

17          Q    You realize his real name is Adrian

18     Montor-Teran with a t, correct?

19          A    To tell you the truth I'm not interested.

20          Q    You're not interested in knowing about the

21     other collective action members in this case?

22               MR. NUSSBAUM:  Objection.

23          A    I'm interested in that, but what I'm not

24     interested is that if his name is written with a p

25     or a t.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

129

K. Fernandaz

1

2      Q    Were you the one that provided this

3    incorrect spelling of his name to your attorneys?

4            MR. NUSSBAUM:  Objection.  Don't answer

5         it.  Don't answer.

6            MR. KATAEV:  Did you finish interpreting

7         the question and the instruction not to answer?

8            MR. NUSSBAUM:  It doesn't matter.

9            THE INTERPRETER:  I did it after I asked

10        the question.

11           MR. NUSSBAUM:  Four times today you tried

12        to get information that is -- that you're not

13        entitled to under attorney/client privilege.

14           MR. KATAEV:  We are marking this for a

15        ruling and I'm going to move for sanctions

16        because something fishy is going on here.  We

17        will deal with that later.

18                   (Marked for ruling.)

19    BY MR. KATAEV:

20        Q    Let the record reflect I have placed up on

21    the screen Defendant's Exhibit 16.  ECF Docket Entry

22    13 in this case.  Do you recognize this document?

23    (Defendant's Exhibit 16, Marked for Identification.)

24               Take your time to review it.

25           MR. NUSSBAUM:  What is the question?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

130

1              K. Fernandaz

2     Q    Do you recognize this document?

3          MR. NUSSBAUM:  Thank you.

4     A    I don't know what this is.  I don't

5     remember.  I don't recognize it.

6     Q    To your knowledge was the complaint in

7     this case ever amended?

8     A    I'm not informed about that.

9     Q    I'm sharing on the screen what will be

10    marked as Defendant's 18, ECF Docket Entry 15.

11    (Defendant's Exhibit 18, Marked for Identification.)

12              I'll represent to you that this is a

13    proposed scheduling order.

14              Does this document look at all

15    familiar to you?

16          MR. NUSSBAUM:  Objection.

17          THE INTERPRETER:  If I could translate it,

18      but I don't know what to translate to her.

19          MR. KATAEV:  Lets translate Civil Case

20      Management Plan Scheduling Order.  Base on that

21      translation and the title of this document are

22      you familiar with this document?

23    A    You presented me with 1,000 documents and

24    I can't recognize it.  It's a lot of information for

25    me all together at one time.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

131

1                          K. Fernandaz

2          Q    So are you saying you definitely haven't

3     seen this document or you don't remember, which one?

4          A    I can't remember if I saw it.

5          Q    Fair enough, I understand.

6               Do you have any recollection about a

7     joint letter that was submitted to the court on

8     September 4, 2025?

9               MR. NUSSBAUM:  Objection.

10         A    I'm not informed about that.

11         Q    Do you have any knowledge there existed a

12    discovery dispute about class actions and collective

13    actions documents in this case that was later

14    resolved?

15         A    I didn't know.

16         Q    Are you aware that on October 28th, a

17    dispute arose about depositions in this case and

18    when they would be scheduled?

19         A    You mean about this testimonies?

20         Q    Not particularly about your deposition.

21    More about the Defendants depositions.

22         A    No, I have no idea.

23         Q    Are you aware that I am not and my firm is

24    not the same attorneys that previously represented

25    the Defendants?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

132

1                       K. Fernandaz

2          A    I don't care.

3          Q    Did you know one way or the other?

4          A    I don't care.  I don't care.  The only

5     thing I want to do it resolve this.  I don't care.

6          Q    Okay.  You're saying you don't care about

7     this case?

8               MR. NUSSBAUM:  Objection.

9          A    I don't care about that question you asked

10    me.

11         Q    About what attorney is representing the

12    Defendants, right?

13         A    Yes, about the lawyer.

14         Q    Are you aware that in the middle of

15    November, the Defendants asked for an extension of

16    time to complete discovery?

17              MR. NUSSBAUM:  Objection.

18         A    Yes.

19         Q    Do you know what the judge decided with

20    that request?

21              MR. NUSSBAUM:  Objection.

22         A    No.

23         Q    Were you aware that the Defendants sought

24    for you to appear for your deposition in person

25    instead of virtually?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

133

                        K. Fernandaz

1

2       A    Yes.

3       Q    Did you have an objection to appearing in

4    person for your deposition?

5       A    No.

6       Q    If you were called upon to appear for the

7    deposition in person you would have done so?

8            MR. NUSSBAUM:  Objection.

9       A    I don't think because I work a lot.

10      Q    Okay.

11           THE INTERPRETER:  She needs to use the

12           bathroom.

13           MR. KATAEV:  Is five minutes enough?

14        (Whereupon, a short recess was taken.)

15   BY MR. KATAEV:

16      Q    Katherine, are you aware that yesterday a

17   motion to dismiss was filed in this case?

18      A    No.

19           MR. KATAEV:  For the record it's 4:40.

20           I'm done with all my questions.  I have another

21           line of questions to go through.  We should be

22           done around 5:00, hopefully before.

23      Q    You said you were never deposed before.

24   Did you ever provide any testimony before in any

25   hearing or court as a witness or as a party?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

134

1                        K. Fernandaz

2        A    No.

3        Q    Have you ever used a different name, email

4    address or identity when communicating with Osteria

5    La Baia about any issue that you're suing over?

6        A    No.

7        Q    Prior to filing the lawsuit against the

8    restaurant, to your knowledge was any demand letter

9    or other letter sent in an effort to try and resolve

10   the case before moving forward with the lawsuit?

11            MR. NUSSBAUM:  Objection.

12       A    No.

13       Q    Can you identify any statements you have

14   made in this case that you now know were wrong when

15   you made them?

16            MR. NUSSBAUM:  Objection.

17       A    No.

18       Q    Other than this lawsuit, has anyone ever

19   accused you of dishonesty in a professional context?

20            MR. NUSSBAUM:  Objection.

21       A    I don't care.  I don't know what you're

22   saying.  This doesn't have any sense.

23       Q    I need an answer to the question.  My

24   question is has anyone ever accused you of

25   dishonesty in any context?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

135

1                        K. Fernandaz

2         A     No.

3         Q     Whether you care or not, you have to

4     answer the question.

5              MR. NUSSBAUM:  There is no question.

6         There is no question.

7         Q     That's correct, we have no question.

8              MR. NUSSBAUM:  Save your commentary,

9         please.

10             MR. KATAEV:  I'm providing the witness

11        instructions.

12    BY MR. KATAEV:

13        Q     Do you know what relief you're asking the

14    court to award to the class or the collective?

15             MR. NUSSBAUM:  Objection.

16        A     Yes.

17        Q     What is that relief?

18             MR. NUSSBAUM:  Objection.

19        A     Everything that they were robbed of.

20    Everything they were robbed of.

21        Q     You mentioned for yourself that you were

22    looking for justice.  That's just for you, right?

23             MR. NUSSBAUM:  Objection.

24        A     For everyone.

25        Q     You mentioned before that you are looking

136

1                        K. Fernandaz

2      for damages for discrimination and harassment.

3      That's only for you and not for anyone else,

4      correct?

5              MR. NUSSBAUM:  Objection.

6      A    I'm presenting a demand for what happened

7      to me.  I don't know about the rest.

8      Q    What do you understand your

9      responsibilities would be as a class representative?

10             MR. NUSSBAUM:  Objection.

11     A    It's on paper what I'm demanding and

12     that's why we are speaking.

13     Q    That's not my question.  My question is:

14     If you were appointed a class representative, what

15     is your understanding of what your duties and

16     responsibilities would be as the class

17     representative?

18             MR. NUSSBAUM:  Objection.

19     A    I don't have any responsibilities.  I'm

20     only demanding what is coming to me.  I'll only

21     demand what was done wrong to me.  I'm demanding

22     because it's my right as a resident of the United

23     States.

24     Q    Okay.  And so if I understand you

25     correctly, if the judge appointed you as class

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

137

1                      K. Fernandaz

2       representative and told you you had some duties to

3       fulfill as that representative, you would not be

4       willing to do those duties, correct?

5                 MR. NUSSBAUM:  Objection.

6            A    If the judge will appoint me, I will do it

7       because I have my representatives.

8            Q    Besides speaking with and working with

9       your attorneys, have you done anything on your own

10      to gather information or evidence for the case?

11           A    Yes.

12           Q    Tell me what?

13           A    I was putting together all the information

14      to give to the attorneys.

15           Q    Other than that anything else?

16           A    No.

17           Q    If you believe a settlement or a

18      resolution by the court was good for you personally

19      but not for some other employees what would you do?

20                MR. NUSSBAUM:  Objection.  It's a

21           hypothetical.

22                MR. KATAEV:  She can answer.

23           A    I will ask my attorney about that.

24           Q    Has anyone promised you anything of value

25      beyond what your agreement says with your attorneys

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

138

1                       K. Fernandaz

2      for any recovery in this case?

3           A    No.

4           Q    Did you ever sign an arbitration agreement

5      with the restaurant?

6           A    No.

7           Q    What about a separation agreement, did you

8      ever sign that?

9           A    No.

10          Q    Are there any ways in which you believe

11     you were treated differently whether better or worse

12     than any other employees that you seek to represent?

13               MR. NUSSBAUM:  Objection.

14          A    Yes.

15          Q    Can you describe that for me?

16          A    The rest of the Defendants are men and

17     they used to harass me sexually, harass me at work

18     and I'm not interested in any of them because they

19     are all men.

20          Q    So if I understand you correctly, if it

21     was your preference, you would seek to represent a

22     class action of all the women and not the men,

23     correct?

24               MR. NUSSBAUM:  Objection.

25          A    If I would be assigned to represent the

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

139

K. Fernandaz

1

2      rest of the collective action I would represent

3      every one of them.  It doesn't matter who.

4          Q    Okay.  If you had your preference, you

5      would prefer to do it for the females and not the

6      males?

7              MR. NUSSBAUM:  Objection.  Asked and

8          answered.

9          Q    Please answer the question.

10         A    I'm not a racist, I'm not a feminist, I

11     don't care.

12         Q    You were treated better because you

13     received a raise from ten to $12.50 that no one else

14     did, right?

15             MR. NUSSBAUM:  Objection.

16         A    No, I'm not the only one.  A busser that

17     still works there, he received a raise, too.  I

18     wasn't the only one.

19         Q    Okay.  Have you ever filed for bankruptcy?

20         A    No.

21         Q    Other than this lawsuit, did you file any

22     other claims against the restaurant anywhere else?

23             MR. NUSSBAUM:  Objection.

24         A    No.

25         Q    What about your EEOC charge?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

140

                          K. Fernandaz

1

2        A     What is that?

3        Q     Nevermind.  I will move on.

4                    Have you ever lied --

5        A     No, I want to know now.

6        Q     Have you -- are you aware that you filed a

7   charge of discrimination with the EEOC?

8              MR. NUSSBAUM:  Objection.

9        A     Yes.

10       Q     Other than the lawsuit and that charge,

11   did you file any other claims anywhere else against

12   the restaurant?

13       A     No.

14       Q     Have you ever lied to anyone at the

15   restaurant about your qualifications?

16       A     Oh my God, I don't understand that

17   question.  That question is out of space.  First of

18   all, no, I didn't lie because my work spoke for

19   itself.  That's why there was a reason why Janos

20   gave me a raise.

21             MR. NUSSBAUM:  I want the witness to only

22             answer the question, please.

23       A     Okay.

24       Q     We are almost done.  Have you ever

25   falsified, altered or backdated any time sheets?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

141

K. Fernandaz

1

2      A    Never.

3      Q    In your communications about the issues in

4      this case, did you ever exaggerate, omit or misstate

5      facts to gain a benefit?

6      A    No.

7      Q    Have you ever used someone else's log-in

8      credentials or identity in Toast or any other

9      application or system at the restaurant?

10     A    Never.

11     Q    Have you ever threated or abused anyone at

12     the restaurant?

13     A    Never.

14     Q    Was there any employee that you worked

15     with that was subjected to a different policy

16     relating to compensation or tips?

17          MR. KATAEV:  Objection.

18     A    I don't understand the question.

19          MR. KATAEV:  Can we have it read back?

20     (Whereupon, the referred to question was read back

21               by the reporter.)

22          MR. NUSSBAUM:  Objection.

23     A    I'm not informed about that.

24     Q    Is it your position that your termination

25     is part of this lawsuit?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

142

1                        K. Fernandaz

2               MR. NUSSBAUM:  Objection.

3          A    Because they fire me, because they harass

4     me and because they stole my money.

5          Q    That's what this lawsuit is about, right?

6               MR. NUSSBAUM:  Objection.

7          A    Yes.

8          Q    Are you aware that if a class action does

9     not move forward here that your colleagues could

10    still file a separate lawsuit?

11              MR. NUSSBAUM:  Objection.

12         A    Yes.

13         Q    For your discrimination or harassment

14    claims, you were really harmed by what you're

15    claiming, right?

16              MR. NUSSBAUM:  Don't answer.

17              MR. KATAEV:  What do you mean don't

18         answer?

19              MR. NUSSBAUM:  You have been out of bounds

20         plenty today.

21              MR. KATAEV:  I'm withdrawing the question.

22         I agree with you.

23    BY MR. KATAEV:

24         Q    Is it fair to say that with respect to

25    your wage and tip claims, you were not actually

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

143

1                          K. Fernandaz

2      harmed but you're suing on principle?

3                MR. NUSSBAUM:  Objection.

4      A    I wasn't injured physically, no.

5      Q    Is it fair to say that you were not

6      actually harmed in any other way, but you're suing

7      on principle?

8                MR. NUSSBAUM:  Objection.

9      A    I'm doing -- I presented these demands

10     because I want to exercise my rights.

11     Q    Okay.  Would you still pursue this wage

12     and hour case, not the discrimination or

13     retaliation -- I'm sorry, discrimination and

14     harassment, would you still pursue this wage and

15     hour case if you could only obtain a declaration

16     that the restaurant violated the law but no money

17     for yourself?

18               MR. NUSSBAUM:  Objection.

19     A    I would have to get my attorney's advice

20     on that.

21     Q    Without including today's deposition, how

22     many hours have you personally spent on this case so

23     far?

24               MR. NUSSBAUM:  Objection.

25     A    I don't have that.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

144

1                          K. Fernandaz

2          Q     Was it more than five hours?

3          A     Yes.  I think, yes.

4          Q     More than ten hours?

5          A     With the seven hours that we still here

6     today I believe it is.

7          Q     With the seven hours today is it more than

8     15 hours total?

9          A     Yes, I think so.

10         Q     Are there any documents in your possession

11    from the restaurant that you declined to produce?

12         A     No.

13         Q     Do you understand that your decisions in

14    this case will bind other employees who are not here

15    today?

16               MR. NUSSBAUM:  Objection.

17         A     No.

18         Q     If another employee informed you that them

19    joined the lawsuit might hurt their career or

20    immigration status, how would you factor that into

21    your decisions?

22               MR. NUSSBAUM:  Objection.

23         A     I don't know.  They know what they're

24    dealing with on their own.  I don't know.

25         Q     Has this lawsuit caused any strain or

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

145

1                              K. Fernandaz

2       conflicts in your relationships with your former

3       colleagues who you might represent?

4            A    No.

5            Q    Do you remember when you first examined

6       your paystubs or paystub?

7            A    No.

8            Q    Is it fair to say that you looked at your

9       paystubs the first week after you received your pay?

10           MR. NUSSBAUM:  Objection.

11           A    I don't remember.

12           Q    Is it fair to say that the restaurant was

13      entitled to take the tip credits?

