# Exhibit 5

# In the Matter of

Case No.: 1:25cv-4490(AS)(GS)

FERNANDEZ, et al.

v.

BULLDOZER HOSPITALITY GROUP, INC., et al.

---

## Examination of Adrian Montor-Peran

*Tuesday, December 2, 2025*

---



The Little
Reporting
Company

469 Seventh Avenue
12th Floor
New York, NY 10018
tel: 646-650-5055
www.littlereporting.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X

KATHERINE FERNANDEZ, on behalf
of herself and others
similarly situated,

                    Plaintiff,

                              Case No.:
                              :25cv-4490(AS)(GS)

          -against-

BULLDOZER HOSPITALITY GROUP,
INC., D/B/A/ OSTERIA LA BAIA,
ROBERT PETROSYANTS and
MARIANNA SHAHMURADYAN,

                    Defendants.
----------------------------------------X

                    December 2, 2025
                    10:14 a.m.

     Examination of PLAINTIFF, ADRIAN MONTOR-PERAN,

held pursuant to Notice and Court Order, held

via Zoom conference, before Ruthayn Shalom, a

shorthand Reporter and Notary Public within and

for the State of New York.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

2

2      A P P E A R A N C E S :

3              JOSEPH & KIRSCHENBAUM LLP
               Attorneys for Plaintiffs
4              KATHERINE FERNANDEZ, JAVIER MOLINA,
               and ADRIAN MONTOR-PERAN
5              45 Broadway, Suite 320
               New York, New York 10006
6              BY: LUCAS BUZZARD, ESQ.
               lucas@jk-llp.com
7

8              SAGE LEGAL LLC
               Attorneys for Defendants
9              18211 Jamaica Avenue
               Jamaica, New York 11423
10             BY: EMANUEL KATAEV, ESQ.
               emanuel@sagelegal.nyc
11

12
       ALSO PRESENT:
13     Alex Herrera-Schmidt, Spanish interpreter

14     Alivia Cooney, Paralegal - Sage Legal

15

16

17

18

19

20

21

22

23

24

25

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

3

2          IT IS HEREBY STIPULATED AND AGREED, by

3    and between the attorneys for the respective

4    parties hereto, that this examination may be

5    sworn to before any Notary Public.

6

7          IT IS FURTHER STIPULATED AND AGREED that

8    the sealing and filing of the said examination

9    shall be waived.

10

11          IT IS FURTHER STIPULATED AND AGREED that

12    all objections to questions except as to form

13    shall be reserved for trial.

14

15

16

17

18

19

20

21

22

23

24

25

4

1                     A. Montor-Peran

2                ALEX HERRERA-SCHMIDT, a Spanish

3       Interpreter, was duly sworn by Ruthayn Shalom,

4       a Notary Public of the State of New York.

5                ADRIAN MONTOR-PERAN, a Plaintiff

6       herein, having been first duly sworn through the

7       Interpreter by Ruthayn Shalom, a Notary Public of

8       the State of New York, and stating his address as

9       3523 109th Street, Queens New York, was examined

10      and testified through the interpreter as follows:

11      EXAMINATION BY

12      MR. KATAEV:

13                MR. KATAEV:  Let the record reflect that

14           his hand went down during the oath.

15                Before we begin I want to put an agreement

16           on the record that we are using the usual

17           federal stips.  The record of those usual

18           federal stips are that one, filing, sealing and

19           certification is waived.  Two, objections as to

20           form are reserved for trial and on that point,

21           conduct in depositions is covered in the

22           district judge's rules and this particular

23           judge only allows for objections be limited to

24           objection form.  The examination may be sworn

25           to before any notary public and a copy of the

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

5

1                     A. Montor-Peran

2          transcript be sent to the attorney representing

3          the witness.

4               Are these usual federal stips acceptable?

5               MR. BUZZARD:  They are with the exception

6          I reserve my right to object to any questions

7          that go beyond the bounds of this deposition

8          and any objections that attempt to seek into

9          attorney/client privilege communications.

10              MR. KATAEV:  Now we will begin

11         translating.

12         Q    Is it okay if I call you Adrian?

13              MR. BUZZARD:  Adrian, can you hear us?

14         A    Yes.

15              MR. BUZZARD:  You have to respond when

16         with someone asks you a question.

17         A    Yes.

18         Q    Sir, is it okay if I call you Adrian?

19         A    Yes.

20         Q    Good morning, Adrian.  My name is Emanuel

21    Kataev.  I'm the attorney representing the

22    Defendants in this case.  The Defendants in this

23    case are Bulldozer Hospitality Group, Inc., Robert

24    Petrosyants and Marianna Shahmuradyan.

25         A    Yes.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

6

1                        A. Montor-Peran

2            Q    Are these names familiar to you?

3            A    I know Robert, the owner.

4            Q    Do you know who or what Bulldozer is?

5            A    No.  His face, but I never knew his name.

6            Q    What about Marianna, do you know who that

7       is?

8            A    I think it's his wife.

9            Q    Okay.  In this case you're suing your

10      employer; is that right?

11           A    Yes.

12           Q    What is your employer's name?

13           A    Osteria La Baia and Robert, that's a

14      restaurant.

15           Q    I'll be referring to Bulldozer as the

16      restaurant; do you understand that?

17           A    Yes, okay.

18           Q    I'll be referring to Mr. Petrosyants as

19      Rob; do you understand?

20           A    Ah huh.

21           Q    I'll be referring to Ms. Shad as Marianna,

22      okay?  We need an answer?

23           A    Answer to what?

24           Q    I want to confirm that you understand I'll

25      be referring to Ms. Shad as Marianna; do you

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

7

1                        A. Montor-Peran

2        understand that?

3            A    Of course.

4            Q    I will asking you and you will be

5        answering questions today about yourself, the

6        restaurant, Rob, Marianna, your claims against the

7        Defendants and other related subjects; do you

8        understand that?

9            A    Yes.

10           Q    Your testimony today is subject to the

11       same oath and same penalty of perjury as if you were

12       testifying in open court; do you understand that?

13                    Let the record reflect that it's a

14       repeated pattern of the witness not answering

15       questions.

16                    Adrian, please answer the question.

17           MR. BUZZARD:  Adrian, can you hear us?

18           A    Yes.

19           MR. BUZZARD:  You have been asked a

20           question a number of times.  Can you answer the

21           question?  Can you repeat the question for him.

22           Q    I'll repeat it.

23                    Adrian, your testimony is subject to

24       the same oath and same penalty of perjury as if you

25       were testifying in open court; do you understand

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

8

                         A. Montor-Peran

1

2      that?

3           A    Ah huh.

4           Q    We need a verbal answer because the word

5      ah huh can be misunderstood in the record.

6                     Is it yes, no or something else?

7           A    Yes.

8           Q    Have you ever been deposed before or gone

9      through a deposition like this?

10          A    No.

11          Q    I'm going to go over some ground rules for

12     you to understand so that we can have an effective

13     and efficient deposition, okay?

14          A    Yes, okay.

15          Q    Number one, keep your voice loud and clear

16     for the court reporter.  I notice your voice goes

17     down when you're answering.  Speak up so the court

18     reporter and interpreter can hear you; do you

19     understand that?

20          A    Yes.  Okay, yes.

21          Q    Two, please answer in words, no body

22     gestures or mumbling, okay?

23          A    Okay, yes.

24          Q    Third, you have been doing a good job at

25     this.  Let me finish my question before answering

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

9

1              A. Montor-Peran

2     and I will give you the same courtesy.

3          A    Okay.

4          Q    If you do not understand the question,

5     tell me and I will rephrase it.  If you answer the

6     question, I will assume that you understood it; do

7     you understand that?

8          A    Yes.

9          Q    We are looking for your best recollection

10    of events today.  My understanding is that your

11    employment spanned a few years.  While I don't want

12    you to guess at answers, I want you to understand

13    that even if your memory is not crystal clear, I'm

14    still entitled to your best recollection of what

15    happened; do you understand that?

16         A    Okay, yes.

17         Q    We can take a break any time you need to

18    to use the bathroom or for any other purpose except

19    if there is a question pending, I need you to answer

20    that question first and we can take a break, okay?

21         A    Yes okay.

22         Q    Do you understand all these ground rules?

23         A    Yes.

24         Q    Is there any reason you cannot participate

25    in today's deposition and provide truthful answers

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

10

                        A. Montor-Peran

1

2   to questions?

3        A    No, I'm fine.

4        Q    Have you consumed any drugs, alcohol or

5   medication in the last 24 hours that will affect

6   your ability to testify truthfully?

7        A    No.

8        Q    Is there any reason you can think of today

9   as you sit here why you cannot give truthful answers

10  today?

11       A    No.

12       Q    We have an interpreter today at the

13  request of your attorneys.  Do you need an

14  interpreter to understand the questions asked of you

15  in English?

16       A    Yes.

17       Q    How long have you resided in the United?

18  States?

19       A    Eight years.

20       Q    Have you taken any course of study or

21  taken any steps to learn the English language while

22  you were here?

23       A    I understand it and I speak a little, but

24  for a conversation like this not very good.

25       Q    You're name as listed in this case is

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

11

1                    A. Montor-Peran

2     Adrian Montor-Peran; is that correct?

3          A    Yes.

4          Q    When you first started in your employment

5     at Osteria La Baia at the restaurant, you listed

6     your last name as Teran, T-E-R-A-N; is that correct?

7          A    Yes.

8          Q    Why did you list your name in the

9     restaurant as Teran when your name in this case is

10    listed Peran with a P?

11         A    P, no.

12         Q    So if I understand your testimony

13    correctly right now, you're telling me your last

14    name is actually spelled with a T, Teran, T-E-R-A-N,

15    correct?

16         A    Yes, T, yes.

17         Q    Are there any other names that you go by?

18         A    No, just my real name.

19         Q    You prepared for today's deposition,

20    correct?  Do you need us to repeat the question,

21    Adrian?

22                    The last question I asked which I

23    didn't get an answer to, you prepared for today's

24    deposition, correct?

25         A    Yes.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

12

A. Montor-Peran

1

2      Q    How did you prepare for the deposition?

3      A    Well...

4      Q    How did you prepare for today's

5  deposition?

6      A    With the orientation I got yesterday and

7  today.

8      Q    Who was the orientation with?

9      A    With the lawyer when they asked me

10  questions about the situation.

11      Q    Adrian, when you're answering questions

12  about how you prepared for today's deposition and I

13  have a few more, please don't provide any answer

14  disclosing the actual discussions you had between

15  you and your attorney, okay?

16      A    Okay.

17      Q    With that clarification in mind, who was

18  present during the orientation yesterday?

19      A    Who was --

20      Q    Correct.  Who was present, who else was

21  present?

22      A    A woman call Kathy, Katie.

23      Q    Do you know if that woman is an attorney

24  or not an attorney?

25      A    She is also suing.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

13

1                    A. Montor-Peran

2          Q    Okay.  The person that was with you was

3     Katherine Fernandez, correct?

4          A    Just that.

5          Q    Okay.  If I understand correctly during

6     your orientation when you were preparing for your

7     deposition, your attorney was present and Katherine

8     Fernandez was present, correct?

9          A    Yes.

10         Q    Besides Katherine and the attorney, was

11    anyone else present yesterday when you prepared for

12    the deposition?

13         A    No.

14         Q    You also said that you had an orientation

15    today, right?

16         A    Yes.

17         Q    Who was present during today's

18    orientation?

19         A    Right now it was just me.  I'm the only

20    one.

21         Q    Okay.  Where are you located right now?

22         A    My house.

23         Q    In Corona?

24         A    Yes.

25         Q    In Corona, correct?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

14

A. Montor-Peran

1

2      A     Yes.  Corona, Queens, yes.

3      Q     When you prepared for the deposition

4      yesterday, how did you communicate with

5      Ms. Fernandez and your attorneys?  Was it in person,

6      was it by phone, was it by virtual meeting or some

7      other way?

8      A     On the phone.

9      Q     You used your cellphone to make that call?

10     A     Yes.

11     Q     What is your cellphone number?

12     A     (929)507-4523.

13     Q     Today's orientation, was it also by phone

14     or a different way?

15     A     I'm using my phone right now.

16     Q     So I understand because I asked you about

17     preparation for today's deposition, you told me

18     about preparation you did yesterday and now you're

19     referring to the preparation today as this

20     deposition, did you have a separate conversation

21     before this deposition to prepare for today's

22     deposition today?

23     A     Just now.

24     Q     If I understand you correctly, you only

25     prepared with Ms. Fernandez and your attorney just

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

15

1                    A. Montor-Peran

2     once, correct?

3          A    Yes.

4          Q    Yesterday's orientation, how long did it

5     last?

6          A    I think almost two hours.

7          Q    When did it start?

8          A    Around 12:00 p.m.

9          Q    During your preparation session yesterday

10    did you review any documents?

11         A    No.

12         Q    Have you ever signed any affidavit,

13    statement, declaration or any other document under

14    oath concerning this case?

15         A    First time when I got together for the

16    lawsuit there was a document.

17         Q    Do you know how many pages that document

18    was?

19         A    Just one.

20         Q    Other than that one document you signed,

21    was there any other affidavit or declaration that

22    you signed?

23         A    No.

24         Q    Are you aware of any other employees at

25    Osteria La Baia who signed any affidavit, statement,

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

16

1                    A. Montor-Peran

2      declaration or any other document under oath

3      concerning their employment at the restaurant?

4           A    No.

5           Q    During yesterday's preparation session or

6      orientation as you referred to it which attorney was

7      present?

8           A    Andre.

9                THE INTERPRETER:  I don't understand.

10          Q    Okay, I'll ask the question.

11                    During the time that you prepared for

12     the deposition yesterday with Katherine, was

13     attorney Joseph Nussbaum present?

14          A    Yes.

15          Q    You also said Andre was present.  Who was

16     that?

17          A    I think the secretary, but excuse me

18     Joseph.

19          Q    Are you saying that Andre was not there

20     and it was really Joseph?

21          A    Yes.

22          Q    Did you speak to anyone other than Joseph

23     or Katherine about today's deposition?

24          A    Yes.

25          Q    Did you speak to anyone other than your

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

17

1                    A. Montor-Peran

2    attorney and Ms. Fernandez about today's deposition?

3         A    No.

4         Q    Have you ever seen the complaint that was

5    filed in this case?

6         A    No.

7         Q    Have you had any conversations with anyone

8    about your case against the restaurant in general?

9              THE INTERPRETER:  I couldn't understand

10        that.

11        Q    Have you had any conversation with anyone

12   about your case at the restaurant in general?

13        A    No.

14        Q    The address that you live in in Corona, do

15   you rent it or own it?

16        A    I rent.

17        Q    Who do you live with?

18        A    Alone.

19        Q    Sorry, I missed that.

20        A    Alone.

21        Q    What is your date of birth?

22        A    March 5, '81.

23             MR. KATAEV:  Off the record.

24        Q    Where were you born, Adrian?

25        A    Where was I born?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

18

 1              A. Montor-Peran

 2        Q    Yes.  Where were you born, Adrian?

 3              Adrian, would you be kind enough to

 4   answer the question?

 5        A    Mexico.

 6        Q    Since you arrived in the United States

 7   eight years ago, have you ever gone back to visit

 8   Mexico?

 9        A    No.

10        Q    Since you arrived to the United States

11   eight years ago, have you visited any other country

12   outside of the United States?

13        A    No.

14        Q    When you arrived to the United States

15   eight years ago, what state of the United States of

16   America did you come in from?

17             MR. BUZZARD:  Objection.  I think we have

18        gone far enough down this road.

19             Adrian, I'm going to instruct you not to

20        answer anymore questions about entry into the

21        United States which is completely irrelevant to

22        this lawsuit.

23             MR. KATAEV:  Let's go off the record.  I

24        will be sending an email to the judge so we can

25        get direction on this.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

19

1              A. Montor-Peran

2          MR. BUZZARD:  If you want to go down this

3      road knock yourself out.

4          MR. KATAEV:  I'm entitled to ask him these

5      questions.  I'm going to knock myself out.

6      Let's mark the deposition transcript --

7          MR. BUZZARD:  Okay, I will allow him to

8      answer this one question.  If you ask him

9      anything else about his immigration status or

10     about his entry into this country I'm cutting

11     it off.  He can answer which state he entered

12     the country into.

13         MR. KATAEV:  Let's go off the record.

14  (Whereupon, an off-the-record discussion was held.)

15         MR. KATAEV:  Counsel for the Plaintiffs

16     and Defendants had an off-the-record

17     conversation and we conferred to resolve this

18     dispute.  I'm going to rephrase the question.

19  BY MR. KATAEV:

20     Q    Adrian, when you first entered the United

21  States of America, did you enter into New York or a

22  different state?

23     A    New York.

24     Q    Ever since entering the United States of

25  America in New York, have you ever left the State of

20

1                    A. Montor-Peran

2      New York at any time?

3          A    No.

4          Q    I know you said you live alone.  Are you

5      married, Adrian?  Would you be kind enough to answer

6      the question?

7          A    No, I'm single.

8          Q    You have never been married, correct?

9          A    Yes.

10         Q    Where were you married?

11         A    I haven't been married.

12         Q    Do you have any children?

13         A    No.

14         Q    Have you ever been arrested?

15         A    No.

16         Q    You understand that you're a plaintiff in

17     this lawsuit, correct?

18         A    Yes.

19         Q    Other than being a plaintiff in this

20     lawsuit, were you ever part of any other lawsuit?

21         A    I had one five years ago.

22         Q    What was that lawsuit about?

23         A    For racism.

24         Q    You had an attorney in that lawsuit?

25         A    Yes.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

21

1                      A. Montor-Peran

2          Q     Was it with a nonprofit like Make The Road

3     or did you find your own attorney?

4          A     An organization with lawyer's offices.

5          Q     Okay.  To your knowledge did that lawsuit

6     get resolved by settlement or something else?

7          A     It was resolved.

8          Q     Who was your attorney in that case?

9          A     I don't remember his name, but I think a

10    person from the office.

11         Q     Is it the same attorney that's

12    representing you in this case?

13         A     No.

14         Q     The attorneys in the prior case are not

15    part of the same firm as the attorneys in this case,

16    are they?

17         A     Different.

18         Q     How did you find those attorneys in the

19    prior case?

20         A     A friend that worked in the same

21    restaurant recommended them.

22         Q     On what basis were you discriminated

23    against in the prior case?

24         A     They humiliated me, they yelled at me,

25    they insulted me, all of that.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

22

 1                     A. Montor-Peran

 2          Q    Because of what?  Was it because of your

 3     race, national origin, religion, something else?

 4          A    Yes.

 5          Q    All of the above or one of those?

 6          A    Just one.

 7          Q    Which one?

 8          A    Just the restaurant.

 9          Q    What was the name of the restaurant?

10          A    It's a steakhouse called Seafire Grill.

11          Q    Where is it located?

12          A    48th Street between Lexington and Third

13     Avenue.

14          Q    Do you remember if there was a lawsuit

15     filed in that case?

16          A    No.

17          Q    It was resolved after your attorneys sent

18     a demand letter?

19          A    Yes.

20          Q    You didn't do any deposition in that case

21     like you're doing here, right?

22          A    No.

23          Q    You don't remember seeing any complaint

24     that was filed with any court in that prior case,

25     right?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

23

                           A. Montor-Peran

1

2          A    I went to the lawyer and they filed the

3     case, I did the lawsuit and that was it.  I never

4     had a conversation like today or Zoom, I never did

5     that.

6          Q    In from prior lawsuit other than

7     discrimination or harassment, did you make any

8     complaint about the way you were paid?

9          A    They didn't pay me the hours and they

10    discriminated the people that worked there.

11         Q    Without disclosing what you said with your

12    prior attorneys, when you filed that case against

13    Seafire Grill, you learned about the proper rules to

14    pay people, correct?

15              MR. BUZZARD:  Objection to form.

16         A    Yes.

17         Q    Have you ever filed any complaint against

18    any employer other than Seafire Grill and this case?

19         A    No.

20         Q    Have you ever filed any complaint against

21    any employer in the Department of Labor whether it's

22    the state or the federal?

23         A    No.

24         Q    Did you ever speak with any agent of the

25    United States or New York State Department of Labor

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

24

1                       A. Montor-Peran

2        about your employment as part of an investigation

3        that you did not file a complaint with?

4              A    No.

5              Q    Are you familiar with the administrative

6        agency called the EEOC?

7              A    No.

8              Q    To your knowledge, you never filed any

9        charge of discrimination with the EEOC, correct?

10                        I saw you shake your head.  We need a

11       verbal answer.

12             A    No.

13             Q    Have you ever filed for unemployment?

14             A    No.

15             Q    Have you ever filed for workers'

16       compensation benefits?

17             A    No.

18             Q    Do you currently obtain any government

19       benefits?

20             A    No.

21             Q    Do you get food stamps?

22             A    No.

23             Q    Have you ever received food stamps in the

24       past?

