# Exhibit 6

# In the Matter of

Case No.: 1:25cv-4490(AS)(GS)

FERNANDEZ, et al.

v.

BULLDOZER HOSPITALITY GROUP, INC., et al.

---

## Examination of Javier Patricio Molina Rivera

*Tuesday, December 23, 2025*

---



The Little
Reporting
Company

469 Seventh Avenue
12th Floor
New York, NY 10018
tel: 646-650-5055
www.littlereporting.com

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK


------------------------------
KATHERINE FERNANDEZ, on behalf
of herself and others similarly
situated,

                    Plaintiffs,

                              Case No.:
                              1:25-cv-4490
            vs.               (AS)(GS)


BULLDOZER HOSPITALITY GROUP,
INC., d/b/a OSTERIA LA BAIA,
ROBERT PETROSYANTS and MARIANNA
SHAHMURADYAN,

                    Defendants.
------------------------------


                    December 23, 2025
                      10:07 a.m.


    Remote video-teleconference deposition of

JAVIER PATRICIO MOLINA RIVERA, taken by Defendants,

held at Corona, New York, pursuant to notice, before

Elizabeth F. Tobin, a Registered Professional

Reporter and Notary Public of the State of New

York.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

2

1

2      A P P E A R A N C E S:

3           (Present via video-teleconference)

4      On behalf of the Plaintiffs:

5           JOSEPH & KIRSCHENBAUM, LLP

6           45 Broadway, Suite 320

7           New York, New York 10006

8           212.688.5640

9           BY:   JOSEF NUSSBAUM, ESQ.

10                jnussbaum@jk-llp.com

11                LUCAS BUZZARD, ESQ.

12                lucas@jk-llp.com

13

14      On behalf of the Defendants:

15           SAGE LEGAL, LLC

16           182-11 Jamaica Avenue

17           Jamaica, New York 11423-2327

18           718.412.2421

19           BY:   EMANUEL KATAEV, ESQ.

20                emanuel@sagelegal.nyc

21

22      ALSO PRESENT:

23      MARIA CRISTINA BLOISE, SPANISH INTERPRETER

24      ALIVIA COONEY, SAGE PARALEGAL

25      ANDREW DETERNOZ, JOSEPH & KIRSCHENBAUM PARALEGAL

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

3

1

2          IT IS HEREBY STIPULATED AND AGREED

3      by and between the attorneys for the

4      respective parties herein, that filing and

5      sealing be and the same are hereby waived.

6          IT IS FURTHER STIPULATED AND AGREED

7      that all objections, except as to the form

8      of the question, shall be reserved to the

9      time of the trial.

10          IT IS FURTHER STIPULATED AND AGREED

11      that the within deposition may be sworn to

12      and signed before any officer authorized to

13      administer an oath, with the same force and

14      effect as if signed and sworn to before the

15      Court.

16

17

18                    - oOo -

19

20

21

22

23

24

25

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

4

1                       J. Molina

2              COURT REPORTER:  Mr. Kataev, do you need

3        an expedited transcript?

4              MR. KATAEV:  A week from today would be

5        good.

6              COURT REPORTER:  That will be a four-day

7        expedite delivered on Tuesday, December 30th.

8              MR. KATAEV:  Okay.

9              COURT REPORTER:  Mr. Buzzard, will you be

10       ordering an a copy of the transcript.

11             MR. BUZZARD:  Yes, please.

12             COURT REPORTER:  Do you need expedited at

13       all?

14             MR. BUZZARD:  What's your normal

15       turnaround?

16             COURT REPORTER:  With the holidays, it

17       will be January 8th.

18             MR. BUZZARD:  That should be fine.

19             COURT REPORTER:  Good morning.  My name

20       is Elizabeth Tobin.  I am a New York State

21       stenographic reporter and a registered

22       professional reporter.  Today's date is

23       December 25, 2025and the time is approximately

24       10:07 a.m..  This is the deposition of Javier

25       Patricio Molina Rivera in the matter of

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

5

1                         J. Molina

2          Fernandez, et al. versus Bulldozer, et al.

3          This case is venued in the United States

4          District Court for the Southern District of New

5          York.  The case number is 1:25-cv-4490 (AS)(GS)

6               At this time I will ask counsel to

7          identify yourself, state whom you represent and

8          agree on the record that there is no objection

9          to this stenographic reporter administering a

10         binding oath to the witness and interpreter

11         remotely via video-teleconference.

12              MR. KATAEV:  Counsel for defendants.

13         Agreed.

14              MR. BUZZARD:  This is Lucas Buzzard,

15         Joseph & Kirschenbaum, counsel for plaintiff.

16         Agreed.

17   M A R I A   C R I S T I N A   B L O I S E,  was

18         duly sworn remotely upon agreement of all counsel to

19         interpret the questions from English into Spanish,

20         and the answers from Spanish into English.

21   J A V I E R   M O L I N A, of lawful age, called by

22         the Defendants for examination pursuant to the

23         Federal Rules of Civil Procedure, stating an address

24         of 35-24 99th Street, apartment 3A, Corona, New York

25         11368, having been first duly sworn remotely upon

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

6

1                       J. Molina

2       agreement of all counsel, as hereinafter certified,

3       was examined and testified through the interpreter

4       as follows:

5           EXAMINATION OF JAVIER PATRICIO MOLINA RIVERA

6       BY MR. KATAEV:

7                   MR. KATAEV:  Before we begin, I just want

8               to confirm with your attorney that we're going

9               to do the usual stipulations which we've

10              covered in prior depositions.

11                  MR. BUZZARD:  Sure.

12          Q.    My name is Emanuel Kataev.  I am the

13      attorney for the defendants Bulldozer Hospitality

14      Group, Robert Petrosyants, and Marianna

15      Shahmuradyan.  From here on in I will be referring

16      to Bulldozer as the restaurant unless stated

17      otherwise.

18              Okay?

19          A.    Okay.

20          Q.    I will be referring to Robert Petrosyants

21      as Rob.

22              Okay?

23          A.    Okay.  Okay.

24          Q.    And finally, I'll be referring to

25      Ms. Shahmuradyan as Marianna.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina --- December 23, 2025

7

J. Molina

1

2      A.     Okay.  Okay.

3      Q.     I will be asking you today and you will

4    be answering questions about yourself, the

5    restaurant, Rob, and Marianna, your claims against

6    the defendants and other related subjects.

7             Do you understand that?

8      A.     Okay.

9      Q.     Your testimony today is subject to the

10   same oath and same penalty of perjury as if you were

11   testifying in court.

12            Do you understand that?

13     A.     Yes.  Yes.

14     Q.     Have you ever been deposed before, taken

15   a deposition in a similar manner as today?

16     A.     Yes.  Once.

17     Q.     When was that?

18     A.     About a year ago.

19     Q.     What kind of case were you giving a

20   deposition in?

21     A.     It was about racism.

22     Q.     Do you remember if it was in federal

23   court or state court or somewhere else?

24     A.     It wasn't in a court.  It was personal.

25     Q.     How was it that you did a deposition when

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

8

1                          J. Molina

2         there was no court case?

3              A.    No.  Because they resolved.  It's like

4         that.  It didn't go any further.

5              Q.    But did you sit in for a deposition for

6         that case like you're sitting in right now, whether

7         in person or virtual?

8              A.    It was in an office.

9              Q.    Who were your attorneys in that case?

10             A.    I can't answer that.  That's

11        confidential.

12             Q.    It's actually not confidential and you

13        are required to answer that question.  I need the

14        identity of the attorney that represented you in

15        that case.

16             A.    Josef.

17             Q.    So Josef Nussbaum, the attorney from this

18        firm represented you in that race discrimination

19        case?

20             A.    Yes.

21             Q.    I want to go over some of the ground

22        rules, even though you were deposed last year, in

23        case you need a refresher on the rules.

24             A.    Okay.

25             Q.    First, keep your voice loud and clear for

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

9

                              J. Molina

1

2        the court reporter as you've been doing so that she

3        can write down everything you are saying.

4              A.    Okay.

5              Q.    Second, please answer in words.  The

6        court reporter cannot write down any body gestures

7        or mumbling.

8              A.    Okay.

9              Q.    Third, please allow me to complete my

10       question before you answer and I'll give you the

11       same courtesy.  It will help the court reporter

12       write everything that we're saying down properly.

13             A.    Okay.

14             Q.    Fourth, tell me if you don't understand

15       the question and I will rephrase it.

16                   However, if you answer the question, I

17       will assume that you understood it.

18             A.    Okay.

19             Q.    Fifth, we're looking for your best

20       recollection of events today.  While I don't want

21       you to guess at answers, even if your memory is not

22       crystal clear, I am still entitled to your best

23       recollection.

24                   Do you understand that?

25             A.    Okay.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

10

1                         J. Molina

2          Q.    Lastly, you can take a break at any time

3     you like to use the bathroom or for any other

4     reason, except if there's a question pending.  I

5     need you to answer it.

6                Do you understand that?

7          A.    Okay.

8          Q.    Do you understand all these ground rules?

9          A.    Yes.

10         Q.    Is there any reason you cannot

11    participate in today's deposition and provide

12    truthful answers to questions I ask you?

13         A.    No.  There is no reason.

14         Q.    Have you consumed any drugs, alcohol or

15    medications within the past 24 hours that could

16    affect your ability to testify truthfully?

17         A.    No, I haven't taken anything.

18         Q.    Is there any reason you can think of why

19    you cannot give truthful answers today?

20         A.    No.  There isn't any reason.

21         Q.    We have an interpreter here today.

22                Did you specifically request for an

23    interpreter to be present today?

24         A.    Yes.  Yes.  Because I don't speak much

25    English.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

11

                          J. Molina

1

2        Q.    In your job as a busser at a restaurant,

3    you're required to speak to patrons of the

4    restaurant in the English language; right?

5        A.    Basic.

6        Q.    Other than Javier and Patricio, are there

7    any other names that you go by?

8        A.    No.  Javier Patricio and my last name

9    Molina Rivera, R-I-V-E-R-A.

10       Q.    You talked about your deposition that you

11   did last year.

12            Can you give me some basics of the

13   circumstances.  You said you were in an office.

14            Whose office were you in?

15       A.    In Josef's office.

16       Q.    How long were you present at his office

17   for that deposition?

18       A.    It was from 10:00 a.m.  I think it was up

19   until 6:00 p.m.

20       Q.    Did you file any charge of discrimination

21   with the EEOC?

22       A.    I don't know what that is.  I didn't use

23   that.  I don't know.

24       Q.    When you were there from 10:00 to 6:00,

25   were you being asked questions by the attorney for

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

12

1                         J. Molina
2       the other side or was there someone there trying to
3       help you settle?
4            A.    They came to an agreement.  That's all.
5            Q.    But the purpose of you being there from
6       10:00 to 6:00 was so that you could come to an
7       agreement; correct?  It was not to answer questions
8       like I'm asking you today; right?
9            A.    Not many questions, no.
10           Q.    Did you prepare for today's deposition?
11           A.    Not much because I'm only going to say
12      the truth.  There's not much to say.
13           Q.    Did you meet with your attorney to
14      prepare for the deposition?
15           A.    No.
16           Q.    Did you review any documents in advance
17      of the deposition?
18           A.    No.  They just called me and told me that
19      I was going to have a meeting today.  That was it.
20           Q.    When did they call you?
21           A.    This morning to remind me of the
22      appointment.
23           Q.    And previously you had a deposition
24      scheduled on Wednesday, December 10th; correct?
25           A.    Yes.  I remember.  Yes.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

13

                            J. Molina

1

2        Q.    And you failed to appear for that

3    deposition, didn't you?

4        A.    Yes, that's correct.

5        Q.    Why did you fail to appear?

6        A.    I was very sick.  I couldn't do a

7    testimony like this because I was feeling very sick.

8        Q.    Your attorneys wrote in a letter that you

9    had some serious personal circumstances.  They did

10   not report you were sick.

11             Were you aware of that?

12       A.    Well, yes, I was very sick.  I even sent

13   a letter from the doctor to my attorneys.

14       Q.    Your attorneys repeatedly called you by

15   phone.

16             Why were you unable to answer the phone?

17       A.    I was very sick.  I was depressed and I

18   couldn't answer the phone to anyone.

19       Q.    Why were you depressed or what were you

20   depressed about?

21       A.    Because that's the way it happens.  Every

22   so often, that happens.

23       Q.    Just to confirm, you did not look at any

24   documents to prepare for today's deposition?  That's

25   your testimony; correct?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

14

J. Molina

1

2      A.    The attorney sent me something so I could

3  prepare for today and they sent to me for the prior

4  date that we had and I haven't received anything

5  else and that was it.

6      Q.    You said they sent you something.  What

7  was it exactly that they sent you?

8          MR. BUZZARD:  I'm just going to break in

9      and instruct the client, my client, not to

10     provide any information about anything that was

11     discussed during those -- you can talk about

12     the documents, but not anything that was

13     discussed during his meetings with his

14     attorneys or in communications with the

15     attorneys.

16          MR. KATAEV:  I will qualify with that

17     objection.

18     Q.    You can answer.

19     A.    I don't understand.

20     Q.    You said your attorneys sent you a

21 document.  I'm asking you, what document did he send

22 you?  But when you answer that question, please do

23 not share what your attorney said to you or what you

24 said to your attorney.  Only describe the document

25 that you were sent.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

15

J. Molina

1

2       A.    Only that today at 10 o'clock in the

3    morning I have this meeting with you.

4       Q.    Have you ever signed any affidavit,

5    statement, declaration or any other documents under

6    oath or affirmation concerning this case?

7       A.    Well, I signed something for -- so the

8    lawyer can represent me.

9       Q.    Are you referring to like a retainer

10   agreement or something else?

11      A.    Yes, that.

12      Q.    What about any document under oath,

13   swearing that you're telling the truth and pleading

14   something?

15      A.    I only signed that one to join the

16   demand.  That's it.

17      Q.    Other than that one document you signed

18   to join the demand or complaint, nothing else;

19   correct?

20      A.    Yes; correct.

21      Q.    Are there any other employees --

22   withdrawn.

23            Are you aware of any employees that have

24   signed an affidavit statement, declaration or any

25   other document under oath or affirmation concerning

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

16

                          J. Molina

1

2    this lawsuit?

3         A.    No.  I don't know anything about that.

4         Q.    Apart from preparing for the deposition,

5    have you ever reviewed any documents related to this

6    case other than the form you signed to join the

7    lawsuit?

8              THE INTERPRETER:  Can you repeat the

9         question, Liz.

10             (Record read.)

11        A.    No.  The only thing was when I joined the

12   demand.  That's it.

13        Q.    So did you speak to anyone other than

14   your attorney about today's deposition?

15        A.    No.  With nobody.

16        Q.    Have you ever seen a complaint in this

17   case?

18        A.    No.

19        Q.    Have you had any conversations with any

20   of the employees of the restaurant about this

21   lawsuit?

22        A.    No.  I don't speak much and since they

23   fired me, I haven't been around there and I don't

24   talk to anyone.

25        Q.    Do you maintain contact with any of the

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

17

J. Molina

1

2      individuals that you used to work with at the

3      restaurant?

4             A.    No.

5             Q.    You testified at the beginning of the

6      deposition when being sworn in, you gave your

7      address.

8                   Do you remember that?

9             A.    Yes.

10            Q.    Do you own or rent a residence?

11            A.    I rent.

12            Q.    Are you the individual who has the lease

13     or someone else has the lease?

14            A.    I'm in charge of the apartment.

15            Q.    Your name is on the lease; correct?

16            A.    Yes, I am.

17            Q.    Who do you live with?

18            A.    With a young girl that I rent a room to

19     her.

20            Q.    You don't have any relationship other

21     than roommates or subtenant or anything like that?

22            A.    What does that have to do with the case,

23     these questions you're asking me?

24            Q.    I'm entitled to ask you questions about

25     anything I like during today's deposition and you're

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

18

1                          J. Molina

2      required to answer them.  You filed a case and I

3      have a right to get to know you during the

4      deposition.

5                 (Simultaneous speakers.)

6           Q.    Unless your attorney instructs you not to

7      answer, you are directed to answer my questions.

8           A.    Okay.

9           Q.    What is your date of birth?

10          A.    November 14, 1983.

11          Q.    Where were you born?

12          A.    In Ecuador.

13          Q.    When did you first come to the

14     United States?

15          A.    I'm not that sure.  I think it's about 20

16     years.

17          Q.    Have you visited home since you came to

18     the United States?

19          A.    No.

20          Q.    Ever since you've arrived in the

21     United States, you have never left the country;

22     correct?

23          A.    No.  I haven't left because I have my

24     whole family here.

25          Q.    Ever since you arrived to the

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

19

1                           J. Molina

2        United States, have you ever left the state of

3        New York?

4              A.    No.

5              Q.    Are you currently married?

6              A.    No.

7              Q.    Were you ever married?

8              A.    No.

9              Q.    Do you have any children?

10             A.    Yes.

11             Q.    What are children's names?

12             A.    Caroline Naomi Molina Arroyo.

13                   THE INTERPRETER:  A-R-R-O-Y-O.

14             Q.    Only one child; correct?

15             A.    Yes.

16             Q.    How old is she?

17             A.    She's going to be 15.

18             Q.    Does your daughter live with you?

19             A.    Sometimes she's here, sometimes with her

20       mother.

21             Q.    Her mother lives in the United States?

22             A.    Yes.

23             Q.    What is her mother's name?

24             A.    Ana Laura, L-A-U-R-A, Arroyo.

25             Q.    Have you ever had any family court

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

20

J. Molina

1

2    matters involving your child concerning custody or

3    anything like that?

4              MR. BUZZARD:  Objection.

5              You can answer this question.

6              But if you go down this line, I'm going

7         to cut it off.

8         A.    We never got to those cases.  I give my

9    daughter what she needs and that's it.

10        Q.    So no court cases relating to the custody

11   of your daughter?

12             MR. BUZZARD:  Objection.  Asked and

13        answered.

14        A.    No.

15        Q.    Are you currently supporting your

16   daughter?

17             MR. BUZZARD:  Objection.  I'm going to

18        ask you to move on from this.  This has nothing

19        do with the case.  There's absolutely no reason

20        to be asking these questions.  I will let him

21        answer one more question on this topic and then

22        we're moving on.

23             MR. KATAEV:  Please follow the judge's

24        rules.  All you have to say is objection.

25             MR. BUZZARD:  I will allow him to answer

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

21

J. Molina

1

2      one more question on this topic and then we are

3      moving on.

4              MR. KATAEV:  You can do whatever you

5      like.  You can instruct him not to answer.

6      We'll get the judge on the line.

7              MR. BUZZARD:  I'm sure Judge Subramanian

8      will love that on the 23d of December.  I've

9      given my client the instruction.  Please carry

10     on.

11              MR. KATAEV:  Please repeat the question.

12              (Record read.)

13      Q.    Are you currently supporting your

14 daughter?

15      A.    Yes.  We get along very well and she

16 doesn't need to ask me.  I give my daughter whatever

17 she needs.

18      Q.    Okay.  That's honorable.

19              Where does Ana Laura Arroyo live?

20              MR. BUZZARD:  I think we're done with

21      this line of questioning.

22              MR. KATAEV:  Are you instructing him not

23      to answer this it this question?

24              MR. BUZZARD:  Yes.

25              MR. KATAEV:  Let's get the judge on the

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

22

1                       J. Molina

2          line.  I'll email the judge.  We'll go off the

3          record.

4                  (Discussion held off the record.)

5                  (A recess was taken from 10:44 a.m. to

6          10:47 a.m.)

7                  MR. KATAEV:  Madam Court Reporter, mark

8          this question so it can be read back.

9   BY MR. KATAEV:

10         Q.    Mr. Molina, have you ever been arrested

11  before?

12         A.    That is not about this case.  Why are you

13  asking me these questions?

14         Q.    I already explained to you, Mr. Molina.

15  You have an obligation to answer my questions unless

16  you're instructed not to answer them.  I'm entitled

17  to get to know you.  You're suing my client.  So I

18  need to know who you are and what you're about.  So

19  you need to answer my questions.

20                Were you ever arrested before?

21         A.    Yes, I did get arrested once.

22         Q.    When was that?

23         A.    Twelve years ago.

24         Q.    What was the nature of the charge against

25  you?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

23

1                          J. Molina

2          A.    I had a fight with my wife -- well, the

3     person that was living with me.

4          Q.    Was that with Ms. Ana Laura Arroyo or

5     someone else?

6          A.    Her, Ana Arroyo.

7          Q.    Were you convicted based on whatever

8     charge you were arrested for?

9          A.    No.  I was detained only 24 hours.

10         Q.    As far as you know, the criminal case

11    never proceeded or it was otherwise resolved without

12    a plea or a conviction?  Do you know?

13         A.    Yes.

14         Q.    In that case, were any of the charges

15    against you related to fraud or anything like that?

16         A.    Fraud about what?

17         Q.    Anything.

18         A.    No.  No fraud.  No.

19         Q.    Other than that arrest, have you ever had

20    any other arrests?

21         A.    Yes.  One more time because I --

22               THE INTERPRETER:  Hold on.

23         A.    I said something to her son.

24         Q.    So Ms. Arroyo has a son that is not

25    yours; correct?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

24

J. Molina

1

2     A.    Yes, a son.

3     Q.    What did you say to her son?

4     A.    So I took the Nintendo away from him

5     because it was 3 o'clock in the morning and he was

6     still playing.  So I went to sleep with my daughter

7     and he called the police.

8     Q.    I see.

9            Were you actually arrested for that

10    incident?

11    A.    Yes.  They arrested me and I had six

12    months of an order of protection that I can't go

13    close to the boy.

14    Q.    Do you know why you were arrested for

15    taking away the game or was there some other act

16    that you did that caused you to be arrested?

17    A.    Yes.  Because the boy lied.  He said that

18    I hit him.  So the ambulance came and they took him

19    to the hospital and he was examined and nothing was

20    wrong with him.  That's why they gave me six months

21    that I have to be away from him.

22    Q.    Understood.

23           You don't maintain any contact with

24    Ms. Arroyo and/or her son as a result of these

25    incidents; right?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

25

1                          J. Molina

2         A.    At that time, yes.  Now we get along

3    fine.

4         Q.    Other than both of these arrests that we

5    just discussed, were you ever arrested for anything

6    else before?

7         A.    No.  I don't remember any more.

8         Q.    Did this second arrest, the incident with

9    Ms. Arroyo's son, did that result in any conviction

10    against you?

11         A.    No.

12         Q.    Other than this lawsuit and the race

13    discrimination case that you talked about last year,

14    have you ever been a party to any other lawsuit?

15         A.    No.

16         MR. KATAEV:  We can go off the record.

17         We received an email from the court advising us

18         that Mr. Buzzard and I should call the court to

19         advise the law clerk what the nature of the

20         dispute is.

21              (Discussion held off the record.)

22              (A recess was taken from 10:55 a.m. to

23         11:02 a.m.)

24         MR. KATAEV:  During the time we were off

25         the record opposing counsel and I joined the

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

26

J. Molina

1

2          Court for a telephone call.  The law clerk who

3          was designated to learn about the dispute was

4          not available.  But I believe the courtroom

5          deputy took down information about the nature

6          of the dispute and we're waiting to hear back

7          from the Court.  We will proceed with the

8          deposition until we hear back from the Court.

9     BY MR. KATAEV:

10         Q.    Mr. Molina, are you prepared to continue

11    doing the deposition?

12         A.    Okay.

13         MR. KATAEV:  Madam Court Reporter, can I

14         trouble you to the read back the last answer

15         that I asked before we went off the record.

16         (Discussion held off the record.)

17         Q.    Have you ever filed a complaint against

18    any employer with the New York State Department of

19    Labor or the United States Department of Labor?

20         A.    No.

21         Q.    Have you ever applied for unemployment

22    insurance benefits?

23         A.    During the pandemic it was something.

24    But I don't remember exactly how that was called.

25         Q.    You were not working for the restaurant

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

27

1                          J. Molina

2       subject to the case here at the time of the

3       pandemic; correct?

4              A.    Correct.

5              Q.    When did you first start working at the

6       restaurant subject to the lawsuit here?

7              A.    In April.  I don't remember very well.

8              Q.    April 2025 or April 2024?

9              A.    2024.

10             Q.    As far as you can remember, you started

11      working in April of 2024; right?

12             A.    Something like that.  Correct.

13             Q.    How long did you work at the restaurant

14      for?

15             A.    Not much.  About two months.

16             Q.    So April through June, if you started in

17      April; right?

18             A.    Yeah.  Something like that.

19             Q.    And it was definitely last year, not this

20      year; correct?

21             A.    Yes.  Last year.

22             Q.    Have you ever filed any claim for

23      Workers' Compensation benefits?

24             A.    No.  No.

25             Q.    Do you currently receive any form of

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

28

1                              J. Molina

2       government assistance?

3              A.    No.

4              Q.    Have you ever applied for food stamps?

5              A.    No.

6              Q.    What about health insurance, do you have

7       Medicare or Medicaid?

8              A.    I don't have medical insurance.

9              Q.    Do you have something like HealthFirst or

10      anything like that?

11             A.    I had Fidelis but don't have that any

12      more.

13                  (Court reporter requested clarification.)

14             Q.    Did you have Fidelis at the time you were

15      working at the restaurant?

16             A.    No.  No.  That the city gave to me.

17             Q.    When did you have Fidelis?

18             A.    I don't remember.

19             Q.    Do you remember if you had Fidelis last

20      year?

21             A.    About eight years ago.

22             Q.    And you had Fidelis since eight years ago

23      to the present day?

24                  (Technical difficulty.)

25             Q.    And you had Fidelis since eight years ago

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

29

1                          J. Molina

2       until the present day?

3            A.    About two months ago.

4            Q.    You lost it two months ago?

5            A.    I don't know what happened, but they cut

6       it off.

7            Q.    But is it fair to say that since you got

8       it eight years ago and you don't have it since two

9       months ago that you had it last year when you worked

10      for the restaurant?

11           A.    Yes.  But that's the government gave it

12      to me, not the restaurant or anything like that.

13           Q.    I completely understand and I appreciate

14      your clarification.

15                 For the eight years you had the

16      insurance, every year you would have to renew it;

17      correct?

18                 (Simultaneous speakers.)

19                 MR. KATAEV:  I don't think we have an

20           answer for the record.

21           A.    Well, actually, I automatically --

22                 (Technical difficulty.)

23           A.    I didn't look at it.  I didn't take care

24      of it then it was cut off.  I have to investigate

25      what happened.  I don't know what happened.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

30

1                        J. Molina

2              (Court reporter requested clarification.)

3              THE INTERPRETER:  I'm sorry.

4              He said, it renewed automatically.  I

5         didn't think about it.  I didn't take care of

6         it if I had to do something.  And now all of a

7         sudden it's cut off.  I have to investigate.  I

8         don't know what happened.

9         Q.    I understand that you may have lost it

10    because you didn't answer.  But you had it for eight

11    years; correct?

12         A.    Yes.

13         Q.    And it didn't automatically renew, you

14    had to do something for the last eight years for it

15    to renew; correct?

16         A.    No.  Automatically will just keep going.

17    No.

18         Q.    Do you remember last year in 2024

19    doing -- completing any application or information

20    to renew your health insurance?

21         A.    No.  No.

22         Q.    What about childcare assistance, do you

23    receive any government benefits related to that?

24         A.    No.  She has HealthFirst, something like

25    that.  I know she has health insurance but I don't

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

31

                          J. Molina

1

2       know exactly what it is.

3              Q.    What about housing assistance?

4              A.    No.

5              Q.    And lastly, education assistance for

6       yourself or your daughter?

7              A.    No.

8              Q.    Can you describe generally your education

9       background, if any?

10             A.    Only primary school.

11             Q.    That was in Ecuador or here in the

12      states?

13             A.    In Ecuador.

14             Q.    When you say primary school, that

15      includes high school; right?

16             A.    Only first to sixth grade.

17             Q.    You never attended any college; correct?

18             A.    No.  None of that.

19             Q.    Not in Ecuador, not in the United States;

20      correct?

21             A.    Correct.

22             Q.    You said you arrived to the United States

23      about 20 years ago; correct?

24             A.    Yes; correct.

25             Q.    What was your first job when you arrived

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

32

1                          J. Molina

2      in the United States?

3            A.    I don't even remember.

4            Q.    Was it in a restaurant?

5            A.    Construction.

6            Q.    Let's fast forward from when you started

7      in construction.  Let's go to when you first started

8      working in a restaurant.  What year did you first

9      start working in a restaurant?

