UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KATHERINE FERNANDEZ, on behalf of herself and others similarly situated,<br><br>　　　　　　Plaintiff,<br>　　v.<br><br>BULLDOZER HOSPITALITY GROUP, INC., d/b/a OSTERIA LA BAIA, ROBERT PETROSYANTS and MARIANNA SHAHMURADYAN,<br><br>　　　　　　Defendants. | No.: 25-cv-04490 (AS) |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT**

**JOSEPH & KIRSCHENBAUM LLP**

D. Maimon Kirschenbaum
Josef Nussbaum
Lucas C. Buzzard
32 Broadway, Suite 601
New York, NY 10004
Tel: (212) 688-5640

*Attorneys for Plaintiffs
And Putative Fed. R. Civ. P. Rule 23 Class*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ i

I.     ARGUMENT ............................................................................................................................. 1

    A.     The Record Is Clear The Defendants Unlawfully Applied A Tip Credit To Class Members' Wages ........................................................................................................... 1

    B.     The Class Is Entitled To Liquidated Damages On All Wage Claims ............................. 4

    C.     Defendants Admit That They Violated NYLL §195(1) .................................................. 6

    D.     The Court Should Award Prejudgment Interest ............................................................... 6

    E.     There Is No Dispute That Defendants Shahmuradyan And Petrosyants Exercise Operational Control Over OLB ......................................................................................... 7

II.    CONCLUSION……………………………………………………………………………..12

## TABLE OF AUTHORITIES

**Cases**

*Aguilar v. Ham N Eggery Deli Inc.*,
    2017 U.S. Dist. LEXIS 228042 (E.D.N.Y. Mar. 30, 2017) ................................. 3

*Cardenas v. Edita's Bar & Rest., Inc.*,
    2020 U.S. Dist. LEXIS 258547 (E.D.N.Y. Sep. 30, 2020) ................................ 2,3

*Carvente-Avila v. Chaya Mushkah Restaurant Corp.*,
    2016 U.S. Dist. LEXIS 75396 (S.D.N.Y. Mar. 1, 2016) ...................................... 3

*Chang v. Louis Amsterdamn, Inc.*, No. 19 CV 3056,
    2022 U.S. Dist. LEXIS 177606 (E.D.N.Y. Sept. 29, 2022) ............................... 1,2

*Chichinadze v. BG Bar Inc.*, 517 F. Supp. 3d 240 (S.D.N.Y. 2021) ............................... 4,6

*Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253 (S.D.N.Y. 2011) ............... 5

*Dudley v. Hanzon Homecare Servs.*,
    2018 U.S. Dist. LEXIS 8112 (S.D.N.Y. Jan. 17, 2018) ...................................... 5,6

*Dudley v. Hanzon Homecare Servs.*,
    2018 U.S. Dist. LEXIS 8112 (S.D.N.Y. Jan. 17, 2018) ...................................... 5

*Ezagui v. City of New York*, 726 F. Supp. 2d 275 (S.D.N.Y. 2010) ................................. 8

*Garcia v. Saigon Mkt. LLC*,
    2019 U.S. Dist. LEXIS 163259 (S.D.N.Y. Sept. 24, 2019) ................................. 3

*Glatt v. Fox Searchlight Pictures Inc.*, 293 F.R.D. 516 (S.D.N.Y. 2013) ...................... 8,9

*Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132 (2d Cir. 1999) ....................................... 5,9,

*Irizarry v. Catsimatidis*, 722 F.3d 99 (2d Cir. 2013) .......................................................... 9,11

*Mogollan v. La Abundancia Bakery & Rest., Inc.*,
    2020 U.S. Dist. LEXIS 183436 (S.D.N.Y. Sep. 30, 2020) ................................. 3-4

*Mendez v. MCSS Rest. Corp.*, 564 F. Supp. 3d 195 (E.D.N.Y. 2021) ............................... 3

*Orellana v. One If By Land Rest. LLC*,
    2020 U.S. Dist. LEXIS 178095 (S.D.N.Y. Sept. 27, 2020) ................................ 4

*Perez v. Escobar Constr., Inc.*, 2024 U.S. App. LEXIS 18979 (2d Cir. 2024) ............... 10

*Torres v. Gristede's Operating Corp.*,
    2011 U.S. Dist. LEXIS 114209 (S.D.N.Y. Sept. 23, 2011).................................9

