UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KATHERINE FERNANDEZ, on behalf of herself and others similarly situated,

   Plaintiff,

v.

BULLDOZER HOSPITALITY GROUP, INC., d/b/a OSTERIA LA BAIA, ROBERT PETROSYANTS and MARIANNA SHAHMURADYAN,

   Defendants.

No.: 25-cv-04490 (AS)

   Plaintiffs, by and through their attorneys, Joseph & Kirschenbaum LLP, respectfully submit the following response to Defendants "Supplemental Statement Of Undisputed Facts In Support Of Their Motion For Summary Judgment Against Plaintiff" (ECF No. 86) that was submitted in opposition to Plaintiffs' motion for partial summary judgment, as follows:.

  1. Despite Plaintiff Javier Molina's ("Molina") insistence that he began working at Osteria in or around April through June of 2024, his pay stubs reveal that he worked at Osteria starting in late July of 2024, for around two months, and ultimately left in or around August of 2024. Molina Dep. 27:5-18; 112:12-113:15; 120:12-121:20; 142:11-19.

  **Response:** Admit.

  2. Molina was hired by Janos Paliko ("Paliko"), who told him to come in for training the next day. Molina Dep. 53:16-23.

  **Response:** Admit. By way of further response, Plaintiffs states that Molina was also hired by Perez. Molina Dep. at 52:19-22 ("Q. Who was that manager that went on vacation and never returned? A. Janos is the one that left. The one that hired me is Julio. I think his last name is Perez.").

  3. Molina worked exclusively as a busser. Molina Dep. 11:2-5; 110:9-12.

1

**Response:** Admit.

4. Additionally, Molina received a pay stub each week, electronically via the app Toast, containing information about the tip credit, identifying his minimum wage per hour, the tipped minimum wage he was paid, the difference between the two identified as the tip credit amount, the amount of tips he made, and if he did not receive sufficient tips to make up the difference between the tipped wage and the minimum wage the tip makeup amount to pay him the full minimum wage he was entitled to. Molina Dep. 34:17-35:5; 37:10-19; 60:6-25 (Molina also received a paper check); 63:18-22; 69:5-9; 87:16-20; 102:4-103:6; 107:10-20; 110:13-130:3; 132:7-133:8.

**Response**: Admit that Molina received a paystub but deny that the evidence cited here supports the claim that the paystub "contain[ed] information about the tip credit, identifying his minimum wage per hour, the tipped minimum wage he was paid, the difference between the two identified as the tip credit amount, the amount of tips he made, and if he did not receive sufficient tips to make up the difference between the tipped wage and the minimum wage the tip makeup amount to pay him the full minimum wage he was entitled to[,]" and thus that portion of Paragraph 4 should be stricken.

5. Molina provided his email address on the touch screen to be placed into the Toast system, so that he could have access to it via the phone application. Molina Dep. 59:4-7; 87:6-20.

**Response:** Admit.

6. Toast included Molina's schedule, pay stubs, and other employment-related documents. Molina Dep. 87:6-20.

**Response:** Admit.

7. Molina received an employee ID number, which was reflected on his pay stub.

Molina Dep. 112:3-11.

**Response:** Admit.

8. Nonetheless, Molina had been verbally informed about his pay stub by a coworker at Osteria. Molina Dep. 64:23-66:2.

**Response:** Admit.

9. Additionally, Molina understood the concept of tipped minimum wage from his previous jobs at other restaurants. Molina Dep. 47:8-12; 70:17-71:3; 77:16-25; 79:24-80:9.

**Response:** Admit.

10. Molina admits to using the Toast application to view his paystub on at least one occasion. Molina Dep. 87:11-20.

**Response:** Admit.

11. Molina admits to receiving a check for every week in which he worked at Osteria. Molina Dep. 58:17-18.

**Response:** Admit.

12. Moreover, Molina received an LS54 form, though he denies it. Molina Dep. 43:25-44:22.

**Response**: The statement in Paragraph 12 is nonsensical and thus does not call for a response. In any event, Molina denies that he received an LS45 form at Osteria, and the evidence cited by Defendants in support of Paragraph 12 indicates that that is what Molina testified to. (Molina Dep. at 44:18-22 ("Q. Have you ever seen this document before? A. No. Not at all. Q. You never filled this out at Osteria La Baia? 22 A. No. Nothing of that. No."))

