UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KATHERINE FERNANDEZ, on behalf of herself and others similarly situated,

Plaintiff,

-against-

BULLDOZER HOSPITALITY GROUP, INC., d/b/a OSTERIA LA BAIA, ROBERT PETROSYANTS, and MARIANNA SHAHMURADYAN,

Defendants.

25-cv-4490 (AS)

OPINION AND ORDER

ARUN SUBRAMANIAN, United States District Judge:

**BACKGROUND**

The restaurant Osteria La Baia ("OLB") is a "New York City hotspot" owned and operated by defendant Bulldozer Hospitality Group, Inc. ("Bulldozer"). Dkt. 15 ¶¶ 1, 7. Since OLB opened in 2022, defendant Marianna Shahmuradyan has been and continues to be its sole owner. Dkt. 86 ¶ 3. Shahmuradyan's husband, defendant Robert Petrosyants, is its director of operations. *Id.* ¶ 4. The restaurant also employs Janos Paliko as its General Manager. *Id.* ¶ 5.

Plaintiff Katherine Fernandez began working at OLB in October 2022 and served as a busser and runner, while opt-in plaintiff Adrian Montor-Teran worked as a busboy from June to December 2024. Dkt. 89 ¶¶ 12, 14, 15. Fernandez and Teran brought this action against Bulldozer, Shahmuradyan, and Petrosyants, alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Plaintiffs allege that defendants included Julio Perez, a manager, in the tip pool, in violation of FLSA § 203(m)(2)(B) and NYLL § 196-d; unlawfully retained service charges in violation of NYLL § 196-d; took a tip credit without providing sufficient written notice, in violation of NYLL § 652 and N.Y. Comp. Codes R. & Regs. ("NYCCRR") tit. 12, §§ 146-1.3 and 146-2.2; and failed to provide the written wage notices required under NYLL § 195(1)(a).

After discovery, defendants filed a motion for summary judgment, and plaintiffs filed a motion for partial summary judgment on their claims that defendants unlawfully took a tip credit and failed to provide sufficient written notices under NYLL § 195(1)(a). Plaintiffs have also moved for collective certification under 29 U.S.C. § 216(b) for their FLSA claim, and class certification under Federal Rule of Civil Procedure 23 for their NYLL claims.

## LEGAL STANDARDS

On a motion for summary judgment, a movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a "genuine issue of material fact" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The movant is "initially responsible for demonstrating the absence of a genuine issue of material fact." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). Once the movant meets this burden, "the onus shifts to the party resisting summary judgment to present evidence sufficient to satisfy every element of the claim," which requires going "beyond the pleadings" and designating "specific facts showing that there is a genuine issue for trial." *Id.* (cleaned up).

As for class certification, "[t]he party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010). And "[t]o maintain a collective action under the FLSA, a named plaintiff bears the burden of showing that others are 'similarly situated.'" *Alonso v. Uncle Jack's Steakhouse, Inc.*, 648 F. Supp. 2d 484, 487 (S.D.N.Y. 2009).

## DISCUSSION

Plaintiffs' FLSA claim proceeds to trial, as do their claims that employees were unlawfully required to share tips with a manager under NYLL § 196-d, and that defendants unlawfully took a tip credit without providing sufficient written notice under NYCCRR tit. 12, §§ 146-1.3 and 146-2.2. The jury will also consider the question of individual liability for Shahmuradyan and Petrosyants. Plaintiffs' claim under NYLL § 196-d that defendants unlawfully retained service charges is dismissed, as is their claim for recordkeeping violations under NYLL § 195(1). And plaintiffs' motion to certify a collective action for their FLSA claim and a class action for their surviving NYLL claims is granted.

### I. Plaintiffs' FLSA claim survives

Plaintiffs allege that defendants "knowingly retained/misappropriated gratuities belonging to [Fernandez] and the FLSA Collective Plaintiffs." Dkt. 15 ¶ 41. In their opposition to defendants' motion for summary judgment, plaintiffs clarified that their "FLSA claim is premised only on Defendants' illegal deductions from gratuities caused by forcing Plaintiffs to share tips with a managerial employee, Julio Perez." Dkt. 88 at 3–4; *see* Dkt. 15 ¶¶ 27–28. Defendants move for summary judgment, arguing that Perez was not a manager within the meaning of the statute, so there was no issue with him keeping tips. *See* Dkt. 71 at 11.