14           MR. NUSSBAUM:  Objection.

15           A    I don't know.

16           Q    Do you personally know that all the tipped

17      employees were paid the same way?

18           MR. NUSSBAUM:  Objection.

19           A    I didn't know anything about that.

20           Q    Have you reviewed the payroll records of

21      anyone besides yourself?

22           A    No.

23           Q    Do you know the difference between a

24      Federal Collective Action and a Rule 23 Class

25      Action?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

146

K. Fernandaz

1

2          MR. NUSSBAUM:  Objection.

3     A     No.

4     Q     Is it fair to say that you participated in

5     the tip pool everyday that you worked at the

6     restaurant?

7     A     Yes.

8     Q     You told me before that you did so well

9     that you were in charge of the kitchen; am I

10    recalling that correctly?

11    A     Yes.

12    Q     As a result of being placed in that

13    leadership role, did your compensation change in any

14    way?

15    A     No.

16    Q     Before filing the lawsuit did you make any

17    statements to anyone accusing the owners of theft or

18    criminal conduct?

19    A     No.

20    Q     Do you believe all the employees lost the

21    same percentage of tips that you lost?

22          MR. NUSSBAUM:  Objection.

23    A     Everything is divided by points.

24    Q     Was the answer yes or no?

25          MR. NUSSBAUM:  Objection.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

147

```
 1                      K. Fernandaz
 2          A    No.
 3          Q    Have you spoken with any of the other
 4     employees about this experiences working at the
 5     restaurant?
 6          A    No.
 7          Q    If you learned that some employees don't
 8     want to be included in the lawsuit, how would that
 9     affect your decisions in this case?
10               MR. NUSSBAUM:  Objection.
11          A    I don't care.
12          Q    Are you prepared to attend hearings,
13     settlement conferences, and possibly a trial in this
14     case?
15               MR. NUSSBAUM:  Objection?
16          A    Yes.
17          Q    Are you aware that the complaint
18     references Mayor Adams?
19          A    Yes.
20          Q    Did you include a reference to Mayor Adams
21     in the complaint because of Rob's status as a
22     convicted felon?
23          A    Yes.
24          Q    Did you include Mayor Adams in the
25     complaint because you want to connote that
```

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

148

                          K. Fernandaz

1

2      Mayor Adams is also a criminal?

3                  MR. NUSSBAUM:  Objection.

4          A     No, because I'm not informed about that.

5          Q     Are you aware that Mayor Adams had all

6      criminal charges against him dropped?

7          A     I don't care.

8          Q     Do you know the difference between a

9      service charge and a gratuity?

10                 MR. NUSSBAUM:  Objection.

11         A     Yes.

12         Q     What is the difference?

13         A     The service charge is what you have to pay

14     for the service that you're getting and the tip is

15     the tip.

16         Q     And you recognize that the service charge

17     is mandatory, correct?

18                 MR. NUSSBAUM:  Objection.

19         A     I don't know that.  I was just a runner.

20         Q     Was Julio Perez working at the restaurant

21     when you went to work there?

22         A     We were -- we started working at the same

23     time.

24         Q     You took pictures of all of the private

25     event contracts that you provided to your lawyer who

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

149

                          K. Fernandaz

1

2      then gave it to us, correct?

3           A    Yes.

4           Q    You took those pictures because you were

5      planning to file this lawsuit while you were still

6      working there, correct?

7           A    No.

8           Q    Why did you take the pictures at the time

9      that you took them?

10          A    Because it's not -- because it's the first

11     time that they will fire an employee while the

12     employee is on approved vacations.

13          Q    Okay.  You have testified pretty

14     consistently in this deposition that you believed

15     that you were entitled to a 20 percent tip for

16     special events, correct?

17               MR. NUSSBAUM:  Objection.

18          A    They had to give everybody 20 percent.

19          Q    Your complaint only talks about a

20     3 percent service charge.  You realize that, right?

21          A    That 3 percent they give it to Natalia who

22     is the manager for the events.

23          Q    What did you get for the special events;

24     how much did you get?

25          A    It was a pool.  I used to get tips at the

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

150

K. Fernandaz

1
2    end of the night.

3         Q    Do you know what the total percentage was

4    for special events, not from the pool?

5         A    They didn't give us any information.  They

6    only told us that they were giving us 20 percent of

7    the tip.

8         Q    Your complaint doesn't say 20 percent.  It

9    only says 3 percent.  Which one is it?

10        A    Natalia will keep the 3 percent.

11        Q    So if I understand correctly, you're not

12   suing for 20 percent, you're suing for 3 percent

13   that Natalia took, right?

14        A    Three percent.

15        Q    How do you know what Natalia took?

16        A    Because she said it.

17        Q    She said it to you directly?

18        A    Yes.

19        Q    You asked her?

20        A    Yes, and another waitress that was working

21   there asked her.

22        Q    Okay.  Were you present when the other

23   waitress asked her?

24        A    Yes.

25        Q    What is the other waitress's name?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

151

K. Fernandaz

1

2      A    Nicole.

3      Q    What did Nicole say to Natalia and what

4    did Natalia say to Nicole during this conversation?

5      A    Nicole said why do we get 18 percent when

6    they said that we get 20 percent and Natalia said

7    because the other 3 percent I keep.

8      Q    Based on that conversation you knew that

9    you got 18 percent, right?

10     A    Found out.

11     Q    When did you find out?

12     A    But they always -- they had always said it

13    would be 20 percent.

14     Q    When did you find out it was 18?

15     A    Two or three months before I was fired.

16     Q    And then your conversation by yourself

17    with Natalia, was that before or after the

18    conversation with you, Nicole and Natalia?

19     A    After.

20     Q    What did she say to you and what did you

21    say to her?

22     A    The same thing that Nicole said to her.

23     Q    You're saying you had the same

24    conversation or something else?

25     A    Yes.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

152

1                          K. Fernandaz

2          Q    Did you organize all the employees and

3     bring it to Janos's attention that you had a problem

4     with that?

5          A    No.

6          Q    Why not?

7          A    Because there were a lot of problems.

8     There were already so many problems and nobody was

9     making a solution for anything.

10         Q    You decided to take matters into your own

11    hands and file this lawsuit, correct?

12              MR. NUSSBAUM:  Objection.

13         A    Yes.

14         Q    Give me two minutes.  I think I'm done.

15              Without telling me any conversations

16    that had with your attorneys, have you had any

17    disagreements with your attorneys about how to

18    handle this case; yes or no?

19              MR. NUSSBAUM:  You don't have to answer

20         that.  Don't answer that.

21              MR. KATAEV:  Mark it for a ruling.

22              THE INTERPRETER:  She said no.

23              MR. NUSSBAUM:  If I say don't answer,

24         don't answer.

25              THE INTERPRETER:  I didn't hear you say

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

153

1                      K. Fernandaz

2          that.  I told her not to respond the times that

3          you told me.  I didn't hear you, I'm sorry.

4          Everybody talks at the same time so maybe

5          that's the reason.

6               MR. KATAEV:  We will strike the answer and

7          we will mark it for a ruling.  Thank you.

8               THE INTERPRETER:  Okay.

9                    (Marked for ruling.)

10    BY MR. KATAEV:

11          Q    Do you believe that every tipped employee

12    is owed the same amount or will some be owed more or

13    less?

14               MR. NUSSBAUM:  Objection.

15          A    I have no idea.

16          Q    Would you still pursue the case if you

17    could recover money for others but not for yourself?

18               MR. NUSSBAUM:  Objection.

19          A    I will consult with my attorney.

20          Q    Is it fair to say you're largely relying

21    on your lawyers to understand the legal issues in

22    this case?

23          A    Yes.

24               MR. KATAEV:  Let's take a quick three

25          minute break.  I'm going to make a final

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

154

1              K. Fernandaz

2      confirmation and if I don't have any other

3      questions we will be done.

4          (Whereupon, a short recess was taken.)

5      Q    Katherine, thank you so much for your time

6   today and for giving me your whole day.  I have no

7   further questions for you.

8              THE REPORTER:  Mr. Nussbaum, will you be

9      purchasing a copy of this transcript?

10             MR. NUSSBAUM:  Yes.

11

12

13             (Time noted: 5:33 p.m.)

14

15             _____

16             KATHERINE FERNANDEZ

17

18   Subscribed and sworn to before me this _____ day

19   of _____ 2025.

20   _____, Notary Public.

21

22

23

24

25

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

155

1                          K. Fernandaz

2       WITNESS

3       KATHERINE FERNANDEZ

4

5       EXAMINATION BY                        PAGE

6       MR. KATAEV                              4

7

8       COUNSEL REQUESTS                      PAGE

9       Travel documents                       17
        Unemployment insurance documents       22
10      Health First renewal applications      23
        Childcare assistance applications      24
11      Pictures and screen shots              70
        Text messages                          89
12

13      MARKED FOR A RULING                   PAGE

14      Line 22                                55
        Line 18                               129
15      Line  9                               153

16                      E X H I B I T S

17

        DEFENDANT'S           DESCRIPTION      PAGE
18

19      Exhibit 1             Picture of labor  44
                              law posters
20      Exhibit 2             Compilation of   101
                              records
21      Exhibit 3             ECF docket Entry 102
                              50-2
22      Exhibit 4             ECF documentary  107
                              50-1
23      Exhibit 5             30 pages of pay  110
                              history summary
24                            report
        Exhibit 6             Initial disclosures 111
25      Exhibit 7             Responses to     114
                              interrogatories
        Exhibit 7             interrogatories
25

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

156

1                              K. Fernandaz

2

3                        E X H I B I T S (Continued)

4

        DEFENDANT'S            DESCRIPTION          PAGE
5

6       Exhibit 8              Redacted tip         115
                               records
7       Exhibit 9              Employee handbook    117
        Exhibit 10             Corrective action    118
8                              record
        Exhibit 11             Termination letter   119
9       Exhibit 12             Original complaint   120
        Exhibit 13             Docket Entry 2       124
10      Exhibit 14             ECF Docket 311       125
        Exhibit 15             ECF Documentary 12   127
11      Exhibit 16             ECF Documentary 13   129
        Exhibit 18             Scheduling Order     130

12

13      Attorney Kataev has retained all exhibits.

14

15

16

17

18

19

20

21

22

23

24

25

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

157

2                    C E R T I F I C A T I O N

3

4      STATE OF NEW YORK    )

5                         ) ss.:

6      COUNTY OF QUEENS     )

7

8             I, RUTHAYN SHALOM, a Court Reporter

9      and Notary Public within and for the State

10     of New York, do hereby certify:

11            That the witness whose deposition

12     is hereinbefore set forth, was duly sworn

13     by me, and that the within transcript is a

14     true record of the testimony given by such

15     witness.

16            I further certify that I am not

17     related to any of the parties to this action

18     by blood or marriage, and that I am in no way

19     interested in the outcome of this matter.

20            IN WITNESS WHEREOF, I have hereunto

21     set my hand this 9th day of December, 2025.

22

23

24     _____
              *Ruthayn Shalom*

25                 RUTHAYN SHALOM

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

158

ERRATA SHEET


NAME OF CASE: FERNANDEZ et al. v BULLDOZER et al.
DATE OF DEPOSITION: December 8, 2025
NAME OF DEPONENT: Katherine Fernandez
PAGE  LINE(S)          CHANGE                REASON
_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____


                    _____
                    KATHERINE FERNANDEZ

Subscribed and sworn to before me
this _____ day of _____, 2025
_____, Notary Public.


          _____

          MY COMMISSION EXPIRES:

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

159

---

**A**

**A-M-B-R-U-S** 84:2
**A-N-D-R-E-W-S** 59:2
**A-R-T-E-M-I-O** 63:2
**a.m** 1:12
**ability** 8:8 37:20
**able** 6:17 69:17 73:16 118:21
**absolutely** 76:7
**abused** 141:11
**accepting** 85:19
**access** 37:24 57:25 68:19,25 106:17
**accurate** 92:4
**accurately** 58:11 84:3
**accused** 134:19,24
**accusing** 146:17
**achieve** 95:23
**acknowledgment** 46:13 117:25
**action** 118:10,11,18 122:2,3,6,24 128:21 138:22 139:2 142:8 145:24,25 156:7 157:17
**actions** 131:12,13
**actual** 90:11
**Adams** 120:23 121:2 147:18,20,24 148:2 148:5
**additional** 104:14,16
**address** 4:8 14:13,14 37:15 102:19,21,23 134:4
**admin** 109:9
**admonish** 76:13
**Adrian** 2:4 10:8 14:2 125:25 126:2 127:25 128:11,17
**Adrian's** 128:14
**advice** 99:21 143:19
**affect** 8:7 147:9
**affidavit** 12:7

**affirmation** 12:9
**afternoon** 71:23 105:24
**against-** 1:7
**agency** 99:19
**ago** 11:25 12:5 33:6 79:11,19
**agree** 52:8 142:22
**AGREED** 3:2,7,11
**agreement** 95:25 137:25 138:4,7
**agrees** 95:13
**ah** 6:18
**ahead** 44:6 51:8
**al** 158:4,4
**alcohol** 8:6 76:17
**Alivia** 2:14
**allegation** 124:3
**allow** 6:20 18:13
**allowed** 51:16
**altered** 140:25
**Ambrus** 83:23,24
**amended** 13:10 130:7
**amount** 40:25 47:18 65:12 80:18 84:8 103:7 104:3 109:9 109:10 115:10 153:12
**amounts** 103:12
**and/or** 16:25 70:24 71:2
**Andrew** 2:15 13:21 13:22,25
**Andrews** 59:2,11,23 60:21
**answer** 6:21 7:2,16 7:17,22 8:18 11:12 11:14,20 30:3 32:3 32:4 49:7 51:7,22 53:5 55:18 59:22 71:10 74:11 75:16 76:22 77:13 85:24 86:19 87:21 88:2,8 88:14 89:17 97:21 97:24 98:2,7,9,15

99:24 100:5,6 112:9 116:17 120:3 129:4 129:5,7 134:23 135:4 137:22 139:9 140:22 142:16,18 146:24 152:19,20 152:23,24 153:6
**answered** 73:14 97:19 98:12 114:20 139:8
**answering** 5:19 99:25
**answers** 6:16 7:8 8:3 8:11 98:13 115:2
**anybody** 17:15 80:18 81:9,13
**anymore** 31:11 95:8 106:23 120:5
**Apart** 96:8
**Apartment** 4:9
**appear** 132:24 133:6
**Appearance** 124:25
**appearing** 133:3
**application** 23:15 24:9,12 34:8,21 37:4 40:12 76:9 77:11,14,16 141:9
**applications** 23:23 24:23 155:10,10
**applied** 22:24
**apply** 24:16
**appoint** 137:6
**appointed** 136:14,25
**appreciate** 124:2
**apprenticeship** 27:11
**approach** 86:21
**approve** 113:7
**approved** 33:23 34:5 34:8,9,14,16,21,23 149:12
**approximately** 28:13 103:6 127:2
**April** 19:10
**arbitration** 138:4
**area** 43:7,20,23 44:9
**arising** 22:21

**arose** 131:17
**arrested** 20:19,25
**arrive** 15:2
**Artemio** 63:2
**aside** 68:17
**asked** 37:13 38:5 41:10,13 73:11,20 87:16,20 97:23 114:19,25 119:19 119:23 123:18 129:9 132:9,15 139:7 150:19,21,23
**asking** 5:18 15:23 37:10 59:18 87:18 91:2,3 98:4,10 99:25 100:2 105:2 113:22 135:13
**assert** 75:10
**assign** 81:20
**assigned** 30:9 64:9 138:25
**assistance** 24:3,17,22 24:25 25:3,5,6 155:10
**assume** 7:3
**assuming** 69:25 95:11 104:3
**assumption** 116:8
**attend** 25:9 26:19 27:4,7,10 118:14,14 118:18,21 119:3 147:12
**attending** 27:3
**attention** 152:3
**attorney** 4:23 7:14 55:16,17 77:10 82:2 88:2,11,19 99:2 100:3,8,11 113:4 124:18 132:11 137:23 153:19 156:13
**attorney's** 143:19
**attorney/client** 129:13
**attorneys** 2:3,8 3:3