25             A    No.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

25

1                    A. Montor-Peran

2          Q    Do you currently have any form of health

3     insurance?

4          A    I have help from the government, NYC Care.

5          Q    When did you first obtain that benefit?

6          A    A few years ago.

7          Q    When you applied for those benefits, you

8     had to fill out an application, correct?

9          A    Yes.

10         Q    In that application it asks you for

11    information about your income, correct?

12         A    Yes.

13         Q    Do you receive any form of housing

14    assistance?

15         A    No.

16         Q    Do you receive any form of food

17    assistance?

18         A    No.

19         Q    Do you receive any form of educational

20    assistance?

21         A    No.

22         Q    For each of those benefits; housing, food

23    and education, have you ever received those benefits

24    in the past?

25         A    No.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

26

1                    A. Montor-Peran

2        Q     In Mexico did you go to school?

3        A     Yes.

4        Q     Did you attend high school in Mexico?

5              Let the record reflect the witness

6    walked away.  Let the record reflect the witness has

7    returned.

8              Do you need me to repeat the

9    question?

10       A     Tell me.

11       Q     Did you attend high school in Mexico?

12       A     Yes, I finished.

13       Q     When did you graduate?

14       A     Ten years ago.

15       Q     Okay.  So if I understand correctly, two

16   years after you graduated high school you came to

17   the United States, correct?

18       A     Yes.

19       Q     Is it fair to say you did not go to

20   college after graduating high school in Mexico?

21       A     No.

22       Q     Did you have any education here in the

23   United States of America?

24       A     No.

25       Q     Did you go to any vocational school or

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

27

1                      A. Montor-Peran

2      apprenticeship program?

3           A    No.

4           Q    Did you go to any culinary classes?

5           A    No.

6           Q    When you first arrived to the United

7      States when did you first get a job?

8           A    In New York.

9           Q    Where in New York did you work?

10          A    Manhattan.

11          Q    We are getting closer.  Where in Manhattan

12     did you work?

13          A    Midtown.

14          Q    Did you work in a restaurant in midtown?

15          A    Yes.

16          Q    What was the name of the restaurant?

17          A    I worked in many restaurants, different

18     restaurants.  I moved around a lot.

19          Q    I want you to start and tell me the first

20     restaurant you ever worked at here in the United

21     States of America, in New York, in Manhattan, in

22     midtown?

23          A    The little I remember an Italian

24     restaurant, Seafire Grill, Patsy's Pizzeria.

25          Q    If I understand correctly, you remember

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

28

1                    A. Montor-Peran

2        working at an Italian restaurant, Seafire Grill

3        which you talked about before and a pizzeria,

4        correct; is that right?

5            A    I worked in various restaurants.  I worked

6        in many restaurants.

7            Q    Let's focus on the Italian restaurant

8        first.  Is that the first restaurant you ever worked

9        at?

10           A    Yes.

11           Q    How long did you work there?

12           A    One year and another restaurant two years.

13       Not a lot of time.

14           Q    If I understand correctly, you worked at

15       the Italian restaurant for one year and the next

16       restaurant for two years; is that right?

17           A    Yes.

18           Q    The restaurant that you worked at for two

19       years, was that Seafire Grill?

20           A    Three years.

21           Q    Which restaurant did you work at for two

22       years?

23           A    Patsy's Pizzeria.

24           Q    Other than the Italian restaurant, the

25       pizzeria and Seafire Grill and this restaurant,

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

29

1                      A. Montor-Peran

2      Osteria La Baia, did you work for any other

3      restaurants?

4           A    Yes, I had.  Like I said, I worked at

5      different restaurants.

6           Q    Can you identify which other restaurants

7      you worked at?

8           A    French restaurant.

9           Q    Any other restaurant?

10               Let the record reflect the witness is

11      thinking.

12           A    Steakhouse.  I don't remember the name.

13           Q    Other than the French restaurant and the

14      steakhouse, were there any other restaurants that

15      you worked at?

16           A    Osteria La Baia.  I worked there for a

17      month.

18           Q    What was the place you worked at right

19      before Osteria La Baia?

20           A    I worked at a restaurant called -- I

21      forget the name.  I worked there for two years.

22           Q    Is it fair to say that your entire working

23      career has only been working at restaurants, you

24      never worked somewhere outside of restaurants?

25           A    Just restaurants.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

30

1                    A. Montor-Peran

2        Q    In all of the restaurants you worked at

3    did you ever work in the kitchen?

4        A    No.

5        Q    What were the various positions you worked

6    at in all of the restaurants you worked in?

7        A    Busboy.

8        Q    Every single restaurant you worked at you

9    were a busboy, correct?

10        A    Yes.

11        Q    And what was your job as a busboy?  What

12    did you do at all these restaurants?

13        A    Fine.

14            MR. KATAEV:  Let the record reflect the

15        witness walked away again.  We are going to

16        wait for him to come back.

17        Q    Adrian, is there any reason you can't sit

18    for the deposition right now?

19        A    Sorry.

20        Q    Is everything okay?

21        A    Yes.

22        Q    I need your undivided attention for the

23    deposition.  Can I have that?

24        A    Yes, of course.

25        Q    If you need to take a break, you can ask

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

31

1                      A. Montor-Peran

2    for a break to do something, okay?  Please don't

3    stand up in the middle of a deposition and leave.

4        A    Okay.

5            MR. KATAEV:  Can we have the last question

6        read back about -- nevermind.

7        Q    In all of the other restaurants you worked

8    other than Osteria La Baia, can you describe what

9    your duties were as a busboy; what is it you did?

10       A    Help the waiters clean tables, all of

11   that.

12       Q    You were serving customers, correct?

13       A    Yes.

14       Q    Is it fair to say that in all of the

15   restaurants you work as a busboy you received some

16   form of tips?

17       A    Yes.

18       Q    In all of other restaurants that you

19   worked at other than Osteria La Baia, was there ever

20   a tip pool?

21       A    Yes, a tip pool.

22       Q    That existed in every single restaurant

23   you worked at or in only some of them?

24       A    All of them.

25       Q    Can you explain generally how a tip pool

32

                        A. Montor-Peran

1
2       works?
3           A    The busboys takes 50 percent of the tip
4       and the waiters take 100 percent of the tip.
5           Q    That's the way it worked in every single
6       restaurant you worked in or was it different for
7       each restaurant you worked at?
8           A    All of them.
9           Q    In all of the other restaurants that you
10      worked at other than Osteria La Baia, did you ever
11      get a special notice in writing that says you're
12      being paid a tip minimum wage and there is tip
13      credit?
14               THE INTERPRETER:  Could you read that
15          back?
16          Q    In all of the other restaurants you worked
17      in other than Osteria La Baia, did you ever receive
18      a written notice telling you that you're being paid
19      less than a minimum wage because of the tip credit?
20          A    No.
21          Q    Do you remember if you were being paid
22      less than the minimum wage at all of the restaurants
23      other than Osteria La Baia?
24          A    Yes, they paid less.
25          Q    Do you know why they paid less?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

33

1                    A. Montor-Peran

2        A    Supposed to because busboys make a smaller

3    percentage of the tip.

4        Q    Did you understand that you were being

5    paid less than the regular minimum wage because you

6    received tips?

7        A    Yes.

8        Q    You understood that because your former

9    employers at those other restaurants told you,

10   correct?

11       A    Yes.

12       Q    Did they tell you verbally, in writing or

13   both?

14       A    Verbally.

15       Q    Okay.  Now as I understand it you're a

16   career veteran in working at restaurants because

17   you've worked at approximately six, seven

18   restaurants in your eight year career; is that

19   right?

20       A    Yes.

21       Q    And is it fair to say that in each and

22   every restaurant you worked in you were told about

23   the tip credit?

24            MR. BUZZARD:  Objection to form. You can

25            answer.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

34

A. Montor-Peran

1

2          A    Yes.

3          Q    Now how did your employment at all of

4     these other restaurants end?  If you can by way of

5     example tell me for restaurant one I quit, for

6     restaurant two I found a better job, for restaurant

7     three they terminated me.  Can you walk me through

8     the prior restaurants and tell me how you ended up

9     leaving there to the best of your memory?

10         A    They never fired me.  I left on my own,

11    every restaurant.

12         Q    Why is it that you left from one

13    restaurant to the other?  What would be the reason

14    for that?

15         A    Sometimes it wasn't busy and I didn't make

16    money.  Sometimes the job was complicated, there was

17    a lot of pressure.

18         Q    When did you first start working at

19    Osteria La Baia?

20         A    2024.

21         Q    Do you remember what month?

22         A    June, June.  I was left on December 1st.

23         Q    Of 2024?

24         A    Yes.

25         Q    How did you get the job at Osteria La

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

35

1                    A. Montor-Peran

2    Baia?

3         A    A friend recommended me.

4         Q    What is your friend's name?

5         A    I think she's also in the lawsuit.

6    Patricia Mulina.

7         Q    Was Patricia Mulina working at Osteria La

8    Baia when she recommended the job for you there?

9         A    Yes.

10        Q    What is or was her role at the restaurant?

11        A    Same, busboy.

12        Q    Is Patricia Mulina a male or female?

13        A    Male.

14        Q    When you came to Osteria La Baia at the

15   recommendation of Patricia Mulina, you met with the

16   manager, Yanos, right?

17        A    Yes.

18        Q    He's the one who hired you, correct?

19        A    Yes.

20        Q    Just like all the other restaurants that

21   you worked at, he also told you about the tip

22   credit, right?

23        A    Yes.

24        Q    After Osteria La Baia -- withdrawn.

25             After you stopped working at Osteria

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

36

1                        A. Montor-Peran

2      La Baia in December of 2024 where did you go next?

3            A    Working at Amber Steakhouse.

4            Q    You're no longer working there?

5            A    I still work there part time three days.

6            Q    Why are you working at Amber part time

7      three days?  Do you work somewhere else part time?

8            A    No.

9            Q    When you were working at Osteria La Baia

10     from June of '22 until December of '24, did you work

11     anywhere else at the same time?

12           A    No.

13           Q    You're still working at Amber, right?

14           A    Yes.

15           Q    Were you ever fired from any of your jobs?

16           A    No.

17           Q    Were you ever asked to resign from any

18     job?

19           A    No.

20           Q    Were there ever periods in your life where

21     you were not working?

22           A    January, February, March of 2025.

23           Q    Why were you not working during that time

24     period?

25           A    I had a knee injury.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

37

1                      A. Montor-Peran

2          Q    Are you okay?

3          A    A little more or less.

4          Q    Are you able to go back to work now?

5          A    Yes.

6          Q    Do you have a resume where you listed all

7     the restaurants you worked at?

8          A    Yes.

9          Q    I'm going to ask your attorney in a formal

10    legal document to have you produce that information.

11    I will follow up for it in writing.  Please keep it

12    and when they ask you for it please give it, okay?

13                      (Counsel Request.)

14         A    Okay.

15         Q    Other than a resume do you have any

16    documents from your past jobs?

17         A    No.  No.

18         Q    Do you have any documents from Osteria La

19    Baia?

20         A    Like what documents?

21         Q    Any documents from Osteria La Baia,

22    anything at all?

23         A    Checks they paid me?

24         Q    Yes.

25         A    Yes, I do.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

38

             A. Montor-Peran

1

2      Q    Other than the checks they paid you, the

3      paystubs, I'm assuming, do you have any other

4      documents from Osteria La Baia?

5      A    No.

6      Q    I'm going to follow up with your attorney

7      in writing asking in a formal document for your

8      attorney to give me those paystubs that you have.

9      Please keep them and at the right time your attorney

10     will ask you for them, okay?

11               (Counsel Request.)

12     A    Oh, I have the documents of checks from

13     the restaurants.

14     Q    Great.  During the time that you worked at

15     Osteria La Baia, did you ever take with your phone

16     any photos at the restaurant of anything?

17     A    No.

18     Q    You first started working at the

19     restaurant, Osteria La Baia in June of 2022,

20     correct?

21     A    No, 2024.

22     Q    Okay.  You worked from June of 2024 until

23     December of '24, correct?

24     A    Yes.

25     Q    When you first started working there, did

39

1                   A. Montor-Peran

2    they have you fill out any employment application?

3         A    Yes.  Everything was through an

4    application.

5         Q    That was the Toast application, correct?

6         A    I never knew how much I got paid an hour

7    over there.  I never saw the application.  I just

8    saw my weekly check.  I never saw how much they paid

9    me for how many hours I worked.

10        Q    I'm asking you about the application

11    process in the beginning.  I will get to those

12    questions later.

13        A    Okay.

14        Q    Going back to my question I was asking you

15    about how you applied and you said you applied using

16    an application.

17             My question is:  That application was

18    called Toast, correct?

19        A    Yes.

20        Q    And you had to apply for the job using the

21    Toast application by completing your information and

22    typing it in, correct?

23        A    Yes.  I filled out the application.

24        Q    Other than the actual application --

25    withdrawn.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

40

1                    A. Montor-Peran

2                         As to the application, what type of

3        information were you required to input?

4             A    My name, my address, and everything.

5             Q    Other than filling out the employment

6        application itself, did Toast have you fill out any

7        other employment forms?

8             A    No.

9             Q    When you were filling out the employment

10       application on Toast using the app, you did that in

11       English, correct?

12            A    Yes.

13            Q    How did you end up learning that you were

14       hired?

15            A    I went there and they hired me personally.

16       They gave me the Toast application to fill out so

17       they could pay me.

18            Q    When you refer to they, you're referring

19       to Yanos?

20            A    Yes.

21            Q    Who did you report to when you were a

22       busser at Osteria La Baia?

23            A    Yanos or Julio.

24            Q    You received tips at Osteria La Baia,

25       correct?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

41

                    A. Montor-Peran

1

2       A    Yes.

3       Q    Julio, he served tables like the other

4  waiters, correct?

5       A    Her was a waiter and a manager.  He made

6  tips and also money as the manager.

7       Q    How do you know he made money as a

8  manager?

9       A    Because he was a manager, he got paid as a

10  manager.

11       Q    How do you know he was paid as a manager?

12       A    Because it's logical, he's a manager, he

13  gets paid as a manager.  He was a manager, he was a

14  manager.  Yanos was a manager, too.

15       Q    Other than your logic that he's a manager

16  because he's a manager, you have no other basis to

17  explain why he's a manager, correct?

18            MR. BUZZARD:  Objection to form. You can

19       answer.

20            THE INTERPRETER:  Say it one more time.

21       Q    Other than your logic that he's a manager

22  because he's a manager, you have no other basis to

23  explain why he's a manager?

24            MR. BUZZARD:  Same objection to form.  You

25       can answer.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

42

1                       A. Montor-Peran

2          A     He hire the people.

3          Q     He didn't hire you, did he?

4          A     He hired me.

5          Q     You just testified that Yanos hired you?

6          A     I first went to Julio and then Yanos.

7    Yanos was the main manager, general manager.

8          Q     If I understand you correctly, when you

9    were going to get your --

10               MR. KATAEV:  Let the record reflect the

11               witness left.

12         Q     If I understand you correctly, when you

13   were first getting your job at Osteria La Baia, you

14   spoke to both Julio and Yanos, but Yanos told you

15   you were hired, correct?

16         A     Yes.

17         Q     Julio did not tell you you were hired,

18   correct?

19         A     Yes.  Yes.

20         Q     Thank you.  You also said Julio was paid

21   as a manager.  What did you mean by that?

22         A     Everyone know that Julio got paid as a

23   manager because he is a manager.  He hire people, he

24   did interview with Julio.

25         Q     Let me rephrase my question.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

43

1              A. Montor-Peran

2              Do you have any knowledge as to how

3    much Julio is paid or was paid?

4         A    I don't know how much he got paid.

5         Q    Okay.  Did you ever receive a written job

6    description while working at Osteria La Baia?

7         A    No.

8         Q    Did you ever receive an employee handbook

9    while working at Osteria La Baia?

10        A    No.

11        Q    When you were working as a busser at

12   Osteria La Baia your duties never changed, correct?

13        A    No.

14        Q    You did not open the restaurant, correct?

15        A    No.

16        Q    You did not close the restaurant either,

17   correct?

18        A    Sometimes when I had to stay until the

19   end.

20        Q    Not often, right?

21        A    No.

22        Q    I forget if I asked this before, I'm going

23   to ask it again.  When you worked at Osteria La

24   Baia, you were provided an employee handbook,

25   correct?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran --- December 2, 2025

44

A. Montor-Peran

2    A    Yes.

3    Q    Do you remember signing any documents to

4    confirm you received the handbook?

5    A    No.

6    Q    When you first came to work as a busser at

7    Osteria La Baia you received some training, correct?

8    A    Yes, I did, but they didn't pay me for the

9    date I received training.  They had to pay me, but

10   they didn't and I exclaimed why you are not paying

11   me.

12   Q    Did they pay you when you exclaimed that?

13   A    They didn't pay me.

14   Q    You said you started working at Osteria La

15   Baia in June of '24, correct?

16   A    Yes.

17   Q    When in June did you first start working?

18   A    Around the tenth.

19   Q    You started training on the tenth?

20   A    Yes.

21   Q    Yanos trained you, correct?

22   A    He hired me, but a person that worked

23   there told me what I needed to do.

24   Q    Who is that person?

25   A    A busboy that knew what had to be done and

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

45

1                        A. Montor-Peran

2       told me what had to be done.

3            Q    What was that busboy's name?

4            A    I don't know.  I forgot the name.

5            MR. KATAEV:  We will follow up with a

6            written request.

7                        (Counsel Request.)

8            A    Artemio.  A-R-T-E-M-I-O.

9            Q    Just to clarify for the record, the busboy

10      who trained you on what you needed to do when you

11      first started working at Osteria La Baia was a man

12      by the name of Artemio, A-R-T-E-M-I-O, correct?

13           A    Yes.

14           Q    When you worked at Osteria La Baia from

15      June until December of '24, you sometimes had

16      pre-shift meetings, correct?

17           A    Yes, of course.

18           Q    At those pre-shift meetings, the things

19      that were discussed were the specials of the day,

20      how to sell more and other things of that nature,

21      correct?

22           A    Exactly and complaints with people that

23      they weren't giving service, that the busboys didn't

24      clean tables.

25           Q    Okay.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

46

1                          A. Montor-Peran

2        A     And the food specials, all of that.

3        Q     With regard to the complaints about the

4    bussers, those complaints were being made in order

5    to encourage the bussers to provide better service,

6    correct?

7        A     Yes.

8        Q     Nobody was fired during a pre-shift

9    meetings, correct?

10       A     I saw they fired like three people.

11       Q     During a pre-shift meeting?

12       A     They did meeting, but after it ended they

13   spoke to the people and fired them.

14       Q     Just to confirm, during a pre-shift

15   meeting no one was ever fired, only after, right?

16       A     Yes, of course.

17       Q     During a pre-shift meeting, no one was

18   otherwise disciplined in front of anyone, correct?

19       A     No.

20       Q     Okay.  No, nobody was disciplined, right?

21       A     No.

22       Q     Let me rephrase the question for clarity.

23             Was anybody ever disciplined during a

24   pre-shift meeting?

25       A     He told the waiter to work well to provide

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

47

1                    A. Montor-Peran

2    the service.

3         Q    And that's it, no discipline?

4         A    Yes, that's it.

5         Q    Okay.  How much did you receive in tips

6    for each shift worked on average?

7         A    Around $180.

8         Q    The tips on average for one day were $180

9    a day, correct?

10        A    Yes, but not everyday.  Sometimes $100,

11   $120, sometimes $80.

12        Q    What is the lowest in tips you ever

13   received in one day?

14        A    Hundred.

15        Q    What was the most you ever received in

16   tips in one day?

17        A    The minimum $100 because I worked dinners.

18   Sometimes when I was busy from a party $180 to $200.

19   It depended.

20        Q    $200 was the most you ever received in one

21   day?

22        A    Yes.

23        Q    Do you work full time?

24        A    Yes, I think I work time full time.  Only

25   dinner.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

48

1                    A. Montor-Peran

2          Q    What is the dinner shift, what time to

3     what time?

4          A    Four to 10:00 or 11:00.  Depending on when

5     they close.

6          Q    Does your schedule ever change?

7          A    Yes.  Just on Fridays when I work lunch.

8          Q    Sometimes you got extra tips, right?

9          A    Sometimes only on Fridays.

10         Q    What was the lunch shift, what hours were

11    those?

12         A    Eleven to 4:00 p.m.

13         Q    When you got the lunch shift, did you stay

14    for the dinner shift, too, and do a double shift?

15         A    Yes.  When they told me to stay when they

16    needed work.

17         Q    Is it fair to say sometimes you left at

18    4:30 on Fridays, but other times you would stay for

19    the rest of the day, correct?

20         A    Yes, of course.

21              MR. KATAEV:  All right.  We have been

22         going for almost two hours.  I want to go off

23         the record to discuss lunch and figure out what

24         the logistics are for that.