10           A.    About 19 years ago on Lexington Avenue, a

11     restaurant.  That's where I learned everything.  It

12     was called Esca or something like that.  But it's

13     closed already.

14           Q.    How long did you work there?

15           A.    One year, more or less.

16           Q.    And you were a busser or runner there or

17     something else?

18           A.    Busboy.  I always worked as a busboy.

19           Q.    To your recollection, how were you paid

20     as a busboy at that restaurant?

21           A.    I don't remember.  It's been too many

22     years.

23           Q.    Do you remember if you were paid an

24     hourly rate?

25           A.    No.  I don't remember.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

33

1                         J. Molina

2          Q.    Where did you work after that?  Was it

3     another restaurant?

4          A.    Yes.  Restaurant, construction,

5     everything.

6          Q.    So you alternated or did you work in

7     construction first and then you stopped and started

8     working in restaurants only?

9          A.    I used to work both, construction and

10    restaurants.

11         Q.    You're saying both at the same time?

12               (Interpreter conferred with witness.)

13         A.    Not at the same time.

14               MR. KATAEV:  No?  I thought he said yes.

15               THE INTERPRETER:  I'm sorry.  He said yes

16         to me to what I asked him.  But it was not at

17         the same time.  I asked him not at the same

18         time and he said yes.

19               MR. KATAEV:  Sorry.  I appreciate the

20         clarification.

21         Q.    What was the next restaurant that you

22    worked in after this first one that you just

23    described?

24         A.    It was called Brio and it was Lexington

25    and 61st.

34

1                          J. Molina

2          Q.    How long did you work at Brio?

3          A.    About seven years.

4          Q.    You were paid hourly over there?

5          A.    I believe.  I mean, they used to give me

6     a check.  I don't remember looking.  I don't know.

7          Q.    Do you remember at Brio whether there was

8     a tip credit taken against your wages?

9          A.    Yeah.  The hours and the tip.

10         Q.    And when you worked at Brio, did anyone

11    explain to you that you were going to be paid less

12    than the minimum wage because you received tips?

13         A.    No.  I worked there.  But when they paid,

14    it was all out in taxes.

15         Q.    Did you receive tips over at Brio?

16         A.    Yes.

17         Q.    Did anyone explain to you that because

18    you received tips you're going to receive less than

19    the minimum wage because your tips will make up for

20    the difference?

21         A.    No.  Because everything is explained on

22    the check.

23         Q.    So by reviewing the pay stub -- I think

24    you're referring to the pay stub.

25               By reviewing that pay stub, you

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

35

1                          J. Molina

2       understood that you were paid less than the minimum

3       wage but the tips made up for the difference;

4       correct?

5            A.    Yes.

6            Q.    I know it was a long time ago, but having

7       worked there for seven years, did anyone in

8       management ever explain that to you?

9            A.    No.  I already knew that.

10           Q.    How did you know that?

11           A.    Because I already worked in a restaurant

12      before.

13           Q.    So if I understand you correctly, at the

14      job you worked prior to Brio where you only worked

15      there for one year, you were explained over there;

16      right?

17           A.    Yes.

18           Q.    After you worked at Brio where did you

19      work next?  For restaurants only.  You can skip any

20      construction jobs.

21           A.    Yes.  Scalinatella.

22                 MR. KATAEV:  Off the record.

23                 (Discussion held off the record.)

24           Q.    How long can you work at Scalinatella?

25           A.    Three years.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

36

J. Molina

1

2       Q.    Just like you worked at Brio and the

3   restaurant before that, you were paid less than

4   minimum wage because your tips made up for the

5   difference; correct?

6       A.    Yes.

7       Q.    And you had the same understanding as you

8   did since working at the first restaurant; correct?

9       A.    Yes.

10      Q.    What were the circumstances surrounding

11  your separation of employment from the first

12  restaurant where you only worked one year?

13      A.    They closed.  It was very abrupt.

14      Q.    What were the circumstances of your

15  separation from employment with Brio?

16      A.    The owner moved to Italy.  He sold the

17  restaurant.

18      Q.    What were the circumstances of your

19  separation from your employment with Scalinatella?

20      A.    I had a problem with the manager.  He

21  used to invite me to go drinking all the time.  I

22  just didn't want to go and that's why he fired me.

23      Q.    Where did you work after Scalinatella?

24      A.    I don't remember.  A famous place.

25      Q.    Do you remember the location?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

37

                         J. Molina

1

2        A.    There's two restaurants together.

3   Cantinetta.

4        Q.    How long did you work at those

5   restaurants?

6        A.    The restaurant is also called D-A

7   S-I-L-V-A-N-O.  He's the owner.  And it belongs to

8   Cantinetta also.  I worked there for about eight

9   years.

10        Q.    Were you paid in the same way with the

11   tips making up the minimum wage?

12        A.    The hours and the tip.  And the hours, I

13   don't know how much because the taxes they just take

14   all your check.

15        Q.    It was the same understanding as before,

16   correct, that you weren't paid the full minimum

17   wage, but your tips would make up the difference;

18   right?

19        A.    Yes.

20        Q.    At this restaurant, did anyone in

21   management verbally tell you about that?

22        A.    No.

23        Q.    But you understood it based on your

24   paycheck and other information provided to you;

25   correct?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

38

1                          J. Molina

2          A.    Yes.  Because it's all explained there.

3    The hours and it's just like that.

4          Q.    What were the circumstances of your

5    separation of employment from this restaurant?

6          A.    He divorced his wife and she took

7    everything and they closed the restaurant.

8          Q.    I asked earlier if you were married and

9    you said no but now you're saying you were divorced.

10              Can you explain?

11              MR. BUZZARD:  Objection.

12              THE INTERPRETER:  I'm sorry.  But he

13          didn't say anything about being divorced.  He

14          was talking about the owner of the restaurant.

15              MR. KATAEV:  I'll withdraw the question.

16          I apologize.

17              THE INTERPRETER:  Sorry.  He said the

18          owner, he got divorced from his wife.  She took

19          everything from him and he closed the

20          restaurant.

21              MR. KATAEV:  Okay.  Thank you.

22          Q.    Where did you work after that restaurant?

23          A.    From there I don't remember any more.

24              From there to San Pietro.

25              THE INTERPRETER:  Which is S-A-N

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

39

                          J. Molina

1

2        P-I-E-T-R-O.

3                MR. KATAEV:  Is it P-R-I-E-T-O?

4                THE INTERPRETER:  P-I-E-T-R-O.

5        Q.    How long did you work at San Pietro?

6        A.    A little time.  Only a year.

7        Q.    When you worked there, did you have the

8   same understanding about how your wages and tips

9   were?

10       A.    Yes.

11       Q.    And you understood there like you

12  understood every restaurant you worked at since you

13  started working at restaurants that your tips would

14  make up the difference between the tips, your wage

15  and the minimum wage; correct?

16       A.    Yes.

17       Q.    What were the circumstances of your

18  separation from San Pietro?

19       A.    They are doing renovations now.  I'm

20  waiting for them to open.  Maybe after January, I'll

21  go back to work there.

22       Q.    What was the next restaurant that you

23  worked at after San Pietro?

24       A.    Il Tinello.

25       Q.    How long did you work at Il Tinello?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

40

                              J. Molina

1

2        A.    About three months.

3        Q.    Why did you leave there?

4        A.    That's the place that I had the racism

5   problem.  They used to curse at me.  They didn't

6   treat me well.

7        Q.    I see.  At all of the restaurants that

8   you worked at, including Tinello, you were only a

9   busser, never a server?

10       A.    Only busboy.

11       Q.    And you were paid the same way there as

12  you were paid at all the other restaurants?

13       A.    Yes.

14       Q.    This restaurant is on 56th Street;

15  correct?

16       A.    Yes.

17       Q.    What was the next restaurant you worked

18  at?

19       A.    Nothing else.

20       Q.    So you never worked at Osteria La Baia?

21       A.    Yeah.  But that was in 2024.

22       Q.    Okay.  I understand.  My question is not

23  limited to stop in 2024.  I want to know all the

24  restaurants you worked at.

25             After Il Tinello, where else did you work

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

41

1                        J. Molina

2     restaurant-wise?

3          A.    I worked at Sette Mezzo, but I didn't

4     stay there long.

5          Q.    How long do you remember working there?

6          A.    Not even a month.

7          Q.    Were you paid the same way that you were

8     as all the other restaurants?

9          A.    Yes.

10         Q.    You had the same understanding about how

11    your tips and wages would work?

12         A.    Yes.

13         Q.    What were the circumstances of your

14    separation of employment there?

15         A.    You have to do deliveries.  I don't like

16    to do deliveries.  They are very dangerous in the

17    city.

18         Q.    So you quit?

19         A.    Yes.  I quit.

20         Q.    What did you do after that?

21         A.    I'm working temporarily here on 54th

22    Street.  It's Cellini.

23         Q.    How long did you work there?

24         A.    I don't know.  It's just a month so far.

25         Q.    That's where you're currently working?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

42

                         J. Molina

1

2        A.    Yes.

3        Q.    If I understand correctly, you've

4   testified about all the restaurants you've worked

5   with but Osteria La Baia; correct?

6        A.    Correct.

7        Q.    For any of these jobs that we've just

8   discussed, were you ever fired, demoted or asked to

9   resign?

10       A.    Only at the restaurant where there was

11  racism.  They put me as a dishwasher also.  That was

12  the only place.

13       Q.    Do you have any documents related to your

14  employment with these prior restaurants?

15       A.    No.  I don't have.

16       Q.    You don't keep any of your pay stubs?

17       A.    Yeah, that I save.  Yes.

18            MR. KATAEV:  I want you to keep all your

19        pay stubs from your prior jobs.  I'm going to

20        be making a request to your attorneys for you

21        to produce that information.  I'll follow up in

22        writing and your attorneys will discuss it with

23        you.

24            Can we take a two-minute break.

25            MR. BUZZARD:  Sure.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

43

1                       J. Molina

2              (A recess was taken from 11:44 a.m. to

3         11:50 a.m.)

4              MR. KATAEV:  Madam Court Reporter, if I

5         can trouble you for the last question and

6         answer.

7              (Record read.)

8         Q.    Tell me about --

9              MR. KATAEV:  Hang on.

10        Q.    Is it fair to say that of all the

11    restaurants you worked at including the defendant

12    restaurant here, your primary duty was to serve

13    customers.

14        A.    No.  I only give water, bread, and I

15    clean the table.

16        Q.    If a customer asked you for something, to

17    bring them something, you would also be able to

18    bring it; right?

19        A.    No.  Everybody has their own job.  There

20    is servers, there are busboys and runners.

21        Q.    Other than the time you were directed to

22    work in the kitchen at Il Tinello, your job duties

23    never changed; correct?

24        A.    Yes.  Busboy.

25              MR. KATAEV:  I'm going to share on my

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

44

1                    J. Molina

2           screen with you what will be marked as

3           Defendants' Exhibit 1.

4                  (Defendants' Exhibit 1, LS54, marked for

5           identification.)

6           Q.   I'll represent to you, Mr. Molina, this

7      is what is commonly called an LS54 form.

8                  MR. BUZZARD:  I can't see anything.

9                  THE INTERPRETER:  There's nothing on the

10          screen.

11                 (Discussion held off the record.)

12                 MR. KATAEV:  Alivia, I put a link in the

13          chat.  Can you open it and share your screen.

14                 (Discussion held off the record.)

15          Q.   Do you see this exhibit, notice and

16     acknowledgement of pay rate and payday; Mr. Molina?

17          A.   Yes.

18          Q.   Have you ever seen this document before?

19          A.   No.  Not at all.

20          Q.   You never filled this out at Osteria La

21     Baia?

22          A.   No.  Nothing of that.  No.

23                 MR. KATAEV:  You can take it off the

24          screen.

25          Q.   You received tips at all of the

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

45

                              J. Molina

1

2       restaurants you worked at; correct?

3            A.    Yes, tips.

4            Q.    Did you always work part-time at all of

5       the restaurants or did you work full-time at some of

6       them?

7            A.    Always full-time.

8            Q.    So how did it work with your construction

9       job?

10           A.    Full-time, but Monday through Friday

11      only.

12           Q.    Are you saying you only worked the

13      construction job during the weekend?

14           A.    No.  No.  No.  That was many years ago.

15           Q.    When was the last time you ever worked on

16      any construction job?

17           A.    I don't even remember.  Many years ago.

18           Q.    Did you ever work at any construction job

19      in 2024?

20           A.    No.  No.

21           Q.    How did you get the job at Osteria La

22      Baia?  How did you find out about it?

23           A.    Walking and asking.

24           Q.    How did you know about the restaurant's

25      existence?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

46

1                          J. Molina

2        A.    I was walking and I saw the restaurant.

3        Q.    Were you walking for the specific purpose

4    of finding a job?

5        A.    Yes.

6        Q.    How many restaurants did you visit that

7    day?

8        A.    I don't even remember.

9        Q.    Were you directed by anybody to go and

10   walk around to look at restaurants?

11       A.    No.  I needed a job and I started to look

12   for one.

13       Q.    Did anybody tell you to go to this

14   particular restaurant?

15       A.    No.

16       Q.    When you walked into the restaurant

17   looking for a job, who did you speak to?

18       A.    Julio.

19       Q.    How did it come to be that you spoke to

20   Julio?

21       A.    Because the hostess called him.

22       Q.    Did you meet Janos that same day?

23       A.    Yes.

24       Q.    When you started speaking with Julio

25   about the job, Janos was there, too; correct?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

47

                              J. Molina

1

2        A.    Yes.

3        Q.    What did you say to Janos or Julio and

4    what did Janos or Julio say to you?

5        A.    Come back the next day at 10 a.m. to

6    train.  And after that Janos went on vacation and I

7    never saw him again.

8        Q.    When you spoke to Janos and Julio that

9    day, did Janos tell you about the tip credit making

10   up the minimum wage?

11       A.    No.  They didn't explain anything.  I

12   already knew that.

13       Q.    Did they start explaining it and you said

14   I don't need to know this because I already know it?

15       A.    No, they never -- they didn't say

16   anything to me anyway.

17       Q.    Did you discuss your pay that first day

18   you met Janos and Julio?

19       A.    No.

20       Q.    What did you discuss?

21       A.    That I was looking for a job and they

22   told me to come back the next day at 10:00 a.m. and

23   that was it.

24       Q.    At the time that you applied for a job at

25   Osteria La Baia, you were not yet working at Il

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

48

1                         J. Molina

2     Tinello?

3         A.    No.  I didn't work at Il Tinello then.

4         Q.    You started working at Tinello after

5     working at Osteria La Baia; correct?

6         A.    Yes.

7         Q.    Now, when you spoke to Janos and Julio,

8     did they ask you about your experience in working

9     other restaurants?

10        A.    Yes.

11        Q.    Did you, by any chance, have a resume to

12    show them about all of the restaurants you had

13    worked at in the past?

14        A.    I don't remember that.  I don't remember.

15        Q.    Generally speaking, do you have a resume

16    that lists all the restaurants you worked at?

17        A.    No.  I don't have that.

18        Q.    You were told by Janos to come in for

19    training the following day; correct?

20        A.    Yes.

21        Q.    Did you do that?

22        A.    Yes.

23        Q.    How many days of training did you do?

24        A.    Three days.

25        Q.    For the three days you worked at the

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

49

1                         J. Molina

2      training, you were paid a full minimum wage;

3      correct?

4           A.    No.  They didn't pay me that.

5           Q.    What did they pay you?

6           A.    No.  They didn't pay me anything.

7           Q.    You're saying that you did training for

8      three days and you were not paying anything at all?

9           A.    They didn't pay me at all.

10          Q.    Are you familiar with the name Adrian

11     Montor-Peran?

12          A.    No.

13          Q.    You never spoke to Adrian before?

14          A.    Yes.  I spoke to him.  I know him.

15          Q.    Are you aware that he's part of this

16     lawsuit?

17          A.    Yes, I did.  I realized.  I know.

18          Q.    Are you aware that he had a deposition on

19     December 2nd of this year?

20          A.    No.  I didn't know that.

21          Q.    Are you aware that -- withdrawn -- when

22     was the last time you spoke to Adrian?

23          A.    About -- I would say about two months.  I

24     don't really speak much to him.

25          Q.    Are you aware that he testified that he

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

50

J. Molina

1              was paid when he received training?

3        A.    I didn't know that.  I don't know.

4        Q.    Why would Adrian be paid for training at

5   the full minimum wage but you wouldn't?

6              MR. BUZZARD:  Objection to form.

7              You can answer.

8        A.    I don't know.  To tell you the truth, I

9   just don't know.

10        Q.    Did you complain to anyone that you were

11   not paid for the three days of training you did?

12        A.    Yes.  With Julio.

13        Q.    What did Julio say?

14        A.    Julio told me wait because the other

15   manager is on vacation and I didn't know what to

16   wait for because the vacation -- he never came back

17   from vacation.

18        Q.    In other words, Julio wasn't able to help

19   you with your problem; correct?

20        A.    No.  He couldn't have helped me.

21        Q.    Julio needed the assistance of someone

22   else to address the issue about pay for training;

23   correct?

24        A.    I think that's what was happening.

25        Q.    Whatever happened to that issue?  Did you

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

51

1                    J. Molina

2    ever follow up?

3        A.    They paid me 240.  And then I worked five

4    dinners, three lunch and it was 600 and something.

5        Q.    So you're saying you ultimately got paid

6    for the training or what are you saying?

7        A.    No.  They never paid me for the training.

8        Q.    I want to understand something else that

9    you said.  If I recall correctly, you said that

10   Janos told you to come in the next day but Janos

11   went on vacation; correct?

12            MR. BUZZARD:  Objection.  That's not his

13            testimony.

14       A.    Yes.

15       Q.    Then if I recall your testimony correctly

16   when we were talking about this training pay issue,

17   you said the manager went on vacation and never

18   returned; is that right?

19       A.    Yes.  And Julio was left as the manager

20   after but he never was able to resolve my problem.

21       Q.    You're saying that Janos was the manager

22   that never returned or it was someone else that

23   never returned?

24            (Interpreter requested clarification.)

25            THE INTERPRETER:  I was just asking him

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

52

1                        J. Molina

2          who is the manager that went on vacation.

3               MR. BUZZARD:  I'm asking you to translate

4          his response.  It seems like you're

5          interrupting him and forcing him to say

6          something else.  Please answer what the witness

7          says.

8               THE INTERPRETER:  He said Julio was left

9          as the manager.  I said, that's not what we

10         were asking you.  We're asking you, who is the

11         manager that went on vacation.

12              MR. BUZZARD:  That is the attorney's job

13         to clarify.  Your job is to respond what my

14         client says.

15         A.    Julio was left as the manager.

16              THE INTERPRETER:  That's what he said.

17         Q.    I just want to clarify.  You said that a

18    manager went on vacation and never returned.

19              Who was that manager that went on

20    vacation and never returned?

21         A.    Janos is the one that left.  The one that

22    hired me is Julio.  I think his last name is Perez.

23         Q.    So are you saying that Julio is the

24    manager that left and never returned?

25         A.    No.  Janos didn't come back.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

53

1                       J. Molina

2        Q.    You're saying Janos went on vacation and

3    never returned after you started working there for

4    two months; correct?

5        A.    Yes.

6        Q.    Are you aware that Janos is still working

7    at the restaurant to this day?

8        A.    I don't know.  Since I left that place, I

9    don't know anything about it.

10        Q.    Now, you said that Julio hired you;

11    correct?

12        A.    Yes; correct.

13        Q.    And it's your testimony that he hired you

14    on that very first day that you walked in; correct?

15        A.    Yes.

16        Q.    When you were told by Janos to come in

17    for training the next day, that's when you

18    understood you were hired; correct?

19        A.    Yes.  But I only spoke two words with

20    Janos.

21        Q.    But Janos was the one that said come in

22    for training tomorrow; correct?

23        A.    Yes.

24        Q.    What did Julio do or say to make you

25    believe that Julio hired you?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

54

J. Molina

1

2      A.    Because he was in charge of the room.  He

3  was in charge of everyone.

4      Q.    You're saying he was in charge of the

5  room and in charge of everyone when you and Janos

6  were speaking to him or are you referring to things

7  that he did while you were employed there?

8      A.    When I was working there.

9      Q.    I understand that you're referring to

10  things when you started working there.  And we will

11  get to that.

12         But I'm talking about frozen in time the

13  first day you walked in, you're talking to Janos and

14  Julio.  What did Julio do or say to tell you or

15  indicate to you that he was the one who hired you?

16  Answer that question.

17      A.    Because we were speaking and he said come

18  tomorrow 10 o'clock for training.  And Julio said

19  yes, come tomorrow at 10:00.

20      Q.    So Julio merely repeated what Janos said;

21  correct?

22      A.    Yes.

23      Q.    Other than that, did Julio say or do

24  anything else to make you believe that Julio hired

25  you?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

55

1                        J. Molina

2        A.    I thought he was the general manager

3    because he was in charge of the meetings and he

4    would command the people that work there.

5        Q.    I know you're talking about stuff that

6    happened while you worked there.  But my question is

7    focused on your hiring.  You said that Julio hired

8    you.

9              My question is, other than repeating what

10   Janos said, did he say or do anything to make you

11   believe that Julio hired you?

12       A.    Because Julio told me come tomorrow at

13   10:00.

14       Q.    Other than that, nothing else; correct?

15       A.    No.  Nothing else.

16       Q.    While you were working at Osteria La

17   Baia, did you work anywhere else at the same time?

18       A.    No.  Only there.

19       Q.    What was the schedule at Osteria La Baia

20   when you worked there for two months?

21       A.    From 4:00 to 11:00 and 10:00 to 10:00,

22   something like that it was.

23       Q.    2:00 p.m. to 11 p.m. and 10:00 a.m. to

24   10:00 p.m.; is that right?

25              THE INTERPRETER:  4:00.  4:00 to 11:00

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

56

1                    J. Molina

2          and 10:00 to 10:00.

3          Q.    When did you work from 4:00 p.m. to

4     11:00 p.m. and when did you work from 10:00 to

5     10:00?

6          A.    I don't remember that very well.

7          Q.    What days of the week did you work?

8          A.    I don't remember that either, not very

9     well.

10         Q.    Was your schedule generally fixed and the

11    same every week or was it always varied and

12    alternate?

13         A.    I don't remember that very well.

14         Q.    How were you paid when you were employed

15    at Osteria La Baia?

16         A.    I wasn't looking because the check came

17    very, very low and they have to fix that.

18         Q.    Did you tell anybody they have to fix

19    that?

20         A.    Yes, with Julio.

21         Q.    What did Julio do when you spoke to him

22    about it?

23         A.    Next week you're going to have a complete

24    change and we're going to give you the money you

25    never received.  But that never happened.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

57

1                       J. Molina

2          Q.    Julio told you that there on the spot?

3          A.    Yes.

4          Q.    Julio didn't speak to anybody before

5    telling you that?

6          A.    I don't remember.  I have no idea.

7          Q.    When did you first speak to Julio about

8    this issue?

9          A.    About a week after because I didn't

10   receive my check.

11         Q.    And that issue was resolved?

12         A.    No.  Never.

13         Q.    What did you do when it wasn't resolved

14   after Julio told you it would be?

15         A.    I waited, I waited, I waited, and they

16   never resolved it.

17         Q.    So you let it slide?

18               MR. BUZZARD:  Objection to form.

19               You can answer.

20         A.    No.  The last time I spoke to Julio, he

21   said, well, if you want to, just leave.  So I left.

22         Q.    Is it fair to say because Julio failed to

23   fix the problem that he was unable to or powerless

24   to fix the problem?

25               MR. BUZZARD:  Objection to form.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

58

1                    J. Molina

2           You can answer.

3       A.    Yes, that's correct.

4       Q.    You were paid on an hourly basis when you

5    worked at Osteria La Baia; correct?

6       A.    I don't know what they were paying me.

7    Every time I received a check, they were very, very

8    low, so I couldn't understand.

9       Q.    Why do you believe it was low?

10      A.    Because the checks were 240, 320,

11   something like that the checks were.

12      Q.    Did you look at the gross amount of the

13   check to see what the amount of pay was before

14   taxes?

15      A.    Well, the check was there but I didn't

16   understand anything.

17      Q.    You were paid on a weekly basis; correct?

18      A.    Yes, every week they gave checks.

19      Q.    Going back to the first day where you

20   came in where Janos told you to come back the next

21   day for training, do you remember filling out any

22   application forms to be employed by the restaurant?

23      A.    No.

24      Q.    Do you remember standing in front of the

25   point of sale system Toast and working on filling

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

59

1                          J. Molina

2      out employment forms?

3           A.    No.

4           Q.    Do you remember providing your email

5      address to be placed into the Toast system so you

6      could have access to it?

7           A.    Yes.  The touch screen, yes.

8           Q.    What do you remember about that

9      generally?

10          A.    I don't remember anything about that any

11     more.

12          Q.    Do you remember filling out your email

13     address at the time and other information on the

14     touch screen?

15          A.    Yes.  Yes.

16          Q.    Do you remember signing any documents at

17     the time that you were filling out the application?

18          A.    No.  I didn't sign anything.

19          Q.    Do you remember putting like a signature

20     like you would on a touch screen?

21          A.    Not that I remember.  I never signed

22     anything.

23          Q.    Did you ever log in to the Toast website

24     or application to view your pay stubs?

25          A.    No.  I never entered that.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

60

1                          J. Molina

2          Q.    When you received your pay every week

3    together with the check there was a pay stub;

4    correct?

5          A.    I don't remember that.

6          Q.    You said that you would look at your pay

7    stub and you would see that you were not -- you were

8    paid too little and you made complaints about it;

9    correct?

10         A.    Yes.

11         Q.    What were you looking at when you made

12   that determination?

13         A.    Yes, the bottom of the check.  But I

14   don't remember if that -- I don't remember if that's

15   it.  I used to look at the bottom of the check.

16         Q.    When you refer to the bottom of the

17   check, you're referring to a piece of paper that is

18   not the check itself; correct?

19         A.    I don't remember if it was like that.

20         Q.    Was it a physical piece of paper or was

21   it something that you saw on a screen?

22         A.    Yes.  But I don't remember well.

23         Q.    Was it a yes, it was a piece of paper or

24   yes, it was something on a device?

25         A.    Yes.  A piece of paper.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

61

                          J. Molina

1

2    Q.    Now, you say your employment at Osteria

3    La Baia ended because you had a disagreement and you

4    quit; right?

5    A.    No.  He told me if you want to, leave.

6    So I left.

7    Q.    Who is he?

8    A.    Julio.

9    Q.    Do you have any documents related to your

10   employment at Osteria La Baia in your possession?

11   A.    Yes, I do have in my house, yes.

12   Q.    Did you give those documents to your

13   attorney so they could give it to me?

14   A.    Okay.

15   Q.    I'm asking, did you give those documents?

16   A.    I believe I did.

17   MR. KATAEV:  To the extent you didn't,

18   I'm asking you to please hold on to them, not

19   lose them, and give them to your attorney so

20   they can give them to me.  I will follow up in

21   writing with a request for all documents

22   related to your employment.  Okay.

23   A.    Okay.

24   Q.    Are there any documents related to your

25   employment that you did not give to your attorneys?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

62

                              J. Molina

1

2          A.    No.  The attorney has.

3               MR. KATAEV:  Let's go off the record for

4          a second.

5               (Discussion held off the record.)

6               MR. KATAEV:  We went off the record to

7          discuss the very important topic of lunch.  We

8          are going to proceed until 1 o'clock before we

9          break for lunch.

10    BY MR. KATAEV:

11         Q.    If I understand your testimony correctly,

12    Mr. Molina, you have no knowledge or recollection of

13    what your hourly rate was when you were working at

14    Osteria La Baia; correct?

15         A.    Correct.

16         Q.    What would you do if you needed to figure

17    out what your hourly rate was?  How would you go

18    about figuring that out?

19         A.    That's why I asked Julio.  And he always

20    will tell me, don't worry, next week is going to be

21    okay, we fix it.  And it never happened.

22         Q.    When Julio said that it would be fixed,

23    did he tell you that he was going to somebody else

24    to get it fixed?

25         A.    I don't know because at the end he told

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

63

                          J. Molina

1

2      me just wait for Janos.  When he comes back, he's

3      going to fix it.  But I have a family, I have to

4      support the family.  And I couldn't live with that

5      salary, so I left.

6          Q.    And your testimony is that after you met

7      Janos on the day that you applied for a job, you

8      didn't see Janos for two months while you were

9      working there; correct?

10         A.    It is correct.

11         Q.    Do you have any idea where Janos went for

12     two months?