*Velasquez v. U.S. 1 Farm Mkt., Inc.*, No. 13-cv-634,
    2016 U.S. Dist. LEXIS 59536 (D. Conn. May 3, 2016).......................................9

*Zivkovic v. Laura Christy, LLC*,
    2022 U.S. Dist. LEXIS 94839 (S.D.N.Y. May 26, 2022)....................................3

**Statutes, Rules, and Regulations**

N.Y. Lab. Law § 195(1)................................................................................................6

N.Y. Comp. Codes R. & Regs, tit. 12, § 146-1.3 ............................................................3

N.Y. Comp. Codes R. & Regs, tit. 12, § 146-2.2 ........................................................1,2,3,4

Plaintiffs submit this Reply Memorandum of Law in further support of their motion for summary judgment.[1]

## I. ARGUMENT

### A. The Record Is Clear The Defendants Unlawfully Applied A Tip Credit To Class Members' Wages

Defendants cannot escape the reality that (1) they paid all putative class members pursuant to a tip credit, and (2) they did not provide class members with written notices that complied with the requirements of N.Y. Comp. Codes R. & Regs ("N.Y.C.R.R."), tit. 12, § 146-2.2. Ds' MOL at 60-73. As Defendants "acknowledge their failure to comply with the tip credit notice requirements," it is undisputed that they are "ineligible to claim a tip credit against employees' wages." *Chang v. Loui Amsterdam, Inc.*, 2022 U.S. Dist. LEXIS 177606, *22 (citation omitted and cleaned up). *See* 12 N.Y.C.R.R. § 146-2.2(d) ("The employer has the burden of proving compliance with the notification provisions of this section.").

Defendants attempt to circumvent their obvious liability by claiming that (1) they did not need to provide a written notice because the information on employees' wage statements satisfy the notice requirements, and (2) oral notice of the tip credit is sufficient under New York law. Both arguments fall flat.

First, there is simply no basis for Defendants' claim that "paystubs are sufficient to serve as notice of the tip credit" in the place of formal written notices. Ds' MOL at 6-7. In fact, the cases Defendants cite in "support" of this contention are obviously misleading as they all merely discuss

---

[1] As used herein, "CSF" refers to Defendants' counter-statement of disputed facts, Dkt. 86; "Ds' MOL" refers to Defendants' brief opposing this motion, Dkt. 87; "SMF" refers to Plaintiff's 56.1 Statement, Dkt. 68; "Ps' MOL" refers to Plaintiffs' moving brief on this motion, Dkt. 67.

the requirements of § 146-2.2 and none of them held that paystubs suffice as tip credit notices. *See* Ds' MOL at 6-7.

In any event, even if paystubs could satisfy the requirements of § 146-2.2 (they decidedly cannot), there is no evidence in the record that the paystubs Defendants provided their employees included all of the requirements of § 146-2.2. Specifically, the paystubs neither list the "employees' regular payday" nor that "extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate." *See* 12 N.Y.C.R.R. § 146-2.2. The statute also requires the notice to be provided in English and "any other language spoken by the new employee as his/her primary language." *Id*. Moreover, it requires that notice be provided "prior to any change in the employee's hourly rates of pay" and that "[a]n acknowledgment of receipt signed by the employee shall be kept on file for six years." *Id*. There is simply no evidence that Defendants included all this information to their employees on their paystubs. Moreover, there is no evidence that Defendants provided notices prior to ay change in pay, or that they obtain signed acknowledgments. Accordingly, this flailing argument should be rejected. *See, e.g., Cardenas v. Edita's Bar & Rest., Inc*., 2020 U.S. Dist. LEXIS 258547, *29 (E.D.N.Y. Sep. 30, 2020) ("defendants did not provide adequate notice under the NYLL by distributing such paystubs to their employees"); *Chang*, 2022 U.S. Dist. LEXIS 177606, at *27 (there is no genuine dispute that "defendants did not provide adequate notice under the NYLL by distributing such paystubs to their employees.") (citation omitted).

Turning to Defendants' second argument, (*i.e.*, that the DOL Letter somehow absolves them of liability), it should also be rejected for all the reasons set forth in Plaintiffs' opposition to Defendants' motion for summary judgment. ECF No. 88. The reasoning in the letter contradicts the plain language of the regulations and it has been resoundingly rejected by courts in this Circuit.

Moreover, even if the purported letter was on all fours relevant and authoritative (it is not), it does not shield Defendants from liability, where, as here, the record is clear that they failed to notify Plaintiffs (even orally) of all the tip-credit prerequisites.