13. Julio Perez ("Perez") was one of the first people at Osteria to speak with Molina;

but Molina was hired by Paliko. Molina Dep. 46:16-47:17; 48:18-20; 53:16-23; 54:12-22; 55:9-15.

**Response**:   Admit that Perez was one of the first people at Osteria to speak with Molina, but deny that only Paliko hired Molina. By way of further response, Plaintiffs states that Molina was also hired by Perez. Molina Dep. at 52:19-22 ("Q. Who was that manager that went on vacation and never returned? A. Janos is the one that left. The one that hired me is Julio. I think his last name is Perez.").

14.   Notably, Paliko was absent for nearly the entire, approximately two-month, duration of Molina's time working at Osteria. Molina Dep. 27:13-15; 53:2-8; 63:6-10.

**Response**:   Admit

15.   In Paliko's absence, Perez assisted other employees in a limited capacity, including by leading the team meetings, informing employees of what sections Paliko had assigned them to, opening and closing the restaurant, relaying the schedule via Toast, participating in the nightly tipping out process, asking employees to help clean tables, set tables, and assist in other sections. Molina Dep. 54:2-8; 67:4-13; 82:18-85:24; 86:17-87:15; 88:7-15.

**Response:**   Admit that Perez performed the duties described in Paragraph 15.

16.   Perez's authority during this time remained limited; notably, Perez was unable to help resolve Molina's alleged problem with his check, because only Paliko was authorized to do that; and Perez did not assign employees to their stations. Molina Dep. 50:13-24 ("Julio told me to wait because the other manager is on vacation"); 81:20-82:17.

**Response:**   Deny. The statements in Paragraph 16 are not supported by the evidence cited therein.

17.   Molina never saw Perez fire anyone, hire anyone, or inform any employees of how

4

much they would be paid. Molina Dep. 85:25-86:16.

**Response:** Admit.

18. When Molina worked at Osteria in 2024, he was paid $16.00 per hour, plus tips. Molina Dep. 113:16-118:9.

**Response**: Deny. The statements in Paragraph 16 are not supported by the evidence cited therein.

19. Molina testified that, when he worked forty (40) hours per week, his gross pay might be $1200, with $400 taken out in taxes, and net pay being $800; $300 of that might be from hours worked, and the remaining would be from tips. Molina Dep. 96:3-97:2.

**Response:** Admit.

20. In his first pay stub dated July 29, 2024, for a week in which he worked less than five (5) hours, Molina received weekly gross pay in the amount of $71.20. Molina Dep. 112:7-11; 120:12-121:20.

**Response**: **Admit.**

21. In another weekly pay stub in which Molina worked 34.13 hours, he received gross pay in the amount of $1,190.90; Molina admits his pay stub says this, but denies ever earning this. Molina Dep. 122:6-124:16.

**Response:** Admit.

22. Molina admits that pay stub 80 shows that his tip wage was $10.65 per hour, his tip credit was $5.35 per hour, and that this adds up to $16.00 per hour. Molina Dep. 124:19-126:3. Molina admits to receiving tips from the tip pool, which were divided at the end of every night. Molina Dep. 74:2-75:5.

**Response:** Admit.

5

23. Notably, Molina quit his employment with Osteria, after Perez had informed Molina of the option to leave, following a disagreement. Molina Dep. 61:2-8.

**Response:** Admit.

24. Molina is a serial litigant who was represented by his current counsel in a prior class action wage-and-hour lawsuit against his former employer. Molina Dep. 7:14-8:20; see also Molina v. SBX Restaurant Corp., *et al*.; Case No.: 1:25-cv-892 (KPF), ECF Docket Entry 1.

**Response:** Deny. The evidence cited by Defendants does not support the statements in Paragraph 24.

Dated: New York, New York
      February 11, 2026             **JOSEPH & KIRSCHENBAUM LLP**

                                        /s/ *Josef Nussbaum*
                                    Maimon Kirschenbaum
                                    Lucas C. Buzzard
                                    Josef Nussbaum
                                    45 Broadway, Suite 320
                                    New York, NY 10004
                                    (212) 688-5640
                                    (212) 981-9587 (fax)

                                    *Attorneys for Plaintiffs and the putative Class*