Section 203(m) of the FLSA provides that "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips." 29 U.S.C. § 203(m)(2)(B). Neither "managers" nor "supervisors" is defined under the statute, and both sides agree that the U.S. Department of Labor's ("DOL") regulations fill

the statutory gap. *See* Dkt. 71 at 10; Dkt. 88 at 4. Under 29 C.F.R. § 531.52(b)(2), the term "manager" or "supervisor" is interpreted by reference to the definition of an "executive employee" in 29 C.F.R. § 541.100(a)(2)–(4), which means an employee (1) "whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof," (2) "who customarily and regularly directs the work of two or more other employees," and (3) "who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight."

"Consideration of these factors is a highly fact-intensive inquiry, to be made on a case-by-case basis in light of the totality of the circumstances." *Martinez v. Hilton Hotels Corp.*, 930 F. Supp. 2d 508, 523 (S.D.N.Y. 2013) (quoting *Clougher v. Home Depot U.S.A., Inc.*, 696 F. Supp. 2d 285, 290 (E.D.N.Y. 2010)). As a result, "[e]ven where there has been full discovery, courts are often reluctant to grant summary judgment" on this question. *Carhuapoma v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 2013 WL 1285295, at *7 (S.D.N.Y. Mar. 29, 2013). Because plaintiffs' evidence is enough to create a genuine dispute over whether Perez was a manager, the motion for summary judgment on the FLSA claim is denied.

### A. Whether Perez's primary duty was management is genuinely disputed

The DOL regulations provide that management "includes, but is not limited to," activities like "interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; . . . appraising employees' productivity and efficiency; . . . handling employee complaints and grievances; disciplining employees; planning the work; . . . [and] apportioning the work among the employees." 29 C.F.R. § 541.102. To qualify as a manager, management must have been Perez's "primary duty," meaning the "principal, main, major or most important duty" he performed. *Id*. § 541.700(a). Relevant factors include the "relative importance" of his management duties compared to his other duties, the "amount of time [he] spent performing" management duties, his "relative freedom from direct supervision," and "the relationship between [Perez's] salary and the wages paid to other employees." *Id*.

Plaintiffs have introduced admissible evidence that Perez interviewed and hired new employees, *see* Dkt. 89 ¶¶ 156–161, Dkt. 91 ¶¶ 6–10; made employee scheduling decisions, *see* Dkt. 91 ¶¶ 28–35; disciplined employees by reprimanding them, issuing written warnings, cutting their hours, and threatening termination, *see id.* ¶¶ 23–27, 38–39; was the first point of contact for employee complaints, *see id.* ¶¶ 49–51; recommended employees for promotion, *see id.* ¶¶ 47–48; and directed the employees' daily work by telling them what stations to go to and what tasks to complete ("clean that table," "I need a table for four," "[b]ring water to that table"), *see* Dkt. 90–6 at 83–85.

In response, defendants argue that Perez was essentially a middleman who merely implemented decisions ultimately made by Paliko, OLB's General Manager. *See* Dkt. 100 at 3–4. But some of plaintiffs' evidence explicitly indicates that Perez acted without deferring to any higher authority, *see, e.g.*, Dkt. 91 ¶ 35 ("Mr. Perez had and exercised the authority to grant or deny

requests relating to scheduling on the spot and did not need to first get Mr. Paliko's permission . . . ."), and that Paliko was "off one or two days each week," so Perez was at times the "highest ranking management employee present in the restaurant," *id.* ¶¶ 10, 60. It's also not clear—and defendants cite no authority suggesting—that implementing the directives of a superior categorically precludes activities from being "management."

Defendants have attempted to relabel Perez's activities as "senior-employee tasks" as opposed to management, Dkt. 100 at 3, but "[s]electing which of these different depictions of [Perez's] responsibilities to credit is a task for the jury, not the Court." *Martinez*, 930 F. Supp. 2d at 525. Drawing all reasonable inferences in plaintiffs' favor, how Perez spent his working time and whether his primary duty was management are questions over which there is a genuine dispute.

### B. Whether Perez customarily and regularly directed the work of at least two other employees is genuinely disputed

Plaintiffs introduced evidence that Perez regularly directed the work of OLB's more than 50 front-of-house employees. *See, e.g.*, Dkt. 89 ¶ 7 ("There are more than fifty (50) tipped, front-of-house employees at Osteria."); Dkt. 96-6 at 99–100 (affirming that Perez "oversees the floor" and "oversees the service," and on the days that Paliko is absent, Perez "decides which section [employees are] going to work at" and "runs the pre-shift meeting"); Dkt. 90-6 at 83–85 (affirming Perez "directed people to go to specific stations," "directed everything," and would give instructions like "clean that table," "[b]ring water to that table," and "[g]o help on the other station"). Defendants even concede that "[t]he record reflects that Perez gave some direction as to service." Dkt. 100 at 4. Should the jury credit plaintiffs' evidence as to Perez's responsibilities, it could reasonably resolve this factor in plaintiffs' favor.