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

160

9:23 10:19 11:24
12:3,21 14:5,10
70:4 80:10,13 99:21
100:14 106:11,14
106:15 111:9,15,20
113:14,18 114:23
115:10 126:18,23
129:3 131:24 137:9
137:14,25 152:16
152:17
**audio** 52:21
**automatic** 68:2
**automatically** 67:14
**available** 56:20 57:18
**Avenue** 2:9
**average** 40:23 41:9
58:15 89:19,22
**award** 62:17 135:14
**aware** 10:7 12:17
13:9,13 113:18
124:19 131:16,23
132:14,23 133:16
140:6 142:8 147:17
148:5

**B**

**B** 155:16 156:3
**back** 15:5,9 16:14
17:21 18:4 22:13
32:2,5 41:18,20
43:4,7 52:22,24
53:4,12 54:6 81:7
88:5,6 100:7 101:8
141:19,20
**backdated** 140:25
**backpack** 43:21
**badgering** 97:20
**Baia** 1:8 5:4 16:8
32:18 33:10 35:10
35:14,19,23 36:4
42:2,8,23 44:24
46:17 53:25 55:25
56:16,19 57:2,5
58:15 59:4,7,12,20
59:23 60:12,15 61:6

63:8 102:22 120:21
128:2 134:5
**bankruptcy** 139:19
**bar** 43:8
**barista** 28:18
**bartenders** 65:23
**Base** 130:20
**based** 35:4 48:12,17
48:23 74:21 75:2
89:7 104:3 110:4
114:11 151:8
**basically** 63:24
**basis** 75:10
**Bates** 110:19,20
**Bates-stamped**
124:25
**Bates-stampeded**
125:2
**bathroom** 43:22,24
44:2,5 133:12
**began** 54:20
**beginning** 84:16
**behalf** 1:3
**believe** 9:5 17:5 37:9
47:11 84:24 94:13
95:24 104:9 113:15
126:4 137:17
138:10 144:6
146:20 153:11
**believed** 149:14
**benefit** 24:6,10 141:5
**benefits** 21:12,19
22:3,7,16,19,21
23:5 24:4,17,22
**best** 7:6,11 91:4 98:8
**better** 138:11 139:12
**beyond** 67:2 137:25
**bigger** 124:11
**billboard** 44:10,15
**bind** 144:14
**birth** 14:22
**bit** 99:6
**black** 115:14,16
117:6
**blazer** 76:25 77:3

**Bloise** 2:13 4:2
**blood** 157:18
**blue** 13:17
**body** 6:17
**born** 14:24
**bottom** 106:3,22
118:24 119:11
**bounds** 142:19
**box** 104:14,16,19
**boxes** 115:17
**Boy** 20:2
**boys** 77:21
**bread** 43:8
**break** 7:20 43:14
52:3 55:12,15 91:17
101:7 153:25
**breaking** 71:15
**brief** 99:10
**bring** 80:23 152:3
**Broadway** 2:5
**brothers** 26:12
**brought** 43:21 86:17
**Bulldozer** 1:8 4:23
5:4 51:12 158:4
**bus** 28:18 39:11
**busser** 39:12 40:2
46:21 56:25 63:3
64:24 65:2,7,12
126:4 128:2 139:16
**bussers** 64:17,20
65:10,14,20 92:21
92:23
**Bussing** 56:23
**busy** 45:7

**C**

**C** 2:2 157:2,2
**calculate** 90:15,25
91:2
**calculation** 90:11
**calendar** 71:12
**call** 4:19 9:13 16:23
21:23 23:22 24:21
51:23,24,25 52:3
70:9 76:9 89:9

**called** 26:22 77:16
110:24 127:11
133:6
**calls** 17:9
**camera** 8:21
**captain** 74:8,14,23
**caption** 112:22,25
121:25
**card** 37:14 63:24
69:6 104:4
**cards** 67:13
**care** 13:13 24:3 45:6
45:8 76:10 78:4,6
95:7 132:2,4,4,5,6,9
134:21 135:3
139:11 147:11
148:7
**career** 144:19
**case** 1:6 12:9,15,24
13:7,14 14:11 17:18
41:15 66:6,9,14
69:21 79:12,20
94:16 96:2 97:12,17
98:23 99:3 100:8,18
101:3 104:9 112:22
113:10,15 117:15
120:9 124:8,20
128:21 129:22
130:7,19 131:13,17
132:7 133:17
134:10,14 137:10
138:2 141:4 143:12
143:15,22 144:14
147:9,14 152:18
153:16,22 158:4
**cash** 61:12,13 64:2,3
64:4,5 66:19,23
67:13 69:6 103:18
103:23,24
**categories** 103:11
**category** 115:24
**caused** 144:25
**cellular** 69:19
**certain** 9:4 38:9
92:24

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

161

certify 157:10,16
chance 40:9
change 29:23 43:19
  43:22 45:23 49:23
  49:25 50:3 55:9
  66:16 87:8,21 89:15
  99:14 146:13 158:5
changed 30:2,11
  44:25 45:2,5 46:3
  54:6 62:14 65:6
  87:6,12,18 89:18
changes 45:17,18
charge 51:11,14,18
  51:21 68:2 76:6
  105:16 107:20,20
  108:4 117:12
  139:25 140:7,10
  146:9 148:9,13,16
  149:20
charges 109:17 148:6
check 57:10,13,16
  68:11,14,18 81:11
  91:13 92:5 103:6,24
  109:6,8
checks 57:9,9 61:12
  68:19,25 80:25
  105:7
chef 50:6,12,18 51:2
  51:5 53:19 62:3,20
  62:20 105:11
child 20:4,6 24:3
childcare 24:16,22
  25:5 155:10
children 19:20
chosen 93:6,11,14
circuit 99:6
circumstances 31:15
City 120:21,23
Civil 124:9 130:19
claim 21:11,18 22:3,7
  22:15 84:21 94:14
  96:6
claiming 142:15
claims 5:20 30:24
  96:19,20 139:22

140:11 142:14,25
clarification 83:2
clarify 59:16 85:23
  95:21
class 110:22 122:2,6
  122:24 131:12
  135:14 136:9,14,16
  136:25 138:22
  142:8 145:24
classes 27:7,15
classification 65:25
classifications 65:22
clear 6:12 7:10 97:22
  115:22
client 52:18 66:24
  77:24,25 101:13
clients 64:5 67:2
clock 42:22,22
close 64:8 76:10
closed 54:7
closer 8:21
closing 92:15
clothes 43:20 76:2
  77:2
co-Plaintiff 10:7
coats 43:21
colleague 32:10,12
  125:17
colleagues 50:22 63:9
  100:18 142:9 145:3
collective 122:2,8,9
  128:21 131:12
  135:14 139:2
  145:24
college 26:3,9,14
column 116:14
come 36:16 49:21
  54:17 72:21 78:23
  86:17 107:15
coming 136:20
comment 77:20
commentary 135:8
COMMISSION
  158:23
commitment 95:3

committed 21:2
commonsense 108:12
communicating
  134:4
communications
  100:2 141:3
company 7:9 33:24
  89:18 101:25
compensation 22:16
  22:19 29:23 102:3
  141:16 146:13
compilation 101:13
  107:5,8 155:20
complain 76:12
complaining 71:5
complaint 12:11 13:4
  13:10,11,12,14 21:7
  52:15 64:23 120:8
  121:25 123:7 130:6
  147:17,21,25
  149:19 150:8 156:9
complaints 13:6 91:9
  91:11 99:13,15,18
complete 6:20 26:7,9
  38:9 58:8 132:16
completed 38:23
completely 98:9
completing 58:5
complicated 92:10
computer 37:5,7
  42:24,25 43:7,13
  77:12 82:10
computers 43:2,3
concerning 12:9
conduct 146:18
conducts 77:6
conference 1:18
  124:20
conferences 147:13
confident 39:3 66:2
confirmation 154:2
confirming 75:7
conflicts 145:2
connected 50:16
connection 22:2

25:21 26:14
connote 147:25
consent 127:4,5
consisted 46:20
Consistent 103:5
consistently 41:15
  93:10,12 149:14
consists 102:13
consult 153:19
consulting 87:6
consumed 8:6
contact 32:20,22
  36:16 63:8 100:8,11
  126:7,18,21,22
contain 123:7
context 134:19,25
continue 11:10 23:15
Continued 72:6
  156:3
contract 67:21
  107:23 109:12,18
  109:22
contracts 148:25
contribute 73:23
control 80:22
conversation 55:16
  71:8 85:7,8,9,10,20
  85:21,24,25 86:4,7
  86:8,11 151:4,8,16
  151:18,24
conversations 14:4,9
  106:13 114:23
  152:15
convicted 120:24
  121:7,15,18,20,22
  147:22
Cooney 2:14
copy 29:10 108:24
  154:9
Corona 4:9 32:25
correct 8:14 9:9,15
  13:4 15:20,25 16:10
  16:11,18 19:15
  20:22 21:21 23:12
  23:16,17,20,21 24:7

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

162

24:10,14 28:21 29:2
30:6,25 31:4,13
33:11,20 34:19 35:6
36:4,6,14 37:21,25
38:18,24 39:17
41:23 42:3,11,15,19
44:21,25 45:15,20
47:2,7 48:8,13,25
49:10,19 50:10,14
51:2 54:13 55:7,13
57:2,5,14,18,23
58:2,6,9,12,18
59:22 62:14,18,23
65:4 68:20 69:25
72:17,23 73:2 74:23
75:13,18,21 78:7
79:22 80:2 81:4,22
82:8 83:10,16 84:4
85:25 88:20 90:5,9
92:4 93:2 94:16
95:5 97:13 98:23
99:23 101:22,23
102:14,19,22 103:3
103:13 104:5,15,17
104:20 105:2,24
107:16,21,24 109:6
110:9 111:6,10
116:12,20,24
119:12 123:8,15
124:4 125:6 127:9
128:15,18 135:7
136:4 137:4 138:23
148:17 149:2,6,16
152:11
**corrective** 118:10
156:7
**correctly** 30:3 55:6
56:24 66:18 74:21
78:10 123:13
136:25 138:20
146:10 150:11
**cosmetology** 27:15
**counsel** 17:4 18:5,12
22:4 23:25 24:24
51:13 52:13 70:12

89:13 97:18 116:5
155:8
**count** 70:23
**country** 19:12 22:13
25:11,24
**COUNTY** 157:6
**couple** 10:23
**course** 107:14,18
**court** 1:1,17 6:3,13
6:16 11:15 18:11,13
18:15 32:3 52:11,11
53:9 97:22 131:7
133:25 135:14
137:18 157:8
**court's** 18:10 52:17
53:7
**courtesy** 6:22
**cover** 124:9
**coworker** 87:13
**coworkers** 45:9
46:23 49:3 50:25
78:13,21
**credentials** 141:8
**credit** 41:22,22 42:3
42:19 47:17,25 48:6
48:11,15,17 50:9
63:24 67:13 69:6
82:20 87:2 104:4,24
**credits** 145:13
**crime** 20:21,25 21:2
**criminal** 146:18
148:2,6
**Cristina** 2:13 4:2
**crystal** 7:10
**current** 14:13 21:4
35:14
**currently** 20:4,8 23:2
**customer** 61:13 64:4
67:7 68:11,18
107:24 108:2 110:5
**customers** 29:17 40:3
45:12,15,19 48:7
61:7,10,22 75:13,18
**cut** 71:6 116:22

**D**

**D** 72:2
**D-A-V-I-D** 60:25
**D-A-V-I-D-S** 61:2
**D-O-N** 25:14
**D/B/A/** 1:8
**daily** 53:25
**damages** 101:2 136:2
**date** 14:22 16:25 17:2
100:3 106:2 158:4
**dates** 84:14
**daughter** 118:22
**David** 60:25
**Davids** 60:24
**day** 10:19 16:12,14
16:14,20 18:22
40:11,16,17 50:5
55:9,9 56:9 76:4,11
82:16 84:9,12,14
154:6,18 157:21
158:20
**daycare** 24:5
**days** 35:11 41:8,11
41:12 46:25 47:6
56:13,15 60:11
90:22,23
**dayshift** 40:9,15,19
54:16
**deal** 129:17
**dealing** 144:24
**December** 1:12 10:9
10:15 13:25 157:21
158:4
**decide** 11:19 99:3
**decided** 52:12 132:19
152:10
**decision** 35:5
**decisions** 144:13,21
147:9
**declaration** 12:8
143:15
**declined** 144:11
**decrease** 61:20 62:7
62:11
**Defendant's** 44:13,17

52:13 101:12,15
102:6,11 107:2,4
110:13,14 111:13
111:17 114:3,6
115:6,7 117:18,19
118:7,8 119:5,6
120:7,10 124:8,10
124:24 125:9,11
127:18,21 129:21
129:23 130:10,11
155:17 156:4
**defendants** 1:10 2:8
4:23 5:21 14:11
110:22 112:2
115:10 131:21,25
132:12,15,23
138:16
**defense** 124:18
**definitely** 131:2
**demand** 12:10 13:2,3
21:17 94:12 112:20
122:8,8,10 134:8
136:6,21
**demanding** 32:8 97:3
97:7,9 136:11,20,21
**demands** 98:25 143:9
**department** 21:9,25
22:8 102:2
**Depending** 45:7
**DEPONENT** 158:5
**deposed** 6:5 10:8
133:23
**deposit** 57:8
**deposition** 6:10 8:3
9:17,20,24 10:5,11
10:13 11:14 12:21
13:17,23 14:2,6
17:10,22,25 18:21
18:23 51:15 52:18
53:8 55:13 97:13
99:6 110:25 113:19
125:25 131:20
132:24 133:4,7
143:21 149:14
157:11 158:4

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

163

depositions 131:17
  131:21
depressed 53:19
describe 81:16,24
  112:11,18 138:15
described 45:18,24
  46:4
description 46:7
  155:17 156:4
detail 87:9
detailed 76:22
details 102:4 114:17
Deternoz 2:15
diary 71:12
difference 30:19,21
  31:13 42:10 49:6,18
  64:25 65:15 103:17
  145:23 148:8,12
different 30:8 65:2
  65:11 68:22 70:21
  86:19 88:24 110:5
  134:3 141:15
differently 138:11
direct 57:7 61:11
directly 52:11 61:6
  61:10,13 67:8 86:22
  150:17
disagreements
  152:17
disappointment
  34:25
disciplinary 118:17
disciplined 79:25
disclosure 113:13
disclosures 111:15
  112:15 155:24
discovery 17:6 52:12
  89:8 110:23 131:12
  132:16
discriminate 96:15
  96:18
discrimination 94:5
  98:18 136:2 140:7
  142:13 143:12,13
discuss 55:17 79:12

79:20
discussing 106:20
discussion 18:6 33:7
  52:11 71:19 81:6
  102:17
dishonesty 134:19,25
dishwasher 101:20
dismiss 133:17
displeasure 34:25
dispute 52:12 131:12
  131:17
DISTRICT 1:1,1
divide 90:16
divided 90:7,12 91:6
  146:23
divulge 100:2
divulging 55:15
docket 102:7 124:8
  124:25 125:10
  129:21 130:10
  155:21 156:9,10
document 12:8 29:9
  29:10 33:18 101:21
  101:24 102:13
  105:3,6 107:10,12
  108:18,20 110:17
  111:25 112:4,6,18
  113:6,11,13 114:7
  114:12,14,19,24
  115:12 117:5,7,21
  118:11,25 119:11
  120:12,14 124:9,14
  125:10 127:20,23
  129:22 130:2,14,21
  130:22 131:3
documentary 106:21
  107:6 127:19
  155:22 156:10,11
documentation 37:25
documents 10:2
  12:15,23 16:24
  21:24 29:12 38:9
  59:6 89:8 102:9
  105:8 107:8,15
  130:23 131:13