25    (Whereupon, an off-the-record discussion was held.)

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

49

                              A. Montor-Peran

1

2     BY MR. KATAEV:

3          Q     When you worked at Osteria La Baia, you

4     were paid on an hourly basis, correct?

5          A     Yes.

6          Q     You were then paid on a weekly basis,

7     correct?

8          A     Yes, weekly.

9          Q     You received your pay by direct deposit or

10    some other way?

11         A     Check, not direct.

12         Q     You were given a physical check every

13    week, right?

14         A     Yes.

15         Q     Yanos gave you your check, correct?

16         A     Yes.

17               MR. KATAEV:  Off the record.

18    (Whereupon, an off-the-record discussion was held.)

19         Q     When Yanos gave you your check, he also

20    gave you your paystub, right?

21         A     Paystub, no.  Just a check.

22         Q     You testified earlier that you have your

23    paystubs and you can produce that; do you remember

24    that?

25         A     Just the checks that they gave me.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

50

1                    A. Montor-Peran

2         Q    You're saying you have just the checks

3    they gave you?

4         A    Yes, of course.

5         Q    You received the checks.  How did you go

6    about depositing them or cashing them?

7         A    I didn't get paystubs like you're saying.

8    I just got the checks.  I never got a tally of

9    checks, the hours what I put in, none of that.

10        Q    Do you file taxes every year?

11        A    Yes, taxes all of that.  They took taxes

12   away.

13        Q    In order to file your taxes, you have to

14   give the accountant your W2, right?

15        A    Yes.

16        Q    And you got your W2 from Osteria La Baia,

17   right?

18        A    I never got that.

19        Q    How did you file your taxes if you never

20   got it?

21        A    2024 or 2025 I didn't receive that and

22   that was lost until now.

23        Q    Did you file your taxes for 2024?

24        A    No.

25        Q    Do you have an accountant?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

51

1                      A. Montor-Peran

2        A    I had to -- I didn't pay that.  I had to

3    receive --

4              THE INTERPRETER:  He's all over the place.

5        A    I think I had to return my money.  I

6    didn't receive that document.

7              THE INTERPRETER:  I don't know what he

8         said.

9        Q    If I understand your testimony correctly,

10   you're saying that you believe you were entitled to

11   a tax refund and you didn't have to pay taxes,

12   right?

13             MR. BUZZARD:  Objection.  You can answer

14        to the extent you understand, Adrian.

15             MR. KATAEV:  I'm going to ask counsel not

16        to qualify the objection.  The rules are clear.

17        All you can say is objection to form.  When you

18        say you can answer to the extent you

19        understand, that constitutes coaching.  I'm

20        going to object to that.  If it happens again,

21        I'm going to call the court and ask for an

22        order.

23             Can we ask the question one more time and

24        see what his answer is, please?

25             THE INTERPRETER:  What was the question?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

52

1                      A. Montor-Peran

2        (Whereupon, the referred to question was read back

3                      by the reporter.)

4            MR. BUZZARD:  Objection to the form of the

5        question.

6        A    Yes, maybe because I didn't receive my tax

7     papers and all that, but I didn't go by to pick it

8     up.  I don't know.

9        Q    You received that understanding based on

10    what your accountant told you, right?

11           MR. BUZZARD:  Objection to form.

12       A    Yes.

13       Q    Who is your accountant?

14       A    I don't have one right now.

15       Q    Who was your accountant in the past?

16       A    I don't have one.

17           MR. KATAEV:  We are going to submit an

18        interrogatory for that.

19                  (Counsel Request.)

20       Q    When you worked at Osteria La Baia, how

21    many hours a week did you work?

22       A    Thirty-five hours, 30, sometimes 40, but

23    like I said, I never saw those paystubs, those hours

24    I put in, I don't know and I'm conscious of 35 to 40

25    hours.  I counted my hours.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

53

1                    A. Montor-Peran

2          Q     Did you write them down?

3          A     Yes.

4          Q     Where did you write them down?

5          A     On a little paper I took a picture, I

6    think, on the computer when I went out.  I think I

7    have that on Google photographs.  I don't know.

8          Q     When you took the picture it was using

9    your phone, correct?

10         A     Of course.  I did that for a moment that

11   the situation like this like today like a lawsuit,

12   and to be able to claim my hours that they pay me if

13   they didn't pay me.

14         Q     I asked you earlier whether you took any

15   photos in the restaurant and you told me no, and now

16   you're telling me you did take photos.

17              MR. BUZZARD:  Objection to the extent it

18         misstates prior testimony.  You can answer.

19              THE INTERPRETER:  The question wasn't

20         finished.

21         Q     I asked you earlier today whether you took

22   any pictures in the restaurant and you said no, but

23   now you're saying you did take pictures?

24              MR. BUZZARD:  Objection.  Mistakes prior

25         testimony.  You can answer.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

54

1                          A. Montor-Peran

2          A    I just took the pictures of the hours.  I

3     didn't take pictures of the restaurant.

4          Q    Do you still have the pictures that you

5     took of the hours in the restaurant?

6          A    I'll repeat it again, I think I have them

7     in Google photographs.  I don't know.  I took them a

8     long time ago.

9          Q    I want you to find them and preserve them,

10    please.  We are going to follow up with your

11    attorney and request a copy of all of those

12    photographs taken in the restaurant.

13                     (Counsel Request.)

14          A    I will try to look for them.

15          Q    Other than taking photos in the restaurant

16    of the hours that you worked, you also testified

17    that you took handwritten notes, right?

18          A    Yes, but I lost that.  I threw it away.

19          Q    When did you throw it away?

20          A    A while ago.  I don't know.  I didn't

21    think I needed it and then the lawsuit came.

22          Q    Did you threw it away before the lawsuit?

23          A    Yes.

24          Q    If I understood correctly, you took those

25    handwritten notes because you wanted to make sure

you were properly paid, right?

A Yes, of course because they didn't pay me. If my check came, I had to tell them why didn't you pay me the hours.

Q Understood. You threw them out after you were satisfied that you were paid, correct?

A No. I just wrote down --

THE INTERPRETER: I got lost. He's going on and on so quickly.

MR. BUZZARD: Can I ask that you translate his answer and not contemporize? I want his answer translated.

MR. KATAEV: Ask him to repeat it. I get it, it's fine.

THE INTERPRETER: It's very hard to follow and he wasn't doing that at first. It's throwing me off. I'll try my best.

A I wrote down my hours so at the end of the week I could claim that I had the hours. My check didn't come correctly or if they didn't pay me I had to claim the hours.

MR. BUZZARD: That's it.

Q Why did you throw out papers then if you were not paid properly?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

56

1                      A. Montor-Peran

2        A    I threw it away because I got the check

3    and I was satisfied with what they paid me.

4        Q    Okay.  That's what I was asking you.

5             When you say you received the checks,

6    you're saying you only received the actual physical

7    check and not a whole page?

8             MR. BUZZARD:  Objection.  Asked and

9        answered.  You can answer again.

10       A    Yes.

11       Q    Why did your employment at Osteria La Baia

12   end?

13       A    I injured my knee and I had to leave and

14   on top of that, I didn't like it because the

15   manager, Julio, pressured me.

16       Q    How did Julio pressure you?

17       A    All of that.

18       Q    He asked you to do what?

19       A    And he yelled to the employees ugly, all

20   of that.

21       Q    Julio did not terminate you, correct?

22       A    No.  I left because I couldn't take it

23   there.  They were yelling at people, they were

24   pressuring people.

25       Q    When did you decide to pursue a claim

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

57

1                    A. Montor-Peran

2       against the restaurant; month and year if could you

3       tell me?

4            A    October.

5            Q    Of '24, right?

6            A    Yes.

7            Q    After you decided to pursue a claim

8       against the restaurant in October of '24, did you

9       speak to any other employees about it?

10           A    No.

11           Q    What did you do in order to begin the

12      process of pursuing a claim after you decided to do

13      so in October of '24?

14           A    What did I do?

15           Q    Yes.  What did you do?

16           A    I called a lawyer, he asked me if I want

17      to go in the lawsuit, I said, yes.  I signed a paper

18      that I'm suing.

19           Q    Do you remember when you did that and

20      please, when you're answer these questions don't

21      disclose anything you discussed?

22           A    The year '25.  I don't remember the month.

23           Q    Okay.  How did you find Joseph, the

24      attorney?

25           A    My friend recommend him because he's in

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

58

```
 1                    A. Montor-Peran
 2    the lawsuit of Osteria La Baia.  His name is
 3    Patricio.
 4         Q    Do you have any documents related to your
 5    employment with Osteria La Baia that have not been
 6    produced that you did not turn over to your
 7    attorneys?
 8         A    No.
 9         Q    Did you work anywhere else while working
10    at Osteria La Baia?
11         A    No.
12         Q    How much were you paid her hour when you
13    first started working at Osteria La Baia?
14         A    They have been paying me per hour, but I
15    don't know.  I never saw that document.
16         Q    You don't know the specific amount per
17    hour that you were paid?
18         A    Like I said, I never got the tally of how
19    many hours I put in and what they paid.
20         Q    I know you said that, that's not my
21    question.  My question is:  Do you know how much you
22    were paid per hour, the amount of money per hour
23    that you would receive; do you know that?
24              MR. BUZZARD:  He answered the question.
25         You can answer again.
```

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

59

1                   A. Montor-Peran

2        A    No.

3        Q    Did you ever receive any tips directly

4   from customers?

5        A    No.

6        Q    How did you receive tips?

7        A    The waiters put the money together and

8   gave the busboys 50 percent and the waiters

9   100 percent.

10        Q    How often did that happen, how frequently?

11        A    All the time.

12        Q    Did it happen on a daily basis?

13        A    Yes.

14        Q    When you received a tip on a daily basis,

15   how did you know if the amount of tips received was

16   correct?

17        A    They knew we just received the check with

18   everything.

19        Q    Isn't it true there is a daily tip report

20   printed at the end of the day?

21        A    Yanos did it, but all I know is we all got

22   the checks.

23        Q    Did you have access to the report every

24   evening when the tips were given out?

25        A    No, just the managers.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

60

1                    A. Montor-Peran

2          Q     You never looked at one of those reports?

3          A     Never.  If they got money it was for their

4     pocket.  I don't know.

5          Q     Did you receive tips in cash?

6          A     Sometimes I did, sometimes I didn't,

7     sometimes ten or $15 came, sometimes they didn't

8     come.

9          Q     Were any of your tips included in customer

10    credit card payments?

11         A     When the customer paid in card everything

12    came in check.

13         Q     To your knowledge was any fee deducted

14    from the tips that were charged to credit cards?

15         A     No.

16         Q     How do you know that?

17         A     I just know because no one saw it.

18         Q     Did you keep any record of the tips that

19    you received?

20         A     No.

21         Q     Did have you to report the tips that you

22    earned from Osteria La Baia?

23         A     The waiters reported to the managers.

24         Q     Did you tell anyone at Osteria La Baia

25    this is how much you earned in tips?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

61

                        A. Montor-Peran

1

2        A    No.

3        Q    To your knowledge did you report your tips

4   to the taxing authorities?

5        A    I did at one time.  If I made so much in

6   tips, why did I get less.

7        Q    To your knowledge did any employees at

8   Osteria La Baia receive tips directly from the

9   customers?

10        A    No, I don't know.

11        Q    Has any customer ever directly handed you

12   a cash tip in your hands?

13        A    No.

14        Q    If a customer did do that what would you

15   do with the money?

16        A    They gave Julio tips, but he didn't report

17   that to us.  He kept that to himself.

18        Q    How do you know that?

19        A    I saw him like two times.

20        Q    If I understand your testimony correctly,

21   you saw a customer or a patron give Julio a cash tip

22   and you saw him do what?

23        A    No.

24        Q    Did you participate in a tip pool as part

25   of your job at Osteria La Baia?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

62

1                        A. Montor-Peran

2        A    No.

3        Q    Do you understand what a tip pool is?

4        A    A tip pool?  No.

5        Q    I'll rephrase.  To your knowledge is it

6    fair to say that all the tips were collected and

7    everyone received a portion of it, an equal amount

8    based on a system?

9        A    Yes.  They divided it between everyone.

10   When it was personal, he kept it in his hand just

11   for him.

12       Q    Who is he?

13       A    Julio or a coworker of mine, but I never

14   saw him give him money.  I only saw a customer

15   giving him a tip in his hand.

16       Q    Do you know what Julio did with the tip

17   that he received in his hand?

18       A    That restaurant, the tip they give you in

19   your hand, that's for you and you don't split that.

20       Q    So you did receive tips in your hands and

21   you kept them, right?

22            MR. BUZZARD:  Objection.  Misstates

23            testimony.  You can answer.

24       A    No.

25       Q    You're saying Julio did receive in his

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

63

A. Montor-Peran

2    hand and he kept it?

3         A    Yes.

4         Q    How do you know that he kept it?

5         A    Because I know in my way of thinking that

6    he kept it.

7         Q    Did you see him put the money in his

8    pocket and leave?

9         A    Of course.

10        Q    Do you know whether he -- go ahead, you

11   were saying something.

12        A    That's not natural because I worked in

13   restaurants and there is a box and the money that

14   the customer gives is put in a box and at the end

15   split between everyone.  Restaurants have rules like

16   if someone gives me five or ten dollars as a busboy

17   I don't keep it, I put it in the box.

18        Q    At Osteria La Baia there was no such box,

19   correct?

20        A    No, there is no book.  They said we are

21   going to keep it for everyone, we are a family.

22        Q    Who kept it?

23        A    Yes.

24        Q    I'm asking.  You're saying someone told

25   you we are going to keep it, we are a family.  Who

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

64

1                    A. Montor-Peran

2       kept the tips to divide it later on?

3           A    I'm talking about me.  If a waiter gets

4       $100 or $50, they put it in the box and at the end.

5       There are no rules.  I don't know.

6           Q    You testified earlier that there was in

7       the evening a meeting to distribute all the tips to

8       everyone, correct?

9                    You testified earlier today you would

10      meet every evening after the shift was over for

11      everyone to receive their share of tips, correct?

12          A    Yes.

13          Q    Mr. Adrian, you have in front of you a pen

14      and a pad, correct?

15          A    I wanted to write down the names of who

16      I'm talking to because in the interview yesterday I

17      didn't ask for the names.  You're an interpreter and

18      I want to know your name.  I don't know what your

19      name is.

20          Q    Adrian, right now we are doing a

21      deposition and it's not appropriate for you to have

22      a pen and a pad with you.  If you would be kind

23      enough to put it away, you can speak with your

24      attorney afterward and he will give you the name.

25          A    Okay.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

65

```
 1              A. Montor-Peran
 2         MR. BUZZARD:  Why don't we take a five
 3      minute break and I'll talk to my client about
 4      this.
 5         (Whereupon, a short recess was taken.)
 6   BY MR. KATAEV:
 7      Q    Adrian, welcome back.
 8      A    Thank you.
 9      Q    We took a five minute break at 12:51 until
10   12:56.  You only got back here at 1:01 p.m.,
11   correct?
12      A    Thank you.  I had to charge my phone.
13      Q    During this break or any other break did
14   you discuss your testimony with your attorney?
15      A    Yes.
16      Q    We took a break because you had a pen and
17   a pad with you, correct?
18      A    Uh huh.
19      Q    Yes?
20      A    Yes.
21      Q    Did that pad have any notes about today's
22   deposition or this case?
23      A    No.
24      Q    I want you to preserve that pad.  I'm
25   going to be asking your attorney for copies of its
```

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

66

1                    A. Montor-Peran

2      contents.

3           A    Okay.

4                    (Counsel Request.)

5           Q    Now going back to what we started talking

6      about, every evening you received your share of the

7      tips that were collected, right?

8           A    Yes.

9           Q    And those tips that were collected, they

10     are called a tip pool; do you understand that?

11          A    Yes, pool.  I understand now.

12          Q    You participated in that tip pool?

13          A    No.  Just waiters and the manager did

14     that.

15          Q    Were you present when the waiters and the

16     managers did that?

17          A    No, not at all.

18          Q    Who gave you your tips?

19          A    The manager, Yanos.  He gave the tips in

20     cash; ten dollars, $15, and the rest in credit card.

21     He gave that in the check.

22          Q    You testified earlier that the minimum you

23     would receive in tips was $80 a day, didn't you?

24          A    Yes.

25                    MR. KATAEV:  Let the record reflect the

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

67

1                         A. Montor-Peran

2          witness has stepped away from the deposition.

3              MR. BUZZARD:  Adrian, could you stay in

4          front of the camera, please, and stay seated

5          there.

6          A    Yes.

7              MR. KATAEV:  Let the record reflect he

8          plugged in.  If you need to take a break please

9          ask for a break.

10         A    That's fine.  I'm charging my phone.

11         Q    Do you have anything in writing about the

12     tips that you received?

13         A    No.

14         Q    The tip you received at the end of the day

15     they were in cash, correct?

16         A    No, I just received a check.

17         Q    You never received your tips in cash at

18     all?

19         A    Ten, $15, $20 in cash.

20         Q    Adrian, we can't see you.  We need to see

21     you for the deposition.

22              You testified earlier at your

23     deposition you received anywhere from $80 to $200 a

24     day in tips.

25              How do you reconcile that with your

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

68

                        A. Montor-Peran

1                        A. Montor-Peran

2    testimony now that you received ten to $20?

3         MR. BUZZARD:  Objection.  Misstates prior

4         testimony.

5         A    I got the tip in check, credit card.

6         Q    When you working at Osteria La Baia, did

7    you have a question about how the tips worked?

8         A    Of course.  Like I said, 50 percent for

9    busboys, 100 percent for waiters.

10        Q    My question is did you ever have a

11   question about how tips worked when you worked

12   there?

13        A    It wasn't a check.  They paid everything

14   in check.

15        Q    That's not my question.  My question is

16   while you were working at Osteria La Baia, did you

17   ever have any question about how tips worked; yes or

18   no?

19        A    No.

20        Q    Other than waiters and bussers, was there

21   anyone else that received tips from the tip pool?

22        A    Just waiters and busboys.

23        Q    Julio was the captain for all the servers

24   at the restaurant, right?

25        A    Yes.  Aside from that he was a manager,

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

69

1                    A. Montor-Peran

2     too.

3          Q    Okay.  As the captain he was the lead

4     server for all the servers, correct?

5          A    Yes.  He ran the people, he made

6     complaints to the busboys, the waiters.

7          Q    Separate and apart from the tips that were

8     divided later, did you share tips with other

9     employees, like other servers?

10         A    No.

11         Q    You don't have any records at all related

12    to any tips, right?

13         A    No.

14         Q    Did you ever have to give any of the tips

15    you received to someone else?

16         A    No.

17         Q    When you received your tips at the end of

18    the evening, did you observe that the host system

19    was used?

20         A    No.

21         Q    How long did the process take every

22    evening for you to receive your tips?

23         A    About an hour.

24         Q    Did you ever have any questions about how

25    the tip credit worked?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

70

1                    A. Montor-Peran

2         A    No.

3         Q    Do you understand that you were paid an

4    hourly wage plus tips, correct?

5         A    Yes.

6         Q    Did your hourly compensation ever change?

7         A    No.

8         Q    To your knowledge did the amount of the

9    tip credit ever change?

10        A    Yes.  Between weeks when it wasn't busy.

11        Q    Can you explain?

12        A    Sometimes it's busy, sometimes we made

13   money, sometimes no.

14        Q    Not including tips, did you ever receive

15   less than $16 per hour for every hour that you

16   worked?

17        A    I didn't receive $16 an hour.

18        Q    How much did you receive?

19        A    I never knew how much they paid me.  That

20   application, touch, I never saw how much they paid

21   me the hours.

22        Q    You don't know is the answer?

23        A    Yes.

24             MR. KATAEV:  Off the record for a second.

25   (Whereupon, an off-the-record discussion was held.)

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

71

1              A. Montor-Peran

2

3          (Luncheon recess:  1:20 p.m.)

4                    ***

5          (Afternoon session: 1:51 p.m.)

6

7      A D R I A N  M O N T O R - P E R A N,

8      resumed, having been previously duly sworn, was

9      examined and testified further as follows:

10     EXAMINATION BY

11     MR. KATAEV: (Continued)

12             MR. KATAEV:  Are you going to be ordering

13         a copy of the transcript?

14             MR. BUZZARD:  Yes, I'll order.

15             MR. KATAEV:  I'd like the final transcript

16         for Thursday.

17         Q    Mr. Adrian, you testified earlier that you

18     generally work -- Adrian, you testified earlier

19     today that you typically work anywhere from 36 to 40

20     hours a week, right?

21         A    Yes.

22         Q    How much did you earn on average every

23     week with tips?

24         A    The check came out around $800 or $900

25     with tips.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

72

1              A. Montor-Peran

2        Q    $800 was net after taxes, correct, that's

3   what you took home?