13         A.    To tell you the truth, I don't know.  I

14     don't have an idea.

15         Q.    You testified that you previously

16     reviewed your pay stub, though; correct?

17         A.    Yes.

18         Q.    And when you reviewed your pay stub, your

19     hourly rate was listed there; correct?

20         A.    I couldn't figure it out.  The check made

21     no sense.  I don't know if they were paying me

22     hours, tips.  I just couldn't figure it out.

23         Q.    Did you ask anybody for help to figure it

24     out?

25         A.    Yes.  Another coworker.  And she told me,

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

64

1                        J. Molina

2        tell Julio, tell Julio.  I tell Julio, but it was

3        never fixed.

4             Q.    Your daughter, she goes to school here in

5        the United States of America; correct?

6             A.    Yes.

7             Q.    And she speaks English well?

8             A.    Yes, she's born here.  She was born here.

9             Q.    And she reads as well?

10            A.    Yes.

11            Q.    Generally speaking, in life, sometimes

12       you rely on your daughter to read something for you

13       or explain something to you in English; right?

14            A.    No.

15            Q.    You never asked your daughter to look at

16       your pay stub to explain it to you?

17            A.    No.  That's not -- no.

18            Q.    Do you believe that she would not be able

19       to help you do that?

20            A.    I don't like to involve them in my

21       personal things.

22            Q.    Okay.  Understandable.

23                  Did you ask anybody else to help you

24       understand the pay stub?

25            A.    Yeah.  Like I said, a coworker.  And she

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

65

                            J. Molina

1

2      told me to speak to Julio.

3           Q.    The coworker, what was that coworker's

4      name?

5           A.    I don't remember her name.

6           Q.    When was the last time you had contact

7      with her?

8           A.    No.  Since I left that place, I have no

9      contact with anyone from that place.

10          Q.    And your testimony is that a copy worker

11     did not explain to you what's on the pay stub?

12          A.    Yes, she explained some.  But then she

13     said, it's not right.  Speak to Julio so they can

14     fix it.

15          Q.    When she said that it's not right, did

16     she explain why it's not right?

17          A.    Something like that.  Because neither

18     her -- she didn't understand either if they were

19     paying me hours or tips or what.

20          Q.    So your testimony is that the person you

21     went to to explain it to you couldn't explain it to

22     you because she didn't understand it either;

23     correct?

24                      (Technical difficulty.)

25                      (Record read.)

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

66

                          J. Molina

1

2        A.    Yeah, that's correct.

3        Q.    When this coworker whose name you don't

4    remember told you to go to Julio about it, did you

5    ask Julio to explain it to you?

6        A.    Yes.  He told me next week when you get

7    the check, it's going to be corrected and you're

8    going to receive what you have to receive.

9        Q.    To your knowledge, did Julio go to anyone

10   to correct it?

11       A.    I don't know that.

12       Q.    To your knowledge, Julio did not have the

13   power to correct it himself; right?

14       A.    I think that he -- I think yes, he

15   didn't.

16            MR. BUZZARD:  Objection.  I am not

17       convinced that that translation is correct.

18            MR. KATAEV:  Can we repeat -- have the

19       witness repeat the answer and have you

20       retranslate.

21       Q.    Mr. Molina, can you repeat your answer?

22       A.    Can you repeat the question.

23            MR. KATAEV:  Do you want to read it back?

24            (Record read.)

25       A.    No.  As I told you, he keep telling me

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

67

J. Molina

1

2     next week the check is going to be correct and

3     you'll receive the money that you deserve.

4          Q.    I want clarity on my question.  And my

5     question was, to your knowledge, Julio did not have

6     the power to fix the issue that you brought to his

7     attention; correct?

8          A.    I don't know.  I don't know.  He was just

9     telling me that.

10         Q.    You don't know if he had the power;

11    correct?

12         A.    He had some powers.  He did the meetings.

13    He did the -- I call that a manager.

14         Q.    But my question is about your issue with

15    the pay stub.

16              He did not have the power to fix that

17    issue; correct, based on what you're telling me?

18         A.    I don't know.  I don't know.

19         Q.    I understand.

20              Did you receive tips while you worked at

21    the restaurant, Osteria La Baia?

22         A.    I don't know the difference.  I don't

23    know if it was tips or salary.  The check were very

24    low.  200, 300.  And I don't know if it was salary

25    or hours or tips.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

68

J. Molina

1

2      Q.    Did you ever receive any tip directly
3      from a patron of the restaurant?
4      A.    No.  Not at all.
5      Q.    To your knowledge, did patrons of the
6      restaurant leave tips on the credit card?
7      A.    It depends on the client.  Credit card,
8      cash.
9      Q.    You observed while working at the
10     restaurant that you were left tips by credit card,
11     by cash and otherwise; correct?
12     A.    I don't know.  On that, I didn't touch
13     that.  That's not my job.
14     Q.    My question is not about you touching it.
15           My question is, did you see, did you
16     observe that you received tips in cash and/or credit
17     cards?
18     A.    No.  I never looked at that.
19     Q.    To your knowledge, did you receive tips?
20     A.    What do you mean tips?  I don't
21     understand.
22     Q.    Did you receive tips?
23     A.    No.
24     Q.    What is your understanding of what you
25     received when you were paid on a weekly basis?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

69

                          J. Molina

1

2              THE INTERPRETER:  It got cut off.  I

3         didn't understand the whole thing.  I'm sorry.

4              MR. KATAEV:  That's okay.

5         Q.    What is your understanding of what you

6    received when you were paid on a weekly basis?

7         A.    When I received the tips are in a check.

8    I don't know if they're cash or credit card.  I

9    don't know.  I don't know the difference.

10        Q.    So do you believe that your pay reflects

11   only your hourly wages without tips?

12        A.    I don't know.  I don't know how to say

13   that.  The check was low.

14        Q.    Did you ever attempt to figure out what

15   portion of your pay was for tips and what portion of

16   your pay was for wages?

17        A.    Okay.  I only know the check was low and

18   I got tired of asking and that was it.

19        Q.    How do you reconcile your vast experience

20   working at prior restaurants and your professed

21   knowledge about how you were paid with your complete

22   ignorance of how you were paid at this restaurant,

23   Osteria La Baia?

24             MR. BUZZARD:  Objection.

25             THE INTERPRETER:  I'm sorry.  I don't

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

70

1              J. Molina

2         understand the question to even ask it.  Can

3         you repeat it, Liz.

4              MR. KATAEV:  I will repeat it.

5              THE INTERPRETER:  Okay.

6    BY MR. KATAEV:

7         Q.    How do you reconcile your vast experience

8    working at restaurants before Osteria La Baia and

9    testifying knowledgeably about how you were paid

10   versus your professed ignorance over how you were

11   paid at Osteria La Baia?

12        A.    Because at the other restaurants I

13   received my check and it was 700 or more and I never

14   received a check for 300 and 200.  It was too low.

15   Not even working in a Chinese restaurant I would

16   receive such low salary.

17        Q.    Do you know whether at the prior

18   restaurants, those other restaurants had you

19   participant in a tip pool?

20        A.    I don't know.  I don't know.

21        Q.    Is it possible that at the prior

22   restaurants there was no tip pool but at this

23   restaurant there was a tip pool?

24        A.    No.  Because in all of the other

25   restaurants that I work is ten points for the waiter

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

71

1                        J. Molina

2      and five points for the busboy, in every restaurant

3      that I worked.

4              Q.    Is there any other reason you can think

5      of why your pay would be lower at this restaurant

6      Osteria La Baia as compared to all other

7      restaurants?

8                    THE INTERPRETER:  His phone only has 5

9              percent battery and he's trying to locate

10             something to charge it.  Give him a minute,

11             please.

12                   MR. KATAEV:  We'll let him answer this

13             question and then we'll have lunch.

14                   Madam Court Reporter, please have the

15             question handy so you can repeat it.

16                   (Record read.)

17             A.    I don't know.

18                   MR. KATAEV:  All right.  It's 1 o'clock.

19             It's have our lunch break.  We'll come back at

20             1:45 and continue and finish.

21                   (A recess was taken from 1:01 p.m. to

22             1:52 p.m.)

23                   MR. KATAEV:  During our off-the-record

24             discussion following our return from lunch, we

25             received an email from the Court with a

72

1                        J. Molina

2         decision on the direction for the witness to

3         answer the question about the address of mother

4         of his child.

5              The email reads as follows:  Counsel, the

6         relevance of the information sought by the

7         defense is unclear and obviously the address of

8         the mother of Molina's child with idea that the

9         defense counsel will seek discovery from that

10        person is potentially intrusive and requires a

11        clear showing of why that information is

12        needed.

13             Further, discovery is long since closed.

14        The court allowed a few outstanding depositions

15        to happen outside of that period only because

16        the parties couldn't get their act together in

17        the time that was allotted.  Further discovery

18        into these matters is therefore precluded for

19        this reason as well.  For these reasons, the

20        defense's application to inquire into the

21        address of a third party as identified by

22        counsel on the call to chambers is denied.

23             We're now ready to have the last question

24        and answer read back, please.

25                  (Record read.)

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

73

                              J. Molina

1                        J. Molina

2     BY MR. KATAEV:

3          Q.    To your knowledge, did you receive tips

4     on a regular basis?

5          A.    No.

6          Q.    On average, how much did you receive in

7     tips per day?

8          A.    I don't know.

9          Q.    To your knowledge, did the amount of tips

10    you received every day fluctuate?  They were higher

11    some days, lower other days?

12         A.    I don't know because the manager was in

13    charge of that.

14         Q.    You're saying the manager was in charge

15    of how much tips you received?

16         A.    He used to divide the tips.

17         Q.    How did he divide it?

18         A.    I don't know that.

19         Q.    Do you recall when -- do you recall the

20    process which by it was divided?

21         A.    No, because I didn't get involved in

22    that.

23         Q.    Were you present when the tips were being

24    divided?

25         A.    No.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

74

1                           J. Molina

2          Q.    Isn't it true that the tips were divided

3     every night?

4          A.    I don't know.  I don't have -- I have no

5     idea of that.

6          Q.    Where were you in the evening when the

7     restaurant was closing?

8          A.    Cleaning my station.

9          Q.    Did you ever receive any tips in cash?

10         A.    No.

11         Q.    Did you ever observe all of the front of

12    house staff meeting with one of the managers to

13    divide the tips or to review the tip sheet?

14         A.    No.  I didn't get involved in that.

15         Q.    Are you saying you observed it happening

16    and stayed away?

17         A.    No.  No.  I didn't get involved with

18    that.  I don't participate in that.

19         Q.    Did you have the option of being involved

20    in it if you wanted to?

21         A.    I don't like to get involved in those

22    things.  The least I do about that is better for me.

23         Q.    No one told you that you couldn't be

24    present when that was going on; right?

25         A.    No.  Nobody told me.  But I just don't

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina --- December 23, 2025

75

1                        J. Molina
2      like to get involved in that.
3           Q.    So you just voluntarily chose not to be
4      present when that was going on; correct?
5           A.    Correct.
6           Q.    Do you have any sense as to whether you
7      received more in tips or more in wages?
8           A.    No.  I looked at the check.  And like I
9      said, I couldn't understand if it was hours or tips.
10          Q.    But you knew that your pay consisted of
11     both; correct?
12               THE INTERPRETER:  I'm sorry.  Mr. Kataev,
13          I didn't hear what you said.
14          Q.    But you knew that your pay consisted of
15     both; correct?
16          A.    Yes.  Yes.
17          Q.    To your knowledge, were any of the tips
18     included in customer credit card payments?
19          A.    Can you repeat the question, please.
20               MR. KATAEV:  Read it back, please.
21               (Record read.)
22          A.    I don't know that.
23          Q.    Did you keep any records of the tips that
24     you received?
25          A.    No.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

76

1                          J. Molina

2          Q.    To your knowledge, did other employees

3     receive tips directly from customers?

4          A.    No.  I don't know anything about that.

5          Q.    You never observed that?

6          A.    No.  I never did that.

7          Q.    What other job titles did people have at

8     the restaurant who also received tips?

9          A.    Busboys, I know.  The waiters.  And as

10    far as I know, everyone that worked on the room

11    worked for hours and tips.  Oh, and the runners.

12              MR. KATAEV:  Can you read that back.

13              (Record read.)

14         Q.    Besides servers, runners and bussers, was

15    anyone else receiving tips?

16         A.    Those are the only ones that I know that

17    they received tips.

18         Q.    Were there other employees who did not

19    receive tips?

20         A.    I don't know.

21         Q.    To your knowledge, did you participate in

22    a tip pool at Osteria La Baia?

23         A.    Well, we all get tips that we worked

24    there.  That's all I know.  We all receive tips.

25         Q.    Was it your understanding that all of the

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

77

J. Molina

1

2    tips went into a pool that was then divided amongst

3    all the front of house staff?

4         A.    Yes.

5         Q.    To your knowledge, were you required to

6    participate in that pool?

7         A.    Yes.

8         Q.    When did you learn you were required to

9    participate in the tip pool?

10        A.    From the day that I went to work.  I was

11    going to work for the house pay and the tips.

12        Q.    So you knew from the first day that you

13    worked that you were required to participate in a

14    tip pool; correct?

15        A.    Yes.

16        Q.    How did you learn you were required to

17    participate in the tip pool?

18        A.    Because I work in the restaurant for a

19    long time.  If I worked washing dishes, I wouldn't

20    get any tips.  But if I work in the main room, I

21    have to get tips.

22        Q.    Are you saying that you just knew on your

23    own and no one told you?

24        A.    Yes.  I worked on this all the time.  I

25    know.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

78

J. Molina

1

2      Q.    So how come you don't know anything about

3   how you were paid at the restaurant if you're so

4   knowledgeable?

5      A.    That's what I'm saying.  It was very low.

6   Maybe they didn't put me on that program.  Maybe the

7   manager forgot.  I don't know.

8      Q.    Do you believe that the way you were paid

9   and the way you were treated was different to other

10  bussers?

11     A.    The treatment was the same.  But the

12  money didn't -- it didn't match.  It wasn't right.

13     Q.    Did other bussers complain about the same

14  thing and say their pay was too low and that it

15  should have been 7 or 800 and not 3 or 400 like you?

16     A.    No.  The others were happy.  They didn't

17  claim anything.  So I figured their checks were

18  right.  My check was wrong.

19     Q.    Is it fair to say because their checks

20  were right and your checks were wrong that you were

21  treated differently?

22         MR. BUZZARD:  Objection to form.

23     A.    They always treated me right.  I don't

24  know what happened with the paycheck.  Maybe they

25  forgot to put me on that --

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

79

1                    J. Molina

2              (Interpreter requested clarification.)

3        A.    Maybe they didn't put me on that touch.

4    I don't know how his name.  My check wasn't right.

5    But they treat me right.

6              (Court reporter requested clarification.)

7        Q.    When you refer to touch, you're referring

8    to the Toast application; correct?

9              THE INTERPRETER:  What is the

10         application?

11             MR. KATAEV:  Toast.  Toast.

12       A.    Yes.  Yes.

13       Q.    Assuming that they didn't put you in the

14   touch program or whatever the reason is that your

15   pay was different from anybody else's, you were

16   necessarily then treated differently from all the

17   other bussers; correct?

18       A.    No.  The same.  They treated me the same.

19       Q.    Did Janos tell you that you were required

20   to participate in the tip pool at the restaurant?

21       A.    No.  He didn't tell me anything.  I spoke

22   a couple of words with him and then he went on

23   vacation.

24       Q.    When you worked at Osteria La Baia, did

25   you ever have a question about how the tip pool

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

80

1                        J. Molina

2      worked?

3          A.    No.  I didn't ask because I worked on

4      this a long time and I know it's five points for the

5      busboy and 7.5 for the runner.

6          Q.    So it's fair to say that you never asked

7      the question; correct?

8          A.    I didn't ask because I know what I was

9      dealing with.

10         Q.    You were required to put all of your tips

11     in the tip pool; correct?

12         A.    No.  I don't know.  I didn't get involved

13     with that.

14         Q.    Those meetings that you chose not to

15     attend, did anyone approach you with a copy of the

16     tip sheet showing how much everyone got in tips in

17     the evening?

18         A.    No.  Nobody gave me a sheet, no.

19         Q.    Did anyone approach you with a sheet so

20     you could look at it and you declined to look at it?

21         A.    No.  Nobody approached me.  Nobody was

22     there.

23         Q.    Did you voluntarily share any of your

24     tips with any of the other employees you worked

25     with?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

81

                              J. Molina

1

2         A.    I don't know.  The manager is in charge

3     of the sharing, the dividing.  I don't know.

4         Q.    Now, you've repeatedly testified at this

5     deposition that Julio Perez is a manager; correct?

6         A.    Yes.

7         Q.    What is the basis for your belief that

8     Julio is a manager?

9         A.    Because he used to command or direct

10    everyone in the room.

11        Q.    What did he command or direct everyone in

12    the room to do?

13        A.    He used to put people to work in

14    different stations.  He would direct them to go to

15    this or the other station to work.

16        Q.    When he directed people to go to

17    stations, was he referring to a piece of paper that

18    he had in front of him?

19        A.    No.

20        Q.    Did you ever see Julio have a piece of

21    paper showing all the stations or who's assigned to

22    it?

23        A.    No, I never saw.

24        Q.    You never saw -- let me just ask you this

25    so I can understand.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

82

                         J. Molina

1

2            You're saying that you don't remember

3    seeing anything like that or you're saying you

4    definitely never saw anything like that?

5            MR. BUZZARD:  Objection.  Asked and

6        answered.  You can answer again.

7        A.    No.  He used to say it verbal.  He used

8    to tell me, go to that station and that's where you

9    stay and the others went to other stations.

10       Q.    Are you aware that the direction about

11   which employees go to which stations actually came

12   from Janos?

13       A.    No.  I don't know that.

14       Q.    You have no basis to dispute that that's

15   what occurred; correct?

16       A.    The only thing I know is that Julio was

17   the one that commanded us to the stations.

18       Q.    Other than the fact that Julio commanded

19   you to go to which stations, what other basis, if

20   anything, do you have for claiming that Julio was a

21   manager?

22       A.    Only because he used to be in charge.

23       Q.    What did he do when he was in charge?

24       A.    He used to open in the morning and tell

25   all of us, you work here, here and here.  I don't

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

83

1                        J. Molina

2     know what else to tell you.

3          Q.    I'm not asking you to make something up.

4     I'm just asking you, other than directing you where

5     to go and other than closing, what else, if

6     anything, did Julio do to make you believe that he

7     was a manager?

8               MR. BUZZARD:  Objection.  Asked and

9          answered many times.

10              You can answer again.

11              MR. KATAEV:  Please.

12         A.    What part don't you understand?  I told

13    you, he commanded everyone in this restaurant.

14         Q.    He commanded everyone where to go for

15    their stations in the restaurant.  And that's it,

16    right, nothing else?

17         A.    I know he commanded -- he was in charge

18    of everyone.

19         Q.    But you're not telling me what he

20    directed people to do.  The only thing you've said

21    so far is that he told people what stations to go

22    to.

23              What else, if anything, did he direct

24    people to do?

25              MR. BUZZARD:  Emanuel, I know you don't

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

84

1                         J. Molina

2           like my client's answer.  But I'm going to ask

3           you to move on.

4                 MR. KATAEV:  It's not that I don't like

5           it.

6                 MR. BUZZARD:  I know you don't like it.

7           I'm going to ask you to move on.  You're asking

8           the same question over and other again.

9                 (Simultaneous speakers.)

10                MR. KATAEV:  It's not that I don't like

11          it.

12                MR. BUZZARD:  He has given you the

13          answer.

14                MR. KATAEV:  Excuse me.  No, he has not.

15          He is not giving me the answer.

16                MR. BUZZARD:  You can answer it again.

17                MR. KATAEV:  I don't think you understand

18          the question.  I'm going to rephrase it.

19                MR. BUZZARD:  I don't think anyone

20          understands the question.  Maybe if you ask an

21          actual question and actually took his answer,

22          then you'd be fine.

23                MR. KATAEV:  Let's try it this way.

24      BY MR. KATAEV:

25           Q.    You're saying Julio is a manager because

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

85

J. Molina

1    he directed people to go to specific stations;

2    correct?

3    A.    Yes.

4    Q.    I understand that.  I'm not stupid.  Here

5    is my question.

6

7    Did he direct any of the employees to do

8    anything else other than that?

9    (Interpreter conferred with witness.)

10    MR. BUZZARD:  Can you just translate what

11    my client's answer is?

12    A.    He directed everything.  He directed

13    everything.

14    Q.    What is everything?  What did he tell

15    them to do?  Tell me.

16    A.    Like, he would tell us, clean that table,

17    they're done.  I need a table for four.  I need a

18    table for five.  Bring water to that table.

19    Q.    Okay.  Other than those things, is there

20    anything else that he directed people to do?

21    A.    No.  He used to tell me, look at that

22    table, they finished.  Clean the table.  I need a

23    table for three.  Go help on the other station.

24    That's it.

25    Q.    Did you ever observe Julio terminate

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

86

J. Molina

1
2       anybody from their employment?

3           A.    I never saw him fire anyone.  I know

4       people left.  But I have no idea why, if they were

5       fired, if they voluntarily go.  I don't know.

6           Q.    Did you ever observe Julio hire anyone?

7           A.    I don't know because I don't work in the

8       front.  There is a lot of people coming in and out

9       and people looking for employment.  But I work on my

10      station and I do what I have to do.  That's all I'm

11      interested in.  My attention is on my station, not

12      what happens on the front.

13          Q.    Completely understand.

14                Did you ever observe Julio tell you or

15      anybody else how much they would be paid?

16          A.    No.  No.

17          Q.    Did you ever observe Julio tell you or

18      anybody else what schedule you or anybody else has

19      to work?

20          A.    He did give me my schedule.  The rest, I

21      don't know, because I'm not interested in what they

22      do.

23          Q.    Do you know who gave Julio the schedule?

24          A.    I don't know.  He used to send me my

25      schedule.  The rest, I don't know.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina --- December 23, 2025

87

                          J. Molina

1

2        Q.    How did Julio tell you about your

3    schedule?

4        A.    I sent you the schedule, he used to tell

5    me.

6        Q.    How did he send you the schedule?

7        A.    By that touch, touch.  I don't know.

8    Something like that.

9        Q.    Your schedule was in Toast?

10       A.    Yes.  Yes.  In the touch, yes.

11       Q.    How would you access it, on your phone?

12       A.    Yeah.  On my phone.

13       Q.    You had the Toast application on your

14   phone; correct?

15       A.    Yes.  Yes.

16       Q.    And you used the Toast application to

17   look at your schedule, your pay stubs and any other

18   documents available on the Toast application; right?

19            MR. BUZZARD:  Objection to form.

20       A.    Yes; correct.

21       Q.    When you were given your check, Janos

22   gave you your check; correct?

23       A.    With Janos, I spoke two words.  I already

24   told you.  The one that gave me the check was the

25   other manager.  I can't remember his name.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

88

                              J. Molina

1

2        Q.    The other manager who is not Julio;

3   correct?

4        A.    Julio gave me the check.  The other one,

5   the one that went on vacation, I had not that much

6   touch, contact, with him.

7        Q.    That tipping out process at the end of

8   the night that you chose not to be a part of, who

9   managed that process?

10        A.    Julio, the manager; right?

11        Q.    I'm asking you.

12        A.    Yes.  It was him.

13        Q.    How did he do that process?

14        A.    To tell you the truth, I don't know how

15   he did that.  I went home at that time.

16        Q.    Julio, he served customers at the

17   restaurant; correct?

18        A.    Yes.  He also served.  Well, he got

19   involved with the tables but...

20        Q.    Isn't it true that he also was assigned a

21   station just like you?

22        A.    He used to get involved with all the

23   tables there.  I just don't know.  I don't know what

24   his station was.  I really don't know about that.

25        Q.    Isn't it true that there were tables that

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

89

                            J. Molina

1

2     only Julio served?

3          A.    Like I said, he used to get involved in

4     the tables.  As a manager, he has to show his face.

5     And I don't know what his station was or anything

6     about that.  Like I said, I was on my station and I

7     don't know about anybody else.  And yes, he did

8     serve some tables or got involved with the tables.

9          Q.    Now, when you were assigned to a station,

10    you were assigned to that particular station with a

11    particular server; correct?

12         A.    Yes; correct.

13         Q.    What were the names of the servers that

14    you were assigned to stations with?

15         A.    I don't remember that any more.

16         Q.    Were you ever assigned to a station

17    together with Julio as the server?

18         A.    No.  With him, I didn't, no.

19         Q.    But you did see that Julio served tables

20    on his own as the sole server for a particular

21    station; correct?

22              MR. BUZZARD:  Objection.  Misstates

23         testimony.  Asked and answered.

24              He can answer it again.

25         A.    Like I said, he got involved with all the

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

90

1                          J. Molina

2      tables.  I don't know if he had a station.  I'm not

3      aware.

4            Q.    You didn't see him serving people?

5            A.    He didn't serve the food.  He took the

6      orders.

7            Q.    Okay.  That's what I'm asking you.

8                  You observed Julio taking orders from

9      customers at his assigned station; correct?

10                 MR. BUZZARD:  Objection to misstating

11           testimony.  Asked and answered multiple times.

12                 Go ahead, answer it again, Julio.

13           A.    Yes.  As I said, he took orders.  But he

14     was all over the place.  So I don't know exactly

15     what he was doing.

16           Q.    Here's a silly question.  When you

17     observed him taking orders for a particular table,

18     was there any other server also taking orders for

19     that same table?

20                 MR. BUZZARD:  Please do not yell at my

21           client.  Ask your questions and move on.  I

22           understand you don't like his testimony.  Ask

23           your questions and move on.  Do not yell at him

24           or I'm stopping this deposition.

25                 MR. KATAEV:  I'm not yelling at him.  I'm

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

91

1              J. Molina

2        asking questions.

3              MR. BUZZARD:  You're asking the same

4        question over and over again because you don't

5        like the answer that you're getting.  I'll let

6        you ask it one more time and then we're moving

7        on.

8              MR. KATAEV:  It's not that I don't like

9        the answer to the question.  You keep

10       intimating that I don't like the answer to the

11       question.  You keep intimating that he answered

12       the question when he didn't.

13             MR. BUZZARD:  He has answered the

14       question about ten times about what he saw

15       Julio doing.

16             MR. KATAEV:  He did not answer this

17       question.  He didn't.  I'm going to challenge

18       when you get the transcript to find this answer

19       to this question and show it to me.  Can I

20       please proceed with my deposition.

21             MR. BUZZARD:  You can but if you yell at

22       my client one more time, we're stopping it.

23             MR. KATAEV:  I didn't yell at him.

24             Madam Court Reporter, can you please read

25       back the last question.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

92

                          J. Molina

1

2          (Record read.)

3      A.    No.  Because everybody has their own

4    station.  He used to get involved with all the

5    tables.

6    BY MR. KATAEV:

7      Q.    I understand he got involved with all the

8    tables.

9          But my question remains, did he serve

10   tables all on his own without any other server's

11   help?

12     A.    Like I said, every waiter and everybody

13   had their own station.  I saw him getting into the

14   tables and the customers, but I have no idea what

15   was happening.

16     Q.    You're telling me -- if I understand your

17   testimony correctly -- that you don't know whether

18   Julio was assigned to his own station with his own

19   tables that he handled by himself?  Is that your

20   testimony?

21     A.    No.  He didn't have a station.

22     Q.    This process for tipping out at the end

23   of the evening that you chose not to participate in,

24   how long did it last every evening?

25          MR. BUZZARD:  Object to form.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

93

1                          J. Molina

2          A.    I don't know.  I don't know that.  I

3     didn't get involved with that.

4          Q.    Did you stay in the restaurant while that

5     process was going on?

6          A.    No.  I have a family.  I exit as soon as

7     I could.  What was I going to stay there for?

8          Q.    So you basically chose to leave whenever

9     the tipping process started; right?

10         A.    I didn't get involved with that.

11         Q.    But my question is, did you choose to

12    leave when that process started?

13         A.    I used to go home.

14               MR. KATAEV:  I'm sorry.  Did he say yes,

15         I used to go home or --

16               THE INTERPRETER:  He said, yes, I used to

17         go home.

18         Q.    To your knowledge, did Osteria La Baia

19    take a tip credit against your wages?

20         A.    I don't know that.  I don't know that.

21         Q.    Did you walk through the hallway where

22    employees would change into their uniforms?