The reasoning of the Ben Amotz Letter is obviously defective. The letter reads 12 N.Y.C.R.R. §§ 146-1.3 and 146-2.2 to allow employers "to claim the tip credit even when they fail to provide written notice of the tip credit rules." *See* ECF 76-4 at 2. Incredibly, this interpretation is based on the fact that § 146-1.3, which mandates notice of the tip credit "as required in section 146-2.2" (the very title of which is "written notice") does not itself state that the notice must be in writing. *Id.* This interpretation runs entirely contrary to the plain language and natural reading of the regulations, and requires the reader to entirely ignore the written notice requirement explicitly laid out in § 146-2.2. As such, it should be disregarded. *See, e.g., Zivkovic v. Laura Christy, LLC*, 2022 U.S. Dist. LEXIS 94839, at *2 (S.D.N.Y. May 26, 2022) ("The New York Court of Appeals has held repeatedly that where the language of a statute is clear and unambiguous, courts must give effect to its plain meaning.").

Defendants cite only one case, *Carvente-Avila v. Chaya Mushkah Restaurant Corp.*, that deferred to the Opinion Letter and found oral notice adequate for a tip credit. 2016 U.S. Dist. LEXIS 75396 (S.D.N.Y. Mar. 1, 2016). Shockingly, Defendants fail to mention any of the numerous other cases which have analyzed and rejected the letter's reasoning and *Chaya Mushkah*'s acceptance of it. *E.g., Garcia v. Saigon Mkt. LLC*, 2019 U.S. Dist. LEXIS 163259, at *28 (S.D.N.Y. Sept. 24, 2019); *Cardenas*, 2020 U.S. Dist. LEXIS 258547, at *27-29; *Mendez v. MCSS Rest. Corp.*, 564 F. Supp. 3d 195, 212-13 (E.D.N.Y. 2021); *Aguilar v. Ham N Eggery Deli Inc.*, 2017 U.S. Dist. LEXIS 228042, at *7 n.1 (E.D.N.Y. Mar. 30, 2017); *Mogollan v.

3

*La Abundancia Bakery & Rest., Inc.*, 2020 U.S. Dist. LEXIS 183436, at *19 n.9 (S.D.N.Y. Sep. 30, 2020).

Even if Defendants could somehow convince the Court to defer to the letter's muddled reasoning, that would not absolve them of liability for tip credit damages because Defendants did not provide *actual* notice of the tip credit. The record here is devoid of evidence that Defendants informed employees even orally of the dictates of § 146-2.2. Defendants bear the burden of establishing that their employees understood the tip credit rules, and because they have not proffered evidence that they met this burden—even the manufactured burden that allows for oral notice—summary judgment should be denied. *See Orellana v. One If By Land Rest. LLC*, 2020 U.S. Dist. LEXIS 178095, at *33 (S.D.N.Y. Sept. 27, 2020) ("[T]he employer has the ultimate burden to prove compliance with the [tip] credit notice requirement" and "must adduce definite competent evidence showing that waiters were informed of the tip credit" when opposing summary judgment. (citation omitted)).

In short, the law is clear that *written* notice that meets all the requirements of § 146-2.2 is required prior to an employer taking a tip credit. Defendants have not proffered evidence that they provided such noticers and thus they were not entitled to take a tip credit.

Finally, Defendants do not contest the amount of tip credits they took between 2021 and August 26, 2025. CSF ¶¶ 74-95. Accordingly, the Court should award partial summary judgment to the class in the amount $670,013.45. *Id.*; Pls.' Mem. at 14-15.

**B. The Class Is Entitled To Liquidated Damages On All Wage Claims**

To avoid mandatory liquidated damages an employer must prove that it "took active steps to ascertain the dictates of the [law] and then act[ed] to comply with them," and "that its good-faith actions were objectively reasonable." *Chichinadze v. BG Bar Inc.*, 517 F. Supp. 3d 240, 258

(S.D.N.Y. 2021) (internal citations omitted). The Second Circuit has described defendants' burden as "a difficult one, with double damages being the norm and single damages the exception." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999).