### C. Whether Perez had the authority to hire or fire is genuinely disputed

Finally, the parties dispute whether Perez had authority to hire or fire other employees, or whether his recommendations were "given particular weight." 29 C.F.R. § 541.100(a)(4). Plaintiffs present evidence that without any other managers present, Perez interviewed new employees who then started working immediately, *see* Dkt. 91 ¶¶ 8–10, and that after Perez told a busboy to "get out," the busboy was not seen at OLB again, *see id.* ¶¶ 13–15. This is more than enough to create a genuine dispute of fact over whether Perez had the authority to hire and fire.

Because there is a genuine dispute as to all three factors relevant to determining whether Perez was a manager, defendants' motion for summary judgment is denied as to plaintiffs' Section 203(m) claim.

## II. Plaintiffs' motion for collective certification on their FLSA claim is granted

Under the FLSA, "similarly situated" employees may bring a collective action to recover unpaid wages. 29 U.S.C. § 216(b). To determine whether named plaintiffs and potential plaintiffs are similarly situated, "courts require that there be a factual nexus between the claims of the named plaintiff and those [of the potential opt-in plaintiffs]." *Jeong Woo Kim v. 511 E. 5th St., LLC*, 985

F. Supp. 2d 439, 445 (S.D.N.Y. 2013) (cleaned up). "The relevant issue is not whether the named plaintiff and potential opt-in plaintiffs are identical in all respects, but, rather, whether they all allegedly were subject to a common employment policy that violated the FLSA." *Id*.

Plaintiffs allege that defendants included a managerial employee in the tip pool. That's a "common employment policy" that affected all participants in the tip pool. *See Uddin v. O'Brien Rest. Holding Co., LLC*, 2016 WL 11779533, at *3 (S.D.N.Y. Nov. 22, 2016) ("Plaintiffs' proposed collective [of tipped non-manager employees] is similarly situated by definition, since all tipped employees were required to participate in the pool. And because any distribution from the pool affects all participants, the members of the collective must have been subject to a common policy or practice if any tips were improperly distributed from the pool."). Courts "routinely certify FLSA collectives on the basis of similar allegations." *Id*. (collecting cases).

Defendants respond that plaintiffs failed to present declarations showing other potential opt-in plaintiffs were "not paid the correct wages." Dkt. 94 at 31–32. But "[p]laintiffs need not present evidence from each and every opt-in Plaintiff so long as they can show that Defendants engaged in a unified policy, plan, or scheme of FLSA violations." *Gayle v. Harry's Nurses Registry, Inc.*, 2012 WL 686860, at *5 (E.D.N.Y. Mar. 2, 2012), *aff'd*, 594 F. App'x 714 (2d Cir. 2014) (internal quotation marks omitted). Including a manager in a tip pool is a FLSA violation that affects all participants in that tip pool, and whether defendants did so is an issue that should only be decided once. The Court therefore certifies a collective of non-managerial employees who participated in the tip pool at OLB alongside Perez.

## III. Plaintiffs' claim under NYLL § 196-d survives in part

The NYLL prohibits an "employer or his agent" from retaining any part of an employee's "gratuity or of any charge purported to be a gratuity." NYLL § 196-d. Plaintiffs allege that defendants violated this provision by "(1) forcing them to share tips with managers, and (2) retaining service charges they charged customer[s] which were, in fact, tips." Dkt. 15 ¶ 9. Defendants moved for summary judgment. Summary judgment is denied as to the claim that plaintiffs were forced to share tips with managers and granted as to the claim that defendants unlawfully retained service charges.

### A. Whether defendants forced plaintiffs to share tips with a "manager" is genuinely disputed

Like Section 203(m) of the FLSA, NYLL § 196-d "bars employers from requiring tipped employees to share tips with . . . employees who are *managers or agents* of the employer." *Barenboim v. Starbucks Corp.*, 698 F.3d 104, 109 (2d Cir. 2012) (emphasis added) (cleaned up). Plaintiffs' claim once again turns on the allegation that Perez, a manager, was included in the tip pool, and defendants counter that Perez was a "senior service employee" who was entitled to share in tips, Dkt. 100 at 4.

Under NYLL § 196-d, an employee "whose personal service to patrons is a principal or regular part of his or her duties may participate in an employer-mandated tip-allocation arrangement . . . even if that employee possesses limited supervisory responsibilities." *Barenboim v. Starbucks Corp.*, 995 N.E.2d 153, 160 (N.Y. 2013). However, "an employee granted *meaningful authority or control over subordinates* can no longer be considered similar to waiters and busboys within the meaning of section 196-d and, consequently, is not eligible to participate in a tip pool." *Id.* (emphasis added).