144:10 155:9,9
doing 6:13,22 17:23
  45:9,14 101:8
  107:18 122:24
  143:9
dollar 47:23,25
dollars 47:16,18
Dominican 14:25
  15:5,24 16:6,9,13
  25:12,25
Don 25:14
double 54:19,21,24
  55:6
dress 76:19 77:21
drink 76:17
dropped 148:6
drugs 8:6
due 22:22
duly 4:3,6 72:3
  157:12
duties 44:25 45:22
  46:2,7 50:14 107:14
  136:15 137:2,4

E
E 2:2,2 72:2,2,2,2
  155:16 156:3 157:2
E-N-D-I 14:21
earlier 8:20 61:16,24
  90:23 123:14
earn 23:20 24:14
earned 30:20
earnings 103:11
eat 109:13,15
Eats 19:19
ECF 102:7 107:6
  125:9 127:19
  129:21 130:10
  155:21,22 156:10
  156:10,11
education 25:6,21
EEOC 51:11 52:15
  139:25 140:7
effect 30:12
effective 6:9

efficient 6:9
effort 134:9
either 43:12,13 60:18
  61:4 92:19 123:14
electronically 38:9
  38:12,14,23
else's 141:7
email 18:11,12,15,17
  18:19,20 36:18
  37:15,18,19 57:17
  57:19 83:8 119:23
  134:3
Emanuel 2:10 4:22
emanuel@sagelega...
  2:10
employed 29:13
  55:25 100:9
employee 36:4 43:14
  46:9,13 62:22 99:23
  102:3 105:11 110:3
  115:17 116:2,6,9,10
  116:14 117:9,21
  141:14 144:18
  149:11,12 153:11
  156:7
employees 12:17
  43:17,18,23 63:16
  63:19 64:16,19
  69:16 81:19 87:18
  93:5 100:18 108:9
  126:18,22 127:8,12
  128:8 137:19
  138:12 144:14
  145:17 146:20
  147:4,7 152:2
employer 21:8 56:2
employment 7:8
  16:20 22:11 23:19
  24:14 25:22 28:8
  31:16 35:13 37:3,23
  58:5 59:7,18 61:3
  84:17,17,18 85:5
  99:17,22 100:4,12
  100:16,22 111:6,9
employment-related

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

164

37:25
ended 28:8 85:21,25
  86:13 99:18 100:12
  111:9
Endi 14:19
engage 127:11
English 8:16,25 9:4
  26:20 27:4,7 112:13
enter 81:18
enters 76:8
entitled 7:11 11:6
  88:8 94:14 95:24
  129:13 145:13
  149:15
entrance 44:4
entry 102:7 124:8
  129:21 130:10
  155:21 156:9
Eric 120:23
ERRATA 158:2
ESQ 2:6,10
et 158:4,4
evasive 97:25 98:5
evening 40:16 54:8
  54:13
event 68:15 69:7
  93:19 107:5,19
  108:7 109:12,14,16
  109:18 148:25
events 7:7 45:14
  49:14 67:14,19 68:3
  68:10,13 76:20
  92:24,25 93:7,11,15
  93:18 104:8,12
  105:17 149:16,22
  149:23 150:4
eventually 39:25
  56:17 65:6
everybody 43:13
  74:5 79:25 85:8
  122:15,17,21
  149:18 153:4
everyday 37:6 41:16
  146:5
everyone's 81:20

evidence 137:10
exact 92:22 127:5
exactly 19:11 75:12
exaggerate 141:4
examination 1:16 3:4
  3:8 4:12 72:5 155:5
examined 4:10 72:4
  145:5
example 111:9
exchange 126:10
exchanged 89:10
  126:12 128:9
exercise 143:10
exhibit 44:13,17
  101:12,15,17 102:6
  102:11 106:24
  107:3,4 108:16
  110:13,14 111:13
  111:17 113:24
  114:3,6 115:6,7
  117:18,19 118:7,8
  119:5,6 120:6,7,10
  124:8,10,24 125:9
  125:11 127:18,21
  129:21,23 130:11
  155:19,20,21,22,23
  155:24,25 156:6,7,7
  156:8,9,9,10,10,11
  156:11
exhibits 101:8 156:13
exist 74:14,20,24,25
  75:5,11 127:6
existed 131:11
expect 93:23
expects 77:22
expeditor 45:5,11
experience 48:12,18
  75:8 93:8,10 110:3
  110:4
experiences 147:4
EXPIRES 158:23
explain 29:25 87:9
  103:21 124:16
explained 49:2,3,15
express 34:24

extension 132:15
extent 17:13 70:6
extra 87:14 104:11

———————

F

F 72:2 157:2
F-O-T-I-S 36:10
face 36:17,17,20,20
face-to-face 36:24
facing 44:4
fact 34:23,25 48:23
  68:17 79:6 120:23
factor 144:20
facts 141:5
failure 118:18
fair 29:15 31:19
  39:23 43:9 47:24
  66:25 82:4 90:14
  93:9,13 97:6 99:4
  131:5 142:24 143:5
  145:8,12 146:4
  153:20
false 105:19 124:4
falsified 140:25
familiar 44:18
  125:14,23 130:15
  130:22
famously 120:22
far 6:14 59:3 143:23
father 26:11
Federal 4:15 145:24
fee 109:9 122:12
felon 121:7,15,18,20
  121:22 147:22
felons 120:24
females 139:5
feminist 139:10
Fernandaz 4:1,19 5:1
  6:1 7:1 8:1 9:1 10:1
  11:1 12:1 13:1 14:1
  15:1 16:1 17:1 18:1
  19:1,3 20:1 21:1
  22:1 23:1 24:1 25:1
  26:1 27:1 28:1 29:1
  30:1 31:1 32:1 33:1

34:1 35:1 36:1 37:1
38:1 39:1 40:1 41:1
42:1 43:1 44:1 45:1
46:1 47:1 48:1 49:1
50:1 51:1 52:1 53:1
54:1 55:1 56:1 57:1
58:1 59:1 60:1 61:1
62:1 63:1 64:1 65:1
66:1 67:1 68:1 69:1
70:1 71:1 72:1 73:1
74:1 75:1 76:1 77:1
78:1 79:1 80:1 81:1
82:1 83:1 84:1 85:1
86:1 87:1 88:1 89:1
90:1 91:1 92:1 93:1
94:1 95:1 96:1 97:1
98:1 99:1 100:1
101:1 102:1 103:1
104:1 105:1 106:1
107:1 108:1 109:1
110:1 111:1 112:1
113:1 114:1 115:1
116:1 117:1 118:1
119:1 120:1 121:1
122:1 123:1 124:1
125:1 126:1 127:1
128:1 129:1 130:1
131:1 132:1 133:1
134:1 135:1 136:1
137:1 138:1 139:1
140:1 141:1 142:1
143:1 144:1 145:1
146:1 147:1 148:1
149:1 150:1 151:1
152:1 153:1 154:1
155:1 156:1
Fernandez 1:3,16 2:4
  4:5 9:8 154:16
  155:3 158:4,5,18
Fifty 41:4
figure 81:25
file 99:18 111:23
  139:21 140:11
  142:10 149:5
  152:11

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

165

21:11 22:15 30:24
51:12 97:11 107:6
111:16,21,22 120:9
120:15 126:25
127:4,5 133:17
139:19 140:6
**filing** 3:8 134:7
146:16
**fill** 24:12 37:3
**filled** 21:18 99:2
**final** 153:25
**find** 22:10 86:5
100:14 126:15
151:11,14
**fine** 52:4
**finish** 6:23 54:3,9
129:6
**fire** 33:16 34:11
78:12 142:3 149:11
**fired** 33:10,14,20,25
34:10 76:3 78:9,11
79:22 151:15
**firing** 33:18
**firm** 14:5 131:23
**first** 4:6 6:12 14:20
15:2 19:7 23:4,5,6
23:11,24 24:16
27:13,22 28:3,17,23
36:16 42:7 46:16
47:14 54:4 55:12
85:10,21,24 86:7
87:5 102:2,22 106:3
114:10 116:15
120:17 121:24
123:16 140:17
145:5,9 149:10
155:10
**fishy** 129:16
**five** 41:10 47:18,25
84:3 87:13 90:22
97:14,19 101:7
133:13 144:2
**floor** 39:21 43:3,6
49:13 84:7,9
**FLSA** 122:2

**fluent** 8:16,19
**fly** 17:19
**focus** 85:10
**focused** 77:17 85:13
**Focusing** 124:7
**follow** 17:2,10 22:3
23:24 24:23 66:19
70:11 89:12
**following** 22:7 31:9
**follows** 4:11 52:12
72:4
**food** 22:24 25:3 45:7
76:16 109:23
116:19,20
**form** 3:12 25:6 34:8
38:22 51:4 53:16
127:4,5
**formally** 34:21
**former** 100:17 145:2
**forms** 58:12 103:18
**forth** 51:13 157:12
**Forty-one** 91:5
**forward** 134:10
142:9
**forwarded** 88:19
**Fotis** 36:7,11,24 38:8
39:16,19 41:21,22
41:25 42:3,14,18
**Fotis's** 39:24
**found** 33:19 121:11
151:10
**four** 19:25 87:12,12
103:11 129:11
**free** 18:2
**frequented** 120:22
**frequently** 50:12
**friends** 120:25
**friendships** 50:21
**front** 44:2 79:25
**fulfill** 137:3
**full** 31:24 80:18
**further** 3:7,11 44:5
72:4 154:7 157:16

**G**

**gain** 141:5
**gap** 35:8,12
**gather** 137:10
**general** 14:11 34:16
48:20 119:14
**generally** 29:16
58:14 68:9 90:4
**gestures** 6:17
**getting** 48:7 148:14
**girl** 20:2,3
**give** 6:16,21 8:11
64:5,6,7 66:20,21
70:3 76:5,5 78:16
80:10 81:9,13 88:3
99:5 103:24 114:17
120:5 137:14
149:18,21 150:5
152:14
**given** 7:8 30:12 80:19
87:21 91:4,21
107:23 119:2
157:14
**gives** 77:9
**giving** 33:12 87:7
150:6 154:6
**GM** 36:7
**go** 6:7 9:8,11 15:21
26:21 27:14 32:6
51:8 57:25 64:6,7
66:20,25 68:10 74:3
76:4,18 77:25 81:19
109:3,5,13 120:7
133:21
**goal** 93:21 97:2
122:13
**God** 128:13 140:16
**goes** 24:5 108:8,9
**going** 6:7 11:8,9,11
16:23 17:19,21,23
18:20 21:23 23:22
24:21 26:14 38:5
41:18,20 44:12
49:16 70:8 71:15
77:23 78:3 85:15,17
89:9 97:21 101:11

106:21,23 107:7
109:23 110:12,24
111:12 115:14,21
117:17 118:21
119:4 120:17
122:24 129:15,16
153:25
**good** 4:14,19,21 50:9
50:18,19 62:2 67:4
67:6 78:2 101:6
120:25 137:18
**government** 24:6
99:19
**graduate** 25:16 26:5
**graduated** 25:20
**Grainger** 4:9
**gratuities** 103:18,23
104:7
**gratuity** 68:3 103:19
107:20 108:3
109:10 148:9
**great** 6:13,22 105:10
**green** 37:14
**ground** 6:8 7:24
**group** 1:8 4:24 63:11
63:12
**guess** 7:7
**guest** 76:17
**guests** 77:23
**guilty** 20:21,25

**H**

**H** 72:2 155:16 156:3
**H-E-R-N-A-D-E-Z**
25:15
**hah** 6:18
**half** 17:17 117:2
**hand** 66:19 157:21
**handbook** 46:9,14
117:21,24 156:7
**handle** 152:18
**hands** 57:11 152:11
**handwritten** 82:11
**happen** 82:17
**happened** 36:25 64:4

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

166

66:14 77:17 86:5
136:6
**happy** 71:17 94:15
97:5 98:6 100:7
**harass** 138:17,17
142:3
**harassed** 96:17,17,18
**harassment** 98:17
136:2 142:13
143:14
**hard** 50:7 67:8,9
**harmed** 142:14 143:2
143:6
**Harry's** 28:2,23
29:13,16,19,23
30:16,19,25 31:16
31:21 32:6,11 35:9
41:18,21,24 42:2
48:13,18
**head** 27:14 74:8,23
**health** 23:4,6,11,11
23:15,24 155:10
**hear** 78:10 152:25
153:3
**heard** 125:6
**hearing** 71:6 133:25
**hearings** 147:12
**held** 1:17,17 18:6
29:22 71:19 81:6
102:17
**help** 85:18 127:12
**helped** 45:11
**hereinbefore** 157:12
**hereto** 3:4
**hereunto** 157:20
**Hernandez** 25:14,15
**hey** 31:3
**high** 25:9,13,20 104:3
**highest** 41:5
**highlighted** 112:22
**hire** 38:6
**hired** 36:3,13 37:2
38:3 39:10 72:15
**history** 110:16
155:23

**holding** 105:6
**home** 31:18
**hoodie** 13:18
**hopefully** 6:9 133:22
**Hospitality** 1:8 4:23
51:12
**hostesses** 66:3,7
**hotspot** 120:22
**hour** 17:17 47:16,19
47:22,23 48:3,4,6
61:25 62:9,11,16
87:14 90:17 101:2
103:3 104:20 105:4
105:9 123:10,10,15
123:15,18,19
143:12,15
**hourly** 21:20 47:9
89:5 90:8 104:24
**hours** 8:7 31:18 54:2
54:4,15 58:14,17
70:15 71:2,16 87:6
87:10,12,13,13
89:16 90:5,8,16,20
91:3,20,24 92:2,3
92:12 116:22,23
117:2,12 143:22
144:2,4,5,7,8
**house** 10:17
**housing** 24:25
**huh** 6:18
**hundred** 39:7
**hurt** 144:19
**husband** 14:17 19:17
**hypothetical** 137:21

_____

**I**

**I9** 38:22
**idea** 113:12,20
114:21 117:11,16
126:16 131:22
153:15
**Identification** 44:17
101:15 102:11
107:4 110:14
111:17 114:6 115:7

117:19 118:8 119:6
120:10 124:10
125:11 127:21
129:23 130:11
**identify** 134:13
**identity** 134:4 141:8
**immigration** 144:20
**important** 6:7
**improper** 98:10,10
**inaccurate** 105:20
**include** 18:14 147:20
147:24
**included** 66:13
122:11 147:8
**including** 51:17
81:22,23 143:21
**income** 21:20 24:13
**incorrect** 113:11
123:8 129:3
**increase** 50:8 61:19
62:7,9,16,22 63:5
67:3
**increased** 62:3
**independent** 19:18
**indicating** 16:25
**indication** 106:2
**individual** 13:16
**individually** 95:14
**individuals** 65:9
**inexperienced** 93:18
**info** 126:23
**informal** 5:25
**information** 23:19
24:13 37:10,12
53:23 71:11 73:7
104:14,16,17
113:15 115:24,25
123:8 126:22
129:12 130:24
137:10,13 150:5
**informed** 28:24
48:24 67:22 126:20
128:16 130:8
131:10 141:23
144:18 148:4