4        A    Yes.

5        Q    Your gross amount was actually higher,

6   correct?

7        A    Yes.

8        Q    Even taking the $800 a week which is the

9   low end of what you said and dividing that by 40

10  hours a week which is the high end of what you said,

11  that's 20 an hour, right?

12       A    No, because I made tips.  I don't know how

13  much they paid me an hour, and I'll repeat it again,

14  I don't know how much they paid me an hour.

15       Q    I understand you don't know how much you

16  were paid per hour, I understand that's your

17  testimony.

18            My question is:  When you put the

19  tips together with what you were paid per hour and

20  you divide $800 a week at the low end and divide

21  that into 40 hours a week at the high end, that

22  amount is $20, right?

23       A    Yes.

24       Q    Do you know what the minimum wage is in

25  the State of New York?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

73

1                  A. Montor-Peran

2        A    I think it went up but I don't know.

3        Q    What do you remember it being?  What do

4    you think it is now?

5        A    I think three years ago it was ten or 11.

6        Q    Do you have any idea what it is now?

7        A    I have no idea.

8        Q    You would agree with me that the minimum

9    wage right now is not $20, right?

10       A    Too much.  20 plus tip is too much.

11       Q    Your understanding is that the minimum

12   wage in New York right now is less than $20 per

13   hour, correct?

14       A    Supposedly the laws that they have to pay

15   ten or 11 not 20.  I don't know.

16       Q    Okay.  You would agree with me then that

17   if with your tips you were paid at least $20 an

18   hour, you were paid more than the minimum wage,

19   correct?

20       A    I don't know if that's what you're

21   calculating because the check with everything

22   combined the total it was $800.

23       Q    Generally speaking, hypothetically

24   assuming you were paid $20 an hour with tips

25   included, you would agree with me that that's more

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

74

1                        A. Montor-Peran

2      than the minimum wage, correct?

3           A    Yes.

4           Q    When you worked at Osteria La Baia between

5      June of '24 through December, did you ever complain

6      to management about anything?

7           A    Yes.

8           Q    What did you complain about?

9           A    He said that I was slow, that I worked too

10     slow, that I couldn't work fast, but that had

11     nothing to do with me.

12          Q    You're telling me about complaints that

13     management made about you.  My question is:  Did you

14     ever make any complaints to the restaurant about

15     anything?

16          A    Yes.  They pressure people too much.

17          Q    What were people pressured to do?

18          A    We had to sell, that we had to take care

19     of the tables properly but it was exaggerated.  The

20     waiters put 100 percent in but they exaggerated.  In

21     simple words everyone that worked there was under

22     pressure because the owner was like you have to work

23     like this.

24          Q    Let's go back to when you first became an

25     employee at Osteria La Baia.  You told me a little

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran --- December 2, 2025

75

1                        A. Montor-Peran

2       bit about how you made your employment application

3       in Toast on the touch screen; do you remember that?

4            A    Yes.

5            Q    When you signed up with Toast, did you

6       provide any email address for yourself?

7            A    Yes, my email.

8            Q    And Yanos explained to you that you can

9       log into Toast with your own user name and password

10      to see what's going on with your hours, right?

11           A    No, I couldn't see the hours.  We just had

12      WhatsApp and he sent -- he sent on WhatsApp the

13      tips.  For example if I worked Monday, Tuesday or

14      Wednesday, he sent me the tips I made a day.

15           Q    Okay.  Do you still have those WhatsApp

16      messages?

17           A    I have that picture.  I have that picture.

18           Q    Great.  We are going to ask your attorneys

19      to produce that information to us so please keep

20      those messages because we will make a formal request

21      in writing.

22                     (Counsel Request.)

23                MR. BUZZARD:  What did he say?

24           A    I'll keep them.

25           Q    You testified earlier about closing at the

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

76

1                    A. Montor-Peran

2    restaurant; do you remember that?

3        A    Yes.  I stayed every night to close.

4        Q    How long does it take to close?

5        A    Depends.  They stay there drinking until

6    the last table leaves.  I have to clean the table.

7        Q    How long does it take you to clean the

8    table?

9        A    About five minutes.

10        Q    In order to close the restaurant the only

11    task that you do is cleaning the table?

12        A    Yes.

13        Q    You don't clean all the tables there, do

14    you?

15        A    There are employees that clean.  I'm the

16    last one that can stay cleaning the tables that are

17    left.

18        Q    Do you clean all the tables or do you do

19    them with other bussers?

20        A    Two of us close.  If there is two tables

21    we clean two tables.

22        Q    How many tables are at the restaurant?

23        A    Thirty-five tables.

24        Q    When did you make the determination that

25    you believed the restaurant was not paying you

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

77

1                    A. Montor-Peran

2    properly?

3         A    From the beginning when I went in.

4         Q    Did you complain to anybody that you

5    believed you were not being paid properly?

6         A    Just with my coworkers.  Not with a

7    lawyer.

8         Q    Who did you tell?

9         A    My coworkers.

10        Q    You said that already.  I'm asking which

11   coworkers; what are their names?

12        A    Artemio has worked there for a long time

13   but the same.

14        Q    Other than Artemio did you tell anyone

15   else?

16        A    No.

17        Q    To your knowledge is Artemio still working

18   there?

19        A    I think so.  I think he's worked there for

20   a long time.  I don't know but I left.

21        Q    Did Artemio decide to do anything about

22   what you told him?

23        A    That's a personal problem.  I don't want

24   to speak badly about him.  He's the one that

25   trained.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

78

1                    A. Montor-Peran

2        Q    When was the last time you spoke to

3    Artemio?

4        A    The day I left.

5        Q    You never exchanged any text messages with

6    him?

7        A    No.  I spoke about I had a legal problem.

8             MR. KATAEV:  Off the record for a second.

9    (Whereupon, an off-the-record discussion was held.)

10   BY MR. KATAEV:

11       Q    When did you tell Artemio that you

12   believed you were not being paid properly?

13       A    Half a month after working there.

14       Q    You only complained to him once or more

15   than once?

16       A    I complained various times because the

17   restaurant wasn't adequate for me, it wasn't

18   adequate for all people.  I have experience in

19   restaurants.

20       Q    Each time you complained you complained to

21   Artemio?

22       A    No.  It was my coworkers, too.

23       Q    Who else, what are their names?

24       A    I don't know their names.

25       Q    When you complained to Artemio and others

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

79

1                          A. Montor-Peran

2        about your belief that you were not paid properly,

3        what did you tell them; what was the basis for your

4        belief?

5            A    Yes, of course he's worked there a long

6        time.  Everyone knows him.

7            Q    What was your complaint?  What did you say

8        to Artemio and others about why you believe you were

9        not paid properly?

10           A    They didn't pay me the right hours and did

11       complaints and all that.

12           Q    All of these complaints that you made were

13       verbal, not written, correct?

14           A    Yes.

15           Q    Did you ever send text messages to your

16       coworkers with your complaints?

17           A    No.

18           Q    Did anyone that you made a complaint to --

19       withdrawn.

20                Did you ask anyone that you made a

21       complaint to to speak to the owners or management

22       about your complaints?

23           A    No, not at all.  I stayed quiet.

24           Q    Why?

25           A    I didn't want problems until the moment

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

80

1                         A. Montor-Peran

2       came for a lawsuit against Osteria La Baia.

3            Q    When you say you didn't want problems,

4       what did you mean by that?  What kind of problems?

5            A    To work there because I needed money.

6            Q    You felt if you made a complaint about

7       your wages they would terminate you?

8            A    Yes, of course.  Exactly.

9            Q    Do you know of anybody that made a

10      complaint about their wages and was fired?

11           A    Of course.  Various.

12           Q    Who?  Give me one person that was fired

13      after they complained about wages?

14           A    That the only one I know left because he

15      was tired and they left because of the pressure and

16      they left on their own and they fired two, but I

17      don't know their names.

18           Q    That person that you referenced was not

19      fired, correct?

20                MR. BUZZARD:  Objection to form.

21           A    Yes.

22           Q    And the person you talked about that was

23      fired did not complain about his or her wages, did

24      they?

25           A    Of course he complained.  That's why they

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

81

1                    A. Montor-Peran

2      fired him.

3           Q    What did this person complain about?

4           A    Because they didn't pay him his check and

5      all that.

6           Q    What is his name?

7           A    Like I said, I forgot his name, but

8      everyone leaves there, they can't take it, there is

9      a lot of pressure and that's why I left because of

10     the pressure.

11               MR. KATAEV:  I guess now is a good time to

12          take your break.

13          (Whereupon, a short recess was taken.)

14     BY MR. KATAEV:

15          Q    Adrian, what is your goal for this

16     lawsuit?

17          A    Reach an agreement.  I don't know.

18          Q    Do you have a sense of what you believe

19     you are entitled to for the wages you claim you were

20     not paid and/or the tips you claim you did not

21     receive?

22          A    I think what's normal.  I'm asking for

23     what's fair.  What's being done in that restaurant

24     is very bad.

25          Q    Do you know how much?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

82

1                    A. Montor-Peran

2        A    I don't know.

3        Q    Have you taken any steps to figure out how

4    much?

5        A    No.

6        Q    How did you know what type of work the

7    restaurant wanted you to perform?

8        A    Formal.  I don't know.  Work, I don't

9    know.

10        Q    Other than the pre-shift meetings that you

11    previously testified about, were there any other

12    type of meetings that you were required to attend

13    when you worked at the restaurant?

14        A    No.

15        Q    How many other busboys did you work with?

16        A    Where?

17        Q    At Osteria La Baia.

18        A    Six or seven.  Sometimes eight.

19        Q    Did any of the busboys do work that was

20    different from the work you did?

21        A    No.  The same, normal and they told me

22    they also complained.

23        Q    Did they get fired when they complained?

24        A    Like I said, they fired two, but I don't

25    know their names and they all left.  They were

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

83

                        A. Montor-Peran

1
2    tired.
3          Q    If you had questions about your work at
4    Osteria La Baia who would you ask?
5          A    Questions about what?
6          Q    Anything about your work.
7          A    No one.
8          Q    You never asked anyone questions?
9          A    No.
10         Q    Did anyone in management at the restaurant
11   ever have questions about your work?
12         A    Sometimes I had questions, but then I
13   didn't have questions.
14         Q    Did anyone at the restaurant in management
15   ever ask questions for you to ask you a question?
16         A    No, but at the beginning when they asked
17   me my experience, yes.
18         Q    That was during your interview, correct?
19         A    Yes.
20         Q    When you were doing an interview when you
21   were getting hired did you negotiate your pay?
22         A    Yes.  I asked how many days are you going
23   to train me and they said one and that the tips
24   would come in the check.
25         Q    Did you ever take time off while you were

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

84

A. Montor-Peran

1

2    working at Osteria La Baia?

3         A    Yes, I took time off.

4         Q    Did you ever go away for a week for a

5    vacation?

6         A    No.

7         Q    How did you take time off when you worked

8    at Osteria La Baia?

9         A    When I had to rest.  I only worked five

10   days.

11        Q    Was there ever a week in which you worked

12   less than five days?

13        A    No.  I always worked five days, four days.

14        Q    Did you keep any journals or diaries or

15   planners with notes about your employment at Osteria

16   La Baia?

17        A    I had a problem when I said I couldn't

18   work.  I get a paper from my doctor went I couldn't

19   work.  I have an appointment and Julio, the manager,

20   said if I don't show up he'll fire me, he threatened

21   me.  I presented my paper, here is my doctor's

22   paper, my insurance paper, I'm not lying, but

23   because he's aggressive he pressured everyone a lot.

24        Q    Did you ever exchange any test messages

25   with Julio?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

85

1                    A. Montor-Peran

2        A    No.

3        Q    Going back to my original question:  Do

4    you keep a journal or diary or planner of notes

5    about your employment at Osteria La Baia?

6        A    He looked at the time that people came in

7    and he got angry, he threatened them.

8        Q    Adrian, I know you want to talk about

9    Julio and I'll ask you more questions about Julio

10   later.  I'm asking you:  Do you have any journals,

11   diaries, planner or other compilation of notes about

12   your employment at Osteria La Baia?  The question is

13   not about Julio.  It's about what I asked.  Please

14   answer what I asked.

15       A    No.

16       Q    What was Artemio's job title at Osteria La

17   Baia?

18       A    Busboy.

19       Q    Is it fair to say that when you made

20   complaints to other employees at Osteria La Baia

21   about the way you were paid, you only made those

22   complaints to busboys and not any other type of

23   employee?

24       A    Other people, yes, my coworkers, but I

25   don't know there names.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

86

1                    A. Montor-Peran

2          Q    They were all busboys, correct, not

3     servers or something else?

4          A    Yes, and with a waitress, too.  I told her

5     I don't like this job.

6          Q    What is the name of the waitress?

7          A    Because all the tips are registered there,

8     I think the employee names are there and I'll look

9     for it because I have many pictures I can find it.

10    I don't know the names of the employees of the

11    waiters.

12         Q    Okay.

13         A    I'm aware of what I'm saying.  I have the

14    list of the waiters and the busboys and how much

15    they made a day.

16         Q    Where did you get that list?

17         A    Sent it on WhatsApp.

18         Q    Who sent it?

19         A    The managers, Yanos.

20         Q    Do you currently use social media such as

21    Facebook and Twitter and X and Instagram?

22         A    I have Facebook, but I barely use it.

23         Q    Have you ever made any posts on Facebook

24    about your work at Osteria La Baia?

25         A    No, not at all.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

87

1              A. Montor-Peran

2         Q    Katherine Fernandez, what was her job

3    title at Osteria La Baia?

4         A    Runner.  She worked there for a while.  I

5    think she worked there for a year.  She was already

6    working there and then I got there.

7         Q    When you worked there and she worked there

8    did you talk about your compensation at Osteria La

9    Baia?

10        A    No.  She commented that La Baia had legal

11   problems.

12        Q    When did she do that?

13        A    I had been working there for three months.

14        Q    Did you and Katherine Fernandez exchange

15   phone numbers?

16        A    No.  She was my friend.  I never asked for

17   her number.

18        Q    Did you ever communicate with each other

19   outside of the workplace when you both worked there?

20        A    She talked about La Baia.  I don't know.

21   La Baia had problems.

22        Q    What did she say about the problems that

23   Osteria La Baia had?

24        A    They didn't pay her, that the checks

25   bounded, that La Baia had problems.  I don't know

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

88

1                    A. Montor-Peran

2       what.

3           Q    She told you this while you were still

4       working there?

5           A    That's something personal.  I don't know

6       about that situation.  I'm new there, I have been

7       working there for six months, but because I don't

8       know La Baia if I worked there for three years then

9       yes, I could talk.  The problems La Baia has with

10      federal I don't know.  They said something.  I don't

11      know.

12          Q    After you left Osteria La Baia in December

13      of '24, you maintained contact with Katherine,

14      right?

15          A    No.

16          Q    How did you find out about this lawsuit?

17          A    My friend, Patricio, recommended that.

18          Q    This is Patricio Mulina, right?

19          A    Right.

20          Q    He also goes by the name Javier, correct?

21          A    Javier Mulina, yes.

22          Q    After you left your employment in December

23      of '24, you maintained contact with Mr. Mulina,

24      correct?

25          A    Yes.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

89

1                    A. Montor-Peran

2          Q     Did you exchange text messages with

3     Mr. Mulina?

4          A     Yes, of course.

5          Q     What did you two discuss in terms of this

6     restaurant and the lawsuit?

7          A     They didn't pay him well so he left.

8          Q     Did he ask you to join this lawsuit?

9          A     Yes, exactly.

10         Q     Did he present you with that one page

11    document that you signed?

12         A     Yes, because Joseph send me the link to

13    sign in to get into the lawsuit.

14         Q     You signed that link using your phone?

15         A     I think so.

16         Q     You couldn't use a computer?

17         A     No, I don't have a computer.

18         Q     How did Joseph, the attorney, get your

19    email address?

20         A     I gave it to him.

21         Q     How did he first get in contact?

22         A     I gave him my phone number.

23         Q     Who contacted who first; did Joseph

24    contact you or did you contact Joseph?

25         A     I contacted him.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

90

1                       A. Montor-Peran

2          Q     How did you get his number?

3          A     Patricio gave it to me.

4          Q     Did he tell you how he met Joseph?

5          A     He said Joseph was a lawyer.

6          Q     What was that?

7          A     He said Joseph was his lawyer.

8          Q     Do you understand what a class action and

9    a collection action is?

10         A     Yes.

11         Q     What is it?

12         A     Of the tip I don't know how much they pay

13   you or they give you.

14         Q     If I understand you correctly, you're

15   participating in this lawsuit in order to receive

16   monies you believe are owed to you, correct?

17         A     Yes, of course.

18         Q     Would it be fair to say you're only

19   interested in getting your money and it doesn't

20   really matter to you about anyone else?

21               MR. BUZZARD:  Objection to form.

22         A     Yes, of course.  Normal.

23         Q     Are you aware that the complaint in this

24   case is asking that everybody in the restaurant get

25   the money that's owed to them?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

91

1                    A. Montor-Peran

2        A    Yes, of course.  Everyone that left and

3    the ones that aren't united, I don't know.

4        Q    Do you understand that by virtue of it

5    being a class action where everybody can potentially

6    be involved, the time that you're going to wait to

7    receive any money takes much longer than if you were

8    to just ask for your money now?

9            MR. BUZZARD:  Objection.  That is a

10           incompletely inappropriate question to be

11           asking my client.  It boarders on retaliation

12           for filing this lawsuit as a class action.  I

13           take extreme offense to this.  I will allow him

14           to answer it, but you're getting extremely

15           close to a line here.

16           MR. KATAEV:  Please answer the question

17           and please stop violating the judge's rule.

18           MR. BUZZARD:  Please stop asking questions

19           that you know violate the rules of class

20           actions.  You're trying to intimidate my client

21           and pursue him not to bring this as a class

22           action.  If you do it again, we will go to the

23           court.

24           You may answer this question, Adrian.

25           MR. KATAEV:  I'm asking him --

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

92

1                      A. Montor-Peran

2            MR. BUZZARD:  You're attempting to

3            dissuade him from bringing this case as a class

4            action, that is clearly what you're doing.

5            You're trying to insinuate that he will not

6            benefit if this case is brought as a class

7            action, that is very clear from the record.  I

8            will allow him to answer this question.  If you

9            go down this line we will involve the court.

10           MR. KATAEV:  Okay, please answer the

11           question.

12       A    Yes.

13       Q    Would you prefer to receive your money and

14   be done with the case or would you prefer for the

15   class action to go through even if it takes more

16   time?

17           MR. BUZZARD:  Objection.  You don't have

18           to answer that question.

19           MR. KATAEV:  Okay, I'm emailing the court.

20           Note for the record that the judge's rules

21           require the parties to send an email to the

22           court jointly in the event of a dispute.

23           MR. BUZZARD:  Ruthayn, read back the

24           question.

25   (Whereupon, the referred to question was read back

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

93

1               A. Montor-Peran

2               by the reporter.)

3          MR. BUZZARD:  You may answer the question,

4     Adrian.

5     BY MR. KATAEV:

6          Q    Let me rephrase.

7               Isn't it true that you would rather

8     just receive your money and be done with the case

9     rather than waiting for a long period of time to

10    have a class action or collective action in order to

11    get your money?

12         A    Yes, of course I understand.

13         Q    Have you ever seen Julio fire any

14    employees?

15         A    Yes.  Like I said before, they fired two

16    and the other ones left on their own because they

17    couldn't stand him.

18         Q    When you say they, that means two people

19    or more, correct?

20         A    Yes.

21         Q    You're saying Julio, with at least one

22    other person, fired two people?

23         A    Yes.

24         Q    How do you know it was Julio that made the

25    decision to fire those two people rather than the

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

94

1                        A. Montor-Peran

2        other person or the other people?

3            A    Supposedly because he's the manager, one

4        that knows everything.  He's in charge there, he's

5        the right hand of the owner.  I don't know the name.

6            Q    You don't specifically know that Julio

7        fired anyone, you just believe that he fired people

8        based on those facts, correct?

9            A    Yes.

10           Q    Did you work events at Osteria La Baia?

11           A    Yes.

12           Q    Are you aware of the mandatory gratuity of

13       18 percent for all events?

14           A    I don't know.

15           Q    Are you aware of the three percent service

16       charge at those events?

17           A    No, I don't know.

18           Q    Do you remember signing any documents when

19       you first became an employee at Osteria La Baia?

20           A    As soon as I went in I signed in my

21       application to become an employee there.

22           Q    Other than that was there any other

23       document that talked about how much you would be

24       getting paid or anything like that?

25           A    No.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

95

1                      A. Montor-Peran

2              MR. KATAEV:  I'm going to electronically

3         mark what will be Defendant's Exhibit A.

4    (Defendant's Exhibit A, Marked for Identification.)