23         A.    Yes.

24         Q.    In that hallway, did you ever observe a

25    billboard with written information on it?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

94

1                          J. Molina

2          A.    There were no -- nothing on that hallway.

3          Q.    Did you see a billboard anywhere else in

4     the restaurant?

5          A.    No.

6          Q.    To your knowledge, did your compensation

7     at the restaurant ever increase or decrease?

8          A.    I don't know.  I received a check for

9     240, another for 360.  And the maximum, I think, was

10    600.

11         Q.    Now, those amounts that you're referring

12    to me, that's your net pay after taxes are deducted;

13    correct?

14         A.    I don't remember well.  Like I told you,

15    I didn't understand.  I didn't know if they were

16    paying me for hours or for tips.

17         Q.    I understand that.  To your knowledge,

18    were taxes deducted from your check?

19         A.    I imagine they did.  I didn't pay

20    attention to that.  I didn't look.

21         Q.    Do you have any knowledge as to what your

22    pay was without deduction of taxes, like the gross

23    amount of your pay?

24         A.    I imagine it would have been something

25    like 700 or 800.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

95

                        J. Molina

1

2      Q.    To your knowledge, based on your

3    experience working in restaurants for almost 20

4    years, do you know how much of that 7 or 800 is in

5    tips and how is in wages?

6      A.    It depends on the hours you worked and it

7    depends on the tips.

8      Q.    Let's say in an average week that you

9    worked.

10     A.    On a regular week after -- it's about 800

11   after taxes.

12     Q.    My question is, out of that total 800, to

13   your knowledge, and based on your experience, how

14   much of that 800 is tips and how much of that 800 is

15   wages?

16     A.    So let's say $300 is for taxes.  So

17   you're left with 700 or 800 which is very little to

18   make a living.  But they pay you a little bit.

19     Q.    You said generally you get 800 without

20   deduction in taxes.  And then they take out 300 in

21   taxes.  By my math that's 500.

22           How much is it in wages and how much is

23   it in tips, to your knowledge?

24     A.    It depends.  Like I said, it depends on

25   the tips that you make and the hours that you work.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

96

J. Molina

2  There's days that you don't make any money in tips.

3       Q.    But I'm asking about an average week that

4  you work, can you give me the division between the

5  two on an average week?

6            MR. BUZZARD:  Objection.  Asked and

7            answered.  Again, many times.

8            Go ahead again, Javier.

9       A.    Let say you worked 40 hours.  So it's

10  like $1200 and they going to take $400 out in taxes.

11  Your check is going to be for $800.  I have nothing

12  to do with the taxes they take.  It comes from some

13  other place and I don't calculate that.

14       Q.    But I'm not asking you about the taxes.

15  I'm asking you about that remaining 800, how much of

16  that 800 is tips and how much of that 800 is wages?

17  Can you tell me in an average week what those

18  amounts are?

19       A.    Okay.  Let's say 800 is for the tips and

20  300 is for the house.  Then they -- you only have --

21  you make a little bit of money so that they're not

22  going to take your tips away.

23       Q.    When you say 300 is for the house, what

24  do you mean?

25       A.    The hours worked.  The hours that you

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

97

                        J. Molina

1                       J. Molina

2   worked.

3            Q.    Hours.  Not the house.

4                 Is it fair to say based on your division

5   of the tips and hours worked that your compensation

6   is mostly comprised of the tips in an average week?

7            A.    I don't understand the question.

8            Q.    In the example that you gave, the amount

9   of tips was higher than the amount of wages.

10                Is that generally the case that when you

11  received your pay, the tips are greater than the

12  wages?

13           A.    Obviously because tips is what counts.

14  Because even if you work ten hours, your salary is

15  nothing.  That wouldn't amount to anything.

16           Q.    Is it fair to say that the reason why you

17  want the job as a busser is because you earn a lot

18  more in tips than the wages?

19           A.    It's not that I receive more.  It's my

20  responsibility is less working as a busboy.

21           Q.    Is it fair to say as a busser the

22  majority of your compensation is in tips rather than

23  wages?

24           A.    Yes, because I can't live with the salary

25  because it's minimum salary.  So I count on the

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

98

J. Molina

1            tips.

2        Q.    Now, in the example that you --

3    withdrawn.

4            In the two examples that you gave me you

5    mentioned 30 hours for one average week and then 40

6    hours for another average week.

7            Is that representative of the number of

8    hours you typically worked in a week?

9        A.    Depends on the -- that was just an

10    example.

11        Q.    How many hours did you typically work for

12    the two months that you worked at the restaurant?

13        A.    I don't remember much.  I know I worked

14    five days and I had like three lunches and sometimes

15    two lunch.

16        Q.    When you say three lunches, that's from

17    11:00 a.m. until 4:00 p.m. or some other time

18    period?

19        A.    A lunch.

20        MR. BUZZARD:  Please translate my

21    client's answer.

22        THE INTERPRETER:  All right.  I'm sorry.

23    You're right.  It's just that he didn't

24    respond.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

99

J. Molina

1

2      A.    It's 10:00 to 10:00 and 4:00 to 11:00.

3      Q.    So when you say you worked lunch, you

4  really mean you worked a double shift; correct?

5      A.    Yes.

6      Q.    And you're saying you worked three

7  lunches which is three double shifts.  So that's 36

8  hours; correct?

9      A.    Yes; correct.

10      Q.    And for the two dinner shifts that you

11  worked each week, it was 4:00 p.m. to 11:00 p.m.

12  which is seven hours, times two is 14 hours;

13  correct?

14      A.    I used to work five dinners, three lunch.

15      Q.    Out of the five dinners, the three

16  lunches were on the same day as the dinners;

17  correct?

18      A.    Yes.  Sometimes three lunches, five

19  dinners.  Sometimes -- it was sometimes seven-hour

20  shifts and sometimes an eight-hour shift.

21      Q.    So going back to my question, when you

22  worked two dinners, from 4:00 p.m. to 11:00 p.m.,

23  that's seven hours; correct?

24      A.    Yes.

25      Q.    So if you worked two dinners, that's 14

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

100

J. Molina

1

2    hours; correct?

3         A.    Yes; correct.

4         Q.    And with those 14 hours adding in with

5    the 36 hours, when you worked from 10:00 to 10:00

6    for three days, that's a total of 50 hours for the

7    week; correct?

8         A.    Yes.

9         Q.    And so if I understand you correctly, on

10   an average week where you worked approximately 50

11   hours, you would earn a gross of 1,200 per week;

12   correct?

13        A.    I don't know.  I don't know where you

14   figure 1200.  I don't know.

15        Q.    That's the number that you gave me.  You

16   told me 1,200 minus 400 in taxes is $800 left over.

17             MR. BUZZARD:  Objection.  Misstates

18        testimony.  I'm as confused as he is.  But go

19        ahead.

20        A.    Well, what I worked, that is the reality.

21   I know the taxes and all that.  And more or less

22   they deduct that amount.

23        Q.    I understand that they deduct the taxes.

24   Everyone is paying taxes.  You were paid a gross of

25   $1200 per week.  That's what you testified to.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

101

1                     J. Molina

2              MR. BUZZARD:  Objection.  Misstates

3         testimony.

4              MR. KATAEV:  Excuse me.

5         Q.    If that's not what you testified to or

6    the total is something else, tell me what that

7    number is.  I want to know what the total is.

8         A.    That was an estimate from when I worked

9    in every restaurant and I figure from 1200 they take

10   400.

11             MR. KATAEV:  I'm sorry.  Could you read

12        that back.

13             (Record read.)

14        Q.    Fair enough.  I want an example like the

15   one from the prior restaurants for this restaurant

16   Osteria La Baia.

17             Can you tell me how much you earned gross

18   amount in a typical week where you worked 50 hours?

19        A.    I said it and I repeat.  The highest

20   amount I received was $600.

21        Q.    That's net, after taxes were deducted;

22   right?

23        A.    Like I said, and I repeat, I never

24   investigated.  I don't know what they paid me for;

25   if they paid me for tips, if they paid me it was a

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

102

1                          J. Molina

2      salary, it was an average salary.  I don't know how

3      many times I have to repeat the same thing to you.

4           Q.    You didn't answer my question.  You gave

5      the example of $600 that you took home as the

6      highest amount.  My question is very simple.  That

7      $600, is it after taxes are deducted or before taxes

8      are deducted?  Why don't you just answer the

9      question that you're asked instead of telling me

10     something else.

11          A.    I'm repeating to you.  I didn't look at

12     the check.  I didn't understand what was going on.

13     I didn't check on that.  So I have to get my check

14     stub and send it to my lawyer or send it to you so

15     you will understand.  Because I don't know how much

16     was taxes or how much was anything on that check.

17          Q.    So the answer is you don't know; right?

18          A.    No.  I didn't look.  Yes.  I didn't look.

19                (Interpreter conferred with witness.)

20                THE INTERPRETER:  I just told him that

21          there's people in the background.  He has to

22          tell them they have to be out of the room.

23          Q.    Is it fair to say that every week that

24     you received pay, you received a pay stub with the

25     pay?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

103

J. Molina

1

2     A.    I don't remember which one had -- I don't
3     know.  I have to check on all the pay stubs and
4     check -- and send them to my attorney so you both
5     can check what's in there.  Because I don't know.  I
6     have no idea.

7     Q.    When you came in for lunch, did you ever
8     perform opening duties?

9     A.    I have to take the tables outside, the
10    chairs, plants outside.  We have to make counters in
11    the back -- on the outside.  And then I was in
12    charge of the station for the bread and that was
13    inside.

14    Q.    And how much did those duties take you
15    time to do?

16    A.    An hour and a half or two hours.  You
17    have to clean the ice coolers.  There's other things
18    to do.

19    Q.    What about closing, did you do anything
20    for closing?

21    A.    No.  Because I opened.  So another person
22    had to close.

23    Q.    Were you the only busser that performed
24    opening duties?

25    A.    No.  There was another person, too.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

104

1                       J. Molina

2          Q.    Just two of you; right?

3          A.    Yes.

4          Q.    Was it always the same two people, you

5     and the other person or did it alternate?

6          A.    No.  We rotate.  It's not the same people

7     all the time.

8          Q.    What is your goal for this lawsuit?

9          A.    Nothing.  I just want to see if they fix

10     my problem because they didn't pay me the right

11     amount.

12               MR. KATAEV:  Off the record.

13               (Discussion held off the record.)

14               THE INTERPRETER:  He needs a bathroom

15          break.

16               MR. KATAEV:  3:14.  We'll come back 3:20.

17               (A recess was taken from 3:14 p.m. to

18          3:20 p.m.)

19          Q.    If I understand your complaint correctly,

20     you believe that you were not properly paid because

21     at other restaurants you had received more in that

22     pay but at this restaurant you received less in that

23     pay; is that correct?

24          A.    Correct.

25          Q.    Did you compare the amount of hours that

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

105

                    J. Molina

1

2     you worked at prior restaurants versus the amount of

3     hours you worked at this restaurant?

4              THE INTERPRETER:  One moment.  He's

5          asking for a second.  He wants the question

6          repeated.  I remember it.  You want me to ask,

7          it's okay.

8              MR. KATAEV:  Why don't we read it back

9          just to be safe.

10             (Record read.)

11     A.    No.  I didn't compare.  I just -- I go to

12     work for money.  I have to earn money to need my

13     family.  I have to pay rent, cable.  There's a lot

14     of bills that we have to pay every month.

15     Q.    Did you compare the hourly rate that you

16     received at this restaurant, Osteria La Baia, with

17     the hourly rate that you received at the prior

18     restaurants you worked at?

19     A.    It's obvious, because not even the

20     dishwasher made as little as I was making.

21     Q.    Did you compare the amount of tips that

22     you earned at prior restaurants against the tips

23     that you earned at this restaurant?

24     A.    Like I said and I repeat, I can't

25     compare -- I couldn't compare because, like I said,

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

106

J. Molina

1

2      I didn't know if they were paying me for hours or

3      for tips.  I couldn't understand the check.  But the

4      check didn't meet what I was expecting to get paid.

5           Q.    Did the restaurant -- did anyone in

6      management ever have questions about your work?

7           A.    Not that I know of.

8           Q.    Did anyone in management ever have a

9      complaint about your work?

10          A.    Not that I know of.

11          Q.    Did Janos ever approach you and tell you

12     to do something differently or better?

13          A.    Like I said, and I repeat, I had very

14     little --

15               THE INTERPRETER:  I can't think any more.

16     I'm sorry.

17          A.    I didn't have that much with Janos.  I

18     saw him once or twice for like a few minutes and

19     then he went on vacation and I didn't see him again.

20          Q.    What do you remember about your --

21     withdrawn.

22               What do you remember, if anything, about

23     any discussions concerning how much you would be

24     paid at the restaurant when you first started?

25          A.    Like I said, they didn't say anything to

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

107

1                      J. Molina

2    me because I knew what I had to do and I knew what I

3    was going to get.  And like I said, I knew I was a

4    busboy and I got five points, the waiter ten points,

5    and the runner 7.5 points.

6            Q.    Did you keep any journal, diary, planner,

7    calendar or notes for the time that you were working

8    at Osteria La Baia?

9            A.    No.  No.  No.  No.

10           Q.    The complaints and issues that you

11   brought to the attention of the restaurant, did you

12   ever place that in writing in any way?

13                (Simultaneous speakers.)

14           A.    I'm not sure.  I think I made some notes

15   on the check stubs.  But I'm not sure.

16                MR. KATAEV:  I'm going to ask you to

17           please keep those pay stubs so you can give

18           them to your attorney.  I am going to be

19           calling for their production in a separate

20           request in writing.

21                MR. BUZZARD:  Off the record for a

22           second.

23                (Discussion held off the record.)

24   BY MR. KATAEV:

25           Q.    Between when you started working at

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

108

1                         J. Molina

2       Osteria La Baia and the present date, did you ever

3       go to any government agency to complain about

4       Osteria La Baia?

5            A.    No.  Not at all.

6            Q.    Between when you first started at Osteria

7       La Baia until the present day, other than your

8       attorneys, did you communicate with anyone else

9       about your pay issues at Osteria La Baia?

10           A.    No.

11           Q.    Between when you first started working at

12      Osteria La Baia until the present day, have you

13      posted anything relating to Osteria La Baia or this

14      lawsuit on social media?

15           A.    No.  I don't like any of that.

16           Q.    Just to confirm, whether you like it or

17      not is one thing.

18                 Did you post anything?

19                 THE INTERPRETER:  He said, I told you no.

20                 MR. KATAEV:  I just wanted to confirm.

21           Q.    Do you know what the correct amount of

22      wages that you were entitled to be paid are?

23           A.    I imagine the just amount.

24           Q.    What about the number amount?  Do you

25      have an idea of the number?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

109

                              J. Molina

1

2        A.    I don't.  I have no idea.

3              MR. KATAEV:  Off the record.

4              (Discussion held off the record.)

5              (A brief recess was taken at this time.)

6        Q.    Before I do exhibits I just have some

7    general questions about your employment at Osteria

8    La Baia.

9              Okay?

10       A.    Okay.

11       Q.    You said you did training for three days

12   at Osteria La Baia the first week; right?

13       A.    Yes.

14       Q.    How many hours of training per day?

15       A.    I remember there were -- the first day

16   was a double.  But then it was three dinners and two

17   lunch.

18       Q.    So if I understand that correctly,

19   according to the hours you previously told me, two

20   doubles at ten hours is 20 and then one lunch at

21   seven hours is seven, so 27 hours total in training?

22       A.    Yes.  I think it's correct.

23       Q.    When you came in for training, did you

24   clock in using the Toast application?

25             (Technical difficulty.)

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

110

                              J. Molina

1

2          A.    The three days I didn't punch because

3     they don't know if you're going to be hired or not.

4     So...

5          Q.    When you finished training, all of your

6     training was done in a single week; correct, for

7     three days?

8          A.    Yes.

9          Q.    And after you finished training, the

10    following week you immediately started working as a

11    busser; right?

12         A.    Yes.

13              MR. KATAEV:  I'm going to present to you

14         what we'll mark as Defendants' Exhibit 2.

15              (Defendants' Exhibit 2, pay stub 79,

16         marked for identification.)

17              MR. KATAEV:  Alivia, I'm going to rely on

18         you to do this.  I'm going to forward to you.

19         There are five files I'm emailing you.  They

20         are numbered.  Open them up according to the

21         number and share pay stub 79.

22              MS. COONEY:  I didn't get the email yet.

23              MR. KATAEV:  I just sent it.

24              MS. COONEY:  Okay.  I'm just organizing

25         these.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

111

1                        J. Molina

2              Okay.  So you want it starting from 79

3         and then just in order?

4              MR. KATAEV:  Yes.

5              MS. COONEY:  Okay.

6              MR. KATAEV:  Please share your screen.

7              MS. COONEY:  Do you see this?

8              COURT REPORTER:  Yes.

9              MR. KATAEV:  Can you zoom in on it.  I'm

10        going to try to do this.  I'm going to request

11        remote control.

12             MS. COONEY:  Okay.

13             MR. KATAEV:  You have to authorize it.

14        Can you zoom in more.

15             MS. COONEY:  One second.  I lost 79.  One

16        minute.

17             Okay.  Now let me share.  Okay.  Okay.

18        We're back.

19             Emanuel, do you have this?  You can

20        control this.

21             MR. KATAEV:  Perfect.

22    BY MR. KATAEV:

23        Q.    Mr. Molina, on the top left it says

24    "name" and it says, "Javier P. Molina Rivera."

25             Do you see that?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

112

                            J. Molina

1

2         A.    Oh, yes, yes, yes.

3         Q.    Over here to the right is the employee ID

4    9491.

5               Is that your employee ID?

6         A.    Yes.

7         Q.    I'll represent to you that this is the

8    first pay stub I have for you and it's dated July 29

9    of 2024.

10              Do you see that?

11        A.    Yes.

12        Q.    Does this first pay stub refresh your

13   recollection as to when you first started working at

14   Osteria La Baia?

15        A.    The pay stubs the attorney has, I don't

16   know, because I don't see it very well here.

17        Q.    But do you recognize this to be one of

18   your pay stubs?

19        A.    I can't see what's the amount on the

20   check.

21        Q.    I'm not asking you about the amount.  I'm

22   assuming we'll have time to look that up.

23              I'm asking you, when you look at the pay

24   date of July 29, 2024, does that refresh your

25   recollection as to when you first started working at

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

113

                         J. Molina

1

2    Osteria La Baia?

3         A.    More or less, yes, because that's my

4    name.

5         Q.    Referring to the date, only because you

6    testified that you believe you started working in

7    June or April, does this pay stub which I'm

8    representing to you is the earliest pay stub I have

9    for you, does it refresh your recollection that you

10   actually started working at Osteria La Baia in late

11   July 2024?

12        A.    I said it was 2024, but I don't have my

13   paycheck -- my pay stubs here.  My attorney has

14   them.  So I don't know the dates.  I wasn't sure.  I

15   knew it was 2024.

16        Q.    Over here in the third box from the top

17   under earnings, it says that your hourly rate was

18   $16 an hour.

19              Is that accurate?

20              (Interpreter conferred with witness.)

21        A.    I have to check with my pay stubs.  I

22   don't know.  I have no idea.

23        Q.    I'm showing you your pay stub.

24              Do you have any reason to believe this is

25   not your pay stub?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

114

1                            J. Molina

2                   THE INTERPRETER:  I'm sorry.  I didn't

3            hear you.  There was somebody else speaking.

4                   MR. KATAEV:  I'll repeat the question.

5            Mr. Molina, can you go somewhere quieter where

6            you're not going to be interrupted.

7                   THE INTERPRETER:  One minute, please.

8            Now he's in another room.  We can ask him the

9            question.

10                  MR. KATAEV:  Can we read it back, please.

11                  (Record read.)

12                  MR. BUZZARD:  Objection.  Lack of

13           foundation.  You can answer.

14           A.    I'm not saying it's not mine.  I have to

15     check with my pay stubs that I don't have here right

16     now.

17     BY MR. KATAEV:

18           Q.    You can check your pay stubs after.  My

19     question is based on this exhibit.

20                  The $16 an hour for your pay, is that

21     accurate?  Is that what you were paid?

22           A.    I tell you and I repeat, I see what

23     you're showing me but I still have to check on my

24     pay stubs to see how much I got paid.

25           Q.    I'm telling you, this is your pay stub.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

115

J. Molina

1

2     Do you not believe me when I'm telling you this is

3     your pay stub?

4               MR. BUZZARD:  Objection to form.  Lack of

5          foundation, but you can ask him.

6               (Interpreter interpreted the question.)

7               (Interpreter conferred with witness.)

8          A.    I don't know.  I have to look at my pay

9     stub.

10              MR. BUZZARD:  I'm just going to object

11         for the record because you have not established

12         that my client knows what this document is.

13              MR. KATAEV:  This is not a trial.

14         There's no obligation to establish any --

15              (Simultaneous speakers.)

16              MR. BUZZARD:  For the record, there is no

17         foundation for this document.

18              (Simultaneous speakers.)

19              MR. BUZZARD:  My client has not testified

20         that he understands what this is.

21              MR. KATAEV:  I'm bringing the judge back

22         in.  He's refusing to answer questions about

23         this.

24              MR. BUZZARD:  I'm not stopping you from

25         asking a question.  I'm just putting my

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

116

1                         J. Molina

2           statement on the record.  Go ahead and ask your

3           question.

4      BY MR. KATAEV:

5           Q.    I'm asking him, does he dispute that this

6      is his pay stub?  It's a yes or no.

7           A.    I can't say yes or no because I have to

8      check my pay stubs.

9           Q.    Let's assume that this is your correct

10     pay stub.  Looking at the rate of $16 an hour, is

11     this what you were paid?  Is this the hourly rate

12     you were paid?

13          A.    I repeat, I don't know.  I didn't look at

14     that.  I only know that the checks were very low

15     amount and I have to check.  I gave everything to

16     the attorney.  I have to check on the pay stubs.  I

17     don't know.  I don't know if that was -- I don't

18     know if my checks will reflect that.

19          Q.    Javier, I am showing you your pay stub

20     now.  We are here for your are deposition now.  I'm

21     asking looking at the first pay stub, the first pay

22     stub I have for you, were you paid $16 an hour, yes

23     or no?

24               MR. BUZZARD:  My objection stands.  You

25          have not been established that this is actually

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

117

1                         J. Molina

2              his pay stub, that he knows what this document

3              is.

4                   But you can answer, Javier, if you know

5              what this document is.  Go ahead.

6         A.     I don't remember.  I don't know.  I

7    didn't check at that time.  I would have to check

8    with the pay stubs I gave my attorney.  I have to

9    check with my attorney.  I can't tell you yes or no.

10   I can't lie to you, so I don't know what to tell

11   you.

12             MR. KATAEV:  I'm going to the judge.

13             This is not acceptable.  He's refusing to

14             answer questions about this exhibit.

15             MR. BUZZARD:  Go ahead.  This is absurd.

16             You have not even asked him whether he

17             recognizes this document and you're going to

18             write to the judge and say what.  This is

19             ridiculous.  Ask him what if he knows what this

20             document is.  Or ask him if he knows if he got

21             paid $16 an hour aside from this document.  You

22             have not established that he knows what this

23             is.  You want to write to the judge and bring

24             him into this, please go ahead.

25             MR. KATAEV:  I already did.  Lucas, he

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

118

1                      J. Molina

2          testified that he recognizes his name on it.

3              MR. BUZZARD:  He saw his name.  You

4          haven't asked him the question, is this a pay

5          stub that you received from Osteria La Baia.

6          We have no frame of reference for this document

7          and he hasn't identified it.

8              I don't know what you're going to tell

9          the judge, but this is insane.

10             MR. KATAEV:  Javier, can you please turn

11         on the light and not sit in the dark during

12         your deposition.

13             (Interpreter translated.)

14             THE INTERPRETER:  He went into a hallway

15         because the children are speaking and so he

16         wanted to be in a quiet place.  He put the

17         light on.

18         Q.   Mr. Molina, do you recognize this

19    document to be your pay stub?

20         A.   No.  I don't recognize it.  I have to

21    check this against my pay stubs and I will tell you

22    yes or no.

23         Q.   Where --

24             MR. BUZZARD:  Get the judge in here.

25         This is absurd.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

119

                        J. Molina

1

2          MR. KATAEV:  He's lying.  Okay.

3     Q.    Where are your pay stubs?

4          MR. BUZZARD:  I'm going stop this

5     deposition.  Ask a question or let's get out of

6     here.

7     Q.    Where are your pay stubs, Mr. Molina?

8     A.    My attorney has them.

9          MR. KATAEV:  Mr. Buzzard, please put up

10    on the screen the stubs that he gave you.

11         MR. BUZZARD:  I am not putting up

12    anything on the screen.  This is your

13    deposition.  You did not ask for his pay stubs.

14    You never gave him document requests.  This is

15    ridiculous.  You're wasting our time.  Finish

16    your questioning and let's get out of here.

17         MR. KATAEV:  We're not going anywhere

18    until the judge rules on this dispute.

19         MR. BUZZARD:  You show me a document

20    request that you gave to my client Javier

21    Molina.  You show me those and we can go from

22    there.  They don't exist.  This is ridiculous.

23    You're wasting our time.

24    BY MR. KATAEV:

25    Q.    Just so I understand, Mr. Molina, you're

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

120

                           J. Molina

1
2      denying that this is your pay stub?

3                MR. BUZZARD:  He said he didn't recognize

4           it.  Stop putting words into his mouth.  Go

5           read back the answer that he gave.

6                MR. KATAEV:  I'm asking a new question.

7           Q.    Are you saying this is not your pay stub,

8      Mr. Molina?

9           A.    I have to check with my pay stubs because

10     I don't know.  It's impossible that they were paying

11     me $16 an hour when I received 240 and 360 as a pay.

12          Q.    Just so you know, this pay stub says you

13     got $71.20 gross and that your net pay was zero

14     because all of it went to taxes.

15          A.    $71 of what?  Hours, tips, what is that?

16          Q.    I'll represent to you that this pay stub

17     shows 4.45 hours times $16 an hour is $71.20.

18          A.    If you see -- why is the government

19     taking all that money in taxes?  The government

20     shouldn't do that.  If you earn a thousand dollars

21     and they take taxes, you still have something.  If

22     you only earned $70.20, how is it that they take

23     everything in taxes.  You don't receive any of your

24     pay.

25          Q.    Do you recall working less than five

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

121

1                          J. Molina

2       hours your first week on the job and getting a pay

3       stub like this?

4              A.    You have to talk to my attorney and check

5       my pay stubs and then I'll give you the answer.

6                   MR. BUZZARD:  Javier, please just listen

7              to the question and answer the question that is

8              being asked.  He's not asking you to look at

9              other pay stubs.  He's asking you about this

10             document in front of you.  Just answer the

11             question if you understand what it is.

12             A.    I don't recognize it.

13                  MR. KATAEV:  What did he say after that?

14             A.    I don't recognize that.

15      BY MR. KATAEV:

16             Q.    You have no reason to dispute that this

17      is accurate, do you?

18                  MR. BUZZARD:  Objection.

19             A.    I have to check my pay stubs and I'll

20      give you the answer.

21                  MR. KATAEV:  Alivia, would you be kind

22             enough to put the next pay stub on the screen.

23             Q.    Mr. Molina, this pay stub also has your

24      name on it; correct?

25             A.    Yes.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

122

J. Molina

1

2          Q.    Do you recognize this to be one of your

3     pay stubs?

4          A.    No.  No.  I don't remember.  I'm telling

5     you, I have to check my pay stubs.

6          Q.    Okay.  I'm representing to you that this

7     is your pay stub.  This particular pay stub says

8     that you worked 34.13 hours this week.

9                Do you see that?

10         A.    Yes.  More or less, I see it.

11               (Interpreter conferred with witness.)

12         A.    Yes.

13               THE INTERPRETER:  He sees the arrow.

14     That's what I asked him, do you see the arrow.

15         Q.    On the top left under current and gross

16     earnings it says that you earned $1,190.90 gross;

17     correct?  Do you see that?

18         A.    Yes.

19         Q.    And after deducting the taxes of about

20     $400, it says that your net pay is $752.16; is that

21     correct?

22         A.    I'm not sure -- that's what you're

23     saying.

24         Q.    But do you see that that's what's written

25     here, yes or no?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

123

1                          J. Molina

2          A.    Yes.

3          Q.    Now, going down to the earnings section,

4    under regular, when you multiply 32.13 hours against

5    your tip wage of $10.65, you get $342.18; correct?