Defendants did not take any such "active steps," much less act in accordance with them. Specifically, Defendants admit that Shahmuradyan has not done anything to ensure that the compensation practices at OLB accord with federal or state law and she does not know whether anyone at OLB has ever done anything to ensure that the restaurant's compensation practices follow federal or state law. CSF ¶¶ 97-98. Defendants also admit that Petrosyants could not identify any steps OLB had taken to ensure that the way it pays its employees follows the law and that he does not recall OLB seeking any legal advice about how to pay its employees. *Id*. ¶¶ 99-100. Moreover, Defendants' claim that "OLB has ensured they remain compliant with the law by hiring lawyers," CSF ¶ 96, is wildly misleading. The only citation Defendants provide for hiring any lawyers relate to the lawyers they hired to defend this litigation. *See* Shahmuradyan Dep. 38:22-39:4.

Where, as here, defendants "point to no advice that the accountant with whom [they] consulted gave them that would have led them to think that [their wage violations] were legal[,]" they have not proved the requisite good faith and cannot escape liquidated damages. *Copantitla v. Fiskardo Estiatorio, Inc*., 788 F. Supp. 2d 253, 288 (S.D.N.Y. 2011). Similarly, Defendants' alleged reliance on a human resources management company, OLB's managers, and the Toast payroll system is also insufficient to establish that they took "active steps to ascertain the dictates of the [law] and then act to comply with them." *Dudley v. Hanzon Homecare Servs.*, 2018 U.S. Dist. LEXIS 8112, *15 (S.D.N.Y. Jan. 17, 2018) (citation omitted).  This type of "reliance plainly does not qualify as an active step to ascertain the dictates of the law and then act to comply with them[,]"

5

*Chichinadze*, 517 F. Supp. 3d at 258 (emphasis in original, cleaned up), and courts have granted summary judgment in virtually identical circumstances. *E.g.*, *Dudley*, 2018 U.S. Dist. LEXIS 8112, at *15.

### C. Defendants Admit That They Violated § NYLL 195(1)

As outlined above, the record is clear that Defendants never provide employees with wage notices. Defendants' entire defense rests on whether Plaintiffs have standing to pursue these claims. However, Defendants do not seriously contest the two arguments Plaintiffs submit in support of standing and thus Defendants concede that they are liable to pay penalties for this violation.

First, Plaintiffs argued that they have standing to pursue these claims because there is a common law analogue in the action of account or accompt for the harm class members suffered because of the § 195 violations. Ps' MOL 11-13. Defendants do not contest this argument at all and thus the argument should be accepted as unopposed. *See* Ds' MOL at 11-13.

Second, Plaintiffs have standing because Defendants' failure to provide written wage notices is the very thing that made Defendants' use of the tip credit an unlawful underpayment. Accordingly, there is a clear causal link between OLB's NYLL § 195(1) violations and all service employees' economic loss. *See* Ps' MOL 13-14. Here, again, Defendants do not contest this argument and thus the Court should find liability in favor of the class on this claim.

### D. The Court Should Award Prejudgment Interest

Defendants do not oppose Plaintiffs' prejudgment interest calculations. Ds' MOL at 14. Accordingly, the Court should grant prejudgment interest in accordance with Plaintiffs' motion.

### E. There Is No Dispute That Defendants Shahmuradyan And Petrosyants Exercise Operational Control Over OLB

Defendants do not genuinely contest the roles that Defendants Shahmuradyan and Petrosyants play at the restaurant. Accordingly, the Court should find that they are both individually liable for the wage violations in this case.

In deciding employer status, Courts look to whether an individual exercises "operational control" over a company such that their role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment. In addition, courts consider the nonexclusive factors "*Carter* factors" to determine an individual's employer status under the FLSA. Ps' MOL at 16-18 However, as court have emphasized no one factor is dispositive and satisfying the factors is not necessary to establish employer status. *Id*.

Before turning to the merits of this claim, it bears highlighting that Plaintiffs adduced significant evidence of the roles that Shahmuradyan and Petrosyants play at OLB and Defendants do not seriously contest *any* of those facts. Specifically, Plaintiffs submitted 56 statements related to Shahmuradyan and Petrosyansts. *See* CSF at ¶¶ 3-58. Defendants outright admit 44 of these statements, and while Defendants interpose a denial of the remaining 12 statements, those denials are not genuine. For example, in Paragraph 8, Plaintiffs provide that: "Defendant Shahmuradyan admitted at deposition that she has "ultimate authority over all operations of the restaurant." *Id*. ¶ 8. In response, Defendants state: "Deny. While Shahmuradyan, as the sole owner, retains ultimate authority in theory, nearly all operational decisions *related to employment* within OLB are performed by Paliko." *Id.* (emphasis added).  In other words, despite stating "deny," Defendants *admit* that "Shahmuradyan […] retains ultimate authority" but merely contest the extent to which

7

Shahmuradyan exercises that authority. That is not a basis to deny this statement and the statement should thus be deemed admitted.