For the same reasons that there is a genuine dispute over whether Perez was a "manager" or "supervisor" under the FLSA, there is a genuine dispute over whether Perez had "meaningful authority or control over subordinates." *Id.* Plaintiffs' evidence that Perez had the authority to hire and fire employees, control their schedules, and direct their activities could lead a rational jury to conclude that Perez was precluded from sharing tips under NYLL § 196-d.

### B. Defendants were entitled to retain service charges because they clearly weren't tips

For special events, OLB charges patrons a mandatory 3% service charge together with an automatic gratuity of 18%. Dkt. 72 ¶ 31. Plaintiffs allege that the 3% service charge was "purported to be [a] gratuit[y]" and therefore should have been—but was not—distributed to food-service staff. Dkt. 15 ¶¶ 29–33. Defendants argue that the event contracts provided to patrons list the 3% service charge separately from and next to the 18% gratuity, so it's "common sense" that the service charge is not a gratuity. Dkt. 71 at 21.

Defendants are right: On the record presented, the 3% service charge was not a "charge purported to be a gratuity" that must be distributed to service employees under Section 196-d. Plaintiffs make no effort to rebut defendants' evidence that the 3% service charge appears separately from the 18% gratuity on the event contracts presented to patrons, *see* Dkt. 76-2, meaning no "reasonable customer would believe that the service charge was a gratuity." *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 332 (S.D.N.Y. 2010) (finding that a service charge was not a "charge purported to be a gratuity" where a contract "clearly delineate[d] the 'service charge' from the 'gratuity' in the large print body of the contract"). Defendants' motion for summary judgment is therefore granted as to the allegation that they unlawfully retained service charges.

## IV. Plaintiffs' NYLL § 195(1)(a) claim is dismissed for lack of standing

An employer must "provide his or her employees, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, a notice containing" various pieces of information specified by statute, including "the rate or rates of pay; . . . allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; . . . any 'doing business as' names used by the employer; the physical address of the employer's main office; . . . the telephone number of the employer; plus such other information as the commissioner deems material and necessary." NYLL § 195(1)(a). Plaintiffs allege that defendants failed to provide such notice, and both parties filed cross motions for summary judgment.

Defendants are correct that plaintiffs lack standing to bring this claim. "Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021). "[C]ourts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, 2023 WL 2388728, at *8 (S.D.N.Y. Mar. 7, 2023) (collecting cases).

Here, plaintiffs have not alleged that defendants' alleged notice violations lead to any "concrete, downstream consequences" that injured them. *Id.* They do not allege that they were underpaid or that notice under § 195(1)(a) would have helped them catch any such violation. *Cf. Van Duser v. Tozzer Ltd.*, 2024 WL 4635495, at *5 (S.D.N.Y. Oct. 31, 2024) (holding plaintiffs had standing to bring NYLL § 195 wage statement claim when they alleged that "if they had been provided with the required information, they would have been able to doublecheck what they were paid and avoid underpayment"). Again, plaintiffs never allege that they or any potential class members were ever paid less than the tipped statutory minimum. In the absence of any such concrete downstream injury, plaintiffs' NYLL § 195(1)(a) claim is dismissed without prejudice for lack of standing.

## V. Plaintiffs' New York minimum-wage claim survives and neither party is entitled to summary judgment

Plaintiffs allege that defendants violated New York's minimum wage law, *see* NYLL § 652, by paying them pursuant to a tip credit without providing the required written notice, *see* NYCRR tit. 12 §§ 146-1.3, 146-2.2. Dkt. 67 at 6. Plaintiffs and defendants filed cross motions for summary judgment.

### A. The Court will exercise supplemental jurisdiction

As a preliminary matter, the Court will exercise supplemental jurisdiction to reach this claim. Supplemental jurisdiction extends to state law claims that are "so related" to federal claims that they "form part of the same case or controversy." 28 U.S.C. § 1367(a). Claims "form part of the same case or controversy" if they "derive from a common nucleus of operative fact." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) (quoting *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004)).

Defendants urge the Court to decline supplemental jurisdiction over this claim because it "ha[s] nothing to do with Plaintiffs' FLSA claim concerning allegedly unlawfully withheld tips." Dkt. 71 at 17. But "NYLL and FLSA actions clearly derive from . . . a common nucleus of operative facts" when "they arise out of the same compensation policies and practices." *Shahriar*, 659 F.3d at 245. The NYLL claims need not have a direct FLSA analogue, so long as they all "relate to the way, amount, and frequency with which Defendants paid Plaintiffs for the same work pursuant to . . . common workplace conditions." *Velez v. MedRite, LLC*, 2025 WL 2650137, at *6 (S.D.N.Y. Sept. 15, 2025) (holding state pay-frequency claim and federal wage and overtime claims were

part of the same case or controversy); *see also, e.g.*, *Isayeva v. Diamond Braces*, 2024 WL 1053349, at *12–13 (S.D.N.Y. Mar. 11, 2024) (holding NYLL untimely payment and unpaid PTO claims were part of the same common nucleus of operative fact as FLSA unpaid overtime and retaliation claims).