**initial** 111:14 112:14
113:13 124:19
155:24
**injured** 22:20 143:4
**injury** 22:21,22
**input** 37:11
**inputting** 37:11
**inside** 43:8
**instruct** 11:11,14
97:21
**instructed** 11:20
**instructing** 51:6,22
100:6
**instruction** 8:22
129:7
**instructions** 135:11
**instructs** 7:16
**insurance** 21:12 22:2
22:6 23:11,16 155:9
**interchangeably**
43:10
**interested** 95:9
128:19,20,23,24
138:18 157:19
**internet** 100:15
121:10
**interpreter** 2:13 4:3
4:7,11 8:13,24
41:24 47:3 53:8
71:5 74:12 77:15
129:9 130:17
133:11 152:22,25
153:8
**interpreting** 129:6
**interrogatories** 114:5
114:10,18 155:25
155:25
**interrupt** 11:13,18
18:22
**interrupting** 11:21
17:22
**interruptions** 18:5
**interview** 36:8,14
41:18,20,25
**interviewed** 36:6

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

167

**intimate** 17:14
**intimidate** 17:13
**involved** 21:5 122:14
**Irene** 125:3
**Irrespective** 20:24
**issue** 34:12 85:3
  134:5
**issued** 52:14 118:16
**issues** 141:3 153:21
**Italian** 20:13,14
  35:14,20,24
**items** 43:25

**J**

**J-U-A-N** 25:14
**Jamaica** 2:9,9
**Janos** 36:6 39:21,23
  42:17,18 45:6 50:6
  53:17 68:8 76:6,15
  77:4,7,7,8 79:22
  83:5,14 84:4 85:23
  87:24 88:13,17
  89:11 118:13
  119:12,14,16,19
  140:19
**Janos's** 89:16 152:3
**Javier** 2:4 125:13
  126:2,14
**jnussbaum@jk-llp...**
  2:6
**job** 6:13,22 11:20
  22:10 27:13,22
  29:15,22 32:6,9
  35:14,19,19,23,24
  36:22 39:9 40:2
  45:22 46:2,7 50:13
  56:16,19 58:18,19
  65:21,25 72:8 75:15
  78:2 92:22 102:2
  116:19
**jobs** 35:25
**join** 12:11 127:8,12
**joined** 125:17 144:19
**joint** 131:7
**jointly** 18:11

**Jose** 62:20
**Josef** 2:6 4:17 52:16
**Joseph** 2:3,15 10:18
**journal** 71:12
**Juan** 25:14
**judge** 17:20 51:9,23
  51:24 52:3 98:6
  124:21 132:19
  136:25 137:6
**Julio** 74:8 75:13,14
  75:17,20,23 76:24
  77:5,8,18 78:9
  79:24 81:18 83:15
  84:19,21 86:24 89:2
  91:9 113:23 118:13
  118:23 148:20
**June** 15:4 105:23
  106:9
**justice** 93:23,24 94:3
  94:20,23 96:11,13
  135:22

**K**

**k** 4:1 5:1 6:1 7:1 8:1
  9:1 10:1 11:1 12:1
  13:1 14:1 15:1 16:1
  17:1 18:1 19:1 20:1
  21:1 22:1 23:1 24:1
  25:1 26:1 27:1 28:1
  29:1 30:1 31:1 32:1
  33:1 34:1 35:1 36:1
  37:1 38:1 39:1 40:1
  41:1 42:1 43:1 44:1
  45:1 46:1 47:1 48:1
  49:1 50:1 51:1 52:1
  53:1 54:1 55:1 56:1
  57:1 58:1 59:1 60:1
  61:1 62:1 63:1 64:1
  65:1 66:1 67:1 68:1
  69:1 70:1 71:1 72:1
  72:2 73:1 74:1 75:1
  76:1 77:1 78:1 79:1
  80:1 81:1 82:1 83:1
  84:1 85:1 86:1 87:1
  88:1 89:1 90:1 91:1

  92:1 93:1 94:1 95:1
  96:1 97:1 98:1 99:1
  100:1 101:1 102:1
  103:1 104:1 105:1
  106:1 107:1 108:1
  109:1 110:1 111:1
  112:1 113:1 114:1
  115:1 116:1,22
  117:1 118:1 119:1
  120:1 121:1 122:1
  123:1 124:1 125:1
  126:1 127:1 128:1
  129:1 130:1 131:1
  132:1 133:1 134:1
  135:1 136:1 137:1
  138:1 139:1 140:1
  141:1 142:1 143:1
  144:1 145:1 146:1
  147:1 148:1 149:1
  150:1 151:1 152:1
  153:1 154:1 155:1
  156:1
**Kataev** 2:10 4:13,14
  4:22 11:6,13,18,22
  16:23 17:8,14,19
  18:3,7,17 19:2
  21:23 23:22 24:21
  32:2 51:8,16,23
  52:4,8,10,22 53:2
  55:20,24 70:6 71:17
  72:6 82:24 88:4
  90:10 91:16,19
  97:25 98:5,12 99:5
  99:9,12 101:6,10,24
  102:16 106:19
  108:15 110:20
  111:2,20,24 112:3
  113:21 115:4,20
  116:8,12,13 129:6
  129:14,19 130:19
  133:13,15,19
  135:10,12 137:22
  141:17,19 142:17
  142:21,23 152:21
  153:6,10,24 155:6

  156:13
**Katherine** 1:3,16 2:4
  4:5,20 9:8 14:22
  44:18 52:20 53:25
  72:7 88:8 101:12,14
  102:10 107:9
  108:18 114:4
  116:17 133:16
  154:5,16 155:3
  158:5,18
**Kathy** 9:13,14
**keep** 6:12,23 11:8
  18:20 69:10,14,18
  70:14 71:11 80:7
  92:12 98:3,10
  150:10 151:7
**keeps** 18:23
**kept** 63:8 70:25
  80:18
**Kirschenbaum** 2:3
  2:15 10:19
**kitchen** 50:6,13,15,17
  50:25 60:24 61:2
  76:8,17 105:17
  146:9
**knew** 121:6 151:8
**know** 5:16 13:18
  18:17 33:4 39:7
  52:6 63:20 66:12,12
  66:14,17 73:22
  74:16 75:7 77:25
  79:6,15 80:15,23,24
  81:15 82:9,10 88:13
  90:24 91:23 92:5
  97:6,9 103:17 104:2
  104:10,10,10
  106:11 112:14,21
  117:6,12 121:9
  122:6 124:13 125:3
  125:13,14 127:22
  130:4,18 131:15
  132:3,19 134:14,21
  135:13 136:7 140:5
  144:23,23,24
  145:15,16,19,23

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

168

148:8,19 150:3,15
**knowing** 128:20
**knowledge** 13:6
 32:15 33:14 34:11
 50:3 53:21 62:21
 63:4,6 65:9 66:15
 68:2 79:3 80:12
 88:10 89:25 107:23
 112:6 126:14,17
 128:11 130:6
 131:11 134:8
**known** 120:22

**L**

**La** 1:8 5:4 16:8 32:18
 33:10 35:10,14,19
 35:23 36:4 42:2,8
 42:23 44:24 46:17
 53:24 55:25 56:16
 56:19 57:2,5 58:15
 59:3,7,12,20,23
 60:12,15 61:5 63:7
 102:22 120:21
 128:2 134:5
**labeled** 104:15
**labor** 21:9,25 22:8
 44:10,15 155:19
**language** 8:17,25
**largely** 153:20
**late** 31:18 76:4 82:18
**Laura** 78:23 79:14
 83:23
**law** 10:18 14:5,10
 44:10 94:9,25 95:7
 95:19,22,23 96:22
 97:16 98:22,25
 143:16 155:19
**laws** 44:15 95:3 96:8
**lawsuit** 12:12 21:4,5
 21:15 33:8 93:21
 95:5,15 97:11
 122:14 125:17
 126:15 127:2,4,9,13
 128:12 134:7,10,18
 139:21 140:10

141:25 142:5,10
 144:19,25 146:16
 147:8 149:5 152:11
**lawyer** 132:13 148:25
**lawyer's** 11:17
**lawyers** 153:21
**leadership** 146:13
**learn** 26:20 27:3 38:3
 72:13
**learned** 72:16,22
 127:3 147:7
**learning** 72:20
**leash** 11:9
**leave** 43:20,25 61:3
**leaving** 22:11 35:18
 35:23
**led** 79:24
**left** 16:14,18,25 35:9
 39:16,19 40:16
 42:18 53:20 54:8
 64:2,4 66:13,15
 67:12,24 102:18
 105:16 111:5
 119:11
**legal** 2:8,14 94:2
 153:21
**Let's** 51:8,23 52:2
 85:10 153:24
**letter** 119:8,20,20
 131:7 134:8,9 156:8
**level** 45:7
**Lexington** 60:3
**lie** 140:18
**lied** 140:4,14
**life** 95:15
**light** 88:14
**line** 11:15 133:21
 155:14,14,15
**LINE(S)** 158:5
**list** 21:19 64:23 81:19
**listed** 103:18 113:14
**Listen** 75:16
**listens** 71:7
**little** 99:6
**live** 14:16 20:4 32:25

**lived** 102:21
**living** 19:17
**LLC** 2:8
**LLP** 2:3
**location** 102:2
**loft** 43:16
**log** 37:20 57:22
 106:15
**log-in** 141:7
**logical** 72:18
**long** 15:17 16:5 27:7
 46:24 58:20 60:7
 67:5 82:14 86:7
 122:20,25
**longer** 22:22 66:6,9
 79:6
**look** 44:18 58:2 82:3
 92:7 123:6 130:14
**looked** 12:23 29:7
 145:8
**looking** 7:6 18:18
 96:11,21 108:16,17
 115:21,23 135:22
 135:25
**lost** 146:20,21
**lot** 31:17 78:18 84:13
 127:15 130:24
 133:9 152:7
**loud** 6:12
**lowest** 40:25 89:25
**lunch** 71:15
**Luncheon** 71:21

**M**

**M-A-G-A-L-I-S**
 32:13
**Madame** 32:3 53:8
**Magalis** 32:13,15,20
 36:21 38:5 39:22
 49:11,15 72:24
 73:10,17 87:23
**Magalis's** 49:12
**mail** 119:22
**mailed** 119:25
**maintain** 32:20,22

50:21 63:11 126:7
**maintained** 23:11
**makeup** 27:16
**making** 50:7 105:8
 152:9
**male** 36:11,12
**males** 139:6
**man** 13:17
**manage** 63:15
**management** 48:24
 49:9 89:11 99:14
 130:20
**manager** 34:17 39:21
 42:17 49:2,13,14
 53:17 75:14,23
 77:11 78:4,6 84:20
 84:22,23 85:4,13,14
 94:6 113:23 117:11
 118:23 119:14
 149:22
**manager's** 36:9
**managers** 118:12
**mandatory** 80:16
 148:17
**Manhattan** 56:5
 59:15 60:3
**manner** 70:25
**Maria** 2:13 4:2
**Marianna** 1:9 4:24
 5:14,16,20 86:21
 120:25 121:14,17
 121:19,21
**mark** 44:13 55:20
 111:12 152:21
 153:7
**marked** 44:17 55:22
 101:12,15 102:5,11
 107:2,4 110:13,14
 111:17 114:2,6
 115:6,7 117:18,19
 118:7,8 119:5,6
 120:10 124:7,10,23
 125:9,11 127:18,21
 129:18,23 130:10
 130:11 153:9

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

169

155:13
**marking** 129:14
**marriage** 19:7
   157:18
**married** 19:3,4,6,9
   19:12,14
**Marsella** 20:16,17
**Marusella** 20:17,18
**math** 91:6
**matter** 129:8 139:3
   157:19
**matters** 152:10
**maximum** 47:18
   124:13
**Mayor** 120:23,25
   147:18,20,24 148:2
   148:5
**mean** 43:16 45:25
   47:21 67:19 80:5
   93:24 96:13 106:3
   108:4 122:9 131:19
   142:17
**meaning** 77:8
**means** 83:8 103:21
   116:20,23,23 122:6
**media** 100:21
**Medicaid** 23:3
**Medicare** 23:2
**medication** 8:7
**meet** 9:23 13:22
**meeting** 11:24 36:24
   84:4,14 118:13,19
**meetings** 12:3 76:2,3
   77:6,9,18,19 79:24
   80:2 83:14
**members** 128:21
**memory** 7:10 91:4
   109:2 125:18 126:3
**men** 138:16,19,22
**mentioned** 83:22
   135:21,25
**menus** 76:20
**merit** 62:22
**message** 33:12 36:17
   63:11 83:10 88:18

89:6
**messages** 89:4,9,10
   155:11
**met** 11:23 12:2
**middle** 9:15 33:25
   84:17 132:14
**mind** 78:24 123:4
**minimum** 28:25
   30:15,20 31:4 42:9
   42:11 47:13,22,25
   49:6,16,17,18,22
   50:8 61:25 62:3,13
**minute** 101:7 153:25
**minutes** 133:13
   152:14
**miracle** 128:13
**miracles** 127:6
**miscommunication**
   34:19,20
**misstate** 141:4
**mistaken** 64:11,22
**misunderstanding**
   34:4
**misunderstood** 35:22
**Molina** 2:4 125:13,22
   126:15 127:3
**Molina's** 126:2
**moment** 83:19
**Monday** 56:17
**monetary** 100:25
**money** 18:20 26:11
   40:25 50:7 57:7
   94:8,14,21,22 95:4
   96:8,21 97:15 123:2
   142:4 143:16
   153:17
**month** 15:8 19:9 23:8
   23:9 24:17,19 25:18
   27:17,19 28:3,6,9
   55:10,10,11,11
   84:25 86:9 127:2
**monthly** 117:15
**months** 10:24 27:9
   33:6 34:15,23 36:2
   58:20,21 60:8,9,14

79:11 151:15
**Montor-Peran** 2:4
   128:15
**Montor-Teran** 10:8
   127:25 128:18
**Montor-Teran's**
   125:25
**morning** 4:14,19,21
   8:20
**motion** 133:17
**move** 8:21 26:13 80:2
   95:15 98:14 129:15
   140:3 142:9
**moving** 134:10
**multiple** 43:2
**mumbling** 6:18

─────────

**N**

**N** 2:2 72:2,2,2 157:2
**n's** 116:19
**name** 4:22 9:8,11,15
   9:15 13:18,20 14:18
   14:20 20:14 25:13
   26:2 27:25 32:12
   36:9 37:20 56:6
   58:24 60:23 63:2
   78:25 79:14 102:2,3
   102:18 106:15
   113:2 116:15,15
   117:10 125:6,15,20
   125:23 126:2
   128:14,17,24 129:3
   134:3 150:25 158:4
   158:5
**names** 78:14,16,22
   83:21
**Natalia** 149:21
   150:10,13,15 151:3
   151:4,6,17,18
**need** 7:22 17:8 68:21
   85:18 88:13 97:16
   116:17 134:23
**needed** 34:13
**needs** 133:11
**never** 12:4 19:14

20:21 21:3,10 33:17
   39:2,3,13 42:14
   44:21,25 55:6 56:21
   61:12 62:10 66:23
   67:7 68:4,12,16
   87:16,19 90:5 93:14
   101:21 105:3,5,15
   105:17,22 106:6,12
   109:21,24 111:3,4,8
   117:8 118:4,5
   119:10,20,24,25
   120:3,3 123:18
   125:6 127:10,22
   133:23 141:2,10,13
**Nevermind** 24:20
   140:3
**new** 1:1,20 2:5,5,9
   4:4,8,10 21:8,25
   22:7 35:19 120:21
   120:23 157:4,10
**nickname** 9:14
**Nicole** 151:2,3,4,5,18
   151:22
**night** 40:7,10,18,20
   56:9 66:22 67:17
   77:23 78:3 80:6,6
   81:4,8,17,18 82:15
   150:2
**normal** 61:21
**Notary** 1:19 3:5 4:4,7
   154:20 157:9
   158:20
**Note** 82:22
**notebook** 71:12
**noted** 154:13
**notes** 82:11
**notice** 1:17 29:7
   38:17,24 64:23 73:4
   107:19 113:10,19
   124:24
**notified** 72:25
**notifying** 57:17
**November** 132:15
**number** 7:9 34:8,22
   37:6 49:23,25 90:16