5         Q    I'll share my screen and show you.  I'll

6    represent to you that this is a blank notice and

7    acknowledgment of pay rate and payday form from the

8    New York State Department of Labor; do you see that?

9         A    Yes.

10        Q    Have you ever seen this form when you were

11   working at Osteria La Baia?

12        A    I filled it out in an application.

13        Q    I'm going to place on the screen what will

14   be marked as Defendant's Exhibit B.

15   (Defendant's Exhibit B, Marked for Identification.)

16        Q    Do you see this document, Adrian?  Do you

17   see the document on the screen?

18        A    Yes.

19        Q    This is a one-page form that you signed

20   electronically to become part of this lawsuit,

21   correct?

22        A    Yes.

23        Q    Did you read this form in English when you

24   signed it?

25        A    Yes.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

96

1                    A. Montor-Peran

2        Q    You can read English?

3        A    A little, not a lot.

4        Q    Without telling me any specific discussion

5   that you had, did any attorney explain this document

6   to you?

7        A    No.

8        Q    Are you aware that you had the right to

9   join this lawsuit with a different attorney?

10       A    Yes.

11       Q    How were you made aware of that?

12            MR. BUZZARD:  Objection to the extent it

13       calls for attorney/client communication.

14       Adrian, I will instruct you not to say anything

15       you spoke about with your attorneys.

16            MR. KATAEV:  As qualified you may answer.

17   BY MR. KATAEV:

18       Q    Adrian, without sharing anything that your

19   attorneys may have said to you, how were you made

20   aware that you could join this lawsuit with any

21   other attorney?

22       A    My coworker told me.  I don't know.

23       Q    Why didn't you reach out to your prior

24   attorney five years ago to help you with the

25   discrimination case?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

97

                         A. Montor-Peran

1

2        A    Because I didn't want a legal case until

3    now when my friend asked me if I wanted to jump in

4    this lawsuit and I said yes.

5        Q    This form that you signed references a

6    professional services agreement; you see that?

7        A    Yes.

8        Q    Did you ever receive a copy of that

9    agreement?

10       A    No.  I just got an email.

11       Q    An email contained this form to sign,

12    correct?

13       A    Yes, yes.

14       Q    Do you know anyone else who signed a

15    similar form?

16       A    Like I said, my friend that recommended

17    the lawyer.  His name is Patricio.  Javier Mulina.

18       Q    Other than him?

19       A    No, just him.

20       Q    Do you know of anyone that was asked to

21    sign this that refused to sign it?

22       A    No.

23       Q    Is there a manager at Osteria La Baia that

24    manages just bussers like you?

25       A    No.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

98

1                    A. Montor-Peran

2        Q    For the record, Defendant's Exhibit B is

3    ECF documentary 12.

4              I'm placing up on the screen what

5    will be marked as Defendant's Exhibit C.

6    (Defendant's Exhibit C, Marked for Identification.)

7              ECF documentary 11.  Do you see this

8    document, Adrian?

9        A    Yes.

10       Q    What is this document?

11       A    That's what we had.  What's it called?  To

12   have access to the lawyers for the lawsuit.

13       Q    Who is this document signed by?  Can you

14   see it?

15       A    I think Patricio.  I don't know, that's

16   his name.

17       Q    Going back to Exhibit B.  You signed this

18   document on July 2nd of this year, correct?

19       A    Yes.

20       Q    Mr. Mulina signed this document on

21   June 18th of 2025, correct?

22       A    I don't know.  I just know what I did.

23       Q    When special events were taking place at

24   Osteria La Baia were you performing work at those

25   events?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

99

1                    A. Montor-Peran

2       A    When I was scheduled to work.

3       Q    Were there any bussers that were never

4    selected to work a special event?

5       A    Sometimes.

6       Q    But you did work special events, correct?

7       A    Yes.

8       Q    Who do you know that did not work special

9    events ever?

10      A    Some coworkers.

11      Q    Do you know the names?

12      A    No, I don't.

13      Q    How many?

14      A    Like three.

15      Q    Do you know why those three were never

16   working special events?

17      A    I think supposedly because they were new

18   they didn't have experience.

19      Q    Is it fair to say that the restaurant

20   distinguished between experienced bussers and

21   inexperienced bussers and treated them differently?

22      A    The ones that had experience were treated

23   well, but the ones that didn't were not.

24      Q    Did the same apply for servers?

25      A    Yes, of course and sometimes they did

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

100

1                      A. Montor-Peran

2    special events.

3         Q    Are you aware that today's deposition was

4    originally supposed to proceed in person in my

5    office?

6              MR. BUZZARD:  Objection.

7         A    Yes.

8         Q    Were you prepared to appear in person for

9    the deposition if you were required to?

10        A    Yes, of course.

11        Q    Did you have any objection to proceeding

12   in person with the deposition, you personally?

13        A    No.  Is there a long time left to finish

14   the meeting?

15             MR. KATAEV:  Let's go off the record.

16   (Whereupon, an off-the-record discussion was held.)

17             MR. KATAEV:  I'm going to mark what will

18        be Defendant's Exhibit D.

19   (Defendant's Exhibit D, Marked for Identification.)

20        Q    I will represent to you this document is

21   Plaintiff's Responses to Interrogatories that

22   Defendants issued.  I'm going to focus your

23   attention on the question in interrogatory four and

24   the answer, and then I'm going to ask you some

25   questions, okay?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

101

1                       A. Montor-Peran

2          A    Yes.

3          Q    I'll qualify also that this question went

4    directly to Katherine Fernandez and she answered it.

5                The question is:  Identify all

6    individuals who provided or managed Plaintiff during

7    her employment.  And the answer is:  11 people

8    listed here.

9                Can you see these names?

10         A    Yes.

11         Q    When you were working at Osteria La Baia,

12   did Magalis Rodriguez have any supervisory authority

13   over you?

14         A    Julio is there, Yanos is there.

15         Q    My question is about Magalis, the first

16   person.  Do you see that first person there?  Do you

17   know who that is?

18         A    No.

19         Q    You have no idea who this is, correct?

20         A    No.

21         Q    What about Ariano, do you know who that

22   is?

23         A    No.

24         Q    What about Justin, do you know who that

25   is?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

102

1                    A. Montor-Peran

2        A    I remember a little, but no.

3        Q    What can you tell me about Justin's job

4    title?  Do you know what his role was?

5        A    Robert.

6        Q    I'm asking you about Justin.  Do you know

7    what his job title was?

8        A    I don't know.

9        Q    What about Sotis, do you know who that is?

10       A    No.

11       Q    I know you know Yanos and I know you know

12   Julio.  Do you know Jose, the chef?

13       A    The chef is named --

14       Q    What about Pietro, Walter, Gutiero and

15   Giovanni, do you know any of those names who are

16   chefs?

17       A    No.  Anyone that worked there Kathy can

18   answer that.  I don't know the people that worked

19   there because I only worked there about six months.

20            MR. KATAEV:  Let's take a five minute

21       break and come back at 3:35.

22         (Whereupon, a short recess was taken.)

23            MR. KATAEV:  We are back on the record.  I

24       want to put in a request on the transcript for

25       all communications exchanged between

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

103

1              A. Montor-Peran

2         Mr. Adrian, the witness, and Mr. Mulina as well

3         as any other messages exchanged between Adrian

4         and any other employee at Osteria La Baia

5         concerning the allegations in the complaint.  I

6         will follow up in writing.

7                   (Counsel Request.)

8         MR. BUZZARD:  Taken under advisement.

9    BY MR. KATAEV:

10        Q    I will place up on the screen what will be

11   marked as Defendant's Exhibit E.  Have you ever seen

12   this type of document before?

13   (Defendant's Exhibit E, Marked for Identification.)

14        A    Yes.

15        MR. BUZZARD:  I'll ask for the record is

16        this a document that has been produced in this

17        action?  Do you have a Bates-stamp?

18        MR. KATAEV:  There is no Bates-stamp for

19        this.  As far as I know it has not been

20        requested.

21        MR. BUZZARD:  I don't see how that's

22        possible that it has not been requested.  It

23        would have been covered by 12 of our document

24        requests.

25        MR. KATAEV:  I wasn't the attorney

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

104

                              A. Montor-Peran

1
2       responsible for answering.

3           A     I have never seen this document.

4           Q     You just testified that you recognized.

5       Now you're saying you've never seen it.  Which one

6       is it?

7           A     Now that I'm looking at it, I only

8       received checks.  I could never see this in my

9       touch.

10          Q     On the second page of this document there

11      is this box with additional information about tip

12      credit; do you see that?

13          A     I never saw that.

14          Q     I'm going to place up on the screen what

15      will be marked Defendant's Exhibit F, Bates-stamped

16      Fernandez 101.

17      (Defendant's Exhibit F, Marked for Identification.)

18          Q     Do you recognize this document?

19          A     No.

20          Q     At the top left over here there is a

21      reference to 18 percent gratuity and three percent

22      service charge; do you see that?

23          A     No.

24          Q     You're not familiar with it?

25          A     No.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

105

1                        A. Montor-Peran

2          Q    All right.  We will now mark Defendant's

3     Exhibit G.

4     (Defendant's Exhibit G, Marked for Identification.)

5                    Which is Bates-stamped Fernandez 115.

6     Do you recognize this document?

7          A    Yes.  That's the one I'm taking about for

8     the tips.

9          Q    What is this document?

10         A    The tips.  They reported what the waiters

11    did.  Dinner, lunch, all of that.

12         Q    This is a daily report?

13         A    Yes, exactly.

14         Q    Do you know what percentage you received

15    out of the tip pool and what percentage servers

16    received?

17         A    Fifty percent busboys, 100 percent

18    waiters. if I got $100, the waiters got $200.  You

19    can calculate how much waiters and busboys made.

20              MR. KATAEV:  Let's take a five minute

21         break and I may be done.

22         (Whereupon, a short recess was taken.)

23    BY MR. KATAEV:

24         Q    Adrian, you said you stopped working at

25    Osteria La Baia because you were injured and you

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

106

                        A. Montor-Peran

1
2       were out of work for three months, correct?
3           A    Yes, exactly.  I had knee surgery.  Aside
4       from that I didn't like it there because there was a
5       lot of pressure.  The manager Yanos and Julio.
6           Q    Why did you need knee surgery?
7           A    I had an accident.
8           Q    Was the accident job related or outside of
9       work?
10          A    I was working there.  I had the date for
11      surgery and I couldn't work.
12          Q    You said you had an accident.  Did the
13      accident happen at work or out of work?
14          A    Before I started.
15          Q    The accident happened before you started
16      working, but your knee was so bad that it needed
17      surgery afterwards; is that right?
18          A    Yes.  I had the surgery in January 2025.
19          Q    When was the accident?
20          A    Month eight, 2024.
21          Q    That happened after you started working at
22      Osteria La Baia, right?
23          A    The accident was before.
24          Q    Before you started working the day or
25      before you started working at Osteria La Baia in

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

107

1                      A. Montor-Peran

2      general?

3          A    I was injured when I started working at

4      La Baia.  The doctor told me I needed surgery in

5      January.

6          Q    How did you injure your knee, what

7      happened?

8          A    He ran me over.

9          Q    A car accident?

10         A    Yes.

11         Q    That's not work related, correct?  There

12     was no cars driving in the restaurant, right?

13         A    Yes.

14         Q    Is there anything else that you want me to

15     know that you think is important to tell me in this

16     lawsuit?

17         A    No, not at all.

18         Q    Thank you so much for your time today,

19     Adrian.  It was a privilege to get to know you.  I

20     have no further questions.

21         A    Thank you.

22              MR. BUZZARD:  I have no questions either.

23

24                   (Time noted: 3:50 p.m.)

25

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

108

1                        A. Montor-Peran

2

3

4                    _____

5                    ADRIAN MONTOR-PERAN

6

7    Subscribed and sworn to before me this _____ day

8    of _____ 2025.

9    _____, Notary Public.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

                                                        109

1                      A. Montor-Peran

2

3    EXAMINATION BY                        PAGE

4    MR. KATAEV                            4

5

6    COUNSEL REQUESTS                      PAGE

7    Resume                                37
     Name of busboy                        45
8    Name of accountant                    52
     Copies of photos                      54
9    Copy of pad                           66
     WhatsApp messages                     75
10   Communications exchanged with Adrian  103

11

12                   E X H I B I T S

13

     DEFENDANT'S          DESCRIPTION          PAGE
14

15   Exhibit A          Blank notice and      95
                        acknowledgment form
16   Exhibit B          ECF documentary 12    95
     Exhibit C          ECF documentary 11    98
17   Exhibit D          Plaintiff's           100
                        Responses to
18                      Interrogatories
     Exhibit E          Paycheck summary      103
19   Exhibit F          Fernandez 101         104
     Exhibit G          Fernandez 115         105

20

21

22

23

24

25

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

110

2                C E R T I F I C A T I O N

3

4    STATE OF NEW YORK    )

5                    ) ss.:

6    COUNTY OF QUEENS    )

7

8        I, RUTHAYN SHALOM, a Court Reporter

9    and Notary Public within and for the State

10   of New York, do hereby certify:

11        That the witness whose deposition

12   is hereinbefore set forth, was duly sworn

13   by me, and that the within transcript is a

14   true record of the testimony given by such

15   witness.

16        I further certify that I am not

17   related to any of the parties to this action

18   by blood or marriage, and that I am in no way

19   interested in the outcome of this matter.

20        IN WITNESS WHEREOF, I have hereunto

21   set my hand this 3rd day of December, 2025.

22

23

24        _____
             *Ruthayn Shalom*

25               RUTHAYN SHALOM

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

111

ERRATA SHEET


NAME OF CASE: FERNANDEZ v BULLDOZER et al.
DATE OF DEPOSITION: December 2, 2025
NAME OF DEPONENT: Adrian Montor-Peran
PAGE   LINE(S)        CHANGE              REASON
_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____

_____/_____/_____/_____


                    _____
                    ADRIAN MONTOR-PERAN

Subscribed and sworn to before me
this _____ day of _____, 2025
_____, Notary Public.


          _____

          MY COMMISSION EXPIRES:

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

112

**A**

**A-R-T-E-M-I-O** 45:8
 45:12
**a.m** 1:12
**ability** 10:6
**able** 37:4 53:12
**acceptable** 5:4
**access** 59:23 98:12
**accident** 106:7,8,12
 106:13,15,19,23
 107:9
**accountant** 50:14,25
 52:10,13,15 109:8
**acknowledgment**
 95:7 109:15
**action** 90:8,9 91:5,12
 91:22 92:4,7,15
 93:10,10 103:17
 110:17
**actions** 91:20
**actual** 12:14 39:24
 56:6
**additional** 104:11
**address** 4:8 17:14
 40:4 75:6 89:19
**adequate** 78:17,18
**administrative** 24:5
**Adrian** 1:16 2:4 4:5
 5:12,13,18,20 7:16
 7:17,23 11:2,21
 12:11 17:24 18:2,3
 18:19 19:20 20:5
 30:17 51:14 64:13
 64:20 65:7 67:3,20
 71:17,18 81:15 85:8
 91:24 93:4 95:16
 96:14,18 98:8 103:2
 103:3 105:24
 107:19 108:5
 109:10 111:5,18
**advisement** 103:8
**affect** 10:5
**affidavit** 15:12,21,25
**Afternoon** 71:5
**afterward** 64:24

**against-** 1:7
**agency** 24:6
**agent** 23:24
**aggressive** 84:23
**ago** 18:7,11,15 20:21
 25:6 26:14 54:8,20
 73:5 96:24
**agree** 73:8,16,25
**AGREED** 3:2,7,11
**agreement** 4:15
 81:17 97:6,9
**ah** 6:20 8:3,5
**ahead** 63:10
**al** 111:4
**alcohol** 10:4
**Alex** 2:13 4:2
**Alivia** 2:14
**allegations** 103:5
**allow** 19:7 91:13 92:8
**allows** 4:23
**Amber** 36:3,6,13
**America** 18:16 19:21
 19:25 26:23 27:21
**amount** 58:16,22
 59:15 62:7 70:8
 72:5,22
**and/or** 81:20
**Andre** 16:8,15,19
**angry** 85:7
**answer** 6:22,23 7:16
 7:20 8:4,21 9:5,19
 11:23 12:13 18:4,20
 19:8,11 20:5 24:11
 33:25 41:19,25
 51:13,18,24 53:18
 53:25 55:12,13 56:9
 57:20 58:25 62:23
 70:22 85:14 91:14
 91:16,24 92:8,10,18
 93:3 96:16 100:24
 101:7 102:18
**answered** 56:9 58:24
 101:4
**answering** 7:5,14
 8:17,25 12:11 104:2

**answers** 9:12,25 10:9
**anybody** 46:23 77:4
 80:9
**anymore** 18:20
**apart** 69:7
**app** 40:10
**appear** 100:8
**application** 25:8,10
 39:2,4,5,7,10,16,17
 39:21,23,24 40:2,6
 40:10,16 70:20 75:2
 94:21 95:12
**applied** 25:7 39:15
 39:15
**apply** 39:20 99:24
**appointment** 84:19
**apprenticeship** 27:2
**appropriate** 64:21
**approximately** 33:17
**Ariano** 101:21
**arrested** 20:14
**arrived** 18:6,10,14
 27:6
**Artemio** 45:8,12
 77:12,14,17,21 78:3
 78:11,21,25 79:8
**Artemio's** 85:16
**Aside** 68:25 106:3
**asked** 7:19 10:14
 11:22 12:9 14:16
 36:17 43:22 53:14
 53:21 56:8,18 57:16
 83:8,16,22 85:13,14
 87:16 97:3,20
**asking** 7:4 38:7 39:10
 39:14 56:4 63:24
 65:25 77:10 81:22
 85:10 90:24 91:11
 91:18,25 102:6
**asks** 5:16 25:10
**assistance** 25:14,17
 25:20
**assume** 9:6
**assuming** 38:3 73:24
**attempt** 5:8

**attempting** 92:2
**attend** 26:4,11 82:12
**attention** 30:22
 100:23
**attorney** 5:2,21 12:15
 12:23,24 13:7,10
 14:25 16:6,13 17:2
 20:24 21:3,8,11
 37:9 38:6,8,9 54:11
 57:24 64:24 65:14
 65:25 89:18 96:5,9
 96:21,24 103:25
**attorney/client** 5:9
 96:13
**attorneys** 2:3,8 3:3
 10:13 14:5 21:14,15
 21:18 22:17 23:12
 58:7 75:18 96:15,19
**authorities** 61:4
**authority** 101:12
**Avenue** 2:9 22:13
**average** 47:6,8 71:22
**aware** 15:24 86:13
 90:23 94:12,15 96:8
 96:11,20 100:3

**B**

**B** 95:14,15 98:2,17
 109:12,16
**back** 18:7 30:16 31:6
 32:15 37:4 39:14
 52:2 65:7,10 66:5
 74:24 85:3 92:23,25
 98:17 102:21,23
**bad** 81:24 106:16
**badly** 77:24
**Baia** 1:8 6:13 11:5
 15:25 29:2,16,19
 31:8,19 32:10,17,23
 34:19 35:2,8,14,24
 36:2,9 37:19,21
 38:4,15,19 40:22,24
 42:13 43:6,9,12,24
 44:7,15 45:11,14
 49:3 50:16 52:20

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

113

56:11 58:2,5,10,13
60:22,24 61:8,25
63:18 68:6,16 74:4
74:25 80:2 82:17
83:4 84:2,8,16 85:5
85:12,17,20 86:24
87:3,9,10,20,21,23
87:25 88:8,9,12
94:10,19 95:11
97:23 98:24 101:11
103:4 105:25
106:22,25 107:4
**barely** 86:22
**based** 52:9 62:8 94:8
**basis** 21:22 41:16,22
49:4,6 59:12,14
79:3
**Bates-stamp** 103:17
103:18
**Bates-stamped**
104:15 105:5
**bathroom** 9:18
**beginning** 39:11 77:3
83:16
**behalf** 1:3
**belief** 79:2,4
**believe** 51:10 79:8
81:18 90:16 94:7
**believed** 76:25 77:5
78:12
**benefit** 25:5 92:6
**benefits** 24:16,19
25:7,22,23
**best** 9:9,14 34:9
55:18
**better** 34:6 46:5
**beyond** 5:7
**birth** 17:21
**bit** 75:2
**blank** 95:6 109:15
**blood** 110:18
**boarders** 91:11
**body** 8:21
**book** 63:20
**born** 17:24,25 18:2