6                MR. BUZZARD:  Objection.

7          A.    No.  I never earned that kind of money.

8    I have to check my pay stub.

9          Q.    You're saying you never earned $752?

10         A.    No, never.  I have the pay stubs.  I'm

11   going to send them back again.

12         Q.    Are you saying that this document is

13   forged or fake?

14         A.    I don't think.  I need to check my pay

15   stubs and then I tell you.

16         Q.    The tips and gratuity here total

17   approximately $820 in tips.

18                Do you see that?

19                (Simultaneous speakers.)

20         A.    I do see it.  But, like I said, I want to

21   check my pay stubs.

22                MR. KATAEV:  We're probably going to need

23         another deposition of yours since you're

24         refusing to answer these questions.  Are you

25         prepared to come back for another deposition

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

124

1                              J. Molina

2           once those pay stubs are produced?

3                MR. BUZZARD:  First of all, you've never

4           asked for these pay stubs.  We're not producing

5           anything.  Discovery is closed.

6                Second, I'll talk to my client.  Javier,

7           he's asking you questions about this pay stub,

8           not about any other pay stubs.  Please just

9           listen to the questions that are being asked of

10          you.  He's asking you to look at a document and

11          to say whether or not things are correct.  Not

12          about other pay stubs.  Not about anything

13          else.  Just listen to what is being asked of

14          you.

15               (Interpreter translated.)

16          A.    That's easy.  I never earned that money.

17               COURT REPORTER:  Are you marking this as

18          an exhibit?

19               MR. KATAEV:  Yes, please.  This will be

20          Defendants' Exhibit 3.  Thank you.

21               (Defendants' Exhibit 3, pay stub 80,

22          marked for identification.)

23          Q.    Going on to page 2, there's a box here.

24     It says "additional information" and it talks about

25     the tip credit.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

125

1                        J. Molina

2              Do you see that?

3              THE INTERPRETER:  It's very small.  Wow.

4              (Interpreter translated.)

5              THE INTERPRETER:  He can't see the

6         document, he said.

7              I see it.

8         A.   Oh, yes, yes.  Okay.

9              THE INTERPRETER:  I'm sorry.  Is there a

10        question, Mr. Kataev?

11   BY MR. KATAEV:

12        Q.   This pay stub says you got paid a tips

13   wage of $10.65 and your employer took a tip credit

14   of 5.35 per hour.

15              Do you see that?

16              (Interpreter conferred with witness.)

17        A.   Okay.

18        Q.   When you add these two numbers together,

19   what is the total?

20        A.   16; right?

21        Q.   Yes.

22        A.   Yes.

23        Q.   Now, the difference between being paid

24   10.65 for these hours and $16 for the same hours is

25   $171.09.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

126

                              J. Molina

1

2              Do you see that?

3       A.    Yes.

4       Q.    I want you to do the math on a calculator

5    if you can.  32.13 --

6              (Court reporter requested clarification.)

7       Q.    32.13 times $5.35 per hour equals

8    $171.90; correct?  Can you do that, please?

9       A.    No.  Repeat the question.

10             (Interpreter translated.)

11             (Interpreter conferred with witness.)

12      A.    I don't have a calculator.  I'm out in a

13   hall in somebody else's house.  I don't have a

14   calculator.

15             MR. KATAEV:  We're going to go off the

16             record.  We're going to call the judge about

17             your refusal to answer my questions based on

18             the mistaken belief that these are not your pay

19             stubs.

20             MR. BUZZARD:  Just let the record show

21             that my client has answered every question that

22             you've asked of him.  This is ridiculous.

23             MR. KATAEV:  He's answered the question

24             by saying he has to look at the pay stubs when

25             he has them in front of him.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

127

J. Molina

1

2      MR. BUZZARD:  After saying multiple times
3      that he doesn't recognize this document.

4      MR. KATAEV:  Why don't we argue it with
5      the judge.  Let's go off the record.  I'm
6      calling him now.

7      (A recess was taken from 4:16 p.m. to
8      4:26 p.m.)

9      MR. KATAEV:  Please read back the last
10     question.

11     (Record read.)

12     MR. KATAEV:  Alivia, would you be kind
13     enough to open up a calculator on the computer.
14     And I want you to share the screen with the pay
15     stub and calculator.

16     MS. COONEY:  Were we on pay stub 80?

17     MR. KATAEV:  Yes.

18     MS. COONEY:  Okay.  Do you see this?

19     MR. KATAEV:  Let's move the calculator to
20     the right.  And we'll scroll up higher.  Back
21     down.  The additional information being on top.
22     Let's get rid of the preview pane.

23     MS. COONEY:  If I get rid of it, it's
24     going to get rid of the calculator.

25     MR. KATAEV:  Would you be kind enough to

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

128

1                         J. Molina

2           type in 32.13 and multiply that by 5.35 and

3           press equals.

4    BY MR. KATAEV:

5           Q.    Mr. Molina, did you observe my paralegal

6    multiply 32.13 by 5.35 and it equals 171.8955?

7           A.    Yes.

8           Q.    So is it fair to say that the tip credit

9    taken is $171.90?

10          A.    Yes.

11          Q.    If you scroll back up to the tips,

12   please, on this document, the total tips paid to you

13   $621.12 and $195.60 exceed the $171 taken in tip

14   credit; correct?

15          A.    Okay.

16          Q.    Is that correct?  Do you see that, that

17   the tips you earned are greater than the tip credit

18   taken?

19          A.    Correct.

20          Q.    Let's go to the next pay stub, number 81,

21   please.

22                MS. COONEY:  Okay.

23          Q.    I'll represent to you, Mr. Molina, that

24   this is the next pay stub following the one we just

25   reviewed.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

129

                              J. Molina

1

2               Do you see your name on the top left?

3         A.    Yes.

4         Q.    Under the paycheck summary, this stub

5    says that your gross earnings were $572.57 and you

6    received a net pay of only $290.64.

7               Do you see that?

8         A.    Okay.  Yes.

9         Q.    Now, if you look under earnings, the

10   hours worked total 19.44; correct?

11        A.    Yes.

12        Q.    Do you have any reason to dispute that

13   you worked 19.44 hours that week?

14        A.    Correct.

15        Q.    So the reason why you were paid so little

16   for this week is because you did not work as many

17   hours as you worked the prior week; correct?

18        A.    Correct.

19        Q.    And it says for this week for the 19

20   hours that you worked that you earned about $360 in

21   tips.

22              Do you see that, on the bottom left?

23        A.    Yes.

24        Q.    Based on the fact that this says you

25   worked 19.44 hours, can you tell me whether you

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

130

                              J. Molina

1

2    worked two days or three days that week?

3         A.    I don't remember.

4         Q.    Let me ask you a question, do you use

5    Google Maps on your phone?

6         A.    No.  I don't even know what that is.

7         Q.    Do you ever use an Android or an Apple

8    application to get directions to go somewhere?

9         A.    No.  No.

10        Q.    Let's scroll down.  Right here.

11             MR. KATAEV:  This is going to be marked,

12        by the way, as Defendants' Exhibit 4.  Pay stub

13        81.

14             (Defendants' Exhibit 4, pay stub 81,

15        marked for identification.)

16             MR. KATAEV:  We can now go to pay stub

17        82, please.

18             (Defendants' Exhibit 5, pay stub 82,

19        marked for identification.)

20             MR. KATAEV:  Before we begin on that

21        exhibit, we received an email from the Court.

22        The direction from the Court as reflected by

23        the directions given by plaintiffs' counsel is

24        as follows.

25             Counsel, in answering deposition

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

131

1                          J. Molina

2           questions, Mr. Molina should accept the defense

3           counsel's representation and thereby assume

4           that the pay stubs he is shown are, in fact,

5           his pay stubs.  If plaintiffs' counsel later

6           has reason to believe that they are not, in

7           fact, Mr. Molina's pay stubs, counsel should

8           raise that issue to the Court.

9                 Please translate that.  Madam

10          Interpreter, I want to have the direction from

11          the Court translated to the witness.

12                THE INTERPRETER:  Okay.  Sure.  Go ahead.

13          I'm sorry.

14                MR. KATAEV:  The direction from the Court

15          says, Counsel, in answering deposition

16          questions, Mr. Molina should accept defense

17          counsel's representation and thereby assume

18          that the pay stubs he is shown are, in fact,

19          his pay stubs.  If plaintiff's counsel later

20          has reason to believe that they are not, in

21          fact, Mr. Molina's pay stubs, counsel should

22          raise that issue to the Court.

23          A.    Yes, yes, yes.

24          Q.    Mr. Molina, you're somewhere in a dark

25     place where I can't see your face.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

132

```
 1                         J. Molina
 2                 (Interpreter translated.)
 3         Q.    We're almost done.
 4                 THE INTERPRETER:  The light goes on and
 5         off.  He doesn't have control.  He's sorry.
 6    BY MR. KATAEV:
 7         Q.    If you bear with me and answer the
 8    questions, we can finish a lot sooner.
 9                 This pay stub is the following week's pay
10    stub from the last one we looked at based on the
11    dates.
12                 Do you see that?
13         A.    Yes.
14         Q.    And this pay stub, like the other pay
15    stubs, also has your name on it; correct?
16         A.    Yes.
17         Q.    And this pay stub says that you earned a
18    gross amount of $390.11 and received a net pay after
19    taxes of $140.02; correct?
20         A.    Correct.
21         Q.    And the reason why you only received $390
22    gross that week is because you worked 12.65 hours;
23    right?
24         A.    Correct.
25         Q.    By looking at your pay stubs now, do you
```

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

133

J. Molina

1
2      now realize why your pay is so much lower than your
3      prior experience?
4              A.    Yes, I'm looking at it.  Yes; correct.
5              Q.    And you don't dispute that you only
6      worked 12.65 hours for this week between August 19th
7      to August 25th in 2024; correct?
8              A.    Correct.
9              MR. KATAEV:  We can take that off the
10             screen.  I don't think I have much more at all.
11             Let's go off the record.  I want to see if I
12             have any other exhibits I want to ask about.
13             (Discussion held off the record.)
14             MR. KATAEV:  Just in case I didn't ask
15             for it before, I do want a copy of all the pay
16             stubs you provided to your attorneys and I'm
17             going to put that request in writing following
18             this deposition.
19     BY MR. KATAEV:
20             Q.    Mr. Molina, when you worked at Osteria La
21     Baia, did you get to know one Katherine Fernandez?
22             A.    Yes.
23             Q.    Who was she at the restaurant?
24             A.    She was a runner.
25             Q.    And did you befriend her while you worked

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

134

1                          J. Molina

2     at the restaurant?

3          A.    No.  I had no friendship with her.

4          Q.    I don't see your face, Mr. Molina.  I

5     need to be able to see your face during the

6     deposition.

7               Are you aware that Katherine Fernandez is

8     the named plaintiff in this case?

9          A.    I don't know anything.

10         Q.    Are you aware that you are the named

11    plaintiff in the lawsuit you filed against Tinello?

12         A.    I joined it.  That's all.

13         Q.    You joined the lawsuit against Il

14    Tinello; correct?

15         A.    Yes.

16              MR. BUZZARD:  Are you translating Il

17         Tinello because he's asking about the Il

18         Tinello lawsuit?

19         A.    No.  That had finished already.  Has

20    nothing to do with this.

21         Q.    But my question is, when the lawsuit was

22    filed against Tinello, you were the named plaintiff

23    of that complaint; is that right?

24         A.    Yes.

25         Q.    But in this lawsuit you are not the named

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

135

                           J. Molina
1
2        plaintiff, you just joined; correct?
3               A.    Yes.
4               MR. KATAEV:  I keep thinking I can share
5           it but I have issues, so I'm going to email
6           this to Alivia who will share it.
7               For the record, I'll be putting up on the
8           screen what I believe will be marked as
9           Defendants' Exhibit 6 ECF docket entry 11 in
10          this case.
11              (Defendants' Exhibit 6, Consent to Sue,
12          marked for identification.)
13              MR. KATAEV:  While we're putting it up --
14       BY MR. KATAEV:
15              Q.    Is there any particular reason,
16       Mr. Molina, that you are not the named plaintiff in
17       this case?
18              A.    I don't know.
19              Q.    Did you refer Katherine Fernandez to
20       Josef Nussbaum or the law firm that's representing
21       you?
22              A.    No.  I never spoke to her.
23              Q.    You never had any discussions with
24       Katherine Fernandez about this case or your
25       attorneys?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

136

J. Molina

1

2          A.    No.  No.

3          Q.    Did you ever have any discussions with

4    Adrian Montor-Peran about this lawsuit?

5          A.    No.  No.  No.  No.

6          Q.    Would it surprise you to learn at

7    Adrian's deposition he told me you were the one who

8    referred him to your lawyers?

9          A.    No.  I haven't said anything.

10         Q.    But you deny referring Mr. Peran to your

11   attorneys?

12         A.    I don't know.  I had a conversation about

13   this case, but I didn't tell him to join.  I don't

14   know anything about that.

15         Q.    But you didn't have such a conversation

16   with Katherine; right?

17         A.    No.  With Katherine, no.

18         Q.    Did you not want to be the named

19   plaintiff in this case?

20         A.    No.  I didn't even know about it.

21         Q.    Without sharing any discussions that you

22   had between yourself and your attorneys, when did

23   you first approach your attorneys about Osteria La

24   Baia?  I'm looking for a date or a time.

25         A.    I haven't spoken to them.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

137

1                       J. Molina
2              MR. KATAEV:  I'm sorry.
3              Can you read back the question?
4              (Record read.)
5              MR. KATAEV:  And his answer?
6              (Record read.)
7    BY MR. KATAEV:
8         Q.    Do you have any knowledge of how it came
9    to be that you became part of this lawsuit if you
10   never spoke with them?
11        A.    I have knowledge of it.  I don't know
12   anything about it.  I had a conversation with Adrian
13   and I don't know anything about it.
14              (Court reporter requested clarification.)
15        A.    I don't know anything about it.  I spoke
16   to Adrian once and I don't know.  I don't know
17   anything about it.
18              (Court reporter requested clarification.)
19              MR. KATAEV:  Just to clarify, the court
20        reporter's question was about what I said in my
21        question; correct?
22              COURT REPORTER:  No.  I didn't understand
23        one word of the answer but now I realize it was
24        the word "knowledge."  It cut out a little and
25        I only heard the end of the word.

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina --- December 23, 2025

138

1                      J. Molina

2              MR. KATAEV:  Just to have a clearer

3         record because Lucas feels that maybe it's not

4         clear.  Let's ask him the question one more

5         time and get his answer to the question.  Can

6         we read back the question.

7              (Record read.)

8         A.    I have knowledge of it speaking to people

9    in the street that told me there was a demand about

10   it.  Only by a conversation.

11   BY MR. KATAEV:

12        Q.    Who are the people in the street that you

13   spoke to?

14        A.    Coworkers.

15        Q.    What are the coworkers' names?

16        A.    Marcello.

17              THE INTERPRETER:  M-A-R-C-E-L-L-O.

18        A.    Calle.

19              THE INTERPRETER:  C-A-L-L-E.

20        Q.    Is that the only person who told you?

21        A.    Yes.

22        Q.    If you look at the screen in front of

23   you, Mr. Molina, I have presented to you what is

24   your signed consent to sue form.

25              Do you recognize it?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

139

                          J. Molina

1

2        A.    Yes.

3        Q.    You signed this?

4        A.    Yes, yes.

5        Q.    Did you sign it at your attorney's

6    office?

7        A.    Yes.

8        Q.    Did you sign it by hand or

9    electronically?

10              THE INTERPRETER:  I'm sorry, you said by

11         hand or --

12              MR. KATAEV:  Electronically.

13       A.    Electronically.

14       Q.    Were you already working at Osteria La

15   Baia at the time you signed this?

16       A.    No.  No.  No.  No, it is recent.

17       Q.    So if I understand you correctly, you

18   signed this consent form before you actually started

19   working at Osteria La Baia; correct?

20              MR. BUZZARD:  Objection.  Misstates the

21         document and testimony.

22       A.    This is recent.

23       Q.    This says that you signed the document on

24   June 18, 2025.

25              Do you see that?

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

140

                        J. Molina

1

2       A.    Yes.

3       Q.    You were not yet working at Osteria La

4    Baia at the time you signed this document; correct?

5            MR. BUZZARD:  Objection.  Misstates the

6            testimony.

7       A.    It's totally all false.

8       Q.    I'm just asking, did you sign this before

9    you started working at Osteria La Baia, yes or no?

10      A.    This is recent.  It has to be two, three

11   months ago.

12      Q.    I didn't file this document.  This is

13   what your attorneys filed on June 25th.  It has the

14   date June 18th.  My question is, based on this

15   signature with this date on this document, was it

16   signed before you started working at Osteria La

17   Baia, yes or no?

18            MR. BUZZARD:  Objection.  Misstates

19            testimony.

20      A.    Yes.  Yes.  Yes.  Yes.  Already, yes.

21            MR. KATAEV:  All right.  That's a

22            separate issue we'll deal with.

23            MR. BUZZARD:  Would you take a look at

24            the year?  I don't want to spend a lot of time

25            doing this.  Take a look at the year and take a

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

141

J. Molina

1

2      look at the year of his pay stubs so we don't

3      have to spend hours doing this.

4            MR. KATAEV:  I'm done with this.  Take

5      this off the screen.

6      Q.    Did you perform work related to special

7      events at Osteria La Baia?

8      A.    No.

9      Q.    Why was it that you were not assigned to

10     special events?

11     A.    I don't know.  I don't know.

12     Q.    Is it fair to say that because you were

13     not assigned to special events that you were treated

14     differently from other bussers who were assigned to

15     special events?

16           MR. BUZZARD:  Objection to form.

17           You can answer.

18     A.    I don't know.

19           MR. KATAEV:  Give me one second.  I'm

20     going to speak to my paralegal and I think I'm

21     done.

22           MR. BUZZARD:  Sure.

23           (A recess was taken from 4:58 p.m. to

24     4:59 p.m.)

25           MR. KATAEV:  Mr. Molina, I want to thank

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

142

                          J. Molina

1

2        you for your time today.  I have no further

3        questions for you.

4              MR. BUZZARD:  I have some questions.

5              MR. KATAEV:  Lucas, did you say you did

6        have some questions or you don't?

7              MR. BUZZARD:  I do.

8              MR. KATAEV:  If it's about the consent

9        form, I agree with you.  I agree with you.  I

10       did confuse the year.

11             MR. BUZZARD:  Can we stipulate that he

12       signed that consent form after he worked at

13       Osteria La Baia?

14             MR. KATAEV:  Because he left in August of

15       '24 and he signed it in June of '25.  My

16       mistake.

17             MR. BUZZARD:  Okay.  If we can stipulate

18       to that, I don't have any questions.

19             MR. KATAEV:  So stipulated.  5:01.

20             Mr. Molina, thank you so much for putting

21       up with me all day.  I have no further

22       questions for you.  Thank you very much for

23       your time.

24             MR. BUZZARD:  Ms. Court Reporter, if

25       Mr. Kataev is ordering it expedited I'll do the

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

143

1                          J. Molina

2          same.  Whenever you're done with his, send us

3          one as well.

4                 COURT REPORTER:  I will.

5                 (Whereupon, the proceedings were

6          adjourned at 5:03 p.m.)

7

8                          J U R A T

9

10

11                 I do hereby certify that I have read

12          the foregoing transcript of my deposition.

13

14          _____

15                 JAVIER PATRICIO MOLINA RIVERA

16

17

18     Sworn and subscribed

19     before me

20     this _____ day of

21     _____, 2025.

22     A Notary Public

23     of the State of _____

24

25

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina --- December 23, 2025

144

I N D E X

WITNESS                    EXAMINATION BY        PAGE

MR. KATAEV                     6


E X H I B I T S


DEFENDANT'S  DESCRIPTION                PAGE

Exhibit 1    LS54                         44

Exhibit 2    pay stub 79                 110

Exhibit 3    pay stub 80                 124

Exhibit 4    pay stub 81                 130

Exhibit 5    pay stub 82                 130

Exhibit 6    Consent to Sue              135


REQUEST:                                 PAGE

Keep all your pay stubs from your prior jobs  42

All documents related to your employment     61

pay stubs                                   107

Copy of all the pay stubs you provided to    133

your attorneys

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

145

1

2                    CERTIFICATE

3

4      STATE OF NEW YORK )

5                       ) ss.

6      COUNTY OF SUFFOLK)

7

8           I, Elizabeth F. Tobin, a Registered

9      Professional Reporter and Notary Public within and

10     for the State of New York, do hereby certify:

11          That Javier Patricio Molina Rivera, the

12     witness whose deposition is hereinbefore set forth,

13     was duly sworn by me remotely and that such

14     deposition is a true record of the testimony given

15     by such witness.

16          I further certify that I am not related

17     to any of the parties to this action by blood or

18     marriage and that I am in no way interested in the

19     outcome of this matter.

20

21

22                        *Elizabeth F. Tobin*

23                        ELIZABETH F. TOBIN, RPR

24

25

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

146

December 23, 2025


                        ERRATA


PAGE/LINE   CHANGE/REASON

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

147

**A**

**A-R-R-O-Y-O** 19:13
**a.m** 1:16 4:24 11:18
  22:5,6 25:22,23
  43:2,3 47:5,22
  55:23 98:18
**ability** 10:16
**able** 43:17 50:18
  51:20 64:18 134:5
**abrupt** 36:13
**absolutely** 20:19
**absurd** 117:15
  118:25
**accept** 131:2,16
**acceptable** 117:13
**access** 59:6 87:11
**accurate** 113:19
  114:21 121:17
**acknowledgement**
  44:16
**act** 24:15 72:16
**action** 145:17
**actual** 84:21
**add** 125:18
**adding** 100:4
**additional** 124:24
  127:21
**address** 5:23 17:7
  50:22 59:5,13 72:3
  72:7,21
**adjourned** 143:6
**administer** 3:13
**administering** 5:9
**Adrian** 49:10,13,22
  50:4 136:4 137:12
  137:16
**Adrian's** 136:7
**advance** 12:16
**advise** 25:19
**advising** 25:17
**affect** 10:16
**affidavit** 15:4,24
**affirmation** 15:6,25
**age** 5:21
**agency** 108:3

**ago** 7:18 22:23 28:21
  28:22,25 29:3,4,8,9
  31:23 32:10 35:6
  45:14,17 140:11
**agree** 5:8 142:9,9
**Agreed** 3:2,6,10 5:13
  5:16
**agreement** 5:18 6:2
  12:4,7 15:10
**ahead** 90:12 96:8
  100:19 116:2 117:5
  117:15,24 131:12
**al** 5:2,2
**alcohol** 10:14
**Alivia** 2:24 44:12
  110:17 121:21
  127:12 135:6
**allotted** 72:17
**allow** 9:9 20:25
**allowed** 72:14
**alternate** 56:12 104:5
**alternated** 33:6
**ambulance** 24:18
**America** 64:5
**amount** 58:12,13
  73:9 94:23 97:8,9
  97:15 100:22
  101:18,20 102:6
  104:11,25 105:2,21
  108:21,23,24
  112:19,21 116:15
  132:18
**amounts** 94:11 96:18
**Ana** 19:24 21:19 23:4
  23:6
**and/or** 24:24 68:16
**ANDREW** 2:25
**Android** 130:7
**answer** 8:10,13 9:5
  9:10,16 10:5 12:7
  13:16,18 14:18,22
  18:2,7,7 20:5,21,25
  21:5,23 22:15,16,19
  26:14 29:20 30:10
  43:6 50:7 52:6

54:16 57:19 58:2
  66:19,21 71:12 72:3
  72:24 82:6 83:10
  84:2,13,15,16,21
  85:11 89:24 90:12
  91:5,9,10,16,18
  98:22 102:4,8,17
  114:13 115:22
  117:4,14 120:5
  121:5,7,10,20
  123:24 126:17
  132:7 137:5,23
  138:5 141:17
**answered** 20:13 82:6
  83:9 89:23 90:11
  91:11,13 96:7
  126:21,23
**answering** 7:4 130:25
  131:15
**answers** 5:20 9:21
  10:12,19
**anybody** 46:9,13
  56:18 57:4 63:23
  64:23 79:15 86:2,15
  86:18,18 89:7
**anyway** 47:16
**Apart** 16:4
**apartment** 5:24
  17:14
**apologize** 38:16
**appear** 13:2,5
**Apple** 130:7
**application** 30:19
  58:22 59:17,24
  72:20 79:8,10 87:13
  87:16,18 109:24
  130:8
**applied** 26:21 28:4
  47:24 63:7
**appointment** 12:22
**appreciate** 29:13
  33:19
**approach** 80:15,19
  106:11 136:23
**approached** 80:21

**approximately** 4:23
  100:10 123:17
**April** 27:7,8,8,11,16
  27:17 113:7
**argue** 127:4
**arrest** 23:19 25:8
**arrested** 22:10,20,21
  23:8 24:9,11,14,16
  25:5
**arrests** 23:20 25:4
**arrived** 18:20,25
  31:22,25
**arrow** 122:13,14
**Arroyo** 19:12,24
  21:19 23:4,6,24
  24:24
**Arroyo's** 25:9
**aside** 117:21
**asked** 11:25 20:12
  26:15 33:16,17 38:8
  42:8 43:16 62:19
  64:15 80:6 82:5
  83:8 89:23 90:11
  96:6 102:9 117:16
  118:4 121:8 122:14
  124:4,9,13 126:22
**asking** 7:3 12:8 14:21
  17:23 20:20 22:13
  45:23 51:25 52:3,10
  52:10 61:15,18
  69:18 83:3,4 84:7
  88:11 90:7 91:2,3
  96:3,14,15 105:5
  112:21,23 115:25
  116:5,21 120:6
  121:8,9 124:7,10
  134:17 140:8
**assigned** 81:21 88:20
  89:9,10,14,16 90:9
  92:18 141:9,13,14
**assistance** 28:2 30:22
  31:3,5 50:21
**assume** 9:17 116:9
  131:3,17
**assuming** 79:13

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

148

112:22
**attempt** 69:14
**attend** 80:15
**attended** 31:17
**attention** 67:7 86:11
    94:20 107:11
**attorney** 6:8,13 8:14
    8:17 11:25 12:13
    14:2,23,24 16:14
    18:6 61:13,19 62:2
    103:4 107:18
    112:15 113:13
    116:16 117:8,9
    119:8 121:4
**attorney's** 52:12
    139:5
**attorneys** 3:3 8:9
    13:8,13,14 14:14,15
    14:20 42:20,22
    61:25 108:8 133:16
    135:25 136:11,22
    136:23 140:13
    144:22
**August** 133:6,7
    142:14
**authorize** 111:13
**authorized** 3:12
**automatically** 29:21
    30:4,13,16
**available** 26:4 87:18
**Avenue** 2:16 32:10
**average** 73:6 95:8
    96:3,5,17 97:6 98:6
    98:7 100:10 102:2
**aware** 13:11 15:23
    49:15,18,21,25 53:6
    82:10 90:3 134:7,10

——————— B ———————
**B** 5:17 144:7
**back** 22:8 26:6,8,14
    39:21 47:5,22 50:16
    52:25 58:19,20 63:2
    66:23 71:19 72:24
    75:20 76:12 91:25

99:21 101:12
    103:11 104:16
    105:8 111:18
    114:10 115:21
    120:5 123:11,25
    127:9,20 128:11
    137:3 138:6
**background** 31:9
    102:21
**Baia** 1:11 40:20 42:5
    44:21 45:22 47:25
    48:5 55:17,19 56:15
    58:5 61:3,10 62:14
    67:21 69:23 70:8,11
    71:6 76:22 79:24
    93:18 101:16
    105:16 107:8 108:2
    108:4,7,9,12,13
    109:8,12 112:14
    113:2,10 118:5
    133:21 136:24
    139:15,19 140:4,9
    140:17 141:7
    142:13
**based** 23:7 37:23
    67:17 95:2,13 97:4
    114:19 126:17
    129:24 132:10
    140:14
**Basic** 11:5
**basically** 93:8
**basics** 11:12
**basis** 58:4,17 68:25
    69:6 73:4 81:7
    82:14,19
**bathroom** 10:3
    104:14
**battery** 71:9
**bear** 132:7
**befriend** 133:25
**beginning** 17:5
**behalf** 1:5 2:4,14
**belief** 81:7 126:18
**believe** 26:4 34:5
    53:25 54:24 55:11