Similarly, in paragraph 10, Plaintiffs state that "Defendant Shahmuradyan has authority to hire and fire any employee at the restaurant." *Id*. ¶ 10. In response, Defendants state: "Deny. While Shahmuradyan *could* decide to hire and fire employees . . .." *Id*.  But, again, this is not a denial of the statement in the paragraph of the *authority* that Shahmuradyan has and the response should thus be stricken. Defendants make similar non-genuine denials in 12, 13, 15, 16, 23, 30, 58, all of which should be stricken.  *See, e.g., Ezagui v. City of New York*, 726 F. Supp. 2d 275, 285 (S.D.N.Y. 2010) ("any of the Plaintiff's Rule 56.1 Statements that Defendants do not specifically deny - with citations to supporting evidence - are deemed admitted for purposes of Plaintiff's summary judgment motion.")

Turing to the substance of the argument, Plaintiffs have adduced significant evidence that Shahmuradyan and Petrosyants exercised operational control over OLB. Ps' MOL at 18-21 Significantly, in their opposition, Defendants merely focus on the *Carter* factors and do not at all contest Plaintiffs arguments that, based on the totality of the circumstances, the Individual Defendants are employers under the FLSA and NYLL.

Defendants' analysis of the Carter factors is, in any event, off-kilter. In terms of the first *Carter* factor, Defendants blithely state that Shahmuradyan and Petrosyants "do not have the authority to hire and fire employees, as Paliko engages in this task." Ds' MOL at 17.  But the uncontested record and Defendants' own admissions point to quite the opposite. To be sure, this factor is concerned with whether the alleged employer *could* hire and fire, not whether he actually exercised that power. *See Glatt v. Fox Searchlight Pictures Inc.*, 293 F.R.D. 516, 526 (S.D.N.Y. 2013) ("This factor focuses on 'the power to hire and fire,' not whether that power was exercised."

8

(citation omitted)). Here both individual Defendant admitted that they have authority to hire and fire employees at OLB and that fact alone satisfies this factor. CSF ¶¶ 10, 43.

Even if that were not the case, the uncontested records establishes that Shahmuradyan hired managers at the restaurant, hired the head chef (who was tasked with hiring kitchen employees), and hired her husband, Petrosyants, to be the business's director of operations. CSF ¶¶ 12 ("Shahmuradyan says she interviewed Paliko before he was hired as manager; admits that she hired the previous manager before Paliko . . .."); 22-24, 36. Like his wife, Petrosyants admitted that he has the power to hire and fire restaurant employees, including front-of-house service staff, *see* SMF ¶ 43, and he participated in the hiring of Paliko as manager, SMF ¶ 58. Indeed, Paliko admits that Petrosyants was involved in hiring managers at the restaurant. Paliko Decl. (ECF No. 74) at ¶ 18 ("To my knowledge, Petrosyants has not hired or fired anyone at the restaurant *other than managers such as myself* . . ..") (emphasis added).

The caselaw is clear that the hiring of "individuals who were in charge of the [workers] is a strong indication of control" under the first *Carter* factor and thus there is not dispute that Plaintiffs satisfy this factor. *Herman*, 172 F.3d at 140 (Although Defendant's "hiring involved mainly managerial staff, the fact that [Defendant] hired individuals who were in charge of the [Plaintiffs] is a strong indication of control."); *Irizarry v. Catsimatidis*, 722 F.3d 99, 116 (2d Cir. 2013) (hiring of managerial staff satisfies first *Carter* factor); *Glatt*, 293 F.R.D. at 526 ("Though Searchlight did not hire the line producers or department heads […], [its] ability to hire managerial staff is enough to satisfy this factor."); *Torres v. Gristede's Operating Corp.*, 2011 U.S. Dist. LEXIS 114209, at *7 (S.D.N.Y. Sept. 23, 2011) ("There is no evidence that [Defendant] hired any class member, but there does not have to be. It stands uncontradicted that he hired managerial employees."); *Velasquez v. U.S. 1 Farm Mkt., Inc.*, 2016 U.S. Dist. LEXIS 59536, *26 (D. Conn.