Defendants' backline argument that the Court should exercise its discretion to decline supplemental jurisdiction under 28 U.S.C. § 1367(c) also fails. None of the circumstances identified in 28 U.S.C. § 1367(c)(1)–(4) are present: Plaintiffs' claim raises no novel or complex issues of state law, the state claim does not "substantially predominate[]," the federal FLSA claim survives, and there are no other "compelling reasons for declining jurisdiction."

The Court therefore reaches the merits of plaintiffs' NYLL minimum-wage claim. On the merits, a genuine dispute exists over whether defendants provided sufficient notice of the tip credit. Both plaintiff and defendants' motions for summary judgment are therefore denied.

### B. Written notice is required under Section 146-2.2, but whether defendants provided such notice is genuinely disputed

The NYLL sets a minimum wage but provides that "[a]n employer may take a credit towards the basic minimum hourly rate if a service employee or food service worker receives enough tips and if the employee has been notified of the tip credit as required in section 146-2.2 of this Part." NYCCRR tit. 12, § 146-1.3. Section 146-2.2, in turn, requires that "[p]rior to the start of employment, an employer shall give each employee *written notice* of the employee's regular hourly pay rate, overtime hourly pay rate, *the amount of tip credit, if any, to be taken from the basic minimum hourly rate*, and the regular payday." *Id.* § 146-2.2(a) (emphasis added). "The notice shall also state that extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate." *Id.* And an acknowledgement that the notice was received must be signed by the employee and kept on file for six years. *Id.* § 146-2.2(c). "An employer that fails to comply with the notice requirements under the NYLL may not utilize the tip credit to satisfy its minimum wage and overtime obligations." *Hernandez v. Jrpac Inc.*, 2016 WL 3248493, at *25 (S.D.N.Y. June 9, 2016).

Defendants first argue that despite the clear text of Sections 146-1.3 and 146-2.2, no written notice is required. They rely on an opinion letter issued in 2015 by the New York State Department of Labor ("NYSDOL"), stating that "a food service employer is eligible to claim the tip credit even when they fail to provide written notice . . . provided that the employer can demonstrate compliance with all of the other minimum wage requirements and that their employees understood the manner in which the employer took the tip credit." Dkt. 71 at 19–20 (emphasis omitted) (quoting Dkt. 76-4 at 2). But as other courts have concluded, the letter contradicts the plain language of the regulations and warrants no reliance. *See, e.g.*, *Garcia v. Saigon Mkt. LLC*, 2019 WL 4640260, at *9 (S.D.N.Y. Sept. 24, 2019) (rejecting a substantially similar letter); *Mogollan v. La Abundancia Bakery & Rest. Inc.*, 2020 WL 8261571, at *6 n.9 (S.D.N.Y. Sept. 30, 2020), *report and recommendation adopted in part, rejected in part*, 2021 WL 1226923 (S.D.N.Y. Mar. 31, 2021) (same).

Moving to the facts, plaintiffs argue that defendants failed to produce any written wage notices providing notice of the tip credit. *See* Dkt. 67 at 8–9; Dkt. 86 ¶¶ 62–71. Defendants counter that they did give employees written wage notices; they just can't find the documents now. *See, e.g.*, Dkt. 87 at 12. In support, they point to Paliko's testimony that he provided the required wage notices at hiring, and employees signed acknowledgments that OLB keeps. *See* Dkt. 76-8 at 38:24–39:21 ("All the time when I do the hiring, I . . . give them the . . . notice of the pay rate and everything" and employees "sign it"). They also cite Teran's admission that he had previously filled out an acknowledgment of pay rate and payday form from the NYSDOL. *See* Dkt. 76-7 at 95:5–12. Finally, defendants argue that plaintiffs' paystubs provided them with continuous written notice of the tip credit, and in fact informed them of their hourly rate, hourly tip credit amount, total tip credit allowed and deducted, and any "tip makeup" that was due if their tips and wages did not meet the minimum wage. *See* Dkts. 76-1; 76-3 (Fernandez's and Teran's paystubs).[1]