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

170

91:3 102:3 113:10
113:22 115:18,19
116:2,3,6,7,9,11
117:9
**numbers** 30:9 63:15
63:19 110:19,21
126:10,12 128:9
**numerous** 113:14
**Nussbaum** 2:6 4:18
8:18 9:2 10:16 11:4
11:8,16 12:25 14:7
15:10 16:15 17:5,12
17:16,25 18:9,24
19:5 26:16 29:3
30:17,22 36:19
38:19,25 39:6 42:4
42:12,20 44:7 47:15
47:20 48:2,9,14
51:6,19,25 52:6,19
53:14,22 55:18,23
67:10 71:14 74:10
75:3 77:13 80:20
82:22 90:18 91:18
91:22 93:22 94:4,11
94:17,24 95:6,16
96:3,7,10,25 97:8
97:18 98:3,8,16,24
99:7,11,24 100:5,19
101:4 105:14,21
106:5 108:13
109:19 110:11,19
111:18,22 112:7,9
112:16,19,23 113:3
113:8 114:15
115:13 116:5,10
117:4 119:18 122:7
123:3,21 124:5,17
127:14 128:22
129:4,8,11,25 130:3
130:16 131:9 132:8
132:17,21 133:8
134:11,16,20 135:5
135:8,15,18,23
136:5,10,18 137:5
137:20 138:13,24

139:7,15,23 140:8
140:21 141:22
142:2,6,11,16,19
143:3,8,18,24
144:16,22 145:10
145:14,18 146:2,22
146:25 147:10,15
148:3,10,18 149:17
152:12,19,23
153:14,18 154:8,10

---

## O

**O** 157:2
**oath** 6:2 12:9
**obey** 95:3,7,19,22
98:25
**obeying** 94:25 95:23
96:8,21 97:15 98:22
**object** 17:11
**objected** 11:19
**objection** 7:15,17
8:18 9:2 10:16
12:25 14:7 15:10
16:15 19:5 26:16
29:3 30:17,22 36:19
38:19,25 39:6 42:4
42:12,20 44:7 47:15
47:20 48:2,9,14
53:14,22 55:18
67:10 75:3 80:20
82:22,23 87:15
90:18 91:22 93:22
94:4,11,17,24 95:6
95:16 96:3,7,10,25
97:8,18 98:16,24
100:19 101:4
105:14,21 106:5
108:13 109:19
110:11 112:7,16,19
112:23 113:3,8
114:15 115:13
117:4 119:18 122:7
123:3,21 124:5,17
127:14 128:22
129:4 130:16 131:9

132:8,17,21 133:3,8
134:11,16,20
135:15,18,23 136:5
136:10,18 137:5,20
138:13,24 139:7,15
139:23 140:8
141:17,22 142:2,6
142:11 143:3,8,18
143:24 144:16,22
145:10,14,18 146:2
146:22,25 147:10
147:15 148:3,10,18
149:17 152:12
153:14,18
**objections** 3:12
**obtain** 23:5 24:10
143:15
**Obviously** 67:6
**occur** 50:4 84:14
86:8
**occurred** 50:5,9
70:14
**October** 14:23 28:12
36:3 47:14 131:16
**off-the-record** 18:6
52:10 71:19 81:6
102:17
**office** 10:22 11:17
14:10 44:3
**offices** 10:18 11:2
**Oh** 140:16
**okay** 4:17 5:12,15
6:10,15,18,19,24
7:13,19,23 16:20
17:23 18:24 22:5
24:2 42:6 45:11
52:4 53:11 55:23
59:21 67:25 76:5
82:19 95:2 99:4,11
101:6 103:14
104:21,25 114:22
117:17 118:6,23,25
119:13 120:19,20
123:6 124:2,19
125:8,21 127:7

132:6 133:10
136:24 139:4,19
140:23 143:11
149:13 150:22
153:8
**old** 19:24
**omit** 141:4
**once** 54:25
**one-page** 124:24
**one-sided** 18:12
**ones** 64:8
**online** 92:8
**opened** 76:2
**opening** 92:18
**openly** 79:25
**opens** 77:5
**opinion** 78:6
**opportunity** 18:14
**opposing** 18:5
**order** 1:17 24:9
51:21 52:17 53:7
57:21 96:24 97:3
98:6 113:6 130:13
130:20 156:11
**orders** 77:9
**organization** 127:12
**organize** 152:2
**organized** 76:2
**organizing** 127:8
**original** 13:10,12
120:8 156:9
**Osteria** 1:8 5:4 16:8
32:18 33:10 35:10
35:14,19,23 36:4
42:2,8,23 44:24
46:17 53:24 55:25
56:15,19 57:2,5
58:15 59:3,7,12,19
59:23 60:12,15 61:5
63:7 102:22 120:21
128:2 134:4
**outcome** 157:19
**outside** 50:23 68:9
128:5
**owed** 28:25 95:13

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

171

103:19,19,23 104:4
153:12,12
**owner** 85:17 86:4,15
86:18
**owners** 120:24
146:17

**P**

**p** 2:2,2 128:24
**p.m** 54:4,7,18 56:12
56:12 71:21,23
106:10 154:13
**pad** 38:10
**page** 59:17 104:13
106:22 108:16,17
108:20 115:21,22
115:23 117:23,24
121:24 127:19
155:5,8,13,17 156:4
158:5
**pages** 102:13 106:20
110:15 155:23
**paid** 26:25 31:8 42:9
47:2,6,10,23 48:3,5
48:23 49:16,22 57:4
57:9 67:22 70:16
71:2 88:23 94:8,13
95:24 104:11,19,23
105:4,15,17,22
106:7 109:6 123:10
123:14,18,19
145:17
**paper** 38:12 136:11
**paragraph** 120:18
123:6 124:3
**Paralegal** 2:14,15
**part** 21:16 28:25 30:5
66:4 67:16 72:8,10
86:25 110:22
128:12 141:25
**participate** 8:2 72:7
72:14
**participated** 146:4
**participates** 77:9
**particular** 84:9,11

**particularly** 131:20
**parties** 3:4 18:11
76:21 157:17
**party** 45:6 107:13,13
109:25 133:25
**passed** 26:15 35:20
35:25
**passport** 16:25
**password** 37:20
68:21,22,23 69:2
106:15
**patch** 51:24
**patience** 53:3
**Patricio** 126:3,15
**pay** 30:19 38:18,24
42:10 88:25 90:15
93:25 95:13 98:17
98:19 103:2 106:4
108:5 109:24
110:16 123:8,22
145:9 148:13
155:23
**paycheck** 40:14
103:10
**paying** 89:5 109:14
**payments** 63:25
**payroll** 115:19
117:12 145:20
**paystub** 57:13,17,21
58:2 92:4 104:13,14
105:19,23 106:9
145:6
**paystubs** 37:24 92:11
102:7 123:7 145:6,9
**pdf** 101:25
**penalty** 6:2
**pending** 7:21
**people** 34:14 64:2
73:19 76:3 78:9,11
78:15,18 83:20
84:11,13,13 93:9
**percent** 9:3,7 39:7,7
68:3,4,5,7 79:8

107:19,20 108:3,4,5
108:6,8,9 109:9,10
109:20 149:15,18
149:20,21 150:6,8,9
150:10,12,12,14
151:5,6,7,9,13
**percentage** 9:4,5
73:22 146:21 150:3
**Perez** 74:8 75:13,14
75:17,20,23 77:18
78:9 113:23 148:20
**perform** 92:25 93:19
**performance** 76:14
118:12
**performed** 91:14
**performing** 50:13
107:14
**perjury** 6:2
**permission** 76:5
119:2
**person** 22:20 28:18
39:11 62:17 66:21
67:23 89:11 127:22
127:24 132:24
133:4,7
**personally** 137:18
143:22 145:16
**Petrosayants** 5:7,10
**Petrosyants** 1:9 4:24
120:24 121:6
**phone** 63:15 69:19,24
70:8,10 83:9 126:10
126:12 128:9
**photo** 70:21
**photographer** 19:19
**photos** 70:20,24
**phrase** 121:25
**physical** 66:19
**physically** 57:10
68:18 143:4
**picture** 44:15 69:25
77:10 88:16 155:19
**pictures** 69:22 70:3,8
70:9,13,19 74:19,22
75:2,9 82:2 119:21

148:24 149:4,8
155:11
**place** 43:16,18,19,25
44:12 56:7,8,11
82:6 101:11 110:12
125:8
**placed** 52:16 115:2
129:20 146:12
**placing** 106:25 114:2
115:5 118:6
**Plaintiff** 1:5,16 4:5
10:8 51:11
**Plaintiff's** 52:15
111:20
**Plaintiffs** 2:3 18:13
70:6 111:25
**plan** 71:14 124:18
130:20
**planner** 71:12
**planning** 149:5
**plate** 80:23
**played** 35:5
**please** 6:16,20 11:13
47:5 52:22 82:23
83:25 88:14 89:14
98:15 103:22 135:9
139:9 140:22
**pleasure** 127:15
**pled** 20:21,25
**plenty** 142:20
**plus** 43:6,8
**point** 30:8 37:19
48:25 65:11,12 66:3
66:8,12
**points** 30:2,4,5,11
49:4,5 64:8,9,13
65:13,14 81:21 87:5
87:10,11 146:23
**policies** 89:17
**policy** 141:15
**pool** 29:19 30:5 64:10
65:21,22 66:8 67:24
72:8,11,12,14,21,22
73:2,5,7,12,24 74:3
74:6,19 75:21 80:4

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

172

80:16 81:5,11 86:25
87:5 89:3,15 91:10
104:11 146:5
149:25 150:4
portion 18:14
position 30:2 40:5
74:14,20 75:5,11
80:21 141:24
positions 30:9
possession 10:13
144:10
possibly 117:14
147:13
posters 44:10,16
155:19
posts 100:21
precertification
110:23
prefer 123:2 139:5
preference 138:21
139:4
preparation 10:3
13:22 14:6
prepare 9:17,19,24
18:4 52:22
prepared 147:12
present 2:12 23:10
76:6 117:17 150:22
presentation 112:20
presented 12:10
130:23 143:9
presenting 136:6
Presumably 86:4
pretrial 124:20
pretty 8:16 52:19
149:13
previously 72:3
131:24
primarily 40:3
principle 143:2,7
print 68:10,14,18
69:13,17 76:20
106:9
printed 105:23
106:12,12 108:24

prior 15:12 48:12,17
134:7
private 148:24
privilege 129:13
privileged 88:12
probably 35:7 116:23
problem 18:18 31:11
34:5 76:9,18,19
152:3
problems 77:24 95:9
152:7,8
procedure 66:20
proceed 18:8,9,16,21
52:17 53:7 110:24
proceeding 5:25
process 53:4 81:16
82:14
produce 69:21 70:4
80:9 144:11
produced 59:8 70:7
80:14 101:13
110:21 115:9
production 16:24
17:9 21:24 23:23
24:22 70:9 89:10
110:23
professional 33:25
134:19
program 27:11
promised 137:24
promoted 39:13
proof 74:18 119:21
proper 33:18
proposed 130:13
protective 51:21
provide 8:3 23:19
24:13 37:15 106:14
114:25 126:21
133:24
provided 14:13 46:6
46:9 58:4 129:2
148:25
providing 135:10
Public 1:19 3:5 4:4,7
154:20 157:9

158:20
pull 57:22
punch 37:6
purchasing 154:9
pursuant 1:17
pursue 143:11,14
153:16
put 7:14 18:10 40:12
45:5 64:8 74:6
puts 7:16
putting 51:13 89:21
137:13

_____

Q

qualifications 140:15
QUEENS 157:6
question 6:21,25 7:3
7:16,18,21,22 11:10
16:3 32:3,4,22
35:17,22 38:21 42:5
47:5 48:16 51:7,13
52:23,24 53:4,10,12
59:16 61:24 62:6
68:13 69:17 73:25
74:11 75:15,16,16
75:17 77:17 78:18
81:7 82:19,23,25
83:13 85:23 86:24
87:2,20 88:4,6,9,14
88:22,23 89:15,20
95:11 96:20 97:15
97:19,23 98:2,4,7,9
98:10,13,13,15
99:25 100:7 106:8,8
110:4 113:22
117:23 122:23
129:7,10,25 132:9
134:23,24 135:4,5,6
135:7 136:13,13
139:9 140:17,17,22
141:18,20 142:21
questions 3:12 5:19
8:4 11:7 17:17
51:17,20 52:14 53:6
73:13,20 78:3,5

89:6 98:11 106:23
107:7 114:16,19,25
120:6,18 133:20,21
154:3,7
quick 91:16 153:24
quicker 6:9
quit 31:19,20
quote 39:13 52:13

_____

R

R 2:2 72:2,2 157:2
racist 139:10
raise 85:3 93:6
105:12,12 139:13
139:17 140:20
raised 123:23,24
rate 21:20 38:18,24
47:9 90:9 103:3
104:24 123:8
Raul 83:23
reached 95:11,25
99:21 100:3
read 17:21 18:4 32:2
32:5 52:22,24 53:4
53:12 88:4,6 100:7
114:21 120:14,17
121:4 141:19,20
reading 108:2
ready 18:8 52:17
real 128:17
realize 128:14,17
149:20
really 50:6 125:24
142:14
reapply 23:18
reason 7:21 8:2,10,24
140:19 153:5 158:5
recall 63:18,19
123:13 126:5
recalling 146:10
receipt 108:24
receive 22:6,21 23:2
24:3,25 31:3 39:8
40:22 57:16,17,21
61:6 62:17 67:17

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

173

72:21 73:8 81:3
85:15 89:23 90:16
90:17 95:2 98:21
105:8 122:15,17,21
122:22
**received** 25:7 28:20
37:19 39:2,3 40:5
41:2,5,16 46:13
57:7,10,13 61:5,10
61:12 62:22 63:5
66:4,8,18,23 67:2
69:11 74:5 75:20
80:17 81:5,8,10,12
87:16 88:25 89:8,20
89:22 90:2 91:13
103:8,12 105:3,5
109:8 115:11
119:10,21,24 120:3
139:13,17 145:9
**receiving** 39:4 83:15
89:2
**recess** 52:9 71:21
101:9 133:14 154:4
**recognition** 62:2
**recognize** 101:19
102:9 107:9 108:18
110:17 112:4,8,10
112:25 113:16
114:7,11 115:12
117:7,9,21 120:12
121:3 124:9,13
125:10 127:20
129:22 130:2,5,24
148:16
**recollection** 7:6,11
104:8 108:25 131:6
**recommendation**
62:2,19
**recommended**
105:11
**record** 7:15,17 18:10
51:10 52:2,7,16
71:18 81:7 83:24
90:10 97:20,22 99:7
101:24 102:8,16