**bounded** 87:25
**bounds** 5:7
**box** 63:13,14,17,18
64:4 104:11
**break** 9:17,20 30:25
31:2 65:3,9,13,13
65:16 67:8,9 81:12
102:21 105:21
**bring** 91:21
**bringing** 92:3
**Broadway** 2:5
**brought** 92:6
**Bulldozer** 1:8 5:23
6:4,15 111:4
**busboy** 30:7,9,11
31:9,15 35:11 44:25
45:9 63:16 85:18
109:7
**busboy's** 45:3
**busboys** 32:3 33:2
45:23 59:8 68:9,22
69:6 82:15,19 85:22
86:2,14 105:17,19
**busser** 40:22 43:11
44:6
**bussers** 46:4,5 68:20
76:19 97:24 99:3,20
99:21
**busy** 34:15 47:18
70:10,12
**BUZZARD** 2:6 5:5
5:13,15 7:17,19
18:17 19:2,7 23:15
33:24 41:18,24
51:13 52:4,11 53:17
53:24 55:11,23 56:8
58:24 62:22 65:2
67:3 68:3 71:14
75:23 80:20 90:21
91:9,18 92:2,17,23
93:3 96:12 100:6
103:8,15,21 107:22

_____
**C**
**C** 2:2 98:5,6 109:16

110:2,2
**calculate** 105:19
**calculating** 73:21
**call** 5:12,18 12:22
14:9 51:21
**called** 22:10 24:6
29:20 39:18 57:16
66:10 98:11
**calls** 96:13
**camera** 67:4
**captain** 68:23 69:3
**car** 107:9
**card** 60:10,11 66:20
68:5
**cards** 60:14
**care** 25:4 74:18
**career** 29:23 33:16
33:18
**cars** 107:12
**case** 1:6 5:22,23 6:9
10:25 11:9 15:14
17:5,8,12 21:8,12
21:14,15,19,23
22:15,20,24 23:3,12
23:18 65:22 90:24
92:3,6,14 93:8
96:25 97:2 111:4
**cash** 60:5 61:12,21
66:20 67:15,17,19
**cashing** 50:6
**cellphone** 14:9,11
**certification** 4:19
**certify** 110:10,16
**change** 48:6 70:6,9
111:5
**changed** 43:12
**charge** 24:9 65:12
94:4,16 104:22
**charged** 60:14
**charging** 67:10
**check** 39:8 49:11,12
49:15,19,21 55:4,20
56:2,7 59:17 60:12
66:21 67:16 68:5,13
68:14 71:24 73:21

81:4 83:24
**checks** 37:23 38:2,12
49:25 50:2,5,8,9
56:5 59:22 87:24
104:8
**chef** 102:12,13
**chefs** 102:16
**children** 20:12
**claim** 53:12 55:20,22
56:25 57:7,12 81:19
81:20
**claims** 7:6
**clarification** 12:17
**clarify** 45:9
**clarity** 46:22
**class** 90:8 91:5,12,19
91:21 92:3,6,15
93:10
**classes** 27:4
**clean** 31:10 45:24
76:6,7,13,15,18,21
**cleaning** 76:11,16
**clear** 8:15 9:13 51:16
92:7
**clearly** 92:4
**client** 65:3 91:11,20
**close** 43:16 48:5 76:3
76:4,10,20 91:15
**closer** 27:11
**closing** 75:25
**coaching** 51:19
**collected** 62:6 66:7,9
**collection** 90:9
**collective** 93:10
**college** 26:20
**combined** 73:22
**come** 18:16 30:16
55:21 60:8 83:24
102:21
**commented** 87:10
**COMMISSION**
111:23
**communicate** 14:4
87:18
**communication**

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

114

96:13
**communications** 5:9
  102:25 109:10
**compensation** 24:16
  70:6 87:8
**compilation** 85:11
**complain** 74:5,8 77:4
  80:23 81:3
**complained** 78:14,16
  78:20,20,25 80:13
  80:25 82:22,23
**complaint** 17:4 22:23
  23:8,17,20 24:3
  79:7,18,21 80:6,10
  90:23 103:5
**complaints** 45:22
  46:3,4 69:6 74:12
  74:14 79:11,12,16
  79:22 85:20,22
**completely** 18:21
**completing** 39:21
**complicated** 34:16
**computer** 53:6 89:16
  89:17
**concerning** 15:14
  16:3 103:5
**conduct** 4:21
**conference** 1:18
**conferred** 19:17
**confirm** 6:24 44:4
  46:14
**conscious** 52:24
**constitutes** 51:19
**consumed** 10:4
**contact** 88:13,23
  89:21,24,24
**contacted** 89:23,25
**contained** 97:11
**contemporize** 55:12
**contents** 66:2
**Continued** 71:11
**conversation** 10:24
  14:20 17:11 19:17
  23:4
**conversations** 17:7

**Cooney** 2:14
**copies** 65:25 109:8
**copy** 4:25 54:11
  71:13 97:8 109:9
**Corona** 13:23,25
  14:2 17:14
**correct** 11:2,6,15,20
  11:24 12:20 13:3,8
  13:25 15:2 20:8,17
  23:14 24:9 25:8,11
  26:17 28:4 30:9
  31:12 33:10 35:18
  38:20,23 39:5,18,22
  40:11,25 41:4,17
  42:15,18 43:12,14
  43:17,25 44:7,15,21
  45:12,16,21 46:6,9
  46:18 47:9 48:19
  49:4,7,15 53:9 55:7
  56:21 59:16 63:19
  64:8,11,14 65:11,17
  67:15 69:4 70:4
  72:2,6 73:13,19
  74:2 79:13 80:19
  83:18 86:2 88:20,24
  90:16 93:19 94:8
  95:21 97:12 98:18
  98:21 99:6 101:19
  106:2 107:11
**correctly** 11:13 13:5
  14:24 26:15 27:25
  28:14 42:8,12 51:9
  54:24 55:21 61:20
  90:14
**counsel** 19:15 37:13
  38:11 45:7 51:15
  52:19 54:13 66:4
  75:22 103:7 109:6
**counted** 52:25
**country** 18:11 19:10
  19:12
**COUNTY** 110:6
**course** 7:3 10:20
  30:24 45:17 46:16
  48:20 50:4 53:10

55:3 63:9 68:8 79:5
  80:8,11,25 89:4
  90:17,22 91:2 93:12
  99:25 100:10
**court** 1:1,17 7:12,25
  8:16,17 22:24 51:21
  91:23 92:9,19,22
  110:8
**courtesy** 9:2
**covered** 4:21 103:23
**coworker** 62:13
  96:22
**coworkers** 77:6,9,11
  78:22 79:16 85:24
  99:10
**credit** 32:13,19 33:23
  35:22 60:10,14
  66:20 68:5 69:25
  70:9 104:12
**crystal** 9:13
**culinary** 27:4
**currently** 24:18 25:2
  86:20
**customer** 60:9,11
  61:11,14,21 62:14
  63:14
**customers** 31:12 59:4
  61:9
**cutting** 19:10

___

**D**

**D** 71:7 100:18,19
  109:17
**D/B/A/** 1:8
**daily** 59:12,14,19
  105:12
**date** 17:21 44:9
  106:10 111:4
**day** 45:19 47:8,9,13
  47:16,21 48:19
  59:20 66:23 67:14
  67:24 75:14 78:4
  86:15 106:24 108:7
  110:21 111:20
**days** 36:5,7 83:22

84:10,12,13,13
**December** 1:12 34:22
  36:2,10 38:23 45:15
  74:5 88:12,22
  110:21 111:4
**decide** 56:25 77:21
**decided** 57:7,12
**decision** 93:25
**declaration** 15:13,21
  16:2
**deducted** 60:13
**Defendant's** 95:3,4
  95:14,15 98:2,5,6
  100:18,19 103:11
  103:13 104:15,17
  105:2,4 109:13
**Defendants** 1:10 2:8
  5:22,22 7:7 19:16
  100:22
**demand** 22:18
**Department** 23:21,25
  95:8
**depended** 47:19
**Depending** 48:4
**Depends** 76:5
**DEPONENT** 111:5
**deposed** 8:8
**deposit** 49:9
**depositing** 50:6
**deposition** 5:7 8:9,13
  9:25 11:19,24 12:2
  12:5,12 13:7,12
  14:3,17,20,21,22
  16:12,23 17:2 19:6
  22:20 30:18,23 31:3
  64:21 65:22 67:2,21
  67:23 100:3,9,12
  110:11 111:4
**depositions** 4:21
**describe** 31:8
**description** 43:6
  109:13
**determination** 76:24
**diaries** 84:14 85:11
**diary** 85:4

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

115

21:17 27:17 29:5
32:6 82:20 96:9
**differently** 99:21
**dinner** 47:25 48:2,14
  105:11
**dinners** 47:17
**direct** 49:9,11
**direction** 18:25
**directly** 59:3 61:8,11
  101:4
**discipline** 47:3
**disciplined** 46:18,20
  46:23
**disclose** 57:21
**disclosing** 12:14
  23:11
**discriminated** 21:22
  23:10
**discrimination** 23:7
  24:9 96:25
**discuss** 48:23 65:14
  89:5
**discussed** 45:19
  57:21
**discussion** 19:14
  48:25 49:18 70:25
  78:9 96:4 100:16
**discussions** 12:14
**dispute** 19:18 92:22
**dissuade** 92:3
**distinguished** 99:20
**distribute** 64:7
**district** 1:1,1 4:22
**divide** 64:2 72:20,20
**divided** 62:9 69:8
**dividing** 72:9
**doctor** 84:18 107:4
**doctor's** 84:21
**document** 15:13,16
  15:17,20 16:2 37:10
  38:7 51:6 58:15
  89:11 94:23 95:16
  95:17 96:5 98:8,10
  98:13,18,20 100:20
  103:12,16,23 104:3

104:10,18 105:6,9
**documentary** 98:3,7
  109:16,16
**documents** 15:10
  37:16,18,20,21 38:4
  38:12 44:3 58:4
  94:18
**doing** 8:24 22:21
  55:17 64:20 83:20
  92:4
**dollars** 63:16 66:20
**double** 48:14
**drinking** 76:5
**driving** 107:12
**drugs** 10:4
**duly** 4:3,6 71:8
  110:12
**duties** 31:9 43:12

---

**E**

**E** 2:2,2 71:7 103:11
  103:13 109:12,18
  110:2
**earlier** 49:22 53:14
  53:21 64:6,9 66:22
  67:22 71:17,18
  75:25
**earn** 71:22
**earned** 60:22,25
**ECF** 98:3,7 109:16
  109:16
**education** 25:23
  26:22
**educational** 25:19
**EEOC** 24:6,9
**effective** 8:12
**efficient** 8:13
**eight** 10:19 18:7,11
  18:15 33:18 82:18
  106:20
**either** 43:16 107:22
**electronically** 95:2
  95:20
**Eleven** 48:12
**email** 18:24 75:6,7

89:19 92:21 97:10
  97:11
**emailing** 92:19
**Emanuel** 2:10 5:20
**emanuel@sagelega...**
  2:10
**employee** 43:8,24
  74:25 85:23 86:8
  94:19,21 103:4
**employees** 15:24
  56:19 57:9 61:7
  69:9 76:15 85:20
  86:10 93:14
**employer** 6:10 23:18
  23:21
**employer's** 6:12
**employers** 33:9
**employment** 9:11
  11:4 16:3 24:2 34:3
  39:2 40:5,7,9 56:11
  58:5 75:2 84:15
  85:5,12 88:22 101:7
**encourage** 46:5
**ended** 34:8 46:12
**English** 10:15,21
  40:11 95:23 96:2
**enter** 19:21
**entered** 19:11,20
**entering** 19:24
**entire** 29:22
**entitled** 9:14 19:4
  51:10 81:19
**entry** 18:20 19:10
**equal** 62:7
**ERRATA** 111:2
**ESQ** 2:6,10
**et** 111:4
**evening** 59:24 64:7
  64:10 66:6 69:18,22
**event** 92:22 99:4
**events** 9:10 94:10,13
  94:16 98:23,25 99:6
  99:9,16 100:2
**everybody** 90:24
  91:5

**everyday** 47:10
**exactly** 45:22 80:8
  89:9 105:13 106:3
**exaggerated** 74:19,20
**examination** 1:16 3:4
  3:8 4:11,24 71:10
  109:3
**examined** 4:9 71:9
**example** 34:5 75:13
**exception** 5:5
**exchange** 84:24
  87:14 89:2
**exchanged** 78:5
  102:25 103:3
  109:10
**exclaimed** 44:10,12
**excuse** 16:17
**Exhibit** 95:3,4,14,15
  98:2,5,6,17 100:18
  100:19 103:11,13
  104:15,17 105:3,4
  109:15,16,16,17,18
  109:19,19
**existed** 31:22
**experience** 78:18
  83:17 99:18,22
**experienced** 99:20
**EXPIRES** 111:23
**explain** 31:25 41:17
  41:23 70:11 96:5
**explained** 75:8
**extent** 51:14,18 53:17
  96:12
**extra** 48:8
**extreme** 91:13
**extremely** 91:14

---

**F**

**F** 104:15,17 109:19
  110:2
**face** 6:5
**Facebook** 86:21,22
  86:23
**facts** 94:8
**fair** 26:19 29:22

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran    ---    December 2, 2025

31:14 33:21 48:17
62:6 81:23 85:19
90:18 99:19
**familiar** 6:2 24:5
104:24
**family** 63:21,25
**far** 18:18 103:19
**fast** 74:10
**February** 36:22
**federal** 4:17,18 5:4
23:22 88:10
**fee** 60:13
**felt** 80:6
**female** 35:12
**Fernandez** 1:3 2:4
13:3,8 14:5,25 17:2
87:2,14 101:4
104:16 105:5
109:19,19 111:4
**Fifty** 105:17
**figure** 48:23 82:3
**file** 24:3 50:10,13,19
50:23
**filed** 17:5 22:15,24
23:2,12,17,20 24:8
24:13,15
**filing** 3:8 4:18 91:12
**fill** 25:8 39:2 40:6,16
**filled** 39:23 95:12
**filling** 40:5,9
**final** 71:15
**find** 21:3,18 54:9
57:23 86:9 88:16
**fine** 10:3 30:13 55:15
67:10
**finish** 8:25 100:13
**finished** 26:12 53:20
**fire** 84:20 93:13,25
**fired** 34:10 36:15
46:8,10,13,15 80:10
80:12,16,19,23 81:2
82:23,24 93:15,22
94:7,7
**firm** 21:15
**first** 4:6 9:20 11:4

15:15 19:20 25:5
27:6,7,19 28:8,8
34:18 38:18,25 42:6
42:13 44:6,17 45:11
55:17 58:13 74:24
89:21,23 94:19
101:15,16
**five** 20:21 63:16 65:2
65:9 76:9 84:9,12
84:13 96:24 102:20
105:20
**focus** 28:7 100:22
**follow** 37:11 38:6
45:5 54:10 55:16
103:6
**follows** 4:10 71:9
**food** 24:21,23 25:16
25:22 46:2
**forget** 29:21 43:22
**forgot** 45:4 81:7
**form** 3:12 4:20,24
23:15 25:2,13,16,19
31:16 33:24 41:18
41:24 51:17 52:4,11
80:20 90:21 95:7,10
95:19,23 97:5,11,15
109:15
**formal** 37:9 38:7
75:20 82:8
**former** 33:8
**forms** 40:7
**forth** 110:12
**found** 34:6
**four** 48:4 84:13
100:23
**French** 29:8,13
**frequently** 59:10
**Fridays** 48:7,9,18
**friend** 21:20 35:3
57:25 87:16 88:17
97:3,16
**friend's** 35:4
**front** 46:18 64:13
67:4
**full** 47:23,24

**further** 3:7,11 71:9
107:20 110:16

_____

**G**

**G** 105:3,4 109:19
**general** 17:8,12 42:7
107:2
**generally** 31:25
71:18 73:23
**gestures** 8:22
**getting** 27:11 42:13
83:21 90:19 91:14
94:24
**Giovanni** 102:15
**give** 9:2 10:9 37:12
38:8 50:14 61:21
62:14,18 64:24
69:14 80:12 90:13
**given** 49:12 59:24
110:14
**gives** 63:14,16
**giving** 45:23 62:15
**go** 5:7 8:11 11:17
18:23 19:2,13 26:2
26:19,25 27:4 36:2
37:4 48:22 50:5
52:7 57:17 63:10
74:24 84:4 91:22
92:9,15 100:15
**goal** 81:15
**goes** 8:16 88:20
**going** 8:11 18:19 19:5
19:18 30:15 37:9
38:6 39:14 42:9
43:22 48:22 51:15
51:20,21 52:17
54:10 55:9 63:21,25
65:25 66:5 71:12
75:10,18 83:22 85:3
91:6 95:2,13 98:17
100:17,22,24
104:14
**good** 5:20 8:24 10:24
81:11
**Google** 53:7 54:7

**government** 24:18
25:4
**graduate** 26:13
**graduated** 26:16
**graduating** 26:20
**gratuity** 94:12
104:21
**Great** 38:14 75:18
**Grill** 22:10 23:13,18
27:24 28:2,19,25
**gross** 72:5
**ground** 8:11 9:22
**Group** 1:8 5:23
**guess** 9:12 81:11
**Gutiero** 102:14

_____

**H**

**H** 109:12
**Half** 78:13
**hand** 4:14 62:10,15
62:17,19 63:2 94:5
110:21
**handbook** 43:8,24
44:4
**handed** 61:11
**hands** 61:12 62:20
**handwritten** 54:17
54:25
**happen** 59:10,12
106:13
**happened** 9:15
106:15,21 107:7
**happens** 51:20
**harassment** 23:7
**hard** 55:16
**he'll** 84:20
**head** 24:10
**health** 25:2
**hear** 5:13 7:17 8:18
**held** 1:17,17 19:14
48:25 49:18 70:25
78:9 100:16
**help** 25:4 31:10 96:24
**hereinbefore** 110:12
**hereto** 3:4

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

117

**hereunto** 110:20
**Herrera-Schmidt**
  2:13 4:2
**high** 26:4,11,16,20
  72:10,21
**higher** 72:5
**hire** 42:2,3,23
**hired** 35:18 40:14,15
  42:4,5,15,17 44:22
  83:21
**home** 72:3
**Hospitality** 1:8 5:23
**host** 69:18
**hour** 39:6 58:12,14
  58:17,22,22 69:23
  70:15,15,17 72:11
  72:13,14,16,19
  73:13,18,24
**hourly** 49:4 70:4,6
**hours** 10:5 15:6 23:9
  39:9 48:10,22 50:9
  52:21,22,23,25,25
  53:12 54:2,5,16
  55:5,19,20,22 58:19
  70:21 71:20 72:10
  72:21 75:10,11
  79:10
**house** 13:22
**housing** 25:13,22
**huh** 6:20 8:3,5 65:18
**humiliated** 21:24
**Hundred** 47:14
**hypothetically** 73:23

**I**
**idea** 73:6,7 101:19
**Identification** 95:4
  95:15 98:6 100:19
  103:13 104:17
  105:4
**identify** 29:6 101:5
**immigration** 19:9
**important** 107:15
**inappropriate** 91:10
**included** 60:9 73:25

**including** 70:14
**income** 25:11
**incompletely** 91:10
**individuals** 101:6
**inexperienced** 99:21
**information** 25:11
  37:10 39:21 40:3
  75:19 104:11
**injure** 107:6
**injured** 56:13 105:25
  107:3
**injury** 36:25
**input** 40:3
**insinuate** 92:5
**Instagram** 86:21
**instruct** 18:19 96:14
**insulted** 21:25
**insurance** 25:3 84:22
**interested** 90:19
  110:19
**interpreter** 2:13 4:3
  4:7,10 8:18 10:12
  10:14 16:9 17:9
  32:14 41:20 51:4,7
  51:25 53:19 55:9,16
  64:17
**Interrogatories**
  100:21 109:18
**interrogatory** 52:18
  100:23
**interview** 42:24
  64:16 83:18,20
**intimidate** 91:20
**investigation** 24:2
**involve** 92:9
**involved** 91:6
**irrelevant** 18:21
**issued** 100:22
**Italian** 27:23 28:2,7
  28:15,24

**J**
**Jamaica** 2:9,9
**January** 36:22
  106:18 107:5

**Javier** 2:4 88:20,21
  97:17
**job** 8:24 27:7 30:11
  34:6,16,25 35:8
  36:18 39:20 42:13
  43:5 61:25 85:16
  86:5 87:2 102:3,7
  106:8
**jobs** 36:15 37:16
**join** 89:8 96:9,20
**jointly** 92:22
**Jose** 102:12
**Joseph** 2:3 16:13,18
  16:20,22 57:23
  89:12,18,23,24 90:4
  90:5,7
**journal** 85:4
**journals** 84:14 85:10
**judge** 4:23 18:24
**judge's** 4:22 91:17
  92:20
**Julio** 40:23 41:3 42:6
  42:14,17,20,22,24
  43:3 56:15,16,21
  61:16,21 62:13,16
  62:25 68:23 84:19
  84:25 85:9,9,13
  93:13,21,24 94:6
  101:14 102:12
  106:5
**July** 98:18
**jump** 97:3
**June** 34:22,22 36:10
  38:19,22 44:15,17
  45:15 74:5 98:21
**Justin** 101:24 102:6
**Justin's** 102:3