58:9 61:16 64:18
    69:10 78:8 83:6
    104:20 113:6,24
    115:2 131:6,20
    135:8
**belongs** 37:7
**benefits** 26:22 27:23
    30:23
**best** 9:19,22
**better** 74:22 106:12
**billboard** 93:25 94:3
**bills** 105:14
**binding** 5:10
**birth** 18:9
**bit** 95:18 96:21
**BLOISE** 2:23
**blood** 145:17
**body** 9:6
**born** 18:11 64:8,8
**bottom** 60:13,15,16
    129:22
**box** 113:16 124:23
**boy** 24:13,17
**bread** 43:14 103:12
**break** 10:2 14:8
    42:24 62:9 71:19
    104:15
**brief** 109:5
**bring** 43:17,18 85:18
    117:23
**bringing** 115:21
**Brio** 33:24 34:2,7,10
    34:15 35:14,18 36:2
    36:15
**Broadway** 2:6
**brought** 67:6 107:11
**Bulldozer** 1:10 5:2
    6:13,16
**busboy** 32:18,18,20
    40:10 43:24 71:2
    80:5 97:20 107:4
**busboys** 43:20 76:9
**busser** 11:2 32:16
    40:9 97:17,21
    103:23 110:11

**bussers** 76:14 78:10
    78:13 79:17 141:14
**Buzzard** 2:11 4:9,11
    4:14,18 5:14,14
    6:11 14:8 20:4,12
    20:17,25 21:7,20,24
    25:18 38:11 42:25
    44:8 50:6 51:12
    52:3,12 57:18,25
    66:16 69:24 78:22
    82:5 83:8,25 84:6
    84:12,16,19 85:10
    87:19 89:22 90:10
    90:20 91:3,13,21
    92:25 96:6 98:21
    100:17 101:2
    107:21 114:12
    115:4,10,16,19,24
    116:24 117:15
    118:3,24 119:4,9,11
    119:19 120:3 121:6
    121:18 123:6 124:3
    126:20 127:2
    134:16 139:20
    140:5,18,23 141:16
    141:22 142:4,7,11
    142:17,24

——————— C ———————
**C** 2:2 5:17
**C-A-L-L-E** 138:19
**cable** 105:13
**calculate** 96:13
**calculator** 126:4,12
    126:14 127:13,15
    127:19,24
**calendar** 107:7
**call** 12:20 25:18 26:2
    67:13 72:22 126:16
**Calle** 138:18
**called** 5:21 12:18
    13:14 24:7 26:24
    32:12 33:24 37:6
    44:7 46:21
**calling** 107:19 127:6

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

149

Cantinetta 37:3,8
card 68:6,7,10 69:8
    75:18
cards 68:17
care 29:23 30:5
Caroline 19:12
carry 21:9
case 1:8 5:3,5 7:19
    8:2,6,9,15,19,23
    15:6 16:6,17 17:22
    18:2 20:19 22:12
    23:10,14 25:13 27:2
    97:10 133:14 134:8
    135:10,17,24
    136:13,19
cases 20:8,10
cash 68:8,11,16 69:8
    74:9
caused 24:16
Cellini 41:22
CERTIFICATE
    145:2
certified 6:2
certify 143:11 145:10
    145:16
chairs 103:10
challenge 91:17
chambers 72:22
chance 48:11
change 56:24 93:22
CHANGE/REASON
    146:6
changed 43:23
charge 11:20 17:14
    22:24 23:8 54:2,3,4
    54:5 55:3 71:10
    73:13,14 81:2 82:22
    82:23 83:17 103:12
charges 23:14
chat 44:13
check 34:6,22 37:14
    56:16 57:10 58:7,13
    58:15 60:3,13,15,17
    60:18 63:20 66:7
    67:2,23 69:7,13,17

70:13,14 75:8 78:18
    79:4 87:21,22,24
    88:4 94:8,18 96:11
    102:12,13,13,16
    103:3,4,5 106:3,4
    107:15 112:20
    113:21 114:15,18
    114:23 116:8,15,16
    117:7,7,9 118:21
    120:9 121:4,19
    122:5 123:8,14,21
checks 58:10,11,18
    78:17,19,20 116:14
    116:18
child 19:14 20:2 72:4
    72:8
childcare 30:22
children 19:9 118:15
children's 19:11
Chinese 70:15
choose 93:11
chose 75:3 80:14 88:8
    92:23 93:8
circumstances 11:13
    13:9 36:10,14,18
    38:4 39:17 41:13
city 28:16 41:17
Civil 5:23
claim 27:22 78:17
claiming 82:20
claims 7:5
clarification 28:13
    29:14 30:2 33:20
    51:24 79:2,6 126:6
    137:14,18
clarify 52:13,17
    137:19
clarity 67:4
clean 43:15 85:16,22
    103:17
Cleaning 74:8
clear 8:25 9:22 72:11
    138:4
clearer 138:2
clerk 25:19 26:2

client 14:9,9 21:9
    22:17 52:14 68:7
    90:21 91:22 115:12
    115:19 119:20
    124:6 126:21
client's 84:2 85:11
    98:22
clock 109:24
close 24:13 103:22
closed 32:13 36:13
    38:7,19 72:13 124:5
closing 74:7 83:5
    103:19,20
college 31:17
come 12:6 18:13
    46:19 47:5,22 48:18
    51:10 52:25 53:16
    53:21 54:17,19
    55:12 58:20 71:19
    78:2 104:16 123:25
comes 63:2 96:12
coming 86:8
command 55:4 81:9
    81:11
commanded 82:17
    82:18 83:13,14,17
commonly 44:7
communicate 108:8
communications
    14:14
compare 104:25
    105:11,15,21,25,25
compared 71:6
compensation 27:23
    94:6 97:5,22
complain 50:10
    78:13 108:3
complaint 15:18
    16:16 26:17 104:19
    106:9 134:23
complaints 60:8
    107:10
complete 9:9 56:23
    69:21
completely 29:13

86:13
completing 30:19
comprised 97:6
computer 127:13
concerning 15:6,25
    20:2 106:23
conferred 33:12 85:9
    102:19 113:20
    115:7 122:11
    125:16 126:11
confidential 8:11,12
confirm 6:8 13:23
    108:16,20
confuse 142:10
confused 100:18
consent 135:11
    138:24 139:18
    142:8,12 144:15
consisted 75:10,14
construction 32:5,7
    33:4,7,9 35:20 45:8
    45:13,16,18
consumed 10:14
contact 16:25 24:23
    65:6,9 88:6
continue 26:10 71:20
control 111:11,20
    132:5
conversation 136:12
    136:15 137:12
    138:10
conversations 16:19
convicted 23:7
conviction 23:12 25:9
convinced 66:17
coolers 103:17
COONEY 2:24
    110:22,24 111:5,7
    111:12,15 127:16
    127:18,23 128:22
copy 4:10 65:10
    80:15 133:15
    144:21
Corona 1:20 5:24
correct 12:7,24 13:4

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

150

13:25 15:19,20
17:15 18:22 19:14
23:25 27:3,4,12,20
29:17 30:11,15
31:17,20,21,23,24
35:4 36:5,8 37:16
37:25 39:15 40:15
42:5,6 43:23 45:2
46:25 48:5,19 49:3
50:19,23 51:11 53:4
53:11,12,14,18,22
54:21 55:14 58:3,5
58:17 60:4,9,18
62:14,15 63:9,10,16
63:19 64:5 65:23
66:2,10,13,17 67:2
67:7,11,17 68:11
75:4,5,11,15 77:14
79:8,17 80:7,11
81:5 82:15 85:3
87:14,20,22 88:3,17
89:11,12,21 90:9
94:13 99:4,8,9,13
99:17,23 100:2,3,7
100:12 104:23,24
108:21 109:22
110:6 116:9 121:24
122:17,21 123:5
124:11 126:8
128:14,16,19
129:10,14,17,18
132:15,19,20,24
133:4,7,8 134:14
135:2 137:21
139:19 140:4
corrected 66:7
correctly 35:13 42:3
51:9,15 62:11 92:17
100:9 104:19
109:18 139:17
counsel 5:6,12,15,18
6:2 25:25 72:5,9,22
130:23,25 131:5,7
131:15,19,21
counsel's 131:3,17

count 97:25
counters 103:10
country 18:21
counts 97:13
COUNTY 145:6
couple 79:22
court 1:2 3:15 4:2,6,9
4:12,16,19 5:4 7:11
7:23,23,24 8:2 9:2,6
9:11 19:25 20:10
22:7 25:17,18 26:2
26:7,8,13 28:13
30:2 43:4 71:14,25
72:14 79:6 91:24
111:8 124:17 126:6
130:21,22 131:8,11
131:14,22 137:14
137:18,19,22
142:24 143:4
courtesy 9:11
courtroom 26:4
covered 6:10
coworker 63:25
64:25 65:3 66:3
coworker's 65:3
coworkers' 138:15
Coworkers 138:14
credit 34:8 47:9 68:6
68:7,10,16 69:8
75:18 93:19 124:25
125:13 128:8,14,17
criminal 23:10
CRISTINA 2:23
crystal 9:22
current 122:15
currently 19:5 20:15
21:13 27:25 41:25
curse 40:5
custody 20:2,10
customer 43:16
75:18
customers 43:13 76:3
88:16 90:9 92:14
cut 20:7 29:5,24 30:7
69:2 137:24

**D**
D 144:2
D-A 37:6
d/b/a 1:11
dangerous 41:16
dark 118:11 131:24
date 4:22 14:4 18:9
108:2 112:24 113:5
136:24 140:14,15
dated 112:8
dates 113:14 132:11
daughter 19:18 20:9
20:11,16 21:14,16
24:6 31:6 64:4,12
64:15
day 28:23 29:2 46:7
46:22 47:5,9,17,22
48:19 51:10 53:7,14
53:17 54:13 58:19
58:21 63:7 73:7,10
77:10,12 99:16
108:7,12 109:14,15
142:21 143:20
days 48:23,24,25
49:8 50:11 56:7
73:11,11 96:2 98:15
100:6 109:11 110:2
110:7 130:2,2
deal 140:22
dealing 80:9
December 1:15 4:7
4:23 12:24 21:8
49:19 146:2
decision 72:2
declaration 15:5,24
declined 80:20
decrease 94:7
deduct 100:22,23
deducted 94:12,18
101:21 102:7,8
deducting 122:19
deduction 94:22
95:20
defendant 43:11
DEFENDANT'S

144:9
defendants 1:13,19
2:14 5:12,22 6:13
7:6
Defendants' 44:3,4
110:14,15 124:20
124:21 130:12,14
130:18 135:9,11
defense 72:7,9 131:2
131:16
defense's 72:20
definitely 27:19 82:4
delivered 4:7
deliveries 41:15,16
demand 15:16,18
16:12 138:9
demoted 42:8
denied 72:22
deny 136:10
denying 120:2
Department 26:18,19
depends 68:7 95:6,7
95:24,24 98:10
deposed 7:14 8:22
deposition 1:18 3:11
4:24 7:15,20,25 8:5
10:11 11:10,17
12:10,14,17,23 13:3
13:24 16:4,14 17:6
17:25 18:4 26:8,11
49:18 81:5 90:24
91:20 116:20
118:12 119:5,13
123:23,25 130:25
131:15 133:18
134:6 136:7 143:12
145:12,14
depositions' 6:10
72:14
depressed 13:17,19
13:20
deputy 26:5
describe 14:24 31:8
described 33:23
DESCRIPTION

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina --- December 23, 2025

151

144:9
**deserve** 67:3
**designated** 26:3
**detained** 23:9
**determination** 60:12
**DETERNOZ** 2:25
**device** 60:24
**diary** 107:6
**difference** 34:20 35:3
  36:5 37:17 39:14
  67:22 69:9 125:23
**different** 78:9 79:15
  81:14
**differently** 78:21
  79:16 106:12
  141:14
**difficulty** 28:24 29:22
  65:24 109:25
**dinner** 99:10
**dinners** 51:4 99:14
  99:15,16,19,22,25
  109:16
**direct** 81:9,11,14
  83:23 85:7
**directed** 18:7 43:21
  46:9 81:16 83:20
  85:2,12,12,20
**directing** 83:4
**direction** 72:2 82:10
  130:22 131:10,14
**directions** 130:8,23
**directly** 68:2 76:3
**disagreement** 61:3
**discovery** 72:9,13,17
  124:5
**discrimination** 8:18
  11:20 25:13
**discuss** 42:22 47:17
  47:20 62:7
**discussed** 14:11,13
  25:5 42:8
**discussion** 22:4 25:21
  26:16 35:23 44:11
  44:14 62:5 71:24
  104:13 107:23

109:4 133:13
**discussions** 106:23
  135:23 136:3,21
**dishes** 77:19
**dishwasher** 42:11
  105:20
**dispute** 25:20 26:3,6
  82:14 116:5 119:18
  121:16 129:12
  133:5
**District** 1:2,3 5:4,4
**divide** 73:16,17 74:13
**divided** 73:20,24
  74:2 77:2
**dividing** 81:3
**division** 96:4 97:4
**divorced** 38:6,9,13
  38:18
**docket** 135:9
**doctor** 13:13
**document** 14:21,21
  14:24 15:12,17,25
  44:18 115:12,17
  117:2,5,17,20,21
  118:6,19 119:14,19
  121:10 123:12
  124:10 125:6 127:3
  128:12 139:21,23
  140:4,12,15
**documents** 12:16
  13:24 14:12 15:5
  16:5 42:13 59:16
  61:9,12,15,21,24
  87:18 144:19
**doing** 9:2 26:11
  30:19 39:19 90:15
  91:15 140:25 141:3
**dollars** 120:20
**double** 99:4,7 109:16
**doubles** 109:20
**drinking** 36:21
**drugs** 10:14
**duly** 5:18,25 145:13
**duties** 43:22 103:8,14
  103:24

**duty** 43:12

----

**E**

**E** 2:2,2 5:17,21 144:2
  144:7
**earlier** 38:8
**earliest** 113:8
**earn** 97:17 100:11
  105:12 120:20
**earned** 101:17
  105:22,23 120:22
  122:16 123:7,9
  124:16 128:17
  129:20 132:17
**earnings** 113:17
  122:16 123:3 129:5
  129:9
**easy** 124:16
**ECF** 135:9
**Ecuador** 18:12 31:11
  31:13,19
**education** 31:5,8
**EEOC** 11:21
**effect** 3:14
**eight** 28:21,22,25
  29:8,15 30:10,14
  37:8
**eight-hour** 99:20
**either** 56:8 65:18,22
**electronically** 139:9
  139:12,13
**Elizabeth** 1:21 4:20
  145:8,23
**else's** 79:15 126:13
**email** 22:2 25:17 59:4
  59:12 71:25 72:5
  110:22 130:21
  135:5
**emailing** 110:19
**Emanuel** 2:19 6:12
  83:25 111:19
**emanuel@sagelega...**
  2:20
**employed** 54:7 56:14
  58:22

**employee** 112:3,5
**employees** 15:21,23
  16:20 76:2,18 80:24
  82:11 85:7 93:22
**employer** 26:18
  125:13
**employment** 36:11
  36:15,19 38:5 41:14
  42:14 59:2 61:2,10
  61:22,25 86:2,9
  109:7 144:19
**ended** 61:3
**English** 5:19,20
  10:25 11:4 64:7,13
**entered** 59:25
**entitled** 9:22 17:24
  22:16 108:22
**entry** 135:9
**equals** 126:7 128:3,6
**ERRATA** 146:4
**Esca** 32:12
**ESQ** 2:9,11,19
**establish** 115:14
**established** 115:11
  116:25 117:22
**estimate** 101:8
**et** 5:2,2
**evening** 74:6 80:17
  92:23,24
**events** 9:20 141:7,10
  141:13,15
**everybody** 43:19
  92:3,12
**exactly** 14:7 26:24
  31:2 90:14
**examination** 5:22 6:5
  144:4
**examined** 6:3 24:19
**example** 97:8 98:3,11
  101:14 102:5
**examples** 98:5
**exceed** 128:13
**Excuse** 84:14 101:4
**exhibit** 44:3,4,15
  110:14,15 114:19

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina   ---   December 23, 2025

117:14 124:18,20 124:21 130:12,14 130:18,21 135:9,11 144:10,11,12,13,14 144:15
**exhibits** 109:6 133:12
**exist** 119:22
**existence** 45:25
**exit** 93:6
**expecting** 106:4
**expedite** 4:7
**expedited** 4:3,12 142:25
**experience** 48:8 69:19 70:7 95:3,13 133:3
**explain** 34:11,17 35:8 38:10 47:11 64:13 64:16 65:11,16,21 65:21 66:5
**explained** 22:14 34:21 35:15 38:2 65:12
**explaining** 47:13
**extent** 61:17

**F**
**F** 1:21 145:8,23
**face** 89:4 131:25 134:4,5
**fact** 82:18 129:24 131:4,7,18,21
**fail** 13:5
**failed** 13:2 57:22
**fair** 29:7 43:10 57:22 78:19 80:6 97:4,16 97:21 101:14 102:23 128:8 141:12
**fake** 123:13
**false** 140:7
**familiar** 49:10
**family** 18:24 19:25 63:3,4 93:6 105:13
**famous** 36:24

**far** 23:10 27:10 41:24 76:10 83:21
**fast** 32:6
**federal** 5:23 7:22
**feeling** 13:7
**feels** 138:3
**Fernandez** 1:5 5:2 133:21 134:7 135:19,24
**Fidelis** 28:11,14,17 28:19,22,25
**Fifth** 9:19
**fight** 23:2
**figure** 62:16 63:20,22 63:23 69:14 100:14 101:9
**figured** 78:17
**figuring** 62:18
**file** 11:20 140:12
**filed** 18:2 26:17 27:22 134:11,22 140:13
**files** 110:19
**filing** 3:4
**filled** 44:20
**filling** 58:21,25 59:12 59:17
**finally** 6:24
**find** 45:22 91:18
**finding** 46:4
**fine** 4:18 25:3 84:22
**finish** 71:20 119:15 132:8
**finished** 85:22 110:5 110:9 134:19
**fire** 86:3
**fired** 16:23 36:22 42:8 86:5
**firm** 8:18 135:20
**first** 5:25 8:25 18:13 27:5 31:16,25 32:7 32:8 33:7,22 36:8 36:11 47:17 53:14 54:13 57:7 58:19 77:12 106:24 108:6

108:11 109:12,15 112:8,12,13,25 116:21,21 121:2 124:3 136:23
**five** 51:3 71:2 80:4 85:18 98:15 99:14 99:15,18 107:4 110:19 120:25
**fix** 56:17,18 57:23,24 62:21 63:3 65:14 67:6,16 104:9
**fixed** 56:10 62:22,24 64:3
**fluctuate** 73:10
**focused** 55:7
**follow** 20:23 42:21 51:2 61:20
**following** 48:19 71:24 110:10 128:24 132:9 133:17
**follows** 6:4 72:5 130:24
**food** 28:4 90:5
**force** 3:13
**forcing** 52:5
**foregoing** 143:12
**forged** 123:13
**forgot** 78:7,25
**form** 3:7 16:6 27:25 44:7 50:6 57:18,25 78:22 87:19 92:25 115:4 138:24 139:18 141:16 142:9,12
**forms** 58:22 59:2
**forth** 145:12
**forward** 32:6 110:18
**foundation** 114:13 115:5,17
**four** 85:17
**four-day** 4:6
**Fourth** 9:14
**frame** 118:6
**fraud** 23:15,16,18

**Friday** 45:10
**friendship** 134:3
**front** 58:24 74:11 77:3 81:18 86:8,12 121:10 126:25 138:22
**frozen** 54:12
**full** 37:16 49:2 50:5
**full-time** 45:5,7,10
**further** 3:6,10 8:4 72:13,17 142:2,21 145:16

**G**
**game** 24:15
**general** 55:2 109:7
**generally** 31:8 48:15 56:10 59:9 64:11 95:19 97:10
**gestures** 9:6
**getting** 91:5 92:13 121:2
**girl** 17:18
**give** 9:10 10:19 11:12 20:8 21:16 34:5 43:14 56:24 61:12 61:13,15,19,20,25 71:10 86:20 96:4 107:17 121:5,20 141:19
**given** 21:9 84:12 87:21 130:23 145:14
**giving** 7:19 84:15
**go** 8:4,21 11:7 20:6 22:2 24:12 25:16 32:7 36:21,22 39:21 46:9,13 62:3,17 66:4,9 81:14,16 82:8,11,19 83:5,14 83:21 85:2,23 86:5 90:12 93:13,15,17 96:8 100:18 105:11 108:3 114:5 116:2 117:5,15,24 119:21

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

153

120:4 126:15 127:5
  128:20 130:8,16
  131:12 133:11
**goal** 104:8
**goes** 64:4 132:4
**going** 6:8 12:11,19
  14:8 19:17 20:6,17
  30:16 34:11,18
  42:19 43:25 56:23
  56:24 58:19 62:8,20
  62:23 63:3 66:7,8
  67:2 74:24 75:4
  77:11 84:2,7,18
  91:17 93:5,7 96:10
  96:11,22 99:21
  102:12 107:3,16,18
  110:3,13,17,18
  111:10,10 114:6
  115:10 117:12,17
  118:8 119:4,17
  123:3,11,22 124:23
  126:15,16 127:24
  130:11 133:17
  135:5 141:20
**good** 4:5,19
**Google** 130:5
**government** 28:2
  29:11 30:23 108:3
  120:18,19
**grade** 31:16
**gratuity** 123:16
**greater** 97:11 128:17
**gross** 58:12 94:22
  100:11,24 101:17
  120:13 122:15,16
  129:5 132:18,22
**ground** 8:21 10:8
**Group** 1:10 6:14
**GS** 1:9 5:5
**guess** 9:21

**H**

**H** 144:7
**half** 103:16
**hall** 126:13

**hallway** 93:21,24
  94:2 118:14
**hand** 139:8,11
**handled** 92:19
**handy** 71:15
**Hang** 43:9
**happen** 72:15
**happened** 29:5,25,25
  30:8 50:25 55:6
  56:25 62:21 78:24
**happening** 50:24
  74:15 92:15
**happens** 13:21,22
  86:12
**happy** 78:16
**health** 28:6 30:20,25
**HealthFirst** 28:9
  30:24
**hear** 26:6,8 75:13
  114:3
**heard** 137:25
**held** 1:20 22:4 25:21
  26:16 35:23 44:11
  44:14 62:5 104:13
  107:23 109:4
  133:13
**help** 9:11 12:3 50:18
  63:23 64:19,23
  85:23 92:11
**helped** 50:20
**hereinafter** 6:2
**hereinbefore** 145:12
**high** 31:15
**higher** 73:10 97:9
  127:20
**highest** 101:19 102:6
**hire** 86:6
**hired** 52:22 53:10,13
  53:18,25 54:15,24
  55:7,11 110:3
**hiring** 55:7
**hit** 24:18
**hold** 23:22 61:18
**holidays** 4:16
**home** 18:17 88:15

93:13,15,17 102:5
**honorable** 21:18
**hospital** 24:19
**Hospitality** 1:10 6:13
**hostess** 46:21
**hour** 103:16 113:18
  114:20 116:10,22
  117:21 120:11,17
  125:14 126:7
**hourly** 32:24 34:4
  58:4 62:13,17 63:19
  69:11 105:15,17
  113:17 116:11
**hours** 10:15 23:9
  34:9 37:12,12 38:3
  63:22 65:19 67:25
  75:9 76:11 94:16
  95:6,25 96:9,25,25
  97:3,5,14 98:6,7,9
  98:12 99:8,12,12,23
  100:2,4,5,6,11
  101:18 103:16
  104:25 105:3 106:2
  109:14,19,20,21,21
  120:15,17 121:2
  122:8 123:4 125:24
  125:24 129:10,13
  129:17,20,25
  132:22 133:6 141:3
**house** 61:11 74:12
  77:3,11 96:20,23
  97:3 126:13
**housing** 31:3

**I**

**ice** 103:17
**ID** 112:3,5
**idea** 57:6 63:11,14
  72:8 74:5 86:4
  92:14 103:6 108:25
  109:2 113:22
**identification** 44:5
  110:16 124:22
  130:15,19 135:12
**identified** 72:21

118:7
**identify** 5:7
**identity** 8:14
**ignorance** 69:22
  70:10
**Il** 39:24,25 40:25
  43:22 47:25 48:3
  134:13,16,17
**imagine** 94:19,24
  108:23
**immediately** 110:10
**important** 62:7
**impossible** 120:10
**incident** 24:10 25:8
**incidents** 24:25
**included** 75:18
**includes** 31:15
**including** 40:8 43:11
**increase** 94:7
**indicate** 54:15
**individual** 17:12
**individuals** 17:2
**information** 14:10
  26:5 30:19 37:24
  42:21 59:13 72:6,11
  93:25 124:24
  127:21
**inquire** 72:20
**insane** 118:9
**inside** 103:13
**instruct** 14:9 21:5
**instructed** 22:16
**instructing** 21:22
**instruction** 21:9
**instructs** 18:6
**insurance** 26:22 28:6
  28:8 29:16 30:20,25
**interested** 86:11,21
  145:18
**interpret** 5:19
**interpreted** 115:6
**interpreter** 2:23 5:10
  6:3 10:21,23 16:8
  19:13 23:22 30:3
  33:12,15 38:12,17

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

154

38:25 39:4 44:9
51:24,25 52:8,16
55:25 69:2,25 70:5
71:8 75:12 79:2,9
85:9 93:16 98:23
102:19,20 104:14
105:4 106:15
108:19 113:20
114:2,7 115:6,7
118:13,14 122:11
122:13 124:15
125:3,4,5,9,16
126:10,11 131:10
131:12 132:2,4
138:17,19 139:10
**interrupted** 114:6
**interrupting** 52:5
**intimating** 91:10,11
**intrusive** 72:10
**investigate** 29:24
30:7
**investigated** 101:24
**invite** 36:21
**involve** 64:20
**involved** 73:21 74:14
74:17,19,21 75:2
80:12 88:19,22 89:3
89:8,25 92:4,7 93:3
93:10
**involving** 20:2
**issue** 50:22,25 51:16
57:8,11 67:6,14,17
131:8,22 140:22
**issues** 107:10 108:9
135:5
**Italy** 36:16

**J**

**J** 4:1 5:1,21 6:1 7:1
8:1 9:1 10:1 11:1
12:1 13:1 14:1 15:1
16:1 17:1 18:1 19:1
20:1 21:1 22:1 23:1
24:1 25:1 26:1 27:1
28:1 29:1 30:1 31:1

32:1 33:1 34:1 35:1
36:1 37:1 38:1 39:1
40:1 41:1 42:1 43:1
44:1 45:1 46:1 47:1
48:1 49:1 50:1 51:1
52:1 53:1 54:1 55:1
56:1 57:1 58:1 59:1
60:1 61:1 62:1 63:1
64:1 65:1 66:1 67:1
68:1 69:1 70:1 71:1
72:1 73:1 74:1 75:1
76:1 77:1 78:1 79:1
80:1 81:1 82:1 83:1
84:1 85:1 86:1 87:1
88:1 89:1 90:1 91:1
92:1 93:1 94:1 95:1
96:1 97:1 98:1 99:1
100:1 101:1 102:1
103:1 104:1 105:1
106:1 107:1 108:1
109:1 110:1 111:1
112:1 113:1 114:1
115:1 116:1 117:1
118:1 119:1 120:1
121:1 122:1 123:1
124:1 125:1 126:1
127:1 128:1 129:1
130:1 131:1 132:1
133:1 134:1 135:1
136:1 137:1 138:1
139:1 140:1 141:1
142:1 143:1,8
**Jamaica** 2:16,17
**Janos** 46:22,25 47:3
47:4,6,8,9,18 48:7
48:18 51:10,10,21
52:21,25 53:2,6,16
53:20,21 54:5,13,20
55:10 58:20 63:2,7
63:8,11 79:19 82:12
87:21,23 106:11,17
**January** 4:17 39:20
**Javier** 1:19 4:24 6:5
11:6,8 96:8 111:24
116:19 117:4

118:10 119:20
121:6 124:6 143:15
145:11
**jnussbaum@jk-llp...**
2:10
**job** 11:2 31:25 35:14
43:19,22 45:9,13,16
45:18,21 46:4,11,17
46:25 47:21,24
52:12,13 63:7 68:13
76:7 97:17 121:2
**jobs** 35:20 42:7,19
144:18
**join** 15:15,18 16:6
136:13
**joined** 16:11 25:25
134:12,13 135:2
**Josef** 2:9 8:16,17
135:20
**Josef's** 11:15
**Joseph** 2:5,25 5:15
**journal** 107:6
**judge** 21:6,7,25 22:2
115:21 117:12,18
117:23 118:9,24
119:18 126:16
127:5
**judge's** 20:23
**Julio** 46:18,20,24
47:3,4,8,18 48:7
50:12,13,14,18,21
51:19 52:8,15,22,23
53:10,24,25 54:14
54:14,18,20,23,24
55:7,11,12 56:20,21
57:2,4,7,14,20,22
61:8 62:19,22 64:2
64:2,2 65:2,13 66:4
66:5,9,12 67:5 81:5
81:8,20 82:16,18,20
83:6 84:25 85:25
86:6,14,17,23 87:2
88:2,4,10,16 89:2
89:17,19 90:8,12
91:15 92:18