May 3, 2016) (authority under first *Carter* factor "is evidenced by the fact that Chen personally selected and hired Farm Market's management team").

Next, the law is clear that "the second *Carter* factor can be satisfied when the alleged employer "was involved in the assignment of [workers] to some work locations" and "gave managerial staff instructions for running the business." *Perez v. Escobar Constr., Inc*., 2024 U.S. App. LEXIS 18979, *7 (2d Cir. 2024) (citation omitted). Here the uncontroverted evidence is that Shahmuradyan visits the restaurant frequently, discusses its operations with the general manager at least every week, and has specifically instructed that manager to keep her apprised of the restaurant's payroll and any payroll issues. CSF ¶¶ 15-19, 30; *see also* Shamuradyan Dep. 70:9-71:20; 82:13-20 (When Shahmuradyan first hired Paliko, she instructed him to "[t]o hire people, to oversee everything that's happening on the floor, bartenders, bussers, make sure that everybody has the right schedule. Everything that needs to be – operational side").

Similarly, Defendants admit that Petrosyants "frequently discusses staffing issues with OLB's managers to ensure the restaurant schedules correct number of employees scheduled to work each shift." CSF ¶ 54. Defendants also admit that Petrosyants frequently meets with the restaurant's general manager to discuss service and ensure that the service staff are performing their jobs consistently; and that he attends pre-shift meetings at which he discusses proper and consistent service with the front-of-house staff themselves. SMF ¶¶ 46-47, 50-53. Finally, Defendants admit that, when Petrosyants is in the restaurant, he pays close attention to how the service staff perform their jobs and reports any deficiencies to the manager, who he expects to take action. SMF ¶ 48-49. Such supervision easily satisfies the second *Carter* factor.

Defendants misstate that the third *Carter* factor looks to whether individual was involved in "setting schedules and rates of pay," Ds' MOL at 17. However, the Second Circuit has provided

that this factor simply asks the Court to consider whether the individual defendant "determined the rate and method of payment." *Irizarry*, 722 F.3d at 115. In this analysis, the Second Circuit has "focused on the fact that the defendant controlled the company financially," including keeping track of its finances and payroll expenses. *Id.* (quotation marks omitted).

Here, Defendants do not deny that Shahmuradyan has financial control over the restaurant and repeatedly emphasized during her deposition that she regularly kept track of the restaurant's payroll. CSF ¶ 9, 16. Defendants also admit that Petrosyants is responsible for ensuring that employees are paid at the restaurant and "paid properly." *Id*. ¶ 42. In opposition, Defendants merely focus on the role that the restaurant's general manager played. Ds' MOL 17-18. However, it is self-evident that the fact that general managers were involved in employees' pay does mean that the individual Defendants' continued to exercise financial control and involvement in pay as well. Accordingly, this factor is easily satisfied.

In terms of the fourth factor, Defendants do not contest that only three individuals have access to Plaintiffs' payroll records, and that two of those people are the Individual Defendants.

Finally, in *Irizarry*, the Second Circuit emphasized that the fact that the individual defendant "satisfied two of the *Carter* factors in ways that [were] particularly emphasized in [*Herman*]: the hiring of managerial employees, and overall financial control of the company," meant that he "possessed, and exercised, operational control over the plaintiffs' employment" and was thus, on the totality of the circumstances, an employer under the FLSA and NYLL. Here, there is no dispute that Shamuradyan and Petrosyants hired managerial employees and exercised financial control over the company (together with a host of other ways in which they oversee the restaurant) and thus the Court should find them to be employers under the FLSA and NYLL.

11

## II. CONCLUSION

For the reasons stated herein and in Plaintiffs' moving papers, the Court should grant the motion for partial summary judgment.

Dated: New York, New York
      February 11, 2026                       **JOSEPH & KIRSCHENBAUM LLP**

                                                    /s/ *Josef Nussbaum*
                                         Maimon Kirschenbaum
                                         Lucas C. Buzzard
                                         Josef Nussbaum
                                         45 Broadway, Suite 320
                                         New York, NY 10004
                                         (212) 688-5640
                                         (212) 981-9587 (fax)

                                         *Attorneys for Plaintiffs and the putative Class*

## CERTIFICATE OF COMPLIANCE

      This brief complies with the word count limitation of Local Civil Rule 7.1(c) because it contains 3,480 words, not including the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates.

Dated: New York, New York
       February 11, 2026                                 By:     s/ *Josef Nussbaum*
                                                                                   Josef Nussbaum