Defendants bear the burden of proving compliance with all of Section 146-2.2's notice requirements, *see* NYCCRR tit. 12, § 146-2.2(d), and the lack of any wage notices or receipts in the evidentiary record is compelling. Still, Paliko's and Teran's testimony, arguably corroborated by the employees' paystubs, give rise to a genuine issue of material fact as to whether written notices were given. And while it is true that Section 146.2.2(c) requires not only written notice, but for employers to keep employees' acknowledgements of receipt on file for six years, plaintiffs have cited no authority that violating that record-keeping requirement—as OLB apparently has—triggers automatic liability under the NYLL. Section 1.3 doesn't require compliance with all of Section 2.2's terms; it authorizes an employer to take a tip credit as long as "the employee has been notified of the tip credit as required in section 146-2.2 of this Part." As to those notification requirements, there is a disputed issue of fact, however weak defendants' case may be. For these reasons, plaintiffs and defendants' cross motions for summary judgment on this claim are denied.

---

[1] Defendants also suggest that a poster pinned to a billboard in the restaurant provided written notice of the tip credit, *see* Dkt. 100 at 6, but the poster clearly does not meet the notice requirements of Section 146-2.2. The poster says in large print that the federal minimum wage is $7.25 per hour beginning July 24, 2009, and further states that "[e]mployers of 'tipped employees' . . . may claim a partial wage credit based on tips received by their employees," and "[i]f an employee's tips combined with the employer's cash wage of at least $2.13 per hour do not equal the minimum hourly wage, the employer must make up the difference." Dkt. 74-1. But it does not state, as Section 146-2.2(a) requires, that "extra pay is required if tips are insufficient to bring the employee up to" the minimum hourly rate under New York law. The poster states only that extra pay is required to bring employees up to the *federal* minimum wage, which is significantly lower than New York's. *Compare* 29 U.S.C. § 206(a), *with* NYLL § 652. Indeed, the poster does not even inform employees that OLB intended to take a tip credit, stating only that employers generally may take tip credits. "Courts in the Second Circuit have found such notice to be insufficient." *Galvez v. 800 Ginza Sushi Inc.*, 2022 WL 748286, at *11 (S.D.N.Y. Mar. 11, 2022); *see also Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 289 (S.D.N.Y. 2011) ("A generic government poster could inform employees that minimum wage obligations exist, but could not possibly inform employees that their employers intend to take the tip credit with respect to their salary.").

## VI. Class certification is granted as to plaintiffs' surviving claims

Plaintiffs seek to certify a class action on their state-law claims "on behalf of all food-service employees (including servers, runners, bussers and bartenders) who worked at Osteria La Baia restaurant in Manhattan at any time on or after November 15, 2021." Dkt. 61 at 1. As stated above, the Court dismisses plaintiffs' claim under NYLL § 195(1) and their claim under NYLL § 196-d as it relates to defendants' alleged retention of service charges. For plaintiffs' surviving state-law claims—the NYLL § 196-d claim as it relates to forced tip-sharing with an alleged manager and the claim that defendants took a tip credit without meeting the notice requirements of NYCCRR tit. 12, §§ 146-1.3, 146-2.2—the Court certifies plaintiffs' proposed class.

Federal Rule of Civil Procedure 23 provides for certification as a class action where plaintiffs satisfy the four prerequisites of Rule 23(a) and one of the three requirements of Rule 23(b). "The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." *Myers*, 624 F.3d at 547.

### A. Plaintiffs satisfy the Rule 23(a) prerequisites

Rule 23 requires that a proposed class action (1) be sufficiently numerous, (2) involve questions of law or fact common to the class, (3) involve class representatives whose claims are typical of those of the class, and (4) involve class representatives who adequately represent the interests of the class. *See* Fed. R. Civ. P. 23(a). Plaintiffs have satisfied these prerequisites.

#### 1. *Numerosity*

Under Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable." *Id.* "Impracticable does not mean impossible." *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993). "A leading treatise concludes, based on prevailing precedent, that the difficulty in joining as few as 40 class members should raise a presumption that joinder is impracticable." *Id.* at 936 (citing 1 Herbert B. Newberg, *Newberg on Class Actions: A Manual for Group Litigation at Federal and State Levels* § 3.05, at 141–42 (2d ed. 1985)).

Defendants' payroll records indicate that OLB has employed more than 200 tipped employees since 2021. Dkt. 62 ¶ 39. The Court therefore concludes it is more likely than not that numerosity is satisfied.

Defendants' argument that only two potential class members have thus far opted into the lawsuit is meritless, as neither a class action nor an FLSA collective action have yet been certified, and no notice of any class action or collective action has been issued.