106:19,25 108:15
113:21,25 115:4,20
115:22 118:10,12
118:16 124:12
129:20 133:19
156:8 157:14
**records** 65:18 69:10
70:14 80:3,9,12
81:24 82:5 92:12
101:13 107:5 115:9
145:20 155:20
156:6
**recover** 153:17
**recovery** 138:2
**redacted** 115:9 156:6
**refer** 5:9,10 30:4 94:9
**reference** 147:20
**references** 147:18
**referred** 32:4 52:24
53:12 88:6 111:14
141:20
**referring** 5:3,7,13
12:11 13:3 30:4
43:10 49:5,6 108:20
**refers** 104:4 112:21
**reflect** 90:10 106:19
106:25 108:15
113:15 115:4,20,23
124:12 129:20
**refresh** 104:8 108:25
109:2 125:18 126:3
**refused** 118:17
**refusing** 98:2
**regardless** 45:17
88:10
**register** 76:10
**regular** 54:23 76:2
76:25
**regularly** 90:8
**relate** 51:20
**related** 5:21 12:15
52:14 53:6 59:6
113:15 157:17
**relating** 141:16
**relation** 43:24 50:13

**relationship** 50:18,19
51:5 53:17
**relationships** 145:2
**relevance** 11:4,9,11
**relevant** 11:19 17:18
**relief** 96:20 135:13
135:17
**relying** 153:20
**remains** 95:11
**remember** 10:23
16:13,16,22 19:10
23:9 24:19 25:19
26:4,4 27:19 28:6,9
29:7 30:8 39:4 41:3
41:6 44:11 46:12
47:9,13 58:21,23,24
59:5 61:16 62:4
64:9,11,15,18,21
65:15,17,19 78:15
78:25 84:7,15,25
88:3 125:15,19,19
125:24 130:5 131:3
131:4 145:5,11
**renew** 23:15
**renewal** 23:23 155:10
**rent** 14:14,15
**repeat** 35:17 47:5
53:9
**repeatedly** 123:17
**rephrase** 7:2 42:6
66:6
**replace** 39:21
**report** 76:11 110:16
117:15 155:24
**reported** 39:16 58:11
88:24
**reporter** 1:19 6:13,17
32:3,5 52:25 53:9
53:13 88:7 141:21
154:8 157:8
**reports** 81:24 82:4
**represent** 22:18
44:14 89:7 110:15
111:13,15,24 114:3
114:9 115:8 117:20

118:9 119:7 120:8
130:12 138:12,21
138:25 139:2 145:3
**representation**
111:19 114:11
**representative** 136:9
136:14,17 137:2,3
**representatives**
137:7
**represented** 108:23
125:16 131:24
**representing** 132:11
**Republic** 14:25 15:6
15:25 16:6,9,13
25:12,25
**request** 17:4 22:4
23:25 24:24 70:12
89:13 132:20
**requests** 17:6 155:8
**require** 18:11
**required** 21:19 38:8
72:10,13 73:23 74:5
**requirement** 73:5
**research** 121:14
**researched** 121:11
**reserved** 3:13
**resident** 136:22
**resolution** 95:12
137:18
**resolve** 76:19 95:14
96:2,6,24 97:17
98:23 132:5 134:9
**resolved** 95:5 131:14
**respect** 66:16 142:24
**respective** 3:3
**respond** 17:9 153:2
**responding** 17:12
**response** 85:16 89:14
89:16
**responses** 114:4,10
115:2 155:25
**responsibilities** 29:16
44:25 45:22 46:3
54:9 136:9,16,19
**responsible** 92:15,18

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

174

127:7
**responsive** 17:6
**rest** 136:7 138:16
  139:2
**restaurant** 5:4,20
  15:20,24 16:21
  20:11,13,15 21:14
  21:16 22:12 32:8,16
  34:13 35:15,20,24
  39:10 42:23 43:15
  43:22 44:5 45:8
  49:12 50:23 53:20
  54:7 56:25 58:25
  59:3,10 60:5,16,23
  70:14 72:8 73:20
  74:9,15 75:18 76:14
  79:4,7,16 91:11,14
  92:13,16 95:3,12,23
  99:17,23 100:12,17
  100:22,23 102:24
  107:15 108:10,25
  109:13,14 110:3,5
  110:16 126:8,11,19
  128:3 134:8 138:5
  139:22 140:12,15
  141:9,12 143:16
  144:11 145:12
  146:6 147:5 148:20
**restaurants** 60:13,19
  109:3,5
**restroom** 52:2
**result** 85:12 86:11
  90:8 99:14 146:12
**resume** 36:18
**resumed** 72:3
**retained** 156:13
**retaliation** 143:13
**returned** 17:2
**revenge** 94:3
**review** 10:2,5,11 89:7
  129:24
**reviewed** 145:20
**reward** 50:9 62:16
**right** 17:20 18:13
  37:8 38:15 40:7

44:6,10 45:12 47:19
48:18 50:19 63:9,25
66:9 67:14 73:17,20
74:6,9 77:3,6 78:24
82:12 86:5 88:3,25
90:17 91:2,7,14
92:19 93:15 95:7
103:2,8 108:12
109:18 117:3,8
123:20 132:12
135:22 136:22
139:14 142:5,15
149:20 150:13
151:9
**rights** 143:10
**Rob** 5:8,11,16,19
  86:21
**Rob's** 147:21
**robbed** 122:16,18
  135:19,20
**Robert** 1:9 4:24
  120:24 121:20
**role** 28:16 35:5 39:24
  42:17 49:12 64:10
  146:13
**roles** 28:20 45:17
**romantic** 51:4 53:16
**room** 43:14 50:15
**Rule** 122:2 145:24
**rules** 6:8 7:24 18:10
**ruling** 55:21,22
  129:15,18 152:21
  153:7,9 155:13
**run** 97:22
**runn** 116:19
**runner** 39:12,15 40:2
  45:4 56:23,25 64:21
  64:24 65:2,7,8,12
  66:24 80:21 93:19
  93:20 116:20
  148:19
**runners** 50:16 64:17
  64:20 65:10,13,20
  92:21,23,24 93:14
**Ruthayn** 1:18 4:3,7

157:8,25

_____
**S**
**S** 2:2 155:16 156:3
**S-A-N** 59:2
**S-I-N-A-Y-S-K-A-...**
  125:4
**Sage** 2:8,14
**sames** 83:22
**sampling** 102:6
**San** 59:2,11,23 60:21
**sanctions** 129:15
**satisfy** 95:14,18 96:5
**save** 63:15 69:24
  135:8
**saved** 69:19
**saving** 63:19
**saw** 78:19,20 109:9
  109:17,21 111:4
  127:22 131:4
**saying** 34:3,9,18 66:5
  66:7 70:21 105:5
  118:4 119:16
  122:24 131:2 132:6
  134:22 151:23
**says** 77:10,15,18
  101:20 103:2,23
  104:21 113:23
  116:2,6,6,10,14,19
  116:22 119:14
  122:2 123:7 137:25
  150:9
**schedule** 33:17 54:23
  55:9 56:7,10 60:10
  60:11 93:20
**scheduled** 124:20
  131:18
**scheduling** 130:13,20
  156:11
**school** 25:9,13,21
  26:22 27:11
**schooling** 26:19 27:5
**screen** 44:12 70:7,10
  70:22,24 88:19
  90:11 101:11 105:6

107:2 110:12 114:2
115:5 118:6 125:8
129:21 130:9
155:11
**scroll** 106:21 115:21
**sealing** 3:8
**search** 100:15
**second** 86:8,11,14
  99:5 103:25 104:13
  105:11 116:14
  120:5
**section** 104:15
**Security** 23:7
**see** 68:19 69:15 73:4
  85:20 101:17,20
  103:15 104:21
  111:5 115:15 116:2
  116:5 117:5 118:2
  118:10,14,24 119:9
  119:13,13 122:4
  123:11
**seek** 51:21 138:12,21
**seeking** 101:2
**seen** 44:21 101:21
  111:3,8 117:8 131:3
**selected** 92:25
**selectively** 70:7
**send** 33:12 36:17
  119:23
**sense** 100:25 134:22
**sent** 88:15,16,17
  113:9 134:9
**sentences** 121:3
**separate** 31:15 51:11
  92:11 104:15
  142:10
**separated** 35:13
  100:16
**separately** 60:14
  67:18
**separating** 22:11
**separation** 138:7
**September** 131:8
**serve** 29:17 40:3
**served** 75:13,18

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

175

109:23 111:25
**server** 18:19 39:14
  64:6,6,7,7 66:20
  74:8
**servers** 64:14 65:20
  65:24
**service** 77:22 107:20
  108:4,6 148:9,13,14
  148:16 149:20
**serving** 45:12,15,19
  48:7
**session** 71:23
**set** 85:18 114:10
  157:12,21
**Setting** 68:17
**settings** 46:22
**settlement** 137:17
  147:13
**seven** 64:11,12,22
  108:17 144:5,7
**sexually** 138:17
**Shahmuradyan** 1:9
  4:25 5:13 120:25
**Shalom** 1:18 4:3,7
  157:8,25
**share** 80:18 119:4
**sharing** 90:11 111:10
  130:9
**sheet** 109:23 124:9
  158:2
**sheets** 140:25
**shift** 40:20,23 41:2,6
  54:13,13,19,21,24
  55:6
**shoes** 77:20,21
**short** 52:9 99:6 101:9
  133:14 154:4
**shorthand** 1:19
**shot** 88:19
**shots** 70:7,10,22,25
  155:11
**show** 44:14 111:12
**showed** 109:22,24
  113:4
**showing** 102:5

115:10 117:24
  124:23
**shown** 92:2,3 113:6
**shows** 90:12 103:6
  115:17,24 116:15
**side** 44:2
**sign** 12:14 118:17,25
  138:4,8
**signature** 117:25
  118:15,24 119:15
**signed** 12:7 38:23
  76:15,15 118:4,12
  119:11
**signing** 46:12
**similar** 63:12
**similarly** 1:4
**Simple** 123:23
**Sinayskaya** 125:3
**single** 41:2,6 127:19
**sir** 7:25 13:24 67:11
  80:21
**sit** 76:16 88:9
**situated** 1:4
**six** 41:10,12 90:23
**sixth** 16:17
**SKWRAO** 51:10
**slash** 64:24
**small** 43:20
**social** 23:7 37:13
  100:21
**socialize** 128:5
**socialized** 50:23
**solution** 152:9
**somebody** 72:23
**someway** 127:3
**sooner** 122:22 123:2
**sorry** 35:16 41:19
  47:3,5,21 74:12
  143:13 153:3
**sort** 95:2,12
**sought** 132:23
**sounds** 125:14,23
**SOUTHERN** 1:1
**space** 115:16 117:25
  140:17

**Spanish** 2:13 4:2
**spanned** 7:9
**speak** 12:20 36:21
  86:3,14 100:17
**speaking** 58:14 68:9
  136:12 137:8
**special** 45:14 67:14
  68:9,13,15 69:7
  92:24 93:6,11,15,18
  93:19 104:8,12
  105:17 107:19
  149:16,23 150:4
**specials** 76:8
**specific** 16:12
**specifically** 7:15
  72:20 123:17
**spell** 14:20 26:23
  36:9 83:24
**spelling** 129:3
**spent** 143:22
**spoke** 33:5 79:9,18
  118:20 140:18
**spoken** 32:23 86:18
  147:3
**spreadsheet** 101:25
**ss** 157:5
**stamps** 22:24
**start** 54:2
**started** 27:18 28:4,17
  28:18,23 31:9 35:9
  39:11 40:21 42:7
  46:17 47:14 54:5,22
  55:2 61:24 65:5
  74:19 84:19,21,23
  85:6 102:22 123:22
  148:22
**starting** 35:19,24
**State** 1:20 4:4,8 21:8
  21:25 22:8 157:4,9
**stated** 123:9
**statement** 12:8
**statements** 123:9
  134:13 146:17
**States** 1:1 15:3 19:13
  21:8 26:13,18 27:5

27:14,23 136:23
**stating** 4:8 46:13
  105:8
**station** 43:4
**stations** 43:5,6,10
**status** 144:20 147:21
**stay** 40:10 58:19 99:9
**stayed** 39:15 61:21
  62:8
**staying** 9:21
**steakhouse** 27:24
  28:2,24 29:13,16,20
  29:23
**stepped** 39:23
**STIPULATED** 3:2,7
  3:11
**stipulations** 4:15,16
**stole** 94:6 98:19
  142:4
**stop** 11:21 17:23
  60:21
**stopped** 26:12,14
  66:5
**straight** 44:6
**strain** 144:25
**Street** 4:9 27:24
**strike** 153:6
**stub** 91:13 92:6,7
  106:4
**studies** 26:10
**subject** 5:25 21:14
  51:15 53:6
**subjected** 141:15
**subjects** 5:21
**submitted** 18:12
  21:24 131:7
**Subscribed** 154:18
  158:19
**suffering** 98:20
**sufficient** 95:25
  98:22
**suing** 134:5 143:2,6
  150:12,12
**Suite** 2:5
**summary** 103:10

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

176

110:16 155:23
**summer** 58:23
**Sunday** 56:17
**support** 26:12
**supporting** 20:6
**sure** 4:18 19:10 45:9
47:12 51:16 52:19
59:17 60:4 71:17
74:18 82:24
**sworn** 3:5 4:3,6 72:3
154:18 157:12
158:19
**system** 30:5 37:8,16
37:21,24 38:8,24
57:22,25 65:11
68:10,14,19 69:12
72:22 76:8 77:12
80:22 88:24 92:8
108:24 141:9

**T**

**t** 72:2 128:18,25
155:16 156:3 157:2
157:2
**table** 76:16,18 78:2
80:23
**tables** 46:22 67:12
**take** 6:17 7:20 45:6,8
52:2 56:18 76:10,11
78:4,6 80:22 82:14
90:15 91:16 101:7
122:20,25 127:13
129:24 145:13
149:8 152:10
153:24
**taken** 47:18,24 48:12
48:17 52:9 67:14
70:10 101:9 118:18
133:14 154:4
**talk** 32:24 77:25
85:17 99:2
**talked** 67:12 70:20
86:12
**talking** 48:19 72:20
94:12 117:10

121:19,20
**talks** 149:19 153:4
**task** 127:13
**tax** 38:22 58:12
**taxes** 58:8
**tell** 6:25 15:8 27:17
30:13 36:21 45:3,6
45:8 46:19 56:7,10
57:19 72:18 73:10
76:7,13,19 85:11
87:4,25 89:14 106:6
121:17,21 128:19
137:12
**telling** 35:4 51:19
67:7,25 71:7,9
93:17 106:13 110:2
114:22 152:15
**tells** 77:21,22 104:19
**ten** 47:16 49:7 63:21
123:14,16,22,25
139:13 144:4
**terminate** 35:6
**terminated** 34:24
119:17
**termination** 94:3
119:8,20 141:24
156:8
**testified** 4:10 61:16
61:24 72:4 77:5
89:19 90:4 103:7
123:17 126:2
149:13
**testify** 8:8 78:16
**testifying** 6:3
**testimonies** 131:19
**testimony** 5:24 42:14
55:5,17 75:6 97:10
103:5 105:19
123:13 126:25
133:24 157:14
**text** 36:17 63:11
83:10 88:18 89:4,10
155:11
**thank** 17:8 18:3
32:14 53:3 67:8

76:22,23 81:15
130:3 153:7 154:5
**thanks** 33:12
**theft** 146:17
**thereabouts** 23:14
**thing** 33:25 38:15,17
47:4 67:22 70:23
74:23 95:9 106:6
132:5 151:22
**things** 21:20,21 45:10
65:3 70:13 87:10
93:25 94:2
**think** 8:10 9:7 16:16
33:24 35:22 47:4
59:10 60:3 66:2
101:6 117:14 133:9
144:3,9 152:14
**Third** 6:20
**thought** 31:17
**threated** 141:11
**three** 22:13 28:13
30:8 33:6 36:2 43:6
46:25 52:14 55:3
71:16 74:17 75:4
79:11 91:25 103:18
113:22 150:14
151:15 153:24
**time** 4:16 7:14,14,20
9:21,22 10:21 11:16
11:23 12:5 14:2
15:11,13 16:9 23:18
26:15 30:14 31:22
31:24 33:5,13 35:8
35:12,13,18,20,25
36:7 37:19,23,23
38:7 40:21 41:13
44:24 45:18 49:21
53:24 54:2,2,10
56:18 59:19,24
60:14,15 62:13 63:7
63:14 65:10 67:5
79:9,18 83:12 86:14
86:17 101:7 105:12
114:24 122:21,25
123:4 129:24