**K**
**Kataev** 2:10 4:12,13
  5:10,21 17:23 18:23
  19:4,13,15,19 30:14
  31:5 42:10 45:5
  48:21 49:2,17 51:15
  52:17 55:14 65:6

66:25 67:7 70:24
  71:11,12,15 78:8,10
  81:11,14 91:16,25
  92:10,19 93:5 95:2
  96:16,17 100:15,17
  102:20,23 103:9,18
  103:25 105:20,23
  109:4
**Katherine** 1:3 2:4
  13:3,7,10 16:12,23
  87:2,14 88:13 101:4
**Kathy** 12:22 102:17
**Katie** 12:22
**keep** 8:15 37:11 38:9
  60:18 63:17,21,25
  75:19,24 84:14 85:4
**kept** 61:17 62:10,21
  63:2,4,6,22 64:2
**kind** 18:3 20:5 64:22
  80:4
**KIRSCHENBAUM**
  2:3
**kitchen** 30:3
**knee** 36:25 56:13
  106:3,6,16 107:6
**knew** 6:5 39:6 44:25
  59:17 70:19
**knock** 19:3,5
**know** 6:3,4,6 12:23
  15:17 20:4 32:25
  41:7,11 42:22 43:4
  45:4 51:7 52:8,24
  53:7 54:7,20 58:15
  58:16,20,21,23
  59:15,21 60:4,16,17
  61:10,18 62:16 63:4
  63:5,10 64:5,18,18
  70:22 72:12,14,15
  72:24 73:2,15,20
  77:20 78:24 80:9,14
  80:17 81:17,25 82:2
  82:6,8,9,25 85:8,25
  86:10 87:20,25 88:5
  88:8,10,11 90:12
  91:3,19 93:24 94:5

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

118

94:6,14,17 96:22
97:14,20 98:15,22
98:22 99:8,11,15
101:17,21,24 102:4
102:6,8,9,11,11,11
102:11,12,15,18
103:19 105:14
107:15,19
**knowledge** 21:5 24:8
43:2 60:13 61:3,7
62:5 70:8 77:17
**knows** 79:6 94:4

———————

**L**

**La** 1:8 6:13 11:5
15:25 29:2,16,19
31:8,19 32:10,17,23
34:19,25 35:7,14,24
36:2,9 37:18,21
38:4,15,19 40:22,24
42:13 43:6,9,12,23
44:7,14 45:11,14
49:3 50:16 52:20
56:11 58:2,5,10,13
60:22,24 61:8,25
63:18 68:6,16 74:4
74:25 80:2 82:17
83:4 84:2,8,16 85:5
85:12,16,20 86:24
87:3,8,10,20,21,23
87:25 88:8,9,12
94:10,19 95:11
97:23 98:24 101:11
103:4 105:25
106:22,25 107:4
**Labor** 23:21,25 95:8
**language** 10:21
**laws** 73:14
**lawsuit** 15:16 18:22
20:17,20,20,22,24
21:5 22:14 23:3,6
35:5 53:11 54:21,22
57:17 58:2 80:2
81:16 88:16 89:6,8
89:13 90:15 91:12

95:20 96:9,20 97:4
98:12 107:16
**lawyer** 12:9 23:2
57:16 77:7 90:5,7
97:17
**lawyer's** 21:4
**lawyers** 98:12
**lead** 69:3
**learn** 10:21
**learned** 23:13
**learning** 40:13
**leave** 31:3 56:13 63:8
**leaves** 76:6 81:8
**leaving** 34:9
**left** 19:25 34:10,12,22
42:11 48:17 56:22
76:17 77:20 78:4
80:14,15,16 81:9
82:25 88:12,22 89:7
91:2 93:16 100:13
104:20
**legal** 2:8,14 37:10
78:7 87:10 97:2
**Let's** 18:23 19:6,13
28:7 74:24 100:15
102:20 105:20
**letter** 22:18
**Lexington** 22:12
**life** 36:20
**limited** 4:23
**line** 91:15 92:9
**LINE(S)** 111:5
**link** 89:12,14
**list** 11:8 86:14,16
**listed** 10:25 11:5,10
37:6 101:8
**little** 10:23 27:23
37:3 53:5 74:25
96:3 102:2
**live** 17:14,17 20:4
**LLC** 2:8
**LLP** 2:3
**located** 13:21 22:11
**log** 75:9
**logic** 41:15,21

**logical** 41:12
**logistics** 48:24
**long** 10:17 15:4 28:11
54:8 69:21 76:4,7
77:12,20 79:5 93:9
100:13
**longer** 36:4 91:7
**look** 54:14 86:8
**looked** 60:2 85:6
**looking** 9:9 104:7
**lost** 50:22 54:18 55:9
**lot** 27:18 28:13 34:17
81:9 84:23 96:3
106:5
**loud** 8:15
**low** 72:9,20
**lowest** 47:12
**LUCAS** 2:6
**lucas@jk-llp.com**
2:6
**lunch** 48:7,10,13,23
105:11
**Luncheon** 71:3
**lying** 84:22

———————

**M**

**M** 71:7
**Magalis** 101:12,15
**main** 42:7
**maintained** 88:13,23
**male** 35:12,13
**man** 45:11
**managed** 101:6
**management** 74:6,13
79:21 83:10,14
**manager** 35:16 41:5
41:6,8,9,10,11,12
41:13,13,14,14,15
41:16,17,21,22,23
42:7,7,21,23,23
56:15 66:13,19
68:25 84:19 94:3
97:23 106:5
**managers** 59:25
60:23 66:16 86:19

**manages** 97:24
**mandatory** 94:12
**Manhattan** 27:10,11
27:21
**March** 17:22 36:22
**Marianna** 1:9 5:24
6:6,21,25 7:6
**mark** 19:6 95:3
100:17 105:2
**marked** 95:4,14,15
98:5,6 100:19
103:11,13 104:15
104:17 105:4
**marriage** 110:18
**married** 20:5,8,10,11
**matter** 90:20 110:19
**mean** 42:21 80:4
**means** 93:18
**media** 86:20
**medication** 10:5
**meet** 64:10
**meeting** 14:6 46:11
46:12,15,17,24 64:7
100:14
**meetings** 45:16,18
46:9 82:10,12
**memory** 9:13 34:9
**messages** 75:16,20
78:5 79:15 84:24
89:2 103:3 109:9
**met** 35:15 90:4
**Mexico** 18:5,8 26:2,4
26:11,20
**middle** 31:3
**midtown** 27:13,14,22
**mind** 12:17
**mine** 62:13
**minimum** 32:12,19
32:22 33:5 47:17
66:22 72:24 73:8,11
73:18 74:2
**minute** 65:3,9 102:20
105:20
**minutes** 76:9
**missed** 17:19

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

119

misstates 53:18 62:22
  68:3
Mistakes 53:24
misunderstood 8:5
MOLINA 2:4
moment 53:10 79:25
Monday 75:13
money 34:16 41:6,7
  51:5 58:22 59:7
  60:3 61:15 62:14
  63:7,13 70:13 80:5
  90:19,25 91:7,8
  92:13 93:8,11
monies 90:16
month 29:17 34:21
  57:2,22 78:13
  106:20
months 87:13 88:7
  102:19 106:2
Montor-Peran 1:16
  2:4 4:1,5 5:1 6:1 7:1
  8:1 9:1 10:1 11:1,2
  12:1 13:1 14:1 15:1
  16:1 17:1 18:1 19:1
  20:1 21:1 22:1 23:1
  24:1 25:1 26:1 27:1
  28:1 29:1 30:1 31:1
  32:1 33:1 34:1 35:1
  36:1 37:1 38:1 39:1
  40:1 41:1 42:1 43:1
  44:1 45:1 46:1 47:1
  48:1 49:1 50:1 51:1
  52:1 53:1 54:1 55:1
  56:1 57:1 58:1 59:1
  60:1 61:1 62:1 63:1
  64:1 65:1 66:1 67:1
  68:1 69:1 70:1 71:1
  72:1 73:1 74:1 75:1
  76:1 77:1 78:1 79:1
  80:1 81:1 82:1 83:1
  84:1 85:1 86:1 87:1
  88:1 89:1 90:1 91:1
  92:1 93:1 94:1 95:1
  96:1 97:1 98:1 99:1
  100:1 101:1 102:1

103:1 104:1 105:1
  106:1 107:1 108:1,5
  109:1 111:5,18
morning 5:20
moved 27:18
Mulina 35:6,7,12,15
  88:18,21,23 89:3
  97:17 98:20 103:2
mumbling 8:22

            N

N 2:2 71:7,7,7 110:2
name 5:20 6:5,12
  10:25 11:6,8,9,14
  11:18 21:9 22:9
  27:16 29:12,21 35:4
  40:4 45:3,4,12 58:2
  64:18,19,24 75:9
  81:6,7 86:6 88:20
  94:5 97:17 98:16
  109:7,8 111:4,5
named 102:13
names 6:2 11:17
  64:15,17 77:11
  78:23,24 80:17
  82:25 85:25 86:8,10
  99:11 101:9 102:15
national 22:3
natural 63:12
nature 45:20
need 6:22 8:4 9:17,19
  10:13 11:20 24:10
  26:8 30:22,25 67:8
  67:20 106:6
needed 44:23 45:10
  48:16 54:21 80:5
  106:16 107:4
negotiate 83:21
net 72:2
never 6:5 20:8 23:3,4
  24:8 29:24 34:10
  39:6,7,8 43:12 50:8
  50:18,19 52:23
  58:15,18 60:2,3
  62:13 67:17 70:19

70:20 78:5 83:8
  87:16 99:3,15 104:3
  104:5,8,13
nevermind 31:6
new 1:1,20 2:5,5,9
  4:4,8,9 19:21,23,25
  20:2 23:25 27:8,9
  27:21 72:25 73:12
  88:6 95:8 99:17
  110:4,10
night 76:3
nonprofit 21:2
normal 81:22 82:21
  90:22
notary 1:19 3:5 4:4,7
  4:25 108:9 110:9
  111:20
Note 92:20
noted 107:24
notes 54:17,25 65:21
  84:15 85:4,11
notice 1:17 8:16
  32:11,18 95:6
  109:15
number 7:20 8:15
  14:11 87:17 89:22
  90:2
numbers 87:15
Nussbaum 16:13
NYC 25:4

            O

O 71:7,7 110:2
oath 4:14 7:11,24
  15:14 16:2
object 5:6 51:20
objection 4:24 18:17
  23:15 33:24 41:18
  41:24 51:13,16,17
  52:4,11 53:17,24
  56:8 62:22 68:3
  80:20 90:21 91:9
  92:17 96:12 100:6
  100:11
objections 3:12 4:19

4:23 5:8
observe 69:18
obtain 24:18 25:5
October 57:4,8,13
off-the-record 19:14
  19:16 48:25 49:18
  70:25 78:9 100:16
offense 91:13
office 21:10 100:5
offices 21:4
Oh 38:12
okay 5:12,18 6:9,17
  6:22 8:13,14,20,22
  8:23 9:3,16,20,21
  12:15,16 13:2,5,21
  16:10 19:7 21:5
  26:15 30:20 31:2,4
  33:15 37:2,12,14
  38:10,22 39:13 43:5
  45:25 46:20 47:5
  56:4 57:23 64:25
  66:3 69:3 73:16
  75:15 86:12 92:10
  92:19 100:25
once 15:2 78:14,15
one-page 95:19
ones 91:3 93:16
  99:22,23
open 7:12,25 43:14
order 1:17 46:4
  50:13 51:22 57:11
  71:14 76:10 90:15
  93:10
ordering 71:12
organization 21:4
orientation 12:6,8,18
  13:6,14,18 14:13
  15:4 16:6
origin 22:3
original 85:3
originally 100:4
Osteria 1:8 6:13 11:5
  15:25 29:2,16,19
  31:8,19 32:10,17,23
  34:19,25 35:7,14,24

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

120

35:25 36:9 37:18,21
38:4,15,19 40:22,24
42:13 43:6,9,12,23
44:7,14 45:11,14
49:3 50:16 52:20
56:11 58:2,5,10,13
60:22,24 61:8,25
63:18 68:6,16 74:4
74:25 80:2 82:17
83:4 84:2,8,15 85:5
85:12,16,20 86:24
87:3,8,23 88:12
94:10,19 95:11
97:23 98:24 101:11
103:4 105:25
106:22,25
**outcome** 110:19
**outside** 18:12 29:24
87:19 106:8
**owed** 90:16,25
**owner** 6:3 74:22 94:5
**owners** 79:21

---

**P**

**P** 2:2,2 11:10,11 71:7
**p.m** 15:8 48:12 65:10
71:3,5 107:24
**pad** 64:14,22 65:17
65:21,24 109:9
**page** 56:7 89:10
104:10 109:3,6,13
111:5
**pages** 15:17
**paid** 23:8 32:12,18,21
32:24,25 33:5 37:23
38:2 39:6,8 41:9,11
41:13 42:20,22 43:3
43:3,4 49:4,6 55:2,7
55:25 56:3 58:12,17
58:19,22 60:11
68:13 70:3,19,20
72:13,14,16,19
73:17,18,24 77:5
78:12 79:2,9 81:20
85:21 94:24

**paper** 53:5 57:17
84:18,21,22,22
**papers** 52:7 55:24
**Paralegal** 2:14
**part** 20:20 21:15 24:2
36:5,6,7 61:24
95:20
**participate** 9:24
61:24
**participated** 66:12
**participating** 90:15
**particular** 4:22
**parties** 3:4 92:21
110:17
**party** 47:18
**password** 75:9
**Patricia** 35:6,7,12,15
**Patricio** 58:3 88:17
88:18 90:3 97:17
98:15
**patron** 61:21
**Patsy's** 27:24 28:23
**pattern** 7:14
**pay** 23:9,14 40:17
44:8,9,12,13 49:9
51:2,11 53:12,13
55:3,5,21 73:14
79:10 81:4 83:21
87:24 89:7 90:12
95:7
**Paycheck** 109:18
**payday** 95:7
**paying** 44:10 58:14
76:25
**payments** 60:10
**paystub** 49:20,21
**paystubs** 38:3,8
49:23 50:7 52:23
**pen** 64:13,22 65:16
**penalty** 7:11,24
**pending** 9:19
**people** 23:10,14 42:2
42:23 45:22 46:10
46:13 56:23,24 69:5
74:16,17 78:18 85:6

85:24 93:18,22,25
94:2,7 101:7 102:18
**Peran** 11:10
**percent** 32:3,4 59:8,9
68:8,9 74:20 94:13
94:15 104:21,21
105:17,17
**percentage** 33:3
105:14,15
**perform** 82:7
**performing** 98:24
**period** 36:24 93:9
**periods** 36:20
**perjury** 7:11,24
**person** 13:2 14:5
21:10 44:22,24
80:12,18,22 81:3
93:22 94:2 100:4,8
100:12 101:16,16
**personal** 62:10 77:23
88:5
**personally** 40:15
100:12
**Petrosyants** 1:9 5:24
6:18
**phone** 14:6,8,13,15
38:15 53:9 65:12
67:10 87:15 89:14
89:22
**photographs** 53:7
54:7,12
**photos** 38:16 53:15
53:16 54:15 109:8
**physical** 49:12 56:6
**pick** 52:7
**picture** 53:5,8 75:11
75:17
**pictures** 53:22,23
54:2,3,4 86:9
**Pietro** 102:14
**pizzeria** 27:24 28:3
28:23,25
**place** 29:18 51:4
95:13 98:23 103:10
104:14

**placing** 98:4
**plaintiff** 1:5,16 4:5
20:16,19 101:6
**Plaintiff's** 100:21
109:17
**Plaintiffs** 2:3 19:15
**planner** 85:4,11
**planners** 84:15
**please** 7:16 8:21
12:13 31:2 37:11,12
38:9 51:24 54:10
57:20 67:4,8 75:19
85:13 91:16,17,18
92:10
**plugged** 67:8
**plus** 70:4 73:10
**pocket** 60:4 63:8
**point** 4:20
**pool** 31:20,21,25
61:24 62:3,4 66:10
66:11,12 68:21
105:15
**portion** 62:7
**positions** 30:5
**possible** 103:22
**posts** 86:23
**potentially** 91:5
**pre-shift** 45:16,18
46:8,11,14,17,24
82:10
**prefer** 92:13,14
**preparation** 14:17,18
14:19 15:9 16:5
**prepare** 12:2,4 14:21
**prepared** 11:19,23
12:12 13:11 14:3,25
16:11 100:8
**preparing** 13:6
**present** 2:12 12:18
12:20,21 13:7,8,11
13:17 16:7,13,15
66:15 89:10
**presented** 84:21
**preserve** 54:9 65:24
**pressure** 34:17 56:16

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

121

74:16,22 80:15 81:9
81:10 106:5
**pressured** 56:15
74:17 84:23
**pressuring** 56:24
**previously** 71:8
82:11
**printed** 59:20
**prior** 21:14,19,23
22:24 23:6,12 34:8
53:18,24 68:3 96:23
**privilege** 5:9 107:19
**problem** 77:23 78:7
84:17
**problems** 79:25 80:3
80:4 87:11,21,22,25
88:9
**proceed** 100:4
**proceeding** 100:11
**process** 39:11 57:12
69:21
**produce** 37:10 49:23
75:19
**produced** 58:6
103:16
**professional** 97:6
**program** 27:2
**proper** 23:13
**properly** 55:2,25
74:19 77:2,5 78:12
79:2,9
**provide** 9:25 12:13
46:5,25 75:6
**provided** 43:24 101:6
**public** 1:19 3:5 4:4,7
4:25 108:9 110:9
111:20
**purpose** 9:18
**pursuant** 1:17
**pursue** 56:25 57:7
91:21
**pursuing** 57:12
**put** 4:15 50:9 52:24
58:19 59:7 63:7,14
63:17 64:4,23 72:18

74:20 102:24

**Q**

**qualified** 96:16
**qualify** 51:16 101:3
**Queens** 4:9 14:2
110:6
**question** 5:16 7:16,20
7:21,21 8:25 9:4,6
9:19,20 11:20,22
16:10 18:4 19:8,18
20:6 26:9 31:5
39:14,17 42:25
46:22 51:23,25 52:2
52:5 53:19 58:21,21
58:24 68:7,10,11,15
68:15,17 72:18
74:13 83:15 85:3,12
91:10,16,24 92:8,11
92:18,24,25 93:3
100:23 101:3,5,15
**questions** 3:12 5:6
7:5,15 10:2,14
12:10,11 18:20 19:5
39:12 57:20 69:24
83:3,5,8,11,12,13
83:15 85:9 91:18
100:25 107:20,22
**quickly** 55:10
**quiet** 79:23
**quit** 34:5

**R**

**R** 2:2 71:7,7,7 110:2
**race** 22:3
**racism** 20:23
**ran** 69:5 107:8
**rate** 95:7
**reach** 81:17 96:23
**read** 31:6 32:14 52:2
92:23,25 95:23 96:2
**real** 11:18
**really** 16:20 90:20
**reason** 9:24 10:8
30:17 34:13 111:5

**receive** 25:13,16,19
32:17 43:5,8 47:5
50:21 51:3,6 52:6
58:23 59:3,6 60:5
61:8 62:20,25 64:11
66:23 69:22 70:14
70:17,18 81:21
90:15 91:7 92:13
93:8 97:8
**received** 24:23 25:23
31:15 33:6 40:24
44:4,7,9 47:13,15
47:20 49:9 50:5
52:9 56:5,6 59:14
59:15,17 60:19 62:7
62:17 66:6 67:12,14
67:16,17,23 68:2,21
69:15,17 104:8
105:14,16
**recess** 65:5 71:3
81:13 102:22
105:22
**recognize** 104:18
105:6
**recognized** 104:4
**recollection** 9:9,14
**recommend** 57:25
**recommendation**
35:15
**recommended** 21:21
35:3,8 88:17 97:16
**reconcile** 67:25
**record** 4:13,16,17
7:13 8:5 17:23
18:23 19:13 26:5,6
29:10 30:14 42:10
45:9 48:23 49:17
60:18 66:25 67:7
70:24 78:8 92:7,20
98:2 100:15 102:23
103:15 110:14
**records** 69:11
**refer** 40:18
**reference** 104:21
**referenced** 80:18