**July** 112:8,24 113:11
**June** 27:16 113:7
139:24 140:13,14
142:15

**K**

**Kataev** 2:19 4:2,4,8
5:12 6:6,7,12 14:16
20:23 21:4,11,22,25
22:7,9 25:16,24
26:9,13 29:19 33:14
33:19 35:22 38:15
38:21 39:3 42:18
43:4,9,25 44:12,23
61:17 62:3,6,10
66:18,23 69:4 70:4
70:6 71:12,18,23
73:2 75:12,20 76:12
79:11 83:11 84:4,10
84:14,17,23,24
90:25 91:8,16,23
92:6 93:14 101:4,11
104:12,16 105:8
107:16,24 108:20
109:3 110:13,17,23
111:4,6,9,13,21,22
114:4,10,17 115:13
115:21 116:4
117:12,25 118:10
119:2,9,17,24 120:6
121:13,15,21
123:22 124:19
125:10,11 126:15
126:23 127:4,9,12
127:17,19,25 128:4
130:11,16,20
131:14 132:6 133:9
133:14,19 135:4,13
135:14 137:2,5,7,19
138:2,11 139:12
140:21 141:4,19,25
142:5,8,14,19,25
144:5
**Katherine** 1:5 133:21
134:7 135:19,24

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

155

136:16,17
**keep** 8:25 30:16
  42:16,18 66:25
  75:23 91:9,11 107:6
  107:17 135:4
  144:18
**kind** 7:19 121:21
  123:7 127:12,25
**Kirschenbaum** 2:5
  2:25 5:15
**kitchen** 43:22
**knew** 35:9 47:12
  75:10,14 77:12,22
  107:2,2,3 113:15
**know** 11:22,23 16:3
  18:3 22:17,18 23:10
  23:12 24:14 29:5,25
  30:8,25 31:2 34:6
  35:6,10 37:13 40:23
  41:24 45:24 47:14
  47:14 49:14,17,20
  50:3,3,8,9,15 53:8,9
  55:5 58:6 62:25
  63:13,21 66:11 67:8
  67:8,10,18,18,22,23
  67:24 68:12 69:8,9
  69:9,12,12,17 70:17
  70:20,20 71:17 73:8
  73:12,18 74:4 75:22
  76:4,9,10,16,20,24
  77:25 78:2,7,24
  79:4 80:4,8,12 81:2
  81:3 82:13,16 83:2
  83:17,25 84:6 86:3
  86:5,7,21,23,24,25
  87:7 88:14,23,23,24
  89:5,7 90:2,14
  92:17 93:2,2,20,20
  94:8,15 95:4 98:14
  100:13,13,14,21
  101:7,24 102:2,15
  102:17 103:3,5
  106:2,7,10 108:21
  110:3 112:16
  113:14,22 115:8

116:13,14,17,17,18
  117:4,6,10 118:8
  120:10,12 130:6
  133:21 134:9
  135:18 136:12,14
  136:20 137:11,13
  137:15,16,16
  141:11,11,18
**knowledge** 62:12
  66:9,12 67:5 68:5
  68:19 69:21 73:3,9
  75:17 76:2,21 77:5
  93:18 94:6,17,21
  95:2,13,23 137:8,11
  137:24 138:8
**knowledgeable** 78:4
**knowledgeably** 70:9
**knows** 115:12 117:2
  117:19,20,22

─────────
**L**

**L** 5:17,21
**L-A-U-R-A** 19:24
**La** 1:11 40:20 42:5
  44:20 45:21 47:25
  48:5 55:16,19 56:15
  58:5 61:3,10 62:14
  67:21 69:23 70:8,11
  71:6 76:22 79:24
  93:18 101:16
  105:16 107:8 108:2
  108:4,7,9,12,13
  109:8,12 112:14
  113:2,10 118:5
  133:20 136:23
  139:14,19 140:3,9
  140:16 141:7
  142:13
**Labor** 26:19,19
**Lack** 114:12 115:4
**language** 11:4
**lastly** 10:2 31:5
**late** 113:10
**Laura** 19:24 21:19
  23:4

**law** 25:19 26:2
  135:20
**lawful** 5:21
**lawsuit** 16:2,7,21
  25:12,14 27:6 49:16
  104:8 108:14
  134:11,13,18,21,25
  136:4 137:9
**lawyer** 15:8 102:14
**lawyers** 136:8
**learn** 26:3 77:8,16
  136:6
**learned** 32:11
**lease** 17:12,13,15
**leave** 40:3 57:21 61:5
  68:6 93:8,12
**left** 18:21,23 19:2
  51:19 52:8,15,21,24
  53:8 57:21 61:6
  63:5 65:8 68:10
  86:4 95:17 100:16
  111:23 122:15
  129:2,22 142:14
**LEGAL** 2:15
**let's** 21:25 32:6,7
  62:3 84:23 95:8,16
  96:19 116:9 119:5
  119:16 127:5,19,22
  128:20 130:10
  133:11 138:4
**letter** 13:8,13
**Lexington** 32:10
  33:24
**lie** 117:10
**lied** 24:17
**life** 64:11
**light** 118:11,17 132:4
**limited** 40:23
**line** 20:6 21:6,21 22:2
**link** 44:12
**listed** 63:19
**listen** 121:6 124:9,13
**lists** 48:16
**little** 39:6 60:8 95:17
  95:18 96:21 105:20

106:14 129:15
  137:24
**live** 17:17 19:18
  21:19 63:4 97:24
**lives** 19:21
**living** 23:3 95:18
**Liz** 16:9 70:3
**LLC** 2:15
**LLP** 2:5
**locate** 71:9
**location** 36:25
**log** 59:23
**long** 11:16 27:13
  32:14 34:2 35:6,24
  37:4 39:5,25 41:4,5
  41:23 72:13 77:19
  80:4 92:24
**look** 13:23 29:23
  46:10,11 58:12 60:6
  60:15 64:15 80:20
  80:20 85:21 87:17
  94:20 102:11,18,18
  112:22,23 115:8
  116:13 121:8
  124:10 126:24
  129:9 138:22
  140:23,25 141:2
**looked** 68:18 75:8
  132:10
**looking** 9:19 34:6
  46:17 47:21 56:16
  60:11 86:9 116:10
  116:21 132:25
  133:4 136:24
**lose** 61:19
**lost** 29:4 30:9 111:15
**lot** 86:8 97:17 105:13
  132:8 140:24
**loud** 8:25
**love** 21:8
**low** 56:17 58:8,9
  67:24 69:13,17
  70:14,16 78:5,14
  116:14
**lower** 71:5 73:11

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

156

133:2
**LS54** 44:4,7 144:10
**Lucas** 2:11 5:14
  117:25 138:3 142:5
**lucas@jk-llp.com**
  2:12
**lunch** 51:4 62:7,9
  71:13,19,24 98:16
  98:20 99:3,14 103:7
  109:17,20
**lunches** 98:15,17
  99:7,16,18
**lying** 119:2

**M**

**M** 5:17,21
**M-A-R-C-E-L-L-O**
  138:17
**Madam** 22:7 26:13
  43:4 71:14 91:24
  131:9
**main** 77:20
**maintain** 16:25 24:23
**majority** 97:22
**making** 37:11 42:20
  47:9 105:20
**managed** 88:9
**management** 35:8
  37:21 106:6,8
**manager** 36:20 50:15
  51:17,19,21 52:2,9
  52:11,15,18,19,24
  55:2 67:13 73:12,14
  78:7 81:2,5,8 82:21
  83:7 84:25 87:25
  88:2,10 89:4
**managers** 74:12
**manner** 7:15
**Maps** 130:5
**Marcello** 138:16
**MARIA** 2:23
**Marianna** 1:11 6:14
  6:25 7:5
**mark** 22:7 110:14
**marked** 44:2,4

110:16 124:22
  130:11,15,19 135:8
  135:12
**marking** 124:17
**marriage** 145:18
**married** 19:5,7 38:8
**match** 78:12
**math** 95:21 126:4
**matter** 4:25 145:19
**matters** 20:2 72:18
**maximum** 94:9
**mean** 34:5 68:20
  96:24 99:4
**media** 108:14
**Medicaid** 28:7
**medical** 28:8
**Medicare** 28:7
**medications** 10:15
**meet** 12:13 46:22
  106:4
**meeting** 12:19 15:3
  74:12
**meetings** 14:13 55:3
  67:12 80:14
**memory** 9:21
**mentioned** 98:6
**merely** 54:20
**met** 47:18 63:6
**Mezzo** 41:3
**mine** 114:14
**minimum** 34:12,19
  35:2 36:4 37:11,16
  39:15 47:10 49:2
  50:5 97:25
**minus** 100:16
**minute** 71:10 111:16
  114:7
**minutes** 106:18
**Misstates** 89:22
  100:17 101:2
  139:20 140:5,18
**misstating** 90:10
**mistake** 142:16
**mistaken** 126:18
**Molina** 1:19 4:1,25

5:1 6:1,5 7:1 8:1 9:1
  10:1 11:1,9 12:1
  13:1 14:1 15:1 16:1
  17:1 18:1 19:1,12
  20:1 21:1 22:1,10
  22:14 23:1 24:1
  25:1 26:1,10 27:1
  28:1 29:1 30:1 31:1
  32:1 33:1 34:1 35:1
  36:1 37:1 38:1 39:1
  40:1 41:1 42:1 43:1
  44:1,6,16 45:1 46:1
  47:1 48:1 49:1 50:1
  51:1 52:1 53:1 54:1
  55:1 56:1 57:1 58:1
  59:1 60:1 61:1 62:1
  62:12 63:1 64:1
  65:1 66:1,21 67:1
  68:1 69:1 70:1 71:1
  72:1 73:1 74:1 75:1
  76:1 77:1 78:1 79:1
  80:1 81:1 82:1 83:1
  84:1 85:1 86:1 87:1
  88:1 89:1 90:1 91:1
  92:1 93:1 94:1 95:1
  96:1 97:1 98:1 99:1
  100:1 101:1 102:1
  103:1 104:1 105:1
  106:1 107:1 108:1
  109:1 110:1 111:1
  111:23,24 112:1
  113:1 114:1,5 115:1
  116:1 117:1 118:1
  118:18 119:1,7,21
  119:25 120:1,8
  121:1,23 122:1
  123:1 124:1 125:1
  126:1 127:1 128:1,5
  128:23 129:1 130:1
  131:1,2,16,24 132:1
  133:1,20 134:1,4
  135:1,16 136:1
  137:1 138:1,23
  139:1 140:1 141:1
  141:25 142:1,20

143:1,15 145:11
**Molina's** 72:8 131:7
  131:21
**moment** 105:4
**Monday** 45:10
**money** 56:24 67:3
  78:12 96:2,21
  105:12,12 120:19
  123:7 124:16
**month** 41:6,24
  105:14
**months** 24:12,20
  27:15 29:3,4,9 40:2
  49:23 53:4 55:20
  63:8,12 98:13
  140:11
**Montor-Peran** 49:11
  136:4
**morning** 4:19 12:21
  15:3 24:5 82:24
**mother** 19:20,21 72:3
  72:8
**mother's** 19:23
**mouth** 120:4
**move** 20:18 84:3,7
  90:21,23 127:19
**moved** 36:16
**moving** 20:22 21:3
  91:6
**multiple** 90:11 127:2
**multiply** 123:4 128:2
  128:6
**mumbling** 9:7

**N**

**N** 2:2 5:17,21 144:2
**name** 4:19 6:12 11:8
  17:15 19:23 49:10
  52:22 65:4,5 66:3
  79:4 87:25 111:24
  113:4 118:2,3
  121:24 129:2
  132:15
**named** 134:8,10,22
  134:25 135:16

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

157

136:18
**names** 11:7 19:11
  89:13 138:15
**Naomi** 19:12
**nature** 22:24 25:19
  26:5
**necessarily** 79:16
**need** 4:2,12 8:13,23
  10:5 21:16 22:18,19
  47:14 85:17,17,22
  105:12 123:14,22
  134:5
**needed** 46:11 50:21
  62:16 72:12
**needs** 20:9 21:17
  104:14
**neither** 65:17
**net** 94:12 101:21
  120:13 122:20
  129:6 132:18
**never** 18:21 20:8
  23:11 31:17 40:9,20
  43:23 44:20 47:7,15
  49:13 50:16 51:7,17
  51:20,22,23 52:18
  52:20,24 53:3 56:25
  56:25 57:12,16
  59:21,25 62:21 64:3
  64:15 68:18 70:13
  76:5,6 80:6 81:23
  81:24 82:4 86:3
  101:23 119:14
  123:7,9,10 124:3,16
  135:22,23 137:10
**new** 1:3,20,22 2:7,7
  2:17 4:20 5:4,24
  19:3 26:18 120:6
  145:4,10
**night** 74:3 88:8
**Nintendo** 24:4
**normal** 4:14
**Notary** 1:22 143:22
  145:9
**notes** 107:7,14
**notice** 1:20 44:15

**November** 18:10
**number** 5:5 98:8
  100:15 101:7
  108:24,25 110:21
  128:20
**numbered** 110:20
**numbers** 125:18
**Nussbaum** 2:9 8:17
  135:20

**O**

**O** 5:17,21
**o'clock** 15:2 24:5
  54:18 62:8 71:18
**oath** 3:13 5:10 7:10
  15:6,12,25
**object** 92:25 115:10
**objection** 5:8 14:17
  20:4,12,17,24 38:11
  50:6 51:12 57:18,25
  66:16 69:24 78:22
  82:5 83:8 87:19
  89:22 90:10 96:6
  100:17 101:2
  114:12 115:4
  116:24 121:18
  123:6 139:20 140:5
  140:18 141:16
**objections** 3:7
**obligation** 22:15
  115:14
**observe** 68:16 74:11
  85:25 86:6,14,17
  93:24 128:5
**observed** 68:9 74:15
  76:5 90:8,17
**obvious** 105:19
**obviously** 72:7 97:13
**occurred** 82:15
**off-the-record** 71:23
**office** 8:8 11:13,14,15
  11:16 139:6
**officer** 3:12
**Oh** 76:11 112:2 125:8
**okay** 4:8 6:18,19,22

6:23,23 7:2,2,8 8:24
  9:4,8,13,18,25 10:7
  18:8 21:18 26:12
  38:21 40:22 61:14
  61:22,23 62:21
  64:22 69:4,17 70:5
  85:19 90:7 96:19
  105:7 109:9,10
  110:24 111:2,5,12
  111:17,17,17 119:2
  122:6 125:8,17
  127:18 128:15,22
  129:8 131:12
  142:17
**old** 19:16
**once** 7:16 22:21
  106:18 124:2
  137:16
**ones** 76:16
**oOo** 3:18
**open** 39:20 44:13
  82:24 110:20
  127:13
**opened** 103:21
**opening** 103:8,24
**opposing** 25:25
**option** 74:19
**order** 24:12 111:3
**ordering** 4:10 142:25
**orders** 90:6,8,13,17
  90:18
**organizing** 110:24
**Osteria** 1:11 40:20
  42:5 44:20 45:21
  47:25 48:5 55:16,19
  56:15 58:5 61:2,10
  62:14 67:21 69:23
  70:8,11 71:6 76:22
  79:24 93:18 101:16
  105:16 107:8 108:2
  108:4,6,9,12,13
  109:7,12 112:14
  113:2,10 118:5
  133:20 136:23
  139:14,19 140:3,9

140:16 141:7
  142:13
**outcome** 145:19
**outside** 72:15 103:9
  103:10,11
**outstanding** 72:14
**owner** 36:16 37:7
  38:14,18

**P**

**P** 2:2,2 111:24
**P-I-E-T-R-O** 39:2,4
**P-R-I-E-T-O** 39:3
**p.m** 11:19 55:23,23
  55:24 56:3,4 71:21
  71:22 98:18 99:11
  99:11,22,22 104:17
  104:18 127:7,8
  141:23,24 143:6
**page** 124:23 144:4,9
  144:17
**PAGE/LINE** 146:6
**paid** 32:19,23 34:4,11
  34:13 35:2 36:3
  37:10,16 40:11,12
  41:7 49:2 50:2,4,11
  51:3,5,7 56:14 58:4
  58:17 60:8 68:25
  69:6,21,22 70:9,11
  78:3,8 86:15 100:24
  101:24,25,25
  104:20 106:4,24
  108:22 114:21,24
  116:11,12,22
  117:21 125:12,23
  128:12 129:15
**pandemic** 26:23 27:3
**pane** 127:22
**paper** 60:17,20,23,25
  81:17,21
**paralegal** 2:24,25
  128:5 141:20
**part** 49:15 83:12 88:8
  137:9
**part-time** 45:4

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

158

**participant** 70:19
**participate** 10:11
  74:18 76:21 77:6,9
  77:13,17 79:20
  92:23
**particular** 46:14
  89:10,11,20 90:17
  122:7 135:15
**parties** 3:4 72:16
  145:17
**party** 25:14 72:21
**Patricio** 1:19 4:25
  6:5 11:6,8 143:15
  145:11
**patron** 68:3
**patrons** 11:3 68:5
**pay** 34:23,24,25
  42:16,19 44:16
  47:17 49:4,5,6,9
  50:22 51:16 58:13
  59:24 60:2,3,6
  63:16,18 64:16,24
  65:11 67:15 69:10
  69:15,16 71:5 75:10
  75:14 77:11 78:14
  79:15 87:17 94:12
  94:19,22,23 95:18
  97:11 102:24,24,25
  103:3 104:10,22,23
  105:13,14 107:17
  108:9 110:15,21
  112:8,12,15,18,23
  113:7,8,13,21,23,25
  114:15,18,20,24,25
  115:3,8 116:6,8,10
  116:16,19,21,21
  117:2,8 118:4,19,21
  119:3,7,13 120:2,7
  120:9,11,12,13,16
  120:24 121:2,5,9,19
  121:22,23 122:3,5,7
  122:7,20 123:8,10
  123:14,21 124:2,4,7
  124:8,12,21 125:12
  126:18,24 127:14

127:16 128:20,24
129:6 130:12,14,16
130:18 131:4,5,7,18
131:19,21 132:9,9
132:14,14,17,18,25
133:2,15 141:2
144:11,12,13,14,18
144:20,21
**paycheck** 37:24
  78:24 113:13 129:4
**payday** 44:16
**paying** 49:8 58:6
  63:21 65:19 94:16
  100:24 106:2
  120:10
**payments** 75:18
**penalty** 7:10
**pending** 10:4
**people** 55:4 76:7
  81:13,16 83:20,21
  83:24 85:2,20 86:4
  86:8,9 90:4 102:21
  104:4,6 138:8,12
**Peran** 136:10
**percent** 71:9
**Perez** 52:22 81:5
**Perfect** 111:21
**perform** 103:8 141:6
**performed** 103:23
**period** 72:15 98:19
**perjury** 7:10
**person** 8:7 23:3
  65:20 72:10 103:21
  103:25 104:5
  138:20
**personal** 7:24 13:9
  64:21
**Petrosyants** 1:11
  6:14,20
**phone** 13:15,16,18
  71:8 87:11,12,14
  130:5
**physical** 60:20
**piece** 60:17,20,23,25
  81:17,20

**Pietro** 38:24 39:5,18
  39:23
**place** 36:24 40:4
  42:12 53:8 65:8,9
  90:14 96:13 107:12
  118:16 131:25
**placed** 59:5
**plaintiff** 5:15 134:8
  134:11,22 135:2,16
  136:19
**plaintiff's** 131:19
**plaintiffs'** 130:23
  131:5
**Plaintiffs** 1:7 2:4
**planner** 107:6
**plants** 103:10
**playing** 24:6
**plea** 23:12
**pleading** 15:13
**please** 4:11 9:5,9
  14:22 20:23 21:9,11
  52:6 61:18 71:11,14
  72:24 75:19,20
  83:11 90:20 91:20
  91:24 98:21 107:17
  111:6 114:7,10
  117:24 118:10
  119:9 121:6 124:8
  124:19 126:8 127:9
  128:12,21 130:17
  131:9
**point** 58:25
**points** 70:25 71:2
  80:4 107:4,4,5
**police** 24:7
**pool** 70:19,22,23
  76:22 77:2,6,9,14
  77:17 79:20,25
  80:11
**portion** 69:15,15
**possession** 61:10
**possible** 70:21
**post** 108:18
**posted** 108:13
**potentially** 72:10

**power** 66:13 67:6,10
  67:16
**powerless** 57:23
**powers** 67:12
**precluded** 72:18
**prepare** 12:10,14
  13:24 14:3
**prepared** 26:10
  123:25
**preparing** 16:4
**present** 2:3,22 10:23
  11:16 28:23 29:2
  73:23 74:24 75:4
  108:2,7,12 110:13
**presented** 138:23
**press** 128:3
**preview** 127:22
**previously** 12:23
  63:15 109:19
**primary** 31:10,14
  43:12
**prior** 6:10 14:3 35:14
  42:14,19 69:20
  70:17,21 101:15
  105:2,17,22 129:17
  133:3 144:18
**probably** 123:22
**problem** 36:20 40:5
  50:19 51:20 57:23
  57:24 104:10
**Procedure** 5:23
**proceed** 26:7 62:8
  91:20
**proceeded** 23:11
**proceedings** 143:5
**process** 73:20 88:7,9
  88:13 92:22 93:5,9
  93:12
**produce** 42:21
**produced** 124:2
**producing** 124:4
**production** 107:19
**professed** 69:20
  70:10
**professional** 1:21

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

159

4:22 145:9
**program** 78:6 79:14
**properly** 9:12 104:20
**protection** 24:12
**provide** 10:11 14:10
**provided** 37:24
133:16 144:21
**providing** 59:4
**Public** 1:22 143:22
145:9
**punch** 110:2
**purpose** 12:5 46:3
**pursuant** 1:20 5:22
**put** 42:11 44:12 78:6
78:25 79:3,13 80:10
81:13 118:16 119:9
121:22 133:17
**putting** 59:19 115:25
119:11 120:4 135:7
135:13 142:20

**Q**

**qualify** 14:16
**question** 3:8 8:13
9:10,15,16 10:4
14:22 16:9 20:5,21
21:2,11,23 22:8
38:15 40:22 43:5
54:16 55:6,9 66:22
67:4,5,14 68:14,15
70:2 71:13,15 72:3
72:23 75:19 79:25
80:7 84:8,18,20,21
85:6 90:16 91:4,9
91:11,12,14,17,19
91:25 92:9 93:11
95:12 97:7 99:21
102:4,6,9 105:5
114:4,9,19 115:6,25
116:3 118:4 119:5
120:6 121:7,7,11
125:10 126:9,21,23
127:10 130:4
134:21 137:3,20,21
138:4,5,6 140:14

**questioning** 21:21
119:16
**questions** 5:19 7:4
10:12 11:25 12:7,9
17:23,24 18:7 20:20
22:13,15,19 90:21
90:23 91:2 106:6
109:7 115:22
117:14 123:24
124:7,9 126:17
131:2,16 132:8
142:3,4,6,18,22
**quiet** 118:16
**quieter** 114:5
**quit** 41:18,19 61:4

**R**

**R** 2:2 5:17,17,21
143:8
**R-I-V-E-R-A** 11:9
**race** 8:18 25:12
**racism** 7:21 40:4
42:11
**raise** 131:8,22
**rate** 32:24 44:16
62:13,17 63:19
105:15,17 113:17
116:10,11
**read** 16:10 21:12
22:8 26:14 43:7
64:12 65:25 66:23
66:24 71:16 72:24
72:25 75:20,21
76:12,13 91:24 92:2
101:11,13 105:8,10
114:10,11 120:5
127:9,11 137:3,4,6
138:6,7 143:11
**reads** 64:9 72:5
**ready** 72:23
**reality** 100:20
**realize** 133:2 137:23
**realized** 49:17
**really** 49:24 88:24
99:4

**reason** 10:4,10,13,18
10:20 20:19 71:4
72:19 79:14 97:16
113:24 121:16
129:12,15 131:6,20
132:21 135:15
**reasons** 72:19
**recall** 51:9,15 73:19
73:19 120:25
**receive** 27:25 30:23
34:15,18 57:10 66:8
66:8 67:3,20 68:2
68:19,22 70:16 73:3
73:6 74:9 76:3,19
76:24 97:19 120:23
**received** 14:4 25:17
34:12,18 44:25 50:2
56:25 58:7 60:2
68:16,25 69:6,7
70:13,14 71:25
73:10,15 75:7,24
76:8,17 94:8 97:11
101:20 102:24,24
104:21,22 105:16
105:17 118:5
120:11 129:6
130:21 132:18,21
**receiving** 76:15
**recess** 22:5 25:22
43:2 71:21 104:17
109:5 127:7 141:23
**recognize** 112:17
118:18,20 120:3
121:12,14 122:2
127:3 138:25
**recognizes** 117:17
118:2
**recollection** 9:20,23
32:19 62:12 112:13
112:25 113:9
**reconcile** 69:19 70:7
**record** 5:8 16:10
21:12 22:3,4 25:16
25:21,25 26:15,16
29:20 35:22,23 43:7

44:11,14 62:3,5,6
65:25 66:24 71:16
72:25 75:21 76:13
92:2 101:13 104:12
104:13 105:10
107:21,23 109:3,4
114:11 115:11,16
116:2 126:16,20
127:5,11 133:11,13
135:7 137:4,6 138:3
138:7 145:14
**records** 75:23
**refer** 60:16 79:7
135:19
**reference** 118:6
**referred** 136:8
**referring** 6:15,20,24
15:9 34:24 54:6,9
60:17 79:7 81:17
94:11 113:5 136:10
**reflect** 116:18
**reflected** 130:22
**reflects** 69:10
**refresh** 112:12,24
113:9
**refresher** 8:23
**refusal** 126:17
**refusing** 115:22
117:13 123:24
**registered** 1:21 4:21
145:8
**regular** 73:4 95:10
123:4
**related** 7:6 16:5
23:15 30:23 42:13
61:9,22,24 141:6
144:19 145:16
**relating** 20:10 108:13
**relationship** 17:20
**relevance** 72:6
**rely** 64:12 110:17
**remaining** 96:15
**remains** 92:9
**remember** 7:22
12:25 17:8 25:7

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

160

26:24 27:7,10 28:18
28:19 30:18 32:3,21
32:23,25 34:6,7
36:24,25 38:23 41:5
45:17 46:8 48:14,14
56:6,8,13 57:6
58:21,24 59:4,8,10
59:12,16,19,21 60:5
60:14,14,19,22 65:5
66:4 82:2 87:25
89:15 94:14 98:14
103:2 105:6 106:20
106:22 109:15
117:6 122:4 130:3
**remind** 12:21
**remote** 1:18 111:11
**remotely** 5:11,18,25
145:13
**renew** 29:16 30:13,15
30:20
**renewed** 30:4
**renovations** 39:19
**rent** 17:10,11,18
105:13
**repeat** 16:8 21:11
66:18,19,21,22 70:3
70:4 71:15 75:19
101:19,23 102:3
105:24 106:13
114:4,22 116:13
126:9
**repeated** 54:20 105:6
**repeatedly** 13:14
81:4
**repeating** 55:9
102:11
**rephrase** 9:15 84:18
**report** 13:10
**reporter** 1:22 4:2,6,9
4:12,16,19,21,22
5:9 9:2,6,11 22:7
26:13 28:13 30:2
43:4 71:14 79:6
91:24 111:8 124:17
126:6 137:14,18,22

142:24 143:4 145:9
**reporter's** 137:20
**represent** 5:7 15:8
44:6 112:7 120:16
128:23
**representation** 131:3
131:17
**representative** 98:8
**represented** 8:14,18
**representing** 113:8
122:6 135:20
**request** 10:22 42:20
61:21 107:20
111:10 119:20
133:17 144:17
**requested** 28:13 30:2
51:24 79:2,6 126:6
137:14,18
**requests** 119:14
**required** 8:13 11:3
18:2 77:5,8,13,16
79:19 80:10
**requires** 72:10
**reserved** 3:8
**residence** 17:10
**resign** 42:9
**resolve** 51:20
**resolved** 8:3 23:11
57:11,13,16
**respective** 3:4
**respond** 52:13 98:25
**response** 52:4
**responsibility** 97:20
**rest** 86:20,25
**restaurant** 6:16 7:5
11:2,4 16:20 17:3
26:25 27:6,13 28:15
29:10,12 32:4,8,9
32:11,20 33:3,4,21
35:11 36:3,8,12,17
37:6,20 38:5,7,14
38:20,22 39:12,22
40:14,17 42:10
43:12 46:2,14,16
53:7 58:22 67:21