#### 2. *Commonality*

Under Rule 23(a)(2), there must be "questions of law or fact common to the class," and a class-wide proceeding must have the capacity to "generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (cleaned up). "In wage cases, the commonality requirement is usually satisfied where the plaintiffs allege that defendants had a common policy or practice of unlawful labor practices." *Zivkovic v. Laura Christy LLC*, 329

F.R.D. 61, 69 (S.D.N.Y. 2018) (cleaned up). "Once a common question is identified, differences among the questions raised by individual members of the class will not defeat commonality." *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 371 (S.D.N.Y. 2007) (cleaned up).

On their surviving claims, plaintiffs plausibly allege that defendants implemented a "common policy or practice" of including Perez in the tip pool and of taking a tip credit without providing the requisite notice. *Zivkovic*, 329 F.R.D. at 69. "Whether Perez was a manager" and "whether defendants provided statutorily sufficient notice that they were taking a tip credit" are common questions with common answers that would drive the resolution of litigation.

*3. Typicality*

Under Rule 23(a)(3), "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class." "A plaintiff's claims are typical of the class members' claims where the plaintiff's and the class members' 'injuries derive from a unitary course of conduct by a single system.'" *Spicer*, 269 F.R.D. at 337 (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)). Typicality "does not require that the factual background of each named plaintiff's claim be identical to that of all class members," *id.* (quoting *Caridad v. Metro-N. Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999)), but "is satisfied when each member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability," *Barrows v. Becerra*, 24 F.4th 116, 131 (2d Cir. 2022) (quoting *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001)).

Here, each class member's claim "arises from the same course of events." *Id.* Defendants' compensation and tip policies, implemented at the same restaurant with respect to all its tipped employees, constitute a "unitary course of conduct by a single system." *Spicer*, 269 F.R.D. at 337. No class member is anticipated to make any unique legal arguments for defendants' liability.

*4. Adequacy*

Finally, under Rule 23(a)(4), the representative parties must "fairly and adequately protect the interests of the class." "Under Rule 23(a)(4), adequacy of representation is measured by two standards. First, class counsel must be 'qualified, experienced and generally able' to conduct the litigation. Second, the class members must not have interests that are 'antagonistic' to one another." *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992) (quoting *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968)).

On the first prong, defendants argue that plaintiffs' counsel is not an adequate representative because their firm once, about 20 years ago, faced a motion for sanctions for improperly bringing suit. Dkt. 94 at 22. But the court there declined to impose sanctions, *see Allen v. Trib. New York Newspaper Holdings, LLC*, 246 F.R.D. 465, 466–67 (S.D.N.Y. 2007), and the firm has since been appointed class counsel on numerous occasions, *see* Dkt. 109-1.

On the second prong, defendants argue that "Fernandez's separate claim against the restaurant for sexual harassment" and her "demonstrated disdain towards all men at the restaurant" create a conflict of interest with other potential class members. Dkt. 94 at 24. But the threat is plainly

exaggerated, and defendants' rhetoric outruns their evidence. They have not demonstrated that Fernandez's individual harassment claim against the restaurant creates any "antagonistic" interests with regard to the other class members, *In re Drexel*, 960 F.2d at 291, or that it would in any way affect her ability to "fairly and adequately protect the interests of the class" when it comes to the claims at issue in this case, Fed. R. Civ. P. 23(a)(4).

*5. Implied requirement of ascertainability*

"Although it is not explicitly spelled out in Rule 23, courts have added an implied requirement of ascertainability with respect to the class definition. Specifically, courts have required that a class be identifiable before it may be properly certified." *Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 125 (S.D.N.Y. 2014) (internal quotation marks and citations omitted). "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Stinson v. City of New York,* 282 F.R.D. 360, 367 (S.D.N.Y. 2012) (cleaned up). Here, the proposed class—food-service employees employed at OLB on or after November 15, 2021—can be easily identified from the payroll records that defendants produced.

**B. Plaintiffs satisfy Rule 23(b)(3)**

Plaintiffs move for class certification under Rule 23(b)(3), which is appropriate if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"The predominance requirement is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) (cleaned up). And "[c]ourts routinely hold that a class action is superior where . . . potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation, and many potential class members are currently employed by the defendants." *Schear*, 297 F.R.D. at 126 (collecting cases).

Here, the resolution of the questions identified as common above—whether Perez was a manager, and whether defendants took a tip credit without providing adequate notices—predominate over any individual questions. Indeed, defendants have not identified any "issues subject only to individualized proof" that would affect liability as to plaintiffs' surviving claims. *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d at 118 (cleaned up). And because all class members were subject to the same policies while employed by the same defendants, adjudicating the claims on a class-wide basis achieves "economies of time, effort, and expense, and promote[s] uniformity of decision." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (cleaned up).

Thus, plaintiffs' proposed class has met all the Rule 23 requirements and is certified as to their surviving NYLL claims.