130:25 132:16
140:25 148:23
149:8,11 153:4
154:5,13
**times** 10:25 12:2
45:19 55:3 97:14,19
97:23 123:25
129:11 153:2
**timestamp** 106:3
**tip** 29:19 30:5 41:21
41:22 42:3,9,18
47:13,17,25 48:6,11
48:15,16 49:17 50:9
61:14,17,19,25
62:13 64:10 65:21
65:22 66:8,19,22
67:8,17,24 72:7,10
72:14,21,22 73:2,4
73:7 74:3,6 75:20
80:3,16 82:20 86:25
87:2 89:15,22 91:10
104:24 109:20,24
115:9 142:25
145:13 146:5
148:14,15 149:15
150:7 156:6
**tipped** 40:7,10
145:16 153:11
**tipping** 81:16 82:14
**tips** 28:20,24 30:15
40:5,13,22 41:2,16
42:9 48:7,10,23
49:17,22 58:11 61:5
61:9,12,21,21 63:23
64:2,3 66:4,8,13,23
67:12,13,18,23 69:6
69:6,7,8,10 70:15
71:2 72:19,21 73:11
73:23 74:2,5,6
75:20 80:5,5,17,24
81:3,5,8,9,10,12,20
83:15 85:14,15
87:14 89:3,20 94:6
98:18 103:18,19
104:4,4,7 108:5

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

177

115:11 117:15
141:16 146:21
149:25
**title** 28:16 39:9 75:15
130:21
**titles** 29:22
**Toast** 37:8,16,19,21
38:8,24 57:22,25
68:10,14,19 69:13
77:14,16 81:19 82:5
82:7,8 92:7 106:16
108:24 141:8
**today** 5:19,24 7:7
8:13,25 13:17,23
14:6 88:9 97:10,13
123:14 129:11
142:20 144:6,7,15
154:6
**today's** 8:3 9:17,19
12:21 51:15 143:21
**told** 29:5 31:2,3
41:21,22 42:2,3,8
42:14,18 48:15 49:9
49:11 50:6 63:23
68:4,5,6 72:16,23
73:11 86:3,14 87:19
88:10,13 104:7
105:15 106:11
109:21 118:20,23
119:2,22,25 122:20
137:2 146:8 150:6
153:2,3
**top** 93:5 102:18
121:24
**total** 90:15,16 144:8
150:3
**totaling** 103:12
**touch** 38:10
**touches** 51:14
**track** 71:2
**trained** 46:21 47:7
**training** 46:16,19,23
46:24 47:2 48:3,19
48:20
**transcript** 10:11

154:9 157:13
**transcripts** 10:5
**translate** 53:8 74:10
112:9 130:17,18,19
**translated** 112:12
**translation** 130:21
**travel** 16:24 155:9
**treated** 138:11
139:12
**trial** 3:13 147:13
**tried** 69:4 129:11
**true** 74:2 76:24 93:4
93:16 105:10
157:14
**truth** 128:19
**truthful** 8:3,11
**truthfully** 8:8
**try** 134:9
**trying** 17:13,14 98:8
99:5
**turn** 52:20
**twice** 11:3 55:4,7
**two** 11:25 12:5 16:7
26:15 27:9 34:8,8
34:12,15,15,16,22
34:22,23 35:2,11,25
41:14 53:5,19 58:20
60:9,13,14 65:2
77:15 89:6 91:25
102:13 106:20
115:16,23 116:19
151:15 152:14
**two-week** 35:5
**type** 26:19 27:4,10
56:22 70:21
**types** 69:7
**typical** 56:10
**typically** 54:12 103:7

────── U ──────

**Uber** 19:19
**uh** 6:18
**ultimately** 80:17
**understand** 5:5,22
6:3,4,8,25 7:4,5,12

7:18,24 8:19,25 9:3
9:4,6 30:3 38:20
42:5 49:8 56:24
61:23 66:18 69:23
73:25 74:21 75:6
84:3 92:9 96:19
108:3,8 109:16,17
110:2,8 122:23
131:5 136:8,24
138:20 140:16
141:18 144:13
150:11 153:21
**understanding** 22:19
47:17 74:22,25
88:17 109:11
136:15
**understood** 7:3 8:21
31:12 32:14 33:19
47:4,23,24 48:5,10
48:11,16,22 55:5
98:21 106:18
109:20
**unemployment** 21:12
21:19 22:2,6 155:9
**unfortunately** 118:21
**uniform** 75:25
**United** 1:1 15:2
19:13 21:8 26:13,18
27:5,13,23 136:22
**university** 25:23 26:2
**unquote** 39:13
**unusual** 52:7
**upset** 33:19,22
**use** 37:6 43:12,13
133:11
**user** 37:20 106:15
**uses** 76:25
**usual** 4:15 53:25
54:13,15
**usually** 54:10

────── V ──────

**v** 158:4
**vacation** 15:21 34:4
34:16 35:5

**vacations** 33:23 34:2
34:7,9,14,15 149:12
**value** 137:24
**varied** 90:22
**various** 96:19
**verbal** 38:4 83:16
116:17
**verbally** 29:5 30:13
83:6,17
**verbatim** 52:16
**vest** 76:24
**video** 52:20
**violated** 143:16
**violations** 94:9
**VIPs** 78:2
**virtual** 5:25 11:24
12:3
**virtually** 132:25
**visit** 10:18 15:6,9,9
15:17 16:5
**visited** 10:21 15:13
**vocational** 27:10
**voice** 6:12

────── W ──────

**W2** 38:11 58:4,8
**W4** 38:15,22
**wage** 28:25 30:15,20
31:4 42:9,11 47:13
47:25 49:6,17,17,18
49:22 50:8 61:19,25
62:3,13 101:2 123:9
142:25 143:11,14
**wages** 61:17 67:3
70:16 71:2 89:22
91:11
**waiter** 68:22,22
74:23 83:20
**waiters** 50:24 64:13
76:12
**waiting** 6:23 9:21,22
**waitress** 28:19 31:10
150:20,23
**waitress's** 150:25
**waitresses** 64:14

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

178

76:12
**waived** 3:9
**Wall** 27:24
**Walter** 78:23 79:10
  83:22
**Walter's** 78:25
**want** 7:7 17:7,20 18:2
  18:9 51:17,20,24
  52:7 59:16 91:16
  94:20 95:19,20
  96:24 97:2,4 98:17
  98:19,20 119:24
  122:15,17,22
  124:13 132:5 140:5
  140:21 143:10
  147:8,25
**wanted** 8:20 18:15
  81:15
**wasn't** 44:22 49:5
  50:15 61:23 118:21
  121:19 128:16
  139:18 143:4
**way** 38:13 44:6 45:23
  45:25 46:2,3 70:15
  82:20 85:18 86:13
  88:11 90:14 106:22
  109:18 110:8 127:7
  132:3 143:6 145:17
  146:14 157:18
**ways** 138:10
**wear** 75:25
**wears** 76:24,25 77:3
**week** 15:18,19 34:22
  34:22 40:13 41:8,16
  54:25 55:3,7,10,10
  55:11,11 58:14
  79:19 81:11 88:23
  89:20,22,23 90:2,5
  90:7,19,21 91:13,21
  92:4 104:23 117:3
  145:9
**weekly** 57:4
**weeks** 11:25 12:5
  16:7 22:14 31:9
  34:12,15,16 35:2

39:12 41:14 53:20
  91:25,25
**went** 11:17 15:5,9
  25:23 26:20 61:17
  67:24 148:21
**weren't** 46:10
**WhatsApp** 63:12
  83:11 88:18
**WHEREOF** 157:20
**Williams** 14:19
**willing** 137:4
**withdrawing** 142:21
**withdrawn** 16:4
  24:19 41:19 80:2
  92:2
**witness** 17:13 51:6
  97:25 100:6 113:16
  113:19 133:25
  135:10 140:21
  155:2 157:11,15,20
**witness's** 16:24 70:8
  70:10
**witnesses** 113:14
**women** 138:22
**words** 6:16 38:20
**work** 15:22 22:20,21
  22:22 31:17 32:7,10
  32:19,21 33:17 34:6
  40:17 41:8,12 50:6
  50:9,16 54:19,21,24
  56:2,16,18,19,22
  58:15,17 59:11 60:7
  60:16 62:2 64:3
  67:8,9,16 71:2 76:4
  76:4 78:19,21 84:23
  90:17,19 91:4,14,20
  92:25 95:8 102:23
  104:11 107:18
  110:6 117:2 125:21
  133:9 138:17
  140:18 148:21
**worked** 33:13 40:16
  44:22 48:10 50:12
  50:22 53:24 54:12
  54:15 55:6 56:9

58:21 59:24 60:14
  60:15 63:7,9,14,16
  70:15 72:19 74:17
  75:4 82:20 83:20
  84:11 87:12,13,14
  90:5,20,22 91:4
  92:3,12 95:10
  102:24 116:22,23
  126:8,11 128:3
  141:14 146:5
**worker** 19:18 67:4,6
  127:25
**workers'** 22:15,19
**working** 15:19,24
  16:8 18:20 20:8
  28:4,23 30:16 31:9
  31:21,22,24 32:16
  33:3 40:20 42:7
  48:4 50:19 53:25
  54:22 56:15,25 57:2
  57:4 59:12,19,23
  60:16,18,21 75:9
  79:3,7,16 85:14
  102:22 111:6 126:5
  137:8 147:4 148:20
  148:22 149:6
  150:20
**workplace** 128:6
**works** 19:19 139:17
**world** 123:5
**worse** 138:11
**wouldn't** 123:2
**writing** 17:3,20 22:3
  23:24 24:23 29:6
  30:12 38:4 70:11
  83:6,7 87:7,17
  89:12
**written** 46:6 73:4
  128:24
**wrong** 47:4 76:14
  94:2 134:14 136:21
**wrote** 83:9

---

**X**

**X** 1:2,11 155:16

156:3

---

**Y**

**year** 15:11,14 23:8,14
  24:17,18 25:18
  27:20 28:3,5,9 58:5
**year-and-a-half** 26:8
**years** 7:10 15:8 26:7
  26:17 27:18 28:14
  74:17 75:4,8
**yesterday** 133:16
**York** 1:1,20 2:5,5,9
  4:4,8,10 21:8,25
  22:7 120:21,23
  157:4,10

---

**Z**

**Z** 72:2
**Z-O-N-Y** 26:24
**Zony** 26:22 27:3,8,20
**Zoom** 1:18 51:25
**zoomed** 124:12

---

**0**

---

**1**

**1** 44:13,17 155:19
**1,000** 130:23
**1,100** 103:6,12
**1,200** 89:24
**1,300** 89:24
**1.50** 104:24
**1:07** 71:14,21
**1:46** 71:23
**10** 47:23 48:4,6 49:22
  61:17,25 62:14
  103:3 118:7,8 156:7
**10:00** 54:18
**10:05** 1:12
**100** 9:3 39:7 79:8
**10006** 2:5
**101** 155:20
**102** 155:21
**107** 155:22
**11** 62:11 119:5,6
  123:10,19 156:8

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Katherine Fernandez  ---  December 8, 2025

179

| | | | |
|---|---|---|---|
| **11:00** 54:7,18 56:12 | 151:14 155:14 | 108:4,6,9 109:9 | **7** 114:3,6 155:25 |
| **11:30** 54:11,17 | 156:11 | 149:20,21 150:9,10 | **70** 155:11 |
| **110** 155:23 | **18211** 2:9 | 150:12 151:7 | **700** 90:3,7,12 91:6 |
| **111** 155:24 | **19** 119:8 | 155:21 | |
| **11368** 4:10 | **1970** 115:17 116:3 | **3:10** 101:8 | **8** |
| **114** 155:25 | **1993** 14:23 | **30** 84:13 110:15 | **8** 1:12 115:6,7 124:25 |
| **11423** 2:9 | | 155:23 | 156:6 158:4 |
| **115** 156:6 | **2** | **300** 41:7 | **89** 155:11 |
| **117** 156:7 | **2** 101:12,15 124:8 | **311** 125:10 156:10 | |
| **118** 156:7 | 155:20 156:9 | **320** 2:5 | **9** |
| **119** 156:8 | **2.50** 62:16 | **33** 106:22 | **9** 117:18,19 155:15 |
| **12** 120:7,10 127:19 | **2:54** 106:10 | **34** 106:22 | 156:7 |
| 156:9,10 | **20** 63:22 68:5,7 | **38** 58:16 | **9th** 157:21 |
| **12.50** 50:2 61:17,20 | 109:20 126:12 | | |
| 62:4,6,8,14 105:12 | 128:8 149:15,18 | **4** | |
| 123:15,16,22,25 | 150:6,8,12 151:6,13 | **4** 107:3,4 131:8 155:6 | |
| 139:13 | **200** 40:24 89:20 | 155:22 | |
| **12:00** 54:11 | **2018** 15:4 19:6 | **4:00** 54:4,6,18 56:12 | |
| **120** 156:9 | **2019** 23:9,10 27:21 | **4:30** 54:5,6 | |
| **124** 156:9 | 28:5 | **4:40** 133:19 | |
| **125** 156:10 | **2020** 27:19 | **4:45** 54:5 | |
| **127** 156:10 | **2022** 7:9 28:12 47:14 | **40** 58:16 90:19 91:20 | |
| **129** 155:14 156:11 | **2023** 84:24,25 85:4 | **41** 58:16 90:5,8,12,19 | |
| **13** 124:8,10 129:22 | **2024** 15:15 58:5 | 91:6 | |
| 156:9,11 | 123:9 | **44** 155:19 | |
| **130** 156:11 | **2025** 1:12 7:9 10:9 | **45** 2:5 | |
| **14** 108:21 124:24 | 15:12 85:5 105:23 | | |
| 125:9,11 156:10 | 106:10 119:8 127:2 | **5** | |
| **145** 117:2 | 131:8 154:19 | **5** 105:23 106:9 | |
| **145.51** 116:24 117:10 | 157:21 158:4,20 | 110:13,14 155:23 | |
| **15** 47:11,11,22 48:3 | **22** 36:3 155:9,14 | **5:00** 54:5 133:22 | |
| 49:7 62:9 104:24 | **23** 122:2 145:24 | **5:33** 154:13 | |
| 105:4,8,13,15,18,22 | 155:10 | **50** 41:16 | |
| 106:7 123:10,18 | **24** 8:7 15:17,25 | **50-1** 107:6 155:22 | |
| 127:18,21 130:10 | 155:10 | **50-2** 102:7 155:21 | |
| 144:8 156:10 | **25** 16:3,6,10,13 | **53** 117:24 | |
| **15.50** 104:20 | **25cv-4490(AS)(GS)** | **55** 155:14 | |
| **153** 155:15 | 1:6 | **58-35** 4:9 | |
| **16** 129:21,23 156:11 | **26** 14:23 | | |
| **16.50** 104:22 | **28th** 131:16 | **6** | |
| **17** 90:17 155:9 | **29** 123:6 124:3 | **6** 111:13,17 155:24 | |
| **17.07** 90:9,12 91:7 | **2nd** 10:9,15 13:25 | **6-2** 106:21 | |
| **18** 68:3,4 107:19 | | **60** 9:7 | |
| 108:3,5,8 109:10 | **3** | **6E** 4:9 | |
| 130:10,11 151:5,9 | **3** 102:6,11 107:20 | | |
| | | **7** | |