**references** 97:5
**referred** 16:6 52:2
92:25
**referring** 6:15,18,21
6:25 14:19 40:18
**reflect** 4:13 7:13 26:5
26:6 29:10 30:14
42:10 66:25 67:7
**refund** 51:11
**refused** 97:21
**regard** 46:3
**registered** 86:7
**regular** 33:5
**related** 7:7 58:4
69:11 106:8 107:11
110:17
**religion** 22:3
**remember** 21:9
22:14,23 27:23,25
29:12 32:21 34:21
44:3 49:23 57:19,22
73:3 75:3 76:2
94:18 102:2
**rent** 17:15,16
**repeat** 7:21,22 11:20
26:8 54:6 55:14
72:13
**repeated** 7:14
**rephrase** 9:5 19:18
42:25 46:22 62:5
93:6
**report** 40:21 59:19
59:23 60:21 61:3,16
105:12
**reported** 60:23
105:10
**reporter** 1:19 8:16,18
52:3 93:2 110:8
**reports** 60:2
**represent** 95:6
100:20
**representing** 5:2,21
21:12
**request** 10:13 37:13
38:11 45:6,7 52:19

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

122

54:11,13 66:4 75:20
75:22 102:24 103:7
**requested** 103:20,22
**requests** 103:24
109:6
**require** 92:21
**required** 40:3 82:12
100:9
**reserve** 5:6
**reserved** 3:13 4:20
**resided** 10:17
**resign** 36:17
**resolve** 19:17
**resolved** 21:6,7 22:17
**respective** 3:3
**respond** 5:15
**Responses** 100:21
109:17
**responsible** 104:2
**rest** 48:19 66:20 84:9
**restaurant** 6:14,16
7:6 11:5,9 16:3 17:8
17:12 21:21 22:8,9
27:14,16,20,24 28:2
28:7,8,12,15,16,18
28:21,24,25 29:8,9
29:13,20 30:8 31:22
32:6,7 33:22 34:5,6
34:6,11,13 35:10
38:16,19 43:14,16
53:15,22 54:3,5,12
54:15 57:2,8 62:18
68:24 74:14 76:2,10
76:22,25 78:17
81:23 82:7,13 83:10
83:14 89:6 90:24
99:19 107:12
**restaurants** 27:17,18
28:5,6 29:3,5,6,14
29:23,24,25 30:2,6
30:12 31:7,15,18
32:9,16,22 33:9,16
33:18 34:4,8 35:20
37:7 38:13 63:13,15
78:19

**resume** 37:6,15 109:7
**resumed** 71:8
**retaliation** 91:11
**return** 51:5
**returned** 26:7
**review** 15:10
**right** 5:6 6:10 11:13
13:15,19,21 14:15
22:21,25 28:4,16
29:18 30:18 33:19
35:16,22 36:13 38:9
43:20 46:15,20 48:8
48:21 49:13,20
50:14,17 51:12
52:10,14 54:17 55:2
57:5 62:21 64:20
66:7 68:24 69:12
71:20 72:11,22 73:9
73:9,12 75:10 79:10
88:14,18,19 94:5
96:8 105:2 106:17
106:22 107:12
**road** 18:18 19:3 21:2
**Rob** 6:19 7:6
**Robert** 1:9 5:23 6:3
6:13 102:5
**Rodriguez** 101:12
**role** 35:10 102:4
**rule** 91:17
**rules** 4:22 8:11 9:22
23:13 51:16 63:15
64:5 91:19 92:20
**Runner** 87:4
**Ruthayn** 1:18 4:3,7
92:23 110:8,25

**S**

**S** 2:2 109:12
**Sage** 2:8,14
**satisfied** 55:7 56:3
**saw** 24:10 39:7,8,8
46:10 52:23 58:15
60:17 61:19,21,22
62:14,14 70:20
104:13

**saying** 16:19 50:2,7
51:10 53:23 56:6
62:25 63:11,24
86:13 93:21 104:5
**says** 32:11
**schedule** 48:6
**scheduled** 99:2
**school** 26:2,4,11,16
26:20,25
**screen** 75:3 95:5,13
95:17 98:4 103:10
104:14
**Seafire** 22:10 23:13
23:18 27:24 28:2,19
28:25
**sealing** 3:8 4:18
**seated** 67:4
**second** 70:24 78:8
104:10
**secretary** 16:17
**see** 51:24 63:7 67:20
67:20 75:10,11 95:8
95:16,17 97:6 98:7
98:14 101:9,16
103:21 104:8,12,22
**seeing** 22:23
**seek** 5:8
**seen** 17:4 93:13 95:10
103:11 104:3,5
**selected** 99:4
**sell** 45:20 74:18
**send** 79:15 89:12
92:21
**sending** 18:24
**sense** 81:18
**sent** 5:2 22:17 75:12
75:12,14 86:17,18
**separate** 14:20 69:7
**served** 41:3
**server** 69:4
**servers** 68:23 69:4,9
86:3 99:24 105:15
**service** 45:23 46:5
47:2 94:15 104:22
**services** 97:6

**serving** 31:12
**session** 15:9 16:5
71:5
**set** 110:12,21
**settlement** 21:6
**seven** 33:17 82:18
**Shad** 6:21,25
**Shahmuradyan** 1:9
5:24
**shake** 24:10
**Shalom** 1:18 4:3,7
110:8,25
**share** 64:11 66:6 69:8
95:5
**sharing** 96:18
**SHEET** 111:2
**shift** 47:6 48:2,10,13
48:14,14 64:10
**short** 65:5 81:13
102:22 105:22
**shorthand** 1:19
**show** 84:20 95:5
**sign** 89:13 97:11,21
97:21
**signed** 15:12,20,22
15:25 57:17 75:5
89:11,14 94:20
95:19,24 97:5,14
98:13,17,20
**signing** 44:3 94:18
**similar** 97:15
**similarly** 1:4
**simple** 74:21
**single** 20:7 30:8
31:22 32:5
**Sir** 5:18
**sit** 10:9 30:17
**situated** 1:4
**situation** 12:10 53:11
88:6
**six** 33:17 82:18 88:7
102:19
**slow** 74:9,10
**smaller** 33:2
**social** 86:20

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

123

**soon** 94:20
**Sorry** 17:19 30:19
**Sotis** 102:9
**SOUTHERN** 1:1
**Spanish** 2:13 4:2
**spanned** 9:11
**speak** 8:17 10:23
  16:22,25 23:24 57:9
  64:23 77:24 79:21
**speaking** 73:23
**special** 32:11 98:23
  99:4,6,8,16 100:2
**specials** 45:19 46:2
**specific** 58:16 96:4
**specifically** 94:6
**spelled** 11:14
**split** 62:19 63:15
**spoke** 42:14 46:13
  78:2,7 96:15
**ss** 110:5
**stamps** 24:21,23
**stand** 31:3 93:17
**start** 15:7 27:19
  34:18 44:17
**started** 11:4 38:18,25
  44:14,19 45:11
  58:13 66:5 106:14
  106:15,21,24,25
  107:3
**state** 1:20 4:4,8 18:15
  19:11,22,25 23:22
  23:25 72:25 95:8
  110:4,9
**statement** 15:13,25
**States** 1:1 10:18 18:6
  18:10,12,14,15,21
  19:21,24 23:25
  26:17,23 27:7,21
**stating** 4:8
**status** 19:9
**stay** 43:18 48:13,15
  48:18 67:3,4 76:5
  76:16
**stayed** 76:3 79:23
**steakhouse** 22:10

29:12,14 36:3
**stepped** 67:2
**steps** 10:21 82:3
**stips** 4:17,18 5:4
**STIPULATED** 3:2,7
  3:11
**stop** 91:17,18
**stopped** 35:25 105:24
**Street** 4:9 22:12
**study** 10:20
**subject** 7:10,23
**subjects** 7:7
**submit** 52:17
**Subscribed** 108:7
  111:19
**suing** 6:9 12:25 57:18
**Suite** 2:5
**summary** 109:18
**supervisory** 101:12
**supposed** 33:2 100:4
**supposedly** 73:14
  94:3 99:17
**sure** 54:25
**surgery** 106:3,6,11
  106:17,18 107:4
**sworn** 3:5 4:3,6,24
  71:8 108:7 110:12
  111:19
**system** 62:8 69:18

---

**T**

**T** 11:14,16 71:7
  109:12 110:2,2
**T-E-R-A-N** 11:6,14
**table** 76:6,6,8,11
**tables** 31:10 41:3
  45:24 74:19 76:13
  76:16,18,20,21,22
  76:23
**take** 9:17,20 30:25
  32:4 38:15 53:16,23
  54:3 56:22 65:2
  67:8 69:21 74:18
  76:4,7 81:8,12
  83:25 84:7 91:13

102:20 105:20
**taken** 10:20,21 54:12
  65:5 81:13 82:3
  102:22 103:8
  105:22
**takes** 32:3 91:7 92:15
**talk** 65:3 85:8 87:8
  88:9
**talked** 28:3 80:22
  87:20 94:23
**talking** 64:3,16 66:5
**tally** 50:8 58:18
**task** 76:11
**tax** 51:11 52:6
**taxes** 50:10,11,11,13
  50:19,23 51:11 72:2
**taxing** 61:4
**tell** 9:5 26:10 27:19
  33:12 34:5,8 42:17
  55:4 57:3 60:24
  77:8,14 78:11 79:3
  90:4 102:3 107:15
**telling** 11:13 32:18
  53:16 74:12 96:4
**ten** 26:14 60:7 63:16
  66:20 67:19 68:2
  73:5,15
**tenth** 44:18,19
**Teran** 11:6,9,14
**terminate** 56:21 80:7
**terminated** 34:7
**terms** 89:5
**test** 84:24
**testified** 4:10 42:5
  49:22 54:16 64,6,9
  66:22 67:22 71:9,17
  71:18 75:25 82:11
  104:4
**testify** 10:6
**testifying** 7:12,25
**testimony** 7:10,23
  11:12 51:9 53:18,25
  61:20 62:23 65:14
  68:2,4 72:17 110:14
**text** 78:5 79:15 89:2

**Thank** 42:20 65:8,12
  107:18,21
**things** 45:18,20
**think** 6:8 10:8 15:6
  16:17 18:17 21:9
  35:5 47:24 51:5
  53:6,6 54:6,21 73:2
  73:4,5 77:19,19
  81:22 86:8 87:5
  89:15 98:15 99:17
  107:15
**thinking** 29:11 63:5
**Third** 8:24 22:12
**Thirty-five** 52:22
  76:23
**threatened** 84:20
  85:7
**three** 28:20 34:7 36:5
  36:7 46:10 73:5
  87:13 88:8 94:15
  99:14,15 104:21
  106:2
**threw** 54:18,22 55:6
  56:2
**throw** 54:19 55:24
**throwing** 55:18
**Thursday** 71:16
**time** 9:17 15:15
  16:11 20:2 28:13
  36:5,6,7,11,23 38:9
  38:14 41:20 47:23
  47:24,24 48:2,3
  51:23 54:8 59:11
  61:5 77:12,20 78:2
  78:20 79:6 81:11
  83:25 84:3,7 85:6
  91:6 92:16 93:9
  100:13 107:18,24
**times** 7:20 48:18
  61:19 78:16
**tip** 31:20,21,25 32:3
  32:4,12,12,19 33:3
  33:23 35:21 59:14
  59:19 61:12,21,24
  62:3,4,15,16,18

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

124

66:10,12 67:14 68:5
68:21 69:25 70:9
73:10 90:12 104:11
105:15
**tips** 31:16 33:6 40:24
41:6 47:5,8,12,16
48:8 59:3,6,15,24
60:5,9,14,18,21,25
61:3,6,8,16 62:6,20
64:2,7,11 66:7,9,18
66:19,23 67:12,17
67:24 68:7,11,17,21
69:7,8,12,14,17,22
70:4,14 71:23,25
72:12,19 73:17,24
75:13,14 81:20
83:23 86:7 105:8,10
**tired** 80:15 83:2
**title** 85:16 87:3 102:4
102:7
**Toast** 39:5,18,21 40:6
40:10,16 75:3,5,9
**today** 7:5,10 9:10
10:8,10,12 12:7
13:15 14:19,22 23:4
53:11,21 64:9 71:19
107:18
**today's** 9:25 11:19,23
12:4,12 13:17 14:13
14:17,21 16:23 17:2
65:21 100:3
**told** 14:17 33:9,22
35:21 42:14 44:23
45:2 46:25 48:15
52:10 53:15 63:24
74:25 77:22 82:21
86:4 88:3 96:22
107:4
**top** 56:14 104:20
**total** 73:22
**touch** 70:20 75:3
104:9
**train** 83:23
**trained** 44:21 45:10
77:25

**training** 44:7,9,19
**transcript** 5:2 19:6
71:13,15 102:24
110:13
**translate** 55:11
**translated** 55:13
**translating** 5:11
**treated** 99:21,22
**trial** 3:13 4:20
**true** 59:19 93:7
110:14
**truthful** 9:25 10:9
**truthfully** 10:6
**try** 54:14 55:18
**trying** 91:20 92:5
**Tuesday** 75:13
**turn** 58:6
**Twitter** 86:21
**two** 4:19 8:21 15:6
26:15 28:12,16,18
28:21 29:21 34:6
48:22 61:19 76:20
76:20,21 80:16
82:24 89:5 93:15,18
93:22,25
**type** 40:2 82:6,12
85:22 103:12
**typically** 71:19
**typing** 39:22

**U**

**ugly** 56:19
**Uh** 65:18
**understand** 6:16,19
6:24 7:2,8,12,25
8:12,19 9:4,7,12,15
9:22 10:14,23 11:12
13:5 14:16,24 16:9
17:9 20:16 26:15
27:25 28:14 33:4,15
42:8,12 51:9,14,19
61:20 62:3 66:10,11
70:3 72:15,16 90:8
90:14 91:4 93:12
**understanding** 9:10

52:9 73:11
**understood** 9:6 33:8
54:24 55:6
**undivided** 30:22
**unemployment** 24:13
**united** 1:1 10:17 18:6
18:10,12,14,15,21
19:20,24 23:25
26:17,23 27:6,20
91:3
**use** 9:18 86:20,22
89:16
**user** 75:9
**usual** 4:16,17 5:4

**V**

**v** 111:4
**vacation** 84:5
**various** 28:5 30:5
78:16 80:11
**verbal** 8:4 24:11
79:13
**verbally** 33:12,14
**veteran** 33:16
**violate** 91:19
**violating** 91:17
**virtual** 14:6
**virtue** 91:4
**visit** 18:7
**visited** 18:11
**vocational** 26:25
**voice** 8:15,16

**W**

**W2** 50:14,16
**wage** 32:12,19,22
33:5 70:4 72:24
73:9,12,18 74:2
**wages** 80:7,10,13,23
81:19
**wait** 30:16 91:6
**waiter** 41:5 46:25
64:3
**waiters** 31:10 32:4
41:4 59:7,8 60:23

66:13,15 68:9,20,22
69:6 74:20 86:11,14
105:10,18,18,19
**waiting** 93:9
**waitress** 86:4,6
**waived** 3:9 4:19
**walk** 34:7
**walked** 26:6 30:15
**Walter** 102:14
**want** 4:15 6:24 9:11
9:12 19:2 27:19
48:22 54:9 55:12
57:16 64:18 65:24
77:23 79:25 80:3
85:8 97:2 102:24
107:14
**wanted** 54:25 64:15
82:7 97:3
**wasn't** 34:15 53:19
55:17 68:13 70:10
78:17,17 103:25
**way** 14:7,14 23:8
32:5 34:4 49:10
63:5 85:21 110:18
**Wednesday** 75:14
**week** 49:13 52:21
55:20 71:20,23 72:8
72:10,20,21 84:4,11
**weekly** 39:8 49:6,8
**weeks** 70:10
**welcome** 65:7
**went** 4:14 23:2 40:15
42:6 53:6 73:2 77:3
84:18 94:20 101:3
**weren't** 45:23
**WhatsApp** 75:12,12
75:15 86:17 109:9
**WHEREOF** 110:20
**wife** 6:8
**withdrawn** 35:24
39:25 79:19
**witness** 5:3 7:14 26:5
26:6 29:10 30:15
42:11 67:2 103:2
110:11,15,20

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

125

**woman** 12:22,23
**word** 8:4
**words** 8:21 74:21
**work** 27:9,12,14
 28:11,21 29:2 30:3
 31:15 36:5,7,10
 37:4 44:6 46:25
 47:23,24 48:7,16
 52:21 58:9 71:18,19
 74:10,22 80:5 82:6
 82:8,15,19,20 83:3
 83:6,11 84:18,19
 86:24 94:10 98:24
 99:2,4,6,8 106:2,9
 106:11,13,13
 107:11
**worked** 21:20 23:10
 27:17,20 28:5,5,8
 28:14,18 29:4,7,15
 29:16,18,20,21,24
 30:2,5,6,8 31:7,19
 31:23 32:5,6,7,10
 32:16 33:17,22
 35:21 37:7 38:14,22
 39:9 43:23 44:22
 45:14 47:6,17 49:3
 52:20 54:16 63:12
 68:7,11,11,17 69:25
 70:16 74:4,9,21
 75:13 77:12,19 79:5
 82:13 84:7,9,11,13
 87:4,5,7,7,19 88:8
 102:17,18,19
**workers'** 24:15
**working** 28:2 29:22
 29:23 33:16 34:18
 35:7,25 36:3,4,6,9
 36:13,21,23 38:18
 38:25 43:6,9,11
 44:14,17 45:11 58:9
 58:13 68:6,16 77:17
 78:13 84:2 87:6,13
 88:4,7 95:11 99:16
 101:11 105:24
 106:10,16,21,24,25

107:3
**workplace** 87:19
**works** 32:2
**write** 53:2,4 64:15
**writing** 32:11 33:12
 37:11 38:7 67:11
 75:21 103:6
**written** 32:18 43:5
 45:6 79:13
**wrote** 55:8,19

**X**

**X** 1:2,11 86:21
 109:12

**Y**

**Yanos** 35:16 40:19
 40:23 41:14 42:5,6
 42:7,14,14 44:21
 49:15,19 59:21
 66:19 75:8 86:19
 101:14 102:11
 106:5
**year** 28:12,15 33:18
 50:10 57:2,22 87:5
 98:18
**years** 9:11 10:19 18:7
 18:11,15 20:21 25:6
 26:14,16 28:12,16
 28:19,20,22 29:21
 73:5 88:8 96:24
**yelled** 21:24 56:19
**yelling** 56:23
**yesterday** 12:6,18
 13:11 14:4,18 15:9
 16:12 64:16
**yesterday's** 15:4 16:5
**York** 1:1,20 2:5,5,9
 4:4,8,9 19:21,23,25
 20:2 23:25 27:8,9
 27:21 72:25 73:12
 95:8 110:4,10

**Z**

**Zoom** 1:18 23:4

**0**

**1**

**1:01** 65:10
**1:20** 71:3
**1:51** 71:5
**10:00** 48:4
**10:14** 1:12
**100** 32:4 47:10,17
 59:9 64:4 68:9
 74:20 105:17,18
 109:17
**10006** 2:5
**101** 104:16 109:19
**103** 109:10,18
**104** 109:19
**105** 109:19
**109th** 4:9
**11** 73:5,15 98:7 101:7
 109:16
**11:00** 48:4
**11423** 2:9
**115** 105:5 109:19
**12** 98:3 103:23
 109:16
**12:00** 15:8
**12:51** 65:9
**12:56** 65:10
**120** 47:11
**15** 60:7 66:20 67:19
**16** 70:15,17
**18** 94:13 104:21
**180** 47:7,8,18
**18211** 2:9
**18th** 98:21
**1st** 34:22

**2**

**2** 1:12 111:4
**20** 67:19 68:2 72:11
 72:22 73:9,10,12,15
 73:17,24
**200** 47:18,20 67:23
 105:18
**2022** 38:19

**2024** 34:20,23 36:2
 38:21,22 50:21,23
 106:20
**2025** 1:12 36:22
 50:21 98:21 106:18
 108:8 110:21 111:4
 111:20
**22** 36:10
**24** 10:5 36:10 38:23
 44:15 45:15 57:5,8
 57:13 74:5 88:13,23
**25** 57:22
**25cv-4490(AS)(GS)**
 1:6
**2nd** 98:18

**3**

**3:35** 102:21
**3:50** 107:24
**30** 52:22
**320** 2:5
**35** 52:24
**3523** 4:9
**36** 71:19
**37** 109:7
**3rd** 110:21

**4**

**4** 109:4
**4:00** 48:12
**4:30** 48:18
**40** 52:22,24 71:19
 72:9,21
**45** 2:5 109:7
**48th** 22:12

**5**

**5** 17:22
**50** 32:3 59:8 64:4
 68:8
**52** 109:8
**54** 109:8

**6**

**66** 109:9

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Adrian Montor-Peran  ---  December 2, 2025

126

| 7 | | | |
|---|---|---|---|
| **75** 109:9 | | | |
| **8** | | | |
| **80** 47:11 66:23 67:23 | | | |
| **800** 71:24 72:2,8,20 | | | |
| 73:22 | | | |
| **81** 17:22 | | | |
| **9** | | | |
| **900** 71:24 | | | |
| **929)507-4523** 14:12 | | | |
| **95** 109:15,16 | | | |
| **98** 109:16 | | | |