68:3,6,10 69:22
70:15,23 71:2,5
74:7 76:8 77:18
78:3 79:20 83:13,15
88:17 93:4 94:4,7
98:13 101:9,15
104:22 105:3,16,23
106:5,24 107:11
133:23 134:2
**restaurant's** 45:24
**restaurant-wise** 41:2
**restaurants** 33:8,10
35:19 37:2,5 39:13
40:7,12,24 41:8
42:4,14 43:11 45:2
45:5 46:6,10 48:9
48:12,16 69:20 70:8
70:12,18,18,22,25
71:7 95:3 101:15
104:21 105:2,18,22
**result** 24:24 25:9
**resume** 48:11,15
**retainer** 15:9
**retranslate** 66:20
**return** 71:24
**returned** 51:18,22,23
52:18,20,24 53:3
**review** 12:16 74:13
**reviewed** 16:5 63:16
63:18 128:25
**reviewing** 34:23,25
**rid** 127:22,23,24
**ridiculous** 117:19
119:15,22 126:22
**right** 8:6 11:4 12:8
18:3 24:25 27:11,17
31:15 35:16 37:18
43:18 51:18 55:24
61:4 64:13 65:13,15
65:16 66:13 71:18
74:24 78:12,18,20
78:23 79:4,5 83:16
87:18 88:10 93:9
98:23,24 101:22
102:17 104:2,10

109:12 110:11
112:3 114:15
125:20 127:20
130:10 132:23
134:23 136:16
140:21
**Rivera** 1:19 4:25 6:5
11:9 111:24 143:15
145:11
**Rob** 6:21 7:5
**Robert** 1:11 6:14,20
**room** 17:18 54:2,5
76:10 77:20 81:10
81:12 102:22 114:8
**roommates** 17:21
**rotate** 104:6
**RPR** 145:23
**rules** 5:23 8:22,23
10:8 20:24 119:18
**runner** 32:16 80:5
107:5 133:24
**runners** 43:20 76:11
76:14

─────────────────
              **S**
─────────────────
**S** 2:2 5:17,17 144:7
**S-A-N** 38:25
**S-I-L-V-A-N-O** 37:7
**safe** 105:9
**SAGE** 2:15,24
**salary** 63:5 67:23,24
70:16 97:14,24,25
102:2,2
**sale** 58:25
**San** 38:24 39:5,18,23
**save** 42:17
**saw** 46:2 47:7 60:21
81:23,24 82:4 86:3
91:14 92:13 106:18
118:3
**saying** 9:3,12 33:11
38:9 45:12 49:7
51:5,6,21 52:23
53:2 54:4 73:14
74:15 77:22 78:5

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

161

82:2,3 84:25 99:6
    114:14 120:7
    122:23 123:9,12
    126:24 127:2
**says** 52:7,14 111:23
    111:24 113:17
    120:12 122:7,16,20
    124:24 125:12
    129:5,19,24 131:15
    132:17 139:23
**Scalinatella** 35:21,24
    36:19,23
**schedule** 55:19 56:10
    86:18,20,23,25 87:3
    87:4,6,9,17
**scheduled** 12:24
**school** 31:10,14,15
    64:4
**screen** 44:2,10,13,24
    59:7,14,20 60:21
    111:6 119:10,12
    121:22 127:14
    133:10 135:8
    138:22 141:5
**scroll** 127:20 128:11
    130:10
**sealing** 3:5
**second** 9:5 25:8 62:4
    105:5 107:22
    111:15 124:6
    141:19
**section** 123:3
**see** 24:8 40:7 44:8,15
    58:13 60:7 63:8
    68:15 81:20 89:19
    90:4 94:3 104:9
    106:19 111:7,25
    112:10,16,19
    114:22,24 120:18
    122:9,10,14,17,24
    123:18,20 125:2,5,7
    125:15 126:2
    127:18 128:16
    129:2,7,22 131:25
    132:12 133:11

134:4,5 139:25
**seeing** 82:3
**seek** 72:9
**seen** 16:16 44:18
**sees** 122:13
**send** 14:21 86:24
    87:6 102:14,14
    103:4 123:11 143:2
**sense** 63:21 75:6
**sent** 13:12 14:2,3,6,7
    14:20,25 87:4
    110:23
**separate** 107:19
    140:22
**separation** 36:11,15
    36:19 38:5 39:18
    41:14
**serious** 13:9
**serve** 43:12 89:8 90:5
    92:9
**served** 88:16,18 89:2
    89:19
**server** 40:9 89:11,17
    89:20 90:18
**server's** 92:10
**servers** 43:20 76:14
    89:13
**serving** 90:4
**set** 145:12
**Sette** 41:3
**settle** 12:3
**seven** 34:3 35:7 99:12
    99:23 109:21,21
**seven-hour** 99:19
**Shahmuradyan** 1:12
    6:15,25
**share** 14:23 43:25
    44:13 80:23 110:21
    111:6,17 127:14
    135:4,6
**sharing** 81:3 136:21
**sheet** 74:13 80:16,18
    80:19
**shift** 99:4,20
**shifts** 99:7,10,20

**show** 48:12 89:4
    91:19 119:19,21
    126:20
**showing** 72:11 80:16
    81:21 113:23
    114:23 116:19
**shown** 131:4,18
**shows** 120:17
**sick** 13:6,7,10,12,17
**side** 12:2
**sign** 59:18 139:5,8
    140:8
**signature** 59:19
    140:15
**signed** 3:12,14 15:4,7
    15:15,17,24 16:6
    59:21 138:24 139:3
    139:15,18,23 140:4
    140:16 142:12,15
**signing** 59:16
**silly** 90:16
**similar** 7:15
**similarly** 1:6
**simple** 102:6
**Simultaneous** 18:5
    29:18 84:9 107:13
    115:15,18 123:19
**single** 110:6
**sit** 8:5 118:11
**sitting** 8:6
**situated** 1:6
**six** 24:11,20
**sixth** 31:16
**skip** 35:19
**sleep** 24:6
**slide** 57:17
**small** 125:3
**social** 108:14
**sold** 36:16
**sole** 89:20
**somebody** 62:23
    114:3 126:13
**son** 23:23,24 24:2,3
    24:24 25:9
**soon** 93:6

**sooner** 132:8
**sorry** 30:3 33:15,19
    38:12,17 69:3,25
    75:12 93:14 98:23
    101:11 106:16
    114:2 125:9 131:13
    132:5 137:2 139:10
**sought** 72:6
**Southern** 1:3 5:4
**Spanish** 2:23 5:19,20
**speak** 10:24 11:3
    16:13,22 46:17
    49:24 57:4,7 65:2
    65:13 141:20
**speakers** 18:5 29:18
    84:9 107:13 115:15
    115:18 123:19
**speaking** 46:24 48:15
    54:6,17 64:11 114:3
    118:15 138:8
**speaks** 64:7
**special** 141:6,10,13
    141:15
**specific** 46:3 85:2
**specifically** 10:22
**spend** 140:24 141:3
**spoke** 46:19 47:8
    48:7 49:13,14,22
    53:19 56:21 57:20
    79:21 87:23 135:22
    137:10,15 138:13
**spoken** 136:25
**spot** 57:2
**ss** 145:5
**staff** 74:12 77:3
**stamps** 28:4
**standing** 58:24
**stands** 116:24
**start** 27:5 32:9 47:13
**started** 27:10,16 32:6
    32:7 33:7 39:13
    46:11,24 48:4 53:3
    54:10 93:9,12
    106:24 107:25
    108:6,11 110:10

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

162

112:13,25 113:6,10
139:18 140:9,16
**starting** 111:2
**state** 1:22 4:20 5:7
7:23 19:2 26:18
143:23 145:4,10
**stated** 6:16
**statement** 15:5,24
116:2
**states** 1:2 5:3 18:14
18:18,21 19:2,21
26:19 31:12,19,22
32:2 64:5
**stating** 5:23
**station** 74:8 81:15
82:8 85:23 86:10,11
88:21,24 89:5,6,9
89:10,16,21 90:2,9
92:4,13,18,21
103:12
**stations** 81:14,17,21
82:9,11,17,19 83:15
83:21 85:2 89:14
**stay** 41:4 82:9 93:4,7
**stayed** 74:16
**stenographic** 4:21
5:9
**stipulate** 142:11,17
**stipulated** 3:2,6,10
142:19
**stipulations** 6:9
**stop** 40:23 119:4
120:4
**stopped** 33:7
**stopping** 90:24 91:22
115:24
**street** 5:24 40:14
41:22 138:9,12
**stub** 34:23,24,25 60:3
60:7 63:16,18 64:16
64:24 65:11 67:15
102:14,24 110:15
110:21 112:8,12
113:7,8,23,25
114:25 115:3,9

116:6,10,19,21,22
117:2 118:5,19
120:2,7,12,16 121:3
121:22,23 122:7,7
123:8 124:7,21
125:12 127:15,16
128:20,24 129:4
130:12,14,16,18
132:9,10,14,17
144:11,12,13,14
**stubs** 42:16,19 59:24
87:17 103:3 107:15
107:17 112:15,18
113:13,21 114:15
114:18,24 116:8,16
117:8 118:21 119:3
119:7,10,13 120:9
121:5,9,19 122:3,5
123:10,15,21 124:2
124:4,8,12 126:19
126:24 131:4,5,7,18
131:19,21 132:15
132:25 133:16
141:2 144:18,20,21
**stuff** 55:5
**stupid** 85:5
**subject** 7:9 27:2,6
**subjects** 7:6
**Subramanian** 21:7
**subscribed** 143:18
**subtenant** 17:21
**sudden** 30:7
**sue** 135:11 138:24
144:15
**SUFFOLK** 145:6
**suing** 22:17
**Suite** 2:6
**summary** 129:4
**support** 63:4
**supporting** 20:15
21:13
**sure** 6:11 18:15 21:7
42:25 107:14,15
113:14 122:22
131:12 141:22

**surprise** 136:6
**surrounding** 36:10
**swearing** 15:13
**sworn** 3:11,14 5:18
5:25 17:6 143:18
145:13
**system** 58:25 59:5

---

**T**

**T** 5:17 143:8 144:7
**table** 43:15 85:16,17
85:18,18,22,22,23
90:17,19
**tables** 88:19,23,25
89:4,8,8,19 90:2
92:5,8,10,14,19
103:9
**take** 10:2 29:23 30:5
37:13 42:24 44:23
93:19 95:20 96:10
96:12,22 101:9
103:9,14 120:21,22
133:9 140:23,25,25
141:4
**taken** 1:19 7:14
10:17 22:5 25:22
34:8 43:2 71:21
104:17 109:5 127:7
128:9,13,18 141:23
**talk** 14:11 16:24
121:4 124:6
**talked** 11:10 25:13
**talking** 38:14 51:16
54:12,13 55:5
**talks** 124:24
**taxes** 34:14 37:13
58:14 94:12,18,22
95:11,16,20,21
96:10,12,14 100:16
100:21,23,24
101:21 102:7,7,16
120:14,19,21,23
122:19 132:19
**Technical** 28:24
29:22 65:24 109:25

**telephone** 26:2
**tell** 9:14 37:21 43:8
46:13 47:9 50:8
54:14 56:18 62:20
62:23 63:13 64:2,2
64:2 79:19,21 82:8
82:24 83:2 85:14,15
85:16,21 86:14,17
87:2,4 88:14 96:17
101:6,17 102:22
106:11 114:22
117:9,10 118:8,21
123:15 129:25
136:13
**telling** 15:13 57:5
66:25 67:9,17 83:19
92:16 102:9 114:25
115:2 122:4
**temporarily** 41:21
**ten** 70:25 91:14 97:14
107:4 109:20
**terminate** 85:25
**testified** 6:3 17:5
42:4 49:25 63:15
81:4 100:25 101:5
113:6 115:19 118:2
**testify** 10:16
**testifying** 7:11 70:9
**testimony** 7:9 13:7
13:25 51:13,15
53:13 62:11 63:6
65:10,20 89:23
90:11,22 92:17,20
100:18 101:3
139:21 140:6,19
145:14
**thank** 38:21 124:20
141:25 142:20,22
**thing** 16:11 69:3
78:14 82:16 83:20
102:3 108:17
**things** 54:6,10 64:21
74:22 85:19 103:17
124:11
**think** 10:18 11:18

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

163

18:15 21:20 29:19
30:5 34:23 50:24
52:22 66:14,14 71:4
84:17,19 94:9
106:15 107:14
109:22 123:14
133:10 141:20
**thinking** 135:4
**third** 9:9 72:21
113:16
**thought** 33:14 55:2
**thousand** 120:20
**three** 35:25 40:2
48:24,25 49:8 50:11
51:4 85:23 98:15,17
99:6,7,14,15,18
100:6 109:11,16
110:2,7 130:2
140:10
**time** 3:9 4:23 5:6
10:2 23:21 25:2,24
27:2 28:14 33:11,13
33:17,18 35:6 36:21
39:6 43:21 45:15
47:24 49:22 54:12
55:17 57:20 58:7
59:13,17 65:6 72:17
77:19,24 80:4 88:15
91:6,22 98:18
103:15 104:7 107:7
109:5 112:22 117:7
119:15,23 136:24
138:5 139:15 140:4
140:24 142:2,23
**times** 83:9 90:11
91:14 96:7 99:12
102:3 120:17 126:7
127:2
**Tinello** 39:24,25 40:8
40:25 43:22 48:2,3
48:4 134:11,14,17
134:18,22
**tip** 34:8,9 37:12 47:9
68:2 70:19,22,23
74:13 76:22 77:9,14

77:17 79:20,25
80:11,16 93:19
123:5 124:25
125:13 128:8,13,17
**tipping** 88:7 92:22
93:9
**tips** 34:12,15,18,19
35:3 36:4 37:11,17
39:8,13,14 41:11
44:25 45:3 63:22
65:19 67:20,23,25
68:6,10,16,19,20,22
69:7,11,15 73:3,7,9
73:15,16,23 74:2,9
74:13 75:7,9,17,23
76:3,8,11,15,17,19
76:23,24 77:2,11,20
77:21 80:10,16,24
94:16 95:5,7,14,23
95:25 96:2,16,19,22
97:5,6,9,11,13,18
97:22 98:2 101:25
105:21,22 106:3
120:15 123:16,17
125:12 128:11,12
128:17 129:21
**tired** 69:18
**titles** 76:7
**Toast** 58:25 59:5,23
79:8,11,11 87:9,13
87:16,18 109:24
**Tobin** 1:21 4:20
145:8,23
**today** 4:4 7:3,9,15
9:20 10:19,21,23
12:8,19 14:3 15:2
142:2
**today's** 4:22 10:11
12:10 13:24 16:14
17:25
**told** 12:18 47:22
48:18 50:14 51:10
53:16 55:12 57:2,14
58:20 61:5 62:25
63:25 65:2 66:4,6

66:25 74:23,25
77:23 83:12,21
87:24 94:14 100:16
102:20 108:19
109:19 136:7 138:9
138:20
**tomorrow** 53:22
54:18,19 55:12
**top** 111:23 113:16
122:15 127:21
129:2
**topic** 20:21 21:2 62:7
**total** 95:12 100:6
101:6,7 109:21
123:16 125:19
128:12 129:10
**totally** 140:7
**touch** 59:7,14,20
68:12 79:3,7,14
87:7,7,10 88:6
**touching** 68:14
**train** 47:6
**training** 48:19,23
49:2,7 50:2,4,11,22
51:6,7,16 53:17,22
54:18 58:21 109:11
109:14,21,23 110:5
110:6,9
**transcript** 4:3,10
91:18 143:12
**translate** 52:3 85:10
98:21 131:9
**translated** 118:13
124:15 125:4
126:10 131:11
132:2
**translating** 134:16
**translation** 66:17
**treat** 40:6 79:5
**treated** 78:9,21,23
79:16,18 141:13
**treatment** 78:11
**trial** 3:9 115:13
**trouble** 26:14 43:5
**true** 74:2 88:20,25

145:14
**truth** 12:12 15:13
50:8 63:13 88:14
**truthful** 10:12,19
**truthfully** 10:16
**try** 84:23 111:10
**trying** 12:2 71:9
**Tuesday** 4:7
**turn** 118:10
**turnaround** 4:15
**Twelve** 22:23
**twice** 106:18
**two** 27:15 29:3,4,8
37:2 49:23 53:4,19
55:20 63:8,12 87:23
96:5 98:5,13,16
99:10,12,22,25
103:16 104:2,4
109:16,19 125:18
130:2 140:10
**two-minute** 42:24
**type** 128:2
**typical** 101:18
**typically** 98:9,12

---

**U**

**U** 143:8
**ultimately** 51:5
**unable** 13:16 57:23
**unclear** 72:7
**understand** 7:7,12
9:14,24 10:6,8
14:19 29:13 30:9
35:13 40:22 42:3
51:8 54:9 58:8,16
62:11 64:24 65:18
65:22 67:19 68:21
69:3 70:2 75:9
81:25 83:12 84:17
85:5 86:13 90:22
92:7,16 94:15,17
97:7 100:9,23
102:12,15 104:19
106:3 109:18
119:25 121:11

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

164

137:22 139:17
**Understandable**
64:22
**understanding** 36:7
37:15 39:8 41:10
68:24 69:5 76:25
**understands** 84:20
115:20
**understood** 9:17
24:22 35:2 37:23
39:11,12 53:18
**unemployment** 26:21
**uniforms** 93:22
**United** 1:2 5:3 18:14
18:18,21 19:2,21
26:19 31:19,22 32:2
64:5
**use** 10:3 11:22 130:4
130:7
**usual** 6:9

**V**

**V** 5:21
**vacation** 47:6 50:15
50:16,17 51:11,17
52:2,11,18,20 53:2
79:23 88:5 106:19
**varied** 56:11
**vast** 69:19 70:7
**venued** 5:3
**verbal** 82:7
**verbally** 37:21
**versus** 5:2 70:10
105:2
**video-teleconference**
1:18 2:3 5:11
**view** 59:24
**virtual** 8:7
**visit** 46:6
**visited** 18:17
**voice** 8:25
**voluntarily** 75:3
80:23 86:5
**vs** 1:9

**W**

**wage** 34:12,19 35:3
36:4 37:11,17 39:14
39:15 47:10 49:2
50:5 123:5 125:13
**wages** 34:8 39:8
41:11 69:11,16 75:7
93:19 95:5,15,22
96:16 97:9,12,18,23
108:22
**wait** 50:14,16 63:2
**waited** 57:15,15,15
**waiter** 70:25 92:12
107:4
**waiters** 76:9
**waiting** 26:6 39:20
**waived** 3:5
**walk** 46:10 93:21
**walked** 46:16 53:14
54:13
**walking** 45:23 46:2,3
**want** 6:7 8:21 9:20
36:22 40:23 42:18
51:8 52:17 57:21
61:5 66:23 67:4
97:17 101:7,14
104:9 105:6 111:2
117:23 123:20
126:4 127:14
131:10 133:11,12
133:15 136:18
140:24 141:25
**wanted** 74:20 108:20
118:16
**wants** 105:5
**washing** 77:19
**wasn't** 7:24 50:18
56:16 57:13 78:12
79:4 113:14
**wasting** 119:15,23
**water** 43:14 85:18
**way** 13:21 37:10
40:11 41:7 78:8,9
84:23 107:12
130:12 145:18

**we'll** 21:6 22:2 71:12
71:13,19 104:16
110:14 112:22
127:20 140:22
**we're** 6:8 9:12,19
20:22 21:20 26:6
52:10 56:24 72:23
91:6,22 111:18
119:17 123:22
124:4 126:15,16
132:3 135:13
**we've** 6:9 42:7
**website** 59:23
**Wednesday** 12:24
**week** 4:4 56:7,11,23
57:9 58:18 60:2
62:20 66:6 67:2
95:8,10 96:3,5,17
97:6 98:6,7,9 99:11
100:7,10,11,25
101:18 102:23
109:12 110:6,10
121:2 122:8 129:13
129:16,17,19 130:2
132:22 133:6
**week's** 132:9
**weekend** 45:13
**weekly** 58:17 68:25
69:6
**went** 24:6 26:15 47:6
51:11,17 52:2,11,18
52:19 53:2 62:6
63:11 65:21 77:2,10
79:22 82:9 88:5,15
106:19 118:14
120:14
**weren't** 37:16
**wife** 23:2 38:6,18
**withdraw** 38:15
**withdrawn** 15:22
49:21 98:4 106:21
**witness** 5:10 33:12
52:6 66:19 72:2
85:9 102:19 113:20
115:7 122:11

125:16 126:11
131:11 144:4
145:12,15
**word** 137:23,24,25
**words** 9:5 50:18
53:19 79:22 87:23
120:4
**work** 17:2 27:13
32:14 33:2,6,9 34:2
35:19,24 36:23 37:4
38:22 39:5,21,25
40:25 41:11,23
43:22 45:4,5,8,18
48:3 55:4,17 56:3,4
56:7 70:25 77:10,11
77:18,20 81:13,15
82:25 86:7,9,19
95:25 96:4 97:14
98:12 99:14 105:12
106:6,9 129:16
141:6
**worked** 29:9 32:18
33:22 34:10,13 35:7
35:11,14,14,18 36:2
36:12 37:8 39:7,12
39:23 40:8,17,20,24
41:3 42:4 43:11
45:2,12,15 48:13,16
48:25 51:3 55:6,20
58:5 67:20 71:3
76:10,11,23 77:13
77:19,24 79:24 80:2
80:3,24 95:6,9 96:9
96:25 97:2,5 98:9
98:13,14 99:3,4,6
99:11,22,25 100:5
100:10,20 101:8,18
105:2,3,18 122:8
129:10,13,17,20,25
130:2 132:22 133:6
133:20,25 142:12
**worker** 65:10
**Workers'** 27:23
**working** 26:25 27:5
27:11 28:15 32:8,9

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

165

33:8 36:8 39:13
41:5,21,25 47:25
48:4,5,8 53:3,6 54:8
54:10 55:16 58:25
62:13 63:9 68:9
69:20 70:8,15 95:3
97:20 107:7,25
108:11 110:10
112:13,25 113:6,10
120:25 139:14,19
140:3,9,16
**worry** 62:20
**wouldn't** 50:5 77:19
97:15
**Wow** 125:3
**write** 9:3,6,12 117:18
117:23
**writing** 42:22 61:21
107:12,20 133:17
**written** 93:25 122:24
**wrong** 24:20 78:18
78:20
**wrote** 13:8

**X**

**X** 144:2,7

**Y**

**Yeah** 27:18 34:9
40:21 42:17 64:25
66:2 87:12
**year** 7:18 8:22 11:11
25:13 27:19,20,21
28:20 29:9,16 30:18
32:8,15 35:15 36:12
39:6 49:19 140:24
140:25 141:2
142:10
**years** 18:16 22:23
28:21,22,25 29:8,15
30:11,14 31:23
32:10,22 34:3 35:7
35:25 37:9 45:14,17
95:4
**yell** 90:20,23 91:21

91:23
**yelling** 90:25
**York** 1:3,20,23 2:7,7
2:17 4:20 5:5,24
19:3 26:18 145:4,10
**young** 17:18

**Z**

**zero** 120:13
**zoom** 111:9,14

**0**

**1**

**1** 44:3,4 62:8 71:18
144:10
**1,190.90** 122:16
**1,200** 100:11,16
**1:01** 71:21
**1:25-cv-4490** 1:8 5:5
**1:45** 71:20
**1:52** 71:22
**10** 15:2 47:5 54:18
**10.65** 123:5 125:13
125:24
**10:00** 11:18,24 12:6
47:22 54:19 55:13
55:21,21,23,24 56:2
56:2,4,5 99:2,2
100:5,5
**10:07** 1:16 4:24
**10:44** 22:5
**10:47** 22:6
**10:55** 25:22
**10006** 2:7
**107** 144:20
**10th** 12:24
**11** 55:23 135:9
**11:00** 55:21,25 56:4
98:18 99:2,11,22
**11:02** 25:23
**11:44** 43:2
**11:50** 43:3
**110** 144:11
**11368** 5:25

**11423-2327** 2:17
**12.65** 132:22 133:6
**1200** 96:10 100:14,25
101:9
**124** 144:12
**130** 144:13,14
**133** 144:21
**135** 144:15
**14** 18:10 99:12,25
100:4
**140.02** 132:19
**15** 19:17
**16** 113:18 114:20
116:10,22 117:21
120:11,17 125:20
125:24
**171** 128:13
**171.09** 125:25
**171.8955** 128:6
**171.90** 126:8 128:9
**18** 139:24
**182-11** 2:16
**18th** 140:14
**19** 32:10 129:19
**19.44** 129:10,13,25
**195.60** 128:13
**1983** 18:10
**19th** 133:6

**2**

**2** 110:14,15 124:23
144:11
**2:00** 55:23
**20** 18:15 31:23 95:3
109:20
**200** 67:24 70:14
**2024** 27:8,9,11 30:18
40:21,23 45:19
112:9,24 113:11,12
113:15 133:7
**2025** 1:15 27:8
139:24 143:21
146:2
**2025and** 4:23
**212.688.5640** 2:8

**23** 1:15 146:2
**23d** 21:8
**24** 10:15 23:9 142:15
**240** 51:3 58:10 94:9
120:11
**25** 4:23 142:15
**25th** 133:7 140:13
**27** 109:21
**29** 112:8,24
**290.64** 129:6
**2nd** 49:19

**3**

**3** 24:5 78:15 124:20
124:21 144:12
**3:14** 104:16,17
**3:20** 104:16,18
**30** 98:6
**300** 67:24 70:14
95:16,20 96:20,23
**30th** 4:7
**32.13** 123:4 126:5,7
128:2,6
**320** 2:6 58:10
**34.13** 122:8
**342.18** 123:5
**35-24** 5:24
**36** 99:7 100:5
**360** 94:9 120:11
129:20
**390** 132:21
**390.11** 132:18
**3A** 5:24

**4**

**4** 130:12,14 144:13
**4.45** 120:17
**4:00** 55:21,25,25 56:3
98:18 99:2,11,22
**4:16** 127:7
**4:26** 127:8
**4:58** 141:23
**4:59** 141:24
**40** 96:9 98:6
**400** 78:15 96:10

FERNANDEZ, et al. v. BULLDOZER HOSPITALITY GROUP, et al.
Javier Molina  ---  December 23, 2025

166

| | |
|---|---|
| 100:16 101:10 122:20 | 95:19 96:11,15,16 96:16,19 100:16 |
| **42** 144:18 | **81** 128:20 130:13,14 |
| **44** 144:10 | 144:13 |
| **45** 2:6 | **82** 130:17,18 144:14 |
| | **820** 123:17 |
| **5** | **8th** 4:17 |
| **5** 71:8 130:18 144:14 | |
| **5.35** 125:14 126:7 | **9** |
| 128:2,6 | **9491** 112:4 |
| **5:01** 142:19 | **99th** 5:24 |
| **5:03** 143:6 | |
| **50** 100:6,10 101:18 | |
| **500** 95:21 | |
| **54th** 41:21 | |
| **56th** 40:14 | |
| **572.57** 129:5 | |
| | |
| **6** | |
| **6** 135:9,11 144:5,15 | |
| **6:00** 11:19,24 12:6 | |
| **600** 51:4 94:10 | |
| 101:20 102:5,7 | |
| **61** 144:19 | |
| **61st** 33:25 | |
| **621.12** 128:13 | |
| | |
| **7** | |
| **7** 78:15 95:4 | |
| **7.5** 80:5 107:5 | |
| **70.20** 120:22 | |
| **700** 70:13 94:25 | |
| 95:17 | |
| **71** 120:15 | |
| **71.20** 120:13,17 | |
| **718.412.2421** 2:18 | |
| **752** 123:9 | |
| **752.16** 122:20 | |
| **79** 110:15,21 111:2 | |
| 111:15 144:11 | |
| | |
| **8** | |
| **80** 124:21 127:16 | |
| 144:12 | |
| **800** 78:15 94:25 95:4 | |
| 95:10,12,14,14,17 | |