### C. Plaintiffs' counsel is appointed class counsel

"Unless a statute provides otherwise, a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). In doing so, the court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class," and it may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id.* 23(g)(1)(A)-(B).

Plaintiffs' counsel, Joseph & Kirschenbaum LLP, have identified and investigated potential claims in this action, are experienced in class action wage and employment litigation, have litigated past cases involving NYLL claims, and have resources that they will commit to representing the class. *See* Dkt. 90 ¶¶ 40–49; Dkt. 109-1. The Court therefore finds that Joseph & Kirschenbaum LLP satisfies the requirements of Rule 23(g) and appoints it as class counsel.

## VII. The motions for summary judgment are denied as to individual liability for Shahmuradyan and Petrosyants

Individual defendants may be liable for FLSA and NYLL wage violations if they are "employers." Employment under the FLSA is a "flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013) (quoting *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141–142 (2d Cir. 2008)). The crux of the inquiry is whether an individual "exercises operational control over employees," meaning their "role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Id.* at 110. Put another way, "the overarching concern is whether the alleged employer possessed the power to control the workers in question, with an eye to the 'economic reality' presented by the facts of each case." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (citation omitted) (quoting *Goldberg v. Whitaker House Coop.,* 366 U.S. 28, 33 (1961)). "Under the 'economic reality' test, the relevant factors include "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)). And "[c]ourts have interpreted the definition of 'employer' under the [NYLL] coextensively with the definition used by the FLSA." *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 37 (E.D.N.Y. 2015) (cleaned up) (collecting cases).

Both plaintiffs and defendants move for summary judgment on the issue of individual liability for Shahmuradyan and Petrosyants. Plaintiffs have presented evidence that Shahmuradyan was undisputedly the sole owner of OLB, *see* Dkt. 86 ¶ 3; admitted at a deposition that she "oversee[s] everything" and has "ultimate authority over all operations," including the authority to hire and fire, *see* Dkt. 76-5 at 48:11, 69:24–70:8; reviews finances including payroll records, *see id*. at 16:20–25, 23:4–16; and hired managerial staff, *see, e.g.*, *id*. at 21:21. Defendants argue that Shahmuradyan had control only "in theory," and employment-related decisions were left fully in

practice to the discretion of Paliko, the general manager. *See, e.g.*, Dkt. 86 ¶ 8 (citing Dkt. 76-5 at 70:24–25 ("I don't decide certain things in the restaurant.")).

As for Petrosyants, plaintiffs allege that he is responsible for "oversee[ing] the operations" of OLB, including its vendors, payments, quality of food, and quality of service, *see* Dkt. 76-6 at 20:11–18; ensures employees are "paid properly," *see id*. at 21:7–18; has authority to hire and fire employees, *id.* at 23:13–25; meets with the general manager a "[f]ew times per week" to discuss operations, including front-of-house service, *see* Dkt. 86 ¶ 46–47 (alteration in original); and reports subpar service to the manager, *see id.* ¶ 49. Again, defendants counter that Petrosyants never actually makes employment-related decisions, and Paliko has full practical responsibility for hiring, firing, and directing employees. *See, e.g.*, Dkt. 86 ¶ 49; Dkt. 62-2 at 29–30 (testifying that Petrosyants has never participated in hiring or firing); Dkt. 76-5 at 30 (testifying that Paliko decides staffing).

Finding evidence in the record to support a judgment either way on this fact-intensive issue, the Court denies both plaintiff and defendants' motions for summary judgment. *See Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 393 (E.D.N.Y. 2012) ("The question of whether a defendant is an employer under the FLSA is a mixed question of law and fact, with the existence and degree of each relevant factor lending itself to factual determinations. Therefore, individual employer liability is rarely suitable for summary judgment." (citations omitted)); *Barfield,* 537 F.3d at 143–44 ("Because of the fact-intensive character of a determination of joint employment, we rarely have occasion to review determinations made as a matter of law on an award of summary judgment.").

## CONCLUSION

For these reasons, plaintiffs' motion for summary judgment is DENIED. Defendants' motion for summary judgment is DENIED IN PART and GRANTED IN PART. Plaintiffs' motion for class and collective certification is GRANTED.

Plaintiffs' FLSA claim and NYLL § 196-d claim based on the withholding of tips; their tip-credit claim; and the claims of individual liability for Shahmuradyan and Petrosyants, will proceed to trial. Summary judgment to defendants is granted on plaintiffs' NYLL § 196-d service-charge claim. Plaintiffs' NYLL § 195(1)(a) claim is dismissed without prejudice for lack of standing.

SO ORDERED.

Dated: October 1, 2026
New York, New York

ARUN SUBRAMANIAN
United